Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
ascubert@sjk.law

Christian Levis (*pro hac vice* forthcoming)
Amanda Fiorilla (*pro hac vice* forthcoming)
Rachel Kesten (*pro hac vice* forthcoming)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Counsel for Plaintiff Jane Doe and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC.<br><br>Defendant. | Case No.: 3:23-cv-00501-LB<br><br><br>**DECLARATION OF WILLEM F. JONCKHEER IN SUPPORT OF PLAINTIFF JANE DOE'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED [Local Rule 3-12]** |

I, Willem F. Jonckheer, declare:

1.      I am an attorney in good standing in the Northern District of California. I am a partner at Schubert Jonckheer & Kolbe LLP and together with counsel at Lowey Dannenberg, represent Plaintiff Jane Doe in *Jane Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501 (N.D. Cal.). I have personal knowledge of the facts contained herein and if called as a witness would and could testify competently thereto.

2.      I submit this declaration in support of Plaintiff Jane Doe's Administrative Motion to Consider Whether Cases Should Be Related ("Motion") regarding *Jane Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501 (N.D. Cal.).

3.      On February 2, 2023, Plaintiff Jane Doe filed an action against GoodRx Holdings, Inc., as well as Defendants Criteo Corp., Meta Platforms, Inc., and Google LLC. *See Doe v. GoodRx Holdings, Inc.*, No. 3:23-cv-00501 (N.D. Cal.) (the "*Jane Doe*" action) alleging substantial similar facts as the *USA* action.

4.      On February 17, 2023, Plaintiff John Doe filed an action against GoodRx Holdings, Inc., Criteo Corp., Meta Platforms, Inc., and Google LLC. *See Doe v. GoodRx Holdings, Inc.*, 3:23-cv-00744 (N.D. Cal.) (the "*John Doe*" action). The *Jane Doe* Complaint is attached hereto as **Exhibit A**. The action alleges overlapping claims against the same parties in the *Jane Doe* action.

5.      On March 3, 2023, Plaintiff Jose Marquez filed an action against GoodRx Holdings, Inc., Criteo Corp., Meta Platforms, Inc., and Google LLC. *See Marquez v. GoodRx Holdings, Inc.*, 5:23-00940   (N.D. Cal.) (the "*Marquez*" action). The *Marquez* Complaint is attached hereto as **Exhibit B**. The action alleges overlapping claims against the same parties in the *Jane Doe* and *John Doe* actions.

6.      Defendants GoodRx Holdings, Inc., Meta Platforms, Inc., Criteo Corp., and Google LLC have yet to confirm their position regarding the Motion but were made aware on March 6, 2022 that Plaintiff Jane Doe would file it. Counsel in the *John Doe* and *Marquez* actions do not oppose this Motion.

DECLARATION OF WILLEM F. JONCKHEER IN SUPPORT OF PLAINTIFF JANE DOE'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED – CASE NO: 3:23-cv-00501

1         7.     I declare under penalty of perjury that the foregoing is true and correct, and that this

2    declaration was executed on March 8, 2023, in San Francisco, California.

3

4    Dated:  March 8, 2023                         */s/ Willem F. Jonckheer*
                                                 Willem F. Jonckheer

DECLARATION OF WILLEM F. JONCKHEER IN SUPPORT OF PLAINTIFF JANE DOE'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED – CASE NO: 3:23-cv-00501

# EXHIBIT A

Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorneys for Plaintiff*
*and the Putative Classes*

[Additional attorneys listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., and GOOGLE LLC,<br><br>Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff John Doe ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants GoodRx Holdings, Inc. ("GoodRx"), Criteo Corp. ("Criteo"), Meta Platforms, Inc. ("Meta" or "Facebook"), and Google LLC ("Google") (collectively, "Defendants"), and makes the following allegations based on personal knowledge as to facts pertaining to his own experiences and on information and belief as to all others:

## NATURE OF THE ACTION

1. GoodRx is an online provider of discounts on prescription medicine. GoodRx promised users of its website and mobile app that it restricts how and with whom it shares confidential and sensitive personally identifiable and protected health information ("PII/PHI") provided by users. GoodRx also represented that it restricts third parties' use of PII/PHI, that it complies with HIPAA privacy rules and

Digital Advertising Alliance principles and procedures for protecting and sharing PII/PHI, and that it would never share PII/PHI with advertisers or other third parties.

2.    These representations were false. Contrary to these representations, GoodRx shared and sold millions of users' PII/PHI as a regular course of business to the most notorious and high profile data collectors and advertisers—including Facebook, Google, and Criteo—for unauthorized and unlawful purposes, including advertising and data analytics. GoodRx did this without disclosing its sharing practices with users, actively misrepresenting its sharing practices, and without obtaining users' consent.

3.    GoodRx also used users' PII/PHI to engage in targeted advertising campaigns for its own services in violation of its promises, purported policies, industry standards, and laws. GoodRx assembled the PII/PHI obtained from users of its website and mobile app, and used that information to send advertisements to Facebook and Instagram users who had used its website.

4.    GoodRx induced its customers to share their PII/PHI using these false promises and assurances that it would safeguard PII/PHI, and Plaintiff and Class members reasonably relied on these assurances and promises and GoodRx's omissions of material facts, by disclosing their PII/PHI to GoodRx in order to obtain prescription medications at a discount.

5.    The kinds of information GoodRx solicited and permitted to be intercepted by third parties while in transit included prescription medications, personal health conditions, personal contact information, and unique advertising and persistent identifiers. GoodRx's conduct is especially egregious and reprehensible because it purposefully disproportionately preyed on the elderly, infirm, and those with chronic health conditions who often are under financial distress seeking any available means to obtain needed medications at a discount. GoodRx targets these vulnerable populations to extract their valuable and sensitive PII/PHI and breach the firewall established by laws, like HIPAA, between advertisers and healthcare providers.

6.    GoodRx, in concert with the other Defendants, violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511, *et seq*. ("ECPA"); Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq*. ("CMIA"); California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631;

Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); and Plaintiff's and Class members' rights to privacy.

## PARTIES

7.     Plaintiff John Doe is a citizen of Illinois. Plaintiff used GoodRx between 2016 and 2021 to obtain discounts on numerous prescription medications. In seeking those discounts, Plaintiff disclosed to GoodRx personal contact information, personally identifiable information, demographic information, prescription medication information, and personal health conditions. Plaintiff never gave consent to GoodRx to share his PII/PHI with third parties. Had Plaintiff known GoodRx would share his PII/PHI with third parties for unrestricted purposes, he would never have used the website or shared his information with GoodRx.

8.     GoodRx is a Delaware corporation with its principal place of business at 2701 Olympic Boulevard, West Building, Suite 200, Santa Monica, California, 90404. GoodRx has a corporate office in San Francisco County, and certain of its employees and executives are located in San Francisco County.

9.     Facebook is a Delaware corporation with its principal place of business at 1 Hacker Way, Menlo Park, California 94025.

10.     Google is a Delaware limited liability company with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

11.     Criteo Corp. is a Delaware corporation with its principal place of business located at 8840 Washington Blvd., Culver City, CA, 90232-2380.

## JURISDICTION AND VENUE

12.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, because this case arises under the ECPA. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). Alternatively, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), because the case is brought as a class action pursuant to Fed. R. Civ. P. 23, there are 100 or more members of the proposed Class, the amount in controversy exceeds $5,000,000, exclusive of costs, and Plaintiff and Defendants are diverse parties.

13.     This Court has general personal jurisdiction over Defendants because they are at home in California. The Court has specific jurisdiction over Defendants because the claims of Plaintiff and Class members arise out of Defendants' actions and omissions that occurred substantially in California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

15.     Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions that give rise to Plaintiff's and Class members' claims occurred in San Francisco County.

## COMMON FACTUAL ALLEGATIONS

16.     GoodRx provides an online platform through its website, www.GoodRx.com and its mobile application, where consumers can search for and compare prescription medication pricing at pharmacies, and obtain prescription discount cards that provide savings on their prescription drug purchases. Since January 2017, 55.4 million consumers have visited or used GoodRx's website and mobile app.

17.     GoodRx contracts with pharmacy benefit managers ("PBMs") to offer GoodRx customers access to PBM pricing. GoodRx features a free version of its prescription discount product and a paid monthly subscription version, where users can pay a monthly fee and receive additional discounts and benefits. GoodRx receives kickbacks from PBMs when users purchase medications using GoodRx coupons.

18.     According to its web page on April 1, 2020, https://www.goodrx.com/how-goodrx-works, GoodRx stated that "GoodRx gathers current prices and discounts to help you find the lowest cost pharmacy for your prescriptions. The average GoodRx customer saved $355 a year on their prescriptions. Good Rx is 100% free. No personal information required."[1]

---

[1] Historical information on GoodRx's website was obtained using the Internet Archive Wayback Machine, www.archive.org.

19.     GoodRx also provides telehealth services under the names HeyDoctor and GoodRx Care. In connection with these offerings, GoodRx solicits and obtains PII/PHI, including contact information, demographic information, and treatment and health condition information.

### *GoodRx's Statements and Promises About Handling User Data*

20.     GoodRx falsely promised in its privacy policy of September 12, 2017, that "GoodRx does not sell your personal medical data." The privacy policy stated that GoodRx would share personal contact information only for limited purposes that did not include purposes of delivering advertisements or collecting data for commercial use or supplementing consumer profiles created by data aggregators and advertisers.

21.     GoodRx's HeyDoctor telehealth services privacy policy states that it collected and shared user information with third-party service providers only for the limited purpose of providing access to its services. GoodRx also represented that it had in place contractual and technical protections that limit third-party use of user information and that it would seek user consent prior to sharing PII/PHI with third parties for purposes other than provision of its services.

22.     On December 14, 2019, GoodRx's CEO stated in a tweet that "People can use GoodRx without giving us any information. Any information we do receive is stored under the same guidelines as any health entity." By "health entities," the GoodRx CEO was referring to "covered entities," as that term is used in the Health Insurance Portability Accessibility and Accountability Act ("HIPAA"), which regulates, among other things, how healthcare providers obtain, handle, and share patient treatment information. In other words, GoodRx represented that it was subject to, and complied with, the strict patient data sharing and protection practices set forth in the regulations propounded under HIPAA, including the Privacy Rule, 45 C.F.R. 164.500, *et seq*., which generally requires covered entities to make reasonable efforts to limit the use and disclosure of PHI.

23.     On the homepage of the website of GoodRx's HeyDoctor telehealth services, the HIPAA emblem was displayed next to the statement "HIPAA Secure Patient Data Protected," representing to users that it complied with HIPAA's requirements for protecting and handling PHI.

24. GoodRx also represented that it follows the Digital Advertising Alliance "Sensitive Data Principle" providing that its adherents "should not collect and use pharmaceutical prescriptions, or medical records about a specific individual for online behavioral advertising without consent."

### *GoodRx Solicited, Collected, and Widely Shared Users' PII/PHI Without Consent*

25. To use GoodRx, users go to the home page of the website or to the mobile app and type in the drug name or a health condition in the search field and select the call to action button, which produces results on a new web page, including price comparisons and coupons for relevant products. Users may also enter information relating to their location, prescription dosage, form, quantity, and pharmacy. To access the coupons and receive refill reminders, users may provide an email address or phone number. If users create an account, GoodRx collects email addresses and phone numbers, and saves, tracks and alerts users about prescription price reductions, refill reminders, and drug recall and shortage information. For users who purchase the premium account for additional discount benefits, GoodRx obtains names, email addresses, street addresses, phone numbers, dates of birth, and payment information, as well as clinical and health information. GoodRx also tracks and saves a user's medication purchase history.

26. In addition, GoodRx receives personal and health information from PBMs. When users purchase medication from their pharmacies using GoodRx coupons, the PBMs process the transactions and send claims records to GoodRx, containing the users' names, dates of birth, and information about the prescriptions filled. In this way, GoodRx is able to keep track of how many of its coupons are redeemed, for which prescriptions, and by whom. Based on the sensitivity of the data and the sheer quantity of records, GoodRx assembled a massive database of prescription medicine consumer behavior that advertisers and businesses would greatly value.

27. GoodRx shared the PII/PHI that users provided to GoodRx with advertising platforms, including Facebook, Google and Criteo, without adequate notification or disclosure, and without users' knowing consent, in violation of health privacy laws and rules and its own privacy policy.

28. GoodRx integrated third-party tracking tools, consisting of automated web beacons ("pixels") and trackers ("software development kits" or "SDKs"), in its website and mobile app to permit the other Defendants to intercept communications while in transit between Plaintiff and the GoodRx

website. These tracking tools shared user PII/PHI and user activities with third parties for unrestricted purposes, which included advertising, data analytics, and other commercial purposes.

29.     While in transit, Defendants Criteo, Google, and Meta intercepted Plaintiff's private communications with GoodRx's website by use of a Facebook tracking pixel. Defendants were able to surreptitiously access all the technical records of Plaintiff's private use of Goodrx, including "Standard Events" data such as when a user landed on its website or launched its app, as well as "Custom Events" information relating to the users' PII/PHI, such as the contents of their searches, drug name, drug category, and health conditions associated the unique GoodRx coupon accessed by a user. GoodRx used descriptive labels for its custom events so that the fields were categorized as "Drug Name" and "Drug Category" for instance, to allow advertisers and third parties to know what data the fields referenced so they could analyze and monetize the data properly.

30.     Between at least 2017 and November 2020, Defendants intercepted Plaintiff's GoodRx shared user data and activity information with Facebook using Facebook's tracking pixel on its websites and mobile app without users' consent. The intercepted information included drugs searched, the website URL often containing the medications' names, the health condition related to the medication, the medication dosage, quantity and form, pharmacy name, and the users' IP address, city, state and zip code. At times, GoodRx configured the pixel to automatically share with Facebook additional personal information, including the user's name, email, phone number, city, state, zip code, and gender.

31.     GoodRx configured a Google tracking pixel on its website and an SDK on its mobile app to share user-provided information, including the drug name, drug type (such as "generic"), drug quantity, dosage and form, pharmacy ID, and related health conditions. GoodRx configured the Google pixel and SDK to share with Google the GoodRx users' phone numbers, emails, zip codes, and IP addresses. GoodRx configures Google Android and iOS SDKs to share users' latitude and longitude coordinates, and advertising IDs associated with the devices which unique identifiers used to target the users with advertisements.

32.     GoodRx also shared user PII/PHI with Criteo and other third parties for unlawful purposes using internet tracking devices created and used by Criteo, including pixels and SDKs. Criteo used the

information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes.

33. Since 2017, GoodRx has taken no action to limit how advertisers like Facebook, Google, and Criteo, could use the personal health information it shared with them. Rather, through standard terms of service agreements, GoodRx expressly permitted each of them to use Plaintiff's and Class members' PII/PHI for the provision of advertising services and products to their customers or for their own internal business purposes. This conduct was in direct contravention of GoodRx's promise that it would take steps to ensure that third parties that received Plaintiff's and Class members' PII/PHI were bound to comply with federal standards and confidentiality obligations, and to limit third-party use of users' information.

34. Contrary to these promises in its privacy policy and assurances to users that GoodRx could be trusted with their PII/PHI, GoodRx had inadequate and deficient data protection, sharing, and accounting policies. GoodRx failed to implement and maintain programs for complying with laws governing the protection and disclosure of PII/PHI, and failed to implement and maintain adequate procedures to trace and adequately account for the PII/PHI it collected. GoodRx had no formal or sufficient policies or procedures in place with respect to notifying users of breaches to the confidentiality of their information, or with regard to data sharing practices in general.

35. In addition, GoodRx used the information provided by Plaintiff and Class members to create and send targeted advertisements to them while they were online. GoodRx also used information obtained through its relationships with PBMs to create custom audiences—which entailed uploading the emails, phone numbers and mobile advertising IDs of users—to deliver advertisements to persons who used specific medications or were perceived to be candidates for GoodRx's telehealth services.

36. Through their internet tracking devices, Facebook, Google, and Criteo intercepted, acquired, received, and used Plaintiff's and Class members' PII/PHI that they provided to GoodRx for their own purposes, including commercial gain, research, and analytics.

### *GoodRx Actively Concealed Defendants' Unlawful Conduct*

37. The applicable statutes of limitations have been tolled as a result of Defendants' knowing and active concealment, statements in contradiction, and denial of the facts alleged herein.

38.     GoodRx made numerous false representations in its privacy policy and other materials that it restricted the use of Plaintiff's and Class members' PII/PHI to specific purposes, and through these representations actively concealed Defendants' data sharing practices.

39.     Defendants had exclusive knowledge regarding the use of Defendants' tracking devices to record user data, event and activity data, and the contents of communications and disclosure to third parties for unrestricted purposes. Plaintiff and Class members had no reasonable way to discover these activities on their own in light of Defendants' deceptive representations and omissions of material fact concerning their data sharing practices. As a result, Defendants are estopped from asserting statute of limitations or repose under the doctrine of fraudulent concealment.

40.     Facebook, Google, and Criteo continue to use the PII/PHI that they unlawfully intercepted, obtained, and received, and their conduct is continuing in nature. Their violations of the law represent ongoing, discrete and successive acts, representing continuing violations of the laws under which Plaintiff and Class members sue. Each continuing use and disclosure of Plaintiff's and Class members PII/PHI by Facebook, Google, and Criteo establishes liability for GoodRx under the claims asserted by Plaintiff and Class members.

41.     The earliest Plaintiff and Class members reasonably should have learned of the conduct forming the basis of their complaint, and when they actually did learn, was when they received notice of the complaint and settlement with the Federal Trade Commission, which received broad media attention. *See Federal Trade Commission v. GoodRx Holdings, Inc.*, No. 23-cv-460 (N.D. Cal. filed Feb. 1, 2023). Thus, their claims accrued on or around February 1, 2023, under the discovery rule applicable to their claims.

42.     To Plaintiff's knowledge, no other lawsuit based on the allegations underlying the FTC's enforcement action or this lawsuit had been filed before February 1, 2023.

43.     Pursuant to laws, regulations, industry standard practices, and voluntary undertakings to notify Plaintiff and Class members regarding the disclosure of their PII/PHI, Defendants owed duties to disclose the conduct that gives rise to Plaintiff's and Class members' claims, but actively concealed and

secretly profited off of their abuses of Plaintiff's and Class members' trust. Defendants should therefore be estopped from asserting any statute of limitations or repose.

44. The Federal Trade Commission filed a complaint in the Northern District of California on February 1, 2023 against GoodRx for purposes of entering into a consent decree with GoodRx, imposing a civil penalty under the Breach Notification Rule, 16 C.F.R. § 318. As one of the conditions of the settlement, GoodRx must disseminate notification of its data sharing practices to users that it "shared identifiable information related to you, including health information without your permission." *See* Section V of Proposed Stipulated Order and Exhibit A, *Fed. Trade Comm'n v. GoodRx Holdings, Inc.*, No. 3:20-cv-460 (N.D. Cal. Feb. 1, 2023) (ECF No. 3-1).

### *Application of California Law to the Claims of Plaintiff and Class Members*

45. California has a significant interest in regulating the conduct of businesses operating within its borders. California seeks to protect the rights and interests of all California residents and citizens of the United States against a company with its principal place of business in California. California has a greater interest in the claims of Plaintiff and Class members than any other state, and is most intimately concerned with the claims and outcome of this litigation.

46. The principal place of business of GoodRx, in California, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the company's activities, including its data privacy and sharing functions and policy, financial, and legal decisions.

47. When Plaintiff and Class members perform their searches on GoodRx's website, those searches are conducted on GoodRx's computers and servers in California.

48. When Plaintiff and Class members input their PII/PHI on GoodRx's website, that information is input and stored on GoodRx's computers and servers in California.

49. The resources and data relating to GoodRx's website and mobile app are created, maintained, accessible, and controlled by GoodRx employees and equipment located in California.

50. GoodRx shares Plaintiff's and Class members' PII/PHI with Google, Facebook, and Criteo from GoodRx's computers and headquarters in California.

51.     Application of California law to the Class with respect to Plaintiff's and Class members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiff and the Class.

52.     Under California's choice of law principles, the common law of California applies to the common law claims of all Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's Unfair Competition Law may be applied to non-resident consumer Plaintiff and Class members as against the resident defendants.

## CLASS ALLEGATIONS

53.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4), on behalf of Plaintiff and the Class defined as follows:

> All persons who used the GoodRx website or mobile app and had their data shared by GoodRx with Facebook, Google, Criteo, or other third parties for purposes other than treatment.

54.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

55.     Plaintiff reserves the right under Federal Rule of Civil Procedure 23 to amend or modify the Class to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiff reserves the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

56.     The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

57.     The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

58.     **Numerosity**: The exact number of Class members is not available to Plaintiff, but it is clear that individual joinder is impracticable. Millions of people have used GoodRx since 2017. Members of the Class can be identified through Defendants' records or by other means.

59.     **Commonality**: Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members as to whether GoodRx disclosed to third parties their PII/PHI without authorization or lawful authority.

60.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff and the Class members sustained damages arising out of Defendants' uniform wrongful conduct and data sharing practices.

61.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other Class members. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members.

62.     **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

63.     The declaratory and injunctive relief sought in this case includes, but is not limited to:

     a.    Entering a declaratory judgment against Defendants—declaring that Defendants' interception of Plaintiff's and Class members' PII/PHI among themselves and other third parties is in violation of the law;

     b.    Entering an injunction against Defendants to prevent them from sharing Plaintiff's and Class members' PII/PHI among themselves and other third parties.

64.    **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiff and Class members, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

    i.    Whether California law applies to each Class member's state and common law claims;

    ii.    Whether Defendants violated the ECPA;

    iii.    Whether Defendants violated the CMIA;

    iv.    Whether Defendants violated the CIPA;

    v.    Whether Defendants violated the CLRA;

    vi.    Whether Defendants violated the UCL;

    vii.    Whether Defendants violated Plaintiff's and Class members' right to privacy;

    viii.    Whether Plaintiff and Class members are entitled to actual damages, enhanced damages, statutory damages, restitution, disgorgement, and other monetary remedies provided by equity and law;

    ix.    Whether injunctive and declaratory relief, and other equitable relief is warranted.

65.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could

mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

66.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.      Whether GoodRx falsely promised in its privacy policy of September 12, 2017, that "GoodRx does not sell your personal medical data;"

b.      Whether GoodRx misrepresented that GoodRx would disclose personal contact information only for limited purposes that did not include purposes of delivering advertisements or collecting data for commercial use or supplementing consumer profiles created by data aggregators and advertisers;

c.      Whether GoodRx's HeyDoctor telehealth services privacy policy misrepresented that it collected and shared user information with third-party service providers only for the limited purpose of providing access to its services;

d.      Whether GoodRx misrepresented that it had in place contractual and technical protections that limit third-party use of user information and that it would seek user consent prior to sharing PII/PHI with third parties for purposes other than provision of its services;

e.      Whether GoodRx misrepresented that any information it receives is stored under the same guidelines as any health entity that is subject to the strict patient data sharing and protection practices set forth in the regulations propounded under HIPAA;

f.      Whether GoodRx misrepresented that it complied with HIPAA's requirements for protecting and handling PHI;

g.      Whether GoodRx shared the PII/PHI that users provided to GoodRx with advertising platforms, including Facebook, Google and Criteo, without adequate notification or disclosure, and without users' knowing consent, in violation of health privacy laws and rules and its own privacy policy;

h.   Whether GoodRx integrated third-party tracking tools, consisting of automated web beacons ("pixels") and trackers ("software development kits" or "SDKs"), in its website and mobile app that shared user PII/PHI and user activities with third parties for unrestricted purposes, which included advertising, data analytics, and other commercial purposes;

i.   Whether GoodRx shared user data and activity information with Facebook using Facebook's tracking pixel on its websites and mobile app without users' consent;

j.   Whether GoodRx configured a Google tracking pixel on its website and an SDK on its mobile app to share user-provided information with Google;

k.   Whether GoodRx shared user PII/PHI with Criteo for unlawful purposes using internet tracking devices created and used by Criteo, including pixels and SDKs;

l.   Whether Google used the information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes;

m.   Whether Facebook used the information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes;

n.   Whether Criteo used the information that GoodRx shared with it for unrestricted purposes, such as selling targeted advertisements, data analytics, and other commercial purposes.

## <u>COUNT I</u>
### Violation of the Electronic Communications Privacy Act
### 18 U.S.C. § 2511
### (Against All Defendants)

67.   Plaintiffs incorporate paragraphs 1–66 as if fully set forth herein.

68.   18 U.S.C. § 2511 applies to any person who:

•   Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication (18 U.S.C. § 2511(1)(a));

•   Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or

electronic communication in violation of this subsection (18 U.S.C. § 2511(1)(c)); and

- Intentionally uses, or endeavors to use, the contents of any wire, oral or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection (18 U.S.C. § 2511(d)).

69. Through the use of tracking devices, such as SDKs and pixels, Defendants intentionally intercepted, endeavored to intercept, and procured other persons to intercept while in transit Plaintiff's and Class members' electronic communications of the PII/PHI provided by Plaintiff and Class members to GoodRx through its website and mobile app, including Plaintiff's and Class members' searches by drug names, health conditions, and other prescription medication-related information, and communications between Plaintiff and Class members and their pharmacies.

70. Defendants intentionally disclosed, and endeavored to disclose, the contents of Plaintiff's and Class members' electronic communications, knowing or having reason to know the information was obtained through the interception of an electronic communication by the disclosure of the contents of Plaintiff's and Class members' searches on GoodRx's website and mobile app and communications between Plaintiff and Class members and their pharmacies.

71. Defendants intentionally used and endeavored to use the contents of electronic communications between Plaintiff and Class members and GoodRx and between Plaintiff and Class members and their pharmacies to collect data for unrestricted uses, including commercial purposes, advertising, and analytics on Plaintiff and Class members while knowing and having reason to know the data was obtained by intercepting electronic communications.

72. Plaintiff and Class members did not know of, authorize, or consent to the interception, disclosure, or use of their electronic communications to third parties.

73. As a result of Defendants' unlawful conduct, Plaintiff and Class members had their private, electronic communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

74. As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

75. Because Plaintiff and Class members had their electronic communications intercepted, disclosed, and intentionally used by Defendants in violation of the ECPA, they have a right of action under 18 U.S.C. § 2520 for relief, including preliminary and other equitable or declaratory relief as may be appropriate, damages according to computations set for the subsection (c), punitive damages in appropriate cases, and reasonable attorneys' fees and other litigation costs reasonably incurred. 18 U.S.C. § 2520(a)–(c).

**COUNT II**
**Violation of the California Confidentiality of Medical Information Act**
**Cal. Civ. Code § 56**
**(Against All Defendants)**

76. Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

77. GoodRx is subject to the CMIA pursuant to California Civil Code § 56.06(b) because it is a "business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage their information, or for the diagnosis, treatment, or management of a medical condition of the individual." Cal. Civ. Code § 56.06(b).

78. Plaintiff's and Class members' PII/PHI constitutes "medical information" under the CMIA because it consists of individually identifiable information in possession of and derived from a provider of healthcare regarding Plaintiff's and Class members' medical history, mental and physical condition, and treatment.

79. Defendants violated Cal. Civ. Code § 56.06(e) and 56.10 because they "disclose[d] medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by soliciting, intercepting, and receiving Plaintiff's and Class members' PII/PHI, and sharing it with advertisers and for advertising purposes.

80.     Defendants violated Cal. Civ. Code § 56.101 because they negligently failed to create, maintain, preserve, store, abandon, destroy, and dispose of medical information in a manner that preserved its confidentiality by soliciting, intercepting, and receiving Plaintiff's and Class members' PII/PHI, and sharing it with advertisers and for advertising purposes.

81.     Defendants violated Cal Civ. Code § 56.36(b) because they negligently released confidential information and records concerning Plaintiff and Class members in violation of their rights under the CMIA.

82.     Defendants violated Cal. Civ. Code §56.36(c)(2) because they are not licensed health care professionals and they knowingly and willfully obtained, disclosed, and used medical information in violation of the CMIA.

83.     As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

84.     As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

## COUNT III
### Aiding and Abetting Violations of the CMIA
### (Against All Defendants)

85.     Plaintiff incorporates paragraphs 1–66 and the allegations in Count II as if fully set forth herein.

86.     Defendants each individually and in concert with GoodRx or one another intercepted, received, disclosed, and used Plaintiff's and Class members' PII/PHI constituting medical information under the CMIA.

87.     The pixels and SDKs, and other internet tracking devices, by which the interception, reception, disclosure, and use of Plaintiff's and Class members' PII/PHI was accomplished, were created and supplied by Facebook, Google, and Criteo. As a result, GoodRx and other Defendants carried out their

violations of the CMIA alleged in Count II with the substantial assistance of Facebook, Google, and Criteo.

88.　　As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

89.　　As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT IV**
**Violation of the California Invasion of Privacy Act**
**Cal. Penal Code § 630, _et seq._**
**(Against All Defendants)**

90.　　Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

91.　　The CIPA prohibits intentionally tapping or making any unauthorized connection with any wire, line, cable, or instrument; willfully and without consent reading, attempting to read, or learning the contents or meaning of messages or communications while in transit or passing over the wire, line, cable, or instrument; using, attempting to use information so obtained; and aiding, agreeing, employing, and conspiring with any person to unlawfully do or permit or cause to be done any of the foregoing. Cal. Penal Code § 631.

92.　　The CIPA prohibits the intentional and unauthorized use of an electronic amplifying or recording device to eavesdrop upon or record confidential communications. Cal. Penal Code §632.

93.　　Plaintiff and Class members were engaged in confidential communications with GoodRx because the circumstances reasonably indicated that the communication was confined to the parties, not the least of which is established by GoodRx's privacy policy and statements of privacy.

94.　　Defendants intentionally tapped and made unauthorized connections to wires and willfully read and learned the communications between Plaintiff and Class members and GoodRx's website. Defendants used the information that was learned through such means to deliver advertisements to

Plaintiff and Class members and for other unlawful purposes. Defendants aided and agreed with one another to engage in the acts constituting violations of the CIPA.

95. Defendants used internet tracking devices, such as pixels and SDKs, which constitute electronic devices, to amplify or record Plaintiff's and Class members' communications with GoodRx, and to record and amplify their confidential communications consisting of their provision of PII/PHI.

96. Plaintiff and Class members were parties to confidential communications, and they did not provide their consent to the use of electronic amplifying or recording devices.

97. As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

98. As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

## COUNT V
### Violation of California Consumers Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq.*
### (Against GoodRx)

99. Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

100. The CLRA prohibits unfair methods of competition and unfair or deceptive acts or practices, including representing that goods or services are of a particular standard, quality, or grade, if they are of another.

101. As alleged herein, GoodRx made numerous misrepresentations concerning its data security and sharing practices, including on its website and in its privacy policies.

102. GoodRx's representations that it would protect Plaintiff's and Class members' PII/PHI, would not share it with third parties for unrestricted uses, and would not sell it for advertising purposes were false.

103.   Contrary to these representations, GoodRx disclosed and allowed the interception, reception, and use, through internet tracking devices, such as pixels and SDKs, Plaintiff's and Class members' PII/PHI to Facebook, Google, Criteo, and other third parties.

104.   Plaintiff and Class members would not have shared their PII/PHI with GoodRx had they known that GoodRx's representations alleged herein were false.

105.   As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

106.   As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT VI**
**Violation of the California Unfair Competition Law**
**Cal. Bus. and Prof. Code § 17200, *et seq*.**
**(Against All Defendants)**

107.   Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

108.   Defendants' conduct as alleged herein was unfair within the meaning of the UCL. The unfair prong of the UCL prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

109.   Defendants' conduct, as alleged herein was fraudulent within the meaning of the UCL. Defendants made deceptive misrepresentations and omitted known material facts in connection with the solicitation, interception, disclosure, and use of Plaintiff's and Class members' PII/PHI. Defendants actively concealed and continued to assert misleading statements regarding GoodRx's protection and limitation on the use of the PII/PHI. Meanwhile, Defendants were collecting and sharing Plaintiff's and Class members' PII/PHI without their authorization or knowledge in order to profit off of the information, and to deliver advertisements to Plaintiff and Class members, among other unlawful purposes.

110. Defendants' conduct, as alleged herein, was unlawful within the meaning of the UCL because Defendants violated regulations and laws, including but not limited to HIPAA, the FTC Act (15 U.S.C. § 45), the ECPA, the CIPA, the Health Breach Notification Rule (16 C.F.R. § 318), and the CLRA.

111. Had Plaintiff and Class members known Defendants would disclose and misuse their PII/PHI in contravention of GoodRx's representations, they would never have used GoodRx and would not have shared their information.

112. Defendants' unlawful actions in violation of the UCL have caused and are likely to cause substantial injury to consumers that consumers cannot reasonably avoid themselves and that is not outweighed by countervailing benefits to consumers or competition.

113. As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

114. As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

**COUNT VII**
**Invasion of Privacy**
**(Against All Defendants)**

115. Plaintiff incorporates paragraphs 1–66 as if fully set forth herein.

116. Defendants invaded the right to privacy of Plaintiff and Class members by soliciting, obtaining, disclosing, sharing, selling, and using Plaintiff's and Class members' PII/PHI for unauthorized purposes in direct contravention of GoodRx's promises and representations and Plaintiff's and Class members' reasonable expectations.

117. Defendants intentionally disclosed to third parties and made use of Plaintiff's and Class members' PII/PHI for their own proprietary and commercial purposes, including advertising, data analytics, and other uses.

118. Plaintiff and Class members had a reasonable expectation that Defendants would safeguard and maintain their PII/PHI as confidential and protect against unauthorized disclosure, partly because of

GoodRx's representations that it would, but also that other Defendants would not receive or use their PII/PHI in the first place.

119.   Defendants' conduct was and is highly offensive to a reasonable person with ordinary sensibilities. Persons with ordinary sensibilities, such as Plaintiff and Class members, have every right to be highly offended when a company induces them to share confidential information and then breaches that trust by sharing the information for purposes other than providing the desired services as contemplated by the parties to the transaction.

120.   As a direct and proximate result of Defendants' misconduct, Plaintiff and Class members had their private communications containing information related to their sensitive and confidential PII/PHI intercepted, disclosed, and used by third parties, including but not limited to each Defendant.

121.   As a result of Defendants' unlawful conduct, Plaintiff and Class members suffered an injury, including violation to their rights of privacy, loss of the privacy of their PHI/PII, loss of control over their sensitive personal information, and suffered aggravation, inconvenience, and emotional distress.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, prays for a Court order:

A.   Certifying the Class under Rule 23(b)(2) or 23(b)(3), or certifying issues under Rule 23(c)(4), appointing Plaintiff as the Class Representative, and Plaintiff's counsel as Class Counsel;

B.   Finding Defendants' conduct was unlawful, as alleged herein, and entering judgment in favor of Plaintiff and the Class on the claims asserted herein;

C.   Awarding declaratory relief against Defendants;

D.   Awarding Plaintiff and Class members injunctive and other equitable relief, including restitution and disgorgement, as allowed by law or equity;

E.   Awarding Plaintiff and Class members nominal, statutory, actual, compensatory, consequential, incidental, and enhanced damages, as well as restitution and disgorgement as allowed by law or equity;

F.   Awarding pre- and post-judgment interest;

G.      Awarding reasonable attorneys' fees, expenses, and costs; and

H.      Granting such other relief as the Court deems just and appropriate.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: February 17, 2023          Respectfully submitted,


         JOHN DOE, individually and on behalf of all others similarly situated,


         By: /s/ Mark L. Javitch

         Mark L. Javitch (CA SBN 323729)
         JAVITCH LAW OFFICE
         3 East 3rd Ave. Ste. 200
         San Mateo, CA 94401
         Telephone: (650) 781-8000
         Facsimile: (650) 648-0705
         *mark@javitchlawoffice.com*

         Thomas A. Zimmerman, Jr. (IL #6231944)*
         ZIMMERMAN LAW OFFICES, P.C.
         77 W. Washington Street, Suite 1220
         Chicago, Illinois 60602
         Telephone: (312) 440-0020
         Facsimile: (312) 440-4180
         *tom@attorneyzim.com*
         *\*Pro Hac Vice* application pending

         *Attorneys for Plaintiff and the Putative Class*

# EXHIBIT B

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jgavenman@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MARQUEZ, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>  v.<br><br>GOODRX HOLDINGS, INC., META PLATFORMS, INC., GOOGLE LLC, and CRITEO CORP.,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Jose Marquez ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants GoodRx Holdings, Inc. ("GoodRx"), Meta Platforms, Inc. ("Meta"), Google LLC ("Google"), and Criteo Corp. ("Criteo") (collectively, "Defendants"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all California residents who have accessed and used the GoodRx website, www.goodrx.com (the "GoodRx Website"), and the GoodRx mobile applications (the "GoodRx Apps") (collectively, the "GoodRx Platform"), a platform that Defendant GoodRx owns and operates.

2.      Defendant GoodRx aids employs, agrees, and conspires with Defendants Meta, Google, and Criteo to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

3.      Founded in 2011, GoodRx is an American healthcare company based in Santa Monica, California, that operates a telemedicine platform and a free-to-use website and mobile app that track prescription drug prices in the United States and provide cheap drug coupons for discounts on medications.  In doing so, GoodRx checks more than 75,000 pharmacies in the United States for the best options for its users.  In 2021, GoodRx had over $745 million in revenue.

4.      GoodRx's services are available through the GoodRx Platform.  To access GoodRx's services, users must disclose personal and health information to the GoodRx Platform and create an account.  GoodRx collects this information from users themselves and other information from pharmacy benefit managers confirming when a consumer purchases a medication using a GoodRx coupon.  Since January 2017, more than 55 million consumers have visited or used GoodRx's website or mobile apps.

5.      GoodRx offers prescription drug discounts by gathering current prices and discounts and providing users with prescription coupons.  Prescription discounts are available to users who

provide GoodRx with the desired medication name and select a local pharmacy. Users who have provided the relevant information will be able to present a custom GoodRx coupon at checkout to receive their discount. GoodRx then retains the consumer's record of purchase, and receives a portion of a fee that pharmacies pay to companies that manage such prescription drug benefits. This record contains the user's name, date of birth, and information about the prescription filled.

6. GoodRx additionally offers "GoodRx Gold," which is a premium membership program that provides users with further savings on prescription drugs and healthcare services for a monthly or annual fee. GoodRx Gold users can also use this service to track their medication purchase history, including the medication name, purchase date, dosage, pharmacy, and prescriber. GoodRx Gold requires users to create an account by providing personal information including their name, email address, street address, phone number, date of birth, and credit card information.

7. GoodRx also advertises, distributes, and sells telehealth services, branded as "GoodRx Care" and "HeyDoctor." These services are only offered to users who provide further personal information, including their name, email address, phone number, biological sex, and current address. Users must then select the type of treatment they are seeking, such as urinary tract infection, erectile disfunction, anxiety, depression, acne treatment, birth control, or short-term medication refills. Depending on the treatment or the prescription sought, users are required to either complete an online consultation and enter information about their symptoms and medication history, or schedule a visit with a provider. Payment information must be provided for these services.

8. When a medical professional prescribes a medication during a telehealth appointment through GoodRx Care, GoodRx is able to prompt the user to fill the prescription using a GoodRx discount coupon, allowing GoodRx to market and benefit from both of its service platforms at once.

9. Since at least 2017, GoodRx has promised its users that it would share their personal information, including personal health information, with limited third parties and only for limited purposes. GoodRx assured consumers that it would restrict third parties' use of such information and that it would never share personal health information with advertisers or other third parties.

GoodRx routinely collects users' personal and health information and prompts users to provide their email address or phone number to access electronic coupons and refill reminders.

10. GoodRx's privacy policies promise to safeguard users' data. Between October 2017 and March 2019, GoodRx's policy stated that "we never provide advertisers or any other third parties any information that reveals a personal health condition or personal health information." GoodRx further promised that it would only use personal information in "limited cases," such as to fulfill a user's request for a specific prescription coupon. GoodRx even went a step further to assure customers that when "we do disclose your personal information in conjunction with your specific medical information, GoodRx takes steps such that these third parties are subject to confidentiality obligations."

11. Indeed, Doug Hirsch, GoodRx's co-CEO, confirmed via tweet in December 2019 that GoodRx would protect personal data: "People can use GoodRx without giving us any information. Any information we do receive is stored under the same guidelines as any health entity."

12. Health entities are regulated under the Health Insurance Portability and Accountability Act ("HIPPA"), which restricts the use of personal health information and electronic personal health information. Relevant to this case, HIPPA requires the user's authorized consent in writing before an entity can share personal information with third parties. GoodRx's HeyDoctor website prominently displayed a HIPPA seal, seemingly advertising that it complied with HIPPA.

13. Despite GoodRx's own policies against sharing users' sensitive information, and public statements from its management that GoodRx ensures safeguarding of the same information, GoodRx repeatedly violated its promises to users by sharing sensitive user information with third-party advertising companies and platforms like Meta (formerly Facebook), Google, and Criteo (collectively, "Tracking Defendants"), without providing notice to its users or seeking their consent. The information shared with these third parties included GoodRx's users' prescription medications, personal health conditions, contact information, and unique advertising and persistent identifiers. GoodRx permitted these third parties—some of the most prominent social media

companies in the United States—to use and profit from the information for their own business purposes.

14.     By incorporating Tracking Defendants' tracking technology, including tracking pixels and software development kits ("SDKs"), on the GoodRx Platform, Tracking Defendants knowingly and intentionally intercepted Plaintiff and Class members' personal health information, including information related to individual medical conditions, symptoms, and prescriptions communicated through the GoodRx Platform.

15.     This information was neither aggregated nor deidentified, and the Tracking Defendants were not prohibited from using this information for their own benefit.  The Tracking Defendants did in fact use this information for their own purposes, including to allow GoodRx to advertise on their respective platforms using GoodRx users' health data.

16.     Plaintiff Jose Marquez provided his personal information, including health data relating to his medical history and prescriptions to GoodRx with the expectation that this information would remain confidential and private.

17.     Defendants' interception and disclosure of users' private information without consent constitutes an extreme invasion of Plaintiff's and Class members' privacy.  GoodRx's repeated, unauthorized disclosures of users' personal and health information have revealed extremely intimate and sensitive details about its own users that could be linked to—or used to infer information about—chronic physical or mental health conditions, medical treatments and treatment choices, life expectancy, disability status, information relating to parental status, substance addiction, sexual and reproductive health, sexual orientation, and other highly sensitive and personal sets of information.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## PARTIES

18.     Plaintiff Jose Marquez is a California resident and citizen who lives in Salinas, California.  Plaintiff signed up for a GoodRx Gold subscription membership in 2022, and used Defendant's services to obtain discount coupons for his prescription medications.  During the time Plaintiff used the GoodRx Platform, he maintained social media accounts with Facebook and

Instagram, and multiple accounts with Google, including Gmail and Google Maps. Plaintiff used the same device to access the GoodRx Platform that he used to access his accounts with Facebook, Instagram, Gmail, and Google Maps. To obtain discount coupons from GoodRx for his prescription medications, Plaintiff was required to enter his name, email address, birthdate, and payment information to acquire the GoodRx Gold subscription membership plan. With his account, Plaintiff was able to use his GoodRx Gold for discounts on his prescription medications. When Plaintiff used the GoodRx Platform, the information he entered to obtain his discounts was disclosed by GoodRx and intercepted by Meta, Google, and Criteo, including his personal identifying information, prescription requests, and other activity across the GoodRx Platform. Plaintiff did not consent to the sharing and interception of his data, or the use of this information by Defendants. Plaintiff is interested in using GoodRx's services again in the future, but has no practical way to know whether his information will be adequately protected from disclosure and interception.

19. Defendant **GoodRx Holdings, Inc.** is a Delaware corporation with its principal place of business located in Santa Monica, California. GoodRx does business throughout California. Beginning in at least 2017, GoodRx violated the privacy promises it made to its users by sharing information with advertising platforms, including Facebook, Google, and Criteo, about users' prescription medications or personal health conditions, or that users were seeking medical treatment for specific health conditions, along with users' personal contact information and/or persistent identifiers. GoodRx did so without notice to users, and without obtaining consent, despite repeated promises that it would never do such a thing.

20. Defendant **Meta Platforms, Inc.** is a Delaware corporation with its principal place of business located in Menlo Park, California. Meta does business throughout California. Meta created tracking tools, including automated web beacons called tracking "pixels" and other automated trackers called "Software Development Kits" ("SDKs"), that collect and send data to third parties so that they can provide advertising, data analytics, or other business services to the owner of the website or mobile app. The information sent can include users' contact information, persistent identifiers, location information, and "Events Data," which is information about users'

activities while using a website or mobile app. Meta, as the creator of its SDK and tracking pixel, knew that it intercepted users' interactions on the website or mobile application that incorporated this technology. Meta at all times knew that the incorporation of its software into the GoodRx Platform would result in its interception of identifiable health information and other sensitive data. Thus, Meta's conduct was intentional despite knowing the privacy violations it caused to Plaintiff and Class members by allowing the incorporation of its software on the GoodRx Platform.

21. Defendant **Google LLC** is a Delaware limited liability company with its principal place of business located in Mountain View, California. Google does business throughout California. Google, as an established advertising company, and as the creator of its SDK and tracking pixel, knew that it intercepted users' interactions on the GoodRx Platform that incorporated its technology. Google at all times knew that the incorporation of its software into the GoodRx Platform would result in its interception of identifiable health information and other sensitive data. Thus, Google's conduct was intentional despite knowing the privacy violations it caused to Plaintiff and Class members by allowing the incorporation of its software on the GoodRx Platform.

22. Defendant **Criteo Corp.** is a Delaware corporation with its principal place of business located in New York, New York. Criteo does business throughout California. Criteo, as the creator of its SDK and tracking pixel, knew that it intercepted users' interactions on the GoodRx Platform that incorporated its technology. Criteo at all times knew that the incorporation of its software into the GoodRx Platform would result in its interception of identifiable health information and other sensitive data. Thus, Criteo's conduct was intentional despite knowing the privacy violations it caused to Plaintiff and Class members by allowing the incorporation of its software on the GoodRx Platform.

23. Defendants Meta, Google, and Criteo (collectively, "Tracking Defendants") developed their respective tracking technologies for the express purpose of collecting data from users for, among other things, marketing, analytics, and advertising purposes. GoodRx knew at the time it incorporated the Tracking Defendants' software into the GoodRx Platform that it would result in the disclosure and interception of users' data that exists on the GoodRx Platform,

including personal identifying information, personal health histories, prescription records and requests, and other identifiable information, by virtue of how the technologies function.

## **JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendants.

25.     This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a citizen of California, and submits to the jurisdiction of the Court, and because Defendants have, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and/or intentionally availed themselves of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of their products and/or services to residents within this District and throughout California. Additionally, Plaintiff purchased his GoodRx membership from Defendant GoodRx while in California.

26.     Pursuant to U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Plaintiff resides in this District and purchased Defendant GoodRx's Gold membership in this District.  Moreover, Defendants systematically conduct business in this District and throughout the State of California, and Defendant GoodRx sold the membership to Plaintiff and Class Members in this State and District.

## **FACTUAL ALLEGATIONS**

### **A.     Background of the California Information Privacy Act ("CIPA")**

27.     The CIPA prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

28.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
> Or

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
> Or

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
> Or

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

29.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

30.     Under Cal. Penal Code § 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.** **Background of the California Confidentiality of Medical Information Act**

31.     Pursuant to the California Confidentiality of Medical Information Act ("CMIA"), a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal Civ. Code § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

> (a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.

> (b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.

> (c) Is signed and dated . . .

> (d) States the specific uses and limitations on the types of medical information to be disclosed.

> (e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.

> (f) States the name or functions of the persons or entities authorized to receive the medical information.

> (g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.

> (h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.

> (i) Advises the person signing the authorization of the right to receive a copy of the authorization.

Cal. Civ. Code § 56.11.

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place.   For example, GoodRx could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3) and 56.10(b)(6).

32.     Moreover, a health care provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as implementing a system that records and discloses online patients' personally identifiable information and protected health information.  Cal. Civ. Code § 56.36(c).[2]  Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages.  Cal. Civ. Code § 56.36(b).

33.     "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual damages, if any, sustained by the patient."  *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551, 174 Cal. Rptr. 3d 653, 656 (2014) (quoting Cal. Civ. Code § 56.36(b).

**C.     The GoodRx Platform**

**1.     Background On GoodRx**

34.     GoodRx was originally founded in 2011 as a prescription coupon company.  The company has since expanded to provide several different categories of services, including telehealth and informational material about health conditions and medications.

35.     To access these services, users must create an account with GoodRx by providing their name, email address, and date of birth.  To obtain a GoodRx "Prescription Savings Card," which can be used for discounts on prescriptions at over 70,000 pharmacies, users must provide their name, home address, and email address.

36.     Users can search by medication name and local pharmacy on the GoodRx Platform to receive a personalized GoodRx Coupon that will provide a discount on that specific medication.

---

[2] "Every provider of health care ... who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care ... who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36."  Cal. Civ. Code § 56.101, subd. (a).

This Coupon can be printed, texted, or emailed to the user for use at checkout. When a user shows the Coupon, GoodRx obtains a record of this purchase that includes the user's name, date of birth, and relevant prescription information.

37.     GoodRx also advertises, distributes, and sells telehealth services, branded as "GoodRx Care" and "HeyDoctor." These services are only offered to users who provide further personal information, including their name, email address, phone number, biological sex, and current address. Users must then select the type of treatment they are seeking, such as urinary tract infection, erectile disfunction, anxiety, depression, acne treatment, birth control, or short-term medication refills. Depending on the treatment or the prescription sought, users are required to either complete an online consultation and enter information about their symptoms and medication history, or schedule a visit with a provider. Payment information must be provided for these services.

38.     When a medical professional prescribes a medication during a telehealth appointment through GoodRx Care, GoodRx is able to prompt the user to fill the prescription using a GoodRx discount coupon, allowing GoodRx to market and benefit from both of its service platforms at once.

39.     GoodRx additionally offers "GoodRx Gold," a paid monthly subscription service that combines GoodRx's telehealth and prescription coupon services. GoodRx claims that this membership can provide users with access to over 1,000 prescriptions at less than $10, and arrange visits with healthcare providers at just $19. GoodRx Gold users can also use this service to keep track of their medication purchase history, including the medication name, purchase date, dosage, pharmacy, and prescriber.

### 2.     GoodRx's False Promises About Sharing Information

40.     In connection with the advertising and sale of GoodRx's goods and services, GoodRx has disseminated, or caused to be disseminated, false and deceptive statements about GoodRx's use and disclosure of health and personal information, including privacy policies on the GoodRx Platform.

41.     GoodRx has itself acknowledged that the information it collects from its users is sensitive, and promised users that GoodRx would treat their information in accordance with its privacy policies.

42.     GoodRx's privacy policy, in describing its use of third-party tracking tools, assured users that GoodRx would never disclose personal health information to advertisers or any third parties.  Between at least October 2017 through March 2019, GoodRx promised that it would "never provide advertisers or any other third parties any information that reveals a personal health condition or personal health information."

43.     GoodRx also promised users that it "rarely shares personal health information with third parties.  And it promised that when such information would be shared, it "ensures that these third parties are bound to comply with federal standards as to how to treat 'medical data' that is linked with [a user's] name, contact information and other personal identifiers."  This promise appeared in GoodRx's privacy policy between at least October 2017 and October 2019.

44.     During that time frame GoodRx additionally assured users that it would use "personal medical data," such as information about prescription drugs, only in "limited cases" to fulfill services that users requested.  The privacy policy listed examples of these limited cases, including to text or email GoodRx Coupons to users, to provide prescription drug price alerts, and to otherwise contact users directly.

45.     Between October and December 2019, GoodRx promised that when it does "disclose your personal information in conjunction with your specific medical information, GoodRx takes steps such that these third parties are subject to confidentiality obligations."

46.     Further, beginning in or around March 2019, GoodRx promised users that it "adheres to Digital Advertising Alliance principles."  The Digital Advertising Alliance ("DAA") is an independent organization that establishes and enforces self-regulatory principles relating to privacy and digital advertising.  The DAA provides that entities "should not collect and use … pharmaceutical prescriptions, or medical records about a specific individual for Online Behavioral Advertising without Consent," consent being defined by the DAA as "an individual's action in

response to a clear, meaningful and prominent notice regarding the collection and use of data for Online Behavioral Advertising purposes."

47.     GoodRx's policies regarding personal contact information were similar between at least October 2017 and March 2020, in that it told users that it would share personal contact information only to provide services directly to users, to comply with the law or legal process, to protect and defend GoodRx's rights or property, to act in an emergency to protect someone's safety, in the case of a merger, acquisition, or reorganization, to securely store and process data, and to handle customer requests.

48.     GoodRx's HeyDoctor privacy policy made similar promises, promising users between October 2018 and July 2020 that users' information would only be shared to provide access to telehealth services and that GoodRx would obtain users' consent before disclosing it for any other reason.  HeyDoctor also displayed a HIPPA seal on its website, representing that its services complied with HIPPA regulations, including the prohibition against sharing health information without written authorization from the user.

49.     GoodRx's co-CEO, Doug Hirsch, took these promises a step further—to the Twitter platform.  In a December 14, 2019 tweet, Hirsch stated publicly: "We don't sell information and we never have.  People can use GoodRx without giving us any information.  Any information we do receive is stored under the same guidelines as any health entity."

50.     Later that same day, Hirsch again bolstered the idea that users' sensitive information would never be shared, tweeting: "I think it's important to mention that we started GoodRx to help Americans, not gather data or exploit anyone."

51.     Based on all of GoodRx's representations regarding the protection of sensitive data, and the fact that GoodRx is a medical platform, users like Plaintiff and Class members expected their personal health information to remain just that: personal, private, and confidential.

52.     Unfortunately, GoodRx's constant assurances regarding privacy proved false. GoodRx not only disclosed but allowed third parties to intercept highly sensitive personal and medical information about its users that Plaintiff and Class members provided to the GoodRx

Platform, including their personal identifying information, prescriptions, and other health information.

53.     GoodRx knew that it disclosed and allowed third parties to intercept its users' sensitive personal information, including health data.  Specifically, GoodRx integrated third party tracking tools from the Tracking Defendants into its websites and mobile applications.  These tracking tools (pixels and SDKs) collect and send data to third parties so they can provide advertising, data analytics, or other business services to the owner of the website or mobile app.  The information sent can include users' contact information, persistent identifiers, location information, and "Events Data," which is information about users' activities while using a website or mobile app.

54.     GoodRx tracked and shared "Standard Events," which are records of routine website or app functions, such as the fact that a user launched or closed a mobile app or website.  GoodRx also tracked and shared "Custom Events," which are customized records of website or mobile app interactions unique to the GoodRx user experience.  Whereas Standard Events have standardized titles that are applicable to any website or mobile app (such as "Add to Wishlist"), Custom Events have unique, customized names.  Rather than giving its Custom Events anonymous names, such as "Event_1," GoodRx chose descriptive titles that conveyed health information about its users.  For example, GoodRx created Custom Events with names like "Drug Name" and "Drug Category" that tracked and shared the prescription medication and health condition(s) associated with each unique GoodRx Coupon that users accessed.  As a result, at times, when GoodRx shared a Custom Event, it was sharing its users' health information.  It then used this information to categorize users based on the medical condition they had or medication they used to serve targeted advertisements related to those conditions and treatment.

55.     This information was shared with at least the Tracking Defendants, and at least a dozen other companies.

### D.     GoodRx Shared Sensitive Information With Meta

56.     GoodRx configured a Facebook tracking pixel (the "Meta Pixel") on its GoodRx Platform in 2017.  The Meta Pixel is a snippet of code embedded on a third-party website that

---

tracks users' activity while they navigate through a particular website.  Through this technology, Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website and what they searched.  This data is often associated with the individual user's Facebook account, so if the user is logged into their Facebook account, Meta is able to link information tracked by the Meta Pixel to that specific individual.

57.   The Meta Pixel can be utilized to get insights about how people use specific websites, and to track the effectiveness of advertising on a specific website.  The data intercepted through the Meta Pixel can also be used by Meta to improve its personalized content delivery, advertising network, and machine learning algorithms, including by improving its ability to identify and target users.

58.   GoodRx configured the Meta Pixel on the GoodRx Platform to share Standard and Custom Events, which conveyed user health information to Meta.  This included the name of the medication for which users accessed a GoodRx Coupon, the website URL, which in many cases included a medication name, the health condition related to the medication, the medication quantity, the pharmacy name, and the user's city, state, and zip code.  The Meta Pixel also collected website microdata with additional information about the prescription medication and health condition(s) for which users accessed GoodRx Coupons, and the user's IP address.

59.   GoodRx configured the Meta Pixel to automatically share with Meta additional personal information, including a user's name, email address, phone number, city, state, zip code, and gender starting in May 2019.  GoodRx shared personal and health information with Meta through the Meta Pixel beginning in December 2019, when it configured certain of its URL addresses to embed user name, email address, date of birth, phone number, and sometimes prescription medication name.  These URLs were shared with Meta.

60.   Meta offers a mobile version of the Meta Pixel, an SDK, to app developers.  Meta's SDK allows app developers to similarly track events, such as when someone installs your app or completing a purchase.  By tracking these events, developers can measure ad performance and build audiences for ad targeting.

61.     At the time Plaintiff used the GoodRx Platform, he maintained active Facebook and Instagram accounts.  Plaintiff accessed the GoodRx Platform from the same device he used to visit Facebook and Instagram, and Meta associated the data it collected about him from the GoodRx Platform with his Facebook and Instagram accounts and other personally identifiable information.

62.     Plaintiff provided his personally identifiable information, health information, and other sensitive information to GoodRx to obtain prescriptions.  This information was disclosed to and intercepted by Meta.  Plaintiff did not consent to the interception or disclosure of his data to Meta.  GoodRx's disclosure, and Meta's interception, of Plaintiff's personally identifiable information, health data, and other highly sensitive information without his consent is an invasion of privacy and violates several laws, including the Confidentiality of Medical Information Act ("CMIA") and California Invasion of Privacy Act ("CIPA").

### E.     GoodRx Shared Sensitive Information With Google

63.     Google, one of the most valuable publicly traded companies in the world, makes the majority of its revenue in advertising dollars.  Google offers several analytics products, including SDKs and a tracking pixel, which exist solely to help drive ad revenue.  These products also improve the company's advertising network and capabilities by providing more wholesome profiles and data points on individuals.

64.     Google additionally uses the data collected through its analytics tools to improve its ad targeting capabilities and data points on users.

65.     GoodRx uses Google's tracking technology, such as an SDK or pixel, on the GoodRx Platform.  As a result, GoodRx disclosed and Google intercepted users' interactions on the GoodRx Platform.  Google received at least users' health information, including what GoodRx Coupons they accessed or used.

66.     Plaintiff provided his personally identifiable information, health information, and other sensitive information to GoodRx to obtain his prescriptions.  This information was disclosed to and intercepted by Google.  Plaintiff did not consent to the interception or disclosure of his data to Google.  GoodRx's disclosure, and Google's interception, of Plaintiff's personally identifiable

information, health data, and other highly sensitive information without his consent is an invasion of privacy and violates several laws, including the CMIA and CIPA.

**F.    GoodRx Shared Sensitive Information With Criteo**

67.    Criteo, a digital advertising company that focuses on serving personalized advertisements, offers data collection and advertising technology to tother companies with snippets of code similar to the Meta Pixel.  Through its technology, Criteo is able to create "audiences" that group users based on a specific data point or similarity between them.  Companies like GoodRx can use this information to employ targeted advertising.

68.    GoodRx uses Criteo's tracking technology, such as an SDK or pixel, on the GoodRx Platform.  As a result, GoodRx disclosed and Criteo intercepted users' interactions on the GoodRx Platform.  Criteo received at least users' health information, including what GoodRx Coupons they accessed or used.

69.    Plaintiff provided his personally identifiable information, health information, and other sensitive information to GoodRx to obtain his prescriptions.  This information was disclosed to and intercepted by Criteo.  Plaintiff did not consent to the interception or disclosure of his data to Criteo.  GoodRx's disclosure, and Criteo's interception, of Plaintiff's personally identifiable information, health data, and other highly sensitive information without his consent is an invasion of privacy and violates several laws, including the CMIA and CIPA.

**G.    Defendants Used GoodRx Users' Data**

70.    Defendant GoodRx monetized and used the data collected from GoodRx users to serve personalized advertisements on social media platforms, such as Facebook and Instagram. Through Meta's "Ads Manager," a self-serve digital advertising tool, and its "Custom Audiences" ad-targeting feature, GoodRx used the information it shared with Meta to identify its users who had Facebook and Instagram accounts.  GoodRx then grouped the resulting list of users into Custom Audiences that it categorized based on health information (such as an audience of users who took a specific medication), gave its Custom Audiences descriptive titles that in some cases contained medication names or health conditions, and targeted these users with health-related advertisements

that marketed GoodRx's services.  In some cases, these targeted advertisements featured specific medications.

71.     GoodRx was able to create these audiences through its use of Tracking Defendants' software employed on the GoodRx Platform.  GoodRx used Events Data and personal identifiers shared through each pixel to create audiences of users who had accessed or used a GoodRx Coupon for a particular prescription medication, or who had accessed a HeyDoctor treatment page for a specific health condition.  GoodRx targeted these users with health-related advertisements.

72.     GoodRx was also able to create audiences based on medication purchase data. GoodRx compiled lists of its users who had used a GoodRx Coupon to purchase particular medications, and uploaded their email addresses, phone numbers, and mobile identifiers to Ads Manager to identify those individuals on Facebook or Instagram.  GoodRx then created medication-specific advertising audiences consisting of these users, named each Custom Audience according to the medication they had purchased, and targeted these users with health-related advertisements.

73.     GoodRx ran these targeted advertising campaigns on Facebook and Instagram between 2017 and 2020 based on personal health information.

74.     For instance, in August 2019, GoodRx ran a campaign using Meta's services based on users who had purchased prescriptions for Lisinopril, Azithromycin, Atorvastatin, or Prednisone, and named each Custom Audience according to the medication purchased: "lisinopril claims," "atorvastatin claims," "azith claims" and "pred claims."

75.     Between August 2017 and March 2018, GoodRx's campaign targeted users who had visited drug pages for five specific medications: Losartan, Amlodipine, Zolpidem, Topiramate, and Quetiapine.

76.     Between August 31 and October 31, 2018, GoodRx's campaign targeted users who had visited HeyDoctor Treatment Pages relating to specific health conditions.  It named each Custom Audience by the health condition corresponding to the Treatment Page visited, including "Acne," "Birth Control," "Blood Type," "Cold Sore," "Eyelash," "Female condom," "Hair Loss,"

"Hepatitis C," "HIV," "Metabolism," "Pre Diabetes," "Pregnancy," "Smoking," "Sinus," "TB," "UTI," and "Vitamin D."

77.     Between November 1, 2018 and February 20, 2019, GoodRx's campaign targeted users who previously visited HeyDoctor's Treatment Page(s) relating to HeyDoctor's sexually transmitted disease services.  The targeted advertisements promoted HeyDoctor's STD testing services.

78.     Between July 22 and August 4, 2019, GoodRx's campaign targeted users who had viewed a GoodRx Coupon for Lipitor, Lisinopril, Neurontin, Prednisone, and Zithromax.  The targeted advertisements featured these prescriptions.

79.     Between November 1 and December 6, 2019, GoodRx's campaign targeted users who viewed HeyDoctor's Treatment Page for erectile dysfunction.  The targeted advertisements promoted obtaining prescriptions for erectile dysfunction through HeyDoctor.

80.     Between January 9 and February 25, 2020, GoodRx targeted users who had viewed a GoodRx Coupon for Cialis or Sildenafil.  The targeted advertisements promoted HeyDoctor's services.

81.     Between January 15 and 17, 2020, GoodRx targeted users who viewed a GoodRx Coupon for birth control medication.  The targeted advertisements promoted HeyDoctor's services.

82.     Between February 3 and 8, 2020, GoodRx targeted users who accessed a GoodRx Coupon for Cialis or Sildenafil.  The targeted advertisements promoted GoodRx Coupons for Viagra.

83.     The above are just some of the examples of the multitude of extreme abuses by GoodRx and the Tracking Defendants of Plaintiff's and Class members' sensitive data.

## CLASS ACTION ALLEGATIONS

84.     Class Definition: Pursuant to Section 382 of the Code of Civil Procedure, Plaintiff brings this action on behalf of himself and other similarly situated individuals (the "Class"), defined as California citizens who, during the class period, used GoodRx and had their personally identifiable information or protected health information improperly disclosed to third parties, including the Tracking Defendants.

85.     Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

86.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

87.     Excluded from the Class are Defendants, any affiliate, parent, or subsidiary of Defendants; any entity in which Cedars-Sinai has a controlling interest; any officer director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

88.     <u>Numerosity/Ascertainability</u>.  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable.  The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class.  The identity of such membership is readily ascertainable from GoodRx's records.

89.     <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class because Plaintiff used the GoodRx Platform and had his personally identifiable information and protected health information disclosed to the Tracking Defendants without his express written authorization or knowledge.  Plaintiff's claims are based on the same legal theories as the claims of other Class members.

90.     <u>Adequacy</u>.  Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members.  Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.  Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

91.     <u>Common Questions of Law and Fact Predominate/Well Defined Community of Interest.</u>  Questions of law and fact common to the members of the Class predominate over

questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class.  Such generally applicable conduct is inherent in Defendants' wrongful conduct.  Questions of law and fact common to the Classes include:

    (a)    Whether Defendants violated Plaintiff's and Class members' privacy rights;

    (b)    Whether Defendants' acts and practices violated the Common Law Invasion of Privacy;

    (c)    Whether Defendants were unjustly enriched;

    (d)    Whether Defendants' acts and practices violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq*.;

    (e)    Whether Defendants' acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*.;

    (f)    Whether Plaintiff and Class members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

    (g)    Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and

    (h)    Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

92.    <u>Superiority</u>.  Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.  Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## COUNT I
### Violation Of The California Invasion Of Privacy Act ("CIPA")
### Cal. Penal Code § 631

93.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

94.     The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose, the major takeaway being: "to protect the right of privacy of the people of this state."  CIPA § 630.

95.     California penal Code § 631 imposes liability on any person who "by means of any machine, instrument, contrivance, or in any other manner" (1) "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument," (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [the state of California]," (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or (4) "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

96.     Defendants are persons for purposes of § 631.

97.     Defendants GoodRx, Meta, and Google maintain their principal places of business in California, where they designed, contrived, agreed, conspired, effectuated, and/or received the interception and use of the contents of Plaintiff and Class members' communications. Additionally, Google and Meta have adopted California substantive law to govern their relationship with users.

98.     The Tracking Defendants' technology (i.e., SDKs and pixels), Plaintiff's and Class members' browsers and mobile applications, and Plaintiff's and Class members' computing and mobile devices are a "machine, instrument, contrivance, or . . . other manner."

99.     At all relevant times, Defendant GoodRx aided, agreed with, and conspired with the

Tracking Defendants to track and intercept Plaintiff's and Class Members' personal and sensitive health information while accessing the GoodRx Platform.  These communications were intercepted without the authorization and consent of the Plaintiff and Class Members.

100.    The Tracking Defendants, intentionally and without the consent of Plaintiff and Class members, read or attempt to read, or learn the contents or meaning of Plaintiff and Class members' communications to GoodRx while the communications are in transit or passing over any wire, line or cable, or were being received at any place within California when it intercepted Plaintiff and Class members' communications and data with GoodRx, which is headquartered in California, in real time.

101.    The Tracking Defendants used or attempted to use the communications and information they received through their tracking technology, including to supply analytics and advertising services.

102.    By incorporating the Tracking Defendants' technology on its Platform, GoodRx aided, agreed with, employed, and conspired with the Tracking Defendants to carry out the wrongful conduct alleged herein.

103.    The interception of Plaintiff's and Class members' communications was without authorization and consent from the Plaintiff and Class members.  Accordingly, the interception was unlawful and tortious.

104.    As a result of the above violations, Defendants are liable to Plaintiff and other Class Members in the amount of $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options).  Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

105.    Under the statute, Defendants are also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendants in the future.

## COUNT II
### Violation Of CIPA
### Cal. Penal Code § 632

106.　Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

107.　Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

108.　CIPA § 632(a) prohibits an entity from:

> [I]ntentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

109.　Plaintiff and Class members' communications to GoodRx, including their sensitive medical information including information concerning medications they were taking or were prescribed, their medical histories, allergies, and answers to other health-related questions, were confidential communications for purposes of § 632, because Plaintiff and Class members had an objectively reasonable expectation of privacy in this data.

110.　The Tracking Defendants' tracking technology (i.e., SDKs and pixels) are all electronic amplifying or recording devices for purposes of § 632.

111.　At all relevant times, Defendants intentionally used the Tracking Defendants' technology on the GoodRx Platform to eavesdrop upon and record the confidential communications of Plaintiff and Members of the Classes in violation of § 632 of CIPA.

112.　Plaintiff and members of the Classes did not consent to any of Defendants' actions. Nor have Plaintiff or members of the Classes consented to Defendants' intentional use of an electronic amplifying or recording device to eavesdrop upon and record their confidential communications.

113.　The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to confer Article III standing.

114.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and members of the Classes have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendants' violations of CIPA § 632(a).

## COUNT III
**Common Law Invasion of Privacy**

115.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

116.    The right to privacy in California's constitution creates a right of action against private entities such as Defendants.

117.    Plaintiff's and Class members' expectation of privacy is deeply enshrined in California's Constitution.  Article I, section I of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, and privacy."

118.    The phrase "and privacy" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone. … It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.  Fundamental to our privacy is the ability to control circulation of personal information.  This is essential to social relationships and personal freedom.

119.    The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Defendants.

120.    To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

121.   As described herein, Defendants have intruded upon legally protected privacy interests, including the California Constitution, which guarantees Californians the right to privacy; the CIPA; the CMIA; and HIPPA.

122.   Plaintiff and Class members reasonably expected the personal and sensitive information they shared with GoodRx to remain private and confidential given the nature of the GoodRx Platform, which is primarily used to receive medical advice, treatment, prescriptions, and prescription coupons.

123.   Plaintiff Class members had a reasonable expectation of privacy under the circumstances in that Plaintiff Class members could not reasonably expect GoodRx and the Tracking Defendants would commit acts in violation of federal and state civil and criminal laws; and GoodRx affirmatively promised users (including Plaintiff and Class members) it would not track or disseminate their communications or access their computer devices or web-browser when they sent or received sensitive or otherwise protected information, like their personally identifiable information or sensitive health information.

124.   Defendants' actions constituted a serious invasion of privacy in that their conduct invaded the privacy rights of Americans (including Plaintiff and Class members) without their consent and further violated Plaintiff's and Class members' reasonable expectation of privacy via Tracking Defendants' review, analysis, and subsequent monetization and use of Plaintiff's and Class members' personally identifiable information, health information, and other sensitive data that Plaintiff and Class members considered private and confidential.

125.   Committing these criminal acts against hundreds of thousands of Americans constitutes an egregious breach of social norms that is highly offensive.

126.   The surreptitious and unauthorized tracking of the internet communications of hundreds of thousands of Americans, particularly where, as here, they have taken measures to ensure their privacy, constitutes an egregious breach of social norms that is highly offensive.

127.   Defendants' intentional intrusions into Plaintiff's and Class members' private data and their accessing devices and web-browsers was highly offensive to a reasonable person in that Defendants violated federal and state criminal and civil laws designed to protect individual privacy.

128.    The taking of personally identifiable information from tens of millions of Americans through deceit is highly offensive behavior.

129.    Following Defendants' unauthorized interception of the sensitive and valuable personal information, the subsequent analysis and use of those identifiers and event data to create targeted audiences of advertisements, comprising of Plaintiff, Class members, and consumers violated their reasonable expectations of privacy.

130.    Plaintiff McDaniel and Sub-Class members have been damaged by Facebook's invasion of their privacy and are entitled to just compensation and injunctive relief.

### COUNT IV
**Common Law Privacy – Intrusion Upon Seclusion**

131.    Plaintiff hereby incorporates the paragraphs contained above as if fully set forth herein.

132.    Plaintiffs asserting claims for intrusion upon seclusion must plead (1) intrusion into a private place, conversation, or matter; (2) in a manner highly offensive to a reasonable person.

133.    GoodRx's disclosure of Plaintiff's and Class members' sensitive data, including personally identifiable information, health information, prescription requests and other interactions on the GoodRx Platform, to third parties like the Tracking Defendants constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion.

134.    Plaintiff and Class members had a reasonable expectation of privacy in the health information and other personal data that GoodRx disclosed to third parties. Plaintiff's health information, prescription requests, and other interactions with the GoodRx Platform are inherently sensitive in nature. Plaintiff and Class members reasonably expected this information would remain private and confidential and would not be disclosed to third parties without their consent.

135.    This expectation is especially heightened given GoodRx's consistent representations to users that this information would be safeguarded and not disclosed to third parties like Meta, Google, and Criteo.

136.    GoodRx promised that it would only use personal medical data such as prescription drug information in "limited cases" as necessary to fulfill the user's request.  For instance, to text or email GoodRx Coupons.

137.    Given these representations, and the nature of the data GoodRx received, Plaintiff and Class members had a reasonable expectation of privacy in their data relating to their use of the GoodRx Platform and expected this information would not be disclosed.

138.    Plaintiff and Class members did not consent to, authorize, or know about GoodRx's intrusion at the time it occurred.  Accordingly, Plaintiff and Class members never agreed that GoodRx could disclose their data to third parties.

139.    The surreptitious disclosure of sensitive data, including personally identifiable information and health information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by social norms.  Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

140.    The offensiveness of this conduct is all the more apparent because GoodRx's disclosure of this information was conducted in secret in a manner that Plaintiff and Class members would be unable to detect through the incorporation of highly technical SDKs and pixels that was contrary to the actual representations made by GoodRx.

141.    As a result of GoodRx's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

142.    Plaintiff and Class members have been damaged as a direct and proximate result of GoodRx's invasion of their privacy and are entitled to just compensation, including monetary damages.

143.    Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by GoodRx as a result of its intrusions upon Plaintiff's and Class members' privacy.

144.    Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of GoodRx's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

145.    Plaintiff also seeks such other relief as the Court may deem just and proper.

### COUNT V
### Violation of California Confidentiality of Medical Information Act ("CMIA")
### Civil Code Section 56.06

146.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

147.    GoodRx is a provider of healthcare under Cal. Civ. Code Section 56.06, subdivisions (a) and (b), because the GoodRx Platform maintains medical information and offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or make the information available to a heath care provider, or for the diagnoses, treatment, or management of a medical condition.

148.    GoodRx is therefore subject to the requirements of the CMIA and obligated under Section 56.06 subdivision (e) to maintain the same standards of confidentiality required of a provider of health care with respect to medical information that it maintains on behalf of users.

149.    The CMIA defines medical information to mean any "individually identifiable information" in possession of or derived from "a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." As explained above, the information GoodRx maintained and disclosed is medical information because it is identifiable information relating to patient's medical histories, conditions, treatments, and prescriptions.

150.    GoodRx violated Cal. Civ. Code Section 56.06(e) because it did not maintain the confidentiality of users' medical information.  GoodRx disclosed to third parties Plaintiff's and

Class members' medical information without consent, including information concerning medications they were taking or were prescribed.

151. GoodRx shared this identifiable information with third parties, including Meta, Google, and Criteo and whose primary business includes selling advertisements, analytics, or other insights based on the data they obtain about individuals, and using such data to improve their products, services, and algorithms.

152. GoodRx knowingly and willfully disclosed medical information without consent to Tracking Defendants for financial gain. Namely, to sell more products, advertise, obtain analytics, and improve the GoodRx Platform, in violation of Cal. Civ. Code Section 56.06(e). GoodRx's conduct was knowing and willful as they were aware that Tracking Defendants would obtain all user data input while using their sites, yet intentionally embedded Tracking Defendants' code anyway.

153. At the very least, GoodRx negligently disclosed medical information to Tracking Defendants in violation of Cal. Civ. Code Section 56.06(e).

154. Accordingly, Plaintiff and Class members are entitled to: (1) nominal damages of $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory damages pursuant to Cal. Civ. Code Section 56.36(c); and reasonable attorneys' fees and other litigation costs reasonably incurred.

**COUNT VI**
**Violation of CMIA**
**Civil Code Section 56.101**

155. Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

156. Cal. Civ. Code Section 56.101 (a) requires that every provider of health care "who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein."

157.     Any health care provider who "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to remedies and penalties provided under subdivisions (b) and (c) of Section 56.36[.]"

158.     GoodRx is a provider of health care who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information.

159.     GoodRx failed to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information contained therein because it disclosed to Tracking Defendants, Plaintiff's, and Class members' medical information, including information concerning medications they were taking or were prescribed.

160.     GoodRx's failure to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information was, at the least, negligent and violates Cal. Civ. Code Section 56.101 (a).

161.     Accordingly, Plaintiff and Class members are entitled to: (1) nominal damages of $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory damages pursuant to Cal. Civ. Code Section 56.36(c); and reasonable attorneys' fees and other litigation costs reasonably incurred.

## COUNT VII
### Violation of CMIA
### Civil Code Section 56.10

162.     Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

163.     Under the California Confidentiality of Medical Information Act section 56.10 ("CMIA"), providers of health care are prohibited from disclosing medical information relating to their patients, without a patient's authorization.  Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care... regarding a patient's medical history, mental or physical condition, or treatment.

'Individually Identifiable' means that the medical information includes or contains any element of personal identifying information sufficient to allow identification of the individual...".

164.    Plaintiff and Class Members are patients, and, as a health care provider, GoodRx has an ongoing obligation to comply with the CMIA's requirements.

165.    GoodRx disclosed medical information without first obtaining authorization when it disclosed to third parties Tracking Defendants Plaintiff's and Class members' data, including personally identifiable information and prescription requests. No statutory exception applies.

166.    GoodRx knowingly and willfully disclosed medical information without consent to Tracking Defendants for financial gain.  Namely, to market and advertise its services, or to allow others to market and advertise its services, in violation of Cal. Civ. Code Section 56.10, subdivision (a).

167.    At the very least, GoodRx negligently disclosed medical information in violation of Cal. Civ. Code Section 56.10, subdivision (a) through the unauthorized disclosure of Plaintiff's and Class members' sensitive medical information.

168.    Accordingly, Plaintiff and Class members are entitled to: (1) nominal damages of $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory damages pursuant to Cal. Civ. Code Section 56.35; and reasonable attorneys' fees and other litigation costs reasonably incurred.

**COUNT VIII**
**Violation of CMIA**
**Civil Code Section 56.36**

169.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

170.    Cal. Civ. Code Section 56.36(B)(3)(A) prohibits any person of entity other than a licensed health care professional from knowingly or willfully obtaining medical information for financial gain.

171. Cal. Civ. Code Section 56.36(B)(5) prohibits any person or entity who is not permitted to receive medical information under the CMIA from knowingly and willfully obtaining, disclosing, or using the medical information without written authorization.

172. The Tracking Defendants are entities who are not licensed health care professionals, and Tracking Defendants are not permitted to receive medical information under the CMIA.

173. The Tracking Defendants violated Cal. Civ. Code Sections 56.36(B)(3)(A) and (B)(5) because they knowingly and willfully obtained medical information from the GoodRx Platform without authorization for their own financial gain.

174. As described herein, the Tracking Defendants intentionally designed their software to intercept data from the websites and mobile applications in which they are incorporated.

175. The Tracking Defendants knew this software was incorporated on websites and mobile applications that would consequently lead to the interception of medical information, including medical information input in the GoodRx Platform.

176. The Tracking Defendants knowingly and willfully received this information without written authorization from Plaintiff and Class members, and did so for their own financial gain. Namely, to profit through advertising and analytics services they offer, as well as to improve their algorithms, data points, and other technologies.

177. Pursuant to Cal. Civ. Code Section 56.36(B)(3)(A) and Cal. Civ. Code Section 56.36(B)(5), the Tracking Defendants are liable for a civil penalty up to $250,000 per violation of these sections.

## COUNT IX
### Unjust Enrichment

178. Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

179. Defendants received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

180.    Defendants received benefits from Plaintiff and Class members in the form of the Plaintiff's highly valuable data, including health information and personally identifiable information, that Defendants wrongfully disclosed and intercepted from Plaintiff and Class members without authorization and proper compensation.

181.    Defendants disclosed, intercepted, stored, and used this data for their own gain, providing Defendants with economic, intangible, and other benefits, including highly valuable data for analytics, advertising, and improvement of their platforms, algorithms, and advertising services.

182.    Had Plaintiff known of Defendants' misconduct, she would not have provided any of their data to Defendants or have used or paid to use the GoodRx Platform.

183.    Defendants unjustly retained these benefits at the expense of Plaintiff and Class members because Defendants' conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

184.    The benefits that GoodRx derived from Plaintiff and Class members rightly belong to Plaintiff and Class members.  It would be inequitable under unjust enrichment principles in California and every other state for Defendants to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

185.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received, and such other relief as the Court may deem just and proper.

## <u>COUNT X</u>
### Violation of the California Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq.*

186.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

187.    GoodRx engaged in "unfair methods of competition and unfair or deceptive acts …
in a transaction … that result[ed] … in the sale … of goods" to Plaintiff and the Class members in
violation of Cal. Civ. Code § 1750 and Cal. Civ. Code § 1770(a)(5), (7), (9), (14), (16).

188.    For instance, GoodRx made representations that it would protect Plaintiff's privacy
interest, including promising that it would "never provide advertisers or any other third parties any
information that reveals a personal health condition or personal health information."

189.    GoodRx promised that it would only use "personal medical data" such as
prescription drug information in "limited cases" as necessary to fulfill the user's request.  For
instance, to text or email GoodRx coupons.

190.    It also represented in public tweets and by displaying the HIPPA seal that it
complied with HIPPA, which prohibits the disclosure of data for advertising and analytics without
written authorization from the user.

191.    GoodRx made these representations with no intention of living up to these
representations.  Contrary to these representations, GoodRx disclosed and allowed third parties to
intercept Good Rx users' sensitive data, including health data and personally identifiable
information.

192.    Further, GoodRx failed to disclose it secretly shared, used, and allowed third parties
to intercept Plaintiff's and Class members' sensitive data, including PII and health information.

193.    GoodRx was under a duty to disclose this information given its relationship with
GoodRx users and its exclusive knowledge of its misconduct (e.g., the technology incorporated on
the GoodRx platform, the data is disclosed and allowed third parties to intercept through this
technology, and how it and third parties used this data).

194.    Plaintiff and Class members would not have purchased, or would have paid
significantly less for, GoodRx services and products had GoodRx not made these false
representations. GoodRx profited directly from these sales, including through payment for these
services and products, and from the data disclosed and intercepted.

195.    Plaintiff, individually and on behalf of the Class, seeks an injunction requiring
GoodRx to obtain consent prior to disclosing and otherwise using Plaintiff's and Class members'

sensitive personal data and to delete the data already collected, and any other relief which the court deems proper.

**COUNT XI**

**Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.***

196.     Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

197.     Defendants' business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ("UCL"), because, as alleged above, Defendants violated the California common law and other statutes and causes of action described herein.

198.     Defendants' business acts and practices are "unfair" under the UCL.  California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data.  Defendants violated this public policy by, among other things, disclosing and intercepting Plaintiff's and Class members' sensitive data, including personally identifiable information and health data, without consent.

199.     GoodRx further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that it assured users it would not share with third parties, which deceived and misled users of the GoodRx platform.

200.     Defendants' business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The gravity of the harm of Defendants secretly disclosing, intercepting, and misusing Plaintiff's and Class members' sensitive personal data is significant, and there is no corresponding benefit resulting from such conduct. Finally, because Plaintiff and Class members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

201.     Defendants' business acts and practices are also "fraudulent" within the meaning of the UCL.  Defendant GoodRx disclosed, and the Tracking Defendants intercepted, a large collection of sensitive personal data, including health information and personally identifiable,

without disclosing this practice and therefore acted without users' knowledge or consent. Defendants' business acts and practices were likely to, and did, deceive members of the public including Plaintiff and Class members into believing this data was private and would not be shared with third parties.

202.    GoodRx assured users that it "never provide[s] advertisers or any other third parties any information that reveals a personal health condition or personal health information."

203.    GoodRx did not disclose that it would share this data with third parties, including with Tracking Defendants.

204.    Such information was not kept private, as GoodRx disclosed and allowed the Tracking Defendants to intercept this data.

205.    Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable.

206.    Had Plaintiff and Class members known their personal information, including health data and personally identifiable information, would be disclosed and intercepted, they would not have used or purchased, or would have paid significantly less for, GoodRx services and products.

207.    Plaintiff and Class members have a property interest in their sensitive personal data. By surreptitiously disclosing and intercepting Plaintiff's and Class members' information, Defendants have taken property from Plaintiff and Class members without providing just or any compensation.

208.    By unlawfully disclosing and intercepting this data, Defendants have taken money or property from Plaintiff and Class members.

209.    For these reasons, Plaintiff seeks at least restitution and other equitable relief on behalf of himself and Class members as a result of Defendants' violations of the UCL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.    For a determination that this action is a proper class action;

b.    For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

c.    For an order declaring that Defendants' conduct violates the statutes referenced

herein;

d.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

e.   For an award of compensatory damages, including statutory damages where available, to Plaintiff and the Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

f.   For punitive damages, as warranted, in an amount to be determined at trial;

g.   Ordering Defendants to disgorge revenues and profits wrongfully obtained;

h.   For prejudgment interest on all amounts awarded;

i.   For injunctive relief as pleaded or as the Court may deem proper;

j.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

k.   For an order granting Plaintiff and Class members such further relief as the Court deems appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated:  March 2, 2023                    **BURSOR & FISHER, P.A**.

By:   /s/ *L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            jgavenman@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Jose Marquez in this action.  Plaintiff Marquez alleges he is a citizen of Salinas, California, Monterey County.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California, this 2nd day of March, 2023.


_____
      */s/ L. Timothy Fisher*
         L. Timothy Fisher