**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
esantacana@willkie.com
TIFFANY LIN (SBN 321472)
tlin@willkie.com
YUHAN ALICE CHI (SBN 324072)
ychi@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,

Defendants.

Case No. 3:23-cv-00501-AMO

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Consolidated Complaint Filed: May 26, 2023

Date: September 14, 2023
Time: 2:00 PM
Location: Courtroom 10, 19th Floor
Judge: Hon. Araceli Martínez-Olguín

## TABLE OF CONTENTS

ISSUES PRESENTED........................................................................................................ 1
MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 2
I. INTRODUCTION ........................................................................................................ 2
II. BACKGROUND ........................................................................................................ 3
A. Factual Background. ............................................................................................ 3
B. Procedural Background.......................................................................................... 5
III. ARGUMENT ........................................................................................................ 5
A. Google Can Enforce the Arbitration Agreement Under the Doctrine of Equitable Estoppel Because Both Goldman Prongs Have Been Met. ......................... 7
(1) Arbitration Plaintiffs' Claims Against Google Rely on and are Intimately Founded and Intertwined with the GoodRx Terms. ....................... 7
(2) Arbitration Plaintiffs Allege Substantially Interdependent Acts by Google and GoodRx that are Intimately Connected with the GoodRx Terms. ............................................................................................ 9
B. The Court Should Stay This Action Pending Any Related Arbitration..................... 10
IV. CONCLUSION........................................................................................................ 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*,
622 F. Supp. 2d 825 (N.D. Cal. 2007) ....................12

*Bischoff v. DirecTV, Inc.*,
180 F. Supp. 2d 1097 (C.D. Cal. 2002) ....................12, 13, 14

*Boucher v. Alliance Title Co., Inc.*,
25 Cal. Rptr. 3d 440 (2005) ....................6, 7

*BrowserCam, Inc. v. Gomez, Inc.*,
No. C 08-02959 WHA, 2009 WL 210513 (N.D. Cal. Jan. 27, 2009)....................11

*Cohen v. CBR Sys.*,
2022 U.S. Dist. LEXIS 160865 (N.D. Cal. Sep. 6, 2022) ....................6

*Cottrell v. AT&T Inc.*,
2021 U.S. App. LEXIS 32093 (9th Cir. 2021) ....................13

*Dornaus v. Best Buy Co., Inc.*,
2019 U.S. Dist. LEXIS 24522 (N.D. Cal. Feb. 14, 2019) ....................13

*Eiss v. USAA Federal Savings Bank*,
404 F. Supp. 3d 1240 (N.D. Cal. 2019) ....................13

*Forsyth v. HP Inc.*,
2018 U.S. Dist. LEXIS 20362 (N.D. Cal. Feb 6, 2018) ....................13, 14

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) ....................6

*GE Energy Power Conversion France SAS, Corp v. Outokumpu Stainless USA, LLC, et al.*,
140 S. Ct. 1637 (2020)....................5

*Goldman v. KPMG*,
173 Cal. App. 4th 209 (2009) ....................5, 6, 7, 9

*Harris v. Pac. Gas & Elec. Co.*,
2022 U.S. Dist. LEXIS 199842 (N.D. Cal. Nov. 2, 2022)....................7

*Hodges v. Comcast Cable Commc'ns,., LLC*,
21 F.4th 535 (9th Cir. 2021) ....................13

*Lee v. Tesla, Inc.*, No. SACV2000570JVSKESX, 2020 WL 10573281 (C.D. Cal. Oct. 1, 2020) ................13, 14

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 2022 U.S. Dist. LEXIS 190413 (N.D. Cal. 2022) ....................................................6

*Mediterranean Enters, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983) ....................................................................................11

*Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705 (2003) ..............................................................................6, 10

*Morales v. Lexxiom, Inc.*, No. CV096549SVWDTBX, 2010 WL 11507515 (C.D. Cal. Jan. 29, 2010)..........................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)..........................................................................................................11

*Russell v. BMW of N. Am., LLC*, No. 2:22-cv-03299, 2022 U.S. Dist. LEXIS 238228 (C.D. Cal. Oct. 14, 2022) .......................6

*In re Samsung Galaxy Smartphone Mktg. and Sales Pracs Litig.*, 298 F. Supp. 3d 1285 (N.D. Cal. 2018) ....................................................................11

*Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051 (9th Cir. 2020) ........................................................................................7

*Tarbell v. Caliber Home Loans, Inc.*, No. 2:20-cv-01679-KJM-CKD, 2021 U.S. Dist. LEXIS 48386 (E.D. Cal. Mar. 15, 2021) ..............................................................................................................12

*Trinchitella v. Am. Realty Partners, LLC*, 2016 U.S. Dist. LEXIS 98265 (E.D. Cal. July 27, 2016) .....................................................12

**Statutes**

California Business and Professions Code §§ 17200 *et. seq.* ......................................................5

California Consumers Legal Remedies Act §§ 1750, *et. seq.*......................................................5

California Invasion of Privacy Act ("CIPA") §§ 631, 632 ..................................................5, 8, 9

California Medical Information Act ("CMIA") §§ 56.06, 56.101, 56.10, 56.36.......................5, 8

Illinois Consumer Fraud and Deceptive Business Practices Act § 505/1, *et seq*..........................5

New York General Business Law § 349 ..................................................................5, 9

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on September 14, 2023, at 2:00 PM, the undersigned will appear before the Honorable Araceli Martínez-Olguín of the United States District Court for the Northern District of California at the San Francisco Courtroom 10, 19th Floor, and shall then and there present Defendant Google LLC ("Google")'s Motion to Compel Arbitration and to Stay Proceedings.

Google moves for an order compelling Jane Doe, Jane Doe II, John Doe, and Jose Marquez to submit their claims against Google to final and binding individual arbitration in the event that Plaintiffs are compelled to arbitration with GoodRx Holdings, Inc. ("GoodRx") for claims in this action. Google seeks this relief on the basis of equitable estoppel. Google further seeks a stay of this action in its entirety pending arbitration. This Motion is based on the Memorandum of Points and Authorities below, the pleadings and other papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

**ISSUES PRESENTED**

If Plaintiffs Jane Doe, Jane Doe II, John Doe, and Jose Marquez are compelled to arbitration with GoodRx for the claims in this action, whether Plaintiffs should likewise be compelled to arbitrate their claims against Google under the doctrine of equitable estoppel, and whether proceedings should be stayed pending arbitration.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The plaintiffs identified in GoodRx's Motion to Compel Arbitration ("Arbitration Plaintiffs")[1] (Dkt. 107) agreed to arbitrate any claims arising out of or related to their use of GoodRx's services. If the Court grants GoodRx's motion to compel arbitration, the Court should also compel the Arbitration Plaintiffs to arbitrate their claims against Google under the doctrine of equitable estoppel. Equitable estoppel counsels in favor of arbitration even in the absence of an arbitration agreement between Google and the Arbitration Plaintiffs because (1) their claims against Google rely on and are "intimately founded in and intertwined with" their underlying contract with GoodRx; and (2) they allege substantially interdependent and concerted conduct by Google and GoodRx. Either of these factors alone is sufficient to compel arbitration of the claims against Google, and here both are present. The gravamen of the Arbitration Plaintiffs' claims—that GoodRx transmitted certain data to Google about their use of the GoodRx platform in violation of its promises to them—is fundamentally connected to, and dependent on, both Arbitration Plaintiffs' agreement with GoodRx and their use of the GoodRx platform. Further, the claims against Google cannot stand absent the claims against GoodRx. Accordingly, Google respectfully requests that the Court compel the Arbitration Plaintiffs to also arbitrate their claims against Google.

Google also requests a stay of all the claims against Google pending the outcome of any arbitration for two reasons. *First*, if the Arbitration Plaintiffs are compelled to arbitrate with GoodRx, but the Court declines to apply the doctrine of equitable estoppel to Google, this Court should nonetheless stay the Arbitration Plaintiffs' claims against Google. Courts have discretion to grant a stay of litigation against a non-signatory to an arbitration agreement pending the

---

[1] There are two additional plaintiffs named in the Consolidated Class Action Complaint: Hollis Wilson and E.C. As stated in GoodRx's Motion to Compel Arbitration, GoodRx has been unable to confirm that either Wilson or E.C. used GoodRx's services or agreed to arbitrate their claims. GoodRx Mot. at 1, n. 1. Google does not waive, and reserves the right, to seek to compel Wilson and E.C.'s claims to arbitration if GoodRx moves to compel arbitration of their claims in the future.

outcome of the plaintiffs' related arbitration against the signatory defendant. Doing so favors efficiency and avoids confusion and/or inconsistent rulings. *Second*, with respect to the plaintiffs who may not have entered into arbitration agreements with GoodRx (Hollis Wilson and E.C., together the "Non-Arbitration Plaintiffs"), the Court should stay proceedings pending the outcome of the Arbitration Plaintiffs' arbitration with GoodRx (and Google, if appropriate). The claims brought by the Non-Arbitration Plaintiffs are indistinguishable from those brought by the Arbitration Plaintiffs. Accordingly, here too a stay would prevent the parallel litigation of overlapping legal and factual issues and conserve judicial and party resources.

## II. BACKGROUND

### A. *Factual Background.*

GoodRx offers coupons and other services that allow its users to track and otherwise obtain affordable discounts on prescription drugs from pharmacies across the country. GoodRx provides its services to users through both a website and mobile applications (collectively, the "GoodRx Platform" or "Platform"). Users can choose to create an account with GoodRx by providing basic contact information such as their name and email address. Both Arbitration Plaintiffs and Non-Arbitration Plaintiffs, users of the GoodRx Platform, allege that GoodRx disclosed their sensitive health data and personal information to advertising and technology companies including Defendants Criteo, Meta, and Google (collectively, the "Analytics Defendants"). *See, e.g.*, Compl. ¶¶ 113, 154, 168.[2] Specifically, Arbitration Plaintiffs and Non-Arbitration Plaintiffs allege that GoodRx implemented the Analytics Defendants' tracking technologies on its Platform, including software development kits ("SDK") and tracking pixels, and disclosed Arbitration Plaintiffs' information to Analytics Defendants without their consent. Compl. ¶¶ 61-65, 139, 154, 159-60. Arbitration and Non-Arbitration Plaintiffs allege that Analytics Defendants received, and thereby allegedly "intercepted" and used their sensitive information from the GoodRx Platform for advertising purposes, among other things. *See, e.g.*, Compl. ¶ 62. With respect to Google,

[2] For the purposes of this Motion, "Complaint" or "Compl." refers to the Consolidated Complaint filed on May 26, 2023. Dkt. 102.

Arbitration and Non-Arbitration Plaintiffs allege that Google "knew that the incorporation of its software into the GoodRx Platform would result in its interception of sensitive information" and that "Google took no action to prevent its tracking technology from being embedded on the GoodRx Platform" or "to prevent its interception and use of GoodRx users' sensitive health data." Compl. ¶¶ 80, 83, 84.

GoodRx's Terms of Use ("Terms") and Privacy Policy ("Privacy Policy" or "Policy") govern users' access to and use of the GoodRx Platform. The Terms indicate to users that "[b]y accessing or using the Services, you confirm your agreement to be bound by these Terms, including the information set forth in our privacy policy." *See* GoodRx Motion to Compel Arbitration ("GoodRx Mot."), Dkt. No. 107, at 5-8. GoodRx's services include an online discount coupon program, referral program, visits to healthcare providers, and other pharmaceutical and medical services. *See* Agnolucci Decl. at Ex. A. The GoodRx Privacy Policy further states, "[w]e may use other companies' analytics, tracking, and provided tools that receive information . . . to help us track, segment, and analyze usage of the Services."[3] *Id.* As a condition of accessing and using GoodRx's Services, Arbitration Plaintiffs agreed to GoodRx's Terms. GoodRx Mot. at 3-4.

Under the Arbitration Agreement section of the Terms (the "Arbitration Agreement" or "Agreement"), Arbitration Plaintiffs agreed to individually arbitrate "any dispute, claim or controversy ***arising out of or relating to***" "these Terms," including "any disputes relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement" and "all threshold arbitrability issues." GoodRx Mot. at 9-10 (emphasis added). Further, the Agreement contains a class action waiver provision. *Id.* at 8.

---

[3] Prior iterations of GoodRx's Privacy Policy dating from the first time an Arbitration Plaintiff consented to the Terms contain similar language indicating that GoodRx incorporates tracking technology and other tools on its platform, which may include third-party tools. Some examples of those prior iterations dating from 2019 to 2022 are attached as Ex. B to D. Agnolucci Decl. at ¶¶ 3-5.

**B. *Procedural Background.***

On May 26, 2023, Arbitration Plaintiffs and Non-Arbitration Plaintiffs, together, filed a Consolidated Complaint ("Complaint") against all Defendants, alleging sixteen causes of action: (1) intrusion upon seclusion (against all Defendants); (2) intrusion upon seclusion (against Analytics Defendants); (3) unjust enrichment (against all Defendants); (4) violation of California Confidentiality of Medical Information Act ("CMIA") § 56.06 (against GoodRx); (5) violation of CMIA § 56.101 (against GoodRx); (6) violation of CMIA § 56.10 (against GoodRx); (7) aiding and abetting violation of CMIA §§ 56.06, 56.101, 56.10 (against Analytics Defendants); (8) violation of CMIA § 56.36 (against Analytics Defendants); (9) violation of the California Invasion of Privacy Act ("CIPA") § 631 (against all Defendants); (10) violation of CIPA § 632 (against Analytics Defendants); (11) violation of the California Consumers Legal Remedies Act ("CLRA") §§ 1750, *et. seq.* (against GoodRx); (12) violations of California Business and Professions Code §§ 17200 *et. seq.* (against all Defendants); (13) violation of New York General Business Law § 349 (against all Defendants); (14) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act § 505/1, *et seq*. (against all Defendants); (15) Negligence *Per Se* (in the alternative against GoodRx); and (16) Common Law Negligence (in the alternative against GoodRx). Dkt. 102.

## III. ARGUMENT

The FAA permits non-signatories to an arbitration agreement to rely on state-law equitable estoppel doctrines to enforce the agreement. *See GE Energy Power Conversion France SAS, Corp v. Outokumpu Stainless USA, LLC, et al*., 140 S. Ct. 1637, 1643-44 (2020). Under California law, non-signatories to an arbitration agreement (such as Google, in this case) can compel arbitration in either of two different circumstances (the "*Goldman* prongs"):

> (1) [W]hen a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC*, 2022 U.S. Dist. LEXIS 190413, at *22-23 (N.D. Cal. 2022) (quoting *Goldman v. KPMG*, 173 Cal. App. 4th 209, 219-221 (2009); *see also Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705, 1713 (2003) (equitable estoppel applies to a signatory suing a nonsignatory for "claims that are 'based on the same facts and are inherently inseparable' from arbitrable claims against signatory defendants.") Equitable estoppel applies if either circumstance is satisfied. *See generally*, *Goldman*, 173 Cal. App. 4th. Here, both circumstances are present.

As to the first *Goldman* prong, the causes of action against the non-signatory must "rely on and presume the existence of the contract" with the signatory. *Boucher v. Alliance Title Co., Inc.*, 25 Cal. Rptr. 3d 440, 444 (2005). To determine whether the causes of action rely on the agreement, courts look at "whether the claims that the nonsignatory sought to arbitrate were "intimately founded in and intertwined with the underlying contract obligations."" *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 871 (9th Cir. 2021) (ordering signatory plaintiff to arbitrate claims against nonsignatory defendant). The focus of the inquiry is on the nature of the underlying claims asserted by the plaintiff against the non-signatory. *Boucher*, 25 Cal. Rptr. 3d at 446 (citing *Sunkist Soft Drinks v. Sunkist Growers*, 10 F.3d 753 (11th Cir. 1993). As to the second *Goldman* prong, the key is the connection between the alleged interdependent and concerted misconduct and the obligations imposed in the underlying agreement. *See Goldman*, 173 Cal. App. 4th at 219.

The linchpin of equitable estoppel is fairness. *Id.* Thus, where the *Goldman* standard is met, courts can compel a signatory to an arbitration agreement to arbitrate with a nonsignatory to that agreement. *See Russell v. BMW of N. Am., LLC*, No. 2:22-cv-03299, 2022 U.S. Dist. LEXIS 238228, at *14 (C.D. Cal. Oct. 14, 2022) (granting motion to compel arbitration, staying proceedings, and declining to address the second *Goldman* prong after the first was satisfied); *see also Boucher*, 25 Cal. Rptr. 3d (ordering signatory plaintiff to arbitrate claims against non-signatory defendant) (citations omitted); *Cohen v. CBR Sys.*, 2022 U.S. Dist. LEXIS 160865 (N.D.

Cal. Sep. 6, 2022) (same); *Harris v. Pac. Gas & Elec. Co.*, 2022 U.S. Dist. LEXIS 199842 (N.D. Cal. Nov. 2, 2022) (same); *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051 (9th Cir. 2020) (affirming same).

**A. *Google Can Enforce the Arbitration Agreement Under the Doctrine of Equitable Estoppel Because Both Goldman Prongs Have Been Met.***

Under the doctrine of equitable estoppel, Google can compel Arbitration Plaintiffs to arbitration on an individual basis pursuant to their Agreement with GoodRx. Arbitration with Google is proper because first, Arbitration Plaintiffs rely on the GoodRx Terms of Use in asserting their claims against Google, and their claims are "intimately founded and intertwined with" the Terms, and second, Arbitration Plaintiffs allege "substantially interdependent and concerted" acts by Google and GoodRx that are "intimately connected with the obligations of the" Terms and Privacy Policy. *Goldman*, 173 Cal. App. 4th at 218-219.

**(1) *Arbitration Plaintiffs' Claims Against Google Rely on and are Intimately Founded and Intertwined with the GoodRx Terms.***

As to the first *Goldman* prong, Arbitration Plaintiffs' allegations in the Complaint, including those against Google, rely on and are intimately founded and intertwined with Arbitration Plaintiffs' agreement with GoodRx. Each claim against Google and Analytics Defendants "rel[ies] on, make[s] reference to, and presume[s] the existence of" Arbitration Plaintiffs' agreement with GoodRx, without which Arbitration Plaintiffs could not use the GoodRx platform, and which included the policies Arbitration Plaintiffs claim were violated. *See* Compl. Counts I-III, VII-X, XII-XIV; *see Boucher*, 25 Cal. Rptr. 3d at 447. Arbitration Plaintiffs allege that in connection with their use of the GoodRx platform, their information was disclosed without consent to Defendants *in contravention of GoodRx's policies and representations*—including specifically the policies and representations in GoodRx's Privacy Policy. *See, e.g.*, Compl. ¶¶ 12, 103-109. Indeed, many of the claims against Google either explicitly cite GoodRx's representations or are based upon them:

- Count One is an invasion of privacy claim alleging that Arbitration Plaintiffs had a reasonable expectation of privacy in their information <u>based on GoodRx's representations</u>

and Arbitration Plaintiffs "did not consent to, authorize, or know about GoodRx's intrusion" and "never agreed that GoodRx could disclose their data to third parties," including because the disclosures allegedly contravened GoodRx's privacy representations and policies. Compl., ¶¶ 103-109, 235, 239.

- Count Two is an invasion of privacy claim alleging that Arbitration Plaintiffs "reasonably expected, based on GoodRx's repeated assurances, that their information would not be disclosed" to Google, that Defendants' conduct "was contrary to the actual representations made by GoodRx", and therefore, that Arbitration Plaintiffs "did not consent to, authorize, or know about" and "never agreed" to the disclosures at issue. Compl., ¶¶ 103-109, 253, 255.
- Count Three is an unjust enrichment claim alleging that Defendants were purportedly unjustly enriched because they allegedly obtained Arbitration Plaintiffs' data from GoodRx "without authorization" and "[h]ad Plaintiffs known of Defendants' misconduct, she would not have provided any of their data . . . or paid to use the GoodRx Platform." Compl., ¶¶ 264, 266.
- Count Seven alleges Analytics Defendants aided and abetted GoodRx's violations of the California Confidentiality of Medical Information Act (CIMA) as alleged in Counts Four-Six against GoodRx. Those Counts in turn allege that GoodRx violated CIMA because it disclosed Arbitration Plaintiffs' information without consent (*i.e.*, in contravention or in excess of what Plaintiffs agreed to under the Privacy Policy). Compl., ¶¶ 275, 277, 288, 290.
- Count Eight alleges Analytics Defendants violated CIMA because "Analytics Defendants . . . obtained medical information from the GoodRx Platform without authorization" because GoodRx allegedly sent such data to Analytics Defendants without Arbitration Plaintiffs' consent. Compl., ¶¶ 301, 303, 306.

- Count Nine alleges Defendants violated California Invasion of Privacy Act (CIPA) by purportedly "intercepting" Arbitration Plaintiffs' communications to GoodRx without authorization. Compl., ¶¶ 61, 63, 65, 154, 159-160, 314, 315, 317, 318.
- Count Ten alleges Analytics Defendants violated the provision of CIPA that prohibits intentionally recording a confidential communication without the consent of all parties to the confidential communication. Arbitration Plaintiffs allege they had a reasonable expectation of confidentiality, "in part, because of GoodRx's consistent representations." Compl., ¶¶ 322, 323, 325, 328.
- Count Twelve alleges Defendants violated California's unfair competition law (UCL) because Defendants improperly intercepted Arbitration Plaintiffs' data because "GoodRx assured users that" it would not [certain information] with third parties." Compl., ¶¶ 347-352.
- Count Thirteen alleges Defendants violated New York General Business Law § 349 because "GoodRx . . . made material misrepresentations and omissions concerning the information that it assured users it would not share with third parties." Compl., ¶¶ 364-366.

In sum, the claims against the Analytics Defendants are based on the allegation that GoodRx disclosed information to Analytics Defendants in violation of the privacy representations and policies primarily contained in the GoodRx Terms. Resolution of the dispute will therefore undoubtedly involve interpretation of the text of GoodRx's Terms. *See Goldman*, 173 Cal. App. at 4th at 223-24. Because Plaintiffs' Complaint raises issue with what they consented to, Plaintiffs cannot dispute that their claims rely on and are intimately founded upon the GoodRx Terms. This satisfies *Goldman*'s first prong. The Court can, and Google respectfully requests that it does, compel arbitration on this basis.

**(2) *Arbitration Plaintiffs Allege Substantially Interdependent Acts by Google and GoodRx that are Intimately Connected with the GoodRx Terms.***

Satisfaction of the first *Goldman* prong alone is a sufficient basis for this Court to compel arbitration pursuant to equitable estoppel. Even if it were not, *Goldman*'s second prong is also

satisfied by Plaintiffs claims. As to the second prong, the facts that form the basis of the claims against Google are inseparable from those that form the basis of claims against GoodRx. Arbitration Plaintiffs allege that Google's technology and software are "embedded" or "incorporated" on GoodRx's platform, and that their information was "shared" with or "communicated" to Google through GoodRx's Platform in violation of the underlying privacy agreement. *See, e.g.*, Compl. ¶¶ 17, 18, 61, 63 83, 167, 213, 277. The allegations against both parties depend on the exact same factual bases—Arbitration Plaintiffs' use of GoodRx. *See Metalclad*, 109 Cal. App. 4th at 1718. Arbitration Plaintiffs necessarily rely on GoodRx's conduct and corresponding privacy and confidentiality obligations to assert allegations against Google, who simply "took no action to ***prevent*** its tracking technology from being embedded on the GoodRx Platform," or to prevent its receipt of allegedly sensitive data from GoodRx. Compl. ¶ 83 (emphasis added). The claims against Google thus depend on, and are inseparable from, the alleged conduct *of GoodRx*, and how that conduct is alleged to have violated the policies or actual terms of the contract between Plaintiffs and GoodRx. This satisfies *Goldman's* second prong.

The allegations against Google cannot exist independent of Arbitration Plaintiffs' use of GoodRx. Nowhere in the Complaint do Arbitration Plaintiffs raise a claim against Google without mention of GoodRx. Consistent with principles of fairness and equity, Arbitration Plaintiffs "cannot avoid the arbitration obligation imposed by its agreement with [GoodRx]" while also attempting to enforce its duties on Defendants, including Google. *Metalclad*, 109 Cal. App. 4th at 1718. Under the doctrine of equitable estoppel, Google is entitled to enforce the arbitration provision of the Agreement. That provision also contains an enforceable class action waiver provision. Accordingly, Google requests that the named Arbitration Plaintiffs be compelled to arbitration on an individual basis.

**B. *The Court Should Stay This Action Pending Any Related Arbitration***

Google respectfully requests that this Court stay all the claims against Google pending the outcome of any arbitration in two scenarios. *First*, if the Arbitration Plaintiffs are compelled to arbitrate with GoodRx, but the Court declines to compel Arbitration Plaintiffs to arbitrate as to

Google, this Court should nonetheless stay the Arbitration Plaintiffs' claims against Google. *Second*, the Court should stay proceedings with the Non-Arbitration Plaintiffs pending the outcome of the Arbitration Plaintiffs' arbitration with GoodRx (and Google, if appropriate).

District courts have broad discretion to stay litigation among non-arbitrating parties pending arbitration. *See, e.g., Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n.23 (1983) (district court has "discretion" to "stay litigation among the non-arbitrating parties pending the outcome of the arbitration); *Mediterranean Enters, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (district court can stay a case "pending resolution of independent proceedings which bear upon the case") (cleaned up). The court may consider judicial "economy and efficiency" in exercising such discretion. *BrowserCam, Inc. v. Gomez, Inc.*, No. C 08-02959 WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (the court has "discretion [to decide] whether to stay, for 'considerations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration") (cleaned up).

*First*, even if the Court denies Google's request to compel the claims brought by the Arbitration Plaintiffs against Google under the doctrine of equitable estoppel, those claims should be stayed pending arbitration with GoodRx. *See In re Samsung Galaxy Smartphone Mktg. and Sales Pracs Litig.*, 298 F. Supp. 3d 1285, 1304 (N.D. Cal. 2018) (granting motion to compel arbitration and staying proceedings, noting "[t]his Court and other courts have stayed all claims in an action even if only some of the claims will be arbitrated) (citations omitted); *BrowserCam*, 2009 WL 210513 at *3 ("It is [] within a district court's discretion whether to stay, for '[c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration.") (citing *U.S. for Use & Benefit of Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1426–27 (9th Cir. 1985) (affirming district court's decision to stay all proceedings, including non-arbitrable third-party claim based on "[c]onsiderations of economy and efficiency")); *Morales v. Lexxiom*, *Inc.*, No. CV096549SVWDTBX, 2010 WL 11507515, at *13-14 (C.D. Cal. Jan. 29, 2010) (ordering a "broad stay" on proceedings where "it would be inexpedient and unduly complicated to sift through the[] various claims" as [t]he outcome of

arbitration will address many, if not all, of the[] assorted issues."); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1114–15 (C.D. Cal. 2002) ("[w]hile all of these parties are not signatories to the [arbitration] Agreement, a stay of all issues, and as to all parties, is warranted when questions of fact common to all would be involved in both the litigation and the arbitration"; holding that the stay would apply to all claims and all parties including other defendants).

Allowing the Arbitration Plaintiffs to litigate this action against Google while simultaneously proceeding to arbitration with GoodRx would create substantial risk of confusion and inconsistent results. *See Tarbell v. Caliber Home Loans, Inc.*, No. 2:20-cv-01679-KJM-CKD, 2021 U.S. Dist. LEXIS 48386, at *8 (E.D. Cal. Mar. 15, 2021); *Amisil Holdings Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 942 (N.D. Cal. 2007). As detailed above, all of the Arbitration Plaintiffs' alleged injuries arise out of the same set of facts as to Google and GoodRx––specifically to the alleged collection of sensitive data by GoodRx. Indeed, as to GoodRx, the arbitrator would be resolving—or at the very least simplifying—questions determinative of the issues relevant to the lawsuit against Google. A stay is warranted in such instances where the "similarity of the issues of law and fact," surrounding the alleged conduct threatens the economy and efficiency of the judicial process. *Trinchitella v. Am. Realty Partners, LLC*, 2016 U.S. Dist. LEXIS 98265, at *39 (E.D. Cal. July 27, 2016); *Bischoff*, 180 F. Supp. 2d at 1114–15 ("the similarity of the issues of law and fact in this case to those that will be considered during arbitration, as well as the potential for inconsistent findings absent a stay, persuade the Court that a stay is warranted").

The fact that the Arbitration Plaintiffs' claims purport to include a request for public injunctive relief does not change this analysis. As discussed in GoodRx's Motion, the Arbitration Plaintiffs are seeking injunctive relief for a defined subset of the population, not relief that will benefit the general public. GoodRx Mot. at 20. Arbitration Plaintiffs seek an order requiring Google to cease the alleged use of ***GoodRx users'*** data and to permanently delete any such data. Compl. ¶ 215 (emphasis added). The requested relief sought would only benefit a "discrete subset of similarly situated persons"—GoodRx users only—and therefore is not a proper request for

public injunctive relief. *See Hodges v. Comcast Cable Commc'ns,., LLC*, 21 F.4th 535, 548 (9th Cir. 2021) (request to enjoin the collection of subscriber information by a cable company does not constitute public relief because it was for a discrete subset of similarly-situated individuals, not the general public as a whole); *Cottrell v. AT&T Inc.*, 2021 U.S. App. LEXIS 32093, at *4 (9th Cir. 2021).

Further, the requested injunctive relief could not prevent future harm because, as Plaintiffs concede, the consent decree entered into between the FTC and GoodRx has already agreed to address the alleged disclosure of GoodRx user information. the alleged disclosure and use of GoodRx user information. *See* Compl. ¶¶ 196-97; GoodRx Mot. at 20-21. Accordingly, those claims are arbitrable and should be stayed along with the rest of the Arbitrating Plaintiffs' claims. And even if this Court finds they are not arbitrable, courts routinely stay requests for public injunctive relief pending the outcome of arbitration of accompanying arbitrable claims. *See, e.g.*, *Eiss v. USAA Federal Savings Bank*, 404 F. Supp. 3d 1240 (N.D. Cal. 2019) (balancing the potential damage or hardship at stake with the efficiencies of arbitration proceedings and staying claim for public injunctive relief pending arbitration); *Dornaus v. Best Buy Co., Inc.*, 2019 U.S. Dist. LEXIS 24522, at *16 (N.D. Cal. Feb. 14, 2019) (staying action, including as to plaintiff's claim for public injunctive relief, where all other "predominat[ing]" issues are subject to arbitration).

*Second*, the claims brought by the Non-Arbitration Plaintiffs should also be stayed because of the substantial overlap between the claims brought by the Arbitration and Non-Arbitration Plaintiffs. This court's power to grant a stay pending arbitration applies equally to claims brought by plaintiffs who did not sign an arbitration agreement. *See, e.g., Forsyth v. HP Inc.*, 2018 U.S. Dist. LEXIS 20362, at *9 (N.D. Cal. Feb 6, 2018); *Lee v. Tesla, Inc.*, No. SACV2000570JVSKESX, 2020 WL 10573281, at *6 (C.D. Cal. Oct. 1, 2020) (slip copy); *Bischoff*, 180 F. Supp. 2d at 1114–15.

In *Lee*, a group of plaintiffs sued Tesla. Some plaintiffs had signed binding arbitration agreements; their claims proceeded in arbitration. Other plaintiffs had not signed arbitration

agreements. The court stayed the non-arbitrating plaintiffs' claims, finding they were "highly interdependent" with the arbitrating plaintiffs' claims, and that a stay would avoid the possibility of inconsistent judgments. *Id.* So too here: the claims brought by Non-Arbitration Plaintiffs are identical to those brought by the Arbitration Plaintiffs. As in *Lee*, a stay of proceedings will be efficient due to the highly interdependent nature of the claims raised by Arbitration and Non-Arbitration Plaintiffs. *See id.* at *10. Accordingly, this Court should stay litigation against the Non-Arbitration Plaintiffs. *See id.; see also Forsyth v. HP Inc.*, 2018 U.S. Dist. LEXIS 20362, at *9; *Bischoff*, 180 F. Supp. 2d at 1114–15 (granting stay even where "many of the plaintiffs are not subject to the arbitration provision").

## IV. CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court grant this motion to compel arbitration, and stay proceedings pending the outcome of arbitration.

Respectfully submitted,

**WILLKIE FARR & GALLAGHER LLP**

Dated: June 16, 2023

By: *<u>/s/ Benedict Y. Hur</u>*
Benedict Y. Hur
Simona Agnolucci
Eduardo E. Santacana
Tiffany Lin
Yuhan Alice Chi

*Attorneys for Defendant*
*Google LLC*