Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 74205
Telephone: (214) 972-1758
Facsimile: (214) 972-1771

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | CASE NO. 3:23-CV-00501-AMO<br><br>**DEFENDANT GOODRX HOLDINGS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Honorable Araceli Martínez-Olguín<br>Action Filed: May 26, 2023<br>Hearing Date: October 12, 2023<br>Time: 2:00 PM<br>Courtroom: 10, 19th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 12, 2023 at 2:00 PM, or as soon thereafter as the matter may be heard, in Courtroom 10, 19th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, Defendant GoodRx Holdings, Inc. ("GoodRx"), will, and hereby does, move the Court for an order dismissing Plaintiffs' Consolidated Class Action Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) on the ground that the Complaint fails to state any claim upon which relief may be granted and, for the claims sounding in fraud, fails to state with particularity the circumstances constituting the fraud. This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declaration of Gracye Cheng ("Cheng Decl."), the concurrently filed Request for Judicial Notice, and such other matters, both oral and documentary, as may properly come before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

This Court must decide whether the claims against GoodRx should be dismissed (1) under Rule 12(b)(6) for failure to state a claim and (2) for the claims sounding in fraud, under Rule 9(b) for failure to state with particularity the circumstances constituting fraud.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. GoodRx's Services ..... 2

B. GoodRx's Alleged Use of Vendors and Associated Data Sharing ..... 3

C. GoodRx's Privacy Policy and Terms of Use ..... 4

III. LEGAL STANDARD ..... 5

IV. ARGUMENT ..... 5

A. Half of Plaintiffs' Claims Against GoodRx Fail for Lack of Standing. ..... 5

1. California UCL (Count XII) and CLRA (Count XI) ..... 6

2. New York GBL (Count XIII) ..... 8

3. ICFA (Count XIV) ..... 9

4. Negligence and Negligence Per Se (Counts XVI and XV) ..... 9

B. The Claims Fail for Additional, Independent Reasons. ..... 10

1. GoodRx Is Not Subject to the CMIA (Counts IV-VI) ..... 10

2. Plaintiffs' Invasion of Privacy Claim Fails (Count I) ..... 13

3. Plaintiffs Have Not Stated A Claim Under CIPA (Count IX) ..... 15

4. Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard, as Required for UCL (Count XII), CLRA (Count XI), & ICFA (XIV) ..... 17

5. Plaintiffs Are Not Entitled to Restitution or Injunctive Relief, Thus Precluding Their UCL Claim (Count XII) from Proceeding ..... 19

6. Plaintiffs Have Not Alleged a "Benefit" Necessary to State a Claim for Unjust Enrichment (Count III) ..... 20

7. Plaintiffs Fail to Allege Any Actionable Duty or Theory of Injury Necessary to State a Claim for Negligence (Counts XV and XVI) ..... 22

8. Plaintiffs' Time-Barred Claims Must be Dismissed and Cannot Be Extended Based on Fraudulent Concealment ..... 23

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES


Page(s)

**Cases**

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994) ....................22

*Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807 (2011) ....................7

*Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796 (2006) ....................6

*In re Arthur J. Gallagher Data Breach Litig.*, 2022 WL 4535092 (N.D. Ill. Sept. 28, 2022) ....................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....................5

*Bank of the W. v. Superior Court*, 2 Cal. 4th 1254 (1992) ....................19

*Belluomini v. Citigroup Inc.*, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013)....................15

*Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271 (9th Cir. 1988) ....................25

*Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166 (1998) ....................23

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021) ....................24

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014) ....................9, 17, 19

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................9

*Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499 (9th Cir. 1988) ....................24

*Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561 (N.D. Ill. 2020) ....................9

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (1989) ....................................................................................21

*Doe v. SuccessfulMatch.com*,
70 F. Supp. 3d 1066 (N.D. Cal. 2014) ........................................................................18

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ....................................................................................6

*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) ......................................................................................13

*Erhart v. BofI Holding, Inc.*,
269 F. Supp. 3d 1059 (S.D. Cal. 2017).......................................................................11

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) ....................................................................................20

*Evan F. v. Hughson United Methodist Church*,
8 Cal. App. 4th 828 (1992) ..........................................................................................22

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) ..........................................................................7

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011) ..........................................................................8

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..................................................................4, 6, 7

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ......................................................................................15

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) ....................................................................................19

*G.H.I.I. v. MTS, Inc.*,
147 Cal. App. 3d 256 (1983) ......................................................................................24

*Gardner v. Walmart Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021)..........................................................7, 22, 23

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ......................................................................................5

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013).........................................................4, 7, 22

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 7

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 13, 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 17

*Greystone Homes, Inc. v. Midtec, Inc.*,
168 Cal. App. 4th 1194 (2008) .......... 23

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 16

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) .......... 24, 25

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 13

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......... 7, 8, 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 14, 22

*Jackson v. Loews Hotels, Inc.*,
2019 WL 6721637 (C.D. Cal. July 24, 2019) .......... 8

*Johnston v. Covidien, L.P.*,
2019 WL 2410720 (N.D. Cal. Jun. 7, 2019) .......... 24

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
315 F. App'x 603 (9th Cir. 2008) .......... 22

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 17

*Khorloo v. John C. Heath Att'y at Law*,
2020 WL 1530735 (N.D. Ill. Mar. 31, 2020) .......... 9

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) .......... 9

*Korea Supply Co. v. LockheedMartin Corp.*,
29 Cal. 4th 1134 (2003) .......... 19, 20

*Kurowski v. Rush Sys. for Health*,
2023 WL 2349606 (N.D. Ill. Mar. 3, 2023)....................9

*Kwikset Corp. v. Superior Court*,
246 P.3d 877 (Cal. 2011)....................6

*LeBrun v. CBS Television Studios, Inc.*,
68 Cal. App. 5th 199 (2021)....................21

*Licea v. Cinmar, LLC*,
2023 2415592 (C.D. Cal. Mar. 7, 2023)....................17

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................14

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005)....................20

*Mohandas v. Wells Fargo Bank, N.A.*,
2022 WL 17254847 (C.D. Cal. July 5, 2022)....................9, 23

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016)....................8

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014)....................17

*Oddei v. Optum, Inc.*,
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022)....................10

*Ott v. Alfa-Laval Agri, Inc.*,
31 Cal. App. 4th 1439 (1995)....................23

*Paduano v. Am. Honda Motor Co., Inc.*,
169 Cal. App. 4th 1453 (2009)....................6

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008)....................21

*Phillips v. Apple Inc.*,
2016 WL 1579693 (N.D. Cal. Apr. 19, 2016)....................18

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011)....................17, 19

*Quan v. Smithkline Beecham Corp.*,
149 F. App'x 668 (9th Cir. 2005)....................24

*Quiroz v. Seventh Ave. Ctr.*,
140 Cal. App. 4th 1256 (2006) ....................23

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................8

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008), *aff'd Ruiz v. Gap, Inc.*, 380 F. App'x 689 (9th Cir. 2010) ....................7

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ....................24

*Scripps Health v. Marin*,
72 Cal. App. 4th 324 (1999) ....................20

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ....................20

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (2020) ....................8, 9

*Smith v. Facebook*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................12, 13, 15

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ....................19

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ....................7, 9, 22

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ....................22, 23

*SpeedFit LLC v. LifeCore Fitness, Inc.*,
2023 WL 199595 (S.D.N.Y. Jan. 17, 2023) ....................24

*Stoops v. Abbassi*,
100 Cal. App. 4th 644 (2002) ....................22

*Sun Microsystems, Inc. v. Microsoft Corp.*,
188 F.3d 1115 (9th Cir. 1999) ....................20

*TBG Ins. Servs. Corp. v. Superior Ct.*,
96 Cal. App. 4th 443 (2002) ....................13, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................1

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. Mar. 4, 2016) ....................14, 23

*Troyk v. Farmers Grp., Inc.*,
171 Cal. App. 4th 1305 (2009) ....................6

*Tumual v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................24

*Tyler v. Bank of New York Mellon*,
2020 WL 2735367 (N.D. Ill. May 26, 2020) ....................24

*Vann v. Aurora Loan Servs. LLC*,
2011 WL 2181861 (N.D. Cal. June 3, 2011) ....................23

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ....................16

*Weber v. Dep't of Veterans Affairs*,
521 F.3d 1061 (9th Cir. 2008) ....................5

*Wu v. Sunrider Corp.*,
793 F. App'x 507 (9th Cir. 2019) ....................24

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ....................17

**Statutes**

18 U.S.C. § 2510 ....................16

18 U.S.C. § 2511 ....................15

Cal. Bus & Prof. Code § 17204 ....................6

Cal. Civ. Code § 56.05(i) ....................11

Cal. Civ. Code § 56.05(d) ....................10

Cal. Civ. Code § 56.05(j) ....................13

Cal. Civ. Code § 56.05(o) ....................11

Cal. Civ. Code § 56.06(d) ....................10

Cal. Civ. Code § 56.35 ....................24

Cal. Civ. Code § 1780(a) ....................6

Cal. Civ. Code § 1783 ....................24

Cal. Civ. Code § 3515 .......... 13

Cal. Civ. Proc. Code § 335.1 .......... 24

Cal. Code Civ. Proc. § 340(a) .......... 24

Cal. Evid. Code § 669 .......... 23

Cal. Penal Code § 630 .......... 17

Cal. Penal Code § 631(a) .......... 15, 16

New York General Business Law § 349 .......... 8

**Rules**

Fed. R. Civ. P. 9(b) .......... 2, 17, 18, 19

Fed. R. Civ. P. 12(b)(6) .......... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Since its inception in 2011, GoodRx has helped millions of Americans save billions of dollars on health care. It does so primarily by allowing users to access free pricing information and coupons on its website, mobile application, or through physical discount cards available at pharmacies and doctors' offices. Through GoodRx, users can easily search for and compare drug prices across thousands of pharmacies and access free coupons for savings of up to 80% at local pharmacies.

Plaintiffs allege that GoodRx, like nearly all companies that offer websites or mobile applications, used vendors to operationalize and market its services. Plaintiffs further allege that GoodRx shared Plaintiffs' data with those vendors, and that such data sharing was "surreptitious" and violates over a dozen statutes or the common law. What Plaintiffs omit from their Complaint, however, is that GoodRx ***expressly disclosed*** in its Privacy Policy and Terms of Use that it shared personal information and browsing data with Facebook, Google, and other third parties for advertising and other purposes.[1] That fact alone—which is evident in the very documents Plaintiffs cite, quote, and incorporate into their Complaint by reference—is dispositive of each of Plaintiffs' claims.

Plaintiffs nevertheless contend they were somehow "unaware" that GoodRx may share their information and, had they known, they would not have used GoodRx's services. That is because, they allege (1) the information they typed into GoodRx's platform (*e.g.*, their contact information and/or a drug name they searched) has "value" to them and (2) they suffered a privacy injury from the purported disclosure of such information. Yet, despite spanning nearly 400 paragraphs, Plaintiffs' Complaint fails to explain ***how*** Plaintiffs were deprived of such "value" or suffered ***any*** adverse outcome resulting from the alleged data sharing—let alone any specific harm or concrete consequences. This too, is independently dispositive of half of Plaintiffs' claims against GoodRx. Specifically, Plaintiffs' claims under the

---

1 GoodRx's Exhibits are attached to the accompanying Declaration of Gracye Cheng. As explained in GoodRx's Request for Judicial Notice, GoodRx's Privacy Policy and Terms of Use are cited repeatedly in the Complaint, *e.g.* Compl. ¶¶ 12, 104, 105, 109, 170, and are integral to it. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety," including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

California Unfair Competition Law ("UCL"), California Consumers Legal Remedies Act ("CLRA"), New York General Business Law ("GBL"), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and negligence causes of action all require concrete personal harm and injury. As Plaintiffs fail to articulate any cognizable harm or injury suffered by ***any*** GoodRx user, let alone the named Plaintiffs themselves, these claims must be dismissed.

Plaintiffs' claims also suffer from several other independently fatal defects. *First*, Plaintiffs' claims under the California Confidentiality of Medical Information Act ("CMIA") are doomed from the start, as GoodRx is not a "provider of healthcare" as required to state a claim under the CMIA. *Second*, Plaintiffs cannot allege common law invasion of privacy claims or claims under the California Invasion of Privacy Act ("CIPA") because GoodRx's Privacy Policy explicitly informed Plaintiffs of its data-sharing practices and Plaintiffs consented to that sharing. *Third*, as to each of the claims under the UCL, CLRA, and ICFA, Plaintiffs fail to allege "fraudulent" conduct with sufficient particularity to satisfy Rule 9(b)'s heightened pleading standard. *Fourth*, the UCL claim also fails because Plaintiffs cannot allege any threat of future harm, as the Complaint admits GoodRx has already taken measures to prevent disclosures of users' personal information. *Fifth*, Plaintiffs' claims for unjust enrichment fail given Plaintiffs do not allege any benefit GoodRx obtained by purportedly sharing the information. Indeed, Plaintiffs do not—and cannot—allege that GoodRx has ever sold any of their information. And *sixth*, Plaintiffs' negligence claims fail because Plaintiffs cannot establish any duty GoodRx owed beyond the contractual Privacy Policy described above, and in any event, the economic loss rule prohibits their claim. In short, despite throwing fifteen claims at the wall, none stick. Plaintiffs fail to state any claim against GoodRx, and their Complaint must be dismissed with prejudice, as any amendment would be futile.

## II. FACTUAL BACKGROUND

### A. GoodRx's Services

As Plaintiffs note, GoodRx's mission is to "build better ways for people to find the right care at the best price." (Consolidated Class Action Complaint ("Complaint") ¶ 1.) GoodRx does this by allowing consumers to conveniently search for and compare drug price information across pharmacies and, if desired, obtain coupons to allow further savings on drug purchases. (*Id.* ¶¶ 1, 3–4, 96–98.) GoodRx's

coupons, which are redeemable at over 70,000 pharmacies nationwide, are ***free*** to access and offer average ***savings of up to 80%*** off the retail price of drugs. (*Id.* ¶ 4.)

To access GoodRx's free coupon service, users can obtain a physical coupon at doctors' offices, visit GoodRx's website (*www.goodrx.com*), or download its mobile application. (*Id.* ¶ 2.) To search for discounts on the website, a user simply "enters the medication name and then selects a local pharmacy." (*Id.* ¶¶ 3, 98, Figure 2.) These users then have three options: print a coupon, email or text themselves the coupon, or simply show the coupon webpage or app screen on their mobile devices to a pharmacist. (*Id.* ¶¶ 3, 98.) If these users wish to create an account, they can enter their name, email address, and date of birth. (*Id.* ¶ 97.) But if not, users do not have to enter any personal information to use the service. (*Id.*)

In addition to its core offering of free coupons and pricing information, GoodRx offers health-related articles and information through its GoodRx Health pages, and offers two additional services: GoodRx Gold and GoodRx Care (previously HeyDoctor). (*Id.* ¶¶ 5–6, 99–101.) GoodRx Gold is a paid subscription service that provides consumers access to even greater coupon savings. (*Id.* ¶¶ 6, 101.) GoodRx Care is a technology platform that connects consumers with independent medical professionals to facilitate telehealth visits. (*Id.* ¶¶ 5, 99–100.)

### B. GoodRx's Alleged Use of Vendors and Associated Data Sharing

Plaintiffs allege that—like nearly every company that offers websites or mobile applications—GoodRx uses vendors to operationalize and market its services. (*Id.* ¶¶ 18, 61–65.) As these allegations make clear, using analytics and marketing services is commonplace for companies with websites or mobile applications: millions of companies use Meta's advertising services (*Id.* ¶ 121), and Google Analytics is one of the most popular website analytics platforms on the internet. (*Id.* ¶ 148.)

Utilizing analytics, marketing, and operations vendors often entails sharing some data to enable the vendor to perform its intended service. (*Id.* ¶¶ 61–63.) Such sharing may occur through technologies such as cookies, pixels, and software development kits ("SDKs"). (*Id.* ¶¶ 18, 61.) This can allow a company to understand how consumers use its website, ensure its services are working as expected, and create a better user experience—functions that are essential for an online service. (*Id.* ¶ 151.) Even Plaintiffs acknowledge GoodRx used vendors to "improv[e] the GoodRx Platform." (*Id.* ¶ 65.)

### C. GoodRx's Privacy Policy and Terms of Use

GoodRx maintains a Privacy Policy that governs the sharing of users' data. (*Id.* ¶ 104.) Plaintiffs selectively quote from that agreement throughout the Complaint. (*Id.* ¶¶ 12, 104–108, 170.) Plaintiffs focus on a statement from the Privacy Policy in effect between October 2017 and March 2019 (over three years before this suit), stating "we never provide advertisers or any other third parties any information that reveals a personal health condition or personal health information." (*Id.* ¶¶ 12, 104–05, 170, 216, 335, 351.) But Plaintiffs omit that during the same time, that Privacy Policy also ***expressly disclosed*** that GoodRx shared personal information and browsing data with its service vendors:

> [GoodRx] may place cookies, tags, ***pixels***, ***SDKs*** and other tracking technology on your computer or other devices, or otherwise collect your personal information to assist ***Google, Facebook***, ***other third parties***, or GoodRx to ***feed advertisements*** or to send direct mail campaigns to you based on your past visits to GoodRx and other websites.

(Cheng Decl. Ex. 1, at 2 (emphasis added).) The Privacy Policy disclosed that if users "register to receive certain services, [they] ***will need to provide*** [***GoodRx***] ***with some personal information*** so that [GoodRx] can provide these services." (*Id.* (emphasis added).) It then stated that "[b]y providing your personal information, ***you agree to let us use such personal information*** in order to fulfill your requested service and ***to reach out to you*** about prescription savings opportunities." (*Id.* (emphasis added).)

Plaintiffs also reference GoodRx's Care Privacy Policy, stating that "between October 2018 and July 2020, this policy told users that their information would only be shared to provide access to telehealth services and that GoodRx would obtain users' consent prior to disclosing it for any other reason." (Compl. ¶ 109.) But these policies similarly disclosed the use of "cookies, web beacons, and other technologies to receive and store certain types of information whenever you interact with our Site" and that it "may provide information to third party service providers . . . [t]hat ***will have access to your personal information*** in order to provide these services[.]" (Cheng Decl. Ex. 5, at 3–4.)

Notably, GoodRx's Terms of Use expressly provide that ***by accessing or using*** GoodRx's services, users agree to be contractually bound by the Terms of Use and Privacy Policy. (*Id.* Ex. 6, at 3; Ex. 7, at 1; Ex. 8, at 1.) Moreover, any GoodRx Care customer, GoodRx Gold customer, or ordinary coupon user

who signs up for GoodRx, sends themselves a coupon, or prints a coupon, must additionally check or click boxes to affirmatively confirm their assent to such terms.[2]

## III. LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Only specific factual allegations are accepted as true, not legal assertions, "[t]hreadbare recitals of the elements," or "conclusory statements." *Id*. In addition, "the court need not accept as true allegations that are conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint is properly dismissed if it fails to "plead enough facts to state claim to relief that is plausible on its face." *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008) (internal citations omitted).

## IV. ARGUMENT

Plaintiffs have tried to cast GoodRx's use of data to optimize its beneficial services as some type of illicit data breach where sensitive medical information was disclosed to third parties for nefarious uses. That is not at all what GoodRx does, even according to Plaintiffs' allegations. Rather, users ***consented*** to provide certain information (in accordance with and as disclosed in GoodRx's Privacy Policy and Terms of Use) to GoodRx and its vendors; in exchange, GoodRx provided the users with valuable drug pricing information, coupons, and (for GoodRx Care users) access to discounted telehealth services.

It is perhaps unsurprising then that Plaintiffs articulate no theory of actual or personal harm, as required to establish standing for their UCL, CLRA, GBL, ICFA, and negligence claims against GoodRx. All other claims asserted fail for additional independent reasons, detailed further below. As a result, GoodRx respectfully requests this Court dismiss all of Plaintiffs' claims against GoodRx with prejudice.

### A. Half of Plaintiffs' Claims Against GoodRx Fail for Lack of Standing.

A large swath of Plaintiffs' claims fail because no Plaintiff pleads that he or she personally suffered ***any*** actual, cognizable injury as a result of the data sharing alleged. This is fatal for six of Plaintiffs'

---

[2] These additional steps that several of the Plaintiffs took to affirmatively confirm their assent to be bound by GoodRx's Terms of Use, which incorporates its Privacy Policy, are set forth in more detail in GoodRx's recent Motion to Compel Arbitration. ECF No. 107, 107-2.

causes of action, each of which requires far more than the generic, vague theories of "harm" pled here. Indeed, Plaintiffs' alleged theories of injury generally fall into two buckets: (1) harm based on the alleged diminished or uncompensated value of their data and (2) injury based on a supposed invasion of privacy. As described in more detail below, neither theory passes muster under any of these six causes of action.

**1. California UCL (Count XII) and CLRA (Count XI)**

Plaintiffs' UCL and CLRA claims fail for lack of economic injury and lack of standing. To have statutory standing under the UCL, an individual must "ha[ve] suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition," Cal. Bus & Prof. Code § 17204, meaning Plaintiffs must "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). This requirement is stringent, as it requires that a UCL plaintiff's "'injury in fact' specifically involve 'lost money or property.'" *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009).

The CLRA similarly requires Plaintiffs to plead economic injury based on the "value" of their data. Cal. Civ. Code § 1780(a); *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1361 (2010); *see also Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796, 802 (2006) (applying the same economic injury standing analysis to plaintiff's UCL and CLRA claims); *Paduano v. Am. Honda Motor Co., Inc.*, 169 Cal. App. 4th 1453 (2009) (analyzing UCL and CLRA claims together).

Here, Plaintiffs assert only that they have a "property interest" in their personal data, which they claim "objectively has value." (Compl. ¶ 356.) Plaintiffs then conclude, by "unlawfully disclosing and intercepting this data, Defendants have taken money or property" from them. (*Id.* ¶ 359.) Those allegations are insufficient. Not only do Plaintiffs make no effort to quantify whatever dubious "objective value" exists in "personal data" like their IP address or email, Plaintiffs also "do not plausibly allege that they intended to sell their . . . personal information . . . [n]or . . . that someone else would have bought it." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784, 804 (N.D. Cal. 2019). This is key: given that Plaintiffs complain about an unwanted invasion of their privacy, it is highly implausible that they actually wanted to sell their own data but were robbed of that opportunity. In any case, the very nature of data is that sharing it with one party does not foreclose sharing it with another. If Plaintiffs have a real theory of monetary harm in this regard, it is certainly not pled in the Complaint.

All that Plaintiffs vaguely allege is that their data had some unquantified "value," but not that they ever tried or planned to try to capitalize on that. That is not enough to establish standing under the UCL or CLRA. *See, e.g.*, *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *4, 8 (N.D. Cal. Mar. 26, 2013) (no UCL standing where plaintiffs "d[id] not allege they attempted to sell their personal information, that they would do so in the future, or that they were foreclosed from entering into a value for value transaction"). To state a viable claim, Plaintiffs must allege that they lost the ability to sell their information (which is nonsensical), or lost value in a planned sale of their information. Plaintiffs fail to make such claims, and thus their conclusory theory of economic loss is "purely hypothetical" and cannot supply statutory standing under the UCL or CLRA. *In re Facebook, Inc., Consumer Priv. Litig.*, 402 F. Supp. 3d at 804; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–33 (N.D. Cal. 2015) (no UCL standing where plaintiffs did not show "that they personally lost the opportunity to sell their information"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of "property value in one's information, do[es] not suffice as injury under the UCL"); *In re iPhone Application Litig.*, 2011 WL 4403963, at *5, 10 (N.D. Cal. Sept. 20, 2011) (no standing because plaintiffs had not alleged "any damage" by claiming defendant had allowed third parties to collect their "personal information," without any additional harm from that collection).

Nor do Plaintiffs allege that the disclosure of their data caused them to suffer a loss of "money or property" via a privacy intrusion theory. A "privacy violation" where "plaintiffs essentially claim the unfair business practice is the unlawful collection and recordation of their personal identification information" is not a cognizable property injury under the UCL or the CLRA. *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011). Courts have "widely held that personal information does not constitute [such lost] money or property under the UCL." *Gardner v. Walmart Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 839–40 (N.D. Cal. 2020) (no UCL standing on theory that plaintiffs lost money or property when defendant used their personal data); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), *aff'd Ruiz v. Gap, Inc.*, 380 F. App'x 689 (9th Cir. 2010) ("unauthorized release of personal information" does not constitute "a loss of property" under UCL).

Moreover, users of GoodRx's coupon services, like Plaintiffs John Doe, E.C., and Wilson, used GoodRx free of charge and very likely ***saved*** money through the free service. (Compl. ¶¶ 2–4.) In any case, a plaintiff that utilizes a free service cannot suffer economic injuries sufficient to state a UCL or CLRA claim as a matter of law. *See In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715, 717 (N.D. Cal. 2011) ("Because Plaintiffs allege that they received Defendant's services for free, as a matter of law, Plaintiffs cannot state" a UCL or CLRA claim); *In re iPhone Application Litig.*, 2011 WL 4403963, at *10, 14 (N.D. Cal. Sept. 20, 2011) (no UCL or CLRA standing where "Plaintiffs did not pay for services for the App Store"); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (no UCL standing related to SDK use with free apps). At the very least, this forecloses the claims of all users who never paid for GoodRx services (*i.e.*, the vast majority of users).

**2. New York GBL (Count XIII)**

Plaintiff E.C.'s claim under New York General Business Law § 349 fails for similar reasons. The GBL requires pleading particularized and concrete injury to establish standing. *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *5 (S.D.N.Y. Aug. 17, 2016). Consistent with the discussion above, E.C.'s generic claim that "Defendants have taken money or property from Plaintiff and Class Members," (Compl. ¶ 367), is insufficient under the GBL. *See Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 823 (2020) (dismissing GBL claim for lack of standing because plaintiff simply asserted he had to expend "time, money and other resources" to address future harm); *Mount*, 2016 WL 5080131, at *5 (dismissing GBL claim as plaintiffs failed to plead a particularized and concrete injury). To the extent Plaintiffs contend that they have adequately alleged a "concrete" injury based on their claims that GoodRx ran "targeted advertisements," this argument is a non-starter. First, neither E.C. nor any Plaintiff actually contends he or she saw any unwanted advertisements. But even if they had, it is well established that the mere receipt of advertising—targeted or otherwise—"does not constitute an injury." *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *4 (C.D. Cal. July 24, 2019).

At bottom, E.C. alleges ***no*** facts indicating that his data was subject to any unauthorized disclosure or used in an improper manner—let alone that he personally suffered any negative ramifications as a result. Because E.C. is the only named plaintiff to bring a GBL claim, the GBL claim must be dismissed.

*E.g.*, *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) (noting that "in a class action each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim") (internal quotations omitted).[3]

**3. ICFA (Count XIV)**

Plaintiff John Doe's ICFA claim likewise requires showing that he suffered "actual damage" as a result of the alleged conduct. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Specifically, he must have suffered "actual pecuniary loss." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *see also Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 579 (N.D. Ill. 2020) (no ICFA standing where plaintiff could not articulate economic harm). John Doe vaguely alleges that due to "Defendants' conduct" he suffered "ascertainable losses of money or property" and is "entitled to recover [his] actual damages." (Compl. ¶¶ 371, 373.) But "[t]here is no basis under Illinois law to suggest that [plaintiffs are] entitled to claim a 'privacy injury' under ICFA." *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *8 (N.D. Ill. Mar. 3, 2023) (dismissing ICFA claim where plaintiff alleged defendant made misrepresentations in privacy statements and disclosed patient data); *see also Khorloo v. John C. Heath Att'y at Law*, 2020 WL 1530735, at *2 (N.D. Ill. Mar. 31, 2020) (privacy violations do not "provide a basis for actual damages under the ICFA"). The ICFA claim thus must be dismissed as well.

**4. Negligence and Negligence Per Se (Counts XVI and XV)**

Plaintiffs' negligence claims[4] also fail for lack of standing because Plaintiffs do not allege any "appreciable, nonspeculative, present harm," which "is an essential element of a negligence cause of action" under California law. *In re iPhone Application Litig.*, 2011 WL 4403963, at *4–5, 9; *In re Sony*

[3] This claim is particularly ripe for dismissal given the length of time that has passed since E.C.'s purported use of GoodRx. He claims he began using GoodRx's website in 2018—***five years ago***. (Compl. ¶ 41.) Although E.C. vaguely claims he has used GoodRx since "at least" 2018, he does not specify any more recent use, unlike other Plaintiffs. *See, e.g.*, Compl. ¶ 36 (alleging "John Doe used the GoodRx Platform between 2016 and 2023"). In dismissing a GBL claim for lack of standing, one court noted that "[a] lengthy passage of time without any suspicious activity weighs against finding an injury in fact . . . [O]ne year elapsed from when the subject data breach occurred and more than one year has now passed since when this action was commenced." *Smahai*, 131 N.Y.S.3d at 823.

[4] As discussed below, Negligence Per Se is not a separate cause of action under California law, and thus is properly considered (and dismissed) with the ordinary negligence claim. *See, e.g.*, *Mohandas v. Wells Fargo Bank, N.A.*, 2022 WL 17254847, at *20 (C.D. Cal. July 5, 2022).

*Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012) (finding no injury because plaintiffs did not allege that their shared personal information had been misused in a specific way, such as opening a bank account in their name or fraudulent charges). Here, none of the six named Plaintiffs actually allege that their ***own*** information was misused in a ***specific*** way, nor do they identify any concrete consequences damaging them. For example, they fail to allege that they received any targeted advertisements (nor would that be sufficient), that their data was used by third parties, or that their data was even the subject of any disclosure. As a result, Plaintiffs fail to state negligence claims.

**B. The Claims Fail for Additional, Independent Reasons.**

**1. GoodRx Is Not Subject to the CMIA (Counts IV-VI)**

Plaintiffs' CMIA claims fail at the gate: GoodRx is not a "provider of healthcare" subject to the CMIA. The CMIA defines a "provider of healthcare" to include a "business organized for the purpose of maintaining medical information" or a "business that offers software or hardware to consumers . . . that is designed to maintain medical information," as defined under the Act. Cal. Civ. Code § 56.06(d). Even taking Plaintiffs' allegations as true, Plaintiffs do not allege that GoodRx falls under either definition.

*First*, Plaintiffs vaguely (and incorrectly) allege that GoodRx "maintains medical information." (Compl. ¶ 272.) But even an entity that "maintains" medical information—which GoodRx does not—is not a provider of healthcare under the CMIA's express definitions. *See Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) (software provider was not "health care provider" subject to CMIA). Rather, to be a "provider of healthcare" under the CMIA, an entity would need to have been "***organized for the purpose of*** maintaining medical information." Cal. Civ. Code § 56.05(d) (emphasis added); *see also In re Arthur J. Gallagher Data Breach Litig.*, 2022 WL 4535092, at *12 (N.D. Ill. Sept. 28, 2022) (dismissing CMIA claim where plaintiffs failed to allege defendants were "organized *for the purpose* of maintaining medical information"). The Complaint is devoid of any allegations that GoodRx was "organized for the purpose of maintaining" medical information (because it was not).

*Second*, Plaintiffs allege that GoodRx "offers software to consumers . . . designed to maintain medical information." (Compl. ¶ 272.) But "medical information" as defined by the CMIA must be "in

***possession of*** or ***derived from*** a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i) (emphasis added); *see also, e.g.*, *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) ("medical information" can include information from provider's "written evaluation," or "medical records, [or] a medical certification"). "Medical information" does not extend to searches for general information about medical conditions or general medical or drug terms or statements about a person's health from other sources—including him- or herself. *See id.* (dismissing a CMIA claim where the information came from the plaintiff, who "called off sick" and noted "he was seeking an appointment with his physician to discuss a medical leave of absence," which did not constitute "medical information").

Here, Plaintiffs' website browsing information was not derived from any healthcare provider and Plaintiffs do not allege it was. Rather, Plaintiffs readily admit that ***they*** provided information to GoodRx—not any healthcare provider.[5] (*See, e.g.*, ¶¶ 25, 32, 37, 43, 51.) For Jane Doe, Jane Doe II, Hollis Wilson, and Jose Marquez (but ***not*** John Doe or E.C., as described below), this included basic contact information (i.e., name, email address, address), birthdate, biological sex, and payment information—which is obviously not provider-derived. (*Id.* ¶¶ 25, 32, 51.) Beyond that, Plaintiffs provide no further detail regarding ***what*** "health" or "prescription" information they purportedly included. Importantly, Plaintiffs do not allege—because they cannot—that GoodRx required any of Plaintiffs' providers to log on or directly upload or enter information into GoodRx on their behalf, nor that Plaintiffs uploaded or provided GoodRx with any information that was in the possession of or came from a provider (*e.g.*, patient file, written evaluation, medical records, medical certification, or even a copy of a prescription (as compared to simply a name of a medication)). Rather, as depicted in Plaintiffs' own allegations (shown below), to obtain discount information or coupons—which is all that five out of six Plaintiffs contend that they did (*see* Compl. ¶¶ 29 (Jane Doe II), 36 (John Doe), 41 (E.C.), 47 (Marquez), and 55 (Wilson))—GoodRx

---

[5] Moreover, "provider of health care" is defined to include only certain ***California-licensed*** health care providers. Cal. Civ. Code § 56.05(o). Thus, the non-Californian Plaintiffs (Jane Doe, Jane Doe II, John Doe, and E.C.) could not possibly assert any claim under the CMIA—even if the information ***was*** from some out-of-state provider. Their claims must be dismissed, for this reason, too.

merely asks users to type in a medication name that they want to search. (Compl. ¶ 98 at Figure 2.) That is not "prescription information"—it is just the name of a drug.




It makes good sense that this is all that was required: users do not ***fill*** prescriptions from GoodRx's website (nor do Plaintiffs allege they did). Unlike pharmacies, which require an actual prescription from a provider (as verified through identification of a National Provider Identifier or other similar method for confirming the prescriber is licensed and qualified), GoodRx simply provides pricing information and access to coupons for anyone who wants to search for them—with or without a prescription from a provider. Indeed, as made clear by the allegations and screenshots included in Plaintiffs' Complaint, GoodRx (and GoodRx Gold) merely provides information about drug pricing "that is accessible to the public at large. . . . Nothing about the . . . content of the pages . . . relates 'to the past, present, or future physical or mental health or condition of an individual.'" *Smith v. Facebook*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) (emphasis omitted). The same information is equally available to a journalist researching drug price information, a doctor advising patients, a family member or friend searching for someone else, or an individual searching for a drug they may not need or a condition they may not have—*i.e.*, individuals for whom the content of the pages on GoodRx's website ***in no way*** relates to their own health. Thus, typing in a drug name alone—as Plaintiffs appear to claim they have done—cannot possibly constitute "medical information" under the CMIA, particularly where, as here, it was simply typed in—without any other detail or provider-derived information—by Plaintiffs themselves. Even the "online consultation" that Jane Doe purports to have completed, presumably on GoodRx Care,[6] involved only information that she acknowledges was ***self-provided***, not provided by any provider or otherwise. (Compl. ¶ 25.) Such admittedly self-derived information cannot constitute "medical information" under the CMIA.

[6] Jane Doe does not even expressly state that she was a GoodRx Care user; instead, she says she filled out an online "consultation," with GoodRx, and it is not clear what she is referring to.

Moreover, under the CMIA, "medical information" must be "***individually identifiable***." Cal. Civ. Code § 56.05(j). That is, medical information "cannot mean just any patient-related information held by a health care provider, but must be 'individually identifiable information' and also include 'a patient's medical history, mental or physical condition, or treatment.'" *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014). Plaintiffs John Doe and E.C. merely allege they provided "prescription information," without any claim that they provided any identifying information ***at all***. (Compl. ¶¶ 37, 43.) Even if typing in a drug name was enough to constitute "medical information"—which it is not, for the reasons described above—because E.C. and John Doe do not allege to have typed in ***any*** personal contact information, such information could not be "individually identifiable" as required to constitute "medical information" under the CMIA. This further bars E.C. and John Doe from proceeding with this claim.

**2. Plaintiffs' Invasion of Privacy Claim Fails (Count I)**

Plaintiffs also fail to adequately plead an intrusion upon seclusion invasion of privacy claim. Such a claim requires showing (1) an intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person. *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014). Here, Plaintiffs' allegations do not establish either.

*First*, to show intrusion, a plaintiff must have an "objectively reasonable" expectation of privacy. *Id.* Many "factors (including advance notice) may affect a person's reasonable expectation of privacy." *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 449 (2002). To that end, consent is a broad defense to any claim that an individual has a "reasonable expectation of privacy." *Id.*; *see also Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) ("A plaintiff in an invasion of privacy case . . . must not have manifested . . . a voluntary consent to the invasive actions of defendant."); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (quoting Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it.")).

As described above, GoodRx's Privacy Policy informed Plaintiffs that their data was being shared with Google, Facebook, and other service providers. By signing up for and/or using GoodRx, Plaintiffs

agreed to be bound by the Privacy Policy and thus consented to these practices.[7] (Cheng Decl. Ex. 6, at 3; Ex. 7, at 1; Ex. 8, at 1.) Moreover, Plaintiffs claim that GoodRx's conduct was somehow more "offensive" because it was done "in a manner that Plaintiffs and Class members would be unable to detect" given the use of "highly technical SDKs and pixels." (Compl. ¶ 241.) This allegation is contradicted by the Privacy Policy incorporated in the Complaint, which expressly disclosed that GoodRx may "place cookies, tags, pixels, SDKs and other tracking technology on your computer or other devices, or otherwise collect your personal information to assist Google, Facebook, other third parties." (Cheng Decl. Ex. 1, at 4; Ex. 2, at 5; Ex. 3, at 4; *see also* Ex. 5, at 4.) Even if this Court were to find consent lacking, these clear disclosures constitute the kind of "advance notice" that *TBG* instructs can undermine a reasonable expectation of privacy. *TBG Ins. Servs. Corp.*, 96 Cal. App. 4th at 449.

*Second*, Plaintiffs do not adequately plead a serious intrusion. Plaintiffs must establish that the conduct "amounts to a serious invasion" of the protected privacy interest. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). "Courts in this district have consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 985, 988 (N.D. Cal. 2014) (noting this district "set[s] a high bar" for the requisite "intrusion [that is] highly offensive to a reasonable person."); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (dismissing invasion of privacy claim where "information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices").

The Complaint is replete with conclusory allegations that GoodRx disclosed Plaintiffs' "sensitive data." (*E.g.*, Compl. ¶¶ 232, 240.) Yet as described above, the actual purported "medical" or "health" inputs five out of six Plaintiffs entered was limited to medication name alone. (Compl. ¶¶ 29, 36, 41, 47, 55.) Jane Doe claims to have filled out a "consultation" regarding her urinary tract infection symptoms and history. (Compl. ¶¶ 23, 25.) And unlike E.C. and John Doe, who provided ***no contact information***,

---

[7] GoodRx also incorporates by reference the consent arguments made by co-defendants Criteo, Meta, and Google—against all of Plaintiffs' claims—in their respective briefs. *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1039 (N.D. Cal. Mar. 4, 2016) (considering arguments incorporated from co-defendants' briefs).

Jane Doe, Jane Doe II, Marquez, and Wilson also allege they provided their names, birthdates email addresses, phone numbers, biological sex, address, and payment information. (Compl. ¶¶ 25, 32, 51.) Well-established precedent makes clear that this information is not "highly offensive." As a preliminary matter, it is not enough to rise to the level of an "egregious breach of social norms," as required. *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) (even disclosure of "personal information, including social security number," does not constitute an "egregious breach of the social norms" to establish an invasion of privacy claim). Here, in particular, Plaintiffs acknowledge the ubiquity of using analytics and marketing services—millions of companies and individuals use Meta's advertising services (Compl. ¶ 121), and Google Analytics is one of the most popular analytics platforms on the internet. (Compl. ¶ 148.) *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991 (2011) ("[R]outine commercial behavior" does not constitute an "egregious breach of social norms."). Moreover, this court has made clear that data relating to using a website—in order to find "informational resources about health conditions and treatments" (Compl. ¶ 7)—is nothing more than browsing data, which is not "protected health information." *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("Pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information . . . [are] accessible to the public at large" and thus not "protected health information.").

### 3. Plaintiffs Have Not Stated A Claim Under CIPA (Count IX)

To state a claim under CIPA, Plaintiffs must plead that GoodRx (1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device. 18 U.S.C. § 2511. Plaintiffs' CIPA claim fails for multiple reasons. *First*, a person who receives "the consent of all parties to the communication" is exempt from liability under the statute. Cal. Penal Code § 631(a). As described above, Plaintiffs consented to the very conduct that they now complain of by agreeing to GoodRx's Terms of Use and Privacy Policy, which expressly stated that it may share users' personal information via "pixels" and "SDKs" with "Google, Facebook, other third parties." (*See* supra at 13–15.)

*Second*, Plaintiffs cannot prevail on their CIPA claim because they fail to allege that GoodRx shared the "contents" of Plaintiffs' communications. Cal. Penal Code § 631(a). "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022) (internal quotations omitted). That act defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510. Courts in this Circuit distinguish between "contents"—meaning "the intended message conveyed by the communication"—and "record information"—which merely "regard[s] the characteristics of the message that is generated in the course of the communication." *Hammerling*, 615 F.Supp.3d at 1092 (internal quotations omitted). "Generally, customer information such as a person's name, address, and subscriber number or identity is record information." *Id.* Moreover, "URLs are record information when they only reveal a general webpage address and basic identification information." *Id.*

According to Plaintiffs' own allegations, the "communications" that GoodRx allegedly shared do not amount to "contents," as they reveal no more than "general webpage address[es]" and "basic identification information." *Id.* Indeed, a court in this Circuit recently held that the information that Google allegedly received regarding a plaintiff's use of a fertility tracker app did not amount to "contents" under CIPA. *Id.* at 1093. The court reasoned that, although "[f]rom the activity data regarding the duration and frequency a user's use of a fertility tracker app, Google may infer that the user is a female and has the ability to get pregnant[,] . . . it is implausible that Google can infer anything beyond that." *Id.* "[I]nformation about personal habits and identities that Google 'infers' from the types of apps a user uses is not 'content' of a communication." *Id.* The same can be said regarding the drug names a GoodRx user searches for—that information is simply a record of a search, not contents. When a user searches a drug name, neither GoodRx nor anyone else would know whether the user is searching for themselves, a patient, a family member, or a friend. Thus, it is not even clear *what*, if any, inferences could draw from such searches in the first place. In any event, the general "webpage" and "basic identification" information that Plaintiffs allege GoodRx shared is not "contents" under CIPA.

*Third*, Plaintiffs' CIPA claims fail because a party to a communication, such as GoodRx, cannot violate section 631 because it was an intended recipient of the communication. *Warden v. Kahn*, 99 Cal.

App. 3d 805, 811 (1979) (Section 631 "appl[ies] only to eavesdropping by a third party and not to recording by a participant."). The fact that Plaintiffs contend GoodRx utilized vendors does not change the analysis, as its vendors are merely extensions of GoodRx rather than third parties under CIPA. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (holding that a vendor was not a third-party where it "provide[d] a tool . . . that allow[ed] [the defendant] to record and analyze its own data in aid of [its] business"); *see also Licea v. Cinmar, LLC*, 2023 2415592, at *8–9 (C.D. Cal. Mar. 7, 2023) (holding that a vendor that provided code that recorded chat was not a third party because the vendor merely "analyzed or used the data on behalf of or in tangent with" the website owner). As there are no specific, non-conclusory factual allegations that GoodRx's vendors used their information for their own independent use, separate and apart from simply providing the vendor services they are alleged to have provided to GoodRx, Plaintiffs' CIPA claims fail.[8]

#### 4. Plaintiffs Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard, as Required for UCL (Count XII), CLRA (Count XI), & ICFA (XIV)

Plaintiffs' UCL, CLRA, and ICFA claims also fail to comply with Rule 9(b)'s heightened pleading standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (when UCL and CLRA claims are based on misstatements and "'sound in fraud,'" the pleading "as a whole must satisfy the particularity requirement of Rule 9(b)"); *Camasta*, 761 F.3d at 739 (ICFA claims are subject to Rule 9(b)'s heightened pleading standard). To satisfy Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (same). Here, the Complaint falls well short.

---

[8] Additionally, under California law, "a presumption exists against the extraterritorial application [of] state law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014). Jane Doe, Jane Doe II, John Doe and E.C.'s CIPA claims must be dismissed as CIPA does not apply extraterritorially, and they are not California residents, do not allege they used the GoodRx platform in California, and do not allege that they suffered any injury in California. Cal. Penal Code § 630 (noting that CIPA's intent is "to protect the right of privacy of the people of this state"); *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015) ("Each nonresident class member's state law claims should be governed by and decided under the wiretapping laws of the state in which the class member resides.").

Read generously, the Complaint arguably alleges three instances of "fraudulent" conduct—but none meets Rule 9(b)'s requirements. *First,* Plaintiffs copy and paste from the FTC complaint, which brought different claims under different legal theories based on an allegation that "between October 2017 and March 2019" GoodRx's Privacy Policy stated that it would "never provide[] advertisers or any other third parties any information that reveals a personal health condition or personal health information." (Compl. ¶¶ 12, 351.) But Plaintiffs fail to allege (1) when they saw this statement, if at all; (2) where they saw it (*i.e.*, on the app, website, or elsewhere); and (3) how Plaintiffs specifically relied on it (particularly in light of the express disclosures in the very same Privacy Policy that GoodRx would share users' personal information with Google, Facebook, and others). Notably, at least two of the six Plaintiffs do not even allege having visited any GoodRx platform during that time period, and thus could not have possibly seen or been "defrauded" by such a statement. (*See id.* ¶¶ 23 47.) *Second,* Plaintiffs allege that during this same time—"between October 2017 and March 2019"—GoodRx "promised that it would only use 'personal medical data' such as prescription drug information in 'limited cases' as necessary to fulfill the user's request." (*Id.* ¶ 13.) Plaintiffs, however, fail to allege where GoodRx made this statement and again fail to plead when they saw this statement and how they specifically relied on it. *Third,* Plaintiffs allege that GoodRx "represented in public tweets and by displaying the HIPAA seal that it complied with HIPAA, which prohibits the disclosure of data for advertising and analytics without written authorization from the user." (*Id.* ¶¶ 109, 337.) Yet again Plaintiffs do not allege when GoodRx made this statement, when or where they saw it, and how they relied on it. Nor do they explain how the sharing of browsing information through a pixel violates HIPAA. Each of these allegations is thus woefully insufficient to state a fraud-based UCL or CLRA claim. *See Phillips v. Apple Inc.*, 2016 WL 1579693, at *8 (N.D. Cal. Apr. 19, 2016) (dismissing plaintiffs' UCL and fraud claims for failure to "plead that they viewed or heard any representations or omissions by Apple"); *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) (dismissing claims where plaintiff failed to allege "when Plaintiffs saw Defendant's representations, when Plaintiffs purchased Defendant's services, and when Plaintiffs discovered Defendant's allegedly fraudulent conduct") (internal citations omitted).

Plaintiff John Doe pleads even less for his ICFA claim, generically claiming only that he relied on "the material representations made by Defendants." (Compl. ¶ 371.) Even assuming that John Doe is referring to the general allegations regarding GoodRx's Privacy Policy and "representation[s] in public tweets" (Compl. ¶¶ 12, 13, 109), these allegations fail to meet the heightened pleading requirements of Rule 9(b) for the same reasons as the UCL and CLRA claims. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (Rule 9(b) requires the "plaintiff to state 'the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated ***to the plaintiff***'") (emphasis added); *Pirelli*, 631 F.3d at 447 (affirming dismissal of ICFA claim where plaintiff failed to "shoulder the burden" of "pleading plausible grounds for suspecting that the defendant was engaged in a fraudulent scheme").

Therefore, because Plaintiffs come nowhere close to pleading the stringent particularity that Rule 9(b) requires, Plaintiffs' UCL, CLRA, and ICFA claims fail.

#### 5. Plaintiffs Are Not Entitled to Restitution or Injunctive Relief, Thus Precluding Their UCL Claim (Count XII) from Proceeding

The UCL claim should also be dismissed at the outset given Plaintiffs fail to establish that they lack an adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020) (plaintiffs must establish that they lack "an adequate remedy at law before securing equitable restitution for past harm under the UCL"). The UCL claim should be dismissed for the additional reason that Plaintiffs do not allege facts entitling them to restitution or injunctive relief, which are the only remedies available under the UCL.[9] Under the UCL "[p]revailing plaintiffs are [] limited to injunctive relief and restitution." *Korea Supply Co. v. LockheedMartin Corp.,* 29 Cal. 4th 1134, 1144 (2003); *see Bank of the W. v. Superior Court,* 2 Cal. 4th 1254, 1266 (1992) ("Damages are not available" under the UCL); *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1135 (9th Cir. 2014) ("[T]he remedy for a UCL violation is either injunctive relief or restitution.").

Plaintiffs cannot obtain an injunction because they cannot be injured in the future. Plaintiffs concede that the February 2023 FTC resolution already required that GoodRx "tak[e] certain corrective

[9] For the same reasons, Plaintiffs lack standing to pursue injunctive relief under the CLRA.

actions to prevent the disclosure of additional users' PII and health information" and "notif[y] users via email and through a '2023 Notice' posted on its website of its settlement with the FTC"—the same injunctive relief Plaintiffs request here. (Compl. ¶¶ 196–97.) Based on Plaintiffs' own concessions, there is no plausible likelihood that Plaintiffs will suffer injury by using this platform in the future. *See Sun Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1123 (9th Cir. 1999) ("a plaintiff cannot receive an injunction for past conduct unless he shows that the conduct will probably recur."); *Scripps Health v. Marin,* 72 Cal. App. 4th 324, 333 (1999) (the law is clear that there is "no equitable reason" to order injunctive relief "where the defendant has in good faith discontinued the proscribed conduct"). In any event, Plaintiffs are now aware of the manner in which they allege GoodRx relied on pixels and SDKs, and they may simply cease any further use of GoodRx's services if they so choose. (Compl. ¶ 349.)

Restitution is also unavailable. Plaintiffs purport to seek "restitution" in the form of money GoodRx was paid for the data—but they do not actually allege that GoodRx sold or was paid for any data (nor could they). (Compl. ¶¶ 244, 341, Prayer(E)). In any case, *Plaintiffs* did not give this money to GoodRx, making their request a classic example of non-restitutionary disgorgement, which is not permitted. *See Madrid v. Perot Sys. Corp.,* 130 Cal. App. 4th 440, 456 (2005) ("[E]ven assuming [defendant] sold confidential information, plaintiff fails to show that such profit, received from third parties, would qualify as money taken from plaintiff or money in which plaintiff had a vested ownership interest, so as to be recoverable as restitution in this UCL action."). Plaintiffs have no right to restitution where GoodRx has not taken "money or property" from them. *Korea Supply*, 29 Cal. 4th at 1144.

**6. Plaintiffs Have Not Alleged a "Benefit" Necessary to State a Claim for Unjust Enrichment (Count III)**

Plaintiffs fail to state a claim for unjust enrichment because they have not established that they lack an adequate remedy at law. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021). Moreover, they fail to allege a "benefit" that GoodRx received from Plaintiffs such that it would be inequitable to allow GoodRx to retain it. *See ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) (to bring unjust enrichment claim, "a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense."). Unjust enrichment applies when "plaintiffs, having

no enforceable contract, nevertheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." *LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021).

At most, by allegedly sharing Plaintiffs' data with its service providers, GoodRx received the benefit of website analytics to improve its services or of better targeted advertising to its customers, but GoodRx has not *retained* that benefit (nor would this constitute harm at all, as the benefit actually also accrues to Plaintiffs, the beneficiaries of improved website performance and more appropriately targeted advertising[10]). And none of the alleged benefit GoodRx hypothetically received diminished anything of value to Plaintiffs (*i.e.*, it did not decrease the value of Plaintiff's browsing data). *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (unjust enrichment claim requires the plaintiff to show not only receipt of a benefit but also "unjust retention of the benefit at the expense of another") (quotations omitted). Even if this Court were to conclude that GoodRx obtained and retains some benefit from Plaintiffs, retention of that benefit is not inequitable, given the services GoodRx provided Plaintiffs in exchange. The value of drug discounts and access to low-cost health services far outweigh the (entirely speculative) value of the browsing data that Plaintiffs provided to GoodRx or the amount that Plaintiffs paid to use GoodRx's services to receive greater discounts (if even applicable).

Finally, restitution is inappropriate because it should only be obtained if the benefit originally conferred was "conferred by mistake, fraud, coercion or request." *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989). As described above, Plaintiffs have failed to allege they even saw any of the supposed misrepresentations by GoodRx regarding their data-sharing policy, and as a result, they have not pled facts to support that GoodRx's supposed "enrichment" was obtained by "fraud" or otherwise "unjust" in any way. *Id.*

---

[10] Notably, Plaintiffs do not even actually allege they saw any targeted advertising from GoodRx.

**7. Plaintiffs Fail to Allege Any Actionable Duty or Theory of Injury Necessary to State a Claim for Negligence (Counts XV and XVI)**

Plaintiffs cannot state any claim for negligence for the additional reason that they fail to allege GoodRx violated any applicable legal duty to Plaintiffs. The elements of negligence under California law are: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Evan F. v. Hughson United Methodist Church*, 8 Cal. App. 4th 828, 834 (1992).

Plaintiffs assert that GoodRx had a duty to "protect their information." (Compl. ¶¶ 391–92.) Even if such duty existed, it would be qualified by the express disclosures in GoodRx's Privacy Policy, which state that GoodRx may share personal information with "Google, Facebook, other third parties" via pixels or SDKs. (Cheng Decl. Ex. 1, at 4; Ex. 2, at 5; Ex. 3, at 4; *see also* Ex. 5, at 2–4.) Nor can Plaintiffs argue any tort duty arises based on the pre-2019 representation in GoodRx's Privacy Policy because California law does not permit a plaintiff to recover in tort on the basis of a representation in a contract. *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514–15 (1994); *Stoops v. Abbassi*, 100 Cal. App. 4th 644, 657 n.10 (2002) (plaintiff "may not convert his contract cause of action into a tort").

In any case, the economic loss rule bars negligence claims for purely economic losses unless Plaintiffs have "(1) personal injury, (2) physical damage to property, [or] (3) a 'special relationship' existing between the parties." *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008). Numerous courts have held that the economic loss rule bars cases where, like here, Plaintiffs allege only supposed economic losses related to the sharing of their personal information. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 973 (S.D. Cal. 2014); *In re Sony*, 903 F. Supp. 2d at 961–62; *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8-9 (N.D. Cal. Mar. 5, 2021); *In re Google*, 2013 WL 1283236, at *12–13 (N.D. Cal. Mar. 26, 2013).

To try to circumvent the economic loss rule, Plaintiffs make a cursory assertion that they have a "special relationship" with GoodRx. (Compl. ¶ 393.) This barebones and rote recitation of the elements, however, is insufficient to avoid the economic loss rule under California law, as Plaintiffs fail to allege any relationship beyond that which GoodRx has with *all* its users. To constitute a "special relationship"

under this rule, California courts are clear that a defendant's conduct and relationship must be unique to the plaintiff, as opposed to generally applicable to all customers. *See Gardner*, 2021 WL 2520103, at *8–9 (no special relationship where plaintiff failed to allege that defendant's conduct benefitted him "in a specific way that sets him apart" from other consumers); *Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1230–31 (2008) (no duty where conduct was "no different from any other purchaser of the same product"); *Ott v. Alfa-Laval Agri, Inc.*, 31 Cal. App. 4th 1439, 1455 (1995) (same). Here, "Plaintiffs have failed to allege a 'special relationship' with [GoodRx] beyond those envisioned in everyday consumer transactions, and therefore, negligence is the wrong legal theory on which to pursue recovery for Plaintiffs' economic losses." *In re Sony*, 996 F. Supp. 2d at 969.

Last on this point, negligence per se cannot proceed as a standalone claim, as California does not recognize negligence per se as a cause of action. *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1284–85 (2006). Rather, negligence per se is simply an evidentiary presumption that allows a plaintiff to rely on the violation of a statute to prove lack of due care—one element of negligence. Cal. Evid. Code § 669. Accordingly, dismissal of the negligence per se claim is appropriate, particularly where—as here—the underlying claim of ordinary negligence is not viable, as explained above. *Mohandas v. Wells Fargo Bank, N.A.*, 2022 WL 17254847, at *20 (C.D. Cal. July 5, 2022) (quoting *Cal. Serv. Station & Auto. Repair Ass'n v. Am. Home Assurance Co.*, 62 Cal. App. 4th 1166, 1178 (1998)) (dismissing negligence per se claim because plaintiffs' ordinary negligence claim was deficiently plead); *see also Vann v. Aurora Loan Servs. LLC*, 2011 WL 2181861, at *3 (N.D. Cal. June 3, 2011) ("Negligence *per se* is not a separate cause of action, and it does not provide a private right of action for violations of a statute or regulation.").

### 8. Plaintiffs' Time-Barred Claims Must be Dismissed and Cannot Be Extended Based on Fraudulent Concealment

Finally, Plaintiffs' time-barred claims must be dismissed because Plaintiffs fail to sufficiently plead that the applicable statutes of limitations should be tolled under the doctrine of fraudulent concealment.[11] This includes any CIPA claims and claims for statutory damages under CMIA pre-dating

[11] GoodRx also incorporates by reference the statute of limitations arguments made by co-defendants Criteo, Meta, and Google. *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1039 (N.D. Cal. Mar. 4, 2016) (considering arguments incorporated from co-defendants' briefs). Indeed, while Plaintiffs allege that GoodRx disclosed data to the Advertising and Analytics Defendants until

2022,[12][13] any common law invasion of privacy, unjust enrichment, and negligence claims pre-dating 2021,[14] any CMIA (actual damages), GBL, CLRA, and ICFA claims pre-dating 2020,[15] and any UCL[16] claims pre-dating 2019.

To plead that the statute of limitations should be extended due to fraudulent concealment, a plaintiff must plead that "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015); *see also Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) ("It is enough that the plaintiff should have been alerted to facts that, following duly diligent inquiry, could have advised it of its claim."). These allegations must be pled with particularity, to avoid the ordinary presumption in American law that all claims expire. *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir. 1988). "A plaintiff is deemed to have constructive knowledge if it had enough

February 2020 (Compl. ¶ 64), they do not (and cannot) make any specific allegations that GoodRx used either Facebook or Criteo's standard pixel technology beyond February 2020—because it did not.

[12] *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. Mar. 17, 2021) (one-year statute of limitations for CIPA); *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 277 (1983) (one-year statute of limitations for statutory damages sought in addition to actual damages, such as those found in Cal. Civ. Code § 56.35, as they are considered penalties and governed by Cal. Code Civ. Proc. § 340(a)).

[13] The original complaints were filed on: Jane Doe: Feb. 2, 2022 (N.D. Cal. Case No. 3:23-cv-00501, ECF No. 1); Jane Doe II: May 26, 2023 (N.D. Cal. Case No. 3:23-cv-00501, ECF No. 102); John Doe: Feb. 17, 2023 (N.D. Cal. Case No. 3:23-cv-00744, ECF No. 1); E.C.: Feb. 3, 2023 (S.D.N.Y. Case No. 1:23-cv-00943, ECF No. 1); Jose Marquez: Mar. 3, 2023 (N.D. Cal. Case No. 5:23-cv-00940, ECF No. 1); Hollis Wilson: Mar. 20, 2023 (N.D. Cal. Case No .4:23-cv-01293, ECF No. 1).

[14] *Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005) (two-year statute of limitations for common law invasion of privacy); *Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (two-year statute of limitations for unjust enrichment); *Tyler v. Bank of New York Mellon*, 2020 WL 2735367, at *5 (N.D. Ill. May 26, 2020) (quoting 815 ILCS 505/10a(e)) (three-year statute of limitations for ICFA).

[15] Cal. Civ. Pro. § 338(a) (three-year statute of limitations for claims of actual damages under CMIA as they are a "liability created by statute, other than a penalty or forfeiture"); *SpeedFit LLC v. LifeCore Fitness, Inc.*, 2023 WL 199595, at *4 (S.D.N.Y. Jan. 17, 2023) (three-year statute of limitations for GBL); *Tumual v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010) (citing Cal. Civ. Code § 1783) (three-year statute of limitations for CLRA); *Johnston v. Covidien, L.P.*, 2019 WL 2410720, at *3 (N.D. Cal. Jun. 7, 2019) (citing Cal. Civ. Proc. Code § 335.1) (two-year statute of limitations for negligence).

[16] *Calhoun*, 526 F. Supp. 3d at 624 (four-year statute of limitations for UCL).

information to warrant an investigation which, if reasonably diligent, would have led to the discovery of the fraud." *Hexcel Corp*., 681 F.3d at 1060 (quoting *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274–75 (9th Cir. 1988)).

Plaintiffs come nowhere near satisfying this standard. The Complaint makes only conclusory statements that GoodRx "engaged in fraudulent conduct" by "misleading" Plaintiffs to believe their data would not be shared. (Compl. ¶¶ 201, 207, 208.) The Complaint does not plead that Plaintiffs performed ***any*** diligence whatsoever, which is not a surprise as diligence would have uncovered the clear statements in GoodRx's Privacy Policy putting Plaintiffs on notice of the sharing. GoodRx's Privacy Policy clearly explained that GoodRx used vendors to operationalize and market its services and that it shared ***personal information*** and browsing data with vendors to do so. (Cheng Decl. Ex. 1, at 4; Ex. 2, at 5; Ex. 3, at 4; *see also* Ex. 5, at 2–4.) It further unambiguously stated that GoodRx could use "tracking" technology such as "tags, pixels, [and] SDKs" for analytics and advertising purposes, and that by providing information, GoodRx may provide that information to third parties for marketing purposes. (*Id.*) Read in full—rather than taking single sentences in isolation as Plaintiffs do in their Complaint—GoodRx's Privacy Policy could not have misled Plaintiffs; to the contrary, it plainly *disclosed* the conduct at the heart of Plaintiffs' Complaint. And even if the Court credited Plaintiffs' allegation that one sentence in the Privacy Policy before 2019 conflicted with these clear disclosures, the supposed conflict was certainly enough to put Plaintiffs on constructive notice to do further diligence (such as by checking for pixels via commonly available browser tools). Moreover, that one sentence does nothing to explain how GoodRx could have fraudulently concealed *anything* in the four years since that sentence was removed.

## V. CONCLUSION

For the foregoing reasons, Defendant GoodRx respectfully requests that the Court grant its motion to dismiss all of Plaintiffs' claims against GoodRx Holdings, Inc. in the Consolidated Class Action Complaint with prejudice, as any amendment would be futile.

DATED: July 7, 2023

/s/ Martin L. Roth
Martin L. Roth

Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1758
Fascimile: (214) 972-1771

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**CERTIFICATE OF SERVICE**

On July 7, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Martin L. Roth*
Martin L. Roth