GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JANE DOE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC.,

Defendants.

Lead Case No. 3:23-cv-00501-AMO

**DEFENDANT META PLATFORMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**

*[Request for Judicial Notice and Declaration of Andrew M. Kasabian filed concurrently herewith]*

Action Filed: February 2, 2023

Date: October 12, 2023
Time: 2:00 PM
Courtroom 10
**BEFORE: HON. ARACELI MARTINEZ-OLGUIN**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 12, 2023 at 2:00 p.m., before the Honorable Araceli Martinez-Olguin of the United States District Court for the Northern District of California, Courtroom 10, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc., will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice.

The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the Requests for Judicial Notice and accompanying declarations and exhibits; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Should the complaint be dismissed under Rule 12(b)(6) for failure to state a claim?

Dated: July 7 , 2023

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

## TABLE OF CONTENTS

Page

INTRODUCTION .......... 1

BACKGROUND .......... 2

A. Meta's Pixel and SDK .......... 2

B. Meta's Policies .......... 3

C. GoodRx's Privacy Policy .......... 4

D. Plaintiffs' Allegations .......... 5

LEGAL STANDARD .......... 6

ARGUMENT .......... 6

A. Plaintiffs' Claims Fail Because They Consented to Meta's Receipt of Their Information. .......... 7

B. The Complaint Does Not State a Claim Against Meta Under CIPA. .......... 9

1. Plaintiffs Fail to Plausibly Allege Meta Had the Requisite Intent. .......... 10

2. Plaintiffs Do Not Plausibly Allege that Meta Used a "Device." .......... 12

3. Plaintiffs' Eavesdropping Claim Fails Because They Do Not Allege that Meta Eavesdropped on Any "Confidential Communications." .......... 12

4. Plaintiffs Marquez's and Wilson's CIPA Claims Are Untimely. .......... 13

5. CIPA Does Not Apply Extraterritorially. .......... 16

6. Jane Doe, Jane Doe II, John Doe, and E.C. Do Not Plausibly Allege Any Data Was Sent From or Received in California. .......... 17

C. Plaintiffs Do Not State a Claim for Intrusion Upon Seclusion. .......... 17

D. Plaintiffs' CMIA Claims Against Meta Fail as a Matter of Law. .......... 19

1. There Is No Private Right of Action Under Section 56.36(c) of the CMIA. .......... 19

2. There Is No "Aiding and Abetting" Liability Under the CMIA. .......... 20

E. Plaintiffs Plead No Plausible Unjust Enrichment Claim. .......... 21

F. Plaintiffs Plead No UCL Claim. .......... 22

G. E.C. Pleads No New York General Business Law Claim. .......... 24

H. John Doe Pleads No Illinois Consumer Fraud Act Claim. .......... 25

CONCLUSION .......... 25

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022) ....................14

*Alatortev v. JetBlue Airways Corp.*,
2018 WL 2735355 (N.D. Cal. June 7, 2018) ....................22

*Anderson v. Brouwer*,
99 Cal. App. 3d 176 (1979)....................14

*In re Animation Workers Antitrust Litig.*,
123 F. Supp. 3d 1175 (N.D. Cal. 2015) ....................15

*In re Animation Workers Antitrust Litig.*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) ....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015)....................22

*Barker v. Am. Mobil Power Corp.*,
64 F.3d 1397 (9th Cir. 1995)....................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Bernson v. Browning-Ferris Indus.*,
7 Cal. 4th 926 (1994) ....................14

*Brodsky v. Apple Inc.*,
2019 WL 4141936 (N.D. Cal. Aug. 30, 2019)....................13

*Brooks v. Thomson Reuters Corp.*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)....................21

*Brown v. Kelly Broad. Co.*,
48 Cal. 3d 711 (1989) ....................20

*Brown v. Madison Reed, Inc.*,
2021 WL 3861457 (N.D. Cal. Aug. 30, 2021)....................22

*Cal. Soc'y of Anesthesiologists v. Brown*,
204 Cal. App. 4th 390 (2012)....................10, 12

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................7

*Callaghan v. BMW of N. Am., LLC*,
2014 WL 1340085 (N.D. Cal. Apr. 2, 2014) ....................24

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................7, 13, 22

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) ....................18

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011)....................13

*Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492 (2d Cir. 2020)....................24

*Chione v. Meditronic, Inc.*,
2015 WL 2151889 (S.D. Cal. May 7, 2015)....................14

*Church v. Wells Fargo Bank, N.A.*,
2013 WL 12216851 (N.D. Cal Mar. 6, 2013)....................20

*Clarke v. Horany*,
212 Cal. App. 2d 307 (1963)....................21

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ....................13

*Conmar Corp. v. Mitsui & Co. (U.S.A.)*,
858 F.2d 499 (9th Cir. 1988)....................16

*Day v. GEICO Cas. Co.*,
580 F. Supp. 3d 830 (N.D. Cal. 2022) ....................22

*De Bouse v. Bayer AG*,
922 N.E.2d 309 (Ill. 2009) ....................25

*Doe v. Univ. of S. Cal.*,
2019 WL 4229750 (C.D. Cal. July 9, 2019) ....................15

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010)....................8

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....................18

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013)....................18

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) ....................11

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013)....................24

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ....................13

*Gamache v. Airbnb, Inc.*,
2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017)....................20

*In re Glumetza Antitrust Litig.*,
611 F. Supp. 3d 848 (N.D. Cal. 2020) ....................16

*Golub v. Gigamon Inc.*,
372 F. Supp. 3d 1033 (N.D. Cal. 2019) ....................4

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................19

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ....................22

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ....................13, 18

*In re Google Location History Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................12

*In re Google, Inc. Priv. Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................23

*Goshen v. Mut. Life Ins. Co.*,
98 N.Y.2d 314 (2002) ....................24

*Gray v. Amazon.com, Inc.*,
2023 WL 1068513 (W.D. Wash. Jan. 27, 2023) ....................9

*Guajardo v. Skechers USA, Inc.*,
503 F. Supp. 3d 746 (C.D. Ill. 2020) ....................25

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) ....................15

*Guthrie v. Transamerica Life Ins. Co.*,
561 F. Supp. 3d 869 (N.D. Cal. 2021) ....................21

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................17

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................22, 25

*Haskins v. Symantec Corp.*,
654 F. App'x 338 (9th Cir. 2016) ....................23

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2002) ....................17, 18

*Herskowitz v. Apple Inc.*,
940 F. Supp. 2d 1131 (N.D. Cal. 2013) ....................24

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ....................15, 16

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 ....................19

*Huynh v. Quora, Inc.*,
2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ....................22

*Inst. of Cetacean Rsrch. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014)....................18

*Ion Equip. Corp. v. Nelson*,
110 Cal. App. 3d 868 (1980)....................13

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................19

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d 1103 (1988) ....................14, 15

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....................23

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ....................13

*Kellman v. Spokeo, Inc.*,
599 F. Supp. 3d 877 (N.D. Cal. 2022) ....................23, 24

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)....................3

*Kight v. CashCall, Inc.*,
231 Cal. App. 4th 112 (2014)....................12

*Kurowski v. Rush Sys. for Health*,
2023 WL 2349606 (N.D. Ill. Mar. 3, 2023)....................25

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001)....................4

*Loo v. Toyota Motor Sales, USA, Inc.*,
2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ....................23

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ....................18

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022)....................11

*Makaeff v. Trump Univ., LLC*,
2011 WL 1872886 (S.D. Cal. May 16, 2011)....................25

*Martin v. Meredith Corp.*,
--- F. Supp. 3d ----, 2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023), *appeal filed*, No. 23-412 (2d Cir.)....................24

*In re Meta Pixel Healthcare Litig.*,
2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ....................4, 8

*Moreno v. S.F. Bay Area Rapid Transit Dist.*,
2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ....................12

*Mortensen v. Bresnan Commc'n, LLC*,
2010 WL 5140454 (D. Mont. Dec. 13, 2010)....................9

*O'Connor v. Uber Techs., Inc.*,
58 F. Supp. 3d 989 (N.D. Cal. 2014) ....................16

*Oman v. Delta Air Lines, Inc.*,
889 F.3d 1075 (9th Cir. 2018)....................24

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ....................7

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972)....................11

*People v. Lyon*,
61 Cal. App. 5th 237 (2021)....................12

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)....................13

*People v. Soles*,
68 Cal. App. 3d 418 (1977)....................12

*People v. Superior Court (Smith)*,
70 Cal. 2d 123 (1969) ....................10, 11, 12

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................7, 23

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014)....................14

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ....................22

*Quigley v. Yelp, Inc.*,
2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ....................13

*Razuki v. Caliber Home Loans, Inc.*,
2018 WL 2761818 (S.D. Cal. June 8, 2018)....................18

*Regents of Univ. of Cal. v. Super. Ct.*,
220 Cal. App. 4th 549 (2013)....................20

*Reveal Chat Holdco, LLC v. Facebook, Inc.*,
471 F. Supp. 3d 981 (N.D. Cal. 2020) ....................16

*Richard B. LeVine, Inc. v. Higashi*,
131 Cal. App. 4th 566 (2005)....................21

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014)....................7, 22

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015)....................6

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021)....................21

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................8

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....................7, 9, 18

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020)....................21

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011)....................17, 24

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)....................15, 16

*TBG Ins. Servs. Corp. v. Superior Court*,
96 Cal. App. 4th 443 (2002)....................9

*Thomas v. Magnachip Semiconductor Corp.*,
167 F. Supp. 3d 1029 (N.D. Cal. Mar. 4, 2016)....................13

*Thorman v. Am. Seafoods Co.*,
421 F.3d 1090 (9th Cir. 2005)....................16

*Titus v. McLane Foodservice, Inc.*,
2016 WL 4797497 (E.D. Cal. Sept. 14, 2016)....................20

*Toy v. TriWire Eng'g Sols., Inc.*,
2010 WL 3448535 (N.D. Cal. Sept. 1, 2010)....................21

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015)....................12

*United States v. Fuller*,
531 F.3d 1020 (9th Cir. 2008)....................20

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019)....................25

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012)....................10

*Volk v. D.A. Davidson & Co.*,
816 F.2d 1406 (9th Cir. 1987)....................16

*White v. Soc. Sec. Admin.*,
111 F. Supp. 3d 1041 (N.D. Cal. 2015)....................19

*Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Servs., Inc.*,
536 F.3d 663 (7th Cir. 2008)....................25

*Wolfe v. City of Fremont*,
144 Cal. App. 4th 533 (2006)....................................................................21

*Zapata Fonseca v. Goya Foods Inc.*,
2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....................................................23

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) ..........................................................23

**Statutes**

Cal. Bus. & Prof. Code § 17204 ....................................................................22

Cal. Civ. Code § 56.10(a)..............................................................................7

Cal. Civ. Code § 56.36..............................................................................19, 20

Cal. Civ. Code § 56.36(b) ..........................................................................20, 21

Cal. Civ. Code § 56.36(c)(2)(B)(3)(A) .............................................................19

Cal. Civ. Code § 56.36(f)(1) ..........................................................................20

Cal. Penal Code § 630...................................................................................17

Cal. Penal Code § 631(a) ..................................................................7, 9, 10, 17

Cal. Penal Code § 632(a) ....................................................................9, 10, 12

Ill. Comp. Stat. 505/10a ................................................................................25

**Treatises**

Restatement (Second) of Torts § 8A(b) (1965) ................................................18

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This is one of many cases alleging that Meta violated various statutes and common-law principles when a third party sent it information that Meta neither wanted nor intended to receive. Plaintiffs allege that defendant GoodRx, an online prescription coupon company, sent sensitive user information to Meta through Meta's Pixel and software development kit ("SDK"). Website and app developers choose whether and how to install these common Internet tools on their websites and apps, and customize them to measure particular types of user activity. When a person engages in the activities the developer has chosen to measure, data is sent to Meta's systems, which attempt to match it to a Facebook or Instagram account. Meta's systems then send aggregated, de-identified information back to the developer, which can use that information to improve its services. Plaintiffs allege that GoodRx sent unspecified health data to Meta and assert a smattering of claims. Two undisputed points put plaintiffs' claims in context.

*First*, there is nothing inherently unlawful or harmful about the analytics technology at the heart of this case. These common Internet tools help developers measure certain actions users take on their websites and apps—e.g., what pages they view and what products they purchase—and use that information to grow their businesses and improve users' online experience. As the complaint suggests, this ubiquitous and useful technology is offered by numerous companies (not just Meta) to developers spanning numerous industries (not just GoodRx). Meta makes its versions of these tools (the Meta Pixel and SDK) publicly available, and third-party app and web developers can freely customize and install them to help improve the services they offer.

*Second*, third-party developers—not Meta—choose whether, where, and how they will use the Meta Pixel and SDK. Meta's Business Tools Terms, which all developers must agree to before using the Pixel or SDK, (1) require developers to confirm that they have the proper permissions and legal right to share any data they choose to send, and (2) tell developers not to send any "health" or other sensitive information. Meta has also implemented a filtering mechanism to screen out potentially sensitive health data it detects. But it is ultimately third-party developers, not Meta, that install the Pixel and SDK on their own websites and apps and choose what information to send.

Plaintiffs have filed a grab-bag complaint asserting sixteen causes of action, ten of which they allege against Meta. But none of those causes of action fits plaintiffs' theory of the case—that *Meta* should be held liable for information it did not want to receive based on *GoodRx*'s alleged misuse of a common, publicly available tool that Meta did not implement or configure. As a result, plaintiffs' claims fail for a host of reasons. All of the claims fail because plaintiffs consented to Meta's receipt of their information by agreeing to GoodRx's and Meta's privacy policies, which explicitly disclosed the exact practices plaintiffs now complain of. Several of the claims—including the federal and state wiretapping claims—also fail because plaintiffs do not allege the requisite intent by Meta to receive sensitive health information, especially in light of Meta's *prohibition* against third-party developers sending such information. Plaintiffs' claims have various other problems, too: some cannot proceed because they are based on California laws that do not apply extraterritorially (and many of the plaintiffs are not California residents), others are untimely, and others fail for all these reasons plus claim-specific reasons of their own.

Because plaintiffs have not stated any plausible claim against *Meta* for *GoodRx's* alleged misuse of publicly available internet tools, the Court should dismiss the complaint.

## BACKGROUND

### A. Meta's Pixel and SDK

Plaintiffs' claims against Meta center on the Pixel and SDK tools that Meta makes available to third-party website and application developers. *See* Compl. ¶¶ 122–24, 131. Developers can use these tools to (1) measure certain actions taken by users on the developers' own sites and apps, and (2) assess and improve the effectiveness of the developers' advertising. Compl. ¶¶ 123–24, 131. These tools (and similar ones offered by other tech companies) are widely deployed across many industries. *See* Compl. ¶¶ 18, 63. Each developer, including GoodRx, chooses whether to use these tools; Meta does not obligate anyone to use its Pixel or SDK. Compl. ¶¶ 61, 63. Developers also decide where to place the Pixel and SDK and control what actions to measure.

As discussed below, Meta expressly prohibits developers from sharing sensitive data. And while developers ultimately control what information they send through the Pixel and SDK, Meta takes steps to filter out any potentially sensitive health information it detects: as plaintiffs allege, Meta

"develop[ed] a 'Health Terms Integrity System' intended to filter out this type of information and prevent it from entering Meta's system." Compl. ¶ 73.

**B. Meta's Policies**

When users sign up for a Facebook or Instagram account, they agree to Meta's Terms of Service (the "Terms"), which govern the relationship between Meta and its users.[1] Meta's Terms govern the "use of Facebook, Messenger, and the other products, features, apps, services, technologies, and software" Meta offers. Meta's Request for Judicial Notice ("Meta RJN") Ex. 1 at 1. The Terms explain that Meta shows users "personalized ads, offers, and other sponsored or commercial content to help [them] discover content, products, and services that are offered by the many businesses and organizations that use Facebook and other Meta Products." *Id.* at 2.

The Privacy Policy provides more details about "what information [Meta] collect[s], and how we use and share it." Meta RJN Ex. 3 at 2. It tells users that third parties can use the tools and other products Meta offers to "advertise or support their products and services," or to "understand and measure how people are using their products and services and how well their ads are working." *Id.* at 18. It also specifically discloses that Meta "collect[s] and receive[s] information" from those third parties "about a variety of your information and activities on and off our Products," including "device information," "[p]urchases and transactions you make," "[h]ow you use [third parties'] products and services, online or in person," and "[w]ebsites you visit and cookie data, like through Social Plugins or the Meta Pixel." *Id.* at 7. Meta also receives "information like your email address, cookies and advertising device ID" that "helps [Meta] match your activities with your account, if you have one." *Id.* at 8. The Privacy Policy explains that third parties "collect your information when you visit their site or app or use their services," and notes that Meta requires those parties "to have the right to collect, use and share your information before giving it to us." *Id.*

---

[1] The Terms are incorporated by reference into plaintiffs' complaint. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also* Compl. ¶ 228.

Third-party developers that use Meta's services—including the Pixel and SDK tools—must agree to the publicly available Business Tools Terms and Commercial Terms.[2] The Business Tools Terms require developers to "represent and warrant that you (and any data provider that you may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use of Business Tool Data." Meta RJN Ex. 2 at 2. Developers must also "represent and warrant that [they] have provided robust and sufficiently prominent notice to users regarding the Business Tool Data collection, sharing and usage," including a "clear and prominent notice on each web page where [Meta] pixels are used that links to a clear explanation [of] . . . how users can opt-out of the collection and use of information for ad targeting." *Id.* at 3–4. As a condition of using the Pixel and SDK tools, developers specifically agree that they will "not share Business Tool Data . . . that [they] know or reasonably should know . . . includes health, financial information or other categories of sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)." *Id.* at 2. The Commercial Terms contain similar restrictions, and require developers to agree that they will "not send to [Meta], or use Meta [Pixel and SDK] to collect from people . . . health, financial, biometrics, or other categories of similarly sensitive information." Meta RJN Ex. 4 at 2.

### C. GoodRx's Privacy Policy

Individuals who use GoodRx's website or mobile application agree to its Privacy Policy, which discloses the exact conduct at issue in the complaint. *See* GoodRx RJN Ex. 4 at 4. Under a provision titled "Third-Party Technologies," GoodRx discloses its use of third-party "analytics, tracking and provided tools that receive information when [users] use [GoodRx's] Services, including technology from . . . Facebook . . . to help [GoodRx] track, segment, and analyze usage of the Services, and to help [GoodRx] or those companies serve more targeted advertising on the Services and across the Internet."

[2] Both agreements are "matters of public record," *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), and the "authenticity or accuracy" of these documents is not in dispute, *Golub v. Gigamon Inc.*, 372 F. Supp. 3d 1033, 1043 (N.D. Cal. 2019); *see also In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *5 (N.D. Cal. Dec. 22, 2022) (discussing Meta's Business Tools Terms and Commercial Terms).

*Id.* GoodRx explains that these tools include "cookies, tags, ***pixels***, ***SDKs***, and similar technologies." *Id.* (emphasis added).

GoodRx also explains that it "may use a variety of technologies that automatically (or passively)" collect information when people use its services, including "pages viewed and interactions with content, screens or pages, URL and the preceding page views or websites visited," and such information "may include drug names and information and condition names and information." *Id.* at 3. GoodRx expressly discloses that it "may also automatically collect information about [users'] use of the Services, including . . . use or click through to any of the Services" and "the information, content, or advertisements you view, hover over, or click on." *Id.*

**D. Plaintiffs' Allegations**

Plaintiffs are Florida, New Jersey, Illinois, New York, and California residents, most of whom have active Facebook or Instagram accounts and who allege they used GoodRx to locate pharmacies and obtain medication, treatment, prescriptions, prescription coupons, and/or prescription discounts. Compl. ¶¶ 22–23, 28–29, 35–36, 40–42, 46–47, 54–56. Plaintiffs Jane Doe II and Marquez used the GoodRx mobile application; the remaining plaintiffs accessed GoodRx through a web browser. Compl. ¶¶ 23, 29, 36, 41, 49, 55. Plaintiffs allege GoodRx "secretly" used Meta's business tools on its website and app, Compl. ¶¶ 61, 202, and that GoodRx knew when it decided to incorporate the Meta Pixel and SDK that it "would result in the disclosure of . . . PII, health information, prescription requests, and other identifiable information." Compl. ¶ 63. Plaintiffs allege that as a result of the way in which GoodRx incorporated the Pixel and SDK onto its website and app, Meta received their "PII, health data, prescription requests," "private prescription information," and "other sensitive data" that they disclosed on GoodRx's platform. Compl. ¶¶ 26, 33, 37, 43, 52–53, 58–59, 63. Plaintiffs acknowledge that Meta instituted filtration systems to "filter out" potentially "sensitive data, including health information." Compl. ¶ 73. Yet they allege elsewhere that Meta "did not take any steps to prevent its interception and use of GoodRx users' sensitive health data." Compl. ¶ 76. The complaint contains cursory allegations that plaintiffs could not have learned about the use of the Pixel and SDK on GoodRx's platform until shortly before filing suit and that GoodRx misled plaintiffs into believing their data would not be disclosed or sent to Meta. *See* Compl. ¶¶ 201–11.

Plaintiffs bring sixteen claims against the defendants, ten of which they assert against Meta. The legal theories against Meta range from wiretapping to unjust enrichment to unfair business practices. Plaintiffs seek injunctive relief, declaratory relief, compensatory damages, punitive damages, and statutory damages, among other remedies. Compl. at p. 63.

**LEGAL STANDARD**

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations. *Id.* at 678–79. The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

**ARGUMENT**

Plaintiffs allege Meta wrongfully received some unspecified data that they intended to share only with GoodRx. But plaintiffs *consented* to Meta's receipt of their data—the core allegation underlying their complaint—by agreeing to GoodRx's and Meta's privacy policies, which explicitly disclosed the exact practices plaintiffs now complain of. Consent is a complete defense to all of plaintiffs' claims, and this Court should dismiss the claims against Meta on this basis alone.

Even if plaintiffs had not consented, they have not plausibly alleged that Meta *intended* to receive the health data that GoodRx allegedly sent through the Pixel and SDK. Nor could they: plaintiffs acknowledge that Meta (1) contractually bars developers from sending it any sensitive health information, and (2) has developed systems to filter out any sensitive health information that developers send in violation of that contractual bar. Those undisputed facts are incompatible with an assertion that Meta *intended* to receive sensitive health information through the Pixel or SDK, and lack of intent is fatal to all of plaintiffs' privacy-based claims.

Plaintiffs' claims also suffer from numerous additional defects. The CIPA claims are time-barred and do not apply to non-California residents who allege no California-based injury. The CMIA claims likewise fail as a matter of law: they are premised on a misreading of the statute and seek to impose a tort theory of abettor liability that the statute does not support. Plaintiffs' deceptive practices act claims fail because plaintiffs have not pled even a single plausible fact in connection with those claims. And finally, plaintiffs' unjust enrichment claim fails because plaintiffs do not allege that they lack an adequate remedy at law; because there is a binding agreement governing the relationship between Meta and plaintiffs; and because plaintiffs fail to allege Meta unjustly retained any profits.

At bottom, none of plaintiffs' claims support their aggressive theory of liability: that *Meta* should be held liable for *GoodRx's* alleged misuse of a publicly available internet tool, despite plaintiffs' consent to GoodRx's practices and despite Meta's efforts to avoid receiving any sensitive health information from third parties. This Court should dismiss the complaint with prejudice.

## A. Plaintiffs' Claims Fail Because They Consented to Meta's Receipt of Their Information.

Consent is a complete defense to all of plaintiffs' claims.[3] While there "may be subtle differences" among the consent doctrines applicable to each claim, the question is "essentially the same": Would a reasonable user who viewed GoodRx's disclosures have understood that GoodRx was sharing the information at issue? *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014); *see Smith v. Facebook, Inc.*, 745 F. App'x 8, 8–9 (9th Cir. 2018). Here, the answer is yes: By agreeing to GoodRx's and Meta's privacy policies, plaintiffs consented to GoodRx's sharing of their data with analytics providers—expressly including "Facebook."

GoodRx's disclosures in its Privacy Policy "explicitly notify users of the practice at issue." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (quotation marks omitted); *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847–48 (N.D. Cal. 2014). Indeed, those

---

[3] *See, e.g.*, Cal. Penal Code §§ 631(a) (wiretapping requires "unauthorized" conduct "without the consent of all parties"), 632(a) (eavesdropping requires a person did not receive "the consent of all parties"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("[C]onsent negates an intrusion upon seclusion claim."); *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014) (unjust enrichment claim "cannot lie where there exists between the parties a valid express contract covering the same subject matter"); Cal. Civ. Code § 56.10(a) (CMIA requires covered entities to "obtain[] an authorization" from a patient or enrollee of a covered entity).

disclosures expressly describe the exact conduct alleged here: that GoodRx uses "analytics, tracking and provided tools," including "technology from . . . Facebook . . . to help [GoodRx] track, segment, and analyze usage of [GoodRx's] Services," which, as plaintiffs allege, include telehealth and prescription services. GoodRx RJN Ex. 4 at 4; Compl. ¶¶ 1–5. GoodRx's Privacy Policy also disclosed that GoodRx would "automatically collect certain information about [users'] use of the [GoodRx] Services, including . . . use or click through to any of the Services" and "the information, content, or advertisements you view, hover over, or click on." GoodRx RJN Ex. 4 at 3. It did not place any limits on what information may be collected. Moreover, plaintiffs allege that GoodRx is "a combination telehealth and prescription coupon company" that offers drug pricing information, drug coupons, and telehealth services like online consultations. Compl. ¶¶ 1–5. Any reasonable person reading these broad disclosures from an online drug-related company would therefore understand that the company shares drug-related information accessed on its website—so plaintiffs cannot plausibly claim that GoodRx's broad Privacy Policy does not apply to the information they say Meta received (PII, health data, prescription requests, private drug information, and "other sensitive data").

Meta's policies (to which every user must agree when they sign up for an account) likewise contain clear, broad, and explicit disclosures about Meta's receipt of information about users' activity on third-party websites and apps.[4] Meta's policies tell users that third parties can use tools like the Pixel and SDK and that Meta "collect[s] and receive[s] information" from those third parties "about a variety of your information and activities on and off our Products," including "[h]ow you use [third parties'] products and services, online or in person," and "[w]ebsites you visit and cookie data, like

---

[4] Meta acknowledges that Judge Orrick, in a case addressing the Pixel on healthcare websites, concluded that Meta's "generalized notice" was "not sufficient to establish consent" because the policies did not "specifically indicate that Meta may acquire health data obtained from Facebook users' interactions with their medical providers' websites." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *9 (N.D. Cal. Dec. 22, 2022). Respectfully, that reasoning is inconsistent with the Ninth Circuit's instruction that a "contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010). Meta's policies broadly and clearly disclose that Meta collects information from third-party websites, and plaintiffs' agreement establishes consent. *See Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (dismissing wiretapping claims where policy disclosed that defendant may "collect data concerning users' activities across websites"). In any event, Judge Orrick's reasoning is inapplicable because plaintiffs' consent is based on Meta's policies (which broadly describe the information-sharing practices) and GoodRx's policies (which are specific to the online prescription context and satisfy Judge Orrick's view that a policy should "specifically indicate that Meta may acquire health data").

through Social Plugins or the Meta Pixel." Meta RJN Ex. 3 at 7. These disclosures (and others like them) communicated to users that Meta collected information about their activities on third-party sites.

The overlapping privacy policies from GoodRx and Meta present an even stronger case for dismissal than in *Smith*, where the Ninth Circuit affirmed dismissal of similar claims alleging that Meta tracked users' activity on third-party health websites. Given the clear disclosures in GoodRx's and Meta's policies, a "reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Smith*, 745 F. App'x at 8. And plaintiffs' "[k]nowing authorization of [GoodRx's and Meta's] practice constitutes [their] consent." *Smith*, 478 F. App'x at 8. So here, just as in *Smith*, plaintiffs' consent to Meta's and GoodRx's Privacy Policy "defeats [their] claim[s]" as a matter of law. *See also, e.g., TBG Ins. Servs. Corp. v. Superior Court*, 96 Cal. App. 4th 443, 452 (2002); *see, e.g., Gray v. Amazon.com, Inc.*, 2023 WL 1068513, at *2, *8 (W.D. Wash. Jan. 27, 2023); *Mortensen v. Bresnan Commc'n, LLC*, 2010 WL 5140454, at *4–6 (D. Mont. Dec. 13, 2010). Dismissal of plaintiffs' entire complaint is warranted on this ground alone.

**B. The Complaint Does Not State a Claim Against Meta Under CIPA.**

Plaintiffs bring two CIPA claims: one for violation of the eavesdropping provision (§ 632(a)), and another for violation of the wiretapping provision (§ 631(a)). These claims suffer from multiple deficiencies. *First*, and most fundamentally, plaintiffs fail to plausibly allege the requisite intent—Meta expressly *forbids* third-party developers from sending sensitive information (including health-related data) to Meta, and created a filtration system that attempts to exclude any potentially sensitive health-related data developers nonetheless send. Those facts, which plaintiffs themselves allege, make any assertion that Meta intended to receive sensitive health information implausible. *Second*, plaintiffs' § 632 eavesdropping claim fails because they have not plausibly alleged the use of any "device" or that GoodRx sent any "confidential" communications. *Third*, the claims of two of the plaintiffs' (Marquez and Wilson) are time-barred. *Fourth*, the claims of four more plaintiffs (Jane Doe I, Jane Doe II, John Doe, and E.C.) fail because CIPA does not apply extraterritorially. And *fifth*, the same four plaintiffs fail to plausibly allege that any data was sent from or received in California, as required for a § 631 wiretapping claim. The following chart demonstrates how each failure applies to each plaintiff:

| | Intent | No Device or Confidential Communication (632) | Statute of Limitations | Extraterritoriality | No Data in CA (631) |
|---|---|---|---|---|---|
| Jane Doe I | X | X | | X | X |
| Jane Doe II | X | X | | X | X |
| John Doe | X | X | | X | X |
| E.C. | X | X | | X | X |
| Marquez | X | X | X | | |
| Wilson | X | X | X | | |

### 1. Plaintiffs Fail to Plausibly Allege Meta Had the Requisite Intent.

Sections 631 and 632 of CIPA apply only if a defendant *intentionally* engaged in wiretapping or eavesdropping. Cal. Penal Code §§ 631(a), 632(a). That means plaintiffs must plead "*specific factual circumstances* that make plausible *[Meta's] intent to record a confidential communication*." *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (emphases added). They have not done so—to the contrary, the "factual circumstances" plaintiffs allege in the complaint are flatly inconsistent with any assertion that Meta intended to receive allegedly sensitive medical information from third-party developers, because Meta *contractually bars* developers from sending that information and *tries to filter it out* whenever a developer violates that contractual bar.

Section 632(a)'s intent requirement is satisfied only if the plaintiffs prove "the person using the recording equipment [did] so with the *purpose or desire* of recording a confidential conversation, or with the *knowledge to a substantial certainty* that his use of the equipment will result in the recordation of a confidential conversation." *People v. Superior Court (Smith)*, 70 Cal. 2d 123, 134 (1969) (emphases added). It is not enough to intend to use a recording device; instead, a defendant must intend to use it to *record a protected communication*. This rule "provides effective protection against 'eavesdroppers' without penalizing the innocent use of recording equipment." *Id.* Section 631(a) requires that a defendant "intentionally tap[ped]" or "willfully and without the consent of all parties to the communication . . . reads, or attempts to read . . . the contents or meaning of any message, report, or communication." Cal. Penal Code § 631(a). The intent requirement should be interpreted the same across both provisions. *Cal. Soc'y of Anesthesiologists v. Brown*, 204 Cal. App. 4th 390, 403 (2012).

Because CIPA requires an *affirmative desire* to eavesdrop on or intercept a communication without consent, the "deploy[ment of] recording devices that *might* happen" to record such information is insufficient. *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727–28 (2022); *see also, e.g.*, *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (no liability for selling and installing a recording device). The unintentional or inadvertent receipt of information "by chance" likewise cannot support a CIPA claim. *Smith*, 70 Cal. 2d at 133. "[A] person might intend to record the calls of wild birds on a game reserve and at the same time accidentally pick up the confidential discussions of two poachers. To hold the birdwatcher punishable under [CIPA] for such a fortuitous recording would be absurd." *Id.*; *see also People v. Buchanan*, 26 Cal. App. 3d 274, 287–88 (1972) (finding no intent where switchboard operator "inadvertent[ly]" overheard a telephone conversation).

Pixels and SDKs are useful, legal, and ubiquitous Internet tools. Plaintiffs recognize that Meta is merely the "creator of its SDK and Meta Pixel," which are publicly available tools that any developer can use. Compl. ¶ 68. And plaintiffs do not dispute that it is the web and app developers—not Meta—who configure, install, and "knowingly and intentionally incorporate[]" tools like the Pixel and SDK on their own platforms. Compl. ¶¶ 61, 63–64, 139, 163–64. And the law is clear that merely creating such tools and making them freely available to others is not the intentional conduct CIPA prohibits. *See Federated Univ.*, 2015 WL 13273308, at *10–11. Just as any manufacturer is not liable every time a consumer misuses their product, Meta's actions in making standard Internet tools freely and publicly available thus does not give rise to liability whenever a developer misuses those tools.

To the contrary, plaintiffs' allegations further undermine any suggestion that Meta had the requisite intent. Meta contractually *prohibits* web and app developers like GoodRx from sending potentially sensitive information. *See* Meta RJN Ex. 2 at 2. And whenever any web or app developer violates that rule, Meta (as plaintiffs also acknowledge) deploys a system that is "intended to ***filter out*** this type of information and prevent it from entering Meta's system." Compl. ¶ 73 (emphasis added).[5]

---

[5] Plaintiffs allege that "independent investigations" have found that Meta's filtration systems are imperfect. Compl. ¶ 74. But even assuming that is correct, it does not plausibly show that Meta *intended* to receive sensitive information or knew with "substantial certainty" that it would receive that

Plaintiffs' own allegations—that Meta contractually bars third parties from sending sensitive health information, and tries to filter it out whenever third parties violate that bar—are therefore inconsistent with any claim that Meta intended to receive sensitive health information through the Pixel or SDK.

**2. Plaintiffs Do Not Plausibly Allege that Meta Used a "Device."**

The section 632(a) claim also fails because plaintiffs do not plausibly allege Meta used any "electronic amplifying or recording device." Cal. Penal Code § 632(a). A device under CIPA is "a thing made or adapted for a particular purpose, especially a piece of mechanical or electronic equipment." *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017). CIPA therefore applies to *equipment* such as video recorders, *People v. Lyon*, 61 Cal. App. 5th 237, 245 (2021), but not software or apps, *In re Google Location History Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (Google Maps); *Moreno*, 2017 WL 6387764, at *5 (mobile software). The only "devices" plaintiffs identify—"SDKs and pixels," Compl. ¶ 326—are insufficient because CIPA does not apply to software. *In re Google Location*, 428 F. Supp. 3d at 193; *Moreno*, 2017 WL 6387764, at *5; Compl. ¶¶ 18 (SDK means "software development kits"), 124 ("Pixel is a snippet of code").[6]

**3. Plaintiffs' Eavesdropping Claim Fails Because They Do Not Allege that Meta Eavesdropped on Any "Confidential Communications."**

Section 632 prohibits eavesdropping only on a "confidential communication." *People v. Soles*, 68 Cal. App. 3d 418, 419 (1977). Whether a communication is confidential is based on "the surrounding circumstances," including "the party's own conduct." *Kight v. CashCall, Inc.*, 231 Cal. App. 4th 112, 133 (2014).

As discussed above, *see supra* at 4, GoodRx's terms explicitly state that plaintiffs, by using GoodRx, consent to the "collect[ion]" of "certain information," including their "use" of "any of the [GoodRx] Services" and that GoodRx uses "analytics . . . technology from . . . Facebook" to "track, segment, and analyze usage of [GoodRx's] services." GoodRx RJN Ex. 4 at 4. GoodRx's terms, and plaintiffs' acceptance of those terms, undermine any claim that any information was confidential,

---

information. *Smith*, 70 Cal. 2d at 134. Moreover, mere knowledge of a defect does not constitute "act[ing] consciously and deliberately with the goal of intercepting wire communications." *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015).

[6] *Moreno* and *In re Google Location History* interpreted a separate provision of CIPA that addresses electronic tracking devices, but the term "device" should be interpreted the same way across the statute. *See Cal. Soc'y of Anesthesiologists v. Brown*, 204 Cal. App. 4th 390, 403 (2012).

meaning plaintiffs had "an objectively reasonable expectation that the conversation [was] not being overheard or recorded." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 117 n.7 (2006)). In addition, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of Section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Id.* at 849 (collecting cases); *see also People v. Nakai*, 183 Cal. App. 4th 499, 518–19 (2010); *In re Google Inc.*, 2013 WL 5423918, at *22–23 (N.D. Cal. Sept. 26, 2013); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018); *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018). Accordingly, plaintiffs had no reasonable expectation that their communications were confidential.

**4. Plaintiffs Marquez's and Wilson's CIPA Claims Are Untimely.**

A claim accrues "when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). "Under the CIPA, the applicable statute of limitations is one year." *Brodsky v. Apple Inc.*, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019) (citing *Ion Equip. Corp. v. Nelson*, 110 Cal. App. 3d 868, 880 (1980)). Plaintiffs Marquez and Wilson concede they used GoodRx only through 2021 and 2019, respectively. Compl. ¶¶ 47, 55. This suit was filed in 2023. Their CIPA claims must be dismissed because it "is apparent on the face of the complaint" that they are time-barred. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011). Plaintiffs' boilerplate assertions that the discovery rule and fraudulent concealment tolled the statute of limitations until an unstated time cannot save these claims, because plaintiffs must—but failed to—plead *facts* to support these exceptions. *See* Compl. ¶¶ 201–10.[7]

**a. Plaintiffs Have Not Alleged Application of the Discovery Rule.**

To invoke the discovery rule, a plaintiff must plausibly allege "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35

[7] Meta also incorporates by reference the statute of limitation arguments made by co-defendants regarding all claims. *See* Criteo Mot. at 3–6; GoodRx Mot. at 23–25; *see also Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1039 (N.D. Cal. Mar. 4, 2016) (considering arguments incorporated from co-defendants' briefs).

Cal. 4th at 808. The "burden is on the plaintiff" to plead (and later prove) both elements. *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014). Plaintiffs fail to plead either one.

*Time and manner of discovery*. Plaintiffs merely allege that the earliest they *could have* known about their claims was when the FTC filed a complaint against GoodRx in February 2023. Compl. ¶¶ 192, 205. But such "general conclusions" "that plaintiff could not reasonably have made an earlier discovery[] are useless." *Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182 (1979); *see Chione v. Meditronic, Inc.*, 2015 WL 2151889, at *4 (S.D. Cal. May 7, 2015). And the complaint does not identify plaintiffs' actual manner of discovery at all.

*Reasonable diligence*. Although plaintiffs allege they could not have discovered the "full scope" of defendants' conduct because "it is highly technical," Compl. ¶ 204, the triggering event for the discovery rule is not knowledge "of all parties" or "the exact legal claim." *Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 875 (N.D. Cal. 2022) (citing *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 932 (1994)). Rather, it is "when the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1110 (1988). There are no plausible allegations that plaintiffs could not have suspected that GoodRx was sending certain data to Meta (their alleged wrongdoing) when they used GoodRx.

To the contrary, the complaint itself demonstrates that plaintiffs' claims were discoverable in 2021 (for Marquez) and 2019 (for Wilson), at the latest. Specifically, the claims were discoverable when plaintiffs signed up for GoodRx and consented to GoodRx's Privacy Policy, which disclosed that it uses analytics to track users' use of GoodRx and that analytics vendors like "Facebook" may "collect" information through "technology such as cookies, tags, ***pixels***, ***SDKs***, and similar technology." GoodRx RJN Ex. 4 at 4 (emphasis added). And when plaintiffs set up their Facebook and Instagram accounts, they also agreed to Meta's Privacy Policy, which notes that Meta "collect[s] and receive[s] information from" third parties, including information about "[w]ebsites you visit and cookie data, like through . . . the Meta Pixel." RJN Ex. 4 at 6–7. Plaintiffs could have discovered their claims when they agreed to Meta's and GoodRx's policies.

The complaint is also replete with alleged public statements regarding (1) purported misconduct by Meta regarding its Pixel and SDK dating back to February 2019; (2) purported misconduct by Meta

regarding granular ad targeting dating back to 2016; and (3) statements by Meta regarding ad targeting based on "sensitive" topics like health dating back to November 2021. *See, e.g.*, Compl. ¶¶ 70–72; *see also* Compl. ¶ 73. Based on plaintiffs' allegations, then, the alleged misconduct was discoverable by February 2019, and they cannot invoke the delayed discovery rule. *Jolly*, 44 Cal. 3d at 1111.

**b. Plaintiffs Have Not Plausibly Alleged Fraudulent Concealment by Meta.**

Nor have Marquez and Wilson plausibly alleged tolling due to fraudulent concealment. To plead fraudulent concealment, plaintiffs must allege that (1) they were affirmatively misled by Meta; (2) they did not have "actual or constructive knowledge of the facts giving rise to" their claim; and (3) they exercised due diligence in attempting to discover the facts. *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012). Plaintiffs must allege fraudulent concealment specifically with respect to Meta; "fraudulent concealment by one defendant" does not "toll the statute of limitations against other defendants." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995). And because this doctrine sounds in fraud, plaintiffs' allegations must clear Rule 9(b)'s heightened pleading standard. *See Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006); *Doe v. Univ. of S. Cal.*, 2019 WL 4229750, at *5 (C.D. Cal. July 9, 2019). This requires pleading facts with specificity, "including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Plaintiffs have not satisfied these heightened requirements.

*First*, plaintiffs fail to plead particularized facts showing that Meta "took affirmative acts to mislead" them. *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1194 (N.D. Cal. 2015). They allege *GoodRx* "secretly incorporated" the Pixel and SDK, represented that it "complied with HIPAA," and would not disclose their data. Compl. ¶¶ 202, 208. That allegation is belied by the undisputed facts that GoodRx disclosed the use of analytics in its Privacy Policy (which plaintiffs agreed to), *see supra* at 4, and more fundamentally, it has nothing to do with any purportedly misleading conduct *by Meta*. Plaintiffs cannot parlay alleged fraudulent concealment by GoodRx into tolling against Meta. *See Barker*, 64 F.3d at 1402.

Plaintiffs' allegation that the defendants "had exclusive knowledge that [GoodRx] incorporated" the Pixel and SDK, Compl. ¶ 203, likewise does not establish any *affirmative act* by

Meta. This conclusory allegation does not satisfy Rule 9(b). Beyond that, it amounts at best to "passively conceal[ing]" material information, which does not toll the statute of limitations. *Volk v. D.A. Davidson &* Co., 816 F.2d 1406, 1415–16 (9th Cir. 1987). Plaintiffs cannot establish affirmative acts by Meta by merely alleging that it was "keeping [them] in the dark"; that "is not the same as affirmatively misleading" them. *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1095 (9th Cir. 2005); *see In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1216 (N.D. Cal. 2015) ("mere fact of a secret conspiracy" insufficient to establish affirmative acts).

*Second*, plaintiffs fail to plead a lack of "actual or constructive knowledge." *Hexcel*, 681 F.3d at 1060. In fact, the complaint establishes the opposite; it recognizes there were investigations and lawsuits concerning Meta's alleged receipt of sensitive health information as early as the start of 2019. *See* Compl. ¶ 70. Such public reports trigger constructive notice. *See Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 993–94 (N.D. Cal. 2020).

*Third*, plaintiffs fail to explain how they acted diligently to uncover the facts giving rise to their claims. "Diligent inquiry is required where 'facts exist that would excite the inquiry of a reasonable person,'" which must be pled "with particularity." *In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 862 (N.D. Cal. 2020). The complaint is devoid of any allegations about diligence; plaintiffs merely assert that the earliest they could have known about Meta's conduct was "upon the filing of the FTC Complaint" against GoodRx. Compl. ¶ 205. Such "[c]onclusory statements are not enough." *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 F.2d 499, 502 (9th Cir. 1988). Plaintiffs do not even allege *when* or *how* they actually learned of the purported misconduct. *See Swartz*, 476 F.3d at 764.

Because Marquez and Wilson have not plausibly alleged fraudulent concealment or delayed discovery, their CIPA claims are untimely and should be dismissed with prejudice.

**5. CIPA Does Not Apply Extraterritorially.**

The CIPA claims fail for the plaintiffs whose claims are not time-barred—Jane Doe I and II, John Doe, and E.C.—because they are Florida, New Jersey, Illinois, and New York residents who do not allege that the alleged misconduct took place in California. *See* Compl. ¶¶ 22, 28, 35, 40. "Under California law, a presumption exists against the extraterritorial application [of] state law." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014). Courts must "presume the Legislature

did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

Nothing in CIPA displaces the presumption. CIPA's intent is "to protect the right of privacy of *the people of this state*." Cal. Penal Code § 630 (emphasis added). Had the Legislature intended to provide for extraterritorial application, it would have done so expressly—as it has in other statutes. Plaintiffs Jane Doe, Jane Doe II, John Doe, and E.C. are not "people of this state." Nor do they allege that they used the GoodRx platform in California, that they were injured in California, or that any wiretapping or eavesdropping took place in California. They cannot bring a CIPA claim.

**6. Jane Doe, Jane Doe II, John Doe, and E.C. Do Not Plausibly Allege Any Data Was Sent From or Received in California.**

Section 631(a) applies only when a person "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication" while it is "being sent from, or received at any place *within this state*." Cal. Penal Code § 631(a) (emphasis added). Plaintiffs Jane Doe, Jane Doe II, John Doe, and E.C. do not plausibly allege any data was sent from or received in California. *See supra* at 16–17. They merely allege, in conclusory fashion, that Meta "designed, contrived, agreed, conspired, effectuated, and/or received the interception and use of the contents of Plaintiffs'" communications in California. Compl. ¶ 312. Another judge in this district recently dismissed a CIPA claim against Google on this precise basis, holding it was not enough to allege that "events and conduct giving rise to Plaintiffs' claims occurred in California" or that "California is the state from which [defendant]'s alleged misconduct emanated." *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022). Nor is the presence of Meta's and GoodRx's headquarters in California, *see* Compl. ¶¶ 66, 312, enough to demonstrate where plaintiffs' information was actually "sent from" or "received." Cal. Penal Code § 631(a); *Hammerling*, 2022 WL 17365255, at *11.

**C. Plaintiffs Do Not State a Claim for Intrusion Upon Seclusion.**

A claim for intrusion upon seclusion requires allegations that a defendant "*intentionally* intrude[d] into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy" and that the intrusion "occur[red] in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2002).

*First*, plaintiffs fail to plausibly allege Meta had the requisite intent. Intent means that "the actor knows that the consequences are certain, or substantially certain, to result from his act" and "still goes ahead." *Inst. of Cetacean Rsrch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 950 (9th Cir. 2014) (quoting Restatement (Second) of Torts § 8A(b) (1965)). As with their CIPA claims, plaintiffs have not plausibly alleged that Meta intended to receive any sensitive health information merely because it makes a standard internet tool freely and publicly available—rather, the complaint affirmatively undermines any such notion by acknowledging Meta's contractual bar on sending sensitive health information and efforts to filter out any information sent in violation of that bar. *See supra* at 10. Accordingly, this claim should be dismissed with prejudice. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063, 1067 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

*Second*, plaintiffs fail to plausibly allege they had "a reasonable expectation of privacy" in the information Meta allegedly received. *See In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Hernandez*, 47 Cal. 4th at 286. This analysis parallels whether a communication was "confidential" under CIPA, because a confidential communication is one where a plaintiff had "an objectively reasonable expectation" of not being recorded. *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013); *see also Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689–91 (N.D. Cal. 2021). "A reasonable person viewing [Meta's and GoodRx's] disclosures would understand" their practices. *Smith*, 745 F. App'x at 8-9. For the same reasons that plaintiffs' communications were not "confidential," they lacked a reasonable expectation of privacy in their actions on GoodRx's website and app. *See supra* at 12.

*Third*, plaintiffs fail to plausibly allege that any intrusion was "'highly offensive' to a reasonable person and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez*, 47 Cal. 4th at 295. Meta's efforts to filter potentially sensitive health information are highly relevant in the "highly offensive" inquiry. "[N]o cause of action will lie for accidental, misguided, or excusable acts of overstepping upon legitimate privacy rights." *Hernandez*, 47 Cal. 4th at 295. "[N]egligent conduct" or conduct such as implementing "low-budget security measures," even with an "absolute disregard of [their] consequences," and even if they result in the loss of sensitive information like social security numbers, is *not* sufficiently egregious. *See Razuki v.*

*Caliber Home Loans, Inc.*, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

Plaintiffs' failure to plausibly allege that Meta "disseminat[ed] or misuse[d]" any sensitive health information further undermines any claim that an alleged breach was "sufficiently serious." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35 1994). Plaintiffs simply allege that having "personal health information disseminated in ways you are unaware of could have serious repercussions," without plausibly alleging *how* Meta disseminated or misused their information. Compl. ¶ 176. "Without more allegations as to what [Meta improperly] did with this information, [plaintiffs] ha[ve] not plausibly alleged a serious invasion of privacy." *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092–93 (N.D. Cal. 2018); *see White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015).

**D. Plaintiffs' CMIA Claims Against Meta Fail as a Matter of Law.**

Plaintiffs bring two claims against Meta under the CMIA. *First*, plaintiffs allege Meta is liable for violating CMIA section 56.36; that claim fails because there is no private cause of action for violations of that section of the statute. *Second*, plaintiffs claim that Meta is liable for aiding and abetting GoodRx's violations of the CMIA—a theory of liability that does not exist.

**1. There Is No Private Right of Action Under Section 56.36(c) of the CMIA.**

Plaintiffs bring a claim against Meta for violation of California Civil Code § 56.36 (part of the CMIA) based on Meta's alleged "knowing[] and willful[]" receipt of "medical information" from GoodRx. Compl. ¶ 303. According to plaintiffs, Meta's receipt of this information violates subsections 56.36(c)(2)(B)(3)(A) and (c)(2)(B)(5) of the CMIA.[8] Compl. ¶¶ 300–07. But even if plaintiffs plausibly alleged such conduct, it would not state a claim,[9] because there is no private right of action for violation of these provisions.

---

[8] Plaintiffs allege that Meta violated "56.36(B)(3)(A) and (B)(5)." Compl. ¶ 303. Meta assumes plaintiffs' claim refers to subsections 56**<u>(c)(2)</u>**(B)(3)(A) and **<u>(c)(2)</u>**(B)(5) based on the complaint's characterization of the subsections at issue. *Compare* Compl. ¶ 300 ("prohibits any person of [sic] entity other than a licensed health care professional from knowingly or willfully obtaining medical information for financial gain"), *with* Cal. Civ. Code § 56.36(c)(2)(B)(3)(A) ("A person or entity, other than a licensed health care professional, who knowingly or willfully obtains or uses medical information . . . for the purposes of financial gain . . . .").

[9] Even if there were a private cause of action for violation of section 56.36(c), plaintiffs have not alleged Meta knowingly and willingly received medical information from GoodRx. *See supra* at 10.

Although *subsection (b)* of section 56.36 provides that "an individual may bring an action against a person or entity who has negligently *released* confidential information or records," Cal. Civ. Code § 56.36(b), no similar private right of action exists under *subsection (c)*. Instead, the Legislature has exclusively entrusted specific state and local government officials with the authority to initiate "a civil action brought in the name of the people of the State of California" for recovery of civil penalties for violation of section 56.36(c). *Id.* § 56.36(f)(1) (laying out statutory scheme for enforcement of violations of section 56.36(c)).

Meta is not aware of any decision holding that a private right of action exists for a violation of section 56.36(c). Rather, as one court has explained, the Legislature intentionally distinguished between its creation of "a private cause of action for the negligent *release* of confidential medical information in section 56.36, subdivision (b)" and "a new system of administrative fines and civil penalties for the negligent or willful *use or disclosure* of such information in violation of CMIA in section 56.36, subdivision (c)." *Regents of Univ. of Cal. v. Super. Ct.*, 220 Cal. App. 4th 549, 567 (2013). "[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded." *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 725 (1989); *see United States v. Fuller*, 531 F.3d 1020, 1027 (9th Cir. 2008) (holding *expressio unius* canon creates a presumption that "when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions"). That judgment forecloses plaintiffs' claim.

Because "there is no private right of action to enforce that provision" of the CMIA, the claim should be dismissed with prejudice. *Titus v. McLane Foodservice, Inc.*, 2016 WL 4797497, at *4 (E.D. Cal. Sept. 14, 2016); *see Church v. Wells Fargo Bank, N.A.*, 2013 WL 12216851, at *1 (N.D. Cal Mar. 6, 2013).

**2. There Is No "Aiding and Abetting" Liability Under the CMIA.**

Plaintiffs also assert a claim against Meta, Google, and Criteo for aiding and abetting GoodRx's alleged violations of the CMIA. *See* Compl. ¶¶ 293–98. No such claim exists.

The CMIA does not itself impose aiding and abetting liability. And "courts have declined to apply common law aiding and abetting liability to statutes absent a basis for such liability in the language of the statute itself." *Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *5 (Cal. Ct. App. Aug.

10, 2017); *see also Clarke v. Horany*, 212 Cal. App. 2d 307, 311 (1963) ("The liability . . . is purely statutory and the statute makes no provision for imposing liability on agents or abettors . . . ." (citation omitted)). For example, in *Wolfe v. City of Fremont*, the court refused to "recognize a civil cause of action for aiding and abetting" in the "absence of statutory authority" to do so. 144 Cal. App. 4th 533, 552 (2006). Courts in this district have rejected similar attempts to impose aiding and abetting liability for UCL violations, recognizing that the statute does not give rise to an aiding and abetting claim. *See, e.g.*, *Toy v. TriWire Eng'g Sols., Inc.*, 2010 WL 3448535, at *3 (N.D. Cal. Sept. 1, 2010).

The CMIA is no different. The statute contains express liability provisions, *see, e.g.*, Cal. Civ. Code § 56.36(b), but there is an "absence of statutory authority" to recognize abettor liability. *See Wolfe*, 144 Cal. App. 4th at 552. Because CMIA's liability "is purely statutory . . . and the statute makes no provision for imposing liability on . . . abettors," plaintiffs' aiding and abetting claim fails as a matter of law. *Clarke*, 212 Cal. App. 2d at 311.

Even if the CMIA recognized an aiding and abetting cause of action, plaintiffs fail to state such a claim because they do not plausibly allege that GoodRx violated the CMIA. *See* GoodRx Mot. at 10–13. Meta cannot be liable under an aiding and abetting theory where there was no primary violation by GoodRx. *See, e.g.*, *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 575 (2005).

**E. Plaintiffs Plead No Plausible Unjust Enrichment Claim.**

Plaintiffs' unjust enrichment claim fails on several grounds. *First*, plaintiffs cannot recover equitable relief unless they lack a legal remedy. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). The Ninth Circuit held in *Sonner* that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.* While *Sonner* does not expressly address unjust enrichment, it necessarily applies to other forms of equitable relief. *See, e.g.*, *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal. 2021); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021). Here, equitable relief is unavailable because plaintiffs plead that a legal remedy—monetary damages—is available. *See* Compl. at p. 64. Plaintiffs also do not allege that they lack an adequate remedy at law for any past harm. Plaintiffs' equitable claim for unjust enrichment, as well as any other equitable remedies, therefore must be dismissed. *See, e.g.*, *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp.

3d 869, 876 (N.D. Cal. 2021); *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *12–13 (N.D. Cal. Aug. 30, 2021).

*Second*, unjust enrichment is a "quasi-contract cause of action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). "[A]n action based on . . . quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Rutherford Holdings*, 223 Cal. App. 4th at 231; *see Alatortev v. JetBlue Airways Corp.*, 2018 WL 2735355, at *6 (N.D. Cal. June 7, 2018) (dismissing unjust enrichment claim with prejudice). Such a contract exists here: the Terms of Service agreement between Meta and plaintiffs. *See* Meta RJN Ex. 1 at 1. Plaintiffs do not plead or otherwise allege "that the contract is unenforceable or void." *Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022). "Where there is no such dispute over validity or enforceability" of a contract, courts dismiss unjust enrichment claims with prejudice. *Id.*; *see, e.g.*, *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *12 (N.D. Cal. Dec. 19, 2019).

*Third*, plaintiffs fail to plead that Meta earned or retained any profits through Meta's alleged receipt of data from GoodRx, much less that it did so unjustly. Plaintiffs make general references to "economic, intangible, and other benefits." *E.g.*, Compl. ¶ 265. But allegations like these are not sufficient to state a claim for unjust enrichment. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 834–35 (N.D. Cal. 2020) (rejecting unjust enrichment claim based on profits allegedly garnered from plaintiffs' "'personal information' that Defendants[] allegedly used"). Nor have plaintiffs alleged that they retained a stake in the profits allegedly garnered from Meta's receipt of their data, or how any profits were *unjustly* earned. *See id.*

**F. Plaintiffs Plead No UCL Claim.**

Plaintiffs' UCL claim fails for a host of reasons.

*First*, plaintiffs do not plausibly allege the loss of "money or property." Cal. Bus. & Prof. Code § 17204. Their conclusory statements that "[h]ealth data . . . objectively has value" are insufficient. Compl. ¶¶ 357–58; *see Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (external value of data does not establish loss of money or property); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). And "the 'mere misappropriation of personal information' does not establish compensable damages," either. *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x

613, 615 (9th Cir. 2021); *see Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023).

*Second*, plaintiffs' request for restitution under the UCL fails because plaintiffs allege an adequate remedy at law. *See* Compl. ¶ 360. They will be unable to plausibly allege otherwise through amendment because the claims are all premised on the same factual predicates. Where plaintiffs' equitable claims for past harms are based on the same factual predicates as their legal claims, they are not "true alternative theor[ies] of relief but rather [are] duplicative." *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019) (dismissing with prejudice); *see Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016). Plaintiffs do not explain why the damages they seek for other claims are inadequate. *See* Compl. at p. 64.

*Third*, plaintiffs' claim under the "unlawful" prong of the UCL fails because it is predicated on the same theories underlying their other claims, making the failure of those underlying theories fatal. See Compl. ¶ 346; *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 896 & n.5 (N.D. Cal. 2022).

*Fourth*, plaintiffs' claim under the "fraudulent" prong fails because they do not plausibly allege any fraudulent conduct by Meta, beyond cursory assertions that defendants' "business acts and practices were likely to, and did, deceive members of the public . . . into believing [their] data was private and would not be shared with third parties." Compl. ¶ 350. In fact, plaintiffs do not allege that Meta "shared" anything. *Id.* And even if plaintiffs had alleged *any* deceptive conduct by Meta, they do not allege "that [they] read and relied on a specific misrepresentation." *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016); *see Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219–20 (N.D. Cal. 2014). Actual reliance requires that plaintiffs plausibly allege that they *read* the purported misrepresentations by Meta—which plaintiffs do not even attempt to characterize. Plaintiffs fail to allege they read anything, let alone "when and where they" viewed any alleged misrepresentation as required under Rule 9(b)'s heightened pleading standard. *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045–46 (N.D. Cal. 2021). That is "fatal" to the UCL claim. *In re Google, Inc. Priv. Policy Litig.*, 58 F. Supp. 3d 968, 982 (N.D. Cal. 2014).

*Fifth*, plaintiffs' claim under the "unfair" prong of the UCL fails because they do not satisfy either its balancing test: Plaintiffs have not identified any conduct or acts by Meta that were "immoral,

unethical, oppressive, unscrupulous or substantially injurious to consumers," particularly given that the complaint acknowledges that Meta takes substantial steps to prevent receipt of potentially sensitive information. *See Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013). Nor do they plead *any* facts alleging that any harm outweighs the utility of Meta's conduct. *Id.* Plaintiffs make no antitrust allegations, rendering the "tethering" test irrelevant. *Kellman*, 599 F. Supp. 3d at 896.

*Sixth*, the UCL does not apply extraterritorially, and the complaint contains no plausible claim that the allegedly "liability-creating conduct"—GoodRx's integration of the SDK and Pixel—occurred in California. *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018); *see supra* at 17. "[T]he presumption against extraterritoriality applies to the UCL in full force." *Sullivan*, 51 Cal. 4th at 1207. Out-of-state plaintiffs Jane Does I and II, John Doe, and E.C. cannot bring a UCL claim.

**G. E.C. Pleads No New York General Business Law Claim.**

Plaintiff E.C., "in the alternative" to the California UCL claim, alleges that all of the defendants violated section 349 of the GBL through their "unfair and deceptive" "business acts and practices" of "secretly" "disclosing and intercepting" E.C.'s purportedly "sensitive data" without consent. Compl. ¶¶ 361, 364, 366. A plaintiff bringing a section 349 claim must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts were misleading in a material way, and (3) the plaintiff has been injured as a result." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020).

Plaintiff E.C.'s claim fails on multiple fronts. *First*, E.C. fails to identify a deceptive act by Meta, let alone that this unstated act was one that was "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In fact, plaintiff does not identify any act by Meta *whatsoever* in this cause of action. *See* Compl. ¶¶ 364, 366. Earlier this year, a New York federal court dismissed similar cursory allegations brought against a web developer's use of the "Facebook Pixel" because they did not plausibly establish any materially misleading conduct. *Martin v. Meredith Corp.*, --- F. Supp. 3d ----, 2023 WL 2118074, at *6 (S.D.N.Y. Feb. 17, 2023), *appeal filed*, No. 23-412 (2d Cir.). *Second*, E.C. also fails to allege that "the deception . . . occur[red] in New York," which is a requirement for "a prohibited act under" the GBL. *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324–25 (2002); *see Callaghan v. BMW of N. Am.*,

*LLC*, 2014 WL 1340085, at *4 (N.D. Cal. Apr. 2, 2014); *Makaeff v. Trump Univ., LLC*, 2011 WL 1872886, at *2 (S.D. Cal. May 16, 2011) (dismissing § 349 claim with prejudice).

**H. John Doe Pleads No Illinois Consumer Fraud Act Claim.**

Plaintiff John Doe, like E.C., pleads an alternative state law consumer fraud claim. *See* Compl. ¶¶ 368–73. This alternative claim also fails.

*First*, plaintiff John Doe does not identify a particular provision that was violated, and instead alleges simply that Meta violated "815 Ill. Comp. Stat. Ann § 505/1, *et seq.*" Compl. ¶¶ 370–71, 373. Section 505/1 is a definitional section. To the extent John Doe claims Meta violated a certain subsection, Meta should not have to parse through every section to reconstruct plaintiff's claim.

*Second*, to the extent that John Doe raises a generic Consumer Fraud Act claim, he fails to plausibly allege it—let alone allege it with the particularity Rule 9(b) requires. *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Specifically, John Doe fails to allege with particularity "a direct statement [by Meta] with a material omission." *Guajardo v. Skechers USA, Inc.*, 503 F. Supp. 3d 746, 755 (C.D. Ill. 2020). John Doe also fails to allege that he "actually saw and was deceived by [any] statement." *De Bouse v. Bayer AG*, 922 N.E.2d 309, 315 (Ill. 2009). Nor does John Doe plausibly allege that he suffered "actual damages," 815 Ill. Comp. Stat. 505/10a, which does not include any claimed "privacy injury," *Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *8 (N.D. Ill. Mar. 3, 2023) (dismissing claim based on healthcare providers' disclosure of patient data to Facebook and Google through "third-party source code on its web properties"); *see Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021). And while a claim for unfair practices is not subject to Rule 9(b)'s heightened pleading standard, John Doe pleads *no* allegations that could plausibly establish any (unidentified) practice by Meta that "offends public policy"; is "immoral, unethical, oppressive, or unscrupulous"; or "causes substantial injury to consumers." *Windy City Metal Fabricators & Supply Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).

**CONCLUSION**

The Court should dismiss the complaint with prejudice.

Dated: July 7, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: *<u>/s/ Lauren R. Goldman</u>*
Lauren R. Goldman

**COOLEY LLP**

By: *<u>/s/ Michael G. Rhodes</u>*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

## CIVIL L.R. 5-1(h)(3) ATTESTATION

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: July 7, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: *<u>/s/ Lauren R. Goldman</u>*
Lauren R. Goldman