**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
esantacana@willkie.com
TIFFANY LIN (SBN 321472)
tlin@willkie.com
YUHAN ALICE CHI (SBN 324072)
ychi@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JANE DOE, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,

Defendants.

Case Nos. 3:23-cv-00501-AMO

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

Date: October 12, 2023
Time: 2:00 PM
Location: Courtroom 10, 19th Floor
Judge: Hon. Araceli Martínez-Olguín

Consolidated Class Action Complaint filed 5/26/2023

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case Nos. 3:23-cv-00744-AMO<br><br>Complaint filed 2/17/23 |
| JOSE MARQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., META PLATFORMS, INC., GOOGLE LLC, and CRITEO CORP.,<br><br>Defendants. | Case Nos. 3:23-cv-00940-AMO<br><br>Complaint filed 3/2/23 |
| HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case Nos.: 3:23-cv-01293-AMO<br><br>Complaint filed 3/20/23 |
| E.C., individually and behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs. | Case Nos. 3:23-cv-01508-AMO<br><br>Complaint filed 3/30/23 |

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,

Defendants.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on October 12, 2023 at 2:00 PM, the undersigned will appear before the Honorable Araceli Martínez-Olguín of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall then and there present Defendant Google LLC ("Google")'s Motion to Dismiss ("Motion").

Google brings this Motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Google will, and hereby does, move for an order dismissing the Consolidated Class Action Complaint ("Consolidated Complaint") with prejudice because any amendment of the Complaint would be futile. The Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, Request for Judicial Notice and exhibits attached thereto, the pleadings and other papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

## ISSUES PRESENTED

Whether Plaintiffs' Consolidated Complaint should be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and whether the claims should be dismissed with prejudice where amendment would be futile.

Respectfully submitted,

Dated: July 7, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Benedict Y. Hur*
Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
Tiffany Lin
Yuhan Alice Chi

*Attorneys for Defendant Google LLC*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

I. Plaintiffs allege only that Google lawfully provided GoodRx with analytics services. ..... 2

I. The contract between Google and GoodRx forbade GoodRx from sending Google PII, sensitive information about a user, or using PII or sensitive information to advertise. ..... 4

II. Procedural History ..... 7

LEGAL STANDARD ..... 8

ARGUMENT ..... 8

I. Plaintiffs consented to GoodRx's use of Google Analytics ..... 10

II. Plaintiffs' claims also fail because they do not allege Google did anything but act as a mere vendor of an analytics tool to record GoodRx's own interactions with users. ..... 11

A. CIPA Section 631 (Claim 9) ..... 12

B. CIPA Section 632 (Claim 10) ..... 13

C. Invasion of Privacy (Claims 1 and 2) ..... 14

E. Consumer Deception Statutes (Claims 12, 13, and 14) ..... 15

III. Plaintiffs fail to allege Google had knowledge of the transmission of purported health data or intended to receive such data. ..... 15

A. Plaintiffs fail to allege a plausible inference of knowledge or intent. ..... 15

B. ..... Plaintiffs' failure to allege knowledge or intent is fatal to their intrusion upon seclusion, aiding and abetting, CIPA § 631 & 632, CMIA § 56.36, UCL, GBL, and Illinois Consumer Protection Statute claims ..... 17

1. Intrusion Upon Seclusion (Claims 1 and 2) ..... 17

2. Aiding & Abetting CMIA violation and CMIA violation (Claims 7 & 8) ..... 17

3. CIPA Sections 631 and 632 (Claims 9 & 10) ..... 18

4. "Unfair" and "fraudulent" prongs of the UCL & "Deceptive" Prong of Plaintiff E.C.'s GBL claim (Claims 12 & 13) ..... 18

5. John Doe's ICFDA claim (Claims 14) ..... 19

IV. Plaintiffs' claims fail for additional reasons. ....................20

A. Unjust enrichment is not cognizable (Claim 3) ....................20

B. There is no private right of action for Plaintiffs' Claim 8 and Plaintiffs do not allege that Google obtained or used medical information for financial gain, in violation of CMIA § 56.36 ....................20

C. Plaintiffs lack standing to assert a claim under the UCL (Claim 12). ....................21

D. E.C.'s GBL claim and John Doe's ICFDA claim both fail because they have not alleged a misrepresentation by Google (Counts 13 and 14). ....................23

CONCLUSION ....................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
– F. Supp. 3d –, 2023 WL 27356 (N.D. Cal. Jan. 3, 2023) ........ 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Boone v. MB Fin. Bank, N.A.*,
375 F. Supp. 3d 987 (N.D. Ill. 2019) ........ 11

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. Apr. 7, 2020) ........ 24

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2017) ........ 11, 27

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ........ 20

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 ........ 14

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016), aff'd, 700 F. App'x 588 (9th Cir. 2017) ........ 18

*Cardoso v. Wells Fargo Bank, N.A.*,
2022 WL 4368109 (S.D.N.Y. Sep. 20, 2022) ........ 25

*Carrico v. City & Cnty. of San Francisco*,
656 F.3d 1002 (9th Cir. 2011) ........ 8

*City & Cnty. of S.F. v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020) ........ 19

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ........ 14

*Dolemba v. Kelly Servs., Inc.*,
2017 WL 429572 (N.D. Ill. Jan. 31, 2017) ........ 11

*Dwyer v. Allbirds, Inc.*,
598 F. Supp. 3d 137 (S.D.N.Y. 2022) .......... 25

*Erhart v. Bofl Holding, Inc.*,
269 F. Supp. 3d 1059 (S.D. Cal. 2017) .......... 22

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) .......... 19

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) .......... 19

*Freedline v. O Organics LLC*,
445 F. Supp. 3d 85 (N.D. Cal. 2020) .......... 21

*Garcia v. Brockway*,
526 F.3d 456 (9th Cir. 2008) .......... 24

*Gardiner v. Walmart, Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 23

*Garrett v. RentGrow, Inc.*,
2005 WL 1563162 (N.D. Ill. July 1, 2005) .......... 20, 26

*In re Gilead Scis. Secs. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......... 8

*Gold v. Lumber Liquidators, Inc.*,
2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) .......... 20, 26

*Gonzalez v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......... 23

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 15

*In re Google, Inc.*,
2023 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......... 14

*Gracia v. Wells Fargo Bank, N.A.*,
2023 WL 1319573 (N.D. Ill. Jan. 30, 20230) .......... 26

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... *passim*

*Hakimi v. Societe Air France, S.A.*,
2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) .......... 24

*Hartford Cas. Ins. Co. v. J.R. Marketing, LLC.*,
61 Cal. 4th 988 (2015) .......... 11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ....................15

*Hexcel Corp. v. Ineos Polymers, Inc.*,
681 F.3d 1055 (9th Cir. 2012) ....................24

*Javier v. Assurance IQ, LLC*,
2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ....................13, 24

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ....................13

*In re JUUL Labs, Inc., Marketing, Sales Practices, & Prods. Liability Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) ....................20

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ....................20

*Koch v. Acker, Merrall & Condit Co.*,
18 N.Y.3d 940 (2012) ....................25

*Kwikset Corp. v. Superior Ct.*,
51 Cal. 4th 310 (2011) ....................23

*Lebrun v. CBS Television Studios, Inc.*,
68 Cal. App. 5th 199 (2021) ....................21

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................15

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ....................11, 16, 20, 26

*Millennium Health, LLC v. EmblemHealth, Inc.*,
240 F. Supp. 3d 276 (S.D.N.Y. 2017)....................11

*Miller v. Rykoff-Sexton, Inc.*,
845 F.2d 209 (9th Cir. 1988) ....................8

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ....................26

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................8

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
875 F.3d 107 (2d Cir. 2017)....................25

*Oswego Laberers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ....................25

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ....................16

*Phil. Indemn. Ins. Co. v. Chicago Title Ins. Co.*,
771 F.3d 391 (7th Cir. 2014) ....................26

*Plumlee v. Pfizer, Inc.*,
2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ....................24

*Rodriguez v. Google*,
2021 WL 2026726 (N.D. Cal. May 21, 2021)....................15, 17, 18, 23

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ....................12

*Silver v. Stripe, Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021)....................21

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ....................11

*Snipes v. Wilkie*,
2019 WL 1283936 (N.D. Cal. Mar. 20, 2019)....................11

*Solomon v. Bell Atlantic Corp.*,
777 N.Y.S.2d 50....................25

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), opinion amended....................18

*Strumlauf v. Starbucks Corp.*,
2018 WL 306715 (N.D. Cal. Jan. 5, 2018) ....................25

*Taus v. Loftus*,
40 Cal. 4th 683 (2007) ....................18

*Tromble v. Western Digital Corp.*,
2021 WL 2165796 (N.D. Cal. May 27, 2021) ....................25

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ....................12

*Weiner v. ARS Nat'l. Servs., Inc.*,
887 F. Supp. 2d 1029 (S.D. Cal. 2012)....................14

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)....................12, 13

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....................13

**Statutes**

Cal. Civ. Code § 56.05(i) ....................22
Cal. Civ. Code § 56.36 .................... *passim*
Cal. Civ. Code § 56.36(b) ....................18
Cal. Civ. Code §§ 56.36(c)(3)(A) ....................18, 22
Cal Civ. Code §§ 56.36(c)(3)(A) and (c)(5) ....................18, 19, 21, 22
Cal. Civ. Code § 56.36(f)(1) ....................21
Cal. Pen. Code § 631(a) ....................12, 19
Cal. Penal Code § 632 ....................7, 9, 14
California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq* ....................7, 16
Civil Code Section 56.36(B)(3)(A) ....................18
Civil Code Section 56.36(B)(5) ....................18
Civil Code Sections 56.36(c)(3)(A) and 56.36(c)(5) ....................18
Ill. Comp. Stat. Ann. ¶ 505/1 ....................7–8, 10, 16, 20
New York General Business Law § 349 .................... *passim*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Website and app developers, including health-related companies, use a variety of analytics tools to study how well their websites and apps are functioning, and to analyze users' experiences on their websites and apps. This District has repeatedly recognized that developers have the right to employ such analytics tools, and that the providers of those analytics tools serve as vendors or service providers to the developer. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021) (provider of software that allows a developer to "record and analyze its own data" is a mere "vendor for software services" and not an unlawful wiretapper). After all, analytics providers only provide developers with information about how users use their websites and apps. To state a claim against an analytics provider, a plaintiff must allege more than just that the analytics provider made the analytics tool available to customers—at a minimum, a plaintiff must allege that the analytics provider exceeded the scope of its role as a mere vendor. As to Google and its analytics tool, Google Analytics, Plaintiffs have alleged nothing like that.

In Plaintiffs' almost 400-paragraph complaint, Plaintiffs say next to nothing about Google. Plaintiffs do not allege that Google directed GoodRx to transmit any data to Google in particular, or that Google wanted this data, or that Google did anything—such as serving targeted advertising—with the data. Indeed, Plaintiffs do not identify any fact that would make it plausible that Google served any ads based on data entered by Plaintiffs on the GoodRx platforms.

This is unsurprising. Plaintiffs could not plausibly plead any of these allegations because Google acted only in its capacity as a vendor providing an analytics tool—which GoodRx disclosed to its users in its privacy policies. The terms governing Google's vendor relationship with developers like GoodRx expressly prohibit those developers from transmitting personally identifiable information (including sensitive health information) to Google. Those terms similarly prohibit targeted advertising based on health conditions. And Google requires developers like GoodRx to disclose their use of Google Analytics on their websites and apps, which GoodRx did. This reason alone dooms all but two of Plaintiffs' claims.

The claims fail for other independent reasons as well. As a threshold matter, Google

cannot be held liable where, as here, GoodRx disclosed the use of Google Analytics and Plaintiffs consented to that use. Plaintiffs also fail to allege that Google acted with the requisite knowledge or intent. Moreover, to the extent Plaintiffs' theory of the case is that Google secretly planned to receive and exploit data it publicly told website operators it did not want, that theory of the case is subject to Rule 9(b)'s heightened pleading standard, and Plaintiffs fall far short of that standard.

To the extent that the consent, vendor, and intent arguments do not dispose of all of Plaintiffs' claims, there are several claim-specific deficiencies for the Court to consider, including a failure to allege substantial assistance or encouragement sufficient to establish an aiding and abetting claim, failure to show that there is a private right of action under Cal. Civ. Code § 56.36, failure to allege standing under the California UCL, and failure to allege that Google made any misrepresentations to Plaintiffs under various consumer deception statutes.

## BACKGROUND

### I. Plaintiffs allege only that Google lawfully provided GoodRx with analytics services.

Google Analytics is one of the many products available in the market that allows developers to better understand how their users interact with their websites and apps. Compl. ¶¶ 145, 148–49, 152. It is a tool for developers to understand, among other things, their website traffic and the most popular app screens or web page visits by users. *Id.* ¶¶ 145–152.[1] For instance, the New York Times may install Google Analytics on its app to measure how many people navigated to a particular article or decided to play its crossword puzzles. A developer can choose the types of data they are interested in analyzing, and share that data with Google Analytics. *See id.* ¶¶ 149–151 (a developer incorporates Google Analytics by "adding a small piece of JavaScript measurement code" and can "customize the processing of the data"). Google Analytics then provides an analytics report to the customer based on metrics that the customer chooses. *See id.* ¶¶ 149, 152. The developer can also choose to integrate certain other Google products and services,

---

[1] Compl. ¶ 149 (citing *Analytics Overview*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/ (last visited June 19, 2023) ("Google Analytics gives you the tools, free of charge, to understand the customer journey")); *see also* Google RJN Ex. 1 (attaching the full webpage)

such as Google Ads, with their use of Google Analytics, but the Complaint does not allege that any such integration was made in this case. *Id*. ¶149.

GoodRx is one developer out of millions who chose to incorporate Google Analytics into its app and website ("GoodRx Platform"). *Id*. ¶ 154. Plaintiffs allege that GoodRx used Google Analytics to analyze its data, and in doing so disclosed sensitive health data and personal information to Google without Plaintiffs' consent. *Id*. ¶¶ 154–156. Plaintiffs repeatedly concede that GoodRx, as the developer, is in control of how to implement Google Analytics on the GoodRx Platform—including what data to measure via Google Analytics, and what, if anything, to do with the data. *See* Compl. ¶¶ 61, 149–154. Plaintiffs do not allege that Google instructed GoodRx to transmit to Google the purported health data—or any other type of data at all. Nor do they allege that Google did anything with the data it received apart from providing the analytics service to GoodRx. Nor do they allege that GoodRx engaged in any advertising using the allegedly ill-gotten analytics data.

Indeed, Plaintiffs make only a handful of allegations about *Google's* conduct across three-and-a-half pages of their 66-page complaint. *See* Compl. pp. 24-27. Plaintiffs allege that GoodRx designed "Custom Events"—that is, not the standard events Google Analytics is designed to provide—that packaged within them "the names of medications, drug types, health conditions relating to the medications, the medication quantities and dosages, and pharmacy IDs," which GoodRx then transmitted to Google. *Id*. ¶ 154. Plaintiffs also allege that GoodRx's customization of Google Analytics resulted in the transmission to Google of "PII, including phone number, email address, zip code, IP address, as well as unique advertising IDs and device IDs that uniquely identify the user and their device." *Id*.

In stark contrast to their allegations which discuss advertising only on Facebook and Instagram, Plaintiffs do not allege that the data it provided to Google Analytics was used for advertising. They do not allege that GoodRx used any of the "Custom Events" to create advertising audiences or to target advertising on Google's network, they do not allege that they saw any Google-served targeted advertising, and they do not allege whether and how GoodRx used *any* of Google's marketing products at all. *See id*. ¶¶ 180–191 (alleging only how GoodRx

advertised via Meta's services).

Plaintiffs also do not allege that Google specifically used *GoodRx's* data to "improve its ad targeting capabilities and data points on users." *Id.* ¶ 153. There is no factual allegation in the complaint to suggest that Google Analytics did anything other than what it contracted with GoodRx to do: analyze GoodRx's own data about its own users. *Id.* ¶ 145 (Google Analytics is a "tool for website traffic analysis").

Each of the Plaintiffs used the GoodRx Platform in different ways, frequencies, and time periods. **Jane Doe**, from Florida, alleges she used the GoodRx website in August 2022 to obtain medical treatment and a prescription, and paid for those services. *Id.* ¶¶ 23, 25, 26. **Jane Doe II** (New Jersey) alleges she used the GoodRx app to obtain prescription coupons, and that she subscribed to the GoodRx "Gold" membership. *Id.* ¶ 27, 30. **John Doe** (Illinois) alleges he used the GoodRx platform between 2016 and 2023 to obtain discounts and prescription coupons for various medications. *Id.* ¶¶ 36–39. Plaintiff **E.C.** (New York) alleges he has used the GoodRx website since 2018 to locate pharmacies for "various prescriptions of a highly sensitive nature." *Id.* ¶ 41-45. **Jose Marquez** (California) alleges that he used the GoodRx app in the summer of 2021, subscribed to GoodRx "Gold," and used it to access savings on prescriptions. *Id.* ¶ 47, 49, 51, 52. Finally, **Hollis Wilson** (California) alleges she used the GoodRx website repeatedly between 2015 and 2019 to obtain prescription coupons. *Id.* ¶ 55, 57, 58.

### II. The contract between Google and GoodRx forbade GoodRx from sending Google PII, sensitive information about a user, or using PII or sensitive information to advertise.

The crux of the allegations against Google is that the relationship between GoodRx and Google enabled GoodRx to disclose sensitive user data to Google. But the complaint selectively quotes the foundational contracts that govern those relationships and the privacy policy GoodRx used to disclose its obligations under those contracts to users.

To use Google Analytics, developers must consent and abide by the Google Analytics

Terms of Service.[2] These Terms of Service (TOS) expressly prohibit developers from sending Google Analytics any data that contains personally identifiable information, and require developers to disclose the use of Google Analytics to their end users.[3] Google's TOS instructs developers: "You will not and will not assist or permit any third party to pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information." Google's RJN Ex. 2. The Google Analytics help pages for developers similarly instructs: "Please remember that to protect user privacy, Google Analytics policies and terms mandate that no data be passed to Google that Google could recognize as personally identifiable information (PII), and no data you collect using Google Analytics may reveal any sensitive information about a user, or identify them."[4]

Further, Google prohibits all developers from personalized advertising based on sensitive information or prohibited categories, including personal health conditions, medication, and related health information. In particular, the policies state that "[s]ensitive interest categories are restricted in personalized ads."[5] Google defines sensitive interest categories to include "health conditions, treatments, procedures, personal failings, struggles, or traumatic personal experiences," and "personal health content," which includes (i) "physical or mental health conditions, including diseases, sexual health, and chronic health conditions"; (ii) "products, services, or procedures to treat or manage chronic health conditions, which includes over-the-counter medications and medical devices"; and (iii) "any health issues associated with intimate body parts or functions, which includes genital, bowel, or urinary health."[6]

Google tells developers that it enforces these prohibitions using technical safeguards and

---

[2] Google's RJN Ex. 2. *Google Analytics Terms of Service*, https://marketingplatform.google.com/about/analytics/terms/us/ (last visited June 19, 2023).
[3] *Id.*
[4] Google's RJN Ex. 3, *HIPAA and Google Analytics*, Analytics Help, https://support.google.com/analytics/answer/13297105?hl=en#:~:text=Customers%20who%20are%20subject%20to,that%20are%20not%20HIPAA%2Dcovered. (last visited June 19, 2023).
[5] Google's RJN Ex. 4, *Personalized Advertising*, Advertising Help, https://support.google.com/adspolicy/answer/143465 (last visited July 3, 2023)
[6] *Id.*

an ad content review process designed to confirm all ads adhere to Google Ads policies.[7] As long as developers comply with these policies, health-related apps and websites are allowed to advertise with Google.[8] Developers who do not comply face repercussions, including losing their ability to advertise with Google.[9] Finally, Google requires developers to "disclose the use of Google Analytics, and how it collects and processes data" to their users. Google's RJN Ex 2. Accordingly, to comply with Google's policies, GoodRx discloses to its users the use of Google Analytics in its Terms of Use and Privacy Policy. *See* Compl. ¶¶ 103–112 (alleging Plaintiffs' expectations based on GoodRx's privacy policy). GoodRx's Privacy Policy *expressly* discloses use of Google and its analytics technology:[10]

> **Information We Collect Automatically . . .**
>
> **Third-Party Technologies:** We may use other companies' analytics, tracking and provided tools that receive information when you use our Services, ***including technology from Google***, *Facebook and others,* ***to help us track, segment, and analyze usage of the Services***, and to help us or those companies serve more targeted advertising on the Services and across the Internet. These tools may use technology such as cookies, tags, pixels, SDKs, and similar technologies to track online activity.
>
> * * *
>
> **How do we share information with others? . . .**
>
> **We may share your information with the following service providers** and third parties to perform services on our behalf such as: . . . **Data analytic, data connectivity and customer data providers and platforms**

GoodRx has also specifically explained how and why it uses Google Analytics. In the October 2017 privacy policy that Plaintiffs rely on in their complaint, for example, GoodRx explained that it uses "Google Analytics Demographics and Interest Reporting" to "enable

---

[7] Google's RJN Ex. 5, *About the ad review process*, Google Ads Help, https://support.google.com/google-ads/answer/1722120?hl=en (last visited June 20, 2023).

[8] Google's RJN Ex. 6, *Healthcare and medicines*, Advertising Policies Help, https://support.google.com/adspolicy/answer/176031?hl=en (last visited June 20, 2023).

[9] Google's RJN Ex. 7, *What Happens if You Violate Our Policies*, Advertising Policies Help, https://support.google.com/adspolicy/answer/7187501?sjid=6651956405202531811-NA. (last visited July 3, 2023)

[10] Cheng Declaration in support of GoodRx Request for Judicial Notice ECF 113-2 ("Cheng Decl."), Ex. 4 at 39, GoodRx Privacy Policy (Jan. 1, 2023). Page numbers refers to ECF generated numbers at the top of each document.

[GoodRx] to view demographic and other information aggregated from the overall population of the visitor to our site."[11] Compl. ¶¶ 104–107. Other iterations of the GoodRx Privacy Policy similarly disclose use of Google's technology on the GoodRx Platform.[12]

### III. Procedural History

Plaintiffs Jane Doe, John Doe, E.C., Jose Marquez, and Hollis Wilson filed separate class action lawsuits against defendants GoodRx, Inc., Meta Platforms, Inc., Google LLC, and Criteo Corp. *See* ECF 80 at 1. On April 28, 2023, the Court held a case management conference, and granted Plaintiffs' unopposed motion for consolidation and set out a staged briefing schedule for anticipated motions to compel arbitration, to stay, and to dismiss. *See* ECF 81. Plaintiffs filed their operative Consolidated Class Action Complaint on May 26, 2023. Compl., ECF 102. Plaintiffs added named plaintiff Jane Doe II, and allege the following claims against Meta, Google, and Criteo (collectively, "Analytics Defendants"): (1) Intrusion upon seclusion (Claims I–II)[13]; (2) Unjust enrichment (Claim III); (3) Aiding and abetting violation of California Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56.06, 56.101, 56.10 (Claim VII); (4) Violation of CMIA, Cal. Civ. Code § 56.36 (Claim VIII); (5) Violation of California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631 (Claim IX); (6) Violation of CIPA, Cal. Penal Code § 632 (Claim X); (7) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq* (Claim XII); (8) Violation of New York General Business Law ("GBL") § 349 (Claim XIII); (9) Violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDA"), 815 Ill. Comp. Stat. Ann. ¶ 505/1 (Claim XIV).

On June 9, 2023, GoodRx filed its motion to compel arbitration and dismiss or stay proceedings. GoodRx Mot., ECF 107. On June 16, 2023, defendants Google and Criteo filed their respective motions to compel arbitration and to stay proceedings pending arbitration, and

---

[11] *Id.*, Ex. 1 at 8, GoodRx Privacy Policy (archived Oct. 17, 2017).
[12] *See, e.g.,* GoodRx Mot. to Dismiss, ECF 113, at 4–5; Cheng Decl. Ex. 2 at 18, GoodRx Privacy Policy (archived Mar. 27, 2019); *id.* Ex. 3 at 29 (archived Dec. 17, 2019); *id*. Ex. 5 at 50, HeyDoctor Privacy Policy (archived June 20, 2019) ("We use Google Analytics, a web analytics service provided by Google, Inc. [] to collect certain information relating to your use of the Site").
[13] Counts I and II appear to be duplicative as to the Analytics Defendants.

defendant Meta filed its motion to stay proceedings. *See* Mots. ECF 108–10.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing that his right to relief rises above "the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678–79 (2009). A court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Dismissal without leave to amend is appropriate if "amendment would be futile." *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile when "no set of facts can be proved . . . that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

## ARGUMENT

Plaintiffs allege nine claims against Google, and each fails for at least one of three independent reasons: (1) Plaintiffs consented to GoodRx's use of Google Analytics; (2) Google cannot be liable for merely serving as a vendor of analytics tools to GoodRx; and (3) Plaintiffs have failed to allege that Google had the requisite knowledge or intent. Several of the claims fail for additional, independent reasons as outlined below. To aid the Court's evaluation of how Google's arguments apply to Plaintiffs' claims, Google provides the following chart identifying each claim and the applicable arguments for dismissal:

| Claims against Google | Reasons for Dismissal | | | |
|---|---|---|---|---|
| | **Plaintiffs consented** | **Google is merely a vendor** | **Lack of knowledge or intent** | **Other reasons** |
| 1–2. Intrusion upon seclusion | X | X | X | |
| 3. Unjust enrichment | X | | | Not a cognizable claim |
| 7. Aiding and abetting GoodRx's violation of CMIA | X | X | X | |
| 8. Violation of CMIA, Cal. Civ. Code § 56.36 | X | | X | There is no private right of action and Plaintiffs, in any event, failed to allege that Google obtained or used the purported health data for "financial gain" and, in any event, cannot show that the data at issue qualifies as "medical information" |
| 9. Violation of CIPA § 631 | X | X | X | Plaintiffs Marquez and Wilson's CIPA claims are time-barred |
| 10. Violation of CIPA § 632 | X | X | X | |
| 12. Violation of UCL | X | X | X | Plaintiffs lack UCL standing and do not plausibly plead a UCL claim |
| 13. Violation of GBL § 349 | X | X | X | Plaintiff E.C. failed to plead that Google acted in a "materially misleading" way or that he suffered a GBL injury |
| 14. Violation of ICFDA, 815 Ill. Comp. Stat. Ann. § 505/1 | X | X | X | Plaintiff John Doe failed to plead any factual allegation in support of ICFDA claim |

### I. Plaintiffs consented to GoodRx's use of Google Analytics.

In order to use Google Analytics, GoodRx agreed never to send Google Analytics any personally identifiable information or any sensitive health information about a user.[14] Google also prohibits GoodRx from personalized advertising based on sensitive information such as "health conditions, treatments, procedures, personal failings, struggles, or traumatic personal experiences," and "personal health content."[15] Google also requires GoodRx to expressly disclose its use of Google Analytics to Plaintiffs, which it did.[16] In fact, Plaintiffs' use of the GoodRx website and app was contingent on agreeing to GoodRx's use of Google Analytics:

> "**Third-Party Technologies:** We may use other companies' analytics, tracking and provided tools that receive information when you use our Services, ***including technology from Google***, *Facebook and others*, ***to help us track, segment, and analyze usage of the Services***, and to help us or those companies serve more targeted advertising on the Services and across the Internet. These tools may use technology such as cookies, tags, pixels, SDKs, and similar technologies to track online activity."[17]

Plaintiffs' consent to GoodRx's use of Google Analytics is fatal to every claim against Google because they all are premised on Google's "interception of [Plaintiffs'] information without consent." Compl. ¶ 21. The Court should dismiss the claims against Google with prejudice for this reason alone. *See, e.g.*, *Matera v. Google Inc.*, 2016 WL 5339806, at *7 (N.D. Cal. Sept. 23, 2016) ("Under CIPA, a consent defense is established when both parties—the sender and the recipient of the communication—consent to the alleged interception."); *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–55 (N.D. Cal. 2017) (where plaintiffs assented to terms of use that disclosed collection of information on third-party health websites,

---

[14] Google's RJN Ex. 2. *Google Analytics Terms of Service*, https://marketingplatform.google.com/about/analytics/terms/us/ (last visited June 19, 2023); Google's RJN Ex. 3, *HIPAA and Google Analytics*, Analytics Help, https://support.google.com/analytics/answer/13297105?hl=en#:~:text=Customers%20who%20are%20subject%20to,that%20are%20not%20HIPAA%2Dcovered. (last visited June 19, 2023).

[15] Google's RJN Ex. 4, *Personalized Advertising*, Advertising Help, https://support.google.com/adspolicy/answer/143465 (last visisted July 3, 2023)

[16] *See, e.g.,* GoodRx Mot. to Dismiss, ECF 113, at 4–5; Cheng Decl. Ex. 2 at 18, GoodRx Privacy Policy (archived Mar. 27, 2019); *id.* Ex. 3 at 29 (archived Dec. 17, 2019); *id*. Ex. 5 at 50, HeyDoctor Privacy Policy (archived June 20, 2019) ("We use Google Analytics, a web analytics service provided by Google, Inc. [] to collect certain information relating to your use of the Site").

[17] Cheng Decl, Ex. 4 at 39, GoodRx Privacy Policy (Jan. 1, 2023).

"[p]laintiffs' consent [] bars their common-law tort claim" for intrusion upon seclusion); *Snipes v. Wilkie*, 2019 WL 1283936, at *6 (N.D. Cal. Mar. 20, 2019) ("[E]ffective consent negates an intrusion upon seclusion claim."); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 n.3 (N.D. Cal. 2017) ("consent is a defense to Plaintiffs' UCL claim, which is predicated on Google's representations and Plaintiffs' other claims."); *Hartford Cas. Ins. Co. v. J.R. Marketing, LLC.*,61 Cal. 4th 988, 998 (2015) (unjust enrichment occurs where "the enrichment obtained lacks any adequate legal basis and thus 'cannot conscientiously be retained'") (citation omitted); Civ. Code § 56.36(c)(5) (CMIA liability limited to only an entity "*who is not permitted*" to receive the purported medication information) (emphasis added); *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *4 (N.D. Ill. Jan. 31, 2017) (no ICFDA claim where the plaintiff consented to the allegedly unfair conduct); *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 997 (N.D. Ill. 2019) (conduct not deceptive under ICFDA where terms at issue accurately disclosed defendant's conduct and plaintiff accepted those terms); *cf. Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (under GBL § 349, "[t]here can be no claim for deceptive acts or practice [] when the alleged deceptive practice was fully disclosed").

## II. Plaintiffs' claims also fail because they do not allege Google did anything but act as a mere vendor of an analytics tool to record GoodRx's own interactions with users.

In addition to Plaintiffs having consented to GoodRx's disclosure of the data at issue to Google, there is an independent reason the claims should be dismissed. The law in this District is that a mere vendor who provides a tool for a website to record user interactions cannot be liable for the recording. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). As explained below, this is fatal to Plaintiffs' CIPA section 631 claim. And because all but two[18] of the other claims against Google depend upon plausibly alleging the same underlying "interception" by a third-party that forms the basis of the CIPA section 631 claim, those other claims fail, too.

[18] The two remaining claims have fatal flaws, as discussed separately below. "Unjust enrichment" is not a cognizable claim and there is no private right of action to bring the CMIA claim against Google, among other pleading deficiencies.

**A. CIPA Section 631 (Claim 9)**

Section 631 of CIPA (Count 9) makes it unlawful for "any person" to "read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable" "willfully and without the consent of all parties to the communication." Cal. Pen. Code § 631(a). A party to a communication cannot violate section 631 by intercepting a communication because a party cannot wiretap itself. *See Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); Noom, 533 F. Suppp. 3d at 823; *see also Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (the use of a tape recorder by a party to the communication did not violate section 631).

*Noom* is directly on point. There, Noom used Defendant FullStory's software to record "visitor data such as keystrokes, mouse clicks, and page scrolling," which, plaintiff alleged, resulted in the disclosure of "medical information" to FullStory without consent. *Id*. at 823–29. Judge Beeler held this could not violate section 631 because FullStory acted as a service provider to Noom, and the plaintiff did not plausibly allege that FullStory "aggregate[ed] [the] data for resale . . . [or that it] used the data itself." *Id*. Accordingly, at most, FullStory provided a "tool" that allowed the party (Noom) to "record and analyze its own data in aid of Noom's business." *Id*.

Judge Alsup's reasoning reiterated the holding in *Noom*, which applies here: "[t]he question boils down to whether [Google] was an independent third party hired to eavesdrop on [GoodRx's] communications, or whether [Google's] software was merely a tool that [GoodRx] used to record its own communications with plaintiff." *Williams*, 2022 WL 17869275, at *3 ("[R]ecordation is routine documentation and therefore clerical in nature, which is qualitatively different from data mining"). That the analytics provider stores and processes the data on its own servers "is part of how the software tool functions" and does not by itself subject the provider to liability. *Id*.; *see also Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) (holding same); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same).

Plaintiffs may rely on *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *5 (N.D. Cal. Jan. 5, 2023), in which Judge Breyer—in dicta—noted that if the tool's provider "does not have the capability to use its record of the interaction for any other purpose (just as a tape recorder has

no independent capability to divulge the recording for any other purpose but that of its owner)," then liability will not lie; but if the tool goes "beyond the ordinary function of a tape recorder," then the provider of the tool could be liable. *Id.* at *6. A focus on the tool's other capabilities is misplaced; how the tool is used is what matters. *See Noom*, 533 F. Supp. 3d at 823; *Williams,* 2022 WL 17869275, at *3. But even following the dicta in *Javier*, the claim here would fail. Nowhere do Plaintiffs allege that GoodRx integrated Google Analytics with any other Google product that had the capability to be used beyond providing analytics services.

Here, as in *Noom* and *Williams*, Google is only alleged to have provided the analytics service GoodRx wanted, and nothing more. Compl. ¶¶ 79–85, 142–56 (no factual allegation that Google did anything with GoodRx's data). The scope of Google's role here is limited to that of a service provider who created "a tool—like [a] tape recorder . . . —that allows [GoodRx] to record and analyze its own data in aid of [GoodRx's] business." *Noom*, 533 F. Supp. 3d at 832–33. Accordingly, Plaintiffs' section 631 claim must fail because Google–by virtue of merely being GoodRx's vendor–is a party to the communications at issue and so could not have intercepted Plaintiffs' communications with GoodRx.

**B. CIPA Section 632 (Claim 10)**

Plaintiffs' section 632 claim (Count 10) fails for similar reasons. To state a claim under section 632, a plaintiff must allege that the defendant (1) "intentionally and without [] consent," (2) recorded a "confidential communication," (3) by means of an electronic device. *See* Cal. Penal Code § 632; *Weiner v. ARS Nat'l. Servs., Inc.*, 887 F. Supp. 2d 1029, 1032 (S.D. Cal. 2012).

Here, Plaintiffs cannot allege that Google "recorded" a "confidential communication" for two reasons. First, the alleged recording was performed by GoodRx, not Google. Plaintiffs do not allege otherwise; there is no allegation in the Complaint that Google took any action whatsoever to effectuate the alleged wrongdoing. Second, there could be no expectation that GoodRx analyze its website traffic within only its corporate walls rather than lawfully using a vendor. As courts in this District have recognized in similar circumstances, "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632,." *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836. 849 (N.D. Cal. 2014) (collecting cases);

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1052–53 (N.D. Cal. 2018) (plaintiffs "fail to offer any support for their theory that internet-based communications can be considered 'confidential' under CIPA"; dismissing § 632 claim); *In re Google, Inc*., 2023 WL 5423918, at *22–23 (N.D. Cal. Sept. 26, 2013) (emails are not "confidential" under CIPA § 632).

Plaintiffs cannot dispute that the "communication" at issue here is similarly internet-based. Moreover, to "rebut[] California's presumption against online confidentiality," as defined in CIPA Section 632, plaintiffs must "plead unique, definite, circumstances" that shows an "objectively reasonable expectation that . . . nobody . . . would record the [online] communications." *Rodriguez v. Google,* 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (cleaned up). Plaintiffs have not and cannot do so here. This conclusion is especially supported here where GoodRx meticulously disclosed that it would use a third party vendor to provide analytics services, and included express disclosures of Google Analytics by name.

**C. Invasion of Privacy (Claims 1 and 2)**

California common law's intrusion-upon-seclusion claim requires a plaintiff to plead that (1) "the defendant [] intentionally intrude[d] into a place, conversation, or matter, as to which the plaintiff has a reasonable expectation of privacy," and (2) "the intrusion [] occur[ed] in a manner highly offensive to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Here, Plaintiffs' intrusion-upon-seclusion claims are premised on Google being an unauthorized "third party" to the purported communication. *See* Compl. ¶ 253 (Plaintiff "expected . . . that their information would not be disclosed or collected by any third parties"). Because Google is a party to the communication (as a vendor to GoodRx), it could not have engaged in an intrusion at all– much less one that is highly offensive to a reasonable person. *See, e.g.*, *Noom*, 533 F. Supp. 3d at 835–36 ("[b]ecause there was no plausible wiretapping by [vendor defendant], the plaintiffs did not plausibly plead that they possess a legally protected privacy interest"); *Low v. LinkedIn Corp*., 900 F. Supp. 2d 1010, 1024–25 (N.D. Cal. 2012) ("The California Constitution and the common law set a high bar for an invasion of privacy claim. Even the disclosure of personal information . . . does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claims") (collecting cases); *see also In re Google Assistant Privacy Litig*., 457 F. Supp. 3d 797,

830 (N.D. Cal. 2020) (dismissing intrusion upon seclusion claim where Plaintiffs failed to state Federal Wiretap claim and CIPA claim).

**D. Aiding & Abetting CMIA violation (Claims 7)**

Google is aware of no authority recognizing a cause of action for aiding and abetting a CMIA violation. But even if such a cause of action existed, it would fail here. Plaintiffs allege in Claims 4, 5 and 6 that GoodRx violated the CMIA by disclosing information to Google (among others). Google, however, acted solely as GoodRx's vendor, so it could not separately be liable for aiding and abetting GoodRx's alleged violations. Google's provision of a neutral tool for GoodRx to analyze GoodRx's *own* data does not amount to substantial assistance or encouragement of unlawful activity. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) (credit card vendors not liable under aiding and abetting theory where they "lack sufficient control or personal involvement in the infringing activities to be so liable").

**E. Consumer Deception Statutes (Claims 12, 13, and 14)**

There are many reasons why Plaintiffs' claims fail under the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq*, the New York General Business Law (GBL), and the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFDA), 815 Ill. Comp. Stat. Ann. ¶ 505/1 (as explained further below). But one common reason why all of them fail is that each of these claims depend upon Google being an unauthorized third party who "intercepted" Plaintiffs' data. Compl. ¶¶ 347 (UCL), 364 (GBL), 370 (ICFDA).[19] Because Google is an authorized party by virtue of being a vendor of GoodRx, Google could not have "intercepted" any of Plaintiffs' data and each of these claims therefore fails.

**III. Plaintiffs fail to allege Google had knowledge of the transmission of purported health data or intended to receive such data.**

**A. Plaintiffs fail to allege a plausible inference of knowledge or intent.**

An essential independent element of many of Plaintiffs' claims is intent, and Plaintiffs fail to allege that Google even knew that GoodRx sent it "Custom Events" or "URLs" that included

[19] Plaintiff John Doe–the only plaintiff to bring the ICFDA claim–does not actually include any factual allegation in support of his claim. Compl. ¶¶ 368–373.

allegedly sensitive information, much less that Google intended GoodRx to do so. *See* Compl. ¶¶ 154–56. In fact, Google expressly prohibits GoodRx from sending such information.[20]

Plaintiffs' abstract and conclusory allegation that *other* apps allegedly violated Google's policies says nothing about whether *Google* "knew that the incorporation of its software into the GoodRx Platform would result in its interception of sensitive information." *See id*. ¶¶ 80–82. At best, Plaintiffs have only alleged that Google knew GoodRx used its analytics technology; but that knowledge is divorced from any knowledge of the underlying purported unlawful conduct.

Further, Plaintiffs have alleged no facts showing Google *intended to receive* the allegedly sensitive data. *See* Compl. ¶¶ 83–85 (concluding without alleging facts supporting the inference that "Google's conduct was intentional"). Plaintiffs cannot plausibly allege such intent in the face of Google's policies disclosing the *opposite* intention—that Google does *not* want personally identifiable information and expressly prohibits a developer from transmitting data that identifies users or reveals sensitive information about them. *See* Google's RJN Ex. 2 ("You will not and will not assist or permit any third party to pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information"), Ex. 3 ("no data you collect using Google Analytics may reveal any sensitive information about a user, or identify them")

To the extent Plaintiffs' complaint suggests that Google secretly wanted GoodRx to violate its policies so Google could receive Plaintiffs' sensitive data, this amounts to an allegation of fraud (and a breathtaking one, at that). Such a theory is "subject to Rule 9(b)'s heightened pleading requirement, and must be accompanied by the who, what, when, where, and how of the misconduct charged." *Rodriguez*, 2021 WL 2026726, at *6 (allegations that "secret scripts" embedded in Google's software deviated from the publicly disclosed functionality of Google Analytics were subject to Rule 9(b)'s heightened pleading standard).[21]

---

[20] Google's RJN Ex. 2. *Google Analytics Terms of Service*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/terms/us/ (last visited June 19, 2023); Google's RJN Ex. 3, *HIPAA and Google Analytics*, Analytics Help, https://support.google.com/analytics/answer/13297105?hl=en&sjid=5549245930552670602-NA. (last visited June 19, 2023).

[21] Rodriguez's conclusions relating to many of the overlapping claims at issue in this case are inapposite because there, unlike here, plaintiffs' claims arose from their direct relationship with Google and an alleged misrepresentation concerning Google's privacy controls. Here, there are no

Plaintiffs' complaint insinuates that, because Google generally offers marketing and advertising services, Google *must have wanted* Plaintiffs' purported health data from the GoodRx Platform so that it could advertise and "improve its ad targeting capabilities" based on such data. *See* Compl. ¶¶ 142–144, 149–153. That's not enough to satisfy Rule 9(b), just as it wasn't in *Rodriguez*. There is no allegation as to "when the 'secret []' plot was hatched; which Google departments (let alone employees) were involved; and anything resembling a particular date, time, or place." *Rodriguez*, 2021 WL 2026726, at *6. This theory cannot survive.

### B. Plaintiffs' failure to allege knowledge or intent is fatal to their intrusion upon seclusion, aiding and abetting, CIPA § 631 & 632, CMIA § 56.36, UCL, GBL, and Illinois Consumer Protection Statute claims

Plaintiffs' claims one, two, seven, eight, nine, ten, twelve, thirteen, and fourteen must also be dismissed for failure to plausibly plead knowledge or intent.

#### 1. Intrusion Upon Seclusion (Claims 1 and 2)

Intrusion upon seclusion is an intentional tort and failure to plausibly allege intent is fatal to the claim. *Taus v. Loftus*, 40 Cal. 4th 683, 725 (2007) ("the intrusion upon another's privacy [must] be intentional") (emphasis in original); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016), aff'd, 700 F. App'x 588 (9th Cir. 2017) ("intrusion upon seclusion . . . require intent on the part of the tortfeasor" and plaintiff failed to plead Facebook's intent where "the allegations in the amended complaint contradict the incorporated Terms of Service"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

#### 2. Aiding & Abetting CMIA violation and CMIA violation (Claims 7 & 8)[22]

Both the direct CMIA violation and aiding and abetting such violation—to the extent such

---

allegations concerning direct representations made by Google concerning GoodRx, Google Analytics, or anything else.

[22] The cited sections of the CMIA in Plaintiffs' Count Eight do not exist. There is no "Civil Code Section 56.36(B)(3)(A)" or "Civil Code Section 56.36(B)(5)." *See* Compl. ¶¶ 300–303; Cal. Civ. Code § 56.36(b) (contains only subsections (b)(1) to (b)(2)). Google assumes that Plaintiffs actually meant to sue under Civil Code Sections 56.36(c)(3)(A) and 56.36(c)(5). CMIA § 56.36(c)(3)(A) and (c)(5) prohibits an unauthorized party from "knowingly and willfully" obtaining, disclosing, and using medication information, and, specifically for Section 56.36(c)(3)(A), using such information for "financial gain." Cal Civ. Code §§ 56.36(c)(3)(A) and (c)(5).

claims can even be asserted (see supra Section Argument II(D), infra id. IV(B))—require knowledge or intent. *See* Civ. Code §§ 56.36(c)(3)(A), (c)(5) (makes liable a person who "knowingly" or "willfully" obtains or discloses medication information); *City & Cnty. of S.F. v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 691 (N.D. Cal. 2020) (Count Seven for Aiding-and-Abetting Liability) ("Liability may be imposed on those who aid and abet another . . . if the individual knows the other's conduct constitutes a violation"); *In re First Alliance Mortg. Co.*, 471 F.3d 977, 994 (9th Cir. 2006); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) (to support an aiding-and-abetting claim, "the defendant must have 'actual knowledge of the specific primary wrong the defendant substantially assisted'") (citation omitted); *Id*. ("[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting"); Cal. Civ. Code §§ 56.36(c)(3)(A), (c)(5). As explained above, it is implausible that Google intended to violate the CMIA or knew of GoodRx's alleged CMIA violation because Google expressly told GoodRx *not* to provide sensitive or personally identifiable information.

**3. CIPA Sections 631 and 632 (Claims 9 & 10)**

As criminal statutes, Cal Penal Code Sections 631 and 632 require intentional conduct. Cal. Penal Code §§ 631(a) (prohibiting "intentional[] tap[ping]"), 632 (making liable a person who "intentionally and without the consent of all parties" records a confidential communication). Moreover, Plaintiffs' theory of liability under these sections is that Google "secretly intercept[s] this information and [plaintiffs'] communications," enhancing the level of pleading specificity to the Rule 9(b) standard. *See* Compl. ¶¶ 251, 325. Plaintiffs come nowhere close to even meeting the Rule 8 standard, much less Rule 9(b). Not only are there no allegations of any conduct Google engaged in that would suggest an intent to hide the use of Google Analytics from the Plaintiffs, the judicially noticeable documents actually disclose the opposite: that Google *required* disclosure of the use of Google Analytics and GoodRx did so. The CIPA claims thus must fail.

**4. "Unfair" and "fraudulent" prongs of the UCL & "Deceptive" Prong of Plaintiff E.C.'s GBL claim (Claims 12 & 13)**

Similarly, under the "unfair" (and "fraudulent") prongs of California's UCL and the "deceptive" prong of Section 349 of New York's General Business Law, Plaintiffs argue that

Google's conduct was nefarious because of "secretly disclosing, intercepting and misusing" Plaintiffs' sensitive data. Compl. ¶¶ 349, 366. Because the basis of Plaintiffs' claims under these prongs sound in fraud, Plaintiffs must plead them with particularity. *See, e.g., Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (a UCL claim that is "grounded in fraud" "must satisfy the particularity requirement of Rule 9(b)").[23] They haven't come close to doing so. GoodRx has consistently disclosed the use of Google's technology, including Google Analytics, as required by Google's terms governing such technology use. Moreover, not only have they failed to identify who *Google* supposedly disclosed information to, why this was an interception by Google, or how Google has "misused the data," they have also provided no facts suggesting Google did anything "secretly." Each of these claims must fail.[24]

**5. John Doe's ICFDA claim (Claims 14)**

To state a claim under the Illinois Consumer Fraud and Deceptive Act, the plaintiff must plausibly plead intent. *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *4 (N.D. Ill. July 1, 2005) (under ICFDA, a plaintiff must allege "that the defendant intended that the plaintiff rely on that act or practice, or intent by the defendant to deceive, defraud, or be unfair to the plaintiff"); *Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at *12 (N.D. Cal. Nov. 30, 2015) (same). While Plaintiffs insinuate that Google intended for users to rely on any omitted disclosures (Compl. ¶ 370), they include no facts supporting that assertion and ignore that Google expressly requires app developers to "disclose the use of Google Analytics, and how it collects and processes data." And, again, to the extent that John Doe is alleging that Google acted contrary to its public facing terms and policies, John Doe failed to plead such a fraudulent theory with particularity as required under Rule 9(b). *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (where a ICFDA claim is "of fraud . . . the sufficiency of [the]

---

[23] *See also In re JUUL Labs, Inc., Marketing, Sales Practices, & Prods. Liability Litig*., 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020) (while "New York courts do not apply the Rule 9(b) standard to GBL claims . . . [this court is] bound to apply Ninth Circuit precedent, which requires claims based on fraudulent conduct to be pleading [sic] with particularity").

[24] As to the UCL's unlawful prong, Plaintiff alleges that the unlawful conduct was a violation of the other claims alleged in the complaint. Compl. ¶ 346. Accordingly, this prong of Plaintiffs' UCL claim fails for the same reasons the other claims fail.

complaint is analyzed under the heightened pleading standard set forth in [FRCP] 9(b)"). In sum, John Doe's failure to plead intent dooms his ICFDA claim.

## IV. Plaintiffs' claims fail for additional reasons.

### A. Unjust enrichment is not cognizable (Claim 3)

Courts in this district routinely dismiss unjust enrichment claims because they are not a standalone claim. *See, e.g, Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 92 (N.D. Cal. 2020) ("California treats unjust enrichment as a remedy and not an independent claim . . . [i]t is dismissed as a claim"); *Silver v. Stripe, Inc*., 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021) (same) (collecting cases). And even if unjust enrichment were a claim, Plaintiffs have failed to plausibly state such a claim. Unjust enrichment applies where "plaintiffs, having no enforceable contract, nevertheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances which make it inequitable for the defendant to retain the benefit without paying for its value." *Lebrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021). Plaintiffs have not alleged any purported "benefit" that they conferred on Google; they do not allege that Plaintiffs paid Google or that Google monetized Plaintiffs' data as transmitted by GoodRx. Plaintiffs' conclusory allegations do not plausibly support an unjust enrichment claim.

### B. There is no private right of action for Plaintiffs' Claim 8 and Plaintiffs do not allege that Google obtained or used medical information for financial gain, in violation of CMIA § 56.36

Preliminarily, Plaintiffs' claim must be dismissed with prejudice because there is no private right of action under CMIA Section 56.36(c)(3)(A) and (c)(5). Section 56.36(f)(1) expressly limits the remedies of "subdivision (c)" to "civil action[s] brought in the name of the people of the State of California." Civ. Code § 56.36(f)(1). Google is aware of no case law providing for such private right of action.

In any event, even if it were a claim, Plaintiffs have not plausibly allege a violation. Section 56.36(c)(3)(A) of the CMIA provides for liability against a "person or entity, other than a licensed health care professional, who *knowingly or willfully* obtains or uses medical information in violation of this part for the purpose of *financial gain*." Cal. Civ. Code §§ 56.36(c)(3)(A)

(emphasis added). Similarly, Section 56.36(c)(5) provides that "[a] person or entity who is not permitted to receive medical information . . . and who *knowingly and willfully* obtains, discloses, or uses medical information without written authorization from the patient shall be liable for a civil penalty." *Id.* ¶ 56.36(c)(5) (emphasis added).

For all the reasons stated above, *supra* Section Argument III, Plaintiffs have not alleged knowledge or intent. Further, Plaintiffs have not and cannot plausibly show that Google obtained or used Plaintiffs' purported medical information for "*financial gain*." Civ. Code § 56.36(c)(3)(A). Plaintiffs' allegations are generally about Google's advertising business or the *possibility* of Google's analytics products being used for advertising or product development, and have no bearing on whether the data at issue here—Plaintiffs' purported health data transmitted by GoodRx—were used for these purposes. Plaintiff has not, and cannot,allege that they were.

Furthermore, Sections 56.36(c)(3)(A) and (c)(5) only make liable an entity's obtaining, disclosing, or using of "medical information." The CMIA requires "medical information" to be "individually identifiable information" that is "in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code § 56.05(i). For the reasons stated in GoodRx's motion to dismiss, Plaintiffs do not and cannot plausibly allege that GoodRx is a "provider of health care," nor do they allege that the purported sensitive health data at issue come from the other enumerated sources. GoodRx Mot. to Dismiss 113 at 20–23. Plaintiffs' CMIA claims thus must fail. *See Erhart v. Bofl Holding, Inc.*, 269 F. Supp. 3d 1059, 1078–79 (S.D. Cal. 2017) (dismissing CMIA claim where complaint was "[w]ithout factual allegations establishing that [defendant] received 'medical information' under the CMIA").

**C. Plaintiffs lack standing to assert a claim under the UCL (Claim 12).**

Plaintiffs' UCL claim against Google must be dismissed with prejudice because (1) they have failed to demonstrate UCL standing, and (2) they have not alleged a viable UCL claim.

"[T]he UCL limits standing to those who have 'suffered injury in fact and lost money or property as a result of . . . unfair competition." *Rodriguez*, 2021 WL 2026726, at *8 (citation omitted). To meet this "narrower standing requirement" than the one imposed by Article III,

plaintiffs must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact . . . and (2) show that economic injury was the result of, i.e., *caused by*, the unfair business practice." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011).

Plaintiffs fail to allege that they have lost money or property as a result of Google's alleged conduct. "[C]ourts have widely held that 'personal information' does not constitute money or property under the UCL." *Gardiner v. Walmart, Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021); *Rodriguez*, 2021 WL 2026726, at *8 ("no federal court has wedged individual digital data into the UCL's 'money or property' box"); *Gonzalez v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("the sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes"). Plaintiffs' general allegations that health data is "extremely" profitable do not cure this deficiency. Compl. ¶¶ 178–79, 357–58. *See, e.g., Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) ("[t]hat the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property"). Nor does the fact that Jane Doe II purchased GoodRx's "Gold" subscriptions instead of using GoodRx's free services change this result. *See Rodriguez,* 2021 WL 2026726, at *8 (no UCL standing even where plaintiffs made "in-app purchases" in "free-to-download" apps, but did not pay any money to Google).

Finally, even if Plaintiffs had standing—they do not—they have failed to plausibly plead a UCL claim for all the reasons stated above. See supra Section Argument I, II(E), III(B)(4). At bottom, Plaintiffs cannot show that Google acted unlawfully, unfairly, or fraudulently where Google acted only in its authorized and disclosed capacity as an analytics provider for GoodRx.

**D. Plaintiffs Marquez and Wilson's CIPA Claims (Claims 9 & 10) Are Time-Barred**

Where, as here, the running of the statute of limitations "is apparent on the face of the complaint," a claim may be dismissed pursuant to Rule 12(b)(6). *Hakimi v. Societe Air France, S.A.*, 2018 WL 4826487, at *3 (N.D. Cal. Oct. 4, 2018). Plaintiffs' CIPA claim is subject to a one-year statute of limitations. *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 136 (N.D. Cal. Apr. 7, 2020); *Javier*, 2023 WL 114225, at *7 (N.D. Cal. Jan. 5, 2023) (citing Cal. Civ. Proc. Code § 340(a)). But Plaintiffs Marquez and Wilson's CIPA claims were filed more than a year after they

last used the GoodRx Platform. *See* Compl. ¶¶ 47 (Marquez ceased use in August 2021), 55 (Wilson ceased use in 2019). Their CIPA claims are thus time-barred.

Plaintiffs' conclusory allegations for "tolling, concealment, and estoppel" do not salvage their CIPA claims. First, there can be no fraudulent concealment where Plaintiffs do not allege that Google took any affirmative act to mislead them and, in any event, the relevant conduct—the use of Google Analytics—was expressly disclosed by GoodRx's privacy policies, contrary to Plaintiffs' belief that "there were no disclosures" that GoodRx was sharing certain data with third parties. *See Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012) (plaintiff "carries the burden of pleading and proving fraudulent concealment; it must plead facts showing that[, among other things,] the defendant affirmatively misled it") (cleaned up); Compl. ¶ 204. Second, Plaintiffs' boilerplate allegations are insufficient to invoke the delayed-discovery rule. *See Al-Ahmed v. Twitter, Inc.*, – F. Supp. 3d –, 2023 WL 27356, at *8 (N.D. Cal. Jan. 3, 2023) ("[f]or the discovery rule to apply, the plaintiff 'must *specifically plead facts* to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence") (citation omitted) (emphasis added); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) ("The burden is on the plaintiff to show diligence [warranting application of the discovery rule], and conclusory allegations will not withstand a motion to dismiss"). Lastly, to the extent Plaintiffs assert it, the doctrine of equitable tolling does not apply where, as here, Plaintiffs are claiming they are unaware that they were allegedly injured. *See Garcia v. Brockway*, 526 F.3d 456, 465 (9th Cir. 2008) ("[e]quitable tolling . . . differs from the [discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant."). Accordingly, Plaintiffs Marquez and Wilsons' CIPA claims must be dismissed with prejudice.

**E. E.C.'s GBL claim and John Doe's ICFDA claim both fail because they have not alleged a misrepresentation by Google (Counts 13 and 14).**

To state a claim under GBL § 349, a plaintiff must allege "that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered

injury as a result of the allegedly deceptive act or practice." *Tromble v. W. Digital Corp.*, 2021 WL 2165796, at *1 (N.D. Cal. May 27, 2021); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). The plaintiff must show that "defendant's conduct was 'misleading in a material respect.'" *Strumlauf v. Starbucks Corp.*, 2018 WL 306715, at *3 (N.D. Cal. Jan. 5, 2018); *Oswego Laberers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). An objective standard determines whether an act is "materially deceptive or misleading," and "whether the alleged act is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017).

Plaintiff E.C. does not allege that Google acted in a way that was "materially misleading" and likely to mislead a reasonable consumer. In fact, the Complaint does not allege *any* representation made by Google to E.C. at all, much less one that was materially misleading or deceptive. *See* Compl. ¶ 364; *Tromble*, 2021 WL 2165796 at *2 (dismissing GBL § 349 claim where plaintiff "points to no packaging or advertising containing any representation"); *Cardoso v. Wells Fargo Bank, N.A.*, 2022 WL 4368109, at *8 (S.D.N.Y. Sep. 20, 2022) ("Plaintiffs have failed to identify any statement, representation, or omission by Defendant that was allegedly deceptive" to support a GBL violation) (collecting cases).

To the extent that E.C. attempts to argue that "[d]efendants were under a duty to disclose the nature and significance of their data collection practices but did not do so," E.C. does not identify what duty of disclosure *Google* has towards GoodRx's customers. *See* Compl. ¶ 206. In any event, Google *does* publicly disclose its analytics practices, as acknowledged by Plaintiffs' own complaint. *See* Compl. ¶ 149 (citing public Google webpage about its analytics and explaining the functions of such analytics).[25] In short, Plaintiffs have failed to adequately plead a

[25] Separately, it is dubious that E.C. could plausibly plead the GBL injury requirement as he did not enter any personally identifiable information. Compl. ¶¶ 36–39; *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017) ("[n]o New York court, however, has ever construed § 349 to reach the privacy invasion alleged here, i.e., collection of internet users' aggregated, anonymized web-browsing data."); *cf id.* (but confidential medical records that are "individually identifiable" and collected without consent could satisfy injury requirement).

claim under GBL § 349.[26]

Similarly, to state an ICFDA claim, the plaintiff must allege: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damages to the plaintiff; (5) proximately caused by the deceptive act." *Phil. Indemn. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014); *Gracia v. Wells Fargo Bank, N.A.*, 2023 WL 1319573, at *7 (N.D. Ill. Jan. 30, 20230); *Gold*, 2015 WL 7888906 at *11 (This "framework . . . applies to allegations of 'unfair' acts and practices as well." *Phil. Indemn.*, 771 F.3d at 402; *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *2 (N.D. Ill. July 1, 2005) (articulating the first element as requiring Plaintiff to allege "a deceptive act *or unfair practice* by the defendant") (emphasis added). For the same reasons, Plaintiffs cannot plausibly allege that Google intended for users to rely on any omitted disclosures, because Google expressly requires app developers to "disclose the use of Google Analytics, and how it collects and processes data."[27] Accordingly, Plaintiff John Doe fails to plausibly plead a ICDFA claim against Google.

## CONCLUSION

In sum, Plaintiffs have not and cannot plausibly allege any of the claims against Google. The Court should grant Google's motion to dismiss.

Respectfully submitted,

Dated: July 7, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Benedict Y. Hur*
Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
Tiffany Lin
Yuhan Alice Chi
*Attorneys for Defendant*
*Google LLC*

[26] Plaintiffs' claim that "Defendants' business acts and practices are also 'unfair'" under GBL § 349 is irrelevant as "unfairness" is not a prong or element under GBL § 349. The word "unfair" does not appear in the statutory text of GBL § 349.

[27] Google's RJN Ex. 2. *Google Analytics Terms of Service*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/terms/us/ (last visited June 19, 2023).