Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Attorneys for Plaintiffs*

*[Additional Counsel for Plaintiffs on Signature Page]*

L. Timothy Fisher (SBN 191626)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:   (925) 300-4455
Facsimile:   (925) 407-2700
ltfisher@bursor.com
jgavenman@bursor.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., and GOOGLE LLC.<br><br>Defendants. | Lead Case No.: 3:23-cv-00501-AMO<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**<br><br>CONSOLIDATED CLASS ACTION<br><br>COMPLAINT FILED: February 2, 2023<br><br>Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

PAGE(S)

INTRODUCTION ........................................................................................................ 1

LEGAL STANDARD ................................................................................................. 2

ARGUMENT .............................................................................................................. 3

I.    PLAINTIFFS HAVE STANDING ................................................................. 3

II.   PLAINTIFFS' CLAIMS ARE TIMELY ....................................................... 4

    A.   The Discovery Rule Applies to Plaintiffs' Claims ......................... 5

    B.   The Statute of Limitations Is Tolled by GoodRx's Fraudulent Concealment ............. 7

III.  PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' MISCONDUCT ................... 9

IV.   PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CIPA § 631 CLAIM ................... 14

    A.   Plaintiffs Have Alleged Interception of "Content" ...................... 15

    B.   Plaintiffs Have Alleged "Intent" .................................................. 16

    C.   There Is No Party Exception Here ................................................ 18

    D.   Plaintiffs Have Pled Interception of Communications "In Transit" ................... 19

V.    PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CIPA § 632 CLAIM ................... 20

    A.   Plaintiffs Have Sufficiently Pled a "Confidential" Recording ................... 21

    B.   Plaintiffs Have Sufficiently Pled That Meta Used a "Device" ................... 22

VI.   PLAINTIFFS HAVE PLED AN INTRUSION UPON SECLUSION CLAIM ................... 22

    A.   Plaintiffs Have Pled a Reasonable Expectation of Privacy ................... 23

    B.   Plaintiffs Have Pled Highly Offensive Conduct ......................... 23

    C.   Plaintiffs Have Sufficiently Pled That Defendants' Intrusion Is Intentional ................ 25

VII.  GOODRX VIOLATED THE CMIA ............................................................ 26

VIII. PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR NEGLIGENCE CLAIM ................... 29

    A.   Plaintiffs Pled Their Fraud Claims in Conformity With Rule 9(b) ................... 32

    B.   Plaintiffs Plausibly Allege Reliance/Causation ........................... 34

    C.   Plaintiffs Allege UCL Standing and Damages ............................ 35

    D.   Plaintiffs Allege "Unfair" and "Unlawful" Claims ...................... 38

X.    PLAINTIFFS PLAUSIBLY ALLEGE A GBL CLAIM ................................. 39

XI.   PLAINTIFFS PLAUSIBLY ALLEGE UNJUST ENRICHMENT .................... 42

XII.  PLAINTIFFS ARE ENTITLED TO EQUITABLE RELIEF .......................... 45

XIII. CHOICE OF LAW AND EXTRATERRITORIALITY ARE PREMATURE ISSUES ................ 48

CONCLUSION ........................................................................................................... 50

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Al-Ahmed v. Twitter, Inc*,
  2023 WL 27356 (N.D. Cal. Jan. 3, 2023) ................................................................. 7

*Anderson v. Brouwer*,
  99 Cal. App. 3d 176 (1979) ......................................................................................... 7

*Anonymous v. CVS Corporation*,
  728 N.Y.S.2d 333 (S.D.N.Y. Mar. 1, 2001) ..................................................... 39, 40, 41

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ............................................................................................... 30

*Archer v. United Rentals, Inc.*,
  195 Cal. App. 4th 807 (2011) ................................................................................... 37

*Aryeh v. Canon Business Solutions, Inc.*,
  55 Cal. 4th 1185 (2013) ............................................................................................. 4

*Astiana v. Hain Celestial Grp. Inc.*,
  783 F.3d 753 (9th Cir. 2015) ............................................................................... 42, 43

*Austin B. v. Escondido Union Sch. Dist.*,
  149 Cal. App. 4th 860 (2007) ................................................................................... 4

*Avery v. State Farm Mut. Auto Ins. Co.*,
  216 Ill.2d 100 (Sup. Ct. Ill. Aug. 18, 2005) ........................................................... 41

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014) ................................................................. 9, 22

*Barker v. Am. Mobil Power Corp.*,
  64 F.3d 1397 (9th Cir. 1995) ..................................................................................... 8

*Bass v. Facebook Inc.*,
  394 F. Supp. 3d 1024 (N.D. Cal. 2019) ................................................................... 37

*Baugh v. CBS, Inc.*,
  828 F. Supp. 745 (N.D. Cal. 1993) .......................................................................... 14

*Belluomini v. Citigroup Inc*,
  2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) .......................................................... 25

*Bona Fide Conglomerate, Inc. v. SourceAmerica*,
  2016 WL 3543699 (S.D. Cal. June 29, 2016) .......................................................... 48

*Boone v. MB Fin. Bank, N.A.*,
    375 F. Supp. 3d 987 (N.D. Ill. 2019) ............................................................... 14

*Bose v. Interclick, Inc.*,
    2011 WL 4343517 (S.D.N.Y. Aug. 17 2011) ..................................................... 40

*Brooks v. Thomson Reuters Corp.*,
    2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ............................................. 46, 47

*Brown v. Google LLC*,
    525 F. Supp. 3d 1049 (N.D. Cal. March 2021) .......................................... passim

*Brown v. Google LLC*,
    2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ............................................. 35, 44

*Brown v. Google LLC*,
    2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ....................................... 21, 36, 37

*Brown v. Madison Reed, Inc.*,
    2021 WL 3861457 (N.D. Cal. Aug. 30, 2021) .................................................. 46

*Byars v. Goodyear Tire & Rubber Co.*,
    2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ..................................................... 15

*Byars v. Hot Topic, Inc.*,
    2023 WL 2026994 (C.D. Cal. Feb. 14, 2023) ................................................... 19

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ........................................................ passim

*California Soc'y of Anesthesiologists v. Brown*,
    204 Cal. App. 4th 390 (2012) ............................................................... 17, 22

*Callaghan v. BMW of North America, LLC*,
    2014 WL 1340085 (N.D. Cal. Apr. 2, 2014) ................................................... 41

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ......................................................................... 33

*Campbell v. Facebook Inc.*,
    77 F. Supp. 3d 836 (N.D. Cal. 2014) .................................... 14, 19, 21, 37

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) ......................................................................... 3

*Cappello v. Walmart Inc.*,
    394 F. Supp. 3d 1015 (N.D. Cal. 2019) ........................................................ 38

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) ........................................................... 14, 18, 26

*Cardoso v. Wells Fargo Bank, N.A.*,
    2022 WL 4368109 (S.D.N.Y. Sep. 20, 2022) ........................................................... 42

*Carroll v. Myriad Genetics, Inc.*,
    2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) ........................................................... 45

*Castillo v. Seagate Technology, LLC*,
    2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........................................................... 38

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) ........................................................................................... 5

*Chione v. Meditronic, Inc.*,
    2015 WL 2151889 (S.D. Cal. May 7, 2015) ........................................................................... 7

*City of Oakland v. Oakland Raiders*,
    83 Cal. App. 5th 458 (2d Dist. 2022) ........................................................................... 43

*City of Santa Barbara v. Superior Ct.*,
    41 Cal. 4th 747 (2007) ........................................................................................... 30

*Clancy v. The Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013) ........................................................................... 48

*Clark v. InComm Fin. Servs.*,
    2023 WL 3149284 (C.D. Cal. Mar. 16, 2023) ........................................................... 33

*Cline v. Reetz-Laiolo*,
    329 F. Supp. 3d 1000 (N.D. Cal. 2018) ........................................................................... 21

*Conmar Corp. v. Mitsui & Co.*,
    858 F.2d 499 (9th Cir. 1988) ........................................................................................... 8

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ........................................................................... 20

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ........................................................................... 34

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ........................................................................... 36

*Davis v. HSBC Bank*,
    691 F.3d 1152 (9th Cir. 2012) ........................................................................... 39

*Day v. GEICO Cas. Co.*,
    580 F. Supp. 3d 830 (N.D. Cal. 2022) .................................................................. 44

*DeBruyne v. Equitable Life Assur. Soc'y of U.S.*,
    920 F.2d 457 (7th Cir. 1990) ............................................................................... 7

*Degla Grp. for Invs., Inc. v. Boconcept USA, Inc.*,
    2010 WL 11509053 (C.D. Cal. Sep. 30, 2010) ..................................................... 39

*Dep't of Toxic Substances Control v. Rossi*,
    2022 WL 19355 (N.D. Cal. Jan. 3, 2022) ............................................................. 3

*Diaz v. Safeway Inc.*,
    2007 WL 2793367 (N.D. Cal. Sept. 26, 2007) ..................................................... 8

*Dinosaur Dev., Inc. v. White*,
    216 Cal. App. 3d 1310 (1989) ............................................................................ 43

*Doe 1 v. AOL LLC*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ............................................................... 33

*Doe v. Beard*,
    63 F. Supp. 3d 1159 (C.D. Cal. 2014) ................................................................. 24

*Doe v. Regents of Univ. of Cal.*,
    2023 WL 3316766 (N.D. Cal. May 8, 2023) ................................................. passim

*Doe v. SuccessfulMatch.com*,
    70 F. Supp. 3d 1066 (N.D. Cal. 2014) ................................................................. 35

*Doe v. Univ. of S. California*,
    2019 WL 4229750 (C.D. Cal. July 9, 2019) .......................................................... 9

*Dolemba v. Kelly Servs., Inc.*,
    2017 WL 429572 (N.D. Ill. Jan. 31, 2017) .......................................................... 14

*Donohue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................. 34

*Dziegielewski v. Advanced Intergrative Wellness, LLC*,
    2010 WL 4392917 (Sup. Ct. Nassau Ctny. Oct. 22, 2010) ................................... 41

*Easter v. Am. W. Fin.*,
    381 F.3d 948 (9th Cir. 2004) ............................................................................... 4

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ............................................................................... 3

*Eisenberg v. Citibank, NA*,
  2017 WL 532936 (C.D. Cal. Feb. 8, 2017) ................................................................. 7

*Eisenhower Med. Ctr. v. Superior Court*,
  226 Cal. App. 4th 430 (2014) .................................................................................... 28

*Emery v. Visa Internat. Serv. Ass'n*,
  95 Cal. App. 4th 952 (2002) ...................................................................................... 33

*Erhart v. BofI Holding, Inc.*,
  269 F. Supp. 3d 1059 (S.D. Cal. 2017) ..................................................................... 28

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ........................................................................................................ 2

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ................................................................................... 42

*Falk v. General Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................................................................... 33

*Faulkner v. ADT Sec. Servs., Inc.*,
  706 F.3d 1017 (9th Cir. 2013) ....................................................................... 14, 21, 23

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
  2015 WL 13273308 (C.D. Cal. July 29, 2015) ................................................... 17, 21

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ...................................................................................... 42

*Fitzhenry-Russell v. Coca-Cola Co.*,
  2017 WL 4680073 (N.D. Cal. Oct. 18, 2017) ............................................................ 48

*Flores-Mendez v. Zoosk, Inc.*,
  2022 WL 357500 (N.D. Cal. Feb. 7, 2022) ............................................................... 34

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) .................................................................................... 25

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ............................................................................................ 1, 5

*Fraley v. Facebook, Inc.*,
  830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................................. 43, 47

*Franklin v. Ocwen Loan Servicing, LLC*,
  2018 WL 5923450 (N.D. Cal. Nov. 13, 2018) ............................................................ 6

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ................................................................. 13

*Gardiner v. Walmart Inc.*,
  2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ...................................................... 31, 36

*Gardiner v. Walmart, Inc.*,
  2021 WL 4992539 (N.D. Cal. July 28, 2021) ....................................................... 46

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ............................................................ 25, 37

*Goodwin v. Countrywide Home Loans, Inc.*,
  578 F. App'x 688 (9th Cir. 2014) ...................................................................... 43

*Goshen v. Mut. Life Ins. Co.*,
  98 N.Y.2d 314 (2002) ........................................................................................ 41

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ............................................................... 18

*Gray v. Amazon.com, Inc.*,
  2023 WL 1068513 (W.D. Wash. Jan. 27, 2023) .................................................. 13

*Gulec v. Aerospace/Aviation Companies*,
  2014 WL 12591660 (C.D. Cal. Feb. 28, 2014) .................................................... 14

*Guthrie v. Transamerica Life Ins. Co.*,
  561 F. Supp. 3d 869 (N.D. Cal. 2021) ............................................................... 46

*Hakimi v. Societe Air France, S.A.*,
  2018 WL 4826487 (N.D. Cal. Oct. 4, 2018) ......................................................... 5

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. July 2022) ............................................... passim

*Hammerling v. Google LLC*,
  2022 WL 17365255 (N.D. Cal. Dec. 2022) ............................................. 15, 20, 25, 49

*Hart v. TWC Prod. & Tech. LLC*,
  526 F. Supp. 3d 592 (N.D. Cal. 2021) ............................................................... 37

*Hart v. TWC Prod. & Tech. LLC*,
  2023 WL 3568078 n.9 (N.D. Cal. Mar. 30, 2023) ............................................... 12

*Hartford Cas. Ins. Co. v. J.R. Marketing, LLC.*,
  61 Cal. 4th 988 (2015) ...................................................................................... 14

*Haskins v. Symantec Corp.*,
    654 F. App'x 338 (9th Cir. 2016) ................................................................... 35

*Hayden v. Retail Equation, Inc.*,
    2022 WL 18397355 (C.D. Cal. Nov. 28, 2022) ............................................. 49

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ........................................................................... 23, 25

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ......................................................... 38

*Hexcel Corp. v. Ineos Polymers, Inc.*,
    681 F.3d 1055 (9th Cir. 2012) ......................................................................... 8

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal.4th 1 (1994) ......................................................................... 4, 13, 25

*Huynh v. Quora, Inc.*,
    2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ............................................. 44

*I.C. v. Zynga, Inc.*,
    600 F. Supp. 3d 1034 (N.D. Cal. 2022) ..................................................... 4, 25

*In re Adobe Sys., Inc. Priv. Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................. 32, 34, 38

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ................................................. passim

*In re Animation Workers Antitrust Litig.*,
    123 F. Supp. 3d 1175 (N.D. Cal. 2015) ........................................................... 9

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................... 40

*In re Anthem, Inc. Data Breach Litig.*,
    2016 WL 3029783 (N.D. Cal. May 27, 2016) ......................................... 33, 34

*In re Apple In-App Purchase Litig.*,
    855 F. Supp. 2d 1030 (N.D. Cal. 2012) ......................................................... 34

*In re Arthur J. Gallagher Data Breach Litig.*,
    631 F. Supp. 3d 573 (N.D. Ill. 2022) ............................................................. 27

*In re Blackbaud, Inc., Customer Data Breach Litigation*,
    2021 WL 3568394 (D.S.C. Aug. 12, 2021) ................................................... 26

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051 (N.D. Cal. 2015) ......................................................... 17, 22, 33

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ................................................................ passim

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................................. passim

*In re Facebook Internet Tracking Litig.*,
    140 F. Supp. 3d 922 (N.D. Cal. 2015) ....................................................................... 36

*In re Facebook Priv. Litig.*,
    791 F. Supp. 2d 705 (N.D. Cal. 2011) ....................................................................... 37

*In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*,
    2019 WL 6998668 (C.D. Cal. Sept. 5, 2019) ............................................................... 8

*In re Glumetza Antitrust Litig.*,
    611 F. Supp. 3d 848 (N.D. Cal. 2020) ......................................................................... 7

*In re Google Android Consumer Privacy Litigation*,
    2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...................................................... 31, 36

*In re Google Assistant Priv. Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................... passim

*In re Google Inc.*,
    2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................................................ 11, 21, 23

*In re Google, Inc. Privacy Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................... 24, 35

*In re Google Inc. St. View Elec. Commc'ns. Litig.*,
    794 F. Supp. 2d 1067 (N.D. Cal. 2011) ..................................................................... 16

*In re Google Location Hist. Litig.*,
    428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................................................................... 22

*In re Google Location Hist. Litig.*,
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ............................................................... 43, 45

*In re iPhone 4S Consumer Litig.*,
    2013 WL 3829653 (N.D. Cal. July 23, 2013) ............................................................ 49

*In re iPhone Application Litig.*,
    2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ..................................................... 30, 37

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........................................................ 24, 31

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F. Supp. 3d 447 (D. Md. 2020) ................................................................... 35

*In re Meta Pixel Healthcare Litig.*,
    2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ..................................... passim

*In re Morning Song Bird Food Litig.*,
    2013 WL 12144051 (S.D. Cal. Sept. 30, 2013) ............................................... 36

*In re Natera Prenatal Testing Litig.*,
    2023 WL 3370737 (N.D. Cal. Mar. 28, 2023) ................................................. 45

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012) ............................................... 30, 31, 36

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    996 F. Supp. 2d 942 (S.D. Cal. 2014) ............................................................. 31

*In re Sony PS3 Other OS Litig.*,
    551 F. App'x 916 (9th Cir. 2014) .................................................................... 32

*In re Vizio, Inc., Consumer Priv. Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................ 3, 20

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ............................................................. 19

*In re Yahoo Mail Litig.*,
    308 F.R.D. 577 (N.D. Cal. 2015) .................................................................... 49

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ............................................... 35, 38, 39

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
    774 F.3d 935 (9th Cir. 2014) .......................................................................... 26

*Jackson v. Loews Hotels, Inc.*,
    2019 WL 6721637 (C.D. Cal. July 24, 2019) ................................................. 42

*Javier v. Assurance IQ, LLC*,
    2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ................................................. 18, 19

*Ji v. Naver Corp.*,
    2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ................................................. 4

*Johnson v. Blue Nile, Inc.*,
   2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .................................................. 18

*Johnson v. Trumpet Behav. Health, LLC*,
   2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .................................................. 46

*Jolly v. Eli Lilly & Co.*,
   44 Cal. 3d 1103 (1988) .................................................. 7

*Josten v. Rite Aid Corp.*,
   2019 WL 3718739 (S.D. Cal. Aug. 7, 2019) .................................................. 8

*Kapsis Am. Home Mortg. Servicing Inc.*,
   923 F.Supp.2d 430 (E.D.N.Y. 2013) .................................................. 41

*Katz-Lacabe v. Oracle Am., Inc.*,
   2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) .................................................. 18, 19, 24, 37

*Kellman v. Spokeo, Inc.*,
   599 F. Supp. 3d 877 (N.D. Cal. 2022) .................................................. 39

*Kina v. United Air Lines, Inc.*,
   2008 WL 5071045 (N.D. Cal. Dec. 1, 2008) .................................................. 38

*Koehler v. Litehouse, Inc.*,
   2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) .................................................. 49

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) .................................................. 48

*Kwai Fun Wong v. Beebe*,
   732 F.3d 1030 (9th Cir. 2013) .................................................. 5

*Kwikset Corp. v. Super Ct.*,
   51 Cal. 4th 310 (2011) .................................................. 34

*Lauter v. Anoufrieva*,
   642 F. Supp. 2d 1060 (C.D. Cal. 2009) .................................................. 8

*Lebrun v. CBS Television Studios, Inc.*,
   68 Cal. App. 5th 199 (2021) .................................................. 44

*Lewand v. Mazda Motor of Am., Inc.*,
   2017 WL 7080291 (C.D. Cal. Aug. 8, 2017) .................................................. 49

*Licea v. Am. Eagle Outfitters, Inc.*,
   2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .................................................. 18, 20

*Licea v. Cinmar, LLC*,
  2023 WL 2415592 (C.D. Cal. Mar. 7, 2023) ..................................................... 18, 20

*Loo v. Toyota Motor Sales, USA, Inc.*,
  2019 WL 7753448 (C.D. Cal. Dec. 20, 2019) ............................................................ 46

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) .............................................. 4, 16, 22, 23

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................................. 24

*Lozano v. City of Los Angeles*,
  73 Cal. App. 5th 711 (2022) ...................................................................................... 17

*Lugones v. Pete & Gerry's Organic, LLC*,
  440 F. Supp. 3d 226 (S.D.N.Y. Feb. 21, 2020) .................................................. 40

*MacDonald v. Ford Motor Co.*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) .................................................................. 33

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (2005) ................................................................................... 48

*Maghen v. Quicken Loans, Inc.*,
  2014 WL 12586447 (C.D. Cal. Oct. 28, 2014) .................................................... 16

*Mahon v. Ticor Title Ins. Co.*,
  683 F.3d 59 (2d Cir. 2012) .......................................................................................... 4

*Makaeff v. Trump University, LLC*,
  2011 WL 1872886 (S.D. Cal. May 16, 2011) ...................................................... 41

*Martin v. Meredith Corp.*,
  2023 WL 2118074 (S.D.N.Y. Feb. 17, 2023) ...................................................... 42

*Martin v. Sephora USA, Inc.*,
  2023 WL 2717636 (E.D. Cal. Mar 30, 2023) ................................................. 18, 20

*Matera v. Google Inc.*,
  2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .................................................... 13

*Mauri v. Smith*,
  324 Or. 476 (1996) ....................................................................................................... 25

*McCoy v. Alphabet, Inc.*,
  2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......................................................... 38

*McDonald v. Kiloo ApS*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) ........................................................................ 12, 18, 40

*McGill v. M.J. Brock & Sons, Inc.*,
    91 Cal. Rptr. 2d 135 (1999) ............................................................................................. 6

*Medoff v. Minka Lighting, LLC*,
    2023 WL 4291973 (C.D. Cal. May 8, 2023) ................................................................... 31

*Mehta v. Robinhood Fin. LLC*,
    2021 WL 6882377 (N.D. Cal. May 6, 2021) ............................................................. 29, 31

*Meyerson v. Prime Realty Services, LLC*,
    796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ........................................................................ 40

*Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) ........................................................................................ 47

*Millennium Health, LLC v. EmblemHealth, Inc.*,
    240 F. Supp. 3d 276 (S.D.N.Y. 2017) ............................................................................ 14

*Miller v. Nat'l Broad. Co.*,
    187 Cal. App. 3d 1463 (1986) ........................................................................................ 25

*Miller v. Syracuse Univ.*,
    2023 WL 2572937 (N.D.N.Y. Mar. 20, 2023) ............................................................... 41

*Milstead v. General Motors LLC*,
    2023 WL 4410502 (N.D. Cal. July 6, 2023) ................................................................... 46

*Mohandas v. Wells Fargo Bank, N.A.*,
    2022 WL 17254847 (C.D. Cal. July 5, 2022) ................................................................. 32

*Moore v. Centrelake Med. Grp., Inc.*,
    83 Cal. App. 5th 515 (2022) ........................................................................................... 36

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ........................................................................................ 34

*Moreno v. S.F. BART*,
    2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ............................................................... 22

*Morfin v. Accredited Home Lenders, Inc.*,
    2010 WL 391838 (S.D. Cal. Jan. 26, 2010) ................................................................... 39

*Mortensen v. Bresnan Commc'n, L.L.C.*,
    2010 WL 5140454 (D. Mont. Dec. 13, 2010) ................................................................ 13

*Mount v. PulsePoint, Inc.*,
  2016 WL 5080131 (S.D.N.Y. Aug. 16, 2016) ............................................................ 42

*Murphy v. Olly Pub. Benefit Corp.*,
  2023 WL 210838 (N.D. Cal. Jan. 17, 2023) ............................................................ 45

*Nick v. Target Corp.*,
  2017 WL 10442061 (E.D.N.Y. Sept. 13, 2017) ...................................................... 40

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) .................................................................... 49

*Oddei v. Optum, Inc.*,
  2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) .......................................................... 27

*Oddei v. ScanSTAT Techs., LLC*,
  2022 WL 17538747 (9th Cir. Dec. 8, 2022) .......................................................... 27

*O'Donnell v. United States*,
  891 F.2d 1079 (3d Cir. 1989) ................................................................................ 25

*Ohanian v. Apple Inc.*,
  2021 WL 5331753 (S.D.N.Y. Nov. 16, 2021) ........................................................ 41

*Oman v. Delta Air Lines, Inc.*,
  889 F.3d 1075 (9th Cir. 2018) .............................................................................. 49

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018 (N.D. Cal. 2014) .................................................................. 24

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................................ 11

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015) .................................................................................. 39

*Ovando v. Cty. of Los Angeles*,
  159 Cal. App. 4th 42 (2008) .................................................................................... 5

*Parnoff v. Aquarion Water Co.*,
  188 Conn. App. 153 (2019) .................................................................................. 26

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F. Supp. 2d 439 (S.D.N.Y. 2005) .................................................................. 40

*Pena v. GameStop, Inc.*,
  2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) .................................................. 19, 20

*People v. Buchanan,*
    26 Cal. App. 3d 274 (1972) ............................................................................... 17

*People v. Guzman,*
    11 Cal. App. 5th 184  (2017) ............................................................................. 20

*People v. Nakai,*
    183 Cal.App.4th 499 (2010) .............................................................................. 21

*People v. Superior Ct. of Los Angeles Cnty.,*
    70 Cal. 2d 123 (1969) ........................................................................................ 17

*Perez v. Wells Fargo & Co.,*
    2015 WL 1887354 (N.D. Cal. Apr. 24, 2015) ..................................................... 4

*Perkins v. LinkedIn Corp.,*
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................. 13, 35, 38

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) .......................................................................... 44

*Phillips v. Apple Inc.,*
    2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) .............................................. 34, 35

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,*
    631 F.3d 436 (7th Cir. 2011) ............................................................................. 33

*Plumlee v. Pfizer, Inc.,*
    2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ........................................................ 7

*Precht v. Kia Motors Am., Inc.,*
    2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) .................................................. 48

*Pruchnicki v. Envision Healthcare Corp.,*
    845 F. App'x 613 (9th Cir. 2021) ....................................................................... 36

*Quigley v. Yelp, Inc.,*
    2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) .................................................... 21

*Rafton v. Rydex Series Funds,*
    2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ............................................................ 6

*Razuki v. Caliber Home Loans, Inc.,*
    2018 WL 2761818 (S.D. Cal. June 8, 2018) ...................................................... 25

*Reveal Chat Holdco, LLC v. Facebook, Inc.,*
    471 F. Supp. 3d 981 (N.D. Cal. 2020) ............................................................. 6, 9

*Regueiro v. FCA US, LLC,*
    2023 WL 3564761 (C.D. Cal. May 4, 2023) ................................................................ 49

*Revitch v. New Moosejaw, LLC,*
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .................................................... 18, 19

*Rodriguez v. Cheesecake Factory Inc.,*
    2017 WL 6541439 (E.D.N.Y. Aug. 11, 2017) ............................................................ 42

*Rodriguez v. Google LLC,*
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .................................................. 10, 21, 37

*Rodriguez v. Google, LLC,*
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .............................................................. 20

*Rogers v. Ulrich,*
    52 Cal. App. 3d 894 (1975) ......................................................................................... 19

*Rosenow v. Facebook, Inc.,*
    2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) .......................................................... 20

*Ruiz v. Gap, Inc.,*
    540 F. Supp. 2d 1121 (N.D. Cal. 2008) ................................................................... 37

*Rutherford Holdings, LLC v. Plaza Del Rey,*
    223 Cal. App. 4th 221 (2014) ..................................................................................... 44

*Saleh v. Nike, Inc.,*
    562 F. Supp. 3d 503 (C.D. Cal. 2021) ............................................................... 15, 18

*Sands v. Ticketmaster-New York, Inc.,*
    207 A.D.2d 687 (1994) ................................................................................................ 42

*Saroya v. Univ. of the Pac.,*
    503 F. Supp. 3d 986 (N.D. Cal. 2020) ..................................................................... 45

*Schwartzco Enters. LLC v. TMH Mgmt., LLC,*
    60 F. Supp. 3d 331 (E.D.N.Y. 2014) ....................................................................... 40

*Scott-Codiga v. Cnty. of Monterey,*
    2011 WL 4434812 (N.D. Cal. Sept. 23, 2011) ....................................................... 22

*Scripps Health v. Marin,*
    72 Cal. App. 4th 324 (1999) ....................................................................................... 47

*Sharma v. Volkswagen AG,*
    524 F. Supp. 3d 891 (N.D. Cal.2021) ...................................................................... 46

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) .................................................................... 2

*Silver v. Stripe Inc.*
   2021 WL 3191752 (N.D. Cal. July 28, 2021) .......................................... 13

*Sinatro v. Barilla Am., Inc.*,
   635 F. Supp. 3d 858 (N.D. Cal. 2022) .................................................... 45

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
   131 N.Y.S.3d 817 (2020) ......................................................................... 42

*Smith v. Facebook, Inc.*,
   262 F. Supp. 3d 943 (N.D. Cal. 2017) ...................................... 13, 25, 28

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ................................................................ 23

*Snipes v. Wilkie*,
   2019 WL 1283936 (N.D. Cal. Mar. 20, 2019) ...................................... 14

*Sonner v. Premier Nutrition Corp.*
   971 F.3d 834 (9th Cir. 2020) .................................................................. 45

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir.) ........................................................................... 26

*Stasi v. Inmediata Group Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) ........................................... passim

*Stoops v. Abbassi*,
   100 Cal. App. 4th 655 (2002) ................................................................ 30

*Suarez v. California Nat. Living, Inc.*,
   2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) .......................................... 39

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) .......................................................................... 49

*Sumotext Corp. v. Zoove, Inc.*,
   2017 WL 2774382 (N.D. Cal. June 26, 2017) ...................................... 43

*Svenson v. Google Inc.*,
   2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .......................................... 38

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................... 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Taus v. Loftus,*
  40 Cal.4th 683 (2007) ................................................................................................ 25

*TBG Ins. Servs. Corp. v. Super. Ct.,*
  96 Cal. App. 4th 443 (2002) ........................................................................................ 13

*Thakur v. Betzig,*
  2019 WL 2211323 (N.D. Cal. May 22, 2019) ............................................................ 42

*Thorman v. Am. Seafoods Co.,*
  421 F.3d 1090 (9th Cir. 2005) ....................................................................................... 9

*TransUnion LLC v. Ramirez,*
  141 S. Ct. 2190 (2021) .................................................................................................... 3

*TRC Assocs. V. NuScience Corp.,*
  2013 WL 6073004 (C.D. Cal Nov. 18, 2013) ............................................................. 49

*Tromble v. W. Digital Corp.,*
  2021 WL 2165796 (N.D. Cal. May 27, 2021) ............................................................ 42

*Valentine v. NebuAd, Inc.,*
  804 F. Supp. 2d 1022 (N.D. Cal. 2011) ..................................................................... 48

*Vann v. Aurora Loan Servs. LLC,*
  2011 WL 2181861 (N.D. Cal. June 3, 2011) .............................................................. 32

*Vartanian v. VW Credit, Inc.,*
  2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) ........................................................... 17

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 32

*Volk v. D.A. Davidson & Co.,*
  816 F.2d 1406 (9th Cir. 1987) ....................................................................................... 9

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592 F.3d 954 (9th Cir. 2010) ......................................................................................... 4

*Wallace v. Health Quest Sys., Inc.,*
  2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ............................................................ 41

*Warden v. Kahn,*
  99 Cal. App. 3d 805 (1979) ......................................................................................... 19

*Weatherly v. Universal Music Publ'g Grp.,*
  125 Cal. App. 4th 913 (2004) ......................................................................................... 6

*Wesch v. Yodlee, Inc.*,
   2021 WL 6206644 (N.D. Cal. July 19, 2021) ........................................ 37

*White v. Soc. Sec. Admin.*,
   111 F. Supp. 3d 1041 (N.D. Cal. 2015) .............................................. 25

*Williams v. Geber Products Co.*,
   552 F.3d 934 (9th Cir. 2008) ........................................................ 10

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...................................... 18

*Witriol v. LexisNexis Grp.*,
   2006 WL 4725713 (N.D. Cal. Feb. 10, 2006) ....................................... 29

*Yale v. Clicktale, Inc.*,
   2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ....................................... 18

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
   2018 WL 2298963 (N.D. Cal. May 21, 2018) ....................................... 48

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................................... 15, 18, 19

*Zapata Fonseca v. Goya Foods Inc.*,
   2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) ....................................... 46

*Zeiger v. WellPet LLC*,
   526 F. Supp. 3d 652 (N.D. Cal. 2021) .............................................. 45

**STATUTES**

Cal. Civ. Code § 56.05(i) ................................................................ 27

Cal. Civ. Code § 56.06(b) ........................................................... 27, 28

Cal. Evid. Code § 669 .................................................................. 32

**RULES**

Fed. R. Civ. P. 9(b) .................................................................. 40, 43

**INTRODUCTION**

Millions of people turn to the GoodRx website and mobile application (the "GoodRx Platform") each month for medical treatment and prescription discounts. No one would expect that their use of the GoodRx Platform would, in turn, deliver their sensitive health data to the hands of third parties—including some of the largest advertising technology companies in the world—to be used for whatever purpose they see fit. But that is exactly what happened: GoodRx disclosed, and the Advertising and Analytics Defendants[1] intercepted, users' health data from the GoodRx Platform whenever they sought to obtain a prescription coupon or receive telehealth treatment. There is no doubt that this conduct is egregious. Nor can there be any doubt it is unlawful, including under the California Constitution and the California Invasion of Privacy Act ("CIPA"). While Defendants try to downplay their conduct after the fact, the Court should see through this incredible re-write of history and self-serving misinterpretation of the law.

First, Defendants do not deny that they did in fact disclose or intercept Plaintiffs' and Class members' data. Instead, they attempt to argue that GoodRx seemingly obtained consent to do so. Its privacy policies between 2017 and 2019 expressly state otherwise, providing that "advertisers or any other third parties" would "never" receive "any information that reveals a ***personal health condition or personal health information.***" ¶ 104. Defendants cannot avoid the clear (and only reasonable) meaning of this language, which is that Defendants would not share or receive users' health data. Simply deleting this language after 2019 and omitting any reference to the disclosure and interception of health data is not a way to establish consent. If GoodRx wanted to obtain consent to disclose and allow third parties to intercept health data, it could have done so in a manner a reasonable user would understand. It did not.

Second, all Defendants argue that Plaintiffs' claims are time-barred, but wholly ignore that a cause of action does not accrue until a plaintiff does or can discover the underlying causes of action. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). This begs the question: how could

---

[1] "Advertising and Analytics Defendants" refers to Criteo Corp., Meta Platforms, Inc., and Google LLC. References to "¶" indicate citations to paragraphs in Plaintiffs' Consolidated Amended Complaint.

1   Plaintiffs discover Defendants secretly used surreptitious tracking technology to take and use their

2   health data, especially when they were told this would "never" occur?  They could not, and thus these

3   statute of limitations defenses fail.

4        Third, Defendants resort to classifying the health information at issue as "basic identification

5   information."  These self-serving descriptions are a transparent attempt to downplay the gravity of the

6   wrongdoing and are wholly inconsistent with the nature of the actual data disclosed and intercepted.

7   The data at issue is clearly highly sensitive, protected health information—spanning from users'

8   prescriptions to their medical conditions—that was disclosed through the GoodRx Platform under the

9   auspices of confidentiality.  ¶¶ 198, 184-190.  The data in question is a far cry from "identification"

10  data, like an email or name in isolation that Defendants attempt to claim is at stake.  The Court must

11  reject Defendants' counter-factual narrative of the events in this case.

12       Advertising and Analytics Defendants also seek to reframe their conduct as unintentional,

13  claiming that they stumbled upon this information by mistake.  That is disingenuous.  The "tools"

14  Advertising and Analytics Defendants claim they make available are intended and designed for the

15  sole purpose of collecting information.  It was no accident that they ended up with Plaintiffs' and Class

16  Members' health data or that they used this information for advertising and analytics.  That is the

17  essence of their business and is how they make nearly all of their revenue.  The Advertising and

18  Analytics Defendants cannot avoid liability by blaming GoodRx for their own intentional interception

19  and use of Plaintiffs' health data.

20       For these reasons, as further described herein, Defendants' Motions to Dismiss must be denied

21  in their entirety.

22                                   **LEGAL STANDARD**

23       On a Rule 12(b)(6) motion, the court must "accept as true all of the factual allegations

24  contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  A complaint may be

25  dismissed only for failure to plead sufficient facts to "state a facially plausible claim to relief."  *Shroyer*

26  *v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010).

27

28

## ARGUMENT

## I.  PLAINTIFFS HAVE STANDING

Article III standing requires "(i) an injury in fact . . . (ii) that the injury was likely caused by the defendant, and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  In evaluating injury in fact, courts consider "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts" such as "the disclosure of private information, and intrusion upon seclusion." *Id.* at 2204 (internal citation omitted).[2]

The injury Plaintiffs plead—the disclosure, interception, and use of private health data without consent—is a concrete, traditional harm sufficient to establish injury in fact.  *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("violations of the right to privacy have long been actionable at common law," and "encompass the individual's control of information concerning his or her person."); *see also Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982–83 (9th Cir. 2017) (same); *In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) (collection and disclosure of private data sufficient for Article III standing); *Stasi v. Inmediata Group Corp.*, 501 F. Supp. 3d 898, 909 (S.D. Cal. 2020) (same); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (same).[3]

Criteo's contention that Plaintiffs neither have standing nor state any claim because there are apparently "no facts" in the Complaint that allege Criteo received "any information at all," (Criteo MTD at 2) is wrong.  Plaintiffs clearly allege that **Criteo** intercepted **their** health data.  *See*, *e.g.*, ¶ 18 (alleging Criteo knowingly and intentionally intercepted health information through its tracking technology); *see also* ¶¶ 157-162 (describing how this tracking technology works and indiscriminately

---

[2] Criteo has abandoned any argument as to redressability or traceability.  *Dep't of Toxic Substances Control v. Rossi*, 2022 WL 19355, at *2 (N.D. Cal. Jan. 3, 2022) (undeveloped and unsupported arguments are "deemed to have been abandoned").

[3] Criteo and GoodRx's assertion that Plaintiffs allege Defendants' conduct apparently stopped in February 2020 is a misrepresentation of the Amended Complaint.  *Compare* Criteo MTD at 4 & GoodRx MTD at 23 n.11 *with* ¶¶ 196-199.

intercepts all GoodRx users' data, including "Plaintiffs' . . . health information"). This intentional and willful conduct that directly harmed Plaintiffs is nothing like *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007), which Criteo relies on, where the defendant was found not liable for a battery they did not themselves commit or otherwise participate in in any manner.

Unsurprisingly, the other cases Criteo relies on for this argument are also distinguishable, either (1) lacking these specific allegations against a defendant or conceding this issue (*see* Criteo MTD at 2 [citing *Easter v. Am. W. Fin.*, 381 F.3d 948, 961-63 (9th Cir. 2004) (no standing against lenders for charging interest rates when they never charged these rates to named plaintiffs)]); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 682 (N.D. Cal. 2021) (involving "accidental triggers" of a subset of devices without alleging Plaintiffs devices were triggered); *Ji v. Naver Corp.*, 2022 WL 4624898, at *10 (N.D. Cal. Sept. 30, 2022) (finding, unlike here, allegations that specific defendant "intercepted user's private messages" lacking); *Perez v. Wells Fargo & Co.*, 2015 WL 1887354, at *5 (N.D. Cal. Apr. 24, 2015) (failure to allege any "employment relationship" with defendant necessary for wage and hour dispute); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 61-66 (2d Cir. 2012) (conceding certain defendants did not engage in injury-causing conduct)); (2) involving the dissemination of data less sensitive than health information (*id.* citing *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (involving "contact information" i.e., email, phone number, and gaming username); or (3) do not address standing at all. *Id.* (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37 (1994) (addressing consent).

## II.    PLAINTIFFS' CLAIMS ARE TIMELY

The statute of limitations is an affirmative defense pursuant to which a claim may only be dismissed as time-barred if it "appears beyond doubt that the plaintiff can prove no set of facts that would establish . . . timeliness." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Courts in the Ninth Circuit have "long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations," a rationale that applies to all of Plaintiffs' claims, including CIPA and invasion of privacy. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069-70 (N.D. Cal. 2021); *see also Aryeh v. Canon Business Solutions, Inc.*, 55 Cal.

4th 1185 (2013) ("continuous accrual applies whenever there is a continuing or recurring obligation … each may be treated as an independently actionable wrong with its own time limit."). All but two[4] Plaintiffs allege their health data was continuously intercepted and shared without their consent through 2022 and 2023, respectively, and each Plaintiff alleges that Defendants' use of this data continued through at least February 2023. ¶¶ 196-199. Accordingly, all of Plaintiffs' claims are timely as the misconduct and injury at issue has continued through 2023.

None of the cases cited by Defendants address recurring violations and therefore do not support dismissal here. *See* Criteo MTD at 4; Google MTD at 22 (citing *Hakimi v. Societe Air France, S.A.*, 2018 WL 4826487, at *3 (N.D. Cal. Oct. 4, 2018) (dismissing claims as time-barred where plaintiff conceded contractual limitation period had run and merely argued enforcement would be unreasonable); Meta MTD at 13 (citing *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (finding language barrier insufficient to support tolling/estoppel and that plaintiffs failed to plead other facts to support these theories).

### A. The Discovery Rule Applies to Plaintiffs' Claims

Defendants' arguments that Plaintiffs' claims are time-barred also fail because of the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action."[5] *Fox*, 35 Cal. 4th at 806. Whether the discovery rule applies is generally a "question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008). To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. Here, Plaintiffs allege they could not (and did not) discover Defendants violations despite their due diligence because Defendants had exclusive knowledge of their misconduct, which occurred using proprietary technology that they did not disclose

---

[4] Plaintiffs Jose Marquez and Hollis Wilson allege they last used the GoodRx Platform in 2021 and 2019, respectively. ¶¶ 47, 55.

[5] For the same reasons, Plaintiffs' claims are also tolled via equitable tolling. *See*, *e.g.*, *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (applying equitable tolling where delay is due to no "fault of lack of diligence" on behalf of Plaintiff).

and actively concealed. ¶ 204. Accordingly, Plaintiffs allege the earliest they could have discovered Defendants' violations was upon the filing of the FTC Complaint on February 1, 2023. Plaintiffs have properly invoked the discovery rule. ¶¶ 192-200, 204.[6]

Several Defendants contend that GoodRx's policies should have placed Plaintiffs on "inquiry" notice of their claims and require additional "diligence." *See*, *e.g.*, Criteo MTD at 5. This is wrong. GoodRx consistently misrepresented its data sharing practices and even the latest version of its privacy policy does not disclose the massive, surreptitious health data sharing operation Defendants engaged in. *See* Section III. Given these misrepresentations, Plaintiffs could not conduct additional "diligence" (and it would have been futile) because there was no way that an ordinary user could uncover the misconduct Defendants were actively concealing. *Franklin v. Ocwen Loan Servicing, LLC*, 2018 WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018) (applying discovery rule where plaintiff had no "reason to suspect wrongdoing" because "[t]he very nature of plaintiff's allegations is that the recordings were done surreptitiously."); *Weatherly v. Universal Music Publ'g Grp.*, 125 Cal. App. 4th 913, 919 (2004) ("a defendant cannot hinder the plaintiff's discovery through misrepresentations and then fault the plaintiff for failing to investigate"). Nor were Plaintiffs on "inquiry" notice because of articles discussing Meta's data-related activities on *other* websites/apps or general ad targeting (Meta MTD at 14-15) because these matters do not concern (let alone disclose) the actual, specific conduct alleged here about GoodRx.[7] *See Rafton v. Rydex Series Funds*, 2011 WL 31114, at *10 (N.D. Cal. Jan. 5,

---

[6] This rebuts Meta's assertion that Plaintiffs' allegations are conclusory (Meta MTD at 13-14) and its assertion that Plaintiffs do not plead *when* and the *manner* in which they became aware of the misconduct alleged herein. Plaintiffs filed this action on February 2, 2023, just one day after the FTC Complaint. Plaintiffs therefore became aware of Defendants' conduct within that 24-hour period as a direct result of the announcement of the FTC Action.

[7] *Reveal Chat Holdco, LLC v. Facebook, Inc.*, which Meta relies on, does not support its position. Meta MTD at 16 (citing 471 F. Supp. 3d 981, 994 (N.D. Cal. 2020) (concerning "widely publicized" acquisition of Instagram, which was the same underlying conduct in the current action)). Further, Meta has not argued (nor could it) that Plaintiffs themselves saw these articles. *See McGill v. M.J. Brock & Sons, Inc.*, 91 Cal. Rptr. 2d 135, 142-43 (1999) ("[E]ven if we were to take judicial notice of the newspaper articles, there is no evidence that any of the plaintiffs read any of those articles.").

2011) (refusing to find news articles that did not discuss the "specific . . . issue" to constitute inquiry notice).

Defendants' remaining authority on this issue is inapposite. *See DeBruyne v. Equitable Life Assur. Soc'y of U.S.*, 920 F.2d 457, 466 (7th Cir. 1990) (refusing to apply discovery rule on summary judgment where plaintiff admitted they suspected the misconduct well before filing); *Eisenberg v. Citibank, NA*, 2017 WL 532936, at *6 (C.D. Cal. Feb. 8, 2017), *aff'd* 787 F. App'x 929, 930 (9th Cir. 2019) (refusing to apply discovery rule beyond when plaintiff signed documents disclosing conduct); *Al-Ahmed v. Twitter, Inc*, 2023 WL 27356, at *9 (N.D. Cal. Jan. 3, 2023) (holding ignorance of identity but actual knowledge of conduct does not satisfy discovery rule); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) (declining to apply discovery rule where complaint cited articles providing notice about specific drug they claimed was misrepresented); *Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182 (1979) (granting leave to amend to plead allegations consistent with discovery rule); *Chione v. Meditronic, Inc.*, 2015 WL 2151889, at *4 (S.D. Cal. May 7, 2015) (same); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988) (refusing to apply discovery rule where plaintiff made "candid" statements she wanted to "make a claim" during limitations period)).

## B. The Statute of Limitations Is Tolled by GoodRx's Fraudulent Concealment

The statute of limitations is also tolled by GoodRx's fraudulent concealment of its misconduct. This doctrine applies when: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown*, 525 F. Supp. 3d at 1070. Here, GoodRx affirmatively acted to mislead Plaintiffs by misrepresenting its privacy practices and failing to disclose that it would share users' sensitive health data.[8] *See ¶¶* 8-15, 207-208; *see also In re Glumetza Antitrust Litig.*, 611 F. Supp. 3d 848, 863 (N.D. Cal. 2020) (applying doctrine of fraudulent concealment where defendant made "[H]alf-truths" that omitted information "necessary to prevent misleading others."); *Brown*, 525 F. Supp. 3d at 1070 (holding that defendant's

---

[8] The same is true with respect to Google, Meta, and Criteo who never disclosed their interception of GoodRx's users health data, either publicly or in their own policies. ¶ 204.

"misleading partial disclosure[s]" were "affirmative acts to mislead Plaintiffs").  As a result, Plaintiffs could not and did not have knowledge of Defendants' conduct despite their diligence to uncover it.  ¶ 210.

Defendants' contention that they did not "conceal" anything because GoodRx made "clear statements" about its data sharing practices is false (GoodRx MTD at 25; Google MTD at 23; Criteo MTD at 5; Meta at 14) and contradicts both the allegations in the Complaint and the Federal Trade Commission's findings.  *See* Section III; *see also* ¶¶ 102-112, 193.  Suggesting that Plaintiffs were required to compare and contrast (1) the misrepresentations described in the Complaint, to (2) vague statements peppered in a later version of its privacy policy (which do not disclose Defendants' conduct (*see* Section III)), and then (3) perform complex testing using various "browser tools" to inspect for "pixels" in order to establish "diligence" in investigating their claims, would create a heightened and unheard of standard that no court has endorsed.  *See Brown*, 525 F. Supp. 3d at 1071 (accepting allegations plaintiffs were diligent and finding, in any event, that they "were not obligated to investigate their claims until Plaintiffs had reason to suspect the[ir] existence"); *see also Josten v. Rite Aid Corp.*, 2019 WL 3718739, at *4 (S.D. Cal. Aug. 7, 2019) (explaining a reasonably diligent person would have a "hard time piecing [the misconduct] together" without "having the sophisticated knowledge" of the relevant areas); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Lit.*, 2019 WL 6998668, at *3 (C.D. Cal. Sept. 5, 2019) (explaining "[r]easonable diligence does not require a person to scour the internet in search of any and all information").  The Court should reject this unprecedented argument.

The remaining authority Defendants rely on are either clearly distinguishable or support Plaintiffs' position.  *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) (finding no fraudulent concealment on summary judgment based on evidence submitted); *Diaz v. Safeway Inc.*, 2007 WL 2793367, at *5 (N.D. Cal. Sept. 26, 2007) (finding tolling inappropriate where no party made misleading statements); *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1103 (C.D. Cal. 2009) (finding act of pursuing "criminal charges against plaintiff" was not "active" concealment); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1061 (9th Cir. 2012) (refusing to apply doctrine given

admission plaintiff knew of wrongdoing); *Conmar Corp. v. Mitsui & Co.*, 858 F.2d 499, 502 (9th Cir. 1988) (reversing summary judgment decision because of "fact" issue remained on viability of concealment theory); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1203 (N.D. Cal. 2015) (finding allegations of misrepresentation and secret concealment sufficient to toll claims against all defendants); *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1416 (9th Cir. 1987) (finding annual report provided constructive notice of securities claims); *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1096 (9th Cir. 2005) (no concealment where plaintiff admitted to knowledge); *Doe v. Univ. of S. California*, 2019 WL 4229750, at *5 (C.D. Cal. July 9, 2019) (same); *Reveal Chat Holdco, LLC v. Facebook, Inc.*, 471 F. Supp. 3d 981, 994 (N.D. Cal. 2020) (no allegations of misrepresentations or other affirmative conduct); *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (evaluating existence of a conspiracy).

## III.     PLAINTIFFS DID NOT CONSENT TO DEFENDANTS' MISCONDUCT

Defendants also attempt to argue that Plaintiffs somehow consented to their wrongdoing. The party seeking to invoke a consent defense bears the burden of establishing that consent exists. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). For the consent to be "actual," the "disclosures must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *10 (N.D. Cal. Dec. 22, 2022). Courts evaluate whether, "[i]n light of the specific language of the [disclosure]," a "reasonable user" would be "adequately notified" of defendant's conduct. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047 (N.D. Cal. 2014). "[T]he disclosures must have only one plausible interpretation." *Calhoun*, 526 F. Supp. 3d at 619. If the "language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Defendants'] favor*." In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019).

Plaintiffs could not consent to the sharing and disclosure of their health data because GoodRx promised the exact opposite.  ¶ 104 (explaining between October 2017 and March 2019 expressly stated that "[GoodRx] never provide[s] advertisers or any other third parties any information that

reveals a ***personal health condition or personal health information***.").[9]  Where, as here, a defendant

states it will not engage in a course of conduct but does so anyway, a plaintiff cannot be deemed to

have consented to the conduct.  *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066 (N.D. Cal.

2021) (finding no consent to data collection where "statements suggest that a user's activity in private

browsing mode is not saved or linked to the user."); *see also Calhoun*, 526 F. Supp. at 621) (finding

no consent because the privacy notice "makes specific representations that could suggest to a

reasonable user that [defendant] would not engage in the alleged data collection").

Defendants' reliance on ambiguous technical language regarding the general "***collect[ion]***" of

unspecified "***personal information***" through "pixels" "SDKs" "cookies" and "tags" immediately

preceding or found elsewhere within these same policies (GoodRx MTD at 4; Criteo MTD at 11;

Google MTD at 10; Meta MTD at 8) cannot establish consent to Defendants widespread ***disclosure***

(by GoodRx), ***interception*** (by remaining Defendants), and  ***use*** of ***health data***.  *See In re Google

Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (statement that Google may share

"personal information" was too broad to establish consent for interception of voice recordings as it

"says nothing about the types of information that Defendants might send"); *see also Rodriguez v.

Google LLC*, 2021 WL 2026726, at *4 (N.D. Cal. May 21, 2021) ("The average internet user is not a

full-stack engineer; he or she should not be treated as one when Google explains which digital data

goes into which digital buckets."). No reasonable user would interpret these vague technical terms in

this manner, especially when to do so would be inconsistent with the express (and clear) promise

within the same policy that "advertisers or any other third parties" will not receive "any information

that reveals a personal health condition or personal health information." *See* ECF No. 113-2 at 8;

*Williams v. Geber Products Co*., 552 F.3d 934, 939 (9th Cir. 2008) (a reasonable consumer should not

"be expected to look beyond misleading representations . . . ").

Nor does GoodRx's statement that Plaintiffs will need to provide "[GoodRx] with some

personal information" to "provide [its] service" and that GoodRx will "reach out to [Plaintiffs] about

---

[9] *See also* ECF No. 113-2 at 8 (October 17, 2017 Privacy Policy). This is just one of several
representations that GoodRx made, all of which are inconsistent with Defendants' claims that Plaintiff
consented to the conduct alleged.  ¶¶102-111.

prescription savings opportunities" establish consent for the widespread disclosure of Plaintiffs' health data.[10] A statement that GoodRx may do one thing (collect data) for a specific purpose (prescription savings and providing the service) cannot establish consent for separate conduct (sharing and interception of data) involving different information (health data).[11] *See In re Google Inc.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) (holding that disclosures about interception "under a different set of circumstances" do not create consent for interception of the specific information at issue"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1073 (N.D. Cal. 2016) (finding that "consent to 'access' or 'look at' [plaintiffs'] contacts is not the same as consent to 'upload' those contacts" because "consent is only effective if the person alleging harm consented 'to the particular conduct'").

GoodRx's selective quotation from a provision in its June 20, 2019 HeyDoctor privacy policy equally fails to establish consent. GoodRx MTD at 4. The statement GoodRx points to (when read in its entirety) states that unidentified "personal information" "may" be shared to third parties who help "operate and manage [the] Site, process and track payments, and fulfill and deliver services and prescriptions." It further states that GoodRx "limit[s] use of that information to helping [GoodRx] provide the service." Advertising and Analytics Defendants perform none of these specified "services" (for instance, they do not "fill" prescriptions) and no reasonable user would understand this to mean these Defendants would receive their health data, let alone for serving them targeted advertisements on other platforms. *See In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767 (statement that Facebook "give[s] your information to the people and companies that help us provide, understand, and improve the services" "does not come close to disclosing the massive information-sharing program . . . that plaintiffs allege").[12]

---

[10] *See, e.g.,* ECF No. 113-2 at 5, 6, 15.

[11] For the same reason, Google's contention that GoodRx's HeyDoctor Privacy Policy stated Google Analytics may be used to collect unspecified "information relating to your use of the Site" also fails as it too could not be understood by a reasonable user to mean Google intercepts and uses health data. *See* Google MTD at 10 n.16.

[12] Google's suggestion that it had "consent" to intercept health data because GoodRx agreed to use Google Analytics is illogical. Plaintiffs cannot consent to conduct through a private agreement to which they were not a party and, in any event, this counter "evidence" is not appropriate on a 12(b)(6)

Criteo, Google, and Meta's reliance on GoodRx's January 1, 2023 Privacy Policy (in effect for just one month before this action was filed) is a red herring. First, there is no such thing as retroactive consent to prior conduct. *See Hart v. TWC Prod. & Tech. LLC*, 2023 WL 3568078, at *11 n.9 (N.D. Cal. Mar. 30, 2023) (explaining continuing users are not deemed to "retroactively consent[]" to conduct "for their entire period of use") and the majority Plaintiffs did not use GoodRx during the time period these terms were in effect barring this argument as to those Plaintiffs entirely. Most importantly, these terms are *still* wholly deficient to establish consent because no reasonable user would understand generic references to "other companies" that "help [GoodRx] track, segment, and analyze usage of the Services" and the statement that GoodRx may "collect . . . information" users "view" "hover over" and "click on" to mean that GoodRx is disclosing and allowing Advertising and Analytics Defendants to intercept identifying health information. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 792 (finding Facebook's statement "we give your information to the people and companies that help us provide, understand, and improve the services we offer" not sufficient to create consent for sharing sensitive user interaction information with third party app developers and business partners); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 823 (statement that Google may share "personal information" was too broad to establish consent to collect audio files because it "says nothing about the types of information that Defendants might send").

Lastly, Meta's argument that its own privacy policy—which states Meta collects information about "[h]ow you use [third parties'] products and services" and "[w]ebsites you visit and cookie data" —establishes consent also fails. GoodRx users would not review Meta's social media policies when using the GoodRx Platform. But even if they did, Judge Orrick recently held this policy fails cannot establish consent because it does not "specifically indicate that Meta may acquire health data obtained

motion. *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019) (refusing to consider private agreement between defendants on a 12(b)(6).

from Facebook users' interactions with their medical providers' websites." *In re Meta Pixel Healthcare Litigation*, 2022 WL 17869218, at \*9.  The outcome here should be no different.[13]

Defendants' authorities only support Plaintiffs' position here, as they emphasize that for consent to be valid it must be explicit and cover the exact practice at issue.  *See*, *e.g.*, *Hill*, 7 Cal. 4th at 42 (finding consent where there was "[f]ull disclosure" and "complete information" regarding drug testing procedures, an "opportunity to consent or refuse" and "written consent . . . [was] obtained"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (finding consent to collection of Google contacts where disclosure stated defendant was "asking for some information from your Google Account" including "Google Contacts" and allowed users to select "Allow" or "No thanks" prior to collection); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (finding consent to collect URL information from third party websites where disclosure stated defendant "collect[s] . . . information about the websites and apps you visit"); *TBG Ins. Servs. Corp. v. Super. Ct.*, 96 Cal. App. 4th 443, 452 (2002) (finding consent to monitoring of work laptop where written policy clearly stated computer use was "monitored by authorized company personnel"); *Gray v. Amazon.com, Inc.*, 2023 WL 1068513, at \*8 (W.D. Wash. Jan. 27, 2023) (finding consent to use of voice data from Alexa device where policy stated "Alexa uses your voice recordings" and that Amazon "process[es] your voice input"); *Mortensen v. Bresnan Commc'n, L.L.C.*, 2010 WL 5140454, at \*5 (D. Mont. Dec. 13, 2010) (finding consent to disclosure of browsing activity because policy stated it collected "information about your 'electronic browsing'" and that this may be "disclosed to third parties."); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1130 (N.D. Cal. 2015) (finding disclosure that defendant may share personal information with third parties to include demographic data like gender, age, and zip code); *Matera v. Google Inc.*, 2016 WL 5339806, at \*18 (N.D. Cal. Sept. 23, 2016) (finding disclosure that Google analyzes "your content" insufficient to

---

[13] Contrary to Meta's claim (Meta MTD at 8 n.4), Judge Orrick did not reject its consent claim solely because Meta's policy is "broad" but because "a reasonable user who viewed Meta's policies would not have understood that Meta was collecting health information."  *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at \*9.  Meta's reliance on *Silver v. Stripe Inc.* is also misplaced because, there, the policy specified credit card information would be collected.  By contrast, Meta's policies do not state it collects health data.  2021 WL 3191752, at \*5 (N.D. Cal. July 28, 2021).

establish consent to analyze emails from non-Gmail users for targeted advertising); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014) (statement that defendant "may use the information we received about you" for "data analysis" was "not specific enough" to establish consent to scan messages).

The remaining cases Defendants cite are factually distinguishable or do not evaluate consent. *Gulec v. Aerospace/Aviation Companies*, 2014 WL 12591660, at *2 (C.D. Cal. Feb. 28, 2014), *aff'd* 698 F. App'x 372 (9th Cir. 2017) (finding no invasion of privacy arising from phone interview plaintiff willingly participated in); *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 756 (N.D. Cal. 1993) (conceding consent to "entry of [a] camera crew" and "videotaping"); *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (addressing whether there is an expectation of privacy in phone calls to home security provider); *Snipes v. Wilkie*, 2019 WL 1283936, at *6 (N.D. Cal. Mar. 20, 2019) (finding consent to claimed "intrusion" where plaintiff herself placed the phone call and knew the party she did not wish to hear the conversation was present); *Dolemba v. Kelly Servs., Inc.*, 2017 WL 429572, at *3 (N.D. Ill. Jan. 31, 2017) (finding job application in which employee agreed to receive telephone calls from employer defeated a TCPA claim premised on employers' phone calls); *Boone v. MB Fin. Bank, N.A.*, 375 F. Supp. 3d 987, 997 (N.D. Ill. 2019) (dismissing ICFDA claim premised on overdraft fees where fees were consistent with agreement that stated $37.00 in overdraft fees would be charged); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (not evaluating consent); *Hartford Cas. Ins. Co. v. J.R. Marketing, LLC.*, 61 Cal. 4th 988, 998 (2015) (same); *Millennium Health, LLC v. EmblemHealth, Inc.*, 240 F. Supp. 3d 276, 286 (S.D.N.Y. 2017) (same).

## IV.    PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CIPA § 631 CLAIM

CIPA § 631(a) is violated when any person (1) "intentionally taps" a "wire, line, cable, or instrument", (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication", (3) "uses, or attempts to use . . . any information so obtained", or (4) "aids, agrees with, employs, or conspires" to do any of the above. Plaintiffs satisfy each of these elements. *See, e.g.*, ¶¶ 61-65, 67-77, 79-85, 87-90, 115 (intent & willfulness); ¶¶ 18, 123-132, 139, 144-154, 158-160

(tap and wire, line, cable, or instrument) ¶¶ 132-134, 151-154, 158-159, 180-191 (read, learn, use,

attempt to use); ¶¶ 18-20, 113, 177 (contents); ¶¶ 297, 312, 317 (agreement).[14]

### A.      Plaintiffs Have Alleged Interception of "Content"

GoodRx and Criteo's assertion that Plaintiffs do not allege the data shared or intercepted was

"content" under § 631 (GoodRx MTD at 16; Criteo MTD at 18) directly contradicts the Ninth Circuit's

decision in *Facebook Tracking*, which expressly held that "content" includes users "search[es]" and

inputs" because they "could divulge a user's . . . queries[] and habits on third-party websites." *In re

Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020); *see also Saleh v. Nike, Inc.*,

562 F. Supp. 3d 503, 517–18 (C.D. Cal. 2021) (holding recording of users' "clicks, typing, scrolling,

swiping, tapping, keystrokes, geographic location, IP addresses, and data entry" constitutes content).

As Defendants intercepted users' "searches" and "inputs" on the GoodRx Platform (¶ 98) that reveal

health information (e.g., prescriptions, treatment, etc.) this constitutes "contents" under § 631.  *See In

re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *11 (finding URLs containing users' search

for a health condition is content because it "concern[s] the substance of a communication").[15]

Criteo and GoodRx's reliance on *Hammerling v. Google LLC* is misplaced.  615 F. Supp. 3d

1069, 1093 (N.D. Cal. July 2022).  *Hammerling* involved data reflecting the frequency and duration

of which users ***opened*** their apps.  *Id.*  Plaintiffs here are not alleging Defendants merely disclosed

and/or intercepted when and how often people used the GoodRx Platform, but that they disclosed

and/or intercepted actual health data reflected in users' actual searches and inputs, thus falling squarely

within CIPA's purview.  Indeed, Judge Breyer himself later held the data at issue in *Hammerling* was

"contents" once Plaintiffs amended their complaint alleging it was not merely frequency and duration

data, but also "activity on those apps, including products they ***searched for***." *Hammerling v. Google*

---

[14] GoodRx's consent argument fails for the reasons stated in Section III.  GoodRx MTD at 15.

[15] There is no "content" requirement under the first provision of CIPA § 631.  *See Yoon v. Lululemon
USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining the "content" requirement only
applies to CIPA provisions that use this language); *Byars v. Goodyear Tire & Rubber Co.*, 2023 WL
1788553, at *4 (C.D. Cal. Feb. 3, 2023) (same).

*LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 2022). Defendants leave this subsequent opinion out of their argument as it fully supports Plaintiffs' position here.[16]

### B. Plaintiffs Have Alleged "Intent"

Advertising and Analytics Defendants claim that Plaintiffs fail to allege intent[17] does not pass scrutiny. Plaintiffs allege Advertising and Analytics Defendants designed and created their tracking software for the very purpose of intercepting the content of users' communications on websites and apps (¶¶ 304, 305) and contracted with GoodRx to incorporate this technology in the GoodRx Platform. *See*, *e.g.*, ¶¶ 19, 295. Once incorporated, Advertising and Analytics Defendants subsequently analyzed and used this data to provide advertising and analytics services, as well as for their own benefit.[18] *See id.*; *see also Lopez*, 519 F. Supp. 3d at 689 (holding intent "can be shown through 'knowledge to a substantial certainty that . . . use of the equipment will result in the recordation of a confidential conversation.'"); *Saleh*, 562 F. 3d Supp. at 512 (sustaining § 631 against third party software provider and finding that it "intentionally recorded" plaintiff's data); *In re Google Inc. St. View Elec. Commc'ns. Litig.*, 794 F. Supp. 2d 1067, 1082 (N.D. Cal. 2011) ("Plaintiffs plead facts

---

[16] GoodRx's classification of the intercepted data as merely "basic identification information" such that it is "not clear what . . . inferences" could be drawn by Defendants (GoodRx at 16) is laughable considering GoodRx itself used the "searches" users performed to serve advertisements for specific medications on the other Defendants platforms. ¶¶ 183-190 (e.g., using a search for erectile dysfunction to serve ads for erectile dysfunction medication).

[17] Google incorrectly argues that Plaintiffs need to plead intent under the more stringent Rule 9(b) standard instead of the Rule 8 standard. Google MTD at 18. This suggestion is wrong. *Maghen v. Quicken Loans, Inc.*, 2014 WL 12586447, at *2 (C.D. Cal. Oct. 28, 2014)

[18] Google admits this is the purpose of its tracking technology (Chi Declaration Ex. 2, ECF No. 116-4 at 2, 11 (Google Analytics Terms of Service explaining that "SDKs" would be "used or incorporated into a Property app for the purpose of collecting Customer Data" and that if a "GA Property" is "link[ed]" to Firebase that "Customer Data" will be "made accessible" to "other entity or personnel")) and Meta admits it used this data for its own benefit (Kasabian Declaration Ex. 2, ECF No. 115-4 at 3 (Meta Business Tools Terms explaining Meta would use "Event Data" for its own purposes like "Improv[ing] Ad Delivery" and it may "correlate Event Data" to "people who use Meta Products" for "ad campaign[s]")). Criteo likewise states in its Terms of Service that it will "use, analyze, combine, and futher process Service Data" and that it will use this data to "improve the Criteo Technology, the Criteo Services, and other Criteo products" including to "[c]reate reports, audience, and analytics." *See Criteo Umbrella Terms of Service*, CRITEO, https://www.criteo.com/wp-content/uploads/2022/07/Criteo-Umbrella-Terms-of-Service_EN-EN.pdf (last visited Aug. 10, 2023).

---

sufficient to state a [Wiretap Act claim where] Defendant intentionally created, approved of, and installed specially-designed software and technology . . . and used this technology to intercept Plaintiffs' . . . communications."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1059 (N.D. Cal. 2015) (wiretapping found where third-party "designed" the "software" that was then embedded into mobile device, which led software to transmit data). This is intentional conduct.

Meta's argument that Advertising and Analytics Defendants merely make tools "available" or that this was a "defect" such that their misconduct occurred by accident is absurd. *See* Meta MTD at 9-10, 12 n.5. Unlike in *People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal. 2d 123 (1969) (Smith) (cited by Meta), where plaintiff "accidentally" picked up a person's conversation while briefly "testing" a recording device (*id*. at 134), the "tools" Meta and Advertising and Analytics Defendants designed were created precisely to intercept the content of users' communications so that Defendants could provide analytics, profit off advertisements, and otherwise use the data. Defendants' remaining authority is equally distinguishable.[19] *See People v. Buchanan*, 26 Cal. App. 3d 274, 287–88 (1972) (switchboard operator "inadvertent[ly]" overhearing a telephone conversation); *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727–28 (2022) (finding there could be no intent to activate recording device absent "critical . . . evidence" of who had done so); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (no intent against seller of recording equipment used by police department where complaint lacked any allegations they were otherwise a "participant" in "scheme" to record); *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (lacking any allegations of intent); *California Soc'y of Anesthesiologists v. Brown*, 204 Cal. App. 4th 390, 403 (2012) (not involving CIPA or intent requirement).

Lastly, Meta and Google's attempt to negate their intentional interception of Plaintiffs' data by pointing to purported data "filters" (Meta MTD at 2, 11)[20] and generic suggestions against sharing

---

[19] As neither Criteo nor Google cite any authority for their intent argument the Court should disregard them. Criteo MTD at 18; Google MTD at 18.

[20] These "filters" raise several fact questions not ripe for a motion to dismiss, including (1) **when** they were implemented (¶ 73 alleging Meta was attempting to "develop" a filtration system) and (2) **how**

certain information in private agreements with GoodRx (Google MTD at 16; Meta MTD at 11) do not pass muster because "whether defendants complied with their contracts [or other representations] as written . . . are disputed issues that need further factual development." *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1037 (N.D. Cal. 2019). Meta's authority for this, *Caraccioli*, 167 F. Supp. 3d at 1063, 1067 does not address whether private contracts can obviate intent.[21]

## C. There Is No Party Exception Here

Criteo and Google argument that they are parties to the communication is not credible. Courts in this circuit have repeatedly rejected this argument. *Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023) (holding software provider who tracked "keystrokes, mouse clicks, data entry, and other electronic communications" through "piece of code" on a website is a non-party); *Saleh*,562 F. Supp. at 521 (same); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (same); *Revitch* v. *New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (same); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *9 (N.D. Cal. Apr. 6, 2023) ("the weight of the authority in this Circuit teaches that [a data collector] is not a party to Plaintiffs' alleged communications" with third parties); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (holding Meta was not a "party" as a matter of law because holding otherwise would go against legislative intent to "prevent the acquisition of the contents or a message by an unauthorized third-party").

Defendants' reliance on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) and its progeny[22] is a red herring. Not only have other courts already questioned *Noom*'s reasoning

they actually function. Plaintiffs dispute that these filters would prevent the interception of data, as it appears they (*if* functioning) "discard" data after the interception occurs. ¶¶ 74-75.

[21] This *pro se* case struck allegations of Facebook's purported "republication" of defamatory material and found, absent this allegation, there were no other allegations of intentional conduct and Meta could not otherwise be responsible for the sharing of content by other Facebook users.

[22] The following cases are distinguishable for the same reason as *Noom. See Licea v. Cinmar, LLC*, 2023 WL 2415592, at *9 (C.D. Cal. Mar. 7, 2023); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, *10 (E.D. Cal. Mar 30, 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *7 (C.D. Cal. Mar. 7, 2023); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *3 (N.D. Cal. Apr. 8, 2021) *Yale v.*

(*Javier*, 2023 WL 114225, at *6 (rejecting *Noom* entirely as inconsistent with CIPA's plain language)), but the *Noom* Court's decision turned on a factual distinction in which it found defendant FullStory was merely an "extension" of the website operator because there were no allegations that "FullStory [had] intercepted and used the data itself." *Id.*, at *833. The exact opposite is alleged here. *See* ¶¶ 134-138, 153, 159[23]; *Katz-Lacabe,* 2023 WL 2838118, at *9 (distinguishing *Noom* decision because defendant in *Katz* had used the data). None of Defendants' other cases support the application of the party exemption in this context. *See Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) (discussing liability of direct participant to conversation); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975) (same); *Pena v. GameStop, Inc.*, 2023 WL 3170047, *3 (S.D. Cal. Apr. 27, 2023) (same).

Finally, GoodRx's argument that it is exempt from liability because it is the "intended recipient" of the communication ignores its liability for aiding and agreeing with Advertising and Analytics Defendants in violation of the fourth prong of § 631(a). *See Revitch*, 2019 WL 5485330, at *2 (finding website operator who incorporated tracking technology liable under § 631(a)); *Yoon,* 549 F. Supp. 3d at 1083 (same). *Warden*, 99 Cal. App. 3d at 811, cited by GoodRx, does not address liability under this prong.

### D. Plaintiffs Have Pled Interception of Communications "In Transit"

Criteo's claim that Plaintiffs must plead "in transit" with excruciating "specificity" is wrong. Criteo MTD at 17. Plaintiffs allege that the GoodRx Platform incorporates Criteo's tracking technology that, "similar to the Meta Pixel" is a "snippet of code" that "re-directs the content of the user's communication" "[a]s soon as a user takes any action" and while the communication "is still occurring[.]" ¶¶ 124, 158. Accordingly, these communications are intercepted while "in transit" prior to reaching their final destination. ¶ 315. No additional allegations are required. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D.

---

*Clicktale, Inc.*, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (same); *Byars v. Hot Topic, Inc.*, 2023 WL 2026994, at *8 (C.D. Cal. Feb. 14, 2023)

[23] *Supra* note 19.

Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as they would "contradict[] Plaintiffs' allegations").[24]

Unsurprisingly, Criteo relies exclusively on cases involving substantially different technology where it was clear the data was not "in transit" as it was stored somewhere else first prior to being forwarded or accessed by the defendant. *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 140 (E.D.N.Y. 2010) (finding emails that were received and then forwarded are not "in transit"); *Rodriguez v. Google, LLC,* 2022 WL 214552, *1-2 (N.D. Cal. Jan. 25, 2022) (finding data is not "in transit" where it is first logged and then a second copy is transmitted); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) ("in transit" element missing where complaint showed data was transmitted to defendant "significantly after" it arrived at Smart TV); *Martin*, 2023 WL 2717636, at *10 (finding "in transit" requirement lacking because defendant must first "record" and "create[]" a "transcript" of the communication with the chatbot, then "permit[]" the third party to access the transcript "created by [defendant]"); *Licea*, 2023 WL 2469630, at *8 (similar); *Pena*, 2023 WL 3170047, at *6 (similar); *Licea*, 2023 WL 2469630, at *9 (similar); *Licea*, 2023 WL 2415592, at *10 (similar); *Rosenow v. Facebook, Inc*., 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (similar).[25]

## V.  PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR CIPA § 632 CLAIM

CIPA § 632 prohibits any person from "intentionally" and "without the consent of all parties" to use a "recording device" to "eavesdrop" or "record [a] confidential communication." CIPA § 632(a).[26]  Advertising and Analytics Defendants' tracking technology are a "device" they used to

---

[24] That Plaintiffs note additional, other data *could* be uploaded directly to Criteo directly does not defeat Plaintiffs' CIPA claim.  *See* Criteo MTD at 17.  CIPA just does not apply to this separate data.

[25] *Hammerling*, 2022 WL 17365255, at *10 is also distinguishable, as there the court found any "in transit" allegations (present here) missing, leaving open the possibility data may have been collected "at a later date."

[26] Google, Criteo, Meta's argument that Plaintiffs have not sufficiently pled intent under § 632 fails for the reasons stated in Section IV.B.  *See People v. Guzman*, 11 Cal. App. 5th 184 n7 (2017) (while 631 is not limited to "confidential communications" all other substantive conduct prohibited by 631 and 632 is the same).  And Google's argument that "the alleged recording was performed by GoodRx,

1   eavesdrop and record confidential communications (i.e., communications regarding health data) in

2   violation of § 632.  ¶¶ 18, 139, 154, 160.

3       **A.      Plaintiffs Have Sufficiently Pled a "Confidential" Recording**

4       A "confidential communication" is "any communication carried on in circumstances as may

5   reasonably indicate that any party to the communication desires it to be confined to the parties

6   thereto[.]" CIPA § 632(c). Courts consistently recognize that individuals have a reasonable

7   expectation of privacy in the type of medical data Defendants intercepted here. *See Doe v. Regents of*

8   *Univ. of Cal.*, 2023 WL 3316766, *6 (N.D. Cal. May 8, 2023) (recognizing reasonable expectation in

9   "[p]ersonal medical information" because it is understood to be among the most sensitive information

10  that could be collected about a person"); *Federated University Police Officers' Association*, 2015 WL

11  13273308, at *12 (conversations about medical treatment and history giving rise to expectation of

12  confidentiality in CIPA); *Stasi*, 501 F. Supp. 3d at 926 (recognizing reasonable expectation of privacy

13  in health data"); *Brown*, 525 F. Supp. 3d at 1074 (recognizing confidential nature of "private browsing

14  session[s]").

15      None of the cases cited by Defendants address whether this type of data is confidential. *See In*

16  *re Google Inc.*, 2013 WL 5423918, at *22 (emails); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051

17  (N.D. Cal. 2018) (same); *Campbell*, 77 F. Supp. 3d at 849 (chat messages); *People v. Nakai*, 183

18  Cal.App.4th 499, 518-19 (2010) (same); *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal.

19  Jan. 22, 2018) (messages on online forums and social media websites); *Faulkner v. ADT Sec. Servs.,*

20  *Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) (phone conversation between customer and home security

21  provider); *Rodriguez*, 2021 WL 2026726, at *7 (involving general app-activity data, not health

22  information). Indeed, Judge Koh herself—who decided *In re Google Inc.*—found that case (and *Nakai*,

23  *Campbell*, and *Cline*)—"distinguishable" from those involving "private browsing" data like the one

24  at hand. *Brown*, 525 F. Supp. 3d at 1074; *see also Brown v. Google LLC*, 2023 WL 5029899, at *18

25

26

27  not Google" (Google MTD at 13) is just a reiteration of Google's argument that it is only a vendor,
    which is addressed in Section IV.C.

28

(N.D. Cal. Aug. 7, 2023) (explaining "Times change, as do modes of communication" such that there is no per se rule that internet communications are not confidential).

### B. Plaintiffs Have Sufficiently Pled That Meta Used a "Device"

Several courts have already rejected Meta's contention that its tracking software is not a "device" under CIPA § 632. *Compare* Meta MTD at 12 *with In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) (finding software that "surreptitiously intercepted personal data" to be "device"); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 690 (N.D. Cal. 2021) (finding the "Siri software" to be "device"); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1042 (N.D. Cal. 2014) (accepting allegations that Apple used a "electrical tool" to be a "device" under analogous Wiretap Act). Indeed, Meta has fabricated this argument by pointing to the definition of a separate term—"electronic tracking device[s]"—found in an entirely different provision of CIPA regarding location tracking. *See* MTD at 12 (citing *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (discussing interpretation of "electronic tracking device" as used in § 637.7); *Moreno v. S.F. BART*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017) (same)). Meta cites no authority for interpreting these two different terms in two different sections regulating different conduct in the same manner. *See* Meta MTD at 12 n.6 (citing *California Society of Anesthesiologists*, 204 Cal. App. 4th at 403 (interpreting provisions of Nursing Practice Act not CIPA)).

## VI. PLAINTIFFS HAVE PLED AN INTRUSION UPON SECLUSION CLAIM

A common law intrusion upon seclusion claim requires (1) "a reasonable expectation of privacy" and (2) that "the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020).[27] Plaintiffs allege an intrusion upon seclusion claim because Defendants disclosed and intercepted sensitive health data that was intended to be private.[28]

---

[27] Defendants consent and intent arguments fail for the reasons described in Sections III and IV.B.

[28] Criteo and Meta's suggestion that Plaintiffs do not allege what data was intercepted or that it was misused overlooks Plaintiffs' allegations. *Compare* Criteo MTD at 11 & Meta MTD at 10 with ¶¶ 183-191; 160-161, 113-114. *Scott-Codiga v. Cnty. of Monterey*, 2011 WL 4434812, at *6 (N.D. Cal. Sept. 23, 2011), which Criteo cites, is distinguishable because plaintiff there did not specify what supposedly "private facts" were ever disclosed. The same is not true here.

## A. Plaintiffs Have Pled a Reasonable Expectation of Privacy

There can be no doubt that individuals have a reasonable expectation of privacy in their own health data. *See Doe*, 2023 WL 3316766, at *6 (sustaining privacy claims based on the interception of medical data through pixels because "[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person."); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021) (finding negligent disclosure of medical information to be an invasion of privacy "because the disclosure of such information is likely to constitute an 'egregious breach of the social norms' that is 'highly offensive'"); *Stasi*, 501 F. Supp. 3d at 926 (same); *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066 (N.D. Cal. 2021) (finding reasonable expectation in data defendant promised not to disclose).

Defendants' authority either supports Plaintiffs' claims (*see In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 601 (recognizing reasonable expectation of privacy when data collection is inconsistent with privacy promises) or are distinguishable. *See Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009) (discussing expectation of privacy in the workplace); *In re Google Inc.*, 2013 WL 5423918, at *22(distinguished above); *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (same); *Lopez*, 519 F. Supp. 3d at 689–91 (dismissing claim for failure to allege plaintiffs' "confidential communications were" actually "intercepted").

Defendants' attempt to draw similarities between this case and *Smith v. Facebook, Inc.* fails both (1) for the reasons discussed in Section III, and (2) because the data at issue in *Smith* only concerned viewing "publicly available" information relating to health generally (e.g., websites like cancer.org and melanoma.org) and not "details of an individual's health status of medical history" like here. 745 F. App'x 8, 9 (9th Cir. 2018). Plaintiffs here did not merely view webpages relating to health, they sought treatment for and provided information about specific medical conditions they were experiencing and/or discounts for prescriptions they were prescribed.

## B. Plaintiffs Have Pled Highly Offensive Conduct

Whether Defendants' intrusion is highly offensive depends "on the degree to which the intrusion is unacceptable as a matter of public policy." *In re Facebook, Inc. Internet Tracking*

*Litigation*, 956 F.3d at 606.  When an intrusion concerns the disclosure or interception of medical information without consent, it is highly offensive.  *See Regents of Univ. of Cal.*, 2023 WL 3316766, at *6 (finding transmittal of medical data though Meta Pixel is highly offensive because "medical information" is "the most sensitive information . . . about a person"); *Doe v. Beard*, 63 F. Supp. 3d 1159, 1169–70 (C.D. Cal. 2014) (explaining the disclosure of "medical information" is an "egregious violation[] of social norms"); *Katz-Lacabe*, 2023 WL 2838118, at *7 (finding interception of data that touched on "sensitive health . . .information" to be sufficient to state an intrusion upon seclusion claim). This is especially true as Defendants engaged in this conduct surreptitiously in a manner users could not detect and in violation of GoodRx's own promises.  *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021) (surreptitious collection of data in contravention of representations to users is highly offensive); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1061 (N.D. Cal. 2014) (holding interception of personal contract lists without consent sufficient to pass challenges to "highly offensive" element on motion to dismiss).

The FTC action and corresponding monetary penalties GoodRx paid for its conduct alone is enough to reject this argument.  These cases—as well as common sense—directly rebut GoodRx's contention that it was proper (and not offensive) to disclose users' "medication name[s]" to some of the largest advertising companies in the world in violation of GoodRx's own policies, without users' consent.  MTD at 14-15.[29]

The cases Defendants rely on are either outdated and no longer good law, do not discuss the disclosure or interception of health data, or support Plaintiffs' position.  *See In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d at 830 (rejecting *In re iPhone, Low, Folgelstrom*, and *In re Google* and finding interception of private communications may be highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of LinkedIn ID and profile page URL not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973 (N.D. Cal. 2014)

---

[29] The FTC action and related penalties likewise refute GoodRx's claim that its conduct was not highly offensive—despite being contrary to their own promises—because the tracking technology at issue is generally "popular" on websites that do not relate to health (i.e., shopping websites, blogs, and other forums that do not involve the input of health conditions and prescriptions).  *Id.*

(discussing Google's commingling of data from its own services that it had consent to collect); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of geolocation data); *Belluomini v. Citigroup Inc*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) (involving disclosure of "contact information"); *Hammerling*, 2022 WL 17365255, at *8–9 (disclosure of only frequency and duration of non-Google app usage); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (disclosure of name and zip code); *Hernandez*, 47 Cal. 4th at 295 (limited surveillance in employee-employer context); *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 2761818, at *2 (S.D. Cal. June 8, 2018) (data breach); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092–93 (N.D. Cal. 2018) (geolocation data that users also shared with ride-share drivers); *White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041, 1053 (N.D. Cal. 2015) (copy of SSN that was not used or distributed); *I.C.*, 600 F. Supp. 3d at 1039 (only email address, phone number, and/or app usernames and passwords); *Smith*, 262 F. Supp. 3d at 954–55 (distinguished above); *Hill*, 7 Cal. 4th at 35 1994) (same).

Lastly, GoodRx's argument that because some Plaintiffs did not provide their name or email somehow obviates their expectation of privacy in their own health data or the offensive nature of Defendants' conduct is wrong. GoodRx MTD at 14. As Plaintiffs allege, GoodRx disclosed and the Advertising and Analytics Defendants intercepted from each Plaintiff unique identifiers akin to social security numbers that allowed Defendants to identify them and match the health data to their identity, whether that be a Facebook profile, Google account, or other internal profile. ¶ 114. Having a name or email address simply is not necessary for the violation here.

**C.    Plaintiffs Have Sufficiently Pled That Defendants' Intrusion Is Intentional**

Defendants' intent argument fails for the reasons cited in Section IV.B. The additional cases cited do not change this, as they are clearly distinguishable. *See Taus v. Loftus*, 40 Cal.4th 683, 724 (2007) (finding no offensive conduct by disclosure of private information "from a relative of friend"); *see also Miller v. Nat'l Broad. Co.*, 187 Cal. App. 3d 1463, 1483 (1986) (summary judgment decision involving camera crew's intrusion to physical home and finding claim viable); *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989) (finding no intent to intrude where Veterans Administration believed in good faith it could access records based on prior consent and previous disclosure of

information); *Mauri v. Smith*, 324 Or. 476, 484 (1996) (finding intent was an issue for the jury); *Parnoff v. Aquarion Water Co*., 188 Conn. App. 153, 174 (2019) (on summary judgment concerning physical property dispute); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) (not discussing intent for intrusion upon seclusion claim); *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 950 (9th Cir. 2014) (imputing intent to violate an injunction); *Caraccioli*, 167 F. Supp. 3d at 1063 (distinguished above).

## VII.    GOODRX VIOLATED THE CMIA

To state a claim for violation of the CMIA, a plaintiff must allege a "provider of healthcare" "disclose[d] medical information . . . without . . . authorization" (*see* §§ 56.10 & 56.06) and/or did not "maintain[], preserve[] or store[]" medical information in a manner that "preserves [its] confidentiality" *See* § 56.101. GoodRx violated the CMIA by intentionally disclosing medical information, including prescriptions, diagnoses, and medical conditions, through tracking technology it incorporated on its platform without consent. ¶¶ 272-279. GoodRx makes several arguments why it did not violate the CMIA, none of which have merit.

First, GoodRx's claim that its simply not a "provider of healthcare" subject to the CMIA's requirements is inconsistent with the CMIA's plain language (GoodRx MTD at 10), which expressly defines "provider of healthcare" to include (1) businesses that are organized to "maintain[] medical information[,]" as well as (2) businesses that (regardless of organizational purpose) offer "software" that is "designed to maintain medical information" to "make the information available to an individual or a provider of healthcare" so that the individual can "manage their information, or for the diagnosis, treatment, or management of a medical condition[.]" *See* § 56.06; *see also In re Blackbaud, Inc., Customer Data Breach Litigation,* 2021 WL 3568394, at *8 (D.S.C. Aug. 12, 2021) (explaining CMIA's incorporation of businesses that employ "software" is to "ensure that the CMIA would apply ***broadly*** to all businesses that maintain medical information "whether or not the business was organized for that purpose") (emphasis added). As GoodRx's entire business (and consumer-facing platform) is comprised of software designed to maintain prescriptions, symptoms, and conditions so users can obtain treatment (e.g., telehealth or prescriptions discounts), it is a "healthcare provider"

under the CMIA.  *See In re Blackbaud, Inc., Customer Data Breach Litigation*, 2021 WL 3568394, at *8 (company offering software that collects medical information qualified as provider of health care).

*Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom.*, *Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022), which GoodRx relies on, does not support its position here.  There, plaintiff sought to enforce the CMIA against a third party hired by her health care to provide copies of her medical records to her counsel.  *Oddei*, 2022 WL 17538747, at *2.  The Ninth Circuit found that all allegations about the defendant providing "software or hardware" to actual consumers were conclusory.  *Id.* This is nothing like the GoodRx Platform, which is a comprehensive consumer-facing software that maintains medical information so that consumers can receive medical treatment and track prescriptions and their prices.  *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573 (N.D. Ill. 2022), also cited by GoodRx, is equally distinguishable, as it only evaluated whether defendants—who were a "insurance brokerage, risk management, and HR & benefits consulting company" and a "third-party administrator and claims manager"—were "organized" for the purpose of maintaining medical information and did not consider the CMIA's separate "software" provision.  *Id.*, at *13.

Second, GoodRx's argument that the information it disclosed is not "medical information" (GoodRx MTD at 11) overlooks the CMIA's actual language, which includes any "individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment."  Cal. Civ. Code § 56.05(i).  Plaintiffs allege GoodRx disclosed actual medication conditions, (¶¶ 20, 25, 154, 188), treatment (¶¶ 5, 17, 25), and prescription information (¶¶ 17, 25, 33, 39, 43, 51, 58)[30] that were in its possession.  These allegations are sufficient to state a claim for violation of the CMIA.  *See Regents of Univ. of California*, 2023 WL 3316766, at *4 (accepting allegations of similar health data transmitted through pixel technology to constitute "medical information" for purposes of the CMIA).

---

[30] The prescriptions Plaintiffs searched are medical information because they are "derived from a provider of health" regarding "treatment." Indeed, GoodRx itself admits that the information it disclosed was in fact users' actual "prescription information." ¶ 198. Its new spin that its now "just the name of a drug" anyone could search is inconsistent with this admission. GoodRx MTD at 12.

Third, GoodRx's argument that the health data it disclosed cannot be "medical information" because users input the information into its platform themselves is wrong. This manufactured limitation is found nowhere in the CMIA. *See Regents of Univ. of Cal.*, 2023 WL 3316766, at *4 (sustaining CMIA claim where plaintiff "pleaded that she entered medical information, including information relating to her heart issues and high blood pressure, into the patient portal"). While GoodRx relies on *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) for this proposition, in that case plaintiff generally told his employer he "called off sick" and was going to make an appointment with an unspecified "physician." *Id.* These general statements do not reflect any actual condition or treatment (like a prescription), and therefore did not qualify as "medical information" *Id.* This is nothing like the specific health information GoodRx disclosed about users' medical conditions and prescription information.[31] GoodRx's brief reference to *Smith*, 262 F. Supp. 3d at 955 is also unhelpful, given that *Smith* did not evaluate the CMIA's definition of "medical information."

Lastly, GoodRx's argument that the medical information at issue is not "individually identifiable information" overlooks Plaintiffs' allegations. Plaintiffs specifically allege this data is transmitted with, users' names and emails when input by the user (¶ 5) and that—even when this information is not provided—users' medical information is transmitted with persistent identifiers (akin to a SSN) linked to the individual. Thus, this data is in fact "individually identifiable." *See* Cal. Civ. Code § 56.06(b) (explaining "individually identifiable" is any information that "includes or contains any element of personal identifying information sufficient to allow identification of the individual"); *Doe*, 2023 WL 3316766, at *4 (holding data is "medical information" where plaintiff alleges "plausible means by which her information could be matched to her . . ."). *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014) (cited by GoodRx) does not contest this, but merely held the disclosure of names and identifiers without medical information (like Plaintiffs allege here) is not enough to constitute "medical information" under the CMIA. *Id.*

---

[31] *Smith*, 262 F. Supp. 3d at 955 is also distinguishable for the reasons discussed in Section III & IV.A.

## VIII.   PLAINTIFFS HAVE SUFFICIENTLY PLED THEIR NEGLIGENCE CLAIM

A claim for negligence under California law requires the plaintiff to allege a duty, breach, causation, and injury.  *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d at 799.  Courts routinely recognize that entities who are entrusted with handling and storing sensitive information—like GoodRx—have a duty to "handle [this] . . . information with care[,]" including taking "precautions to constrain . . . access to protect the plaintiffs' privacy." *Id.* (holding Facebook had and violated duty to protect users' sensitive information by sharing it with third parties); *Witriol v. LexisNexis Grp.*, 2006 WL 4725713, at *8 (N.D. Cal. Feb. 10, 2006) (holding defendants, as "custodians" of plaintiffs' information, have a duty not to "sell and/or disclose" that information); *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021) (recognizing entity acting as "custodian" of "sensitive personal . . . information" has a "duty of reasonable care" to safeguard this information); *Stasi*, 501 F. Supp. 3d at 914 (recognizing "common law duty" of "companies that possess personal and medical information" to "protect[] the confidentiality of medical information") (collecting cases).  Here, GoodRx breached this duty by disclosing Plaintiffs' and Class members' health information to third parties (¶ 394), which directly caused Plaintiffs' damages, including an invasion of their privacy (¶¶ 177, 395-396).  *See In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) (recognizing a plaintiff can recover damages for "privacy injury stemming from the unauthorized sharing of their private medical information" in a negligence action).  Accordingly, Plaintiffs state a claim for negligence.  None of GoodRx's arguments support dismissal of Plaintiffs' negligence claims.

First, GoodRx argues Plaintiffs lack injury because they do not allege "their own information was misused in a specific way" or that their data was the "subject of any disclosure." MTD at 10.  But this plainly overlooks Plaintiffs' allegations, which make clear *every* GoodRx user who input heath information on the GoodRx Platform had their data disclosed by GoodRx to third parties for advertising and analytics—a clear misuse of that data—as a result of its incorporation of tracking technology on these websites and apps.  ¶¶ 113-114.  As Plaintiffs are squarely within the users whose data was disclosed (¶¶ 26, 33, 38, 44, 52, 58) they have suffered injury, including a violation of their

right to privacy.  *See*, *e.g.*, *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d at 1142 (recognizing plaintiffs can recover damages from privacy violations caused by the "unauthorized *sharing* of their private medical information" in an action for negligence) (emphasis added); *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d at 799 (recognizing privacy damages arising from providing "access" to sensitive information).[32]

The cases GoodRx relies upon are inapposite, involving only speculative injury not analogous to the injury alleged here, such as "future risk" of identity theft in a data breach action.  *See* GoodRx MTD at 10 (citing *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012) (evaluating future risk of identity theft or fraud from disclosure of card information and log-in credentials in data breach action); *In re iPhone Application Litig.*, 2011 WL 4403963, at *4–5 (N.D. Cal. Sept. 20, 2011) (finding allegations that "iDevices" exploit personal information were too speculative to establish injury because plaintiffs failed to allege "which iDevices they used" or "which Defendant (if any) accessed or tracked their personal information")).

Second, GoodRx claims it has somehow "qualified" or limited its "duty"[33] to protect Plaintiffs' private medical information through purported "disclosures" in its "Privacy Policy." GoodRx MTD at 22.  This argument fails on multiple fronts.  As an initial matter, GoodRx has never "disclose[d]" its sharing of medical information with Advertising and Analytics Defendants (*see* Section III) and its privacy policies cannot include obligations that are never mentioned in the first instance.  But even if this type of egregious conduct *was* mentioned, courts are clear that a party cannot limit a legal duty

---

[32] Plaintiffs are not required to allege additional "misuse[]" (GoodRx MTD at 10) beyond the disclosure of this clearly private information.  *See In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d at 1142.  But in any event, Plaintiffs allege GoodRx did use GoodRx users' medical data for advertising and analytics.  ¶¶ 61, 63.

[33] GoodRx's suggestion that Plaintiffs base its duty on "pre-2019 representations in GoodRx's Privacy Policy" is wrong.  GoodRx MTD at 22.  GoodRx's duty arises by virtue of its receipt and storage of Plaintiffs' health information.  The cases it cites do not evaluate the existence of a duty in this context. *See* GoodRx Mtn at 22 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514-25 (1994) (evaluating whether contracting entity has a tort obligation not to interfere with the agreement); *Stoops v. Abbassi*, 100 Cal. App. 4th 655, 657 n.10 (2002) (explaining contract damages do not include emotional distress)).

like this one through extraneous documents. *See City of Santa Barbara v. Superior Ct.*, 41 Cal. 4th 747, 777, (2007) ("public policy generally precludes enforcement of an agreement that would remove an obligation to adhere to even a minimal standard of care"); *see In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d at 800 (holding Facebook's "exculpatory clauses" cannot waive liability for its "gross negligence" in doing "essentially nothing to safeguard users' information."). Unsurprisingly, GoodRx cites no legal authority for this novel interpretation of the law.

Third, GoodRx claims the economic loss doctrine bars Plaintiffs' privacy-based damages. This is wrong. *See Medoff v. Minka Lighting, LLC*, 2023 WL 4291973, at *8 (C.D. Cal. May 8, 2023) (holding "privacy injury" as a result of a party's negligence is not barred by the economic loss rule); *Mehta*, 2021 WL 6882377, at *6 (same); *In re Ambry Genetics Data Breach Litigation*, 567 F. Supp. 3d at 1142 (same); *Stasi*, 501 F. Supp. 3d 898 (explaining that because "the statutory protection afforded to medical information is rooted in common law duties" that this is a "common law exception" to the "economic loss rule").[34] The cases GoodRx cites do not evaluate this type of privacy-based injury. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1064 (evaluating whether "iDevice resources" like "battery life", "risk to . . . security", and "disappointed expectations from [a] commercial transaction" constitute negligence damages); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 973 (S.D. Cal. 2014) (not evaluating privacy-based personal injury); *In re Sony*, 903 F. Supp. 2d at 961–62 (same); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8-9 (N.D. Cal. Mar. 5, 2021) (same); *In re Google Android Consumer Privacy Litigation*, 2013 WL 1283236, at *12–13 (N.D. Cal. Mar. 26, 2013) (evaluating Google's "duty" to protect Plaintiffs from third-party app "spyware" as creator of the App Store).

---

[34] As this authority makes clear, Plaintiffs are not required to separately plead a "special relationship" exception (GoodRx MTD at 22-23) to the economic loss doctrine because (1) the damages they claim are non-economic in nature; (2) GoodRx's common law duty to safeguard medical information is a separate "exception" to the economic loss doctrine. But in any event, a special relationship exists here by virtue of GoodRx's status as custodian of health data.

Lastly, GoodRx admits that under California law negligence *per se* is an "evidentiary presumption that allows a plaintiff to rely on the violation of a statute" to establish duty and breach. *See* GoodRx MTD at 23 (citing Cal. Evid. Code § 669). Plaintiffs are entitled to this evidentiary presumption by virtue of GoodRx's violations of (at least) the California Constitution, CIPA, and the CMIA[35], and—because Plaintiffs allege all remaining elements of a negligence claim— dismissal is not warranted. *See Mehta,* WL 6882377, at *6 (sustaining negligence claim premised on "negligence per se theory" stemming from defendant's violation of the "constitutional right to privacy"); *In re Ambry Genetics Data Breach Litig.,* 567 F. Supp. 3d at 1143 (refusing to dismiss negligence claim premised on *per se* violations of the FTC Act and HIPAA). GoodRx relies on two cases where, unlike here, plaintiff failed to allege duty *or* violation of an underlying statute. *See Mohandas v. Wells Fargo Bank, N.A.*, 2022 WL 17254847, at *20 (C.D. Cal. July 5, 2022) (dismissing negligence for failure to allege lender had a duty or, alternatively, violated underlying statute); *Vann v. Aurora Loan Servs. LLC*, 2011 WL 2181861, at *3 (N.D. Cal. June 3, 2011) (same).

## IX. PLAINTIFFS ADEQUATELY ALLEGE CLAIMS UNDER THE UCL & CLRA

A CLRA claim requires 1) a misrepresentation; (2) reliance/causation; and (3) damages. *In re Sony PS3 Other OS Litig.*, 551 F. App'x 916, 920 (9th Cir. 2014). A UCL "fraud" claim requires "conduct likely to deceive," reliance, and statutory standing. *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014). Plaintiffs plausibly allege these claims.

### A. Plaintiffs Pled Their Fraud Claims in Conformity With Rule 9(b)

All Rule 9(b) requires is enough facts to "give defendants notice of the particular misconduct [so] . . . they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Here, Plaintiffs plead their frauds claims against GoodRx in conformity with Rule 9(b) because they identify the "who" (GoodRx ¶ 96), the "what" (misrepresented and otherwise failed to disclose its sharing of health data ¶¶ 102-112), the "when" (each time it provided its service and goods since, at least, 2017 ¶¶ 3-7, 97-101), the

---

[35] It is irrelevant whether these statutes do or do not contain a private right of action. *In re Ambry Genetics Data Breach Litig.,* 567 F. Supp. 3d at 1143 (explaining negligence per se claims do not fail solely because underlying statute may not contain a private right of action).

"where" (on its website and mobile app ¶ 2), and the "how" (by claiming it did not engage in this conduct and displaying the HIPAA seal ¶¶ 9-15) sufficient to provide "adequate notice of what [Defendants are] alleged to have done[.]" *Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010).[36]

Further, courts apply a less-stringent standard of Rule 9(b) with respect to omission-based claims because "a plaintiff [] will not be able to specify the time, place, and specific content of an omission." *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016); *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (same); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) (same). Plaintiffs allege that all Defendants failed to disclose their surreptitious disclosure and/or interception of health data through the GoodRx Platform. ¶¶ 350-352. This is sufficient to plead an omission claim in conformity with Rule 9(b). *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1111–15 (holding that the plaintiffs had "stated a claim for violation of the UCL fraud-prong based on Defendants' alleged omissions" where the defendant allegedly "intercepts private and confidential communications").

Defendants rely exclusively on cases where these types of specific allegations were lacking, such that they are wholly inapplicable here. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (finding allegations that defendant generally engaged in "fraudulent sales practices" without further detail insufficient to satisfy Rule 9(b); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (finding Rule 9(b) allegations lacking where plaintiff alleged "suspicions" of fraudulent scheme without any facts)); *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 964 (2002) (no allegations defendant participated in scheme to defraud or otherwise harmed plaintiff).[37]

---

[36] These allegations, of course, contain more detail in the actual Complaint.

[37] Criteo's contention that the complaint contains no allegations as to their conduct is wrong. *See* Section I. *Clark v. InComm Fin. Servs.*, 2023 WL 3149284, at *6 (C.D. Cal. Mar. 16, 2023) (which Criteo relies on (Criteo MTD at 22)) is a data breach case where plaintiff failed to allege how unspecified data security deficiencies caused the actual disclosure of plaintiff's data. This has no relevance here. And *Hammerling* (615 F.Supp.3d at 1079-80), did not address whether plaintiff did (or did not) plead in conformity with Rule 9(b) but addressed reliance.

## B. Plaintiffs Plausibly Allege Reliance/Causation

To plead reliance, a plaintiff need not "allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Kwikset Corp. v. Super Ct.*, 51 Cal. 4th 310, 327 (2011); *see also Phillips v. Apple Inc.*, 2016 WL 1579693, at *6 (N.D. Cal. Apr. 19, 2016) (same). Rather, "[a]t the motion to dismiss stage, 'actual reliance . . . is inferred from the misrepresentation of a material fact." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1021 (9th Cir. 2020); *see also Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 921 (N.D. Cal. 2012) (explaining there is a "presumption" of reliance when a misrepresentation is material). A plaintiff "only need[] establish it to be plausible that a 'reasonable man would attach important to [the] existence or nonexistence [of the misrepresentation] in determining his choice of action[.]'" *Donohue*, 871 F. Supp. 2d at 921.

With respect to omissions[38], a plaintiff satisfies the elements of reliance and/or causation by alleging that had the omitted information been disclosed, the plaintiff would have been aware of it and behaved differently. *See In re Anthem, Inc. Data Breach Litigation*, 2016 WL 3029783, at *35; *see also In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (same). To meet this standard, a plaintiff must merely plead a "plausible method of disclosure." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (accepting allegations that if Ford disclosed the defect, plaintiffs would have become aware of it); *see also Flores-Mendez v. Zoosk, Inc.*, 2022 WL 357500, at *4 (N.D. Cal. Feb. 7, 2022) (finding presumption of reliance for omission-based claims).

Here, Plaintiffs allege that the disclosure and interception of their health data is material because they would not have used or purchased[39] GoodRx's services and products had they known how their information would be used and disclosed. ¶¶ 341, 355. Plaintiffs further allege several "plausible method[s]" of disclosure, namely, on its website homepages (¶ 10), through its CEO's

---

[38] Defendants had a duty to disclose the omitted information because they had exclusive knowledge of the tracking technology that intercepted Plaintiffs' data, they actively concealed this information, and otherwise made "misleading" disclosures. *See In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1229 (N.D. Cal. 2014); *see also* Sections II & III.

[39] Plaintiffs Jane Doe and Jane Doe II allege they would not have purchased or would have paid significantly less for GoodRx's services and products had they known their health data would be disclosed and intercepted. ¶¶ 341, 355.

public statements (¶ 11), and at any point during the process in which Plaintiffs obtain GoodRx's goods and services. ¶¶ 98-101 These allegations are distinguishable from the ones addressed in *Phillips*, 2016 WL 1579693, at *8, which GoodRx relies on, where plaintiffs only "plausible method" of disclosures was "advertising" that Plaintiffs did not describe in any detail (i.e., what advertising and when they took place, etc.). Plaintiffs here plausibly allege reliance and causation.[40]

Meta's contention that Plaintiffs fail to establish reliance on its conduct misses the mark, as it relies exclusively on cases involving affirmative misrepresentations and not material omissions, which is the basis for liability against Advertising and Analytics Defendants. *See Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016) (affirmative misrepresentations); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219–20 (N.D. Cal. 2014) (same); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1045–46 (N.D. Cal. 2021) (same) *In re Google, Inc. Privacy Policy Litigation.*, 58 F. Supp. 3d 968 (same). Plaintiffs plead reliance for omission-based claims for the reasons described above.

### C. Plaintiffs Allege UCL Standing and Damages

To state a UCL claim, a plaintiff must also allege they sustained "economic injury." *Calhoun*, 526 F. Supp. 3d at 636. Here, Plaintiffs allege economic injury because they "suffered a loss of their personal information." *See Calhoun*, 526 F. Supp. 3d at 636 ([T]he Ninth Circuit and a number of district courts, including this Court, have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *see also Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (same); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information."). Additionally,

---

[40] Plaintiffs' allegations are also distinguishable from those in *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014), also cited by GoodRx, where Plaintiff did not allege when they purchased defendant's services or when they discovered defendant's conduct for their omission-based claims. Plaintiffs allege this here. ¶¶ 23, 29, 36, 41, 47, 55, 205.

Plaintiffs Jane Doe and Jane Doe II establish economic injury[41] because they allege they would not have paid for GoodRx's services and products given Defendants' conduct. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966 (9th Cir. 2018) (accepting overpayment theory for UCL); *see also In re Morning Song Bird Food Litig.*, 2013 WL 12144051, at *5 (S.D. Cal. Sept. 30, 2013) (benefit of the bargain theory for CLRA). Either of these theories are independently sufficient to establish economic injury,[42] and also establish damages for Plaintiffs' UCL and CLRA claims. *Id.*

GoodRx's contention that Plaintiffs must allege they had an actual present intention to sell their data is incorrect. *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d at 784, 804 did not hold this. Rather, the court found that plaintiffs lacked UCL standing because they failed to allege their data (i.e., photos, videos, views expressed on Facebook) either (1) had "independent economic value to an individual user" or (2) that there was a market for this information. *Id.* The same is not true here. Plaintiffs allege health data has inherent value both to the individual and that there is an established market of third parties who are willing (and do) purchase this type of information. *See* ¶¶ 178-79 357-358; *see also Brown*, 2023 WL 5029899, at *1 (finding UCL standing on summary judgment where "Plaintiffs have shown that there is a market for their browsing data").

The other cases Defendants cite are: (1) outdated, significantly predating both *Brown* and *Calhoun*; (2) involve information with less readily apparent or inherit "value" (e.g., such as financial account data, which individuals obviously would never "sell" as it would be used for fraud); and/or (3) cases where "value" allegations like those above were missing in the complaint. *See In re Google Android Consumer Privacy Litigation*, 2013 WL 1283236, at *4, 8 (geolocation data, app selections, demographic information); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930-33 (N.D. Cal. 2015) (general browsing data through cookies); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (credit card information in data breach

---

[41] GoodRx's contention that Plaintiffs who assert a CLRA claim are required to affirmatively allege "value" in "their data" (GoodRx MTD at 6) lacks legal support. GoodRx MTD at 6.

[42] Plaintiffs also allege economic injury under California law because they are entitled to Defendants' unjustly earned profits from their misappropriation of Plaintiffs' health information. *See* Section XI.

case); *Gardiner*, 2021 WL 2520103, at *8 (same); *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) (same); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 540-41, & n.13 (2022) (data breach involving financial data, driver's licenses, and some medical information, such as medical record number and health insurance information); *In re iPhone Application Litig.*, 2011 WL 4403963, at *5, 10 (geolocation data and demographic information); *Gonzales*, 305 F. Supp. 3d at 1093 (same); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (same); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (driver's license information); *Katz-Lacabe*, 2023 WL 2838118, at *8 (lacking allegations of any market for at-issue data and arguing, instead, that the disclosure of *any* "personal information without consent constitutes economic injury"); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 839–40 (N.D. Cal. 2020) (voice recordings); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), *aff'd,* 380 F. App'x 689 (9th Cir. 2010) (social security number on stolen laptop); *Campbell*, 77 F. Supp. 3d at 849 (content of Facebook messages); *Bass v. Facebook Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) (no allegations of market or inherit value to plaintiff in Facebook content disclosed in data breach); *Wesch v. Yodlee, Inc*., 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021) (conceding no market exists to sell their financial data).

Lastly, that GoodRx provides **some** services for "free" does not change that Plaintiffs allege loss of money or property. Unsurprisingly, GoodRx relies on over decade-old precedent for this proposition (GoodRx MTD at 8) (citing cases)[43], including an outdated opinion by Judge Koh who years later rendered the *Calhoun* decision **expressly recognizing** value in one's own personal data and finding UCL standing despite that services were free. *Compare In re iPhone Application Litig.*, 2011 WL 4403963, at *10, 14 (Koh, J.) (claiming loss of "personal information" is not economic injury) *with Calhoun*, 526 F. Supp. 3d 605 (Koh, J.) (holding plaintiffs had UCL standing based on "loss of .

---

[43] *Rodriguez*, 2021 WL 2026726, at *8 is distinguishable because, like the above cases, it involved general browsing data not valuable health information. And *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715, 717 (N.D. Cal. 2011) is outdated, with several courts rejecting its claim that "as a matter of law" a plaintiff who receives "free" services can never have UCL standing. *See*, *e.g.*, *Brown,* 2023 WL 5029899, at *1.

. . personal information" despite that browser was provided free-of-charge)*; see also Brown,* 2023 WL 5029899, at *1 (denying summary judgment as to plaintiffs' UCL claim based on argument Google's services are "free").

**D.** **Plaintiffs Allege "Unfair" and "Unlawful" Claims**

Contrary to Defendants' assertions, Plaintiffs' unfair and unlawful claims are not subject to Rule 9(b) because they are not premised on "fraudulent" conduct, but Defendants' (1) violations of other laws (i.e., "unlawful" conduct); and (2) violation of California policy against the disclosure and use of sensitive data without consent (i.e., "unfair" conduct). *See Castillo v. Seagate Technology, LLC*, 2016 WL 9280242, at *6 n.3 (N.D. Cal. Sept. 14, 2016) ("Plaintiffs' claims under the 'unlawful' and 'unfair' prongs of the UCL are held only to the ordinary pleading requirements of Rule 8."). Nor do either of these claims require a showing of reliance. *See Perkins*, 53 F. Supp. 3d at 1220 (sustaining UCL unlawful claim premised on common law without showing of reliance); *In re Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d at 1047 (sustaining claims under unlawful and unfair prongs based on violations of HIPAA and other California consumer protection statutes); *Kina v. United Air Lines, Inc.,* 2008 WL 5071045, at *10 (N.D. Cal. Dec. 1, 2008) (sustaining UCL claim based on CMIA and HIPAA violations).

Here, Defendants' conduct is unlawful because it violates each of the statutes and laws referenced herein. *See Perkin.*, 53 F. Supp. 3d at 1220. Defendants' conduct is "unfair" as it violates California's public policy of protecting fundamental privacy rights, including protecting against the unlawful collection and misuse of data without consent, and is otherwise unethical and injurious to consumers.[44] *See Svenson v. Google Inc.*, 2015 WL 1503429, at *9 (N.D. Cal. Apr. 1, 2015) (holding

---

[44] This conduct satisfies both the "tethering" and "balancing" test. *Cappello v. Walmart Inc.*, 394 F. Supp. 3d 1015, 1024 (N.D. Cal. 2019) (finding balancing and tethering test met where disclosure of users' video data breached defendant's own policies and "contravenes California's well-established public policy of protecting consumer data"); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (finding defendant's privacy violations satisfy both "balancing test" and "tethering test" where defendant's conduct violated "California's public policy of 'protecting customer data'"). *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (cited by Meta) is not applicable because, there, the Court found on "balance" Apple's conduct of charging

---

misuse of plaintiffs' data is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at \*10 (N.D. Cal. Feb. 2, 2021) (holding defendant's clandestine collection of consumer data violated California's public policy of protecting fundamental privacy rights and there is no corresponding benefit under the balancing test).

Criteo (again) contends Plaintiffs fail to allege it engaged in any conduct. Criteo MTD at 22. This argument (again) overlooks Plaintiffs actual allegations.[45] And Criteo's and Meta's claim that "unfair" conduct requires pleading an anti-trust violation or otherwise anti-competitive conduct is simply a misrepresentation of the law. *See* Criteo MTD at 22 (citing *Davis v. HSBC Bank*, 691 F.3d 1152, 1169-70 (9th Cir. 2012) (explaining unfair conduct also includes conduct that violates California policy)); Meta MTD at 24 (citing *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 896 (N.D. Cal. 2022) (same)).[46]

## X. PLAINTIFFS PLAUSIBLY ALLEGE A GBL CLAIM

To establish a prima facie claim under GBL § 349, a plaintiff must plausibly allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. California Nat. Living, Inc.*, 2019 WL 1046662, at \*1 (S.D.N.Y. Mar. 5, 2019). A defendant's conduct is materially misleading if it would mislead "a reasonable consumer acting reasonably under the circumstances." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015).

Here, there can be no doubt that the secret disclosure and interception of Plaintiff E.C.'s health data from a consumer-facing platform is "directed at consumers" (e.g., its used by millions of individuals) or that the secret collection and use of statutorily protected heath data without

customers twice for repeat downloads was not unfair since Apple provided a "clear provision warning customers to download a song only once." There are no disclosures here.

[45] *Degla Grp. for Invs., Inc. v. Boconcept USA, Inc.*, 2010 WL 11509053, at \*11 (C.D. Cal. Sep. 30, 2010) and *Morfin v. Accredited Home Lenders, Inc.*, 2010 WL 391838, at \*7 (S.D. Cal. Jan. 26, 2010) are distinguishable because, there, plaintiffs did not allege any wrongful conduct by that defendant.

[46] The *Hammerling* decision (615 F. Supp. 3d at 1094), respectfully, did not appreciate that although conduct may not be fraudulent, it can still be unfair when it involves the interception of sensitive data regardless of what a party did or did not represent. *See In re Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d at 1047 fraud but sustaining unfair claims).

authorization is "deceptive." *See Anonymous v. CVS Corporation*, 728 N.Y.S.2d 333, 340 (S.D.N.Y. Mar. 1, 2001) (finding surreptitious resale of "prescription information" without providing "notice" to be deceptive conduct); *Nick v. Target Corp.*, 2017 WL 10442061, at *4 (E.D.N.Y. Sept. 13, 2017) (finding use of data for an undisclosed purpose deceptive under GBL).

Plaintiff E.C. alleges he was injured as a result of this conduct because the surreptitious collection of actual medical information is a privacy violation and, therefore, a compensable harm under GBL § 349. *See Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t cannot be doubted that a privacy violation claim … may be stated under GBL § 349 based on nonpecuniary injury…"); *Bose v. Interclick, Inc.*, 2011 WL 4343517, *9 (S.D.N.Y. Aug. 17 2011) ("[C]ourts have recognized … privacy violations as injuries for purposes of Section 349"); *Anonymous*, 188 Misc. 2d 616 (deprivation of privacy interest in medical information cognizable injury); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016) (compromise of medical data a cognizable injury under GBL § 349); *McDonald*, 385 F. Supp. 3d 1022 (Donato, J.) (finding harm pursuant to GBL § 349 based on disclosure of "identifiable or associable" data). Thus, Plaintiff E.C. alleges an actionable GBL § 349 claim.

While each Defendant challenges Plaintiff E.C.'s claim on different grounds, none of them pass judicial scrutiny. For instance, Google's contention that Plaintiff E.C.'s GBL claim is subject to Rule 9(b) is dead wrong. *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439 (S.D.N.Y. 2005) ("*Pelman II*") ("[a]s the Second Circuit specifically noted […] a GBL § 349 claim for deceptive practices is not subject to Rule 9(b) pleading requirements"); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239-40 (S.D.N.Y. Feb. 21, 2020) ("Plaintiffs are not required to meet the heightened pleading requirements of [F.R.C.P. Rule] 9(b) for their claims); *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 359 (E.D.N.Y. 2014) (quoting *Pelman II*, *508, 511) (2d Cir. 2005) (collecting cases). But even if true, Plaintiff E.C. pleads his claim in conformity with Rule 9(b). *See* Section IX.A.

Similarly, Criteo's claim that its conduct is not "consumer-facing" (Criteo MTD at 24) misses the mark. The inquiry is not whether **defendant** is "consumer-facing" but that the **conduct** is

"consumer-oriented." Criteo's technology that deceptively intercepts Plaintiffs' and other consumers data is incorporated in a consumer-facing platform used by millions of individuals. Nothing more is required. *See Kapsis Am. Home Mortg. Servicing Inc.*, 923 F.Supp.2d 430, 449 (E.D.N.Y. 2013) (explaining this element is "construed liberally" and only requires "conduct that potentially affects similarly situated consumers."). The case Criteo cites for this argument is off point, involving the manufacturer of a defective device and not an entity who intentionally intercepts health data through its technology on a consumer-facing platform. *See Dziegielewski v. Advanced Intergrative Wellness, LLC*, 2010 WL 4392917 (Sup. Ct. Nassau Ctny. Oct. 22, 2010).[47]

Meta's contention that conduct did not occur in New York is also wrong. Meta's reliance on *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324–25 (2002) fails, given that it (1) is often criticized as "creating questionable results" (*Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill.2d 100 (Sup. Ct. Ill. Aug. 18, 2005)) and (2) because it merely held the plaintiff there did not experience deceptive conduct in New York but, rather, in Florida where plaintiff resided. The same is not true here, where Plaintiff E.C. used the GoodRx Platform and was subsequently injured in New York where he lives. The other cases Meta relies on are distinguishable on the same ground. *See Callaghan v. BMW of North America, LLC*, 2014 WL 1340085 (N.D. Cal. Apr. 2, 2014) (transaction at issue occurred in New Jersey); *Makaeff v. Trump University, LLC*, 2011 WL 1872886 (S.D. Cal. May 16, 2011) (conduct at issue occurred in Florida and Pennsylvania).

Criteo, Google, and Meta's argument that Plaintiffs fail to allege deceptive or materially misleading conduct also fails. As described above, under the GBL the wrongful misappropriation of health data without notice is itself a deceptive act.[48] *See Anonymous*, 188 Misc.2d at 627.[49]

[47] Criteo's contention that Plaintiff E.C is trying to establish "vicarious liability" is a misnomer. *See* Criteo MTD at 24 n.19. Criteo is liable for its own, actual conduct.

[48] This also rebuts Google's claim (without legal authority) that it had no "duty" to disclose its data interception practices. An entity that misappropriates health data without notice engages in deception. *Anonymous*, 188 Misc.2d at 627.

[49] GoodRx's conduct is also deceptive as its directly contrary to its own representations. *See* Sections III & IX; *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *15 (S.D.N.Y. Mar. 23, 2021) (finding misleading claims in privacy policy deceptive under GBL); *Miller v. Syracuse Univ.*, 2023

Defendants' cases are inapposite, involving conclusory allegations, cases where the conduct was actually disclosed, or less deceptive conduct than the disclosure of medical information without notice. *See Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687, 687 (1994) (disclosure of conduct alleged); *Rodriguez v. Cheesecake Factory Inc.*, 2017 WL 6541439, at *3 (E.D.N.Y. Aug. 11, 2017) (same); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (claim premised on advertisement that ran nine months *after* plaintiff filed suit); *Martin v. Meredith Corp.*, 2023 WL 2118074, at *6 (S.D.N.Y. Feb. 17, 2023) (conclusory allegations of unspecified "scheme" to collect video-viewing data); *Tromble v. W. Digital Corp.*, 2021 WL 2165796, at *2 (N.D. Cal. May 27, 2021) (deployment of one type of hard drive technology over another not inherently deceptive); *Cardoso v. Wells Fargo Bank, N.A.*, 2022 WL 4368109, at *8 (S.D.N.Y. Sep. 20, 2022) (finding repackaging of negligence allegations deficient to establish actually deceptive conduct).

Lastly, Defendants' assertion that Plaintiff E.C. fails to allege damages is unsupported. As described above, the collection, use, or dissemination of health data is a privacy violation and viable harm under the GBL. Unsurprisingly, Defendants rely exclusively on cases involving different types of data or different theories of injury. *See Mount v. PulsePoint, Inc.* 2016 WL 5080131, at *5 (S.D.N.Y. Aug. 16, 2016) (involving anonymized browsing data); *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S. 3d 817, 823 (2020) (alleging future risk of harm in data breach action); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at * 4 (C.D. Cal. July 24, 2019) (alleging injury by "receipt of advertising").

## XI.  PLAINTIFFS PLAUSIBLY ALLEGE UNJUST ENRICHMENT

The Ninth Circuit has confirmed the viability of an unjust enrichment claim as an independent quasi-contract claim. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753, 762 (9th Cir. 2015); *Thakur v. Betzig*, 2019 WL 2211323, at *2 (N.D. Cal. May 22, 2019) (Donato, J.). It has also confirmed that a plaintiff is entitled to disgorgement of unjustly earned profits regardless of whether a defendant's actions "caused a plaintiff

WL 2572937, at *20 (N.D.N.Y. Mar. 20, 2023) (same); *Ohanian v. Apple Inc.*, 2021 WL 5331753, at *2 (S.D.N.Y. Nov. 16, 2021) (statements that information would be kept "private" actionable under GBL where defendant shared that information with third parties).

to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 600; *see also Fraley v. Facebook, Inc.,* 830 F. Supp. 2d 785, 790 (N.D. Cal. 2011) (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution").

Here, Plaintiffs allege Defendants received, used, and retained health data (and profits therefrom) without their consent, the retention of which is unjust.[50] This is sufficient to plead unjust enrichment. *See In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 600 (holding "Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" obtained without consent); *see also In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1159 (N.D. Cal. 2021) (sustaining unjust enrichment claim where company collected and stored data without consent, the retention of which is an unjust benefit).

Defendants' suggestion that unjust enrichment requires pleading actual fraud in conformity with Rule 9(b) is unfounded. None of the cases Defendants cite support this proposition. *See Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989) (not foreclosing other theories of unjust enrichment); *Astiana*, 783 F.3d at 762 (same); *Goodwin v. Countrywide Home Loans, Inc.*, 578 F. App'x 688, 689 (9th Cir. 2014) (same). Plaintiffs allege that Defendants profited from collecting, sharing, and using Plaintiffs' valuable data, and did not obtain necessary consent to collect, share, and use the information as required by law. These allegations do not implicate (or require) pleading fraud. And in any event Plaintiffs' allegations that do implicate fraud are plead in conformity with Rule 9(b). *See* Section IX.A.

Defendants' additional challenges to Plaintiffs' unjust enrichment claims similarly fail. Criteo's claim that it did not engage in an actionable wrong ignores its actual interception and use of Plaintiffs' health data. *See* Section I. The cases it cites are not applicable here. *See* Criteo MTD at 13

---

[50] Plaintiffs Jane Doe and Jane Doe II also conferred an unjust benefit in the form of actual monetary payment, which are proceeds that can be traced to all Defendants. *See City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 478 (2d Dist. 2022) ("To confer a benefit . . . it is not essential that money be paid directly to the recipient by the party seeking restitution.").

(citing *Sumotext Corp. v. Zoove, Inc.*, 2017 WL 2774382, at *8 (N.D. Cal. June 26, 2017) (not evaluating unjust enrichment); *Hammerling*, 615 F. Supp. 3d at 1096–97 (evaluating only fraud theory of unjust enrichment).

GoodRx, Google, and Meta's claim that there was no benefit conferred (or profits derived) also fails. This argument overlooks that economists (¶ 357), consumers (¶ 358), and Defendants (¶¶ 180-190) all recognize the health data at issue here has intrinsic economic value, and that Defendants themselves monetized this information (¶¶ 180-191, 195, 306).[51]  *See Calhoun*, 526 F. Supp. 3d at 636; *Brown*, 2021 WL 6064009, at *17. *In re Google Assistant Privacy Litigation*, 457 F. Supp. 3d at 834–35 (cited by Meta) is distinguishable because, there, plaintiffs did not attempt to show the voice recordings at issue had any "financial value." Plaintiffs do so here.  ¶¶ 178-191.  And GoodRx's classification of this data as mere "browsing data" that Plaintiffs should be grateful GoodRx misappropriated and disclosed in violation of HIPPA, CMIA, UCL, CLRA, CIPA, and various other laws in complete disregard for Plaintiffs' privacy rights is frivolous. GoodRx MTD at 21. As is its claim Plaintiffs received the "benefits" Defendants unjustly took because they received "targeted advertisements." GoodRx MTD at 21. This is a harm, not a benefit.

Lastly, Meta's claim that its Terms of Use for Facebook is a contract governing the use of the GoodRx Platform that precludes a claim for unjust enrichment is not only outrageous it is unprecedented. Each case it cites involves a direct contract between the parties for the actual service at issue. *See Day v. GEICO Cas. Co.*, 580 F. Supp. 3d 830, 841 (N.D. Cal. 2022) (express contract governing insurance arrangement that plaintiff herself sought to enforce); *Huynh v. Quora, Inc.*, 2019 WL 11502875, at *12 (N.D. Cal. Dec. 19, 2019) (finding there was "no question" of express contract covering conduct at issue).[52] Here, there is no contract between Plaintiffs and Meta, let alone one

---

[51] *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008), cited by GoodRx, is distinguishable. There, plaintiff alleged no actual injury (or standing) and the court found plaintiff has received the full benefit of the transaction for an insurance policy. And *Lebrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021) is inapplicable as defendant there paid for the very services (acting work) plaintiff claimed unjustly benefitted defendant.

[52] *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014), cited by Meta, sustained plaintiff's unjust enrichment claim.

covering the subject matter in question like the use of a different Defendant's platform. *See* Section III; *see also In re Google Location History Litigation*, 514 F. Supp. 3d at 1159 (finding Google's Terms of Service and Privacy Policy did not preclude an unjust enrichment claim where it did not disclose the conduct at issue); *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020) (explaining express contract only precludes quasi-contract claims where it covers "the same subject matter").

## XII. PLAINTIFFS ARE ENTITLED TO EQUITABLE RELIEF

Equitable relief (e.g., restitution, disgorgement, etc.) is proper whenever a plaintiff lacks an adequate remedy at law. *See Murphy v. Olly Pub. Benefit Corp.*, 2023 WL 210838, at *11 (N.D. Cal. Jan. 17, 2023).[53] At the pleading stage, a plaintiff is not required to "demonstrate" anything to seek equitable remedies. *Murphy*, 2023 WL 210838, at *11. Rather, all that is required are allegations that plaintiff "lack[s] an adequate remedy at law" or to plead equitable and legal remedies in the alternative. *In re Natera Prenatal Testing Litig.*, 2023 WL 3370737, at *10 (N.D. Cal. Mar. 28, 2023) (collecting cases); *Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) (holding a plaintiff may pursue equitable claims by either pleading "the relief she seeks is unavailable to her by law or by pleading her claims in the alternative"). Plaintiffs do so here. ¶¶ 320, 331, 360.

Defendants' citation to *Sonner v. Premier Nutrition Corp.* (and cases like it) does not support their position. 971 F.3d 834, 844-45 (9th Cir. 2020). There, after four years of litigation, the court dismissed plaintiff's claim for restitution—which sought a full refund of the purchase price—finding plaintiff had a "complete remedy" in the form of monetary damages. Indeed, Plaintiff had **conceded** her legal and equitable claims were for the same amount, such that there was no question a legal remedy was sufficient given it was "the same amount of money for the exact same harm[]" as plaintiff's equitable claim.

---

[53] Meta's claim that equitable relief is improper so long as there are any damages "available" (Meta at 21) misstates the law. It is not enough that damages be "available," they must actually be adequate to remedy each of the harms alleged. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021) ("simply have any remedy at law is not sufficient to foreclose equitable relief; instead, the remedy must be *adequate*.") (emphasis in original).

Given this narrow focus, *Sonner* rarely bars equitable claims at the pleading stage (*Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022) ("*Sonner* does not impose strict requirements at the pleading stage."); *Milstead v. General Motors LLC*, 2023 WL 4410502, at *8 (N.D. Cal. July 6, 2023) (same); *Johnson v. Trumpet Behav. Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[I]f a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case.")) and, when it does, it is only in the most extreme scenarios where it is obvious equitable remedies are not necessary to make plaintiff whole. Defendants, of course, rely exclusively on these latter types of cases. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 907 (N.D. Cal.2021) (explaining where plaintiff alleges loss of money from a vehicle defect that this is "exactly the type of injury" where monetary damages are "adequate" and restitution would be wholly duplicative); *Gardiner v. Walmart, Inc*., 2021 WL 4992539, at *7 (N.D. Cal. July 28, 2021) (finding data breach victims who allege out-of-pocket expenses and loss of time can be made whole through monetary damages); *Brooks v. Thomson Reuters Corp.*, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021) (finding plaintiffs had an adequate remedy at law because they pled the "same amount" of money for both restitution and legal claims); *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019) (plaintiffs failed to allege they lacked an adequate remedy at law or explain how legal damages for fraud and warranty claims would not make them "whole"); *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (plaintiff did not argue legal damages were "inadequate" and monetary damages would make plaintiff whole in action for product mislabeling).[54]

This is not one of those obvious scenarios. Invasions of privacy, like here, cannot be adequately rectified through monetary damages. *See In re Meta Pixel Healthcare Litigation*, 2022

---

[54] *Brooks* actually sustained Plaintiff's unjust enrichment claim finding it was a remedy at law—not an equitable claim. *Id.*, at *10. *Medoff v. Minka Lighting, LLC*, 2023 4291973, *12-13 (C.D. Cal. May 8, 2023) and *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 876 (N.D. Cal. 2021) are distinguishable because plaintiffs there did not plead or explain in briefing that remedies at law were inadequate. Plaintiffs do so here. *Brown v. Madison Reed, Inc.*, 2021 WL 3861457, at *12–13 (N.D. Cal. Aug. 30, 2021) is distinguishable because plaintiff in that case withdrew their unjust enrichment claim.

WL 17869218, at *17 ("The invasion of privacy triggered by the Pixel's allegedly ongoing disclosure of plaintiffs' medical information is precisely the kind of intangible injury that cannot be remedied by damages.") (citing cases). This is why courts routinely permit plaintiffs harmed in this manner to seek injunctive relief (*id.*; *Brooks*, 2021 WL 3621837, at *10), as well as other equitable remedies like restitution and disgorgement. *See Fraley*, 830 F. Supp. 2d at 790 (recognizing plaintiff whose information was misappropriated by Facebook "may properly seek restitution"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("[b]ecause California law recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" wrongly collected).

GoodRx's claim that Plaintiffs cannot seek any injunctive relief because it entered a "FTC resolution" (GoodRx MTD at 19) requiring *some* "corrective measures" fails. Not only does GoodRx concede this purported "resolution" was for "different claims under different legal theories" (GoodRx MTD at 18) but it has not shown how or why these "corrective measures" would fully encompass the forward-looking injunctive relief Plaintiffs seek here. Plaintiffs allege GoodRx's conduct—including its disclosure and interception of health data on the GoodRx Platform—continues through the present. And GoodRx does not argue it actually discontinued this conduct such as, for instance, deleting the Tracking Technology from the GoodRx Platform. Whether it actually plans to at some unspecified time in the future, or adopt other measures, are not proper issues for a motion to dismiss and are, instead, topics for discovery. Thus, Plaintiffs' request for injunctive relief remains properly targeted at ongoing conduct and not prior (or discontinued) actions like in the cases GoodRx cites. *See Microsystems, Inc. v. Microsoft Corp.,* 188 F.3d 1115, 1123 (9th Cir. 1999) (denying injunction where Microsoft asserted it had actually "discontinued" its practices); *Scripps Health v. Marin,* 72 Cal. App. 4th 324, 333 (1999) (no evidence defendant would engage in isolated assault and battery again).[55]

Lastly, GoodRx's assertion that non-restitutionary disgorgement is unavailable unless Plaintiffs paid GoodRx money is an inaccurate statement of the law. *See In re Facebook, Inc. Internet*

---

[55] GoodRx's claim that an injunction is improper because Plaintiffs can stop using its platform lacks legal support. So too is GoodRx's assertion that non-restitutionary disgorgement is unavailable because GoodRx did not "pay money for the data" (GoodRx at 20). This is not a legal requirement.

*Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020) ("California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss . . . Because California law recognizes a legal interest in unjustly earned profits, Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data.). Under Ninth Circuit precedent, to the extent Defendants unjustly profited from the misappropriation of Plaintiffs' data, Plaintiffs have an entitlement to those profits. The cases GoodRx cites are outdated and inconsistent with this precedent. *See Madrid v. Perot Sys. Corp.,* 130 Cal. App. 4th 440, 456 (2005) (considering availability under UCL only); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) (same).

## XIII. CHOICE OF LAW AND EXTRATERRITORIALITY ARE PREMATURE ISSUES

Defendants' choice or law and extraterritoriality arguments are premature. Courts routinely recognize these issues are properly considered "in the context of a class certification motion and not a motion to dismiss." *Fitzhenry-Russell v. Coca-Cola Co.*, 2017 WL 4680073, at *4 (N.D. Cal. Oct. 18, 2017); *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018) ("[T]he Court concludes that it would be premature to address those issues at this early stage of the proceedings."). Deferring ruling on class-related issues "[e]arly in the pleadings stage" is prudent because "neither the court nor the litigants are sure yet which facts and legal issues are in dispute." *Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at *14 (C.D. Cal. Dec. 29, 2014); *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013). Nevertheless, should the Court consider Defendants' arguments at this early stage, Plaintiffs address them below:

**CIPA.** GoodRx, Meta, and Criteo's argument that Plaintiffs CIPA claims implicate "extraterritorial application" or otherwise do not plead the data was "sent from or received in California" is wrong. *See Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (explaining CIPA applies when the "relevant conduct (recordings) took place in California" regardless of whether Plaintiffs are California citizens); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1026 (N.D. Cal. 2011) (explaining CIPA "expressly allow[s] an action be brought by 'any person' … without imposing any residency requirements"). Here, every Defendant but Criteo

is based in California, where they received and used the data at issue. ¶ 312. And Plaintiffs allege all Defendants designed, agreed, conspired, and effected the interception of Plaintiffs' communications in California. *Id.* This is sufficient at the motion to dismiss stage.[56]

**UCL.** Defendants' argument against the extraterritorial application of the UCL also fails. Under California law, "state statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." *In re iPhone 4S Consumer Litig.*, 2013 WL 3829653 (N.D. Cal. July 23, 2013) (collecting cases). Here, the underlying facts alleged in support of the UCL claims are centered upon the wrongful conduct of GoodRx, headquartered in California, and its wrongful course of dealings and agreements with the Advertising and Analytics Defendants, including Criteo.[57] Those allegations provide a sufficient nexus for California law to be applied to Criteo's conduct. *TRC Assocs. V. NuScience Corp.*, 2013 WL 6073004, at *5 (C.D. Cal Nov. 18, 2013) (UCL claim properly brought by Ohio-based plaintiff against Florida-based defendant where that defendant had "some role in the alleged conduct that took place in California").

**CMIA.** Criteo further argues that because "provider of healthcare" as used in the CMIA is limited to "California licensed health care providers" it can somehow only be asserted by "[]California Plaintiffs." Criteo MTD at 7. This defies logic. As described in Section VII, provider of healthcare is broader than Criteo claims. And even if "provider" *was* limited to California entities, it does not

---

[56] The cases Defendants cite are distinguishable. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 605 (N.D. Cal. 2015) (conducting choice of law analysis at class certification); *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. 2014) (not evaluating CIPA); *Hammerling*, 2022 WL 17365255, at *11 (accepting argument that Google's conduct occurs in California because that is where the "data at issue is 'collected, stored, and used'" but finding these allegations lacking in the complaint).

[57] Defendants' own authority recognizes that the UCL and CLRA can apply to all "United States [users] when conduct is "created and disseminated from California" or there are otherwise "requisite contacts" "conduct" or another "nexus" to this state. *See Lewand v. Mazda Motor of Am., Inc.*, 2017 WL 7080291, at *3 (C.D. Cal. Aug. 8, 2017); *Koehler v. Litehouse, Inc.*, 2012 WL 6217635, *7 (N.D. Cal. Dec. 13, 2012); *Regueiro v. FCA US, LLC*, 2023 WL 3564761, *11 (C.D. Cal. May 4, 2023); *Hayden v. Retail Equation, Inc.*, 2022 WL 18397355, at *2 (C.D. Cal. Nov. 28, 2022). The two other cases Meta cites were evaluating the reach of wage and hour claims that are inapplicable here. *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

follow that only California residents seek medical treatment from them. *See* Civil Code § 56.05(l) (defining "patient" as any "natural person"). GoodRx is a provider of healthcare but it provides medical treatment for users all over the country.

**<u>CONCLUSION</u>**

Defendants' Motions to Dismiss should be denied in their entirety.

Dated: August 10, 2023

/s/ L. Timothy Fisher
L. Timothy Fisher (SBN 191626)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:     (925) 300-4455
Facsimile:      (925) 407-2700
E-mail: ltfisher@bursor.com
E-mail: jgavenman@bursor.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:     (914) 997-0500
Facsimile:      (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
ascubert@sjk.law

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
**JAVITCH LAW OFFICE**

3 East 3rd Ave., Suite 200
San Mateo, CA  94401
Telephone:      (650) 781-8000
Facsimile:      (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice*)
tom@attorneyzim.com
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone:      (312) 440-0020
Facsimile:      (312) 440-4180

Israel David (*pro hac vice*)
israel.david@davidllc.com
Blake Hunter Yagman (*pro hac vice*)
blake.yagman@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone:      (212) 739-0622
Facsimile:      (212) 739-0628

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone:      (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB LAW FIRM LLC**
134 Kings Highway E
Haddonfield, NJ 08033
Telephone:      (856) 772-7200
Facsimile:      (856) 210-9088
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Attorneys for Plaintiffs*