Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 74205
Telephone: (214) 972-1758
Facsimile: (214) 972-1771

Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,

Defendants.

CASE NO. 3:23-CV-00501-AMO

**DEFENDANT GOODRX HOLDINGS, INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PROCEEDINGS**

Judge: Honorable Araceli Martínez-Olguín
Action Filed: May 26, 2023
Hearing Date: November 21, 2023
Time: 11:00 AM
Courtroom: 10, 19th Floor

Plaintiffs ***do not dispute***—through sworn declaration or otherwise—that they saw screens and clicked buttons manifesting assent to GoodRx's arbitration agreement. Instead, they argue: (1) the uncontroverted evidence GoodRx proffered was not adequately "tested" on Plaintiffs' devices, despite the fact that GoodRx has presented evidence of the user experience *regardless of the device used*; and (2) two of the four Arbitration Plaintiffs were not properly notified that an arbitration agreement was added to GoodRx's TOU, despite the fact that *they affirmatively consented to the updated TOU anew*. Plaintiffs are trying to distract from the fact that they cannot contradict GoodRx's proof showing that all Arbitration Plaintiffs consented to a clearly hyperlinked version of GoodRx's TOU that contained an arbitration agreement by clicking a button or checking a box next to a notice of the legal significance of their action. Arguments related to updated terms, continuing use, and lack of "device-specific testing" are beside the point. Plaintiffs cannot now disavow their affirmative assent to arbitrate and their class action waiver.

## I. All Arbitration Plaintiffs Were on Inquiry Notice and Assented to Arbitration

Plaintiffs do not dispute Jane Doe was on inquiry notice of the TOU. Resp. at 15–31. Instead, they resort to questioning whether the timestamp in GoodRx's database recording Jane Doe's assent reflects the exact time she clicked the checkbox confirming assent or the time she clicked the button to proceed (after necessarily having checked the checkbox first). *Id.* at 30–31. This is a distinction without a difference, as the record is undisputed that she must have (and did) click the checkbox agreeing to the TOU to create an account. *See* Mot. at 4–5; ECF No. 125, Cheng Suppl. Decl. ¶ 4; ECF No. 126, Ex. G (data reflecting Jane Doe's electronic acceptance of TOU); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017) (even if clicking a button may have two functions, that does not render assent ambiguous).

As for Marquez, John Doe, and Jane Doe II, their attempt to cast doubt on the evidence—which is based on information ***from Plaintiffs***—falls flat. First, as described in GoodRx's Response to the Motion to Strike, the evidence proffered through the Declarations of Gracye Cheng is based on sufficient personal knowledge and confirmation. *See* ECF No. 134 at 8–14. The evidence indisputably confirms that the Arbitration Plaintiffs received clear notice that the actions they took manifested agreement to the operative TOU, and that they assented to this TOU when they clicked buttons to proceed to create an account, sign into their account, or email themselves a coupon. *See, e.g.*, Mot., Cheng Decl. ¶¶ 27, 32–35 (reflecting

dates of Jane Doe II's Gold account creation and most recent login, drawn from underlying data produced to Plaintiffs reflecting same (GDRX-00000140; GDRX-00000150) and consent screens at time of most recent login); Ex. 1, GDRX-00000151–54 (additional consent screens at time of Jane Doe II's most recent login with keyboard activated); ECF No. 134-3 (Jane Doe II data reflecting Gold account creation); Mot., Cheng Decl. ¶ 64 and ECF No. 125, Cheng Suppl. Decl. ¶ 6 (reflecting date of Marquez Gold account creation, drawn from underlying data produced to Plaintiffs reflecting same (GDRX-00000142) and consent screens at that time); Mot., Cheng Decl. ¶ 47 and ECF No. 125, Cheng Suppl. Decl. ¶ 5 (reflecting date John Doe emailed himself coupons, drawn from underlying data produced to Plaintiffs reflecting same (GDRX-00000149) and consent screen at that time); *see also* Resp. at 25 (conceding that data produced by GoodRx (*i.e.*, GDRX-00000149), "indicates that [John Doe] emailed [himself] coupons").

Second, Plaintiffs' attempt to obfuscate which screen each Arbitration Plaintiff saw fails to sway the legal analysis. Not only do Plaintiffs fail to dispute they saw the relevant screens, but the evidence establishes that ***all*** consent screens, ***regardless of device***, required the Arbitration Plaintiffs to affirmatively acknowledge the TOU before proceeding. *See Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (courts find "requisite notice for constructive assent" where user is required to "affirmatively acknowledge the agreement before proceeding").

Courts strictly enforce terms where they are conspicuously hyperlinked (in blue text), above *or* below the button a user must click to accept, and users were warned that by proceeding, they were agreeing to those terms. To sidestep this unambiguous caselaw, Plaintiffs point to inapposite cases like *Berman, Colgate, Cullinane*, and *Lopez* to argue GoodRx did not provide adequate inquiry notice. Resp. at 23–24. But unlike in those cases, the screens at issue here were not cluttered or at risk of confusing a user regarding what TOU governed. Perhaps this is why Plaintiffs do not put forth any argument (let alone evidence) suggesting they were somehow confused. To the contrary, each GoodRx consent screen was visible and uncluttered, with only fields for the user to enter email or contact information, buttons to register/sign-in/send, and the warning directly next to the buttons that "[b]y continuing" or "[b]y clicking Send," you "agree to GoodRx's [updated] Terms" (offset in a blue, hyperlinked text). *See Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (finding sufficient an uncluttered screen containing

disclosure below the sign-in button warning users that by "clicking sign in" they were agreeing to terms); *Hansen v. Ticketmaster Ent., Inc.*, 2020 WL 7319358, at *3–5 (N.D. Cal. Dec. 11, 2020) (valid assent by clicking button below smaller text stating "By continuing past this page, you agree to the Terms of Use" with blue font indicating hyperlink); Mot. at 4–8, 13–15 (collecting cases).[1] GoodRx's page design *reinforces* rather than *distracts* from users' awareness they are entering into the TOU in place at the time.

## II. Jane Doe II and John Doe Had Adequate Notice of the Arbitration Agreement

Plaintiffs do not dispute that Jane Doe II created a GoodRx Gold account in March 2020, saw the screens GoodRx proffered, and clicked on a button assenting to the operative TOU. Nor do Plaintiffs dispute that John Doe emailed himself a coupon in August 2020, saw the screens GoodRx produced, and clicked on a button assenting to the TOU. *See* ECF No. 134 at 4–7. Instead, Plaintiffs contend Jane Doe II and John Doe "used" the site before 2020 and thus previously "agreed" to an earlier TOU. Plaintiffs further argue that because GoodRx did not email to notify them of a change to the TOU, they lack notice of the arbitration provision. Resp. at 17–22. But GoodRx is not relying on continuing use to demonstrate assent to the updated TOU; it relies on affirmative actions post-January 2020 agreeing to a *new* version of the TOU. Jane Doe II and John Doe's prior contracts with GoodRx are irrelevant for these purposes.

Notably, Plaintiffs ***concede*** the very issue they cast doubt on: that by using the site, users agreed to GoodRx's TOU. *Id.* at 21, 29 n.15. It is nonsensical that Plaintiffs simultaneously argue later undisputed use of the website did not constitute consent.[2] In fact, this concession ends the inquiry as to Marquez and Jane Doe, who only ever used the site when the TOU contained a clear arbitration provision.

Regardless, GoodRx's records, based on information provided by Plaintiffs, indicate that Jane Doe II first created a GoodRx Gold account in March 2020 (most recently logging in in March 2023) and that John Doe first emailed himself a coupon in August 2020. GoodRx's evidence confirms that at these times, in order to take these particular actions, they would have been required to affirmatively consent to

---

[1] *Cf. Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 854, 857 (9th Cir. 2022) (hyperlinked terms in "same gray font" not "sufficiently 'set apart'"); *Lopez v. Dave Inc.*, 2022 WL 17089824, at *2 (N.D. Cal. Nov. 21, 2022) (same); *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764–65 (N.D. Cal. 2019) (terms not in "a different color, underlined, italicized, or in any way visually distinct from the surrounding text"); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62 (1st Cir. 2018) (clutter).

[2] Given this concession that users enter into a "contractual relationship" *by using GoodRx's site* alone, GoodRx reserves the right to compel Plaintiff Wilson and any other putative class members to arbitration.

GoodRx's operative TOU to proceed. The user experience screens show these Plaintiffs manifested assent to the updated TOU by clicking a button above a notification that stated: "[b]y clicking Send" or "[b]y continuing," you "agree to GoodRx's [updated] terms." *See* ECF No. 134 at 4–7. The evidence further confirms that the up-to-date TOU at each point in time is reflected on GoodRx's platform. Ex. 2, Cheng Dep. Tr. at 47:10–15 ("Q: When the terms change, does the text on [the sign-up] screen change to notify users that the terms have been updated? A: Well, the up-to-date terms of use will be linked."). It is thus irrelevant that Jane Doe II and John Doe contend they used the platform earlier than 2020—GoodRx did not need to provide them separate notice of updated terms because it does not rely on their continuing use to demonstrate acceptance.[3] *See McKee v. Audible, Inc.*, 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017) ("[N]o district court has applied *Douglas* to hold that repeated purchases that require agreeing to hyperlinked Conditions of Use do not constitute assent to those terms as written at the time of purchase.").

In any case, Jane Doe II and John Doe offer no sworn declaration disputing that they assented to the updated TOU or supporting that they "started using GoodRx's services" prior to the date reflected in the evidence. Resp. at 20. On a motion to compel, "summary judgment" is the "appropriate" standard because it "is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). GoodRx's undisputed evidence is thus dispositive. *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011) ("If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but *must submit evidentiary facts* showing that there is a dispute" (emphasis added)). Regardless, Plaintiffs' bare assertions that Jane Doe II and John Doe were not notified of changes to a prior agreement is akin to arguments that users do not recall reading or agreeing to the TOU, which courts uniformly reject in light of evidence demonstrating they consented. *Houtchens v. Google LLC*, 2023 WL 122393, at *4 (N.D. Cal. Jan. 6, 2023) (assertions that plaintiffs

[3] Notably, GoodRx's arbitration agreement applies retroactively. *See* ECF No. 134 at 6. The Ninth Circuit routinely enforces retroactive arbitration clauses. *See Sanfilippo v. Match Group, LLC*, 2021 WL 4440337, at *2 (9th Cir. Sept. 28, 2021) (arbitration agreement not unconscionable where it "establishe[d] an intent to cover claims that had accrued prior to the effective date of the [] agreement"); *Trudeau v. Google LLC*, 816 F. App'x 68, 70 (9th Cir. 2020) (enforcing retroactive application of arbitration agreement); *Saucedo v. Experian Info. Sols., Inc.*, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023) (finding arbitration agreement that stated "claims that arose before this or any prior Agreement" to be retroactive).

"may not have read the Terms" does "not undermine their assent to the terms" or "overcome Google's evidence"); *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *2–3 (S.D. Cal. Nov. 5, 2014) (plaintiff assented even though did "not recall seeing or agreeing to any terms and conditions on the . . . website").

## III. GoodRx's Arbitration Agreement Is Enforceable

Plaintiffs throw a handful of other meritless arguments at the wall, claiming the arbitration agreement is procedurally and substantively unconscionable and that *McGill* renders it unenforceable. As an initial matter, the arbitration agreement requires disputes regarding unconscionability to be heard by an arbitrator, not the court. *Brennan v. Opus Bank*, 796 F.3d 1125, 1131 (9th Cir. 2015) (enforcing delegation of unconscionability to arbitrator). In any case, the agreement is not procedurally unconscionable because the notice of the TOU was sufficient, as described above, and the arbitration provision was clearly demarcated in the TOU in capital and bolded font on the first page and again in the next section.[4] *See* Mot. at 9–10, Cheng Decl., Ex. 2. Nor do Plaintiffs' contract of adhesion allegations hold any water.[5] Moreover, while the failure to establish procedural unconscionability ends the inquiry, Plaintiffs' one-sided argument also does not "shock the conscience" to establish substantive unconscionability. The TOU allow both GoodRx and users to retain intellectual property disputes.[6] Lastly, any dispute as to whether a claim for public injunctive relief must be arbitrated is an issue delegated to the arbitrator; even so, *McGill* does not apply here given this is a private dispute that is centered on monetary damages for an alleged harm alleged to have occurred solely in the past. *See* Mot. at 19–21.

---

[4] *See In re JUUL Labs, Inc. Antitrust Litig.*, 555 F. Supp. 3d 932, 953 (N.D. Cal. 2021) (no procedural unconscionability where terms are hyperlinked next to clickbox); *Chess v. CF Arcis IX LLC*, 2020 WL 4207322, at *9 (N.D. Cal. July 22, 2020) (no procedural unconscionability where arbitration agreement is written in capitalized, bold font); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 F. App'x 430, 431 (9th Cir. 2015) (unilateral modification provisions "not [] unconscionable.").

[5] Plaintiffs point to irrelevant TOU provisions ***outside*** the arbitration provision. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."). And caselaw rejects the notion that inclusion of words such as "I agree" makes a contract one of adhesion. *See Collins v. Taco Bell Corp.*, 2013 WL 3984252, at *6 (C.D. Cal. July 31, 2013) ("[E]ven when an arbitration provision says 'I agree' . . . this does not vitiate an otherwise bilateral obligation to arbitrate."); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1473 (2009) (rejecting conclusion that the words "I agree" by one party "destroys the bilateral nature of an agreement").

[6] *See In re JUUL Labs, Inc.*, 555 F. Supp. 3d at 954–55 ("The types of [intellectual property] relief JLI has [] reserved to itself to seek in court are not the type of claims that would likely be raised by consumers . . . . This unilateral right . . . does not make the Agreement unenforceable.").

DATED: August 24, 2023

Respectfully submitted,

*/s/ Martin L. Roth*

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
KIRKLAND & ELLI LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 74205
Telephone: (214) 972-1758
Facsimile: (214) 972-1771

Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**CERTIFICATE OF SERVICE**

On August 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and Civil L.R. 5-1 have been so served.

*/s/ Martin L. Roth*

Martin L. Roth