Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 74205
Telephone: (214) 972-1758
Facsimile: (214) 972-1771

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | CASE NO. 3:23-CV-00501-AMO<br><br>**DEFENDANT GOODRX'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED COMPLAINT**<br><br>Judge: Honorable Araceli Martínez-Olguín<br>Action Filed: May 26, 2023<br>Hearing Date: November 21, 2023<br>Time: 11:00 AM<br>Courtroom: 10, 19th Floor |

Plaintiffs' Response to Defendants' Motions to Dismiss ("Resp.") is untethered to their allegations. It invents purported "injuries" that neither occurred nor are alleged; concocts business practices that GoodRx, even by Plaintiffs' own telling, does not engage in; and ignores GoodRx's clear disclosures of—*and Plaintiffs' consent to*—the conduct challenged here. In short, Plaintiffs' attempt to distract is unavailing; each claim fails as a matter of law.[1]

## I. Plaintiffs Admit They Consented to the Alleged Conduct

Plaintiffs do not dispute that at all relevant times, GoodRx disclosed that it may share users' "personal information" and browsing data specifically with ***Google***, ***Facebook***, and other vendors. Instead, they try to downplay these explicit disclosures in GoodRx's Privacy Policy by irreconcilably dismissing them as somehow both too "technical" and too "ambiguous." (Resp. at 10.) Neither works. The disclosures were abundantly clear and understandable:

> [GoodRx] may place cookies, tags, ***pixels***, ***SDKs*** and other tracking technology on your computer or other devices, or otherwise collect ***your personal information*** to assist ***Google, Facebook, other third parties***, or GoodRx to feed advertisements or to send direct mail campaigns to you based on your past visits to GoodRx and other websites.

(Mot. to Dismiss, Cheng Decl., Ex. 1 at 4 (emphasis added).) Moreover, Plaintiffs have ***admitted*** that ***solely by using GoodRx's site***, they ***agreed*** to the Terms of Use, which include the incorporated Privacy Policy. (ECF No. 126, Opp. to Mot. to Compel 4–5.) Such consent is fatal to Plaintiffs' claims. (Mot. to Dismiss at 2, 5, 13–15.)

## II. Plaintiffs Lack Standing For Their UCL, CLRA, GBL, and Negligence Claims

Plaintiffs also continue to fail to identify any ***actual*** injury suffered. Their reliance on conclusory statements that they suffered a "privacy violation" is insufficient as a matter of law for six of their claims.

### A. UCL and CLRA

Plaintiffs' UCL and CLRA claims fail because they do not (and cannot) adequately allege economic injury. Plaintiffs cite a handful of cases, including *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021), contending that loss of "information" is enough. This is wrong. "The weight of the authority in the district and the state . . . ***point in the opposite direction*** [of *Calhoun*]: that the mere

[1] GoodRx incorporates by reference all arguments made by co-Defendants in their contemporaneously-filed replies in support of their motions to dismiss, to the extent the underlying claims are brought against GoodRx.

misappropriation of personal information does not establish compensable damages." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023) (dismissing UCL claim for lack of standing) (internal quotation marks omitted). Plaintiffs' argument that they establish standing simply by alleging that their personal information was lost therefore fails.

Further, despite referencing a purported "market" for health data (ECF No. 102, Compl. ¶¶ 357–58), Plaintiffs do not adequately allege that this information has value *to them*. "It is not enough to merely say the information was taken and therefore it has lost value . . . . That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has personally lost money or property." *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (dismissing UCL and CLRA for lack of standing). Moreover, any argument that Plaintiffs could or would have sold their "medical information" is nonsensical given their alleged privacy concerns over that same information. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022), *review denied* (Dec. 14, 2022) (dismissing UCL claim where plaintiffs failed to allege "they ever attempted or intended to participate in this market, or otherwise to derive economic value from their PII").

What is more, Plaintiffs' vague allegations regarding injury emphasize their broader failure to comply with the heightened pleading requirements of Rule 9(b), required for both UCL and CLRA claims. Plaintiffs respond by contending that they ***did*** articulate "who," "what," "when," "where," and "how" by generically referencing ***all*** users of GoodRx or explaining how GoodRx's site works in ***general*** (*e.g.*, Resp. at 32–33, citing Compl. ¶¶ 2-7, 9–15, 96–112). But the Complaint lacks the required specific allegations of fraudulent conduct as to ***each*** named Plaintiff. For instance, Plaintiffs do not allege ***when*** or ***how*** Jane Doe purportedly saw and relied on alleged misrepresentations in GoodRx's 2017–2019 Privacy Policy before she used GoodRx in 2022—long after such alleged "misrepresentations" had been removed. *See, e.g.*, *Doe v. SuccessfulMatch.com*, 70 F. Supp. 3d 1066, 1082 (N.D. Cal. 2014) ("If Plaintiffs did not see the specified representations before they purchased Defendant's services, then Plaintiffs did not rely on these representations and suffered no injury."); *Phillips v. Apple Inc.*, 2016 WL 1579693, at *8 (N.D. Cal. Apr. 19, 2016) (dismissing UCL claim where plaintiffs merely identified a statement on defendant's website that was allegedly misleading, but not reliance). And Plaintiffs'

contention that a less-stringent standard of Rule 9(b) applies for "omission-based claims" (Resp. at 33) is irrelevant—this cannot be an omission claim given GoodRx's clear disclosures in its Privacy Policy.[2]

**B. GBL**

E.C.'s allegations are similarly insufficient to confer standing under GBL § 349. Plaintiffs' characterization of E.C.'s injury as the "collection of actual medical information" (Resp. at 40) cannot be squared with E.C.'s threadbare allegations that he used GoodRx ***only*** to locate pharmacies without inputting ***any*** other information such as his name or email address. (Compl. ¶¶ 41, 43.) Plaintiffs try to distinguish GoodRx's cases as involving "different types of data." (Resp. at 42). But E.C.'s searches for pharmacies are nothing more than browsing history, disclosure of which is insufficient to confer standing under GBL § 349. *Mount v. Pulsepoint, Inc.*, 2016 WL 5080131, at *13 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32 (2d Cir. 2017), as amended (May 3, 2017) (no standing where plaintiffs alleged only that surreptitiously collecting browsing information was a violation of their privacy rights). None of E.C.'s cases support finding GBL standing based on such conclusory allegations of "privacy injury."

**C. Negligence**

With regard to the inadequacy of their negligence claim, Plaintiffs respond that they adequately alleged that "*every* GoodRx user" suffered harm. (Resp. at 29–30 (emphasis in original)). But this ignores that the six Plaintiffs here are required to allege a concrete injury suffered ***by them***. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962 (S.D. Cal. 2012) ("[M]ere allegations of exposure of a plaintiff's personal information are insufficient to establish a cognizable injury."). Plaintiffs' reliance on *In re Ambry Genetics Data Breach Litigation* only proves the point: there, the court found standing because ***each*** plaintiff alleged actual injury, *e.g.*, hard inquiries on their credit

[2] Plaintiffs' UCL claim also fails for the independent reason that Plaintiffs are not entitled to restitution or injunctive relief—the only remedies available for that claim. *Korea Supply Co. v. LockheedMartin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Their request for restitution fails because they allege an adequate remedy at law. (Compl. ¶ 360.) Plaintiffs' claims are all premised on the same factual predicates, and where equitable claims for past harms are based on the same facts as legal claims, they are impermissibly duplicative. *Loo v. Toyota Motor Sales, USA, Inc.*, 2019 WL 7753448, at *13 (C.D. Cal. Dec. 20, 2019). The cases Plaintiffs cite in an effort to rebut this are not applicable in the UCL context. *See Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 456 (2005) (non-restitutionary disgorgement is not permitted under the UCL). And, despite attempts to argue otherwise, Plaintiffs have already been afforded injunctive relief. It is nonsensical for Plaintiffs to regurgitate the allegations from the FTC Complaint and then contend that the injunctive relief put in place *in response to those allegations* and "for substantially similar conduct" (Compl. ¶ 17) is insufficient.

without authorization. 567 F. Supp. 3d 1130, 1140 (C.D. Cal. 2021). Plaintiffs here fail to plead any "appreciable, nonspeculative, present injury" required to state a claim for negligence. *In re iPhone Application Litig.*, 2011 WL 4403963, at *9 (N.D. Cal. Sept. 20, 2011).

Plaintiffs' negligence claims fail for additional independent reasons. First, they fail to articulate any actionable duty that GoodRx purportedly breached. Rather than entering into a duty, GoodRx expressly disclosed sharing of information with Google, Facebook, and others via its Privacy Policy. Plaintiffs dismiss this disclosure as an "extraneous document" (Resp. at 31), but the cases they cite are inapposite—this disclosure is not an "exculpatory clause" but rather an explicit notice of GoodRx's practices foreclosing any purported duty to the contrary. Plaintiffs' negligence *per se* claim also fails given the Complaint relies ***solely*** on purported violations of the FTC Act and the Health Breach Notification Rule—*i.e.*, federal law. Negligence *per se* "cannot spring from a federal law." *Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2017). Despite Plaintiffs' arguments (Resp. at 32), the Complaint does not allege that negligence *per se* is rooted in purported violations of CIPA and CMIA (and there is no constitutional-based claim). Even if it were, negligence *per se* cannot proceed as a standalone claim where the underlying claim of ordinary negligence is not viable. *Mohandas v. Wells Fargo Bank, N.A.*, 2022 WL 17254847, at *20 (C.D. Cal. July 5, 2022).

## III. GoodRx Is Not Subject to the CMIA

Finally, Plaintiffs' CMIA claims fail for at least three reasons. First, their attempt to mischaracterize GoodRx's business in order to shoehorn it into the CMIA's definition of a "provider of healthcare" falls well short. As demonstrated by the Complaint (¶ 98), in order to obtain drug coupons—which is all that five out of six Plaintiffs allege that they did—a user simply types in a drug name and zip code. No prescription, personal information, or medical records are required. Stated differently, Plaintiffs' conclusory allegation that "GoodRx is a provider of healthcare" because "the GoodRx Platform maintains medical information and offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or make the information available to a health care provider, or for the diagnoses, treatment, or management of a medical condition" is nothing more than a boilerplate recitation of the CMIA requirements, not supported (and in fact, contradicted) by well-pled facts. (Compl. ¶ 272.) Plaintiffs' reliance on *In re Blackbaud, Inc., Customer*

*Data Breach Litigation* is thus misplaced, as Blackbaud's systems were specifically designed to make individuals' information available directly to medical providers, whereas GoodRx's core service simply allows users to access coupons. 2021 WL 3568394, at *1 (D.S.C. Aug. 12, 2021) ("[Blackbaud's services] provide[s] data collection and maintenance software solutions for . . . healthcare organizations.").

Second, even if GoodRx were a "provider of healthcare" under the CMIA, Plaintiffs fail to establish that the information allegedly provided is "individually identifiable," particularly as to E.C. and John Doe. Plaintiffs' far-fetched theory that all information was transmitted with "unique identifiers akin to social security numbers," (Resp. at 25), is nonsensical and unsupported, given that E.C. and John Doe do not allege that they input ***any*** information that would allow them to be identified. To the extent Plaintiffs rely on technical ID numbers such as IP address, they certainly have not pled that these numbers (which can be used by an entire building of people) are anything akin to social security numbers—particularly for John Doe, who alleges he used ***public computers*** to access GoodRx. (Compl. ¶ 36.)

Third, and crucially, Plaintiffs do not plead facts sufficient to show that ***their*** "medical information" was improperly viewed or accessed, as required to state a claim under the CMIA. Rather, they allege that information was used to serve targeted advertisements to GoodRx users ***in general***. (Compl. ¶ 115.) These vague allegations are not enough to show that ***each*** Plaintiff's information had been viewed or accessed ***in any way***. *See Cousin v. Sharp Healthcare*, 2023 WL 4484441, at *8 (S.D. Cal. July 12, 2023) (Plaintiffs' allegations that data was "collected," "stored," "sent," "delivered," "shared," or "disclosed" to Meta were insufficient to find their medical information had been viewed.) In *Cousin*, the court expressly rejected the arguments Plaintiffs make here, finding allegations that data was shared "is merely a conclusion without sufficient factual support" because the plaintiff did not allege, for example, "that she received or was subjected to an increase in any targeted advertisements." *Id*. Not a single Plaintiff here alleges that they actually received targeted advertisements or any indication that their information had been viewed improperly, and the CMIA claim must be dismissed on that basis alone.

## IV. CONCLUSION

For the foregoing reasons and the reasons stated in its Motion to Dismiss, Defendant GoodRx respectfully requests that the Court grant its Motion to Dismiss with prejudice, as any amendment would be futile.

DATED: August 24, 2023

/s/ *Martin L. Roth*
Martin L. Roth

Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1758
Fascimile: (214) 972-1771

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
**KIRKLAND & ELLIS LLP**
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**CERTIFICATE OF SERVICE**

On August 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-1 have been so served.

*/s/ Martin L. Roth*
Martin L. Roth