GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (admitted *pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (admitted *pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.*
*(formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JANE DOE, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC.,

Defendants.

Lead Case No. 3:23-cv-00501-AMO

**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

Action Filed: February 2, 2023

Date: November 21, 2023
Time: 11:00 AM
Courtroom 10
**BEFORE: HON. ARACELI MARTINEZ-OLGUIN**

## INTRODUCTION

Plaintiffs fail to allege a viable claim against *Meta* for *third-party web developers'* alleged misuse of commonplace internet tools. Each count lands wide of the mark for many reasons, but plaintiffs face two insurmountable hurdles that infect their claims against Meta.

*First*, plaintiffs assume GoodRx cannot use Meta's analytics tools without sending sensitive information. That assumption is not well-pleaded and is wrong: GoodRx—like other companies—can use Meta's Pixel and SDK in any number of legitimate ways without sending sensitive data.

*Second*, plaintiffs assert Meta *intended* to receive sensitive health information. That assertion cannot be squared with plaintiffs' recognition that (1) Meta's policies prohibit developers from sending sensitive data, and (2) Meta attempts to filter out any potentially sensitive health information that developers send. Plaintiffs allege Meta promoted the use of its analytics tools, but never explain that equates to promoting the use of those tools *to send sensitive information*; it does not.

The bottom line: this case cannot proceed as pled. The complaint should be dismissed.[1]

## ARGUMENT

### A. Plaintiffs Have Not Established Any Wrongful Intent

Plaintiffs offer no valid response to the argument that their CIPA and intrusion upon seclusion claims fail because they have not plausibly alleged that the analytics defendants (Criteo, Meta, and Google) *intended* to intercept plaintiffs' sensitive health information.

*First*, plaintiffs assert that it was enough to allege that the analytics defendants designed the analytics tools for the purpose of intercepting users' communications. Opp. at 16. But this case necessarily focuses on *sensitive* information: Any claim based on "interception" of *non-sensitive* information would be barred by *Smith v. Facebook, Inc.*, 745 F. App'x 8 (9th Cir. 2018), which acknowledged that health-related companies may lawfully share non-sensitive information with

---

[1] Given space constraints, Meta incorporates each co-defendant's arguments by reference. *See Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1039 (N.D. Cal. Mar. 4, 2016) (considering arguments incorporated from co-defendants' briefs). This reply addresses intent, consent, extraterritoriality, and two CIPA arguments.

analytics companies. Plaintiffs do not plead that the tools were designed to obtain *sensitive* data.[2]

Plaintiffs' cited authorities do not suggest that simply designing and creating these tools establishes intent. Opp. 16–17. In *Lopez*, the defendant failed to correct a *defect* in its product despite "knowledge to a substantial certainty" that the defect would cause the product to intercept confidential information, 519 F. Supp. 3d at 689; this case, by contrast, involves *alleged third-party misuse* (not a "defect" Meta or the other analytics defendants could fix), and plaintiffs acknowledge Meta's efforts to avoid receiving sensitive health information. *In re Google Inc. Street View Electronic Communications Litigation*, 794 F. Supp. 2d 1067, 1082 (N.D. Cal. 2011), involved a defendant installing and using its software to intercept communications; here, plaintiffs allege *third parties installed and misused software*, not that the analytics defendants installed or used their own tools. *Cf. Federated Univ. Police Officers' Ass'n v. Univ. of Cal.*, 2015 WL 13273308, at *7 (C.D. Cal. July 29, 2015) (no liability for installing a recording device). *Saleh v. Nike, Inc.* did not even analyze intent under CIPA; it concerned whether the court had specific personal jurisdiction under the purposeful availment test, a different inquiry entirely. 562 F. Supp. 3d 503, 512–13 (C.D. Cal. 2021).

*Second*, plaintiffs attempt to brush aside their own allegations about Meta's filtration systems and Meta and Google's policies prohibiting developers from sharing sensitive health data. Plaintiffs assert that their undisputed efforts to avoid receiving sensitive data concern only "whether defendants complied with their" contractual commitments to users, and "can[not] obviate intent." Opp. 17–18. But plaintiffs must plausibly allege defendants *intentionally* intercepted their *sensitive* health information. A system designed to *filter out* potentially sensitive information undercuts plaintiffs' assertion that Meta *intended to receive* that information—that it obtained sensitive data "purposefully and deliberately and not as a result of accident or mistake." *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015); *see also id.* at 775 (intent means "consciously and deliberately with the goal of intercepting wire communications"). Similarly, instructing a sender *not* to share any sensitive information shows an intent *not* to receive that information. *See, e.g.*, *Federated Univ.*, 2015 WL 13273308, at *7.

---

[2] CIPA requires "intent to intercept confidential communications, rather than communications generally." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021); *see People v. Superior Court*, 70 Cal. 2d 123, 133 (1969) ("mere intent to activate" recording equipment is not enough).

### B. Plaintiffs Consented to the Challenged Conduct

All of plaintiffs' claims also fail because plaintiffs consented to the challenged conduct. A reasonable person viewing the disclosures made by GoodRx and Meta would have understood that GoodRx could share the information at issue. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1212 (N.D. Cal. 2014); *see Smith*, 745 F. App'x at 8–9. Plaintiffs raise several arguments in response, all of which reflect a fundamental misunderstanding of the law and of defendants' disclosures.

***GoodRx's policies.*** Plaintiffs admit they consented to GoodRx's terms. GoodRx Reply 1. Plaintiffs contend that valid consent must be "explicit and cover the exact practices at issue." Opp. 13; *see id.* at 9–11. But that is exactly what GoodRx's policies do. GoodRx explains that it uses "analytics, tracking and provided tools," including "technology . . . to help [GoodRx] track, segment, and analyze usage of [GoodRx's] Services." *E.g.*, GoodRx RJN Ex. 4 at 4. It also explains that: (1) GoodRx may place "pixels, SDKs and other tracking technology on your computer or other devices, or otherwise collect your personal information" for advertising on GoodRx's website; and (2) such tools may be used to collect "information relating to your use of the Site." Other provisions contain similar disclosures. *E.g.*, *id.* Ex. 1 at 4, Ex. 2 at 5, Ex. 3 at 4, Ex. 4 at 4, Ex. 5 at 2; GoodRx Reply 1.

This is the very type of "explicit[] notif[ication] . . . of the practice at issue" that is required for consent. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021). All of the information plaintiffs allege the analytics defendants intercepted falls within the categories GoodRx describes in its disclosures. "A reasonable person viewing th[ese] disclosures would understand that" GoodRx may provide (and analytics defendants may receive) "users' data from [GoodRx]." *Smith*, 745 F. App'x at 8–9. This "[k]nowing authorization" constitutes "[p]laintiffs' consent." *Id.* at 9.

***Meta's policies.*** Plaintiffs contend that Meta's policies fail to establish consent because Judge Orrick held, applying the standard applicable to a preliminary injunction, that Meta's policies were insufficient on their own in *In re Meta Pixel Healthcare Litigation*. Opp. 12–13. This argument fails for two reasons. *First*, this case involves not just Meta's policies but also GoodRx's—and while Judge Orrick concluded that Meta's policies on their own might not convey to a reasonable user that *health* information could be collected, GoodRx's policies clearly do. *Supra* 3. Meta's policies provide additional detail about how Meta receives and uses data from third-party websites like GoodRx.

*Second*, the Ninth Circuit has made clear that a "contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010); *see* Meta Mot. 8 n.4. And as the Ninth Circuit recognized in *Smith*, a "reasonable person viewing [Meta]'s disclosures" would understand that Meta "collect[s] its users' data from third-party sites." 478 F. App'x at 8; *see Silver v. Stripe Inc.*, 2021 WL 3191752, at *5 (N.D. Cal. July 28, 2021).

**C. Plaintiffs Do Not Allege Any Information Was Sent From or Received in California.**

Section 631(a) imposes liability only if a person intercepts a communication that is "*sent from, or received at any place within this state*." Cal. Penal Code § 631(a) (emphasis added). Plaintiffs argue that most defendants are "based in California, where they received and used the data at issue." Opp. 48–49. But the location of defendants' headquarters is irrelevant to where the data was "sent from, or received"; the analytics defendants all operate from many locations. And the sole allegation plaintiffs point to—that defendants "designed, contrived, agreed, conspired, effectuated, and/or received the interception and use of the contents of Plaintiffs'" communications in California, Compl. ¶ 312—is both conclusory and insufficient as a matter of law. *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (not enough to allege that defendant's "alleged misconducted emanated" from California).

**D. CIPA and the UCL Do Not Apply Extraterritorially**

CIPA and the UCL do not apply extraterritorially. Jane Doe, Jane Doe II, John Doe, and E.C. are non-California residents who do not allege the relevant conduct occurred in California, so they cannot bring CIPA or UCL claims. Plaintiffs offer three responses, but none has merit.

*First*, plaintiffs say this argument is "premature" and should be punted to class certification. Opp. 48. Not so: courts routinely resolve extraterritoriality issues on a motion to dismiss. *E.g.*, *Dfinity USA Res. LLC v. Bravick*, 2023 WL 2717252, at *5 (N.D. Cal. Mar. 29, 2023). The case plaintiffs cite deferred consideration of whether the plaintiffs could obtain certification of a nationwide class (while noting "significant issues" with that approach). *Zheng-Lawson v. Toyota Motor Corp.*, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018). Here, the question is whether CIPA and the UCL apply to the out-of-state named plaintiffs' claims. That legal issue is properly resolved on a motion to dismiss.

*Second*, to support their CIPA claim, plaintiffs argue that most defendants are "based in

California, where they received and used the data at issue." Opp. 48–49. The location of defendants' headquarters is not "the conduct that 'creates liability'" under CIPA. *Oman v. Delta Air Lines, Inc.*, 889 F.3d 1075, 1079 (9th Cir. 2018). Instead, courts "look[] to the statute's 'focus.'" *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337 (2016). CIPA's "focus" is the *interception* and *recording* of sensitive information, and plaintiffs do not allege either occurred in California. *Supra* 4.

*Third*, plaintiffs argue the UCL claim survives because "the underlying facts . . . are centered upon the wrongful conduct of GoodRx, headquartered in California, and its wrongful course of dealings and agreements" with the other defendants occurred in California. Opp. 49. But under the UCL, the "critical issues are whether the injury occurred in California and whether the conduct of Defendants"—the recording—"occurred in California." *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894, 911 (N.D. Cal. 2020). Plaintiffs do not allege that their injury or the recording occurred in California.

**E. The Pixel and SDK Are Not "Devices" Under CIPA**

Plaintiffs fail to rebut the argument that their § 632(a) claim fails for lack of a "device."

*First*, plaintiffs point to several cases that they say "rejected Meta's contention that its tracking software is not a 'device' under CIPA § 632." Opp. 22. Plaintiffs misconstrue these cases. In *Lopez*, the plaintiffs alleged the defendant programmed a device it manufactured—a smartphone, not software—to intercept communications when no "hot word" was spoken. 519 F. Supp. 3d at 690. Plaintiffs' remaining cases interpret the *federal* Wiretap Act, a similar but not identical statute. *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *13 (N.D. Cal. Dec. 22, 2022).

*Second*, cases interpreting a neighboring provision of CIPA (§ 637.7) hold that software does *not* qualify as a "device." Plaintiffs contend there is "no authority" for interpreting "device" in § 632 the same as in § 637.7. Opp. 22. But it is "a general rule of statutory construction to construe words" in one statute the same "as they are used in a closely related statute." *Cal. Soc'y of Anesthesiologists v. Brown*, 204 Cal. App. 4th 390, 403 (2012). Plaintiffs do not dispute that § 632 and § 637.7 are closely related, as they are part of the same statutory scheme. Nor do plaintiffs dispute that software is not a "device" under § 637.7. Therefore, software is not a "device" under § 632.

## CONCLUSION

The Court should dismiss the complaint with prejudice.

Dated: August 24, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

**CIVIL L.R. 5-1(h)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: August 24, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: *<u>/s/ Lauren R. Goldman</u>*
Lauren R. Goldman