**WILLKIE FARR & GALLAGHER LLP**
BENEDICT Y. HUR (SBN 224018)
bhur@willkie.com
SIMONA AGNOLUCCI (SBN 246943)
sagnolucci@willkie.com
EDUARDO E. SANTACANA (SBN 281668)
esantacana@willkie.com
TIFFANY LIN (SBN 321472)
tlin@willkie.com
YUHAN ALICE CHI (SBN 324072)
ychi@willkie.com
One Front Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 858-7400
Facsimile: (415) 858-7599

Attorneys for Defendant
GOOGLE LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case Nos. 3:23-cv-00501-AMO<br><br>**GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date: November 21, 2023<br>Time: 11:00 AM<br>Location: Courtroom 10, 19th Floor<br>Judge: Hon. Araceli Martínez-Olguín<br><br>Consolidated Class Action Complaint filed 5/26/2023 |

| | |
|---|---|
| JOHN DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case Nos. 3:23-cv-00744-AMO<br><br>Complaint filed 2/17/23 |
| JOSE MARQUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., META PLATFORMS, INC., GOOGLE LLC, and CRITEO CORP.,<br><br>Defendants. | Case Nos. 3:23-cv-00940-AMO<br><br>Complaint filed 3/2/23 |
| HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case Nos.: 3:23-cv-01293-AMO<br><br>Complaint filed 3/20/23 |
| E.C., individually and behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case Nos. 3:23-cv-01508-AMO<br><br>Complaint filed 3/30/23 |

## I. Plaintiffs Abandoned Their CMIA Claims (7–8) and ICFDA Claim (14)

Plaintiffs' opposition fails to dispute the inadequacy of Claims 7 (aiding and abetting violation of CMIA), 8 (violation of CMIA), and 14 (violation of ICFDA) against Analytics Defendants. *See* Google's MTD at 15, 19–25; Meta MTD at 19–21; Criteo MTD at 10–11, 14–16, 25. Accordingly, these claims should be dismissed with prejudice. *See, e.g., Shin v. Wash. Mutual Bank, F.A.*, 2018 WL 4491185, at *4 (N.D. Cal. Sep. 19, 2018).

## II. Google Acted as a Mere Vendor to GoodRx (Claims 1–2, 9–13)

Plaintiffs' opposition confirms that, just as in *Noom*, Google acts only as "an extension of" GoodRx by providing a "tool . . . that allows [GoodRx] to record and analyze its own data in aid of [GoodRx's] business." *Graham v. Noom*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021). Plaintiffs' claims alleging violations of CIPA §§ 631 and 632, invasion of privacy, and consumer protection statutes thus must be dismissed as these claims are all predicated on plausibly alleging that Google was a third party that unlawfully intercepted Plaintiffs' purported sensitive health information, which Plaintiffs have not and cannot allege here. *See* Google MTD at 9, 11–15.

Plaintiffs distinguish *Noom* on the ground that, there, "there were no allegations that 'FullStory had intercepted and used the data itself.'" Opp'n at 19 (cleaned up). But that is just as true here. Plaintiffs' complaint contains no *factual* allegation that Google used GoodRx's data to do anything other than allow GoodRx to analyze its own data. *See* Google MTD at 3–4. Plaintiffs cite to seven paragraphs of their Complaint to contend that they have sufficiently alleged Google's independent use of GoodRx's data. *See* Opp'n at 19 (citing Compl. ¶¶ 134–138, 153, 159). But only one paragraph relates to Google: "In addition to using the data collected through Google Analytics to provide marketing and analytics services, Google also uses the data collected through Google Analytics to improve its ad targeting capabilities and data points on users." Compl. ¶ 153. This allegation does not meet the plausibility standard as it says nothing about whether or how Google purportedly used *GoodRx's* data. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully"). Plaintiffs do not allege that Google used GoodRx's data specifically—as opposed to any other website or app—to provide marketing services or improve Google's ad targeting

capabilities; nor do they allege that they saw any advertising on Google's platform (or even elsewhere) that they believe Google served on them based on the data GoodRx transmitted via Google Analytics ("GA"). *See* Google MTD at 2–4. In short, Plaintiffs fail to allege facts showing that Google "used the [GoodRx] data itself." *Noom*, 533 F. Supp. 3d at 832. This distinguishes Plaintiffs' allegations from the cases they rely on. *See* Opp'n at 18–19; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (alleging defendant "captures, stores, *and interprets*" data) (emphasis added); *Noom*, 533 F. Supp. 3d at 832 (distinguishing *Moosejaw* and *In re Facebook, Inc.* as those cases contained allegations that vendors independently mined and sold information); *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at * 1–2, 9 n.8 (N.D. Cal. Apr. 6, 2023) (alleging "Oracle combines and sells information"); *see also* Google MTD at 12–13 (distinguishing *Javier v. Assurance IQ, LLC.*, 2023 WL 114225, at *5 (N.D. Cal. Jan. 5, 2023)).

Plaintiffs' opposition has only revealed the flimsy and inadequate allegations they assert against Google. Indeed, the 11 paragraphs preceding Plaintiffs' cited paragraph 153 provide mere general allegations about Google's business and technology. *See* Compl. ¶¶ 142–52. The remaining paragraphs in this section allege only that GoodRx incorporated Google Analytics on its Platform. *Id*. ¶¶ 154–56. Taken together, Plaintiffs are asking this Court to conclude that because Google *could* have marketing or advertising capabilities, it must have used those features here with GoodRx's data in an unlawful manner. This is precisely the type of speculative pleading that is impermissible. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief'") (cleaned up).

At bottom, Plaintiffs fail to plausibly allege that Google acted as anything but a vendor that provided a tool to GoodRx. For this reason, Plaintiffs' CIPA § 631, and above-mentioned derivative claims, must fail under the reasoning and holding of *Noom* and courts following it. *See Noom*, 533 F. Supp. 3d at 832–33; *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3–4 (N.D. Cal. Dec. 22, 2022) (vendor not liable for "providing a software tool" without affirmative use of data); Google MTD at 12–15; *cf. Licea v. Cinmar, LLC*, 2023 WL 2415592, at *8–9 (C.D. Cal. Mar. 7, 2023) (finding no assistance of CIPA § 631 violation where "[t]he bare allegations

only suggest that the third party analyzed or used the data on behalf of or in tangent with [d]efendant"); *Licea v. Am. Eagle Outfitters, Inc.*, 2023 WL 2469630, at *7–8 (C.D. Cal. Mar. 7, 2023) (same); *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023) (no derivative liability under § 631(a) where the third-party vendor "merely facilitate[d] customer chats as an extension of the company"), *R. & R. adopted*, 2023 WL 3061957, at *1 (Apr. 24, 2023); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) ("where courts have found software companies to be third-party eavesdroppers, those third parties had . . . used that information for their own purposes"). By the same token, because the Analytics Defendants are not third party eavesdroppers, GoodRx, as intended recipient of the communication, is not liable for aiding and conspiring with Analytics Defendants to unlawfully wiretap. *See Cinmar*, 2023 WL 2415592, at *8–9; Opp'n at 19; GoodRx MTD at 16–17.

**III. GoodRx Disclosed the Use of GA and Plaintiffs Consented (Claims 1–3, 9–10, 12–13)**

Google incorporates by reference the consent arguments made in co-Defendants' replies. *See* GoodRx MTD Reply at 1; Meta MTD Reply at 3. In short, Plaintiffs have consented to the use of Google Analytics because GoodRx has repeatedly disclosed—including in the privacy policies Plaintiffs rely on—its use of Google Analytics. *See* Google MTD at 5–7, 10–11. For the reasons stated in GoodRx and Meta's Replies and Google's opening Motion, GoodRx's disclosures (including the HeyDoctor Privacy Policy) are sufficient. Plaintiffs also argue that "Google's suggestion that it had 'consent' to intercept health data because GoodRx agreed to use Google Analytics is illogical." Opp'n at 11 n.12. Plaintiffs have misunderstood. Plaintiffs' consent to the use of Google Analytics in GoodRx's privacy policies sufficiently manifest the consent that is fatal to their lawsuit. *See* Google MTD at 4–7, 10–11.

**IV. Plaintiffs Have Not Articulated the Requisite Intent For Claims 1–2, 9–10, & 12–13**

Many of Plaintiffs' remaining claims require plausibly pleading intent. *See* Google MTD at 15–20.[1] Plaintiffs have not done so and those claims must be dismissed. Google incorporates by

---

[1] Plaintiffs erroneously contend that Google does not cite authority finding that CIPA § 631 requires intent. The statute expressly applies to a person who "intentionally taps" a connection. *See* Google MTD at 18; *see also* Meta MTD Reply at 1–2.

reference arguments made in co-Defendants' replies. *See* Meta MTD Reply; Criteo MTD Reply.

Plaintiffs also contend that they need not plead intent under Rule 9(b)'s heightened standard. *See* Opp'n at 16 n.17. But they again miss the point. To be clear, Google's Terms and Policies— which Plaintiffs do not dispute are judicially noticeable—governing GoodRx's use of Google Analytics provide that: (1) transmission of personally identifiable information or sensitive health information to Google is prohibited; (2) GoodRx was required to disclose the use of Google Analytics on its platform (which it did); and (3) personalized advertising based on sensitive health information is prohibited. *See* Google MTD at 4–7, 10–11. Plaintiffs rely only on conclusory allegations that "Google's conduct was intentional" because it "knew that the incorporation of its software into the GoodRx Platform would result in its sensitive information, including health information" and it "did not take any steps to prevent its interception and use of GoodRx users' sensitive health data." Compl. ¶¶ 79–85. But there are no allegations, for example, that Google instructed GoodRx to send sensitive health information or that Google was doing anything with GoodRx's data that would infer intent. Putting aside that such pleading is insufficient to show intent,[2] Plaintiffs' theory is essentially one in fraud—that, despite Google's express statement that it does not want to receive sensitive health data, Plaintiffs believe that Google *secretly* intended to receive such data anyways.[3] Such a theory must be pleaded with particularity. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *3 (N.D. Cal. May 21, 2021); Google MTD at 16–17.

## V. Plaintiffs' Remaining Claims Are Not Plausibly Alleged (Claims 1–3, 9–10, 12–13)

As to the remaining deficiencies in Plaintiffs' complaint, Google adds two further points and otherwise incorporates by reference the arguments in co-Defendants' concurrently filed reply briefs. *See* GoodRx MTD Reply; Criteo MTD Reply; Meta MTD Reply.

First, even if unjust enrichment could be independently pleaded,[4] Plaintiffs have failed to

---

[2] *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("court need not [] accept as true allegations that contradict matters properly subject to judicial notice").

[3] Indeed, Plaintiffs' theory under the unfair and fraudulent prongs of the UCL as well as under the GBL challenges Google's purported "secret[]" disclosure, interception, and misuse of their alleged sensitive data. *See* Compl. ¶¶ 349–350, 366. Such secret activity contradict "matters properly subject to judicial notice" and thus must be pleaded with particularity—which Plaintiffs have failed to do. *See Sprewell*, 266 F.3d at 988; Google MTD at 18–19.

[4] *See* Google MTD at 20 (collecting cases dismissing unjust enrichment claims); Meta MTD at 22.

plausibly plead such a claim. Plaintiffs' own cited authority recognizes that, to state a claim, they "must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); Opp'n at 42–43; Google MTD at 20. Though Plaintiffs *argue* that they "allege Defendants received, used, and retained health data (and profits therefrom)," Opp'n at 43, they cite no actual allegation in support of this argument. *See also id*. at 44 (citing Compl. ¶¶ 180–191, 195, 306, *none* of which allege factual conduct as to Google). This distinguishes the cases Plaintiffs attempt to rely on. *See, e.g., In re Facebook, Inc. Internet Tracking Litig*, 956 F. 3d 589, 596 (9th Cir. 2020) (alleging that Facebook "sold [user profiles] to advertisers to generate revenue"); *In re Google Location Hist. Litig*., 514 F. Supp. 3d 1147, 1151 (N.D. Cal. 2021) (Google allegedly "monetize[s] the location data it collects and stores in a myriad of ways"). This claim thus fails.

Finally, Plaintiffs' UCL claim is barred for lack of standing. Contrary to Plaintiffs' contentions (Opp'n at 35), "[t]he weight of the authority in the district and the state . . . point in the opposite direction: that 'the mere misappropriation of personal information does not establish compensable damages" to confer UCL standing. *Katz-Lacabe*, 2023 WL 2838118, at *1–2, 8 (collecting cases) (no standing where Oracle collected "personal information," created profiles with "health and wellness" data, and sold such data). Nor are conclusory allegations of the "value" of data sufficient for UCL standing. *See Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (no standing where plaintiffs have not "attempted or intended to participate in this [PII] market, or otherwise to derive economic value from their PII"). Even if some plaintiffs allegedly paid for GoodRx's services, such an act is still insufficient. *See Rodriguez*, 2021 WL 2026726, at *8 (no standing "even if plaintiffs did transact with the apps—by, for instance, making 'in-app purchases'"). Plaintiff's reliance on consumer products unrelated to personal data is inapposite. *See* Opp'n at 35–36; *Rodriguez*, 2021 WL 2026726 at *8 ("no federal court has wedged individual digital data into the UCL's 'money or property' box").

**CONCLUSION**

For the above reasons, the Court should dismiss Plaintiffs' complaint in its entirety as to Google.

Dated: August 24, 2023

**WILLKIE FARR & GALLAGHER LLP**

By: /s/ *Benedict Y. Hur*
Benedict Y. Hur
Simona A. Agnolucci
Eduardo E. Santacana
Tiffany Lin
Yuhan Alice Chi

*Attorneys for Defendant Google LLC*