1  Michael J. Shipley (SBN 233674)
   mshipley@kirkland.com
2  KIRKLAND & ELLIS LLP
   555 South Flower Street, Suite 3700
3  Los Angeles, CA 90071
   Telephone:    (213) 680-8400
4  Facsimile:    (213) 680-8500

5  Olivia Adendorff (admitted *pro hac vice*)
   olivia.adendorff@kirkland.com
6  KIRKLAND & ELLIS LLP
   4550 Travis Street
7  Dallas, TX  75205
   Telephone:    (214) 972-1758
8  Facsimile:    (214) 972-1771

9  Martin L. Roth (admitted *pro hac vice*)
   martin.roth@kirkland.com
10 Alyssa C. Kalisky (admitted *pro hac vice*)
   alyssa.kalisky@kirkland.com
11 KIRKLAND & ELLIS LLP
   300 N. LaSalle
12 Chicago, IL 60654
   Telephone:    (312) 862-2000
13 Facsimile:    (312) 862-2200

14 *Attorneys for Defendant*
   *GoodRx Holdings, Inc.*

15

16                  **UNITED STATES DISTRICT COURT**
                  **NORTHERN DISTRICT OF CALIFORNIA**
17                   **SAN FRANCISCO DIVISION**

18 | JANE DOE, JANE DOE II, JOHN DOE, | CASE NO. 3:23-CV-00501-AMO |
   | E.C., JOSE MARQUEZ, and HOLLIS | |
19 | WILSON, individually and on behalf of all | **DEFENDANT GOODRX HOLDINGS,** |
   | others similarly situated, | **INC.'S RESPONSE TO ORDER TO** |
20 | | **SHOW CAUSE** |
   | Plaintiffs, | |
21 | | Judge:          Honorable Araceli |
   | v. | Martínez-Olguín |
22 | | Action Filed:   May 26, 2023 |
   | GOODRX HOLDINGS, INC., CRITEO | Hearing Date:  November 14, 2023 |
23 | CORP., META PLATFORMS, INC., AND | Time:            2:30 p.m. |
   | GOOGLE LLC, | Courtroom:     5, 2nd Floor, Oakland |
24 | | |
   | Defendants. | |
25

26

27

28

Defendant GoodRx Holdings, Inc. ("GoodRx") hereby responds to the Court's Order to Show Cause For Failure To Comply With Civil Local Rule 3-13.

As the Court notes, *Hodges v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127 (S.D. Fla.) ("*Hodges*") was filed on Friday, October 27, 2023. Declaration of Martin L. Roth ("Roth Decl.") ¶ 8. The next business day, the *Hodges* plaintiffs' counsel reached out to lead Plaintiffs' counsel here to notify them of the *Hodges* action and to meet and confer to determine whether they and their clients would participate in the *Hodges* settlement. *Id.* ¶¶ 11–12. On Wednesday November 1, 2023, GoodRx filed with this Court notice of the *Hodges* action. Dkt. 150 (the "Notice"). This prompt notice within three business days—served via ECF after Plaintiffs' counsel had already been notified of the *Hodges* action—complied with Civil Local Rule 3-13 ("LR 3-13") in all material respects. Roth Decl. ¶ 14.

Importantly, GoodRx at all times acted in good faith and there is no prejudice to Plaintiffs. Once GoodRx learned that the *Doe* Plaintiffs' counsel had apparently declined to participate in the *Hodges* settlement, GoodRx immediately notified the Court of the *Hodges* action via the Notice, which described the *Hodges* action and stated its procedural posture, relationship to this action, and how it impacted this action. *Id.* ¶ 13. Because there is a conditional settlement in *Hodges*, Rule 23 establishes a full and fair process for Plaintiffs to object to that settlement if they wish. Through the class action settlement notice and approval process now beginning in Florida, the *Doe* Plaintiffs will have an opportunity to object to or opt out of the *Hodges* settlement, should they choose either of those paths. Nothing about GoodRx's Notice here changes those rights in any way.

Accordingly, in light of GoodRx's prompt notice to the Court of the newly-pending *Hodges* matter, and the *Doe* Plaintiffs' prompt awareness of and ability to be fully and fairly heard in the *Hodges* matter, sanctions are not appropriate.

## I.    GOODRX'S NOTICE COMPLIED WITH CIVIL LOCAL RULE 3-13.

GoodRx's Notice of the *Hodges* matter, filed with this Court on November 1, 2023 (Dkt. 150), complied in all material respects with LR 3-13, both in terms of timing and content.

1
2

**A.     GoodRx Filed Notice of the *Hodges* Matter "Promptly" After It Was Filed, in Compliance with LR 3-13(a).**

3
4

GoodRx's Notice satisfies LR 3-13(a), because it was filed "promptly"—within three business
days—of GoodRx's knowledge that the *Hodges* matter was "pending in any other federal or state court."
5
6
Civil L.R. 3-13(a).  Although it did not cite LR 3-13 and was titled a "Notice of Nationwide Class
Settlement" rather than a "Notice of Pendency of Other Action or Proceeding," the filing GoodRx made
7
8
on November 1, 2023 provided clear and transparent notice of the *Hodges* matter (which was filed on
Friday afternoon, October 27, 2023 and received a judicial assignment on Monday, October 30, 2023).
9
The Notice also clearly explained the relationship between *Hodges* and this case.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Critically, the *Hodges* action was not "pending in any other federal or state court" at any time prior
to October 27, 2023.  In fact, the *Hodges* matter started out very differently from traditional litigation.
After the FTC publicly announced a settlement with GoodRx related to claims arising from the same
purported conduct at issue here, Milberg Coleman Bryson Phillips Grossman ("Milberg")—one of the
largest and most active data privacy plaintiffs' firms in the country—threatened "mass arbitration" against
GoodRx.  Specifically, beginning in March 2023, Milberg contacted GoodRx and advised that it had been
retained by well over 2,500 GoodRx customers, including the *Hodges* plaintiffs, and that each intended to
pursue an individual arbitration against GoodRx.  Roth Decl. ¶ 4.  As this Court is aware from GoodRx's
pending Motion to Compel Arbitration, *see* Dkt. 107, most GoodRx users (including most of the *Doe*
named plaintiffs) are subject to binding arbitration agreements.  "Mass arbitration" is a relatively new
phenomenon in which "enterprising and (highly) capitalized attorneys file arbitration demands on behalf
of individual claimants subject to mandatory arbitration agreements . . . against the same defendant for the
same course of conduct.  The attorneys then do this again.  And again.  And again."  Maria J. Glover,
*Mass Arbitration*, 74 STAN. L. REV. 1283, 1289 (2022).  The fees associated with mass arbitrations can
be exorbitant.  *See, e.g.*, *Uber Techs. v. Am. Arb. Ass'n*, 167 N.Y.S.3d 66, 67–70 (App. Div. 2022)
(affirming that Uber cannot avoid paying the American Arbitration Association ***$91.6 million*** in

27
28

1  administrative fees for handling 31,000 "nearly identical" arbitration cases brought by customers, on top

2  of the $4.3 million it had already paid in filing fees alone).[1]

3      For months after March 2023, beginning before the Court had even appointed interim lead counsel

4  in this case, GoodRx and Milberg engaged in private and confidential discussions related to the mass

5  arbitration threat.  Roth Decl. ¶ 4.  These discussions eventually led to confidential settlement negotiations

6  with the aid of a highly experienced and well-respected mediator for potential resolution of Milberg's

7  mass arbitration threat and, along with it, potential class litigation so the matter could be settled on a global

8  basis.  *Id.*  Until October 27, 2023, however, there was no pending federal or state action and thus no

9  action to notice under LR 3-13(a).  On Monday, October 30, 2023, once a judge was assigned, the *Hodges*

10 plaintiffs filed a motion for preliminary approval of a class settlement that was reached between the parties

11 to that case as a result of the mass arbitration threat and the extensive efforts to address that threat.  *Id.* ¶¶

12 5, 9.  Within hours after that motion was filed, plaintiffs' counsel in the *Hodges* matter—as they had

13 informed GoodRx they would—reached out to lead Plaintiffs' counsel in this case to discuss their potential

14 participation in the *Hodges* settlement.[2]  *See id.* ¶ 11 at **Ex. 4**, Oct. 30, 2023 Email from G. Klinger to L.T.

15 Fisher (requesting call); *id.* ¶ 12 at **Ex. 5**, Oct. 31, 2023 Email from G. Klinger to L. T. Fisher (following

16 up on call and enclosing *Hodges* preliminary approval filings).  GoodRx gave both sets of counsel time to

17 discuss before taking further action.  *Id.* ¶ 13.  But once it became apparent that Plaintiffs' counsel in this

18 case intended to object to, rather than participate in, the *Hodges* settlement, GoodRx filed its Notice.  *Id.*

19     The term "promptly" is not defined in LR 3-13(a), and courts routinely find that time periods

20 measured in months (not days) are adequately "prompt" to comply with similar notice requirements.  *See,*

21 *e.g.*, *Rubin v. Air China Ltd.*, 2011 WL 1002099, at *4 (N.D. Cal. Mar. 21, 2011) (noting that although an

22 8-day delay "may have caused some inconvenience," "California district courts have found that even

23

---

24  [1]  The *Doe* Plaintiffs' Co-Lead counsel are quite familiar with the concept of mass arbitration—some
25      have even credited them with being the *first* to attempt it.  *See* Glover, *supra*, at 1322–23 ("The first
        example of [mass arbitration] occurred, largely unnoticed, in 2011.  That year a California firm, Bursor
26      & Fisher, filed over 1,000 identical arbitral demands seeking to enjoin a proposed merger between
        AT&T and T-Mobile.").

27  [2]  Despite having knowledge of the *Hodges* matter since at least October 30, 2023, Plaintiffs' counsel in
28      this action have still never filed any notice under LR 3-13.

delays of a month or more" still satisfy 28 U.S.C. § 1446(b)'s requirement that notice of removal be filed and served "promptly"); *Delgado v. Bank of Am. Corp.*, 2009 WL 4163525, at *8 (E.D. Cal. Nov. 23, 2009) (56-day delay did not violate "prompt" notice requirement so as to warrant remand); *cf. Jara v. Aurora Loan Servs., LLC*, 2011 WL 2197659, at *5 (N.D. Cal. June 6, 2011) ("To the extent that Plaintiff argues that the several-day lapse [*i.e.*, 5-days] means that notice . . . was not filed 'promptly,' the court rejects that argument.").[3]  In sum, case law squarely supports a finding that GoodRx complied with LR 3-13(a)'s requirement to file notice of the *Hodges* matter "promptly" after it was filed.

**B.    GoodRx's Notice Included All Material Content Required Under LR 3-13(b).**

The content of GoodRx's Notice also complies with LR 3-13(b) in all material respects.

***First***, the Notice contains "a description of the other action," as required under LR 3-13(b)(1).  It notes that the case involved "six plaintiffs from California, Florida, Illinois, New Jersey, New York, and Pennsylvania (the '*Hodges* plaintiffs')" and related to "claims and allegations identical to those raised in this action regarding GoodRx's alleged disclosure of user data through its use of third-party marketing and analytics vendors."  Dkt. 150.

***Second***, the Notice sets forth a "brief statement" of the "procedural posture of the other action," as required under LR 3-13(b)(3)(A).  It explains that the parties in that action entered into an agreement for a nationwide class settlement on October 27, 2023, that the *Hodges* plaintiffs filed a motion for preliminary approval of the settlement on October 30, 2023, and that the *Hodges* court granted that motion on October 31, 2023.  The Notice further explains that the *Hodges* court set a final approval hearing date of March 7, 2024.

***Third***, the Notice provides a "brief statement" of "[t]he relationship of the other action to the action or proceeding pending in this district, and the nature of the overlap of subject matter and/or parties," as required under LR 3-13(b)(3)(B).  Specifically, the Notice explains that the *Hodges* matter involved six different plaintiffs from six different states who brought "claims and allegations identical to those raised in this action."  The Notice also explains that the nationwide settlement preliminarily approved in *Hodges*,

---

[3]   *Cf. Cobarruviaz v. Maplebear, Inc.* 2016 WL 5725076, at *1 (N.D. Cal. Sept. 30, 2016) (finding defendant had "clearly violated" LR 3-13 when it ***did not—in any manner—***notify the court of a subsequently-filed class action in Los Angeles Superior Court ***for over seven months***).

if granted final approval, would "fully release and resolve all claims against GoodRx arising out of GoodRx's alleged improper disclosure of users' data including through its use of marketing and analytics vendors on behalf of a class consisting of all U.S. residents, including Plaintiffs, who used the GoodRx platform—the same claims and conduct alleged here." The Notice goes on to note that as a matter of course, the Plaintiffs in this action will "have the opportunity to either join and participate in the *Hodges* settlement"—including by formally objecting to final approval—or to "opt out and pursue their claims on an individual basis."

**Fourth**, in light of the impact a class settlement would have on this action, and due to the parallel actions with overlapping claims and putative classes, GoodRx raised for the Court's consideration postponing the November 21 motion hearing in this action. This was an effort to "avoid conflicts" with the *Hodges* court's preliminary approval order and any other order, as well as an effort to "conserve resources and promote an efficient determination of the action"—as contemplated by LR 3-13(b)(3)(C) and (D).

**Finally**, GoodRx acknowledges that the Notice did not attach a copy of the *Hodges* complaint, as contemplated by LR 3-13(b)(2). GoodRx's Notice did, however, provide the case number, court, and citations to the *Hodges* complaint's docket number. Nevertheless, to ensure the *Hodges* complaint is lodged on this Court's docket, GoodRx hereby attaches a copy of that complaint to this filing.[4] *See* Roth Decl. ¶ 8 at **Ex. 1**.

### C. Because GoodRx Complied with the Substantive Requirements of LR 3-13, Sanctions Would be Inappropriate.

Although GoodRx's Notice was titled as a "Notice of Nationwide Class Settlement" rather than a "Notice of Pendency of Other Action or Proceeding" and provided the case and docket number rather than attaching the *Hodges* complaint, GoodRx substantively complied with all other aspects of LR 3-13. GoodRx's intent in filing its Notice was to comply with the spirit and purpose undergirding this local rule: to promptly apprise this Court of a similar action pending in another court and its potential impact on this

---

[4] If preferred, GoodRx can also re-file its Notice with the *Hodges* Complaint attached, re-styled as a Notice of Pendency of Other Action or Proceeding, and include any other modifications as required by the Court.

case. Any technical infraction or deficiencies under LR 3-13 were unintentional—and certainly not the type of "bad faith" or "grossly negligent, reckless, or willful conduct" of the type or nature that would warrant sanctions. *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443339, at *5 (N.D. Cal. May 6, 2022) (citing *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478-80 (9th Cir. 1989)) (rejecting argument that defendant's failure to file a LR 3-13 notice for related cases, including one pending in another court for ***eight months***, warranted sanctions). Like in *Utne*, Plaintiffs' counsel "have made no allegations that support a specific finding of bad faith or gross negligence on [GoodRx's] part." *Id.* Here, the parallel class action was pending for just three business days before GoodRx filed its Notice, and the delay in providing immediate notice to the Court was warranted to allow the *Hodges* and *Doe* plaintiffs time to discuss the *Doe* Plaintiffs' potential participation in the settlement before alerting the Court as to how the parallel case would affect this case. Roth. Decl. ¶¶ 13–14. That is not bad faith and sanctions are not warranted. *See also Zambrano*, 885 F.2d at 1478–80 (discussing the limits on and purpose of enforcing sanctions and noting that Congress's grant of power to district courts to promulgate local rules is "not a discretionless or roving commission for the district court to bludgeon violators of local or federal rules").

**D.   Plaintiffs Will Have a Full and Fair Opportunity to Object to the *Hodges* Settlement.**

Equally important, sanctions are inappropriate here because any alleged violation of LR 3-13 will not cause any prejudice to the *Doe* Plaintiffs. Indeed, the recent decision in *Utne* is particularly on point. 2022 WL 1443339, at *5. In that case, the defendant ***never*** filed a notice under LR 3-13 to apprise the *Utne* Court and plaintiffs of five other class actions that were filed after *Utne*, including one that had been proceeding for ***three years***. *Id.* at *4–5; Def.'s Opp'n to Pl.'s Mot. for Sanctions for Violation of Loc. Rules, *Utne v. Home Depot U.S.A.*, No. 3:16-CV-01854-RS, Dkt. 255 (N.D. Cal. Apr. 14, 2022). The court in *Utne* nonetheless found that sanctions were inappropriate due to a lack of any evidence of bad faith or gross negligence; notably, the court found that its conclusion that "sanctions are inappropriate here" was "bolstered by two other facts: first, ***Plaintiffs have avenues to object to any possible settlement, and second, any 'prejudice' would be mostly or entirely to Plaintiffs' counsel, not the clients themselves, as the classes overlap.***" *Utne*, 2022 WL 1443339, at *5 (emphasis added). The same is true here. There is no prejudice to Plaintiffs, because they will have a full and fair opportunity to either participate in or

1  object to the settlement under the well-established procedures and protections set forth in Federal Rule of

2  Civil Procedure 23.[5]  Alternatively, they may opt out of the settlement class in *Hodges*.[6]

3         Additionally, as *Utne* confirms (and contrary to Plaintiffs' argument that their "first-filed" action

4  is the ***only*** action for which GoodRx could engage in settlement discussions), overlapping putative class

5  actions, even in multiple federal courts, ***routinely*** proceed in parallel.[7]  2022 WL 1443339, at *5.  Indeed,

6  case law demonstrates that class actions frequently settle despite the pendency of a parallel class action in

7  another district, which is wholly consistent with federal courts' policy of encouraging settlement.  *See,*

8  *e.g.*, *Tuttle v. Audiophile Music Direct Inc.*, 2023 WL 3318699, at *1–2, 10 (W.D. Wash. May 9, 2022)

9  (granting preliminary approval of nationwide class action despite parallel proposed class actions pending

10 in the Northern District of Illinois, the Central District of California, and the Northern District of

11 California); *CO Craft, LLC v. Grubhub Inc.*, 2023 WL 3763525, at *2, 16, 22 (D. Colo. June 1, 2023)

12 (endorsing the substance of proposed class settlement over objections from plaintiffs of a pending putative

13 class action in the Northern District of Illinois, noting that "speculation arising from the mere existence

14 of parallel litigation and purported expansion of the settlement class is insufficient evidence of a reverse

15 auction to deny preliminary approval"); *Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 877 (S.D.

16 Iowa 2020) (granting certification of class and approving settlement as fair and reasonable despite a

17 competing putative class in the Eastern District of New York involving the same defendant and issues);

18 *Mandel v. Grande Cosmetics, LLC*, 2023 WL 7109893, at *1 (N.D. Cal. Oct. 27, 2023) (noting the Ninth

19

20  [5]  GoodRx notes that the *Doe* Plaintiffs have also filed a motion to intervene in the *Hodges* case, seeking
21  additional opportunities to be heard beyond those already guaranteed through the class notice and
   objection process set forth in the Federal Rules.  The Florida Court has issued a Show Cause Order
22  requiring, among other things, a response to the *Doe* Plaintiffs' motion to intervene.  *Hodges*, Case
   No. 1:23-cv-24127, Dkt. 10 (Nov. 3, 2023).

23  [6]  If the *Doe* Plaintiffs choose to opt-out, they would be free to continue litigating their claims against
24  GoodRx in this suit, as individuals.  Further, the settlement in *Hodges* is limited only to GoodRx and
   the proposed settlement class.  It does not extend to the other Defendants in this case.  Even if the
25  *Hodges* settlement receives final approval, the remaining Defendants in this case are not parties to that
26  case or that settlement.

27  [7]  As will be discussed more fully in GoodRx's forthcoming Opposition to Plaintiffs' Motion for Order
   Enjoining Defendant, the Order Granting Plaintiffs' Motion for Interim Co-Lead Counsel does not
28  prohibit or limit GoodRx's ability to engage in settlement discussions with the Milberg firm either.

1   Circuit has "embraced the Third Circuit's conclusion that there is no basis under the All Writs Act to

2   enjoin a settlement in another district court when there is no pending settlement in the court asked to issue

3   an injunction.").

4            It simply cannot be—and is not—the case that **only** those parallel class actions that happen to be

5   filed first are permitted to settle.  Later-filed class settlements are often approved—so long as they are

6   fair, reasonable, and adequate.  For example, the court in *Cochran v. Kroger* granted final approval of a

7   settlement of a nationwide data breach class action, 2022 WL 2126696, at *1–5 (N.D. Cal. Mar. 24, 2022),

8   after denying a motion to intervene and overruling objections by first-filed plaintiffs in a pending parallel

9   federal class action in Ohio.  *See* Ord. Denying Mot. to Intervene, *Cochran v. Kroger Co.*, No. 5:21-CV-

10  01887-EJD, Dkt. 99 (N.D. Cal. Nov. 5, 2021); Mot. to Intervene, *Cochran v. Kroger Co.*, No. 5:21-CV-

11  01887-EJD, Dkt. 57 (N.D. Cal. July 30, 2021).  Likewise, in *Gallucci v. Boiron, Inc.*, the court approved

12  a settlement of the third-filed class action even after the complaint was amended to include claims from

13  previously-filed putative class actions.  2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) *aff'd Galluci v.*

14  *Gonzales*, 603 F. App'x 533 (9th Cir. 2015); Objection to Mot. for Approval of Settlement Agreement,

15  *Gallucci v. Boiron, Inc.*, No. 3:11-cv-02039-JAH-NLS, Dkt. 96 (S.D. Cal. July 27, 2012).

16           Such settlements need not include the earlier-filed actions' lawyers in the negotiations.  This is a

17  point that should be well understood by the *Doe* Plaintiffs' attorneys, as Co-Lead Counsel here recently

18  obtained approval of a later-filed class settlement without "the knowledge of" the first-filed class counsel

19  in the settlement negotiations, and despite the fact that the settlement "would subsume the [first-filed]

20  action."  *Maree v. Deutsche Lufthansa AG*, 2023 WL 2563914, at *7–8 (C.D. Cal. Feb. 13, 2023) (granting

21  preliminary approval for class settlement represented by Bursor & Fisher **over objections of first-filed**

22  **putative class plaintiffs**).

23           The Ninth Circuit has recognized that "there is simply no support for the proposition that a court

24  may enjoin parties from participating in or reaching a bona fide settlement in another federal court that

25  may dispose of claims before it—particularly when there is no pending settlement in the enjoining court

26  and the other federal court is . . . charged with attempting to reach a global settlement."  *Negrete v. Allianz*

27  *Life Ins. Co. of North America*, 523 F.3d 1091, 1099 (9th Cir. 2008) (quoting *Grider v. Keystone Health*

28  *Plan Cent., Inc.*, 500 F.3d 322, 331 (3d Cir. 2007)).  And here—despite their efforts to misconstrue the

1    record—Plaintiffs never approached GoodRx to express any interest in mediation or settlement of this

2    matter.   Roth Decl. ¶ 7.   Rather, the Parties jointly informed the Court that all parties "believe it is

3    premature to engage in ADR or settlement discussions at this time," Dkt. 80 ¶ 12, a position reached based

4    on Plaintiffs' aggressive litigation tactics and disregard for clear arbitration clauses in GoodRx's Terms

5    of Use.   Additionally, after the Court referred this case to mediation, GoodRx participated in the initial

6    pre-mediation call, and ***all*** parties ***agreed*** to schedule the mediation after decisions on preliminary pending

7    motions.  Roth Decl. ¶ 7.

8         In short, despite never making any effort to discuss settlement with GoodRx, Plaintiffs now cry

9    foul simply because someone else did.   But Plaintiffs' view of the world "would lead to the conclusion

10   that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the

11   competing cases could settle without being accused by another of participating in a collusive reverse

12   auction"—which the Ninth Circuit has firmly rejected.   *Negrete*, 523 F.3d at 1100 (quoting *Rutter &*

13   *Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)).

14        That is exactly what Plaintiffs have already done here.   Without ***any basis or evidence whatsoever***,

15   Plaintiffs have made the inflammatory allegation that the *Hodges* settlement was an improper "reverse

16   auction."   To be clear, a "reverse auction is said to occur when 'the defendant in a series of class actions

17   picks the most ineffectual class lawyers to negotiate a settlement with . . . the hope that the district court

18   will approve a weak settlement that will preclude other claims against the defendant." *Tuttle*, 2023 WL

19   3318699, at *4 (quoting *Negrete*, 523 F.3d at 1099–1100).   That was not the case here at all.

20        As will be explained more fully in GoodRx's forthcoming Opposition to Plaintiffs' Motion for

21   Order Enjoining Defendant, the *Hodges* settlement is undoubtedly fair, reasonable, and adequate for the

22   individual members of the settlement class.   It was the result of a hard-fought, arms-length negotiation

23   reached with the guidance and assistance of a well-respected mediator, in response to a substantial and

24   legitimate threat of mass arbitration on behalf of thousands of individuals.  Roth Decl. ¶ 6.  Simply put,

25   the settlement has ***none*** of the "red flags" or "hallmarks" that may indicate improper collusion.   For

26   starters, Milberg counsel are in no way "ineffectual lawyers."   Milberg touts itself as having "decades of

27   experience handling complex class actions involving consumer protection and privacy cases[;] [t]he firm's

28   lawyers are regularly recognized as leaders in the plaintiffs' bar[;] … and [they] have held … leadership

positions in numerous and significant consumer protection-related class actions," "privacy cases" involving pixels and technology like that at issue here, "and multi-district litigation across the country." *Id.* ¶ 9 at **Ex. 2**. Indeed, Milberg notes that since its "founding in 1965, [Milberg] has … recovered over $50 billion in verdicts and settlements." Thus, clearly, GoodRx did not choose to negotiate with Milberg "because" of any perceived "ineffectiveness." *Id.*

In any event, and critically, Plaintiffs will have a full and fair opportunity to voice any objections to the settlement through the process expressly set forth under Federal Rule of Civil Procedure 23(e).[8] There is simply no prejudice to anyone in requiring them to proceed through that process and sanctions plainly should not issue in these circumstances. *See Utne*, 2022 WL 1443339, at *5.

## **CONCLUSION**

GoodRx respectfully submits that it complied in all material respects with LR 3-13 in a manner that demonstrates no sanctions are warranted here. GoodRx had every intention to (and did) promptly notify this Court not only of the newly-pending *Hodges* matter but also of the impact of the class settlement that has been achieved in that case on behalf of GoodRx users nationwide.

---

[8] To be clear, Plaintiffs here have the option of objecting to the settlement in *Hodges*, accepting the settlement and its benefits, or opting out of the settlement class in *Hodges*. *See* Roth Decl. ¶ 10 at **Ex. 3**, *Hodges*, Case No. 1:23-cv-24127, Dkt. 8 (Oct. 31, 2023) ("Order on Preliminary Approval of Class Action Settlement").

1    DATED:  November 8, 2023                    Respectfully submitted,

2                                                KIRKLAND & ELLIS LLP

3
                                                 */s/ Martin L. Roth*
4                                                _____
                                                 Martin L. Roth
5
                                                 Michael J. Shipley (SBN 233674)
6                                                mshipley@kirkland.com
                                                 KIRKLAND & ELLIS LLP
7                                                555 South Flower Street, Suite 3700
                                                 Los Angeles, California 90071
8                                                Telephone:    (213) 680-8400
                                                 Facsimile:    (213) 680-8500
9
                                                 Olivia Adendorff (admitted *pro hac vice*)
10                                               olivia.adendorff@kirkland.com
                                                 KIRKLAND & ELLIS LLP
11                                               4550 Travis Street
                                                 Dallas, TX  75205
12                                               Telephone:    (214) 972-1758
                                                 Facsimile:    (214) 972-1771
13
                                                 Martin L. Roth (admitted *pro hac vice*)
14                                               martin.roth@kirkland.com
                                                 Alyssa C. Kalisky (admitted *pro hac vice*)
15                                               alyssa.kalisky@kirkland.com
                                                 KIRKLAND & ELLIS LLP
16                                               300 N. LaSalle
                                                 Chicago, IL 60654
17                                               Telephone:    (312) 862-2000
                                                 Facsimile:    (312) 862-2200
18
                                                 *Attorneys for Defendant*
19                                               *GoodRx Holdings, Inc.*

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On November 8, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF.  All copies of documents required to be served by Fed. R. Civ. P. 5(a) and Civil L.R. 5-1 have been so served.

*/s/ Martin L. Roth*
Martin L. Roth