Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 74205
Telephone: (214) 972-1758
Facsimile: (214) 972-1771

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | CASE NO. 3:23-CV-00501-AMO<br><br>**DEFENDANT GOODRX HOLDINGS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER ENJOINING DEFENDANT GOODRX**<br><br>Judge: Honorable Araceli Martínez-Olguín<br>Action Filed: May 26, 2023<br>Hearing Date: December 14, 2023<br>Time: 2:00 PM<br>Courtroom: 10, 19th Floor |

# TABLE OF CONTENTS

**Page(s)**


INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT .........................................................................................................5

I. The All Writs Act Does Not Support The Requested Injunction ..................5

II. No Authority Permits Plaintiffs To Interfere With Settlements Outside This District........9

A. Rule 23(g)(3) Cannot Be Used as a Vehicle to Control Class Litigation Across the Entire Country..........................................................................9

B. The First-Filed Rule Does Not Operate as Plaintiffs Suggest. ..........................12

III. The *Hodges* Settlement Is Reasonable, Fair, And Adequate ..........................15

A. The Settlement Process Was Fair. ...............................................................16

B. The Settlement Terms Are Fair......................................................................20

C. Plaintiffs Will Have a Full and Fair Opportunity to Object to the *Hodges* Settlement. ..................................................................................................24

CONCLUSION.....................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adkins v. Facebook, Inc.*,
No. 3:18-cv-05982-WHA ....................20

*Adkins v. Nestle Purina PetCare Co.*,
779 F.3d 481 (7th Cir. 2015) ....................12

*Alabama v. U.S. Army Corps of Eng'rs*,
424 F.3d 1117 (11th Cir. 2005) ....................7

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) ....................14

*Amaro v. Anaheim Arena Mgmt., LLC*,
69 Cal. App. 5th 521 (2021), *review denied* (Dec. 29, 2021) ....................16

*Ambrose v. Boston Globe Media Partners, LLC*,
No. 1:22-cv-10195-RGS, Dkt. 51 (D. Mass. May 24, 2023) ....................21

*Angus, et al. v. Flagstar Bank, FSB*,
No. 2:21-cv-10657-AJT-DRG, Dkt. 46 (E.D. Mich. Sept. 21, 2021) ....................11

*Anthony Williams et al. v. Facebook Inc.*,
No. 3:18-cv-01881-RS, Dkt. 261 (N.D. Cal. Oct. 20, 2022) ....................20

*Bedwell v. Braztech Int'l, L.C.*,
No. 17-CIV-22335, 2018 WL 830073 (S.D. Fla. Feb. 9, 2018) ....................10

*Bergh v. State of Wash.*,
535 F.2d 505 (9th Cir. 1976) ....................5

*Bielski v. Coinbase, Inc.*,
No. 3:21-cv-07478-WHA, 2022 WL 17650535 (N.D. Cal. Dec. 13, 2022) ....................9, 10

*Boren v. Am. Nat'l Ins.*,
No. 1:06-cv-00294, Dkt. 44 (W.D. Tex. Oct. 12, 2006) ....................24

*Bowerman v. Field Asset Servs., Inc.*,
39 F.4th 652 (9th Cir. 2022), *as amended*, 60 F.4th 459 (9th Cir. 2023) ................................23

*Burrow v. Forjas Taurus S.A.*,
No. 16-CIV-21606, 2018 WL 809439 (S.D. Fla. Feb. 9, 2018) ..............................................10

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021) ......................................................................22

*Campanelli v. Image First Healthcare Laundry Specialists, Inc.*,
No. 15-CV-04456-PJH, 2018 WL 6727825 (N.D. Cal. Dec. 21, 2018)..................................21

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
611 F.2d 738 (9th Cir. 1979) .....................................................................................................14

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...................................................................................................15

*CO Craft, LLC v. Grubhub Inc.*,
No. 20-cv-01327-NYW-NRN, 2023 WL 3763525 (D. Colo. June 1, 2023)) ...................12, 16

*Cochran v. Kroger Co.*,
No. 5:21-CV-01887-EJD, Dkt. 57 (N.D. Cal. July 30, 2021) .................................................13

*Cochran v. Kroger Co.*,
No. 5:21-CV-01887-EJD, Dkt. 99 (N.D. Cal. Nov. 5, 2021) ...........................................13, 25

*Cohorst v. BRE Properties, Inc.*,
No. 3:10-CV-2666-JM-BGS, 2011 WL 3489781 (S.D. Cal. July 19, 2011).....................16, 25

*Gallucci v. Boiron, Inc.*,
No. 3:11-cv-02039-JAH-NLS, Dkt. 96 (S.D. Cal. July 27, 2012)....................................13, 14

*Grider v. Keystone Health Plan Cent., Inc.*,
500 F.3d 322 (3d Cir. 2007).....................................................................................................5, 8

*Hashemi v. Bosley, Inc.*,
No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022).......................16

*Hodges et al. v. GoodRx Holdings, Inc.*,
Case No. 1:23-cv-24127 (S.D. Fla.) ...........................................................................................1

*Huynh v. Quora, Inc.*,
No. 18-CV-07597-BLF, 2019 WL 11502874 (N.D. Cal. Apr. 11, 2019) ....10

*Imran v. Vital Pharms., Inc.*,
No. 18-CV-05758-JST, 2019 WL 1509180 (N.D. Cal. Apr. 5, 2019) ....10

*In re Advocate Aurora Health Pixel Litig.*,
No. 2:22-cv-01253-JPS, Dkt. 36 (E.D. Wisc. Aug. 21, 2023)....21, 22

*In re Am. Online Spin-Off Accts. Litig.*,
No. 2:03-cv-06971-RSWL-PLA, 2005 WL 5747463 (C.D. Cal. May 9, 2005) ....13

*In re Checking Acct. Overdraft Litig.*,
859 F. Supp. 2d 1313 (S.D. Fla. 2012) ....13

*In re: GE/CBPS Data Breach Litig.*,
No. 1:20-cv-02903, Dkt. 123 (S.D.N.Y. Mar. 28, 2023)....16

*In re Google Assistant Priv. Litig.*,
No. 5:19-cv-04286-BLF, 2020 WL 7342713 (N.D. Cal. Dec. 14, 2020)....10

*In re Jimmy John's Overtime Litig.*,
877 F.3d 756 (7th Cir. 2017) ....13

*In re JPMorgan Chase LPI Hazard Litig.*,
No. 3:11-cv-03058-JCS, 2013 WL 3829271 (N.D. Cal. July 23, 2013) ....25

*In re Life Invs. Ins. Co. of Am.*,
589 F.3d 319 (6th Cir. 2009) ....7

*In re LinkedIn Advert. Metrics Litig.*,
No. 5:20-cv-08324-SVK, 2021 WL 1599289 (N.D. Cal. Apr. 23, 2021) ....10

*In re Managed Care Litig.*,
236 F. Supp. 2d 1336 (S.D. Fla. 2002) ....13

*In re Nest Labs Litig.*,
No. 14-CV-01363-BLF, 2014 WL 12878556 (N.D. Cal. Aug. 18, 2014)....10

*In re: Novant Health, Inc.*,
No. 1:22-cv-00697, Dkt. 55 (M.D.N.C. Nov. 6, 2023)....21, 22

*In re Vizio, Inc., Consumer Privacy Litig.*,
No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638 (C.D. Cal. July 31, 2019)......................20

*In re Wawa, Inc. Data Sec. Litig.*,
No. 22-1950, 2023 WL 7210345 (3d Cir. Nov. 2, 2023) ......................................................24

*In re Zoom Video Commc'ns, Inc. Priv. Litig.*,
No. 20-cv-02155-LB, 2022 WL 1593389 (N.D. Cal. Apr. 21, 2022) ....................................20

*Javier v. Assurance IQ, LLC*,
No. 20-CV-02860-CRB, 2023 WL 3933070 (N.D. Cal. June 9, 2023)..................................22

*Keefe John et al. v. Froedtert Health, Inc.*,
No. 2023-cv-001935, Dkt. 32 (Wis. Cir. Ct. June 2, 2023)....................................................21

*Mandel v. Grande Cosms., LLC*,
No. 3:22-cv-00071-JD, 2023 WL 7109893 (N.D. Cal. Oct. 27, 2023) .......................6, 7, 8, 12

*Maree v. Deutsche Lufthansa AG*,
No. 8:20-cv-00885-SVW-MRW, 2022 WL 5052582 (C.D. Cal. Sept. 30, 2022) ..................18

*Maree v. Deutsche Lufthansa AG*,
No. 8:20-cv-00885-SVW-MRW, 2023 WL 2563914 (C.D. Cal. Feb. 13, 2023)........17, 18, 19

*Maree v. Deutsche Lufthansa AG*,
No. 8:20-cv-00885-SVW-MRW, Dkt. 222 (C.D. Cal. Aug. 21, 2023)..................................18

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012), *overruled on other issue by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (en banc) .....................22

*McClendon v. Sensa Prods., LLC*,
No. 4:11-cv-01650-YGR, 2011 WL 13258078 (N.D. Cal. Nov. 15, 2011) ............................11

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*,
No. 3:11-cv-01892-EMC, 2012 WL 3277222 (N.D. Cal. Aug. 9, 2012)..........................13, 14

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
523 F.3d 1091 (9th Cir. 2008) .......................................................................................... *passim*

*Nunez v. Supervalu, Inc.*,
No. 13-cv-626-WQH-JMA, 2014 WL 2759077 (S.D. Cal. June 16, 2014) ............................24

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) ............................................................................................14

*Pearson v. Target Corp.*,
968 F.3d 826 (7th Cir. 2020) ............................................................................................11

*Perkins v. Am. Nat'l Ins. Co.*,
446 F. Supp. 2d 1350 (M.D. Ga. Aug. 18, 2006) ..............................................................6, 13

*Primo v. Pac. Biosciences of California, Inc.*,
No. 4:11-cv-06499-CW, 2013 WL 4482739 (N.D. Cal. Aug. 20, 2013) ..........................7, 8, 9

*Razo v. AT&T Mobility Servs., LLC*,
No. 1:20-cv-00172-NONE-HBK, 2021 WL 4847834 (E.D. Cal. Oct. 15, 2021) ...................10

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ..............................................................................................8

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
314 F.3d 1180 (10th Cir. 2002) ..........................................................................................16

*Saleh v. Titan Corp.*,
353 F. Supp. 2d 1087 (S.D. Cal. 2004)...............................................................................7

*Salmonson v. Bed Bath & Beyond, Inc.*,
No. 2:11-cv-02293-SVW-SS, 2012 WL 12919187 (C.D. Cal. Apr. 27, 2012).......................10

*Santos v. Carrington Mortg. Servs., LLC*,
No. 2:15-cv-00864-WHW-CLW, 2017 WL 215969 (D.N.J. Jan. 18, 2017)..........................10

*Smith v. CRST Van Expedited, Inc.*,
No. 3:10-cv-01116-BEN-WMC, 2012 WL 5873701 (S.D. Cal. Nov. 20, 2012)....................16

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ........................23

*Swinton v. SquareTrade, Inc.*,
454 F. Supp. 3d 848 (S.D. Iowa 2020) ...................................................................12, 16

*Torliatt v. Ocwen Loan Servicing, LLC*,
No. 3:19-cv-04303-WHO, 2020 WL 10964876 (N.D. Cal. Oct. 2, 2020) ..........................9, 10

*Tuttle v. Audiophile Music Direct Inc.*,
No. 2:22-cv-01081-JLR, 2023 WL 3318699 (W.D. Wash. May 9, 2023) ........................12, 23

*Uschold v. NSMG Shared Servs., LLC*,
333 F.R.D. 157 (N.D. Cal. 2019)........................................................................................17

*Utne v. Home Depot U.S.A., Inc.*,
No. 16-cv-01854-RS, 2022 WL 1443339 (N.D. Cal. May 6, 2022) ................................12, 24

*Vigil v. Muir Med. Grp. IPA, Inc.*,
84 Cal. App. 5th 197 (2022), *review denied* (Jan. 25, 2023) ..............................................22

*White v. TransUnion, LLC*,
239 F.R.D. 681 (C.D. Cal. 2006) ....................................................................................9, 10

*Wis. Right to Life, Inc. v. Fed. Election Comm'n*,
542 U.S. 1305 (2004).............................................................................................................5

*Zepeda v. PayPal, Inc.*,
No. 4:10-cv-02500-SBA, 2014 WL 1653246 (N.D. Cal. Apr. 23, 2014)...............................25

**Statutes**

28 U.S.C. § 1407...................................................................................................................15

All Writs Act, 28 U.S.C. § 1651 ..............................................................................................1

**Rules**

Federal Rule of Civil Procedure 23 ............................................................................ *passim*

Federal Rule of Civil Procedure 23(e) ...............................................................2, 8, 15, 24

Federal Rule of Civil Procedure 23(e)(2) ...........................................................................20

Federal Rule of Civil Procedure 23(g)...........................................................................10, 11

Federal Rule of Civil Procedure 23(g)(3) ....................................................................8, 9, 10

Federal Rule of Evidence 408 ..........................................................................................19

## STATEMENT OF ISSUES

This Court must decide whether to invoke its extraordinary discretion under the All Writs Act, 28 U.S.C. § 1651, and issue an order (1) requiring GoodRx Holdings, Inc. ("GoodRx") to cease litigation in a matter pending in a sister federal district (*Hodges et al. v. GoodRx Holdings, Inc.*, Case No. 1:23-cv-24127 (S.D. Fla.) (hereinafter, "*Hodges*")) and (2) enjoining GoodRx from settling that matter.

## INTRODUCTION

Plaintiffs' Motion for Order Enjoining Defendant GoodRx (Dkt. 151, "Motion") is a total overreach that ignores and misrepresents the facts and asks this Court to completely disregard the law. Plaintiffs seek to invoke this Court's extraordinary and cautionary power under the All Writs Act to ***enjoin*** GoodRx from ***defending*** another case in another federal court and to ***block*** GoodRx from proceeding with the settlement of that case. This extreme request must be denied for at least three reasons: (1) the Ninth Circuit has squarely rejected this type of request as an improper use of powers under the All Writs Act where, as here, the other court is another federal court and has a pending settlement; (2) it seeks to stretch the bounds of Federal Rule of Civil Procedure ("Rule") 23(g) far beyond its intended and permissible scope; and (3) although currently an issue within the purview of Judge Bloom in the Southern District of Florida, the settlement is undoubtedly fair, reasonable, and adequate for the class and its members—whose interests (as opposed to those of Plaintiffs' counsel) must be of paramount importance to the court tasked with reviewing the proposed settlement.

As to the last point, Plaintiffs repeatedly mischaracterize the *Hodges* settlement as an improper "reverse auction." There is, however, simply no evidence to support this inflammatory claim. The *Hodges* settlement was the result of a hard-fought, arms-length negotiation with a national plaintiffs' firm, struck with the guidance and assistance of a well-respected mediator, in response to a substantial and legitimate threat of mass arbitration on behalf of well over 2,500 individuals—an issue Plaintiffs continue to ignore. Declaration of Martin L. Roth ("Roth Decl.") ¶¶ 4–7. It simply has none of the "red flags" or "hallmarks" that may indicate a "reverse auction" or improper collusion. In any event, and critically, Plaintiffs and their counsel will have a full and fair opportunity to voice any objections to the settlement through the

proper Rule 23(e) channels in *Hodges*. The Court should thus reject Plaintiffs' attempt to disrupt the normal-course process contemplated by Rule 23 and deny Plaintiffs' extraordinary request here.

## BACKGROUND

GoodRx explained the history of the *Hodges* settlement in its Response to this Court's Order to Show Cause, which it incorporates by reference here. *See* Dkt. 159. In sum, the actual facts are quite different than the fabricated picture that Plaintiffs try to paint. Specifically:

**GoodRx never "shopped" for "friendly counsel to execute a settlement."** (Dkt. 151 at 2). Far from it. Beginning in late March 2023, GoodRx *received* notice from the law firm Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg") of a threat of mass arbitration. Roth Decl. ¶ 4. Specifically, Milberg (which had been investigating and working on this matter during the same time frame that Plaintiffs' counsel initiated this case, *see Hodges*, Opp'n to Mot. to Intervene, No. 1:23-cv-24127, Dkt. 14 at 4; Roth Decl. ¶ 16 at Ex. 6), sent GoodRx batches of demand letters from individual GoodRx users, notifying GoodRx of "Individual Consumer Disputes" pursuant to GoodRx's Terms of Use. *See* Dkt. 159 at 2–3; Roth Decl. ¶ 4. These Milberg letters were sent *before* this case was consolidated, *before* two of the named Plaintiffs here had even filed their complaints in this Court, and *months before* the appointment of interim lead counsel in this case. *Id.* Faced with a threat of mass arbitration brought by one of the largest and most active (if not the most active) data privacy plaintiffs' firms in the country, GoodRx began discussions with Milberg regarding the confidential threat of mass arbitration and agreed to mediate those claims. *Id.*

**GoodRx has not attempted to "swiftly settle" anything.** (Dkt. 151 at 5). There was nothing "swift" about the *Hodges* settlement. Rather, the *Hodges* settlement was the result of a ***seven-month*** process following the onslaught of demand letters GoodRx received. The settlement process included exchanges of arguments and information between counsel, two full-day mediation sessions, and then months of negotiations and drafting a settlement agreement that sought to achieve a global resolution. Roth Decl. ¶ 5. All of this occurred without GoodRx having any certainty that a settlement would in fact be reached.

**The *Hodges* settlement is not a "'reverse auction' settlement."** (Dkt. 151 at 7). Quite the opposite. The *Hodges* settlement was the result of a hard-fought, arms-length negotiation conducted with the guidance and assistance of a well-respected mediator, in response to a substantial and legitimate threat of mass arbitration pursuant to GoodRx's Terms of Use on behalf of thousands of individuals. Roth Decl. ¶¶ 6–7. The terms of the settlement are objectively fair, with none of the "red flags" or "hallmarks" associated with reverse auctions, such as "clear sailing" provisions or reversion. And as explained below, the *Hodges* settlement reasonably discounts for the substantial risks and costs of litigation for the class.

**Plaintiffs' "calculation" of GoodRx's liability as exceeding *$100 billion* is divorced from reality.** (Dkt. 151 at 3). Plaintiffs' jaw-dropping "liability" estimate of $100.2 billion—***50 times*** the approximate market value of GoodRx—is, frankly, preposterous. It is simply multiplication of incorrect inputs that has no basis in law. Indeed, recovery of this amount—or anything close to it—would require an undiscounted, 100% recovery on California statutory claims by every assumed class member nationwide and bankrupt GoodRx many times over. Plaintiffs likewise omit the fact that GoodRx's products provide drug pricing transparency free of charge to consumers and physicians that helps Americans save on healthcare by offering easy access to pricing information, as well as free "discounts of up to 80% on most prescription drugs." Dkt. 102 ¶ 4. Plaintiffs' grossly bloated claimed damages would, however, remove this utile resource from the market and is plainly prohibited by due process. As importantly, it wrongly assumes that California law applies to the entire class, ignores recent case law confirming that CMIA claims are not subject to class certification given the highly individualized issues that predominate, ignores the substantial number of class members who never provided any of their own medical information and whose claims are barred by arbitration requirements, and disregards the narrow one-year statute of limitations for CIPA claims likely to knock out most if not all of the class. Further, the *Hodges* claims suffer substantial additional class certification and merits challenges, which GoodRx laid out in detail to the *Hodges* plaintiffs during settlement discussions.

**GoodRx did not "lie" by *agreeing with Plaintiffs* and the other Defendants that settlement negotiations *in this case* were premature.** (Dkt. 151 at 6; Dkt. 163 at 1). Plaintiffs repeatedly and unfairly distort the record with respect to mediation efforts in this case. Unlike Milberg, which sought to

pursue disputes in arbitration under GoodRx's applicable Terms of Use, Plaintiffs aggressively pursued sprawling class action claims and ***never once*** approached GoodRx to express any interest in mediation, arbitration, or settlement of this matter. Roth Decl. ¶ 8. As a result, in their joint initial case management statement the Parties ***jointly*** informed the Court that ***all*** parties "believe it is premature to engage in ADR or settlement discussions at this time" (*see* Dkt. 80 ¶ 12; Dkt. 105 ¶ 12)—a position GoodRx agreed with based on Plaintiffs' aggressive litigation tactics and the numerous threshold issues still to be decided (including whether the claims here must be arbitrated, in addition to Rule 12 motions). Roth Decl. ¶ 8. After the Court ordered mediation anyway, GoodRx participated in good faith in the mediation pre-call with the mediator. Although Plaintiffs brazenly mischaracterize what occurred on this confidential call conducted by the Court-appointed mediator (Dkt. 163 at 1, Decl. of Fisher ¶ 7), the Court's Stipulation and Order to Extend Deadline to Conduct Mediation acknowledged that "during the pre-mediation conference, the Parties and the mediator ***all agreed*** that mediation would be premature at this juncture, and that ***all*** would benefit from postponing mediation." Dkt. 121 at 1 (emphasis added). Again, this was not a position advocated solely by GoodRx, and certainly GoodRx did not intend to misrepresent anything by failing to disclose separate confidential discussions with another firm that raised a parallel mass arbitration threat under GoodRx's Terms of Use—particularly given the *Doe* Plaintiffs' refusal to accept the applicability of the arbitration provisions in those terms. Roth Decl. ¶ 8.

**Finally, it is patently false that "[n]either GoodRx nor Hodges's counsel found it important to notify Co-Lead Counsel or this Court of their settlement at all."** (Dkt. 151 at 3; Dkt. 163 at 1–3). *Hodges* was filed on Friday, October 27, 2023. Roth Decl. ¶ 9. As Plaintiffs concede, the very next business day, on October 30, 2023, *Hodges* plaintiffs' counsel, Gary Klinger, reached out to the lead Plaintiffs' counsel here, L. Timothy Fisher, to alert him to the *Hodges* matter and the proposed settlement—as he had informed GoodRx he would. *See* Dkt. 163-1, Decl. of Fisher ¶ 11; *Hodges*, Opp'n to Mot. to Intervene, 1:23-cv-24127, Dkt. 14 at 7–8; Roth Decl. ¶ 16 at Ex. 6. According to Mr. Klinger, Mr. Fisher indicated initial interest in amicably working things out. *Id.* Mr. Klinger also shared the motion for preliminary approval filings with Mr. Fisher in the morning on October 31, 2023 (*id.*; Dkt. 163-1, Decl. of Fisher ¶ 12), and then held another call with Plaintiffs' counsel on October 31, 2023, during

which Mr. Fisher asked Mr. Klinger for a proposal to discuss whether the *Doe* Plaintiffs might participate in the *Hodges* settlement. *Id*. On Wednesday November 1, 2023, upon learning the *Doe* Plaintiffs decided instead to object to the *Hodges* settlement, GoodRx immediately filed with this Court notice of the *Hodges* action. Dkt. 150 (the "Notice"); Roth Decl. ¶ 14. This all occurred ***before*** Plaintiffs submitted this Motion to the Court in which they falsely suggested they had not been notified of the settlement at all.

In the end, rather than continuing to engage with the plaintiffs' counsel in *Hodges* (or GoodRx) regarding their potential participation in the *Hodges* settlement, Plaintiffs abruptly cut off those discussions by rushing to not one, but two courts to block the settlement. In their fast and furious quest to disrupt the settlement, they left little time or concern for the facts or the law.

## ARGUMENT

### I. THE ALL WRITS ACT DOES NOT SUPPORT THE REQUESTED INJUNCTION

Plaintiffs ask this Court to undertake the extraordinary step of invoking its power under the All Writs Act to enjoin GoodRx from defending and settling the *Hodges* matter in another federal court. Dkt. 151 at 1. But it is well-settled law that "[t]he All Writs Act does not authorize district court A, supervising a class action, to issue an injunction prohibiting defendants before it from settling or attempting to settle claims in a class action pending in another federal court that would have the effect of also settling the claims before district court A." JOSEPH M. MCLAUGHLIN, 2 MCLAUGHLIN ON CLASS ACTIONS § 6:32 (20th ed.). Ninth Circuit law is no different.

A court's authority to enjoin other federal litigation under the All Writs Act is *extremely* limited. The Supreme Court has instructed that such authority to issue injunctions "be used ***sparingly*** and ***only*** in the ***most critical*** and ***exigent*** circumstances." *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (emphasis added and internal quotations omitted). The Ninth Circuit has elaborated that when, as here, "an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require ***more than the usual measure of restraint***, and such

injunctions should be granted ***only in the most unusual cases***." *See Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976) (emphasis added).[1] This is plainly not such a case.

No "exigent" or "critical" circumstances warrant the invocation of the All Writs Act here. No class has been certified by this Court. There is no pending (or even prospect of) settlement with the *Doe* Plaintiffs. Instead, the *Doe* Plaintiffs' claims in this matter are subject to still-pending motions to compel arbitration and motions to dismiss. Most critically, the *Doe* Plaintiffs (and any members of the yet-to-be-certified *Doe* class) will have a full and fair opportunity to object or opt-out to the *Hodges* settlement through the standard procedures set forth in Rule 23. In these circumstances, the Ninth Circuit has ***squarely rejected*** the type of injunction Plaintiffs seek. Specifically, in *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008), the Ninth Circuit vacated an injunction granted under the All Writs Act that prevented the defendant in a class action—that had (unlike here) proceeded to discovery and *already* been *certified* as a class—from proceeding with settlement negotiations in a parallel, second-filed federal class action. The Ninth Circuit reversed the district court, concluding:

> [T]here is ***simply no support*** for the proposition that a court may ***enjoin parties from participating in or reaching a bona fide settlement in another federal court that may dispose of claims before it***—particularly when there is no pending settlement in the enjoining court and the other federal court is . . . charged with attempting to reach a global settlement.

*Id.* at 1099–1100 (emphasis added). Just a few weeks ago, a Court in this District cited to *Negrete*, noting that the Ninth Circuit has "embraced" the "conclusion that there is ***no basis under the All Writs Act to enjoin a settlement in another district court*** when there is no pending settlement in the court asked to issue an injunction." *Mandel v. Grande Cosms., LLC*, No. 3:22-cv-00071-JD, 2023 WL 7109893, at *1 (N.D. Cal. Oct. 27, 2023) (emphasis added).[2]

---

[1] This is in contrast to the more "typical" case, in which the All Writs Act is "used by federal courts to enjoin action by ***state courts*** that threatens the federal court's jurisdiction." *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328 (3d Cir. 2007) (emphasis added).

[2] Even the case ***Plaintiffs*** claim is "eerily similar" to this case found it ***did "not have authority to enjoin the [second-filed] settlement***" under the All Writs Act. *See Perkins v. Am. Nat'l Ins. Co.*, 446 F. Supp. 2d 1350, 1353 (M.D. Ga. Aug. 18, 2006) (emphasis added); *see also* Dkt. 151 at 5 n.2. After determining that it had no authority to enjoin the settlement in the second-filed case, the *Perkins* court issued an order requiring the defendant to seek a stay in the second-filed case until that court had ruled on Perkin's motion to intervene and transfer. Here, Plaintiffs have already filed their motion to intervene and transfer, and the Southern District of Florida has ordered the *Hodges* plaintiffs to respond, which they

When it comes to efforts to block a settlement, the All Writs Act actually supports an injunction in the ***opposite*** direction: to ***enjoin*** efforts by parties (like Plaintiffs) seeking to ***interfere*** with a pending settlement. *Negrete*, 523 F.3d at 1099 ("[T]he Act is generally used to prohibit activities in another court that threaten to undermine a pending settlement in the enjoining court. When the Act has been used to *block* settlement efforts in another court, it is typically because a party was deliberately using that forum to circumvent a pending settlement agreement in the enjoining court." (citing *Grider*, 500 F.3d at 330) (emphasis in original)). Absent such circumstances, courts repeatedly decline requests under the All Writs Act to enjoin settlement proceedings in another court, especially where, as here, there is no pending settlement in the instant case, threshold dispositive motions have not been ruled on, no merits discovery has occurred, and no class has been certified. *See, e.g.*, *Primo v. Pac. Biosciences of California, Inc.*, No. 4:11-cv-06499-CW, 2013 WL 4482739, at * 3 (N.D. Cal. Aug. 20, 2013) (denying motion to enjoin settlement pending final approval in duplicative class action and noting "Plaintiffs have not even moved to certify the class in this case. . . . [so] any request . . . can only be made in their individual capacities"); *Mandel*, 2023 WL 7109893, at *1 (denying motion to enjoin preliminary approval of settlement in second-filed competing putative class in the District of New Jersey because the fact that the settlement may resolve the putative class in the pending Northern District of California case is not an "exigent circumstance" to warrant application of the All Writs Act); *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1089–92 (S.D. Cal. 2004) (denying motion and holding court lacked authority and "jurisdiction" under All Writs Act and first-filed rule in a putative class action case to enjoin a subsequently filed putative class action "in another federal forum brought by parties who are not parties in a case before" this court); *In re Life Invs. Ins. Co. of Am.*, 589 F.3d 319, 330–32 (6th Cir. 2009) (vacating order enjoining a class action settlement in competing, subsequently-filed state court action under All Writs Act since no class had been certified and federal plaintiff opted out of state class action, reasoning that where a "district court has not certified a

---

have (*Hodges*, Opp'n to Mot. to Intervene, Dkt. 14; Roth Decl. ¶¶ 15–16 at Exs. 5–6); no stay pending a decision on that motion is necessary.

class, it necessarily follows that the court has no cause to take extraordinary injunctive measures to protect the interests of a class").[3]

An injunction would be particularly inappropriate here because Plaintiffs have adequate remedies at law. Namely, they may either opt out or "have [the] opportunity to raise [their] claims in the concurrent federal proceeding sought to be enjoined." *See Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005) ("[A] court may not issue an injunction under the All Writs Act if adequate remedies at law are available."). It is well settled that the ability to opt out of or object to a settlement pursuant to Rule 23(e) is an adequate remedy at law that precludes the issue of an injunction under the All Writs Act. *See Grider*, 500 F.3d at 332; *see also Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012) ("Nonnamed members of a certified class have the authority to object to the fairness of a settlement at the fairness hearing required by Rule 23(e) of the Federal Rules of Civil Procedure, as well as appeal the court's decision to ignore their objections."); *Primo*, 2013 WL 4482739, at *3 (denying motion to enjoin settlement pending final approval in duplicative class action case and noting plaintiffs "may opt out of the state court settlement and pursue their individual claims in this Court").

In sum, although the *Doe* Plaintiffs (or at least their counsel) have made it clear that they do not support the *Hodges* settlement, that does not change the fact that no injunction is warranted under the law. As the Ninth Circuit aptly recognized: "[T]hat settlements in other courts ***might draw the fangs*** from at least a portion of the class action case that it was then considering" does not justify the "issu[ance] of an injunction against other federal and state court proceedings." *Negrete*, 523 F.3d at 1103 (emphasis added); *see also Mandel*, 2023 WL 7109893, at *1 (denying motion to enjoin settlement in parallel second-filed federal class action under All Writs Act because plaintiff's "worry . . . that she might be scooped by a settlement in another case" is "nowhere close to the 'most critical and exigent circumstances' that are required for an application of the writs statute"). Because Plaintiffs have an adequate opportunity to opt

[3] Indeed, most preliminary approval orders (including the one in *Hodges*) include language enjoining members of the settlement class from pursuing related claims in any other court unless the class member opts out of the settlement class. *See* Dkt. 160-3 ¶ 22. Plaintiffs, here, however have simply proceeded with their pursuit of class claims in this Court while simultaneously indicating to the court in *Hodges* that they do not intend to opt-out and instead seek to intervene in that case.

out or object to the settlement through the orderly process set forth in Rule 23, any injunction interfering with that process—and the Southern District of Florida's jurisdiction overseeing it—would be improper.

## II. NO AUTHORITY PERMITS PLAINTIFFS TO INTERFERE WITH SETTLEMENTS OUTSIDE THIS DISTRICT

In furtherance of their argument for extraordinary relief, Plaintiffs also contort Rule 23(g)(3) and this Court's Order appointing their lawyers as interim lead counsel into a sprawling mandate that defies the Rule and the Order's text. Plaintiffs cite *no legal authority whatsoever* supporting the theory that being appointed as interim lead counsel in a consolidated case (pending in California) anointed their lawyers as the exclusive agents to resolve any and all litigation related to the subject matter of their complaint, in any jurisdiction, venue, or tribunal. Indeed, nothing in Rule 23 or the Court's Order even required that their attorneys be informed of or included in the *Hodges* settlement discussions (which at first related to mass arbitration under GoodRx's Terms of Use and expanded to cover a proposed class action now pending in Florida). That is hardly surprising. As evident by the countless number of overlapping class actions that proceed—and settle—in different forums (many of which are highlighted above), no authority supports that point.

### A. Rule 23(g)(3) Cannot Be Used as a Vehicle to Control Class Litigation Across the Entire Country.

Rule 23(g)(3) cannot be invoked as Plaintiffs' counsel suggests. When interim lead counsel is appointed under Rule 23(g)(3), such an appointment order is necessarily ***limited*** to that district and the borders of that case. *See Bielski v. Coinbase, Inc.,* No. 3:21-cv-07478-WHA, 2022 WL 17650535, at *2–3 (N.D. Cal. Dec. 13, 2022) (explaining that the purpose of appointing interim counsel is to delineate responsibility where "a large number of putative class actions have been consolidated or otherwise are pending ***in a single court***") (emphasis added). An interim lead counsel appointment order does not extend to uncoordinated actions pending in other jurisdictions or tribunals—and certainly not to potential matters that are not pending anywhere, at all. Rule 23(g)(3) neither authorizes nor envisions such extraterritorial reach, as courts interpreting the Rule have consistently held. *See Torliatt v. Ocwen Loan Servicing, LLC*, No. 3:19-cv-04303-WHO, 2020 WL 10964876, at *4 (N.D. Cal. Oct. 2, 2020) (summarizing cases establishing the default rule that courts do not appoint interim counsel for the purpose of interfering with

actions pending elsewhere). To interpret this "authority" of interim lead counsel as somehow bestowing the power to ***block*** or otherwise ***mandate the disclosure*** of confidential settlement discussions in parallel cases or on parallel matters is a bridge too far. *See White v. TransUnion, LLC*, 239 F.R.D. 681, 684 (C.D. Cal. 2006) ("Appointment of interim class counsel is not the proper vehicle by which to oppose [the] settlement" in a parallel action).

Indeed, courts in this District and other Ninth Circuit district courts routinely find that appointment of interim lead counsel does not extend beyond the action(s) pending before the appointing court. In *Primo*, for example, the court denied a motion to enjoin a settlement that had been preliminarily approved in a parallel class action in a different court. It ***expressly*** noted that the "fact that Plaintiff Primo has been appointed Lead Plaintiff in this [putative] action does not change the analysis." 2013 WL 4482739, at *3. There, the "Lead Counsel" appointment order, while not under Rule 23(g), included very similar language that Plaintiffs point to here: "Lead Counsel are hereby vested by the Court with the following responsibilities and duties in connection with this Action: . . . To initiate and conduct all settlement negotiations with counsel for defendants." Order Appointing Lead Plaintiff and Approving Selection of Counsel, No. 4:11-cv-06599-CW, Dkt. 23 (N.D. Cal. Apr. 6, 2012); Roth Decl. ¶ 33 at Ex. 23. The Court in *Primo* declined to find that its Order Appointing Lead Plaintiff somehow precluded the defendant in that case from engaging in settlement discussions elsewhere. *See also Bielski,* 2022 WL 17650535, at *2–3 (recognizing "the typical situation requiring appointment of interim class counsel is one where a large number of putative class actions have been consolidated or otherwise are pending in a single court") (emphasis added);[4] *White*, 239 F.R.D. at 684 (refusing to appoint interim counsel for purposes of challenging settlement in related parallel action);[5] *Torliatt*, 2020 WL 10964876, at *4 (explaining attempts

---

[4] *See also In re LinkedIn Advert. Metrics Litig.*, No. 5:20-cv-08324-SVK, 2021 WL 1599289, at *1 (N.D. Cal. Apr. 23, 2021) (similar); *In re Google Assistant Priv. Litig.*, No. 5:19-cv-04286-BLF, 2020 WL 7342713, at *1 (N.D. Cal. Dec. 14, 2020) (similar); *Huynh v. Quora, Inc.*, No. 18-CV-07597-BLF, 2019 WL 11502874, at *2 (N.D. Cal. Apr. 11, 2019) (similar); *Imran v. Vital Pharms., Inc.*, No. 18-CV-05758-JST, 2019 WL 1509180, at *10 (N.D. Cal. Apr. 5, 2019) (similar); *In re Nest Labs Litig.*, No. 14-CV-01363-BLF, 2014 WL 12878556, at *1 (N.D. Cal. Aug. 18, 2014) (similar); *Bedwell v. Braztech Int'l, L.C.*, No. 17-CIV-22335, 2018 WL 830073, at *8 (S.D. Fla. Feb. 9, 2018) (similar); *Burrow v. Forjas Taurus S.A.*, No. 16-CIV-21606, 2018 WL 809439, at *8 (S.D. Fla. Feb. 9, 2018) (similar).

[5] *Accord Santos v. Carrington Mortg. Servs., LLC*, No. 2:15-cv-00864-WHW-CLW, 2017 WL 215969, at *3 (D.N.J. Jan. 18, 2017) (same and noting "[t]he only purpose the appointment of interim

to extend the territorial reach of Rule 23(g)(3) are ordinarily improper because there are "ample mechanisms for dissatisfied class plaintiffs to object to a class action settlement" and simultaneously appointing plaintiffs' counsel as interim class counsel in N.D. California case but denying motion to enjoin settlement in later-filed S.D. Florida case (quoting *White*, 239 F.R.D. at 684)).[6]

The plain language of the Court's appointment order is appropriately consistent with these limitations and the federal policy of encouraging settlement of civil matters, including class actions. It expressly cabins Plaintiffs' counsel's "authority" to "[c]onduct[] settlement discussions . . . to resolve ***this litigation***" and "***this action***." Dkt. 112 at 4–5 (emphasis added). This is not only consistent with the law, it is also consistent with what Plaintiffs ***asked*** this Court to do. That is, their Motion for Appointment of Lead Counsel was expressly limited to seeking "appointment of an agreed-to leadership structure that will efficiently prosecute ***this case***." Dkt. 86 at 1 (emphasis added); *see also id.* at 15 ("Plaintiffs respectfully request that the Court appoint Proposed Co-Lead Counsel, Liaison Counsel, and the Executive Committee ***to lead this action*** pursuant to Federal Rule of Civil Procedure 23(g).") (emphasis added). Thus, there is nothing in the appointment order to suggest it applies beyond "this action" and certainly nothing to say it precludes GoodRx from engaging in good faith settlement discussions with counsel in other parallel actions, let alone somehow bind plaintiffs' counsel in *Hodges* from discussing their mass arbitration threat with GoodRx. *See McClendon v. Sensa Prods., LLC*, No. 4:11-cv-01650-YGR, 2011 WL 13258078, at *3 (N.D. Cal. Nov. 15, 2011) (rejecting motion to enjoin and noting appointment as interim class counsel would not "give[] [plaintiffs' counsel] control" over two related putative class actions in other jurisdictions prior to consolidation); *Pearson v. Target Corp.*, 968 F.3d 826, 830–35 (7th Cir. 2020) (rejecting a

class counsel would accomplish at this time is the disruption of the proposed . . . settlement" in a parallel case); *cf. Bielski*, 2022 WL 17650535, at *3 (denying plaintiffs' counsel' motion to be appointed interim counsel while noting that although "more related and similar actions will likely be filed," the motion "seems more like an attempt by [them] to jockey for position among different cases that may eventually wind up in an MDL").

[6] In one of the only two cases Plaintiffs cite on the issue and effect of appointment of interim lead counsel, *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-cv-00172-NONE-HBK, 2021 WL 4847834 (E.D. Cal. Oct. 15, 2021), the court appointed interim counsel only because the named plaintiff was ***carved out*** from the parallel action and could not object, and thus does not support Plaintiffs' interpretation of Rule 23(g)(3). And in the other case, *Salmonson v. Bed Bath & Beyond, Inc.*, No. 2:11-cv-02293-SVW-SS, 2012 WL 12919187 (C.D. Cal. Apr. 27, 2012), the defendant was "compelled" to only negotiate with interim counsel because all related cases were already before the same court.

settlement objector's argument that, given his counsel's pre-settlement interim appointment in another jurisdiction, "his counsel was the only counsel 'with authority' to settle his proposed class's claims"); *Angus, et al. v. Flagstar Bank, FSB*, No. 2:21-cv-10657-AJT-DRG, Dkt. 46 at 2–3 n.2 (E.D. Mich. Sept. 21, 2021) (rejecting argument by "interim lead counsel for the *Angus* plaintiffs" that status as interim lead counsel gave them authority over settlement in another district: "the *Angus* plaintiffs point to no law that *required* Flagstar to include them in this follow-up mediation session, and courts have concluded that a defendant is free to settle with a party in one jurisdiction not represented by interim lead counsel in another jurisdiction.") (emphasis in original); Roth Decl. ¶ 17 at Ex. 7. To find otherwise would severely prejudice GoodRx—it would eliminate its ability to enter into bona fide settlements in other cases in other jurisdictions or with plaintiffs who bring claims under its Terms of Use, and eliminate its ability to resolve an imminent threat of mass arbitration on a global basis. By contrast, because the *Doe* Plaintiffs (and all settlement class members) have a full and fair opportunity to object or opt out, the only "prejudice" in ensuring GoodRx could freely enter into fair settlements in other cases would be "entirely to Plaintiffs' counsel"—in the potential loss of lead counsel fees—and "not the clients themselves, as the classes overlap." *Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-01854-RS, 2022 WL 1443339, at *4–5 (N.D. Cal. May 6, 2022). This is not a "harm" that the law seeks to protect, and certainly not one guaranteed by the Court's order appointing interim lead counsel.

### B. The First-Filed Rule Does Not Operate as Plaintiffs Suggest.

Plaintiffs' "first-filed" argument similarly ignores that overlapping class actions (even in multiple federal courts) routinely proceed in parallel. Unsurprisingly, then—in accord with federal courts' policy of encouraging settlement—class actions frequently settle despite the pendency of another related class action. *See, e.g.*, *Tuttle v. Audiophile Music Direct Inc.*, No. 2:22-cv-01081-JLR, 2023 WL 3318699, at *1–2, 10 (W.D. Wash. May 9, 2023) (granting preliminary approval of nationwide class action despite parallel proposed class actions pending in the Northern District of Illinois, the Central District of California, and the Northern District of California); *Mandel*, 2023 WL 7109893, at *1 (finding no basis to enjoin settlement in parallel second-filed federal class action under All Writs Act); *Adkins v. Nestle Purina PetCare Co.*, 779 F.3d 481, 484 (7th Cir. 2015) ("Parallel . . . litigation is common. . . .Yet the

potential effect of one suit on the other does not justify an injunction."); *CO Craft, LLC v. Grubhub Inc.*, No. 20-cv-01327-NYW-NRN, 2023 WL 3763525, at *2, 16, 22 (D. Colo. June 1, 2023) (endorsing substance of proposed class settlement over objections from plaintiffs of a pending putative class action in the Northern District of Illinois, rejecting mere "speculation" as "insufficient evidence of a reverse auction to deny preliminary approval"); *Swinton v. SquareTrade, Inc.,* 454 F. Supp. 3d 848, 877 (S.D. Iowa 2020) (granting certification of class and approving settlement as fair and reasonable despite a competing class in the Eastern District of New York involving the same Defendant and issues).

It is not the case—as Plaintiffs insinuate—that when parallel class actions have been filed, *only* the action filed first is permitted to settle. Nor do the cases they cite support this point. Rather, most of the cases Plaintiffs rely on are Multi-District Litigation ("MDL") cases—which this case is *not*.[7] Later-filed class settlements can be and are often approved—so long as they are fair, reasonable, and adequate. For example, the court in *Cochran v. Kroger Co.* granted final approval of the settlement of a nationwide data breach class action, No. 5:21-cv-01887-EJD, 2022 WL 2126696, at *1–5 (N.D. Cal. Mar. 24, 2022),

---

[7] Specifically, *In re Managed Care Litig.*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002), *In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313 (S.D. Fla. 2012), and *In re Am. Online Spin-Off Accts. Litig.*, No. 2:03-cv-06971-RSWL-PLA, 2005 WL 5747463 (C.D. Cal. May 9, 2005) were MDL proceedings in which injunctions were issued on proposed settlements reached outside of the MDL and which threatened the jurisdiction of the MDL. Here, where there is no MDL, the same justifications warranting injunctions in the MDL context do not apply. *See In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 764, 767 (7th Cir. 2017) (explaining, in MDL context, injunctions allow presiding district court's "to protect the integrity of their rulings, including pre-trial rulings like discovery orders . . . [and to] prevent specific abuses which threaten the court's ability to manage the litigation effectively and responsibly" but cautioning the use beyond MDLs). Moreover, in *In re Checking Acct.*, unlike here, the first-filed case was farther along and the parties in that case had actively participated in settlement discussions. Additionally, unlike in *Perkins v. Am. Nat'l Ins. Co.*, 446 F. Supp. 2d 1350 (M.D. Ga. 2006), where the plaintiffs in the second-filed action raised their claims for the first time just a few weeks before the settlement was negotiated with the defendant, here, the Milberg firm raised its (thousands of) clients' claims with GoodRx in March 2023, ***before*** the presently pending matter had even been consolidated or lead counsel appointed. Still, the *Perkins* court noted that "the simple fact that litigation involving the same issues is occurring concurrently in another forum does not sufficiently threaten a court's jurisdiction to warrant an injunction under the All Writs Act." *Id.* at 1354. And the injunction in *Kiland* was issued in unusual circumstances, after the court in the second-filed case had voluntarily stayed its proceedings, *Nat'l Union Fire Ins.*, 2012 WL 3277222, at *7, but no such extraordinary circumstances exist here; in any case, as *National Union Fire* clarified, *Kiland* did not change the rule that courts must exercise "more than the usual measure of restraint" when considering whether to enjoin "another federal proceeding." *Id.* (quoting *Bergh*, 535 F.2d at 507). Lastly, unlike in most of these cases where there was evidence the settlement was collusive—the opposite is true here.

after denying a motion to intervene and overruling objections by first-filed plaintiffs in a pending parallel federal class action in Ohio. *See* Order Denying Mot. to Intervene, *Cochran v. Kroger Co.*, No. 5:21-CV-01887-EJD, Dkt. 99 (N.D. Cal. Nov. 5, 2021); Roth Decl. ¶ 27 at Ex. 17; Mot. to Intervene, *Cochran v. Kroger Co.*, No. 5:21-CV-01887-EJD, Dkt. 57 (N.D. Cal. July 30, 2021); Roth Decl. ¶ 26 at Ex. 16. Likewise, in *Gallucci v. Boiron, Inc.*, the court approved a settlement of the third-filed class action even after the complaint was amended to include claims from previously filed putative class actions. No. 3:11-cv-02039-JAH-NLS, 2012 WL 5359485 (S.D. Cal. Oct. 31, 2012) *aff'd sub nom. Gallucci v. Gonzales*, 603 F. App'x 533 (9th Cir. 2015)[8]; Objection to Mot. for Approval of Settlement Agreement, *Gallucci v. Boiron, Inc.*, No. 3:11-cv-02039-JAH-NLS, Dkt. 96 (S.D. Cal. July 27, 2012); Roth Decl. ¶ 28 at Ex. 18. The notion that "no settlement could ever occur in the circumstances of parallel or multiple class actions . . . without being accused by another of participating in a 'collusive reverse auction,'" *Negrete*, 523 F.3d at 1099–1100 (internal quotation omitted), has been firmly rejected by the Ninth Circuit. That rule would undermine the fundamental policy encouraging settlement.

That is why courts have long held that "[the] 'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). Indeed, the Ninth Circuit has emphasized that "[t]he most basic aspect of the first-to-file rule is that it is discretionary," and therefore, a court "can, in the exercise of [its] discretion, dispense with the first-filed principle for reasons of equity." *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 628 (9th Cir. 1991). The rule is primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments. *See Church of Scientology of Cal. v. U.S. Dep't of Army,* 611 F.2d 738, 750 (9th Cir. 1979). Neither concern warrants application of the first-filed rule here.

Unlike this case, which is only in the very early stage of litigation with pending dispositive motions and no merits discovery or settlement discussion having occurred, the *Hodges* case has progressed toward

[8] Plaintiffs attempt to distinguish *Gallucci* by claiming that the settlements involved claims regarding different products. While the settlement carved out the product at issue in *one* parallel class action, it included claims that were the subject of *two other* parallel class actions, including one filed before *Gallucci*. Objection to Mot. for Approval of Settlement Agreement, *Gallucci v. Boiron, Inc.*, No. 3:11-cv-02039-JAH-NLS, Dkt. 96, at 4–6 (S.D. Cal. July 27, 2012); Roth Decl. ¶ 28 at Ex. 18.

and reached settlement, including approval of a preliminarily certified settlement class. Roth Decl. ¶ 11. In fact, it remains disputed that most of these actions can even be heard by this Court, as opposed to in arbitration, assuming any of Plaintiffs' claims survive motions to dismiss. Given the disparate postures of the actions, there is no imminent concern regarding the possibility of conflicting judgments. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.,* No. 3:11-cv-01892-EMC, 2012 WL 3277222, at *9 (N.D. Cal. Aug. 9, 2012) ("[C]ourts have rejected the [first to file] rule when the second-filed action had developed further than the initial suit."). And any concerns regarding the burdens of duplicative litigation could be addressed through other mechanisms (including, for instance, a temporary stay of this case during the notice and fairness proceedings pursuant to Rule 23, and basic principles of *res judicata*). Enjoining the *Hodges* case from proceeding altogether, however, would run counter to the strong judicial policy favoring resolution of class actions and would delay and impede relief to millions of putative class members. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (holding that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."). The Court should decline to exercise its discretion under the first-filed rule where, as here, it would frustrate rather than promote the principles behind the rule and encourage sprawling and protracted litigation rather than efficient efforts to settle.[9]

## III. THE *HODGES* SETTLEMENT IS REASONABLE, FAIR, AND ADEQUATE

Plaintiffs' characterization of the Hodges settlement as a "reverse auction," made without any basis in fact or evidence, is patently erroneous. The settlement agreement is the result of arms-length negotiations that took place over many months with a well-respected mediator. Roth Decl. ¶¶ 4–5. There is zero evidence or indicia of collusion. The settlement amount is reasonable, fair, and adequate, and accounts for the inherent litigation risks and costs on both sides. In any event, this is not the proper forum

[9] Moreover, if the first-filed rule worked as Plaintiffs suggest, the United States Judicial Panel on Multidistrict Litigation ("JPML") could theoretically be disbanded. The JPML exists to address situations where a sufficient number of parallel actions have been filed in multiple districts such that efficiencies may be gained by consolidating all of the cases and transferring them to one district for pre-trial proceedings. *See* 28 U.S.C. § 1407. But if the first-filed rule meant that the lawyers who filed first automatically gained control of all later-filed cases with common allegations, then there would be nothing left for the JPML to decide and 28 U.S.C. § 1407 would be rendered meaningless.

for Plaintiffs to challenge the settlement—Rule 23(e) sets out a process and procedure whereby Plaintiffs will have a full and fair opportunity to be heard.

**A. The Settlement Process Was Fair.**

Plaintiffs' attempt to depict the *Hodges* settlement as improper because it was executed the same day that the *Hodges* complaint was filed misses the proverbial forest for the trees. The *Hodges* settlement was reached after months of hard-fought, arms-length negotiations between GoodRx and the Milberg law firm, with the aid of a well-respected mediator, and was the antithesis of a so-called "reverse auction." Roth Decl. ¶¶ 4–5.

A reverse auction is said to occur when "the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant." *Negrete*, 523 F.3d at 1099–1100. But to find that a settlement meets that definition, courts require more than mere accusations of objecting counsel. They require *evidence* that the process by which the settlement was reached was the product of collusion. *Id*. (reversing district court order barring insurer from proceeding with settlement negotiations in parallel litigation in federal and state courts and noting: "Counsel floated out the specter of a reverse auction, but brought forth no facts to give that eidolon more substance").[10]

[10] Indeed, court after court have rejected objectors' unsupported accusations of reverse auctions. *See Cohorst v. BRE Properties, Inc.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 3489781, at *8 (S.D. Cal. July 19, 2011), *report and recommendation adopted*, No. 3:10-cv-02666-JM-BGS, 2011 WL 3475274 (S.D. Cal. 2011) (noting that the proposed intervenor's "only assertion of 'underhanded activity' by class counsel stems from her claim that the original Cohorst was a 'copycat' from her Los Angeles lawsuit" and that "[t]his claim alone cannot support the indictment of a 'reverse auction'"); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002) (affirming district court approval of settlement of class action in Colorado despite objection by plaintiffs in Texas actions and finding "[a]bsent some more concrete evidence of collusion than Objector's conclusory allegations and inferences, we decline to disturb the district court's conclusion that the settlement was not a collusive reverse auction."); *Smith v. CRST Van Expedited, Inc.,* No. 3:10-cv-01116-BEN-WMC, 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012) (overruling objections and request for intervention by plaintiff in a class proceeding in C.D. Cal. and approving settlement of class in S.D. Cal. where "though [objector] makes passing reference to the possibility of a reverse auction, he makes no showing of anything suggesting impropriety on the part of the settling parties."); *CO Craft, LLC*, 2023 WL 3763525, at *16 (granting preliminary approval of settlement of class in D. Colo. action despite pending N.D. Ill. class action because "speculation arising from the mere existence of parallel litigation and purported expansion of the settlement class is insufficient evidence of a reverse auction to deny preliminary approval"); *Swinton,* 454 F. Supp. 3d at 877 (granting certification of class and approving settlement as fair and reasonable despite a competing class action in

Here, Mediator Bennett G. Picker, who has been recognized as one of the leading mediators in the field of data privacy,[11] oversaw several months of information exchanges and *multiple* mediation sessions, during which the parties engaged in arms-length, earnest and contested negotiations. Roth Decl. ¶¶ 4–5. Specifically, the parties participated in extensive, full-day mediation sessions on July 13, 2023 and again on August 11, 2023. *Id.* Before those mediation sessions, the parties fully briefed the relevant issues, resulting in informed and meaningful mediations. *Id.* These facts alone "support[] the propriety of the negotiations," as "[s]ettlements reached with the help of a mediator are likely noncollusive." *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 WL 2563914, at *8 (C.D. Cal. Feb. 13, 2023) (citing *La Fleur v. Med. Mgmt. Int'l, Inc.*, No. 5:13-cv-00398-VAP-OP, 2014 WL 2967475, at *4 (C.D. Cal. June 25, 2014)).

Given the efforts of both parties and the guidance of Mr. Picker, the parties were able to reach a fair and reasonable settlement. Roth Decl. ¶ 5. Importantly, the settlement contains ***none*** of the typical "red flags" that could be indicative of collusion, such as (1) a lack of monetary award to the class; (2) a "clear sailing" provision, in which the settling defendant agrees to not contest the amount of attorneys' fees; or (3) allowing any unclaimed funds to be reverted to GoodRx. *See Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (identifying these three factors as indicators of collusion). As described below, the settlement provides a substantial award to the class, GoodRx has not waived its ability to challenge a fee award, and GoodRx will not receive a cent back from the settlement—any leftover awards will be donated to the Center for Internet and Society at Stanford Law School, one of the leading data privacy research and public policy institutes in the country. The settlement will also allow

---

E.D.N.Y. involving the same defendant and issues); *see also Amaro v. Anaheim Arena Mgmt., LLC*, 69 Cal. App. 5th 521, 544 (2021), *review denied* (Dec. 29, 2021) (approving settlement reached after failed negotiations with other plaintiffs in two prior pending lawsuits involving the same issues).

[11] Mr. Picker is a pioneer in the field of alternative dispute resolution with "considerable experience mediating data breach class actions." *Hashemi v. Bosley, Inc.*, No. 2:21-cv-00946-PSG-RAO, 2022 WL 2155117, at *1 (C.D. Cal. Feb. 22, 2022) (approving class settlement where the agreement was reached after mediations conducted before Mr. Picker); *In re: GE/CBPS Data Breach Litig.*, No. 1:20-cv-02903, Dkt. 123 (S.D.N.Y. Mar. 28, 2023) (same) Roth Decl. ¶ 32 at Ex. 22; *id.*, Dkt. 92 at 11 (detailing Mr. Picker's role in reaching the settlement); Roth Decl. ¶ 31 at Ex. 21. Mr. Picker is the author of "Mediation Practice Guide: A Handbook for Resolving Business Disputes," published by the American Bar Association Section on Dispute Resolution and has successfully resolved hundreds of disputes with a cumulative value in the billions.

GoodRx to continue performing the useful consumer services it presently provides, as a drug pricing reference and discount resource for consumers and physicians alike.

That the *Hodges* action was filed second is similarly not evidence of any collusive behavior, or reason to enjoin the settlement. Although *Hodges* was technically "later-filed" on a federal docket, Milberg prosecuted its clients' claims for months through threatened arbitrations by thousands of its clients. Roth Decl. ¶ 4. Unlike Plaintiffs, the Milberg clients abided by and availed themselves of the dispute resolution method required by GoodRx's Terms of Use, to which most Plaintiffs too are party. Those threats led to the parties engaging in months of negotiations, which began in March 2023. *Id.*

Plaintiffs' counsel specious arguments about the primacy of the first-filed rule are also incorrect and opportunistic. Interim Co-Lead Counsel in this action is well familiar with the propriety of settling second-filed actions, and recently obtained approval of a second-filed class settlement with terms much more favorable to counsel.[12] *See, e.g.*, *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 WL 2563914 (C.D. Cal. Feb. 13, 2023). In fact, Bursor & Fisher obtained final approval of that second-filed settlement ***less than three months*** before filing the instant motion decrying the practice. *Id.*, Dkt. 222 (C.D. Cal. Aug. 21, 2023); Roth Decl. ¶ 25 at Ex. 15.

The *Maree* case involved claims surrounding purchasers of cancelled flights by Lufthansa. *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2022 WL 5052582, at *1 (C.D. Cal. Sept. 30, 2022). While another set of plaintiffs brought suit on behalf of direct purchasers of Lufthansa airline tickets (the *Castanares* plaintiffs), Bursor initially prosecuted claims in arbitration on behalf of claimants who purchased tickets through a third-party vendor. *Id.* Unbeknownst to the court or to the *Castanares* plaintiffs, Bursor and Lufthansa engaged in a mediation and entered into a binding term sheet. *Id.* Two weeks after the mediation, Bursor added a direct purchaser plaintiff to the second-filed action, and then four days later filed a motion for preliminary settlement approval. *Id.* The court ultimately granted

---

[12] Notably, the settlement in *Maree* also contained terms much more indicative of collusion between Bursor and the defendant, as it was reversionary, and required claimants to affirmatively submit claims even though the defendant could identify all aggrieved individuals. *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, Dkt. 222 at 5, 9 (C.D. Cal. Aug. 21, 2023); Roth Decl. ¶ 25 at Ex. 15.

preliminary approval, deciding that the fact that Bursor negotiated the settlement without the first-filed plaintiffs' notice did not evidence collusion. *Maree*, 2023 WL 2563914, at *9.

Plaintiffs' counsel also baselessly and repeatedly accuse GoodRx of "lying" about its willingness to conduct "any" settlement negotiations with the *Doe* Plaintiffs, citing the parties ***joint*** Stipulation and [Proposed] Order to Extend Deadline to Conduct Mediation. Dkts. 117, 163. Plaintiffs' counsel, however, omit that they ***never*** sought to discuss settlement with GoodRx. Roth Decl. ¶ 8. On April 27, 2023, all parties to this case ***jointly*** submitted a statement in the initial case status report stating that "the parties" believed settlement discussions to be premature at that time given anticipated dispositive motions, including a motion to compel Plaintiffs to arbitrate claims as they agreed to under GoodRx's applicable Terms of Use. Dkt. 80. Nevertheless, on April 28, 2023, the Court referred the parties to court-ordered mediation. Dkt. 81. Three days later, on May 1, 2023, Plaintiffs' counsel submitted a response indicating that they did not "agree to participate in ADR," but rather would "prefer to discuss ADR selection" with the Court. Dkt. 82. GoodRx went on to participate in the confidential pre-mediation call with the mediator, after which it was reported that "the Parties and the mediator ***all agreed*** that mediation would be premature at this juncture, and that ***all*** would benefit from postponing mediation." Dkt. 121 at 1 (emphasis added). Regardless of Plaintiffs' failure to make any effort to discuss settlement and insistence on bringing sprawling legal claims in court as opposed to arbitrating them, they have no basis to prevent GoodRx from doing so in other cases or with other parties that proceeded under the Terms of Use. *Negrete*, 523 F.3d at 1099–1100 (quoting *Rutter & Wilbanks Corp.*, 314 F.3d at 1189); *see also Maree*, 2023 WL 2563914, at *4 (preliminarily approving settlement despite fact that counsel representing a second-filed class negotiated a settlement without the first-filed plaintiffs' knowledge, as the court could not conclude that there was any collusion).[13]

[13] Plaintiffs baselessly accuse GoodRx and Milberg's mediations as being improper because they were "secret," which ignores the obvious fact that these mediations were conducted on a private and confidential basis, pursuant to Federal Rule of Evidence 408 as well as the mediation privilege. Plaintiffs identify no basis for their claim that GoodRx was somehow required to violate that confidentiality or the mediation privilege and jeopardize their discussions with Milberg and the settlement ultimately achieved by informing them that the mediations were occurring.

Finally, Plaintiffs misleadingly claim they were never informed about the *Hodges* settlement ***at all***. As described in GoodRx's Response to Order to Show Cause (Dkt. 159) and confirmed by Plaintiffs' own reply (Dkts. 163 & 163-1), within one business day after the *Hodges* action was filed, on October 30, 2023, Gary Klinger, on behalf of the *Hodges* plaintiffs, reached out to L. Timothy Fisher, on behalf of the *Doe* Plaintiffs, to notify them of the *Hodges* settlement. Roth Decl. ¶ 12. In that conversation, Mr. Klinger informed Mr. Fisher about the terms of the settlement and the motion for preliminary approval, invited the *Doe* Plaintiffs to participate in the settlement, and explained that confidentiality rules surrounding mediation and arbitration along with a desire to ensure any settlement became final prevented earlier disclosure. *See Hodges*, Opp'n to Mot. to Intervene, Dkt. 14 at 7–8; Roth Decl. ¶ 16 at Ex. 6; Dkt. 163-1, Decl. of Fisher ¶¶ 11–12. According to Mr. Klinger, Mr. Fisher indicated initial interest in working things out and agreed to continue to meet and confer to determine whether they and their clients would participate in the *Hodges* settlement. *Hodges*, Opp'n to Mot. to Intervene, Dkt. 14 at 7–8; Roth Decl. ¶ 16 at Ex. 6. That resulted in yet another phone conversation between counsel on October 31, 2023, where, according to Mr. Klinger, Mr. Fisher asked for a proposal on how they might participate in the *Hodges* settlement, to which Mr. Klinger responded. *Id.*; Dkt. 163-1, Decl. of Fisher ¶ 13.[14] These interactions rebut any suggestion that the *Doe* Plaintiffs were not notified about the settlement "at all."[15]

**B. The Settlement Terms Are Fair.**

Although it is the purview of the *Hodges* court to ultimately decide the fairness of the *Hodges* settlement, Fed. R. Civ. P. 23(e)(2), this Court should have no concern about the settlement's fairness.

---

[14] Notably, Plaintiffs originally sought to cast aspersions on the settlement by pointing to the potential for Milberg to obtain a maximum of $4.5 million in attorneys' fees as somehow inappropriate*, see* Dkt. 151 at 7; now, somewhat inconsistently, Plaintiffs pivot to accusing Milberg of offering to share their fees as some sort of improper "quid pro quo," Dkt. 163 at 4. Regardless, whether the ultimate fees sought in any final settlement are too high or should be shared by other counsel is something for the *Hodges* court to decide pursuant to the well-defined Rule 23 process.

[15] Relatedly, Plaintiffs contend the *Hodges* plaintiffs (and by proxy, GoodRx) failed to comply with S.D. Florida local rules, as well (Dkt. 163 at 2); although this is well outside the purview of this Court, it is worth noting that the *Hodges* plaintiffs have already explained why they did not believe S.D. Fla. Local Rule 7.1(a)(3) applied to preliminary approval motions (*see Hodges*, Dkt. 14 at 21–22; Roth Decl. ¶ 16 at Ex. 6). Notwithstanding, as the facts herein show, GoodRx understood that the *Hodges* plaintiffs were reaching out to the *Doe* Plaintiffs and promptly notified this Court of the *Hodges* action and the settlement. Plaintiffs now concede as much. Clearly, there was no intent to hide the existence of a parallel action from anyone.

The *Hodges* settlement fund of $13 million—***nine times*** the FTC settlement with GoodRx for essentially the same alleged conduct and same allegedly impacted user base—is fair, reasonable, and adequate. Indeed, even without considering the steep discounts that must be applied to account for litigation risks and costs, the anticipated value of recoveries is in line with other settlements in similar data privacy cases—in fact, privacy cases have been settled for no monetary relief, at all. *See, e.g.*, *Adkins v. Facebook, Inc.*, No. 3:18-cv-05982-WHA, Dkts. 350, 369 (N.D. Cal. May 6, 2021 and July 13, 2021) (approving settlement arising out of Facebook data breach for injunctive relief only); Roth Decl. ¶ 18–19 at Ex. 8–9; *Anthony Williams et al. v. Facebook Inc.*, No. 3:18-cv-01881-RS, Dkt. 261 (N.D. Cal. Oct. 20, 2022) (approving settlement between plaintiff android users, represented by Bursor & Fisher, and Meta arising out Facebook data scraping case for injunctive relief only); Roth Decl. ¶ 20 at Ex. 10; *In re Zoom Video Commc'ns, Inc. Priv. Litig.*, No. 20-cv-02155-LB, 2022 WL 1593389, at *1, 3 (N.D. Cal. Apr. 21, 2022) ($85 million settlement fund for estimated class size of 158 million); *In re Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638, at *2, 4 (C.D. Cal. July 31, 2019) (approving $17 million settlement fund with estimated class size of 16 million); *Ambrose v. Boston Globe Media Partners, LLC*, No. 1:22-cv-10195-RGS, Dkt. 51 (D. Mass. May 24, 2023) (Bursor & Fisher reached $4 million settlement covering 500,000 class members in a VPPA case with $2,500 statutory damages per violation and hundreds of millions in exposure); Roth Decl. ¶ 21 at Ex. 11. And here, the *Hodges* plaintiffs are represented by the law firm with more experience in this space than any other firm. Of five pixel-related lawsuits that have settled in the past five months, the Milberg law firm has settled three of them—all involving alleged health information. *See Keefe John et al. v. Froedtert Health, Inc.*, No. 2023-cv-001935, Dkt. 32 (Wis. Cir. Ct. June 2, 2023) (granting preliminary approval); Roth Decl. ¶ 22 at Ex. 12; *In re Advocate Aurora Health Pixel Litig.*, No. 2:22-cv-01253-JPS, Dkt. 36 (E.D. Wisc. Aug. 21, 2023) (granting preliminary approval); Roth Decl. ¶ 23 at Ex. 13; *In re: Novant Health, Inc.*, No. 1:22-cv-00697, Dkt. 55 (M.D.N.C. Nov. 6, 2023) (granting preliminary approval); Roth Decl. ¶ 24 at Ex. 14.

Plaintiffs disingenuously protest the settlement based on their absurd argument that the class claims are worth ***more than $100.2 billion***. Dkt. 151 at 3. This eyepopping figure, while certainly attention-grabbing, is—of course—not even in the same stratosphere as any fair and reasonable settlement

that Plaintiffs could ever obtain. For starters, Plaintiffs simply assume that everyone they presume to be a class member will be certified as such and prevail in full, obtaining the maximum statutory damages for two California statutes: California Invasion of Privacy Act (CIPA) and Confidentiality of Medical Information Act (CMIA). There are several glaring problems with Plaintiffs' math.

*First*, most of the putative class members—including at least four of the six named Plaintiffs—are subject to valid and binding arbitration clauses. They would never be included in any non-settlement class, nor would many GoodRx users who agreed to its Terms of Use. And even if the two remaining named Plaintiffs did not agree to arbitrate, they could not serve as representatives of the purported class. Plaintiffs who are not subject to an arbitration clause cannot serve as class representatives for a class that includes members who may have agreed to arbitrate, as their claims are not typical of the class, and they would also be inadequate representatives. *See, e.g.*, *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-04456-PJH, 2018 WL 6727825, at *7–8 (N.D. Cal. Dec. 21, 2018) (citing *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015)).

*Second*, the purported claims under CMIA cannot proceed on a classwide basis, given established California precedent that a breach of confidentiality under CMIA is an inherently "individualized issue." *Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 219, 221 (2022), *review denied* (Jan. 25, 2023) (affirming denial of class certification based on lack of predominance, reasoning breach of confidentiality under CMIA was an "individualized issue" since each class member would be required to "establish that an unauthorized party viewed their confidential information and that Muir's negligence caused this breach of confidentiality"). This alone guts $16 billion from Plaintiffs' purported "calculation."

*Third*, Plaintiffs fail to account for many additional bars to relief that those in the purported class would face. For instance, those outside California cannot recover under CMIA or CIPA. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593–94 (9th Cir. 2012) (vacating class certification order and holding court cannot apply California law to a nationwide class given interests of other states in having their laws apply to their residents), *overruled on other issue by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 (9th Cir. 2022) (en banc). Nor do Plaintiffs account for the fact that most—if not all—of the putative class member's claims are likely to be time-barred by CIPA's

one year statute of limitations (particularly because GoodRx discontinued use of certain challenged pixels in 2020). *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. Mar. 17, 2021) (one year SOL for CIPA claims); *Javier v. Assurance IQ, LLC*, No. 20-CV-02860-CRB, 2023 WL 3933070, at *2–3 (N.D. Cal. June 9, 2023) (dismissing CIPA claim as time-barred and rejecting Bursor & Fisher's application of the discovery rule). In addition, unlike in other pixel cases in this space, the data at issue here is *not* medical records or sensitive health data maintained by a hospital defendant. *Cf. In re Advocate Aurora Health Pixel Litig.*, No. 2:22-cv-01253-JPS, Dkt. 36 (E.D. Wisc. Aug. 21, 2023); Roth Decl. ¶ 23 at Ex. 13; *In re: Novant Health, Inc.*, No. 1:22-cv-00697, Dkt. 55 (M.D.N.C. Nov. 6, 2023); Roth Decl. ¶ 24 at Ex. 14. Rather, GoodRx can be—and is often—used by doctors or family members to search for prices of drugs for *others*, thus revealing *nothing* about the browsing individual's health at all (a point that is fatal to many of Plaintiffs' claims and thus creates individualized issues that will defeat the predominance required for class certification). *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954–55 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ("Pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' a wife's blog post about her husband's cancer diagnosis, and other publicly available medical information … [are] accessible to the public at large" and thus not "protected health information."); *Bowerman v. Field Asset Servs., Inc.*, 39 F.4th 652, 662–63 (9th Cir. 2022), *as amended*, 60 F.4th 459 (9th Cir. 2023) (holding that individualized issues overwhelmed common ones where proving *the existence* of class members' injuries could not be done using a common method).

*Fourth*, Plaintiffs self-determine that "[e]stablishing liability for these claims is nearly certain" because the FTC "already found" that GoodRx's conduct "violates these statutes." *Hodges*, No. 1:23-cv-24127-BB, Dkt. 9 at 2. That is false. The FTC settlement involved ***no*** admission or finding of liability. Full stop. It certainly did not "find" that GoodRx's purported conduct "violated" California statutes. In reality, Plaintiffs' claims are wholly lacking in merit, including for the many reasons set forth in GoodRx's pending Motion to Dismiss.

In short, Plaintiffs' grossly overstated "value" of their claims is so far-reaching and divorced from any reasonable method of calculating fair settlement values—*i.e.*, by discounting for risks and costs of

litigation—that it lacks any credibility at all. As does Plaintiffs' accusation that the settlement is the result of a "reverse auction."[16]

In addition to the monetary component of the deal, the other settlement terms are undoubtedly fair. The parties have not agreed to any "clear sailing" provision under which a defendant agrees not to contest any fee petition filed by class counsel. In fact, GoodRx negotiated for the exact opposite protection: "the Settlement is not conditioned upon any Fee Award to Class Counsel." *Hodges*, No. 1:23-cv-24127-BB, Dkt. 4-1 ¶ 44; Roth Decl. ¶ 6 at Ex. 1. Nor is there any "reversionary" aspect of the deal—meaning ***not one cent*** of the $13 million that GoodRx has agreed to pay would return either to GoodRx *or* to any lawyer if the settlement is finally approved. If for whatever reason there are any "leftover" funds, those are set to be distributed to the Center for Internet and Society at Stanford Law School. These two "red flags"—a "clear sailing" provision and reversions to counsel—resulted in the Third Circuit vacating a settlement in a data breach case just last week. *See In re Wawa, Inc. Data Sec. Litig.*, No. 22-1950, 2023 WL 7210345 (3d Cir. Nov. 2, 2023).[17] Unlike the deal Plaintiffs' counsel tried to strike in *Wawa*, there can be no doubt that GoodRx's settlement with the *Hodges* plaintiffs' counsel is bona fide and arms-length.

### C. Plaintiffs Will Have a Full and Fair Opportunity to Object to the *Hodges* Settlement.

If Plaintiffs have legitimate concerns regarding the process or substance of the settlement—which they do not—that still would not be a reason for this Court to ***enjoin*** the settlement. As noted, at present this Court is not the proper forum to assess such allegations. Plaintiffs can choose to opt out of the settlement and continue to litigate their claims in this Court on an individual basis against GoodRx. Or

---

[16] This is not the first time Plaintiffs' Co-Lead Counsel's firm has argued a settlement is a "reverse auction" in an effort to derail it. Just a few months ago, the same firm that serves as Co-Lead Counsel here submitted a declaration in the Western District of Washington supporting a motion to intervene on behalf of plaintiffs in a parallel class action pending in the Northern District of Illinois. The motion sought to intervene to object to preliminary approval, based on the assertion that the settlement in the competing class case was the result of a "reverse auction." *Tuttle v. Audiophile Music Direct Inc.*, No. 2:22-cv-01081-JLR, Dkts. 23, 24 (W.D. Wash. 2023); Roth Decl. ¶ 29 at Ex. 19; *id.* ¶ 30 at Ex. 20. Notably, the nationwide class settlement—if granted—would have subsumed the class action in Illinois. This familiar fact pattern was rejected by the Washington court after full consideration. Indeed, that court granted the motion to intervene, allowed briefing on the issue, then granted preliminary approval over the "reverse auction" objections, determining that the settlement had ***no*** such indications of collusion. *Id.*

[17] The plaintiffs in the *Wawa* case were represented by Shub & Johns LLC, who also serve as Court-appointed Executive Committee Member in this case.

they can choose to object to the settlement in the Southern District of Florida. But they cannot do both. If they choose to object, however, they will have a full and fair opportunity to voice any objections through the fair and orderly process set forth under Rule 23(e).[18] There is simply no prejudice given this adequate remedy at law, as confirmed by the weight of authority in this District and other federal district courts in California. *See, e.g.*, *Nunez v. Supervalu, Inc.*, No. 13-cv-626-WQH-JMA, 2014 WL 2759077, at *2 (S.D. Cal. June 16, 2014) (plaintiffs have a remedy available to them—"object[ing] to the settlement in the appropriate court"); *Utne*, 2022 WL 1443339, at *4–5 (noting Plaintiffs in first filed case "have avenues to object to any possible settlement" in later-filed cases); *Cohorst*, 2011 WL 3475274, at *6 (finding plaintiff failed to demonstrate entitlement as of right where proposed intervenor could "raise any objections to the settlement at the time of the [f]inal [h]earing" or to "opt-out of the class"); *Cochran v. Acellion, Inc.*, No. 5:21-cv-01887-EJD, Dkt. 99 at 4 (N.D. Cal. Nov. 5, 2021) ("[T]he settlement agreement allows the putative intervenors to protect their interests by opting out of the settlement class or participating in the fairness hearing process."); Roth Decl. ¶ 27 at Ex. 17; *In re JPMorgan Chase LPI Hazard Litig.*, No. 3:11-cv-03058-JCS, 2013 WL 3829271, at *4 (N.D. Cal. July 23, 2013) ("Plaintiffs will suffer no prejudice because [a stay] will allow them to focus their resources on attacking the fairness of the potential [] settlement in the Southern District of Florida."); *Zepeda v. PayPal, Inc.*, No. 4:10-cv-02500-SBA, 2014 WL 1653246, at *4, 8 (N.D. Cal. Apr. 23, 2014) ("Allowing the Putative Interveners to opt out or object to the settlement in the fairness hearings would be far less disruptive than allowing them to intervene, and it would still preserve their interests.").

## **CONCLUSION**

For the reasons stated, GoodRx respectfully requests that this Court deny Plaintiffs' Motion for an injunction ordering GoodRx to cease litigation in *Hodges* and prohibiting GoodRx from settling the *Hodges* action.

[18] Plaintiffs' citation to *Boren v. Am. Nat'l Ins.*, No. 1:06-cv-00294, Dkt. 44 (W.D. Tex. Oct. 12, 2006) is not on point. Dkt. 163 at 5. The court's unpublished opinion in *Boren* did not discuss the remedy of opting out and/or objecting at all. Moreover, unlike here, the court there gave deference to the fact that "there are state-court actions pending in Georgia." *Id.* There are no similarly pending state court actions tipping the scale in favor of transfer here.

DATED: November 13, 2023

Respectfully submitted,

KIRKLAND & ELLIS LLP

*/s/ Martin L. Roth*

Martin L. Roth

Michael J. Shipley (SBN 233674)
mshipley@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Olivia Adendorff (admitted *pro hac vice*)
olivia.adendorff@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 74205
Telephone: (214) 972-1758
Facsimile: (214) 972-1771

Martin L. Roth (admitted *pro hac vice*)
martin.roth@kirkland.com
Alyssa C. Kalisky (admitted *pro hac vice*)
alyssa.kalisky@kirkland.com
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Defendant*
*GoodRx Holdings, Inc.*

**CERTIFICATE OF SERVICE**

On November 13, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and Civil L.R. 5-1 have been so served.

*/s/ Martin L. Roth*
Martin L. Roth