**LOWEY DANNENBERG, P.C.**
Christian Levis (admitted *pro hac vice*)
Amanda Fiorilla (admitted *pro hac vice*)
Rachel Kesten (admitted *pro hac vice*)
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
E-Mail: clevis@lowey.com
        afiorilla@lowey.com
        rkesten@lowey.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
        jgavenman@bursor.com

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, et al., individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>      v.<br><br>GOODRX HOLDINGS, INC., et al.,<br><br>           Defendants. | Case No. 3:23-cv-00501-AMO<br><br>**PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM FURTHER VIOLATING COURT ORDER**<br><br>Date:   December 14, 2023<br>Time:   2:00 p.m.<br>Courtroom:   10<br>Hon. Araceli Martínez-Olguín |

1

2

**TABLE OF CONTENTS**

**PAGE(S)**

I.     INTRODUCTION ...................................................................................................... 1

II.    ADDITIONAL FACTUAL BACKGROUND........................................................... 2

III.   AN INJUNCTION UNDER THE ALL WRITS ACT IS WARRANTED........................ 3

IV.   THIS IS NOT A CASE OF PARALLEL LITIGATION .......................................... 6

V.    GOODRX WAS COMPELLED TO NEGOTIATE SETTLEMENT WITH
INTERIM CLASS COUNSEL .................................................................................. 8

VI.   AN INJUNCTION IS NECESSARY TO PRESENT IRREPARABLE
HARM ........................................................................................................................ 9

VII.  THE *HODGES* SETTLEMENT IS NOT FAIR AND REASONABLE............................ 10

      A.    GoodRx Lied to This Court to Delay Court-Ordered Mediation ............ 11

      B.    GoodRx Simultaneously Pursued Mediation with *Hodges* Counsel ........ 11

      C.    GoodRx & Milberg's Mediation Was Designed to Quickly Resolve
the Class's Claims Without Engaging in Informed Discussions .............. 12

      D.    The Settlement is Untethered to GoodRx's Liability ............................... 13

      E.    GoodRx & Milberg Violated the Local Rules to Obtain Preliminary
Approval .................................................................................................... 13

CONCLUSION ..................................................................................................................... 14

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - Case No. 3:23-CV-00501-AMO

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ......................................................................................... 9

*Grider v. Keystone Health Plan Cent., Inc.*,
   500 F.3d 322 (3d Cir. 2007) .......................................................................................... 8

*Hansell v. TracFone Wireless, Inc.*,
   2013 WL 6155618 (N.D. Cal. Nov. 22, 2013) .............................................................. 8

*In re Am. Online Spin-Off Accts. Litig.*,
   2005 WL 5747463 (C.D. Cal. May 9, 2005) ................................................................. 4

*In re Bank of Am. Wage & Hour Emp. Litig.*,
   740 F. Supp. 2d 1207 (D. Kan. 2010) ....................................................................... 4, 9

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................................... 13

*In re Checking Acct. Overdraft Litig.*,
   859 F. Supp. 2d 1313 (S.D. Fla. 2012) ...................................................................... 4, 5

*In re Life Invs. Ins. Co. of Am.*,
   589 F.3d 319 (6th Cir. 2009) ......................................................................................... 8

*In re Managed Care Litig.*,
   236 F. Supp. 2d 1336 (S.D. Fla. 2002) ................................................................. passim

*Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc.*,
   2023 WL 2918679 (E.D. Cal. Apr. 12, 2023) ............................................................. 13

*Kiland v. Bos. Sci. Corp.*,
   2011 WL 1261130 (N.D. Cal. Apr. 1, 2011) ................................................................. 5

*Mandel v. Grande Cosms., LLC*,
   2023 WL 7109893 (N.D. Cal. Oct. 27, 2023) ............................................................... 7

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ..................................................................................... 8

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   523 F.3d 1091 (9th Cir. 2008) ....................................................................................... 7

*Oceana Seafood Prod., LLC v. Louisiana Newpack Shrimp Co.*,
   2020 WL 13880993 (S.D. Fla. Dec. 31, 2020) .............................................................. 8

ii

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
    678 F.2d 93 (9th Cir. 1982) ............................................................................................ 9

*Perkins v. Am. Nat. Ins. Co.*,
    446 F. Supp. 2d 1350 (M.D. Ga. 2006) ......................................................................... 4

*Primo v. Pac. Biosciences of California, Inc.*,
    2013 WL 4482739 (N.D. Cal. Aug. 20, 2013) .............................................................. 7

*Saleh v. Titan Corp.*,
    353 F. Supp. 2d 1087 (S.D. Cal. 2004) ......................................................................... 7

*Salmonson v. Bed Bath & Beyond, Inc.*,
    2012 WL 12919187 (C.D. Cal. Apr. 27, 2012) ............................................................ 8

*Utne v. Home Depot U.S.A., Inc.*,
    2022 WL 1443339 (N.D. Cal. May 6, 2022) ............................................................... 10

**STATUTES**

28 U.S.C. § 1404 ..................................................................................................................... 6

28 U.S.C. § 1407 ..................................................................................................................... 6

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - Case No. 3:23-CV-00501-AMO

## I.   INTRODUCTION

The All Writs Act is a backstop on the powers of Federal courts. It exists precisely for circumstances like this: where dishonest conduct falling outside the remedies available under the Federal Rules would deprive the court of jurisdiction if allowed to continue. Indeed, it is difficult to imagine a more exigent circumstance than this one. GoodRx violated the rules in two Federal districts at least three times to ram through a settlement it reached with a group of individuals that never filed an action and whose interests were directly antagonistic to those of class. GoodRx negotiated this deal in secret, repeatedly misrepresenting to this Court and Interim Class Counsel that it had no interest in resolving those claims. This wasted countless hours and judicial resources on unnecessary discovery and motion practice. GoodRx then signed off on a motion for approval of that settlement in Florida as "unopposed" knowing it had never met-and-conferred with Interim Class Counsel, or even mentioned that settlement to them. The Florida court was also left in the dark as neither GoodRx nor their counterparts at Milberg bothered to inform it of this action prior to any of their filings.

Courts faced with similar shady dealings recognize they are not passive observers at a parade of horrors because the All Writs Act empowers them to curb "underhanded maneuvers" and ensure the "proper administration of justice." *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1342-43 (S.D. Fla. 2002). GoodRx attempts to wrench that authority from the Court's hands by proclaiming its good intentions, the virtues of the settlement, and other instances where "parallel actions" have proceeded in tandem and settled separately. This is nonsense. There are simply too many indicia of bad faith on top of rule violations to believe GoodRx. The Florida settlement is embarrassing, recouping just 0.013% of GoodRx's potential liability. And the comparisons to "parallel actions" are inept given that *Hodges* was settled *before it was filed* and never litigated alongside this case.

Perhaps recognizing these errors, GoodRx and Milberg have since moved to stay the *Hodges*'s settlement deadlines pending mediation here. That is a start, but it is not enough. This Court should stay the *Hodges* action so it can be transferred to this district where it belongs. Interim Class Counsel can then focus on litigating or obtaining an appropriate resolution on behalf of the class they were appointed to represent.

1

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

## II.   ADDITIONAL FACTUAL BACKGROUND

Plaintiffs' Opening Brief ("Opening Br.") outlined the facts warranting an order under the All Writs Act. *See* Opening Br., ECF No. 151 at 1-3. The section below concerns new developments since Plaintiffs filed that motion and responds to certain inaccuracies in GoodRx's counterstatement of facts.

### A.   GoodRx First Represented in May that Settlement Efforts Were Premature

GoodRx spends considerable time arguing that it did not misrepresent its position on settlement because the parties collectively agreed in joint statements that discussions would be premature. *See* GoodRx's Opposition to Plaintiffs' Motion to Enjoin ("Opp."), ECF No. 164 at 3-4. This omits a key fact. Four days before a conference with the mediator on May 22, 2023, GoodRx contacted Interim Class Counsel to advocate in favor of delaying mediation, because it believed settlement discussions were premature until after their motions to dismiss and compel arbitration were fully briefed. Declaration of A. Fiorilla ("Fiorilla Decl.") ¶ 5. While Interim Class Counsel stated they were open to mediation, (*id.*) they ultimately agreed to the parties' joint statement based on GoodRx's representation that mediation would be wasteful at that time.

### B.   GoodRx Could Have Invited Interim Class Counsel to the Mediation

On November 13, 2023, Interim Class Counsel learned for the first time, that GoodRx and Milberg held their first mediation on July 13, 2023. *See* Declaration of Martin L. Roth in Support's GoodRx's Opposition, ECF No. 165 ¶ 5. This was 6 days after Interim Class Counsel were appointed. As stated at the Order to Show Cause hearing, GoodRx and Interim Class Counsel were on a call at the time the Court issued its appointment order. *See* Fiorilla Decl. ¶ 7. GoodRx acknowledged and even congratulated counsel on their appointment. *Id*. With a week to spare, nothing prevented GoodRx from inviting Interim Class Counsel to represent the class at that mediation, other than a desire to ensure the class was not represented.

### C.   GoodRx Has Since Sought to Stay the Florida Action

GoodRx filed a "Notice Regarding Compliance" with the settlement in the *Hodges* action on November 16, 2023, touting how it has sent notice of the settlement to state and federal officials,

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

deposited an initial amount into the Settlement Fund, and is "working toward the class notice deadline." *Hodges* Action, ECF No. 24 at 1. However, yesterday evening, GoodRx and Milberg filed an unopposed motion to stay the pending settlement deadlines until mediation can occur in this action before Judge James in early January. *See* Fiorilla Decl., Ex. A. This sudden about face is telling: if even GoodRx and Milberg recognize that a stay in Florida is warranted this Court should have no trouble granting the relief Plaintiffs requested.

## III.    AN INJUNCTION UNDER THE ALL WRITS ACT IS WARRANTED

The exigencies here are palpable. Working in secret to avoid court-ordered mediation, GoodRx managed to buy a release for the claims in this action from a group of individuals who never filed a case. The price ($0.78 per person, before fees and expenses) was arbitrarily set by counsel who did not represent *any* class, after zero due-diligence (oddly, the settlement approval papers make no mention of any discovery efforts). *See* Opening Br. at 6; *see also* ECF No. 151-2. The *Hodges* action—which was settled before it began—was initiated solely as the vehicle to deprive this court of jurisdiction through approval of that settlement. Allowing the *Hodges* action to proceed would ratify the rule violations, misrepresentation, and surreptitious dealings leading up to this point. *See* Opening Br. at 4-6.

There is no reason that should occur. Faced with nearly identical conduct, courts have utilized the All Writs Act to quash improper attempts to settle claims in consolidated cases out from under the Class. For instance, in *Managed Care,* 236 F. Supp. 2d at 1339, where cases were consolidated and proceeding in the Southern District of Florida, defendant entered a settlement with plaintiffs who sought preliminary approval the following day in the Southern District of Illinois. Defendant and the Illinois plaintiffs "did not reveal" to the Illinois court that the settlement encompassed claims from the consolidated Florida action, and (like here) succeeded in obtaining preliminary approval that same day. *Id.*

Once alerted to defendant's attempt to settle the class's claims outside the consolidated proceedings, the Florida court admonished the defendant who "snookered both [that] Court and the [court] in Illinois in an obvious attempt to avoid this Court's jurisdiction." *Id.* at 1342. The court

3

found it "incredulous" that the defendant could "with a straight face, argue to this Court that its maneuvering is agreeable to the usages and principles of law" simply because settlements are *generally* preferable. *Id.* To curb defendant's "underhanded maneuvers" and ensure the "proper administration of justice," the Florida court utilized the All Writs Act to enjoin the defendant from moving forward with the settlement. *Id.* at 1342-43.

*Perkins v. Am. Nat. Ins. Co.*, 446 F. Supp. 2d 1350, 1352 (M.D. Ga. 2006) is another example where a court invoked the All Writs Act to rectify a similar settlement. There, the plaintiff sought an injunction after the defendant sought to settle the class's claims in a later filed action without any notice to plaintiff or his counsel. *Id.* The *Perkins* court ordered defendant to file a motion to stay in the second-filed action to halt final approval of the settlement until the court in the second-filed action could rule on the plaintiffs' motion to intervene and transfer. *Id.* at 1354-55. The second-filed court then transferred the action to the Middle District of Georgia where *Perkins* was pending under the first-to-file rule. *See Boren v. American National Ins. Co.*, Case No. 1:06-CV-00294, ECF No. 44 (W.D. Tex.). This is exactly the relief Plaintiffs have petitioned for here. *See Hodges* Action, ECF No. 9 at 16.[1]

*Managed Care* and *Perkins* are just two examples where courts have resorted to the All Writs Act to curb a defendant's efforts to settle claims in consolidated proceedings (and defeat jurisdiction) with different counsel in a separate, later-filed action. *See In re Checking Acct. Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012) (enjoining defendant's "efforts to settle a copycat case and thereby deprive this Court of its ability to adjudicate" the matter); *In re Am. Online Spin-Off Accts. Litig.*, 2005 WL 5747463, at *2, 4–5 (C.D. Cal. May 9, 2005) (enjoining defendant under the All Writs Act from proceeding with the settlement in a separate action that "it secretly negotiated" because the conduct "diminishes this Court's ability to bring the [present MDL case] to a natural conclusion."); *In re Bank of Am. Wage & Hour Emp. Litig.*, 740 F. Supp. 2d 1207, 1216-18 (D. Kan.

---

[1] GoodRx argues that an injunction is not necessary because Plaintiffs have already filed a motion to intervene in *Hodges*. *See* Opp. at 6 n. 2. This misses the point. *Perkins* required a stay of the action until the court in the later-filed case where the approval motion was pending could rule on the motion and send that case back to the first-filed court. *See Perkins*, 446 F. Supp. 2d at 1354-55. The same relief is warranted here.

2010) (enjoining defendant from issuing settlement notice in overlapping action after failing to disclose it to the court overseeing the consolidated proceedings or to JPML that needed to decide whether it should be consolidated in the first instance); *see also Kiland v. Bos. Sci. Corp.*, 2011 WL 1261130, at *7 (N.D. Cal. Apr. 1, 2011) (granting preliminary injunction to enjoin the defendants from pursuing the second-filed action under the first-to-file rule).

Here, an injunction is especially warranted given the indicia of bad faith, rule violations, and efforts to rush through approval and notice of the *Hodges* settlement in a different district. *See* Section II, above; *see In re Checking Acct.*, 859 F. Supp. 2d at 1324 (issuing injunction and admonishing defendant who, after knowing of hearing on motion to enjoin, "rushed to give notice of their proposed settlement instead of awaiting a ruling from this Court"). GoodRx and Milberg's motion to temporarily stay the settlement deadlines pending the court-ordered mediation in January is an incomplete and inadequate remedy. GoodRx's conduct makes clear that—while ordered to attend mediation with Interim Class Counsel—it fully intends to continue to pursue the *Hodges* settlement if (and as soon as) these efforts fail.[2] As in *Perkins*, this Court should ensure the stay GoodRx and Milberg voluntarily sought continues through the mediation until the *Hodges* court can rule on Interim Class Counsel's motion to intervene.

GoodRx seeks to sow uncertainty about this Court's authority to issue an injunction by arguing that some of the cases that have issued an injunction under the All Writs Act involve consolidation ordered by the Judicial Panel on Multidistrict Litigation ("JPML") (Opp. at 13), as opposed to other means of consolidating actions in that forum.[3] This is a distinction without a difference. The JPML exists for the purpose of consolidating overlapping actions as a "last solution" where the parties have shown they are unable to "informal[ly] coordinat[e]" or doing so is not

---

[2] Unfortunately, GoodRx has every incentive to ensure this happens so it can continue to pursue approval of the ultra-low-cost Florida settlement while complying with the Court's order.

[3] GoodRx's claim that there is a material distinction between enjoining state and federal court proceedings is incorrect. Simply because the need to resort to the All Writs Act presents itself more often with tag-along state court proceedings does not make it improper to utilize the same tools when a settlement is reached in a tag-along federal action. *See Managed Care*, 236 F. Supp. 2d at 1339. Indeed, the reason this occurs *less often* in sister jurisdictions is because of procedural safeguards, like the first-to-file rule, which prevent duplicative cases from existing in multiple jurisdictions.

5

"feasible." *In re: Geico Customer Data Sec. Breach Litig.*, MDL No. 3013, ECF No. 33 at 2. Here, resorting to the JPML was unnecessary (and would have been wasteful) because the action filed **outside** this District informally agreed to dismiss their lawsuit and proceed in this forum where the actions were then consolidated.[4] That Plaintiffs were able to achieve the same result without petitioning the JPML does not change the analysis. The fact remains that this is a consolidated action where, pursuant to the first-to-file rule, any later actions would be transferred and subsumed within the existing case, *i.e.*, the same as any action consolidated by the JPML.[5] Thus, the reasoning in *Managed Care*, *Checking Account*, *American Online*, and *Bank of America* applies with equal force here.

## IV.    THIS IS NOT A CASE OF PARALLEL LITIGATION

Faced with precedent admonishing (and enjoining) defendants who have sought to settle claims in consolidated proceedings in a different forum, GoodRx attempts to analogize this case to actions involving genuine "parallel" proceedings. This is wrong for two reasons.

First, this is not an instance of parallel litigation. Parallel litigation involves multiple cases with overlapping or similar claims proceeding at the same time. When claims are fully duplicative of one another, procedural safeguards exist to ensure the same cases are not litigated in multiple forums, such as informal coordination (*i.e.*, having cases refiled in the same forum, like Interim Class counsel did here with respect to the action filed in the Southern District of New York), transfer pursuant to the first-to-file rule, 28 U.S.C. § 1404, or as a last resort, through the JPML and 28 U.S.C § 1407. While any of these measures would have ensured *Hodges* was transferred here and consolidated with the existing litigation, GoodRx and Milberg bypassed these rules by concealing the existence of this action from the *Hodges* court, and the existence of the *Hodges* action from this one, while rushing for preliminary approval. GoodRx cannot violate the Local Rules and their notice

---

[4] *See E.C. v. GoodRx Holdings, Inc.*, 1:23-cv-00943 (S.D.N.Y.).

[5] The mechanism for achieving transfer is also procedurally similar. Had Interim Class Counsel been provided notice of the *Hodges* action they could have sought transfer immediately under the first-to-file rule, or alternatively 28 U.S.C. § 1404, by filing a motion in the later-filed action. In an MDL, plaintiffs would file a notice of tag-along action that would alert the JPML of a newly filed action, and effectuate transfer under 28 U.S.C. § 1407. The end result is the same.

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

1    requirements to avoid being transferred and consolidated and then simultaneously assert the action

2    in *Hodges* is actually "parallel," justifying separate settlement discussions.[6]

3          Second, even in instances of "parallel" litigation (which this is not) courts still consider an

4    injunction appropriate where there is evidence of collusion, a reverse auction, or other "odor of

5    mendacity." *See* Opp. at 6 (citing *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir.

6    2008). All are present here. GoodRx misrepresented its intent to mediate to Interim Class Counsel, this

7    Court, and the court-appointed mediator to delay (and ultimately avoid) court-ordered mediation that

8    should have occurred months ago. It *simultaneously* engaged in separate mediations with its chosen

9    counsel who had no action pending and entered a settlement that, on its face, resulted in an

10   unreasonable discount that allows GoodRx to potentially escape liability for just 0.013% of its actual

11   exposure. And it then violated the Local Rules to force through the settlement in a completely

12   different forum in hopes of avoiding detection.

13         Not a single case GoodRx cites (including *Negrete*) endorse these kinds of tactics. *See* Opp.

14   at 9 (citing *Negrete*, 523 F.3d 1095-99 (refusing to enjoin settlement efforts in three of five

15   overlapping or similar "parallel" cases where there was no evidence of collusion or a reverse auction,

16   or any other "odor of mendacity"); *Mandel v. Grande Cosms., LLC*, 2023 WL 7109893, at *2 (N.D.

17   Cal. Oct. 27, 2023) (denying request for injunction under All Writs Act where there were no facts

18   demonstrating collusive conduct or a reverse auction);[7] *Primo v. Pac. Biosciences of California, Inc.*,

19   2013 WL 4482739, at * 3 (N.D. Cal. Aug. 20, 2013) (declining to enjoin the first filed action from

20   proceeding with settlement, not a subsequent case); *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1094

21   (S.D. Cal. 2004) (refusing to enjoin non-parties under All Writs Act in a separate case because it was

22

23   [6] Nor is *Hodges* "parallel" as it was only filed to effectuate the settlement between Hodges's counsel
     and GoodRx.

24   [7] *Mandel* (and the similar, later-filed action pending in New Jersey, *Nixon v. Grande Cosms., LLC*,
25   No. 1:22-cv-06639 (D. N.J.)) are evidence of how actions typically proceed when one or more similar
     cases are filed in multiple districts. The *Mandel* Action was filed first, and when the plaintiffs in
26   *Nixon* sought preliminary approval, the court admonished plaintiffs for seeking an "end-run around
     the Mandel Court's jurisdiction" and refused to rule on the preliminary approval motion until it was
27   clear "all efforts to settle [the *Mandel* Action] . . . have not been successful." *See Nixon*, ECF No.
     27. Thus, the *Nixon* Court had righted this wrong before the *Mandel* Court declined to exercise its
     powers under the All Writs Act.

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

not proceeding as a class action and therefore presented no "detriment[]" to the existing class case); *In re Life Invs. Ins. Co. of Am.*, 589 F.3d 319, 328 (6th Cir. 2009) (reversal of an injunction where pending matter was one of "several cases pending in various state and federal courts" some of which were "initiated before" the existing matter); *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 326 (3d Cir. 2007) (plaintiff in the "tag-along" action sought to enjoin settlement in a consolidated MDL that was "nearly three years old"). And for good reason: if this were the law, all defendants would disregard consolidation orders, class certification, and leadership appointment to shop for counsel willing to file an action and settle at the lowest price.

## V.   GOODRX WAS COMPELLED TO NEGOTIATE SETTLEMENT WITH INTERIM CLASS COUNSEL

GoodRx dedicates a substantial portion of its opposition to a high-level overview of Rule 23(g) appointment, arguing that an order under this Rule cannot be enforced beyond the "appointing court." Opp. at 10. However, this ignores that Rule 23(g), like all Federal Rules, does not operate in isolation, but achieves its nationwide effect by working in concert with other procedural devices available in Federal Courts. Transfer procedures—like the first-to-file rule Plaintiffs seek to enforce in Florida—are particularly relevant here as they operate to give nationwide effect to the Court's leadership order by providing a means to bring the *Hodges* case (and any other related actions) to this District.[8] This, of course, makes good sense as it helps avoid wasting judicial resources on duplicative litigation in different forums and inconsistent results across courts dealing with the same issues.

Not surprisingly, the first-to-file rule creates a universally recognized "strong presumption across the federal circuits that favors the forum of the first-filed suit." *Oceana Seafood Prod., LLC v. Louisiana Newpack Shrimp Co.*, 2020 WL 13880993, at *2 (S.D. Fla. Dec. 31, 2020) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005)); *Hansell v. TracFone Wireless, Inc.*, 2013 WL 6155618, at *4 (N.D. Cal. Nov. 22, 2013) ("The first-to-file rule creates a presumption

---

[8] This is significant as even GoodRx admits that when "all related cases [are] already before the same court" the defendant should be "compelled" to "only negotiate with interim counsel." *See* Opp. at 11 n. 6 (citing *Salmonson v. Bed Bath & Beyond, Inc.*, 2012 WL 12919187 at * 5 (C.D. Cal. Apr. 27, 2012)).

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

that favors venue in this district."). GoodRx cites two cases evaluating the application of the first-to-

file rule, ***neither of which*** support its assertion that an action filed for the purpose of effectuating a

settlement with different counsel defeats the presumption.[9] *See* Opp. at 14 (citing *Pacesetter Sys.,*

*Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982) (affirming district court's application of the

first-to-file rule); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (same)).

       The malintent of GoodRx's failure to notify the Florida court of this Action crystalizes against

this backdrop. Knowing that the first-to-file rule would require transfer here regardless of which

federal court *Hodges* was eventually filed in, the notice violation is a clear attempt to avoid this

Court's order on the appointment of lead counsel. This should not be allowed.[10]

## VI.   AN INJUNCTION IS NECESSARY TO PRESENT IRREPARABLE HARM

       GoodRx's conduct in usurping this Court's jurisdiction has clearly prejudiced Plaintiffs and

Class members, forcing a choice between two equally bad options: (1) opting-out of the *Hodges*

settlement and seeking to litigate their claims on an individual basis, an option *Hodges* plaintiffs

themselves recognize would be fruitless given the costs of doing so[11]; or (2) accepting a nominal

amount (78 cents) for claims *Hodges* plaintiffs' counsel valued in the hundreds of dollars. GoodRx's

suggestion that opting out or appearing at a fairness hearing are adequate remedies cannot be

reconciled with these facts, as neither can undo the harm already done.[12]

---

[9] GoodRx relies almost exclusively on cases approving settlements in parallel litigation. As described in Section IV, this is not an instance of parallel cases.

[10] GoodRx's separate claim that deviation from the first-to-file rule is appropriate because *Hodges* has "progressed" further than this action is absurd. Opp. at 14. Were this the measure of "progress" interlopers could show up on the eve of trial to settle the claims in an action they were never a part of and claim "priority" because they had resolved those claims. GoodRx's argument is also factually inaccurate. Far from the "very early stage of litigation" (Opp. at 14) this case has proceeded through consolidation, appointment of interim lead counsel, and briefing on several motions to dismiss, motions to compel and/or stay, document and deposition discovery, as well as motions to exclude evidence. There is no indication in any of the *Hodges* papers that counsel there did similar work.

[11] *See Hodges* Action, ECF No. 7 at 28 ("[M]embers of the Class would have little interest in pursuing their own separate actions" because of "the cost of litigating complex[] legal issues against a relatively large corporate entity[.]")

[12] Even sending *notice* presents the potential to cause irreparable harm, as it would cause confusion among class members. *See In re Bank of Am. Wage & Hour Emp. Litig.,* 740 F. Supp. 2d 1207, 1218 (D. Kan. 2010) (explaining opt-out rights or raising objections at fairness hearing do not negate "irreparable harm" caused by proposed settlement in previously undisclosed tag-along action

9

1    This prejudice is especially evident now that this Court has re-ordered the parties to

2    mediate—something that would have occurred months ago under Judge Chhabria's order if GoodRx

3    had not deceived Interim Class Counsel and this Court. Plaintiffs expect GoodRx to use the *Hodges*

4    settlement as an artificial cap on Plaintiffs' and the Class's claims that do not align with GoodRx's

5    actual liability. *See* Section VII.D. If GoodRx is not enjoined from pursuing the *Hodges* settlement,

6    it has no incentive to mediate in good faith or negotiate a fair settlement in this action that is within

7    the actual range of its exposure. *See Managed Care*, 236 F. Supp. 2d at 1345 (finding "irreparable

8    harm" where the settlement reached outside the consolidated proceedings "will have the practical

9    effect of limiting and hindering settlement of the encompassing issues before this Court, and of

10   impeding the mediation already ordered by this Court.").

11   Lastly, not only will allowing GoodRx to proceed with the settlement cause irreparable harm

12   for the claims against GoodRx, but those against the remaining defendants. The practical effect of

13   GoodRx's conduct, should it be allowed to continue, would be an endorsement to every defendant

14   to seek out separate counsel to resolve the allegations against it at a discount in a different forum or

15   outside the federal court system altogether. *Managed Care*, 236 F. Supp. 2d at 1344 ("if [the Court]

16   were to let [the defendant] proceed in this manner, nothing would stop every other Defendant from

17   following suit. They would each settle their claims in a state or federal court outside this Court's

18   jurisdiction.").[13]

19   **VII.    THE *HODGES* SETTLEMENT IS NOT FAIR AND REASONABLE**

20   If anything is "divorced from reality" (Opp. at 3) it is GoodRx's claim that the *Hodges*

21   settlement is "reasonable, fair, and adequate." Opp. at 15. Both the means of accomplishing the

22   settlement—and its end result—indicate it bears no resemblance to the types of settlements courts

23   find fair, reasonable, and adequate for these claims.

24   _____

25   because even sending "notice" could "deter participation" in the consolidated action as some class
     members would believe their "claims were resolved").

26   [13] *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 1443339, at *4–5 (N.D. Cal. May 6, 2022) is
     distinguishable. That case was evaluating a motion for sanctions, not a motion to enjoin and, in any

27   event, the defendant was seeking to settle different claims than the ones implicated in the current
     case. To ensure it was acting in good faith, the defendant had voluntarily offered to stay the second
     action and also commit ***not to settle the claims*** at issue in *Utne* in any other action.

10

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

**A.       GoodRx Lied to This Court to Delay Court-Ordered Mediation**

This consolidated case was referred to court-sponsored mediation in April 2023, nearly ***seven months ago***. *See* ECF No. 81. On May 18, 2023, two days before a pre-mediation conference call was scheduled, GoodRx began its efforts to delay mediation starting with a phone call to Interim Class Counsel stating it would not be successful at this stage of the litigation. Fiorilla Decl. at ¶ 5. It continued to push the narrative that mediation was premature, relaying the same opinion to the court-ordered mediator and this Court. *See* ECF No. 117; November 14, 2023 Transcript at 7:2-9 ("what you represented to the mediator and what you represented to me was that it was too early to talk settlement. Clearly not the case . . . You all were clearly ready to talk settlement, so I know you didn't need those motions resolved."). These representations were false and, ultimately, successful. As a result of GoodRx's conduct, court-ordered mediation was delayed until after the parties completed time-consuming briefing on GoodRx's motions to dismiss and compel arbitration.

**B.       GoodRx Simultaneously Pursued Mediation with *Hodges* Counsel**

While GoodRx and Milberg both emphasize that Milberg had retained arbitration clients around March 2023 (ECF No. 165 ¶ 4; *Hodges*, ECF No 4-1 at 7)—through catchy advertisements promising individual monetary damages worth hundreds of dollars—neither GoodRx nor Milberg claim any arbitrations were ***actually filed***. Neither admits to ***when*** they first began to discuss settlement of these arbitration claims. And neither indicates ***when*** or ***who*** transformed these negotiations from a resolution of arbitration-based claims (if that ever was the focus) to the Class's claims in this consolidated action.

Putting aside these omissions, it is clear GoodRx and Milberg both agreed to mediate and settle the Class's claims, despite Milberg not representing any class at that time. This mediation occurred on July 13, 2023[14], as week after Interim Class Counsel were appointed and, ironically, the same day this Court entered a stipulation *to extend the deadline* for the parties in this Action to complete court-ordered mediation. *See* ECF No. 121. If GoodRx's settlement efforts were truly

---

[14] It appears Milberg and GoodRx have different recollections of their own settlement negotiations, with GoodRx asserting the parties attended a full day mediation session on July 13, 2023 and again on August 11, 2023 (ECF No. 165 at 1) and Milberg claiming the first mediation occurred on August 11, 2023, and that a "second mediation was held" after the fact. *Hodges* Action, ECF No. 4-1 at 7-8.

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - Case No. 3:23-CV-00501-AMO

above board, it does not make sense why GoodRx went to such lengths to **avoid** discussing settlement with Interim Class Counsel and chose to do so with attorneys who did not have any action pending.

### C. GoodRx & Milberg's Mediation Was Designed to Quickly Resolve the Class's Claims Without Engaging in Informed Discussions

Perhaps the most shocking, it appears GoodRx and Milberg negotiated the settlement without discovery or any information outside the public record. Neither GoodRx or Milberg claim to have exchanged any documents or information to inform their settlement discussions, relying entirely on the parties "brief[ing] [of] relevant issues." ECF No. 165 ¶ 5; *Hodges*, ECF No. 4-1 at 7 (asserting Milberg "researched" the claims and theories). It is unclear how GoodRx can assert these negotiations were "hard-fought" and "arms-length" (ECF No. 165 ¶ 7) when **no information was exchanged**, including key details like (1) how many individuals were actually impacted by GoodRx's conduct; (2) how long GoodRx's conduct persisted; (3) how many third parties GoodRx disclosed Class members' sensitive health data to; and (4) how this data was used.

For instance, while Milberg asserts in its motion for preliminary approval that "there are more than 16.7 million Class Members" this figure is apparently based on nothing more than the number of "users of [GoodRx's] Website." *Hodges* Action, ECF No. 4 at 25. Even if this were an acceptable proxy for **website users** whose health information was disclosed, the Class here (and the Class *Hodges* seeks to settle) includes all individuals "who used any website, **app, or service** made available by or through GoodRx at any point prior to October 27, 2023." *Id*. at 12. Interim Class Counsel is aware of no decision finding a settlement to be fair and reasonable when there is no exchange of necessary information, including how many individuals (or a reasonable estimate) were impacted in the first place and fall within the Class.

The failure to disclose the most basic facts makes clear there is nothing "arms-length" or "fair" about the settlement. Rather, it was negotiated with two goals in mind: (1) for GoodRx to settle the Class's claims as low as possible; and (2) for Milberg to obtain a windfall in attorneys' fees.

GoodRx attempts to remedy these glaring deficiencies by pointing to the involvement of a mediator. *See* Opp. at 3, 17. But using a mediator does not, by itself, demonstrate that a settlement is the result of an arms-length negotiation. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

12

948 (9th Cir. 2011) ("the mere presence of a neutral mediator . . .is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement."). The thin veneer of mediation is even less convincing here, given the lack of information exchanged and drastic steps GoodRx and Milberg took to (1) hide its settlement efforts; (2) delay settlement in this action; and (3) avoid transfer once *Hodges* was filed by violating the Local Rules.

### D. The Settlement is Untethered to GoodRx's Liability

As explained in Plaintiffs' opening motion, courts in this District routinely look to defendant's actual exposure in evaluating whether a settlement is adequate. *See* Opening Br. at 6 (citing *Kabasele v. Ulta Salon, Cosms. & Fragrance, Inc*., 2023 WL 2918679, at *3 (E.D. Cal. Apr. 12, 2023) (rejecting settlement that represents just 5.7% of maximum possible recovery)). The *Hodges* settlement releases GoodRx from liability for just 0.013% the maximum possible recovery under Milberg's conservative (and baseless) estimate of the Class size.[15] While GoodRx claims there are perceived weaknesses in Plaintiffs' claims, like its untested statute of limitations defense, it does not explain how that would warrant a 99.9% haircut at settlement. This is because such a massive discount can rarely, if ever, be justified. It certainly has not been here.

### E. GoodRx & Milberg Violated the Local Rules to Obtain Preliminary Approval

Lastly, even if there was nothing improper with the settlement, there is no explaining why GoodRx and Milberg violated the Local Rules in order to rush preliminary approval.

GoodRx and Milberg repeatedly emphasize that they are represented by experienced and sophisticated counsel. *See* ECF No. 159 at 2 (GoodRx referring to Milberg as one of the "largest and most active data privacy plaintiffs' firms); *Hodges* Action, ECF No. 14 at 5 (Milberg referring to Kirland as "one of the largest and most feared defense firms in the country"). Sophisticated counsel at the largest firms in the country know how to comply with the Local Rules. They are also familiar with the first-to-file rule, which would have required *Hodges*—wherever it was filed in the country— to be transferred and consolidated with the existing consolidated cases the outset.

---

[15] GoodRx's reliance on *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885 (C.D. Cal.) as somehow endorsing its conduct here is a red herring. Bursor filed *Maree* one day after another firm had filed a similar action—Bursor did not engage in secret settlement discussions when it had no action pending.

13

Nevertheless, GoodRx and Milberg refused to comply with these rules and otherwise disguised their conduct to avoid detection and transfer to this Court, including by: (1) misrepresenting GoodRx's willingness to engage in settlement discussions to delay court-ordered mediation; (2) filing *Hodges* as unrelated to any other action; (3) moving for preliminary approval as "unopposed" when it was not; (4) failing to meet and confer with Interim Class Counsel before moving for preliminary approval; (5) omitting any reference to this action in the preliminary approval papers; and (6) failing to file a Notice of Pendency of Related Action in this case.

A six-step scheme cannot be characterized as accidental or mere oversight, and it begs the question why they would go to such lengths if their conduct was not improper.

## CONCLUSION

For the foregoing reasons, Plaintiffs' request that this Court retain its jurisdiction and take all steps necessary to that end, including entering an order: (1) requiring GoodRx to cease litigation of, or alternatively file a motion to stay, the *Hodges* action under the first-to-file rule; and (2) prohibiting GoodRx from seeking settlement with non-appointed counsel in violation of the Court's Appointment Order should be granted.

Dated: November 22, 2023

**BURSOR & FISHER, P.A.**

*/s/ L. Timothy Fisher*

L. Timothy Fisher (SBN 191626)
Jenna L. Gavenman (SBN 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:    (925) 300-4455
Facsimile:    (925) 407-2700
E-mail: ltfisher@bursor.com
E-mail: jgavenman@bursor.com

*Interim Co-Lead Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601

14

1

Telephone:     (914) 997-0500
Facsimile:     (914) 997-0035

2

clevis@lowey.com
afiorilla@lowey.com

3

rkesten@lowey.com

4

*Interim Co-Lead Counsel*

5

Robert C. Schubert #62684

6

Willem F. Jonckheer #178748
Amber L. Schubert #278696

7

**SCHUBERT JONCKHEER & KOLBE LLP**

8

2001 Union Street, Suite 200
San Francisco, CA 94123

9

Tel: (415) 788-4220
Fax: (415) 788-0161

10

rschubert@sjk.law
wjonckheer@sjk.law

11

ascubert@sjk.law

12

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com

13

**JAVITCH LAW OFFICE**
3 East 3rd Ave., Suite 200

14

San Mateo, CA  94401
Telephone:     (650) 781-8000

15

Facsimile:     (650) 648-0705

16

Thomas A. Zimmerman, Jr. (*pro hac vice*)
tom@attorneyzim.com

17

**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220

18

Chicago, Illinois 60602
Telephone:     (312) 440-0020

19

Facsimile:     (312) 440-4180

20

Israel David (*pro hac vice*)
israel.david@davidllc.com

21

Blake Hunter Yagman (*pro hac vice*)
blake.yagman@davidllc.com

22

**ISRAEL DAVID LLC**
17 State Street, Suite 4010

23

New York, New York 10004
Telephone:     (212) 739-0622

24

Facsimile:     (212) 739-0628

25

Rebecca M. Hoberg
rhoberg@moyalawfirm.com

26

**MOYA LAW FIRM**
1300 Clay Street, Suite 600

27

Oakland, California 94612
Telephone:     (510) 926-6521

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB & JOHNS LLC**
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Phone: (610) 585-1195
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

PLAINTIFFS' REPLY ON MOTION FOR ORDER ENJOINING DEFENDANT GOODRX FROM
FURTHER VIOLATING COURT ORDER - CASE NO. 3:23-CV-00501-AMO