GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612 USA
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC.,<br><br>Defendants. | Case No. 3:23-cv-00501-AMO<br><br>**NOTICE OF MOTION AND MOTION TO SEVER CLAIMS AGAINST DEFENDANT META PLATFORMS, INC.**<br><br>[*[Proposed] Order filed concurrently herewith*]<br><br>Action Filed: February 2, 2023<br><br>Honorable Araceli Martinez-Olguin<br><br>Date: March 28, 2024<br>Time: 2:00 PM<br>Courtroom: 10 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 28, 2024, at 2:00 p.m., or as soon as the matter may be heard before the Honorable Araceli Martinez-Olguin of the United States District Court for the Northern District of California, San Francisco Division, Defendant Meta Platforms, Inc. ("Meta") will and does move this Court for an order severing the claims against Meta in this action. This motion is brought under Federal Rule of Civil Procedure 21, on the basis that the claims against Meta are related to the claims in *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO (N.D. Cal. June 17, 2022), and should be severed from the claims against Criteo Corp., Google LLC, and GoodRx Holdings, Inc., so that they can be consolidated with that action.

Meta's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated: November 22, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

## INTRODUCTION

This action involves the alleged transmission of allegedly sensitive user information from Defendant GoodRx Holdings, Inc. ("GoodRx") to, and use of such information by, several entities, including defendant Meta Platforms, Inc. ("Meta"). With respect to Meta, plaintiffs allege that GoodRx, an online telehealth and prescription company, sent users' health and prescription-related information to Meta via Meta's Pixel (used on websites) and its Software Development Kit ("SDK") (used on mobile applications)—tools that web and app developers can choose to install on their websites and applications to measure particular types of user activity, such as online purchases.

The allegations against Meta in this case are duplicative of, and encompassed within, the allegations asserted in the consolidated action *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-03580-WHO (N.D. Cal. June 17, 2022) ("Consolidated Healthcare Action"), pending before Judge Orrick. The operative complaint in the Consolidated Healthcare Action (the "Healthcare CAC") alleges that entities covered by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and/or the California Confidentiality of Medical Information Act ("CMIA"), *including pharmacies*, sent sensitive health information to Meta via the Meta Pixel and Meta SDK. The Healthcare CAC covers the internet tools that are the subject of this case; GoodRx falls within the Healthcare CAC's definition of a covered entity; plaintiffs' allegations fall within the scope of the allegations asserted in the Healthcare CAC; and plaintiffs fall within the proposed class in the Healthcare CAC. Because the allegations against Meta in this case are duplicative of those in the Consolidated Healthcare Action, it would conserve resources, promote judicial economy, and avoid conflicting results to relate and consolidate plaintiffs' claims against Meta in this action with the Consolidated Healthcare Action.

Notably, the question before the Court is not whether plaintiffs' claims against Meta here should be litigated in isolation. They will be considered alongside other claims either way—whether with the nearly identical claims against Meta in the Consolidated Healthcare Action, or with plaintiffs' distinct claims against other defendants in this case. The issue is which combination of claims will best promote judicial efficiency, fairness, and consistency. Meta respectfully submits that, in light of the operative pleadings, that question is not close. Litigating plaintiffs' claims against Meta together with

their counterparts in the Consolidated Healthcare Action—which assert the same conduct involving the same technologies against the same defendant—will do much more to reduce redundant and unnecessary burdens on the Court and parties than keeping them yoked together with the other claims in this case concerning different parties, different internet tools, and different alleged facts.

Accordingly, Meta now moves to sever plaintiffs' claims against Meta in this action so that the claims can be consolidated with the Consolidated Healthcare Action.

**BACKGROUND AND PROCEDURAL FACTS**

***Consolidated Healthcare Action.*** On June 17, 2022, a "John Doe" plaintiff filed a putative class action against Meta, alleging that his healthcare provider installed Meta's Pixel tool on the patient portal website that the plaintiff used to access his healthcare provider's services. Consolidated Healthcare Action, Dkt. 1 ¶ 1. Several other lawsuits alleging the same facts and bringing the same or similar claims were subsequently filed, both in and outside of the Northern District of California. On October 12, 2022, the court granted a motion to consolidate those cases, and it established a process going forward for the parties to consolidate any additional related cases or claims into the Consolidated Healthcare Action. *Id.*, Dkt. 73 ¶ 4. Since that order, Meta and the plaintiffs in the Consolidated Healthcare Action have moved expeditiously to relate and consolidate all similar claims against Meta filed across the country into that case. *Id.*, Dkt. 376 at 1–2 (listing all cases related and consolidated into the Consolidated Healthcare Action as of November 7, 2023). In many instances, this process involved motions to sever claims against Meta from claims against other defendants so that the claims against Meta could be transferred to this Court and consolidated with the Consolidated Healthcare Action. Every such motion was granted. *Id.*

***This Action.*** On February 2, 2023, plaintiff Jane Doe filed this putative class action, alleging that Defendant GoodRx, a telehealth and prescription company, incorporated analytics tools from Meta, Google, and Criteo (the "Advertising and Analytics Defendants") into the GoodRx website and mobile application. Dkt. 1 ¶ 29. According to plaintiff, GoodRx offers a monthly "healthcare membership," telehealth services (which can include "schedul[ing] a visit with a provider"), "informational resources about health conditions and treatments," and discounts on prescriptions. Dkt. 102 ¶¶ 3–7. On February 17, 2023, a second case was brought by a John Doe. Dkt. 77 at 1. Three

more cases were brought on March 2, March 20, and March 30, by plaintiffs Jose Marquez, Hollis Wilson, and E.C., respectively. *Id.* On April 21, 2023, plaintiffs filed a motion to consolidate the various GoodRx actions because the actions all "concern substantially similar parties, arise from a substantially similar set of facts, and assert similar causes of action" all "against the same Defendants." *Id.* The Court granted the motion to consolidate on April 28, 2023. Dkts. 81, 85.

On May 26, 2023, plaintiffs filed a consolidated class-action complaint (the "GoodRx Consolidated Complaint"). Dkt. 102. Plaintiffs allege that GoodRx sent to Meta their "personal information, including health information relating to their medical conditions, symptoms, and prescriptions" using Meta's Pixel on GoodRx's website and Meta's SDK on GoodRx's mobile application. *Id.* ¶¶ 16, 18, 68. Based on these allegations, plaintiffs asserted claims against Meta for: 1) intrusion upon seclusion; 2) unjust enrichment; 3) violation of CMIA sections 56.06, 56.101, and 56.10; 4) aiding and abetting violations of CMIA sections 56.06, 56.101, and 56.10; 5) violation of CMIA section 56.36; 6) violation of California Invasion of Privacy Act ("CIPA") sections 631 and 632; 7) violation of California's Unfair Competition Law ("UCL"); 8) violation of New York General Business Law § 349; and 9) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs seek certification of a nationwide class of "[a]ll natural persons in the United States who used the GoodRx Platform and whose communications and/or data were shared with third parties," including Meta. *Id.* ¶ 219.

Meta and the other defendants moved to dismiss. On November 14, 2023, the Court denied those motions without prejudice and directed the parties to participate in mediation. Dkt. 166.

***Healthcare CAC.*** Meanwhile, on October 10, 2023, plaintiffs in the Consolidated Healthcare Action filed the Healthcare CAC. Consolidated Healthcare Action, Dkt. 335. The Healthcare CAC seeks to certify a nationwide putative class of "Facebook users whose health information was obtained by Meta from their health care provider or covered entity's website or application." *Id.* ¶ 132. The Healthcare CAC alleges that because "covered entities" installed Meta's Pixel on their websites and Meta's SDK on their applications, Meta received information about plaintiffs that is allegedly individually identifiable, confidential, and otherwise sensitive. *Id.* ¶ 84(i). The Healthcare CAC defines the term "covered entity" to include a "healthcare provider, health insurer, healthcare

clearinghouse, patient portal provider, *pharmacy*, pharmaceutical company, and *any other entity, business associate, or contractor for which health or medical information is protected by HIPAA or the CMIA*." *Id.* ¶ 355 (emphases added). In short: GoodRx falls within the Healthcare CAC's definition of a covered entity; plaintiffs' allegations are subsumed within those asserted in the Healthcare CAC; and plaintiffs fall within the proposed class.

The Healthcare CAC asserts a variety of common-law and statutory privacy-related causes of action, including: 1) violation of the Electronic Communications Privacy Act; 2) violation of CIPA sections 631 and 632; 3) common law intrusion upon seclusion; 4) invasion of privacy under the California Constitution; 5) unjust enrichment; 6) breach of contract; 7) breach of the duty of good faith and fair dealing; 8) trespass to chattel; 9) violation of the CLRA; and 10) violation of the California Comprehensive Computer Data Access and Fraud Act. *Id.* ¶¶ 368–547.

**LEGAL STANDARD**

Under Federal Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. District courts have "broad discretion in determining whether to order severance under Rule 21," *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *1 (N.D. Cal. Apr. 28, 2016), and "Rule 21 allows the Court to sever [] claims against [a defendant] even though it was properly joined as a defendant," *Bradford Techs., Inc. v. Biggers*, 2014 WL 12641953, at *5 (N.D. Cal. May 27, 2014). "As long as there is a discrete and separate claim, the district court may exercise its discretion and sever it." *Horowitz v. Chen*, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020). Severance is proper where it "will serve the ends of justice and further the prompt and efficient disposition of litigation." *Khanna v. State Bar of Cal.*, 2007 WL 2288116, at * 2 (N.D. Cal. Aug. 7, 2007).

In considering whether to sever a claim under Rule 21, a court considers the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010).

## ARGUMENT

Plaintiffs' claims against Meta in this case largely duplicate claims asserted against Meta by the plaintiffs in multiple cases that have already been consolidated within the Consolidated Healthcare Action, pending before another court in this District, and the two actions are based on the same underlying allegations. The claims against Meta in this action should be severed from plaintiffs' distinct claims against the other defendants so that the claims against Meta can be related to and consolidated with the Consolidated Healthcare Action. That course will best advance judicial efficiency, reduce unnecessary burdens, and minimize unfair prejudice.

### A. Severing the Claims Against Meta Would Promote Judicial Economy.

Severance of the claims against Meta would further the interests of judicial economy because those claims largely duplicate the claims asserted against Meta in the Consolidated Healthcare Action. To that end, if this Court severs the claims against Meta here, Meta will seek relation and consolidation of plaintiffs' claims against Meta with the Consolidated Healthcare Action.[1] *See XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022) (severing claims so that they could be transferred to a district where "related" litigation was ongoing). Severance thus will relocate plaintiffs' allegations against Meta to the Consolidated Healthcare Action so that like allegations can be litigated together. As courts around the country facing similar circumstances have correctly recognized, severance and consolidation with the Consolidated Healthcare Action is the most appropriate course. Consolidated Healthcare Action, Dkt. 376 at 1–2 (listing cases).[2]

---

[1] The motion to sever the claims against Meta must be made in this case, while the motion to relate and consolidate the severed claims must be made in the Consolidated Healthcare Action pending before Judge Orrick (as that is the case with the lowest docket number). *See* Civil L.R. 3-12(b).

[2] In another prescription-related case before Judge Orrick, *Doe v. Hey Favor*, 3:23-cv-00059-WHO, the court denied an earlier motion filed by Meta to sever the claims against it in that case for consolidation with the Consolidated Healthcare Action. *Doe v. Hey Favor*, 3:23-cv-00059-WHO, Dkt. 75 (May 24, 2023). In that May 2023 order, Judge Orrick expressed uncertainty as to whether the claims against Meta in *Hey Favor* were fully encompassed by the then-operative complaint in the Consolidated Healthcare Action, and in particular whether the Consolidated Healthcare Action included the claims in *Hey Favor* concerning "app-based SDK claims" in addition to claims about the web-based Pixel. *Id.* at 2. Judge Orrick made clear, however, that he was "willing to look at this issue again later in the litigation if the benefits of severance/consolidation become clearer." *Id.* On November 22, Meta filed a renewed motion to sever in *Hey Favor*, explaining that the since-filed Healthcare CAC resolves any uncertainty by making clear that the Consolidated Healthcare Action does encompass Meta SDK claims (and transmission of data to Meta by healthcare providers and pharmacies). *Doe v. Hey Favor*, 3:23-cv-00059-WHO. That renewed motion is currently pending.

**1. Plaintiffs' Allegations Against Meta Duplicate The Allegations In The Consolidated Healthcare Action.**

Plaintiffs' allegations against Meta in this case are duplicative of those already being litigated in the Consolidated Healthcare Action.

*First*, the underlying substantive allegations against Meta in the two cases are overlapping. The Consolidated Healthcare Action alleges that Meta received sensitive health information as a result of the installation of Meta's analytic tools, including the Meta Pixel and Meta SDK, by the operators of covered entities' websites and applications. *Id.*, Dkt. 335 ¶¶ 1, 132. These allegations are nearly identical to the allegations in the GoodRx Consolidated Complaint. Plaintiffs here allege that Meta's "tracking technology incorporated on the GoodRx Platform, including software development kits ('SDK') and tracking pixels . . . intentionally intercepted plaintiffs' and Class members' personal information, including health information relating to their medical conditions, symptoms, and prescriptions, communicated through the GoodRx Platform." Dkt. 102 ¶¶ 18.

*Second*, the putative class in the Consolidated Healthcare Action purports to subsume the same parties. The proposed class definition in the Consolidated Healthcare Action includes "Facebook users whose health information was obtained by Meta from their health care provider or covered entity's website or application." Consolidated Healthcare Action, Dkt. 335 ¶ 132. GoodRx, the telehealth prescription company that allegedly installed Meta's Pixel and SDK on its website and application in this case, falls within several of the Consolidated Healthcare Action's categories of "covered entities": GoodRx is a medical provider, telemedicine company, and direct-to-consumer pharmacy subject to HIPAA.[3] Accordingly, any allegedly sensitive health information transmitted from GoodRx to Meta using Meta's Pixel and SDK—which forms the basis of plaintiffs' claims here—is already the subject of the Consolidated Healthcare Action.

*Third*, the claims against Meta in this case are largely duplicative of, and subsumed within, those in the Consolidated Healthcare Action. Both the Consolidated Healthcare Action and the

---

[3] *See* HIPAA Authorization, GoodRx, available at https://support.goodrx.com/hc/en-us/articles/4411802030747-HIPAA-Authorization (describing how users' "protected health information" may be disclosed by covered entities as defined by HIPAA).

GoodRx Consolidated Complaint bring statutory and common law privacy-related causes of action. Both actions assert claims for violation of CIPA, intrusion upon seclusion, and unjust enrichment.[4] The primary claims asserted against Meta in this case are thus covered by and encompassed within the claims asserted in the Consolidated Healthcare Action. Given this duplication, plaintiffs' claims against Meta in this case should be severed so that they can be related to, and consolidated with, the Consolidated Healthcare Action. *Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013) (severing certain claims so that they could be consolidated with related actions in the Northern District of California).

**2. Severance And Consolidation Will Promote Judicial Economy.**

Because plaintiffs' claims against Meta here largely duplicate those being litigated in the Consolidated Healthcare Action, severing those claims so that they may be consolidated with that case will increase efficiencies and reduce the burden on the judicial system.

This action and the Consolidated Healthcare Action are both in the early phases of litigation. Neither case has moved beyond the pleading stage. In the Consolidated Healthcare Action, Meta's motion to dismiss the recently filed operative complaint is currently being briefed. In this action, the Court ordered all of the parties to mediation and denied all pending dispositive motions in the interim. Given the early posture of both cases, severance, relation, and consolidation will not interfere with either action. The efficiencies created by severance and consolidation will be material in the discovery process. Litigating the same putative-class claims against the same defendant in multiple cases invites

---

[4] The only claims against Meta that have not been asserted in the Healthcare CAC are claims pursuant to the UCL, CMIA, New York's General Business Law, and the Illinois Consumer Fraud and Deceptive Business Practices Act. Judge Orrick dismissed the UCL claim that was initially brought in the Consolidated Healthcare Action, and the claim was not raised in the subsequent Healthcare CAC. Consolidated Healthcare Action, Dkt. 316 at 25. These relatively minor differences do not materially bear on this motion; consolidation does not require that causes of action be identical. *See Ali v. Intel Corp.*, 2018 WL 2412111, at *2 (N.D. Cal. May 29, 2018) (granting consolidation even when claims involved different time periods but overlapping claims were lodged "against substantially similar defendants . . . based upon the same types of misstatements"); *id.* at *2 n.4 ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation." (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007))). Rather, severance and consolidation are appropriate so long as both cases involve a substantially similar set of operative facts and similar legal claims—especially when, as here, the same "witnesses and documentary proof [will be] required for the separate claims." *See SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010).

substantial redundancies. Consolidating plaintiffs' claims with those in the Consolidated Healthcare Action would largely eliminate that overlap and thus reduce the significant and unnecessary burden on the judicial system associated with parallel, largely duplicative discovery processes. *Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018) ("Indeed, severing the claims would likely avoid lengthy delays associated with duplicative, unnecessary discovery requests.").

**B. Severance Will Avoid Unfair Prejudice to Meta and Will Not Prejudice Plaintiffs.**

Severance will promote fairness. Without severance, Meta will be required to defend the same facts and claims in two different cases, with all of the attendant burdens and expenses of duplicative discovery. Severance and consolidation thus not only reduce the burden on the judicial system in general, but they also avoid an imbalance in burdens imposed on Meta in particular.

Consolidation also reduces the risk of unfair prejudice to Meta stemming from potentially inconsistent outcomes that litigating the same issues in multiple putative class actions could produce. *See Netlist*, 2013 WL 12128691, at *7; *XpandOrtho*, 2022 WL 18110171, at *5. Every issue in the cases—from discovery disputes to dispositive motions to jury verdicts—could potentially produce conflicting determinations. Severance and consolidation would eliminate unfair asymmetry.

Nor would severance prejudice plaintiffs, whose primary claims are already encompassed within the Consolidated Healthcare Action. Especially "[b]ecause this litigation . . . is at an early stage, . . . no substantial right will be prejudiced by the severance of the claims." *Valez v. Billingsleys' Main St. Grill, Inc.*, 2020 WL 2213463, at *2 (C.D. Cal. Apr. 2, 2020).

**C. The Claims Against Meta in This Case Present Distinct Factual Questions and Require Different Witnesses and Documentary Proof From Those Against the Other Defendants.**

Denial of this motion would frustrate judicial economy and fairness because the factual allegations underlying plaintiffs' claims against the other defendants in this case are materially different. The alleged acts of Google and Criteo do not arise out of the same "transaction or occurrence." *Leslie*, 2010 WL 2991038, at *4. Instead, each of the Advertising and Analytics Defendants is alleged to have intercepted plaintiffs' information via its own separate tool. Dkt. 102 ¶ 18. The factual allegations surrounding each of these tools are wholly distinct from each other. *Id.* ¶¶ 68–76 (discussing Meta's SDK and Pixel technologies); *id.* ¶¶ 79–84 (discussing Google's SDK and

Pixel technologies); *id.* ¶¶ 87–89 (discussing Criteo's SDK and Pixel technologies). Plaintiffs do not allege that any of the Advertising and Analytics Defendants collaborated with one another in the process of receiving plaintiffs' data. Nor do they claim that these technologies interact with one another. The alleged transmission of sensitive data via the Meta Pixel and Meta SDK thus not only raises factual questions distinct from the allegations concerning other defendants, but also reflects a completely separate process from the alleged transmission of plaintiffs' data via Google's or Criteo's technologies. This will necessarily include separate witnesses with knowledge of each of these different technologies, because plaintiffs have not alleged any relationship between the different technologies or the different claims asserted against each of the Advertising and Analytics Defendants.

In short, to prove the claims against each of the Advertising and Analytics Defendants, plaintiffs will have to pursue separate evidence for each of the technologies alleged to have facilitated the transmission of plaintiffs' data. Granting severance of the claims against Meta in this case will therefore ease the burdens of discovery in this case.

Conversely, and as explained above, discovery related to plaintiffs' claims against Meta in this case *will* be duplicative of the discovery sought in the Consolidated Healthcare Action. Denying severance would needlessly burden Meta with duplicative discovery productions and negotiations and would burden the courts and Meta with litigating and resolving the same discovery issues multiple times. Therefore, severance of the claims against Meta (and consolidation with the Consolidated Healthcare Action) will ensure that the discovery against Meta is streamlined into one action. *See Trazo v. Nestle USA, Inc.*, 2013 WL 12214042, at *3 (N.D. Cal. Dec. 4, 2013) ("Severing Plaintiffs' case . . . will help streamline discovery and allow the parties to focus on the distinct evidence required to support each separate claim.").

To the extent there is any overlap between the discovery relevant to plaintiffs' claims against GoodRx and Meta, that overlap is much smaller and more easily navigable than the wholly duplicative discovery relevant to plaintiffs' claims against Meta here and the claims in the Consolidated Healthcare Action. This is consistent with rulings by courts across the country, which have found it preferable to sever and transfer these types of claims against Meta so they may proceed in the Consolidated

Healthcare Action, even as claims against third parties proceed separately. *See* Consolidated Healthcare Action, Dkt. 376 at 1–2.

**CONCLUSION**

Meta respectfully requests that this Court sever the claims against Meta in this action, so that the claims may be related to and consolidated with the Consolidated Healthcare Action.

Dated: November 22, 2023

**GIBSON, DUNN & CRUTCHER LLP**
By: *__/s/ Lauren R. Goldman__*
Lauren R. Goldman

**COOLEY LLP**

By: *__/s/ Michael G. Rhodes__*
Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: November 22, 2023

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman