L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
jgavenman@bursor.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Additional Counsel for Plaintiffs on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., and GOOGLE LLC.<br><br>Defendants. | Lead Case No.: 3:23-cv-00501-AMO<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO SEVER CLAIMS AGAINST DEFENDANT META PLATFORMS, INC.**<br><br>CONSOLIDATED CLASS ACTION<br><br>COMPLAINT FILED: February 2, 2023<br><br>Judge: Hon. Araceli Martínez-Olguín<br>Date: March 28, 2024<br>Time: 2:00 PM<br>Courtroom: 10 |

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ... 1

I. BACKGROUND ... 2

II. LEGAL STANDARD ... 5

III. ARGUMENT ... 5

A. This Case Is Materially Different from *Meta Healthcare* ... 5

i. Plaintiffs Allege Different Facts and Claims from *Meta Healthcare* ... 5

ii. The Claims Against Meta in This Action are Part of the Same Transactions and Occurrences as Those Against the Other Defendants, Which Are Distinct from Those Alleged in the *Meta Healthcare* Action ... 9

B. Severing the Claims Against Meta Will Not Promote Judicial Economy or Avoid Prejudice ... 10

C. Severing the Claims Will Cause Unnecessary Duplication ... 12

CONCLUSION ... 13

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ali v. Intel Corp.*,
2018 WL 2412111 (N.D. Cal. May 29, 2018) .......... 8

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
2013 WL 2631333 (S.D. Cal. June 11, 2013) .......... 10

*Colors of India v. Nielsen*,
2018 WL 6430118 (C.D. Cal. Oct. 19, 2018) .......... 12

*Connelly v. Ekimoto & Morris LLC,*
2018 WL 3312957 (D. Haw. July 5, 2018) .......... 7

*S.E.C. v. Lincoln Mil. Prop. Mgmt.*,
2022 WL 4241734 (S.D. Cal. Sept. 13, 2022) .......... 10, 12

*Elliott v. Versa CIC, L.P.*,
349 F. Supp. 3d 1000 (S.D. Cal. 2018) .......... 8

*Horowitz v. Chen*,
2020 WL 4805466 (C.D. Cal. May 20, 2020) .......... 10, 12

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
2021 WL 9181832 (C.D. Cal. Aug. 20, 2021) .......... 12

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) .......... 9

*Martin v. Pierce Cnty.*,
34 F.4th 1125 (9th Cir. 2022) .......... 7

*Netlist, Inc. v. Smart Modular, Inc.*,
2013 WL 12128691 (C.D. Cal. Nov. 26, 2013) .......... 8

*Opperman v. Path, Inc.*,
2013 WL 1899688 (N.D. Cal. May 6, 2013) .......... 10

*Pit River Tribe v. Bureau of Land Mgmt.*,
2019 WL 6341566 (N.D. Cal. Nov. 27, 2019) .......... 12

*Rush v. Sport Chalet, Inc.*,
779 F.3d 973 (9th Cir. 2015) .......... 8

*S.E.C. v. Leslie*,
2010 WL 2991038 (N.D. Cal. July 29, 2010) .......... 5, 9

*Schertzer v. Bank of Am., N.A.*,
2021 WL 1383164 (S.D. Cal. Apr. 13, 2021) .......... 9, 12

*W. Watersheds Project v. Zinke*,
2018 WL 4210774 (D. Idaho Sept. 4, 2018) .......... 12

*XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,
2022 WL 18110171 (S.D. Cal. Nov. 22, 2022) .......... 9

**STATUTES**

18 U.S.C. § 2510 .......... 8

815 Ill. Comp. Stat. Ann. § 505/1 .......... 8

Cal. Bus. & Prof. Code §§ 17200 .......... 8

Cal. Penal Code § 502 .......... 8

N.Y. Gen. Bus. Law § 349 .......... 8

**RULES**

Fed. R. Civ. P. 21 .......... 5

# INTRODUCTION

This is Meta Platform, Inc.'s ("Meta's") second attempt to improperly extinguish the substantive claims in this action through procedural means. It also reflects a broader strategic pattern whereby Meta seeks to limit its liability by unjustifiably collapsing all cases against it concerning health or medical apps into the *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-3580-WHO (N.D. Cal. June 17, 2022) ("*Meta Healthcare*")—a class action alleging Meta improperly received health information from hospital websites and patient portals.

Judge Orrick—the presiding judge in *Meta Healthcare*—has already rejected Meta's earlier attempt to combine this action with other "healthcare" actions, along with the central premise underlying its serial motions: that all cases, potentially concerning health data are "related" to *Meta Healthcare* regardless of their facts, claims, or procedural posture. Indeed, Judge Orrick could not have been clearer in his earlier rulings, distinguishing cases concerning "telemed" services—like GoodRx—from the patient portals and websites at issue in the *Meta Healthcare* action. *See Doe v. FullStory, Inc.*, No. 3:23-cv-00059-WHO, ECF No. 76 (N.D. Cal.) (the "*Favor* Action") Transcript of Hearing on May 16, 2023 ("Hr'g Tr.") at 6:14-17 ("it seems to me that the telemed cases are different").[1]

Nothing has changed since Judge Orrick's prior ruling to warrant revisiting this issue. While Meta claims that recent amendments to the *Meta Healthcare* complaint—made nearly *a year after* the filing of this action—make the "allegations against Meta in this case . . . duplicative of" and "encompassed within" the *Meta Healthcare* Action (Motion to Sever, ECF No. 175 at 1) (the "Motion"), that is wrong. There have been no substantive changes to the *Meta Healthcare* action that warrant severance or relation here. The claims in this action still concern different services (i.e., prescription coupons and telemed), on a different platform (i.e., GoodRx), that incorporate multiple different technologies (*i.e.*, from Meta, Google, and Criteo), used by a different class of individuals (that includes non-Facebook users), for different purposes, that caused the transmission of different

---

[1] Meta had originally sought to relate this case to the *Favor* action. *See Favor* Action, ECF No. 44. Judge Orrick denied that request as well. *See Favor* Action, ECF No. 50.

data, to different defendants from those in *Meta Healthcare*. As Judge Orrick recognized, these significant distinctions eliminate any potential benefit to severing the claims against Meta in this action and relating them *Meta Healthcare*.

Meta's true motive for seeking severance is to dispose of Plaintiffs' claims through procedural means while never actually litigating them. Many of the claims alleged here were not pled (or were dismissed) in the *Meta Healthcare* Action. And it is likely any claims against GoodRx will be forfeited, given the *Meta Healthcare* Action's focus on hospital or physician websites—which GoodRx is not. *Meta Healthcare* Action, ECF No. 75. Even if Meta could show some benefit to severance and consolidation (which it has not), the prejudice that forfeiting claims would cause outweighs any potential efficiencies. Plaintiffs' claims against Meta can only fairly be litigated as part of this case, which is the most efficient means of moving forward given the overlapping factual and legal issues currently alleged against all Defendants. Meta's Motion should be denied.

## I. <u>BACKGROUND</u>

Meta's Motion exists against a backdrop of prior failed attempts to sever or relate claims in other "telemed" cases to the *Meta Healthcare* action. Those prior motions, and Judge Orrick's reasoning in denying them, highlight the important distinctions between this Action and *Meta Healthcare* that require denying this Motion.

<u>**The *Meta Healthcare* Action**</u>: *Meta Healthcare* is about hospital websites and patient portals. Initiated on June 17, 2022 by five hospital patients who visited their hospital providers' websites and online patient portals, that action alleges Meta unlawfully collected information about individuals' status as patients at certain hospitals that incorporated Meta's Pixel tracking technology on their websites, along with certain other limited information about their interaction on those sites. *Id.*

Plaintiffs in the *Meta Healthcare* Action filed a consolidated class action complaint on February 21, 2023 and an amended consolidated class action complaint on October 10, 2023. Both were filed *after* this action and did not change the substantive basis for the *Meta Healthcare* plaintiffs' claims. *See*, *e.g.*, *Meta Healthcare* Action, ECF Nos. 185, 335. Rather, the consolidated class action complaint incorporated a broader class definition purporting to include all "covered

entities" (as defined therein) and added references to hospital mobile "applications" in certain paragraphs. *See Meta Healthcare* Action, ECF No. 185 ¶¶ 6, 8, 274.

The second amendment, which is Meta's basis for this motion, was filed after Judge Orrick dismissed several claims at the motion to dismiss stage with leave to amend. *See Meta Healthcare* Action, ECF No. 316. This amendment did not change the class definition or the complaint's references to "applications." *Meta Healthcare* Action, ECF No. 335 ¶¶ 6, 8, 353.

**Judge Orrick Rejects Meta's Attempt to Combine Telemed Cases with *Meta Healthcare***: Shortly after the *Meta Healthcare* plaintiffs' first amended complaint, Meta seized on language referring to "applications" and "covered entities" in certain paragraphs to argue that the *Meta Healthcare* case now covered not only hospital websites or applications, but all actions then in existence involving a health or medical application. Interim Class Counsel here represent plaintiffs in one such action where Meta moved to sever claims brought against telehealth provider Hey Favor—a reproductive health platform that provides birth control and contraceptives to women around the country. *See Favor* Action, ECF No. 107.

The *Favor* Action was nothing like the *Meta Healthcare* case. Not only was *Favor* not a hospital, but the allegations concerned the collection of different kinds of data—namely information women input in response to intake questions about their sexual and reproductive health—entered into a mobile app, that used different tracking technologies from other defendants, separate from those at issue in *Meta Healthcare*. The classes also concerned different groups of users (i.e., individuals (primarily, women who used Hey Favor, versus Facebook users who logged into a hospital patient portals) asserting different claims, under different laws. *Compare Favor* Action, ECF No. 1 to *Meta Healthcare* Action, ECF 185, 335.

Not surprisingly, Judge Orrick rejected Meta's attempt to expand the *Meta Healthcare* case to cover the *Favor* Action. Judge Orrick drew a clear distinction between the "telemed cases" like *Favor* and the "hospital ligation case[]" that required keeping them "separate." *See Favor* Action Hr'g Tr. at 6, ECF No. 78. Expanding on this reasoning in a subsequent written order, Judge Orrick explained:

> [Favor] concerns the conduct of five different defendants and primarily concerns those five defendants' capture and use of personal healthcare information through

> mobile applications or apps. The Meta Pixel Healthcare Litigation concerns only the conduct of Meta and its capture and use of personal healthcare information primarily through the use of Meta's Pixel and ***primarily through patient portals and related webpages on websites***. The two types of cases are distinct.

*Favor* Action, ECF No. 75 at 1. Importantly, Judge Orrick acknowledged that while the *Meta Healthcare* complaint included some "broad" allegations (like those referring to "applications" or "covered entities" cited above) that could potentially "overlap" with the claims against Meta in the *Favor* Action, that did not make severance either appropriate or desirable. This was especially true given that the "appropriate scope" of the *Meta Healthcare* class remained "[un]tested." *Id* at 2. The Court also noted that given the "scores of cases being filed around the country" relating to pixel technology and the collection of personal information—consolidation was neither "necessary" or "even desirable"—compared to having individual cases about different practices and technologies on those different platforms proceed separately. *Id.* at 2.

**<u>Meta Replays the Same Failed Strategy in Seeking to Sever Claims Involving GoodRx</u>**: Meta's motion here replicates the same strategy it deployed in the *Favor* action.[2] Shortly after the *Meta Healthcare* plaintiffs filed their second amended complaint on October 10, 2023, Meta informed the Court at the November 14, 2023 hearing that it planned to file a motion to sever the claims against it and relate them to that action. *See* Nov. 14, 2023 Hearing Transcript, ECF No. 170, at 17-18. As in *Favor*, Meta claims that the "Healthcare [Amended Complaint] resolves any uncertainty" and has transformed the *Meta Healthcare* action from a case about hospitals to one that fully "encompass" the claims in this action. *See* Motion at 5 n.2.

Nothing could be further from the truth. The amendments to the *Meta Healthcare* plaintiffs second complaint have not changed the substance of those plaintiffs' claims or the fundamental truth that this Action involves different users (i.e., GoodRx users), of a different "telemed" and prescription coupon platform (i.e., the GoodRx website and mobile application), seeking a different service (i.e., prescription coupons or telehealth), and the collection of different health data (i.e., prescription and medication information) from different technologies (i.e., pixels, SDKs, and

[2] Meta's claim that "[e]very such motion" to "sever claims against Meta from claims against other defendants" is false. Motion at 2. Judge Orrick denied Meta's motion to sever the claims against it in the *Favor* action.

session reply tools), offered by a different group of defendants from the *Meta Healthcare* action.[3] Given that none of these core facts have not changed, Meta's motion is indistinguishable from its earlier failed attempt to sever and consolidate the claims against it in *Favor* with those in *Meta Healthcare*. As explained below, it should fail here for the same reasons.

## II. LEGAL STANDARD

Pursuant to Rule 21, "the court may . . . sever any claim against a party." Fed. R. Civ. P. 21. Courts consider the following factors: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *S.E.C. v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (internal citations omitted).

## III. ARGUMENT

Severing the claims against Meta in this Action makes little sense, as this action is distinct from the *Meta Healthcare* Action. *See* Section III.A.i. While Meta contends that the "allegations . . . are duplicative of, and encompassed within" (Motion at 1) the *Meta Healthcare* Action there is no substance to that claim. Other than naming Meta as a defendant, the facts and legal claims asserted in these two actions are fundamentally different. This requires denying Meta's motion, just as Judge Orrick did before.

### A. This Case Is Materially Different from *Meta Healthcare*

#### i. Plaintiffs Allege Different Facts and Claims from *Meta Healthcare*

As Judge Orrick correctly noted *Meta Healthcare*—which primarily concerns healthcare providers' "patient portals and related webpages on websites," (*Favor Action*, ECF No. 75 at 1)—

[3] Tellingly, despite claiming in the Parties' first Joint Case Management Statement in this case that it intended to file a similar motion to sever in this case, Meta abandoned that effort and never filed a motion after Plaintiffs called out its failed bid to sever and relate the claims in *Favor*. *See* ECF No. 10 ("Meta intends to file a motion to sever the claims against it so that may be related to and consolidated with [the Meta Healthcare Action]"); *id.* at 11 (explaining Meta's planned motion to sever is "frivolous" because this action has "nothing to do with" the *Meta Healthcare* case and that "Meta has already tried and failed" in deploying this strategy).

is "distinct" from "telemed" cases, like this one, that involve mobile apps and different tracking technologies developed by additional defendants. That central distinction differentiates this action from *Meta Healthcare* in at least four ways that are fatal to Meta's motion.

***First***, the factual basis for the current action and the *Meta Healthcare* Action are materially different. The claims in this Action concern Plaintiffs' interactions with and use of a single mobile application and website offered by GoodRx (collectively, the "GoodRx Platform"). GoodRx's primary service is offering prescription coupons, which users access by entering their prescription information on the GoodRx Platform. Consolidated Amended Complaint ("GoodRx Complaint"), ECF No. 102 ¶¶ 3-5. The GoodRx Platform incorporated tracking technology from Meta, Google LLC, and Criteo Corp.,[4] and 20 other companies, resulting in the disclosure and interception of prescription and other health-related data. *See* GoodRx Complaint, ¶¶ 139-140, 154-155, 160-161, 163-164.

By contrast, the *Meta Healthcare* Action focuses on Meta's conduct in tracking and collecting patient-specific information (e.g., patient status, logging-in to the patient portal, etc.) from hospitals' websites and patient portals—none of which include the GoodRx Platform. Nor do any of the plaintiff-specific allegations (or any factually supported allegations for that matter) in *Meta Healthcare* involve the type of health data allegedly collected from the GoodRx Platform here. These material factual differences are enough, on their own, to defeat Meta's Motion.

***Second***, the *Meta Healthcare* Action is limited to a specific set of hospitals and thus *excludes* the present case. Meta tellingly neglects to mention in its Motion that GoodRx is ***not*** listed in the 124-page "Appendix" to the *Meta Healthcare* Consolidated Amended Complaint ("MPCAC"), identifying the specific hospital websites and/or patient portals that are at issue in the *Meta Healthcare* Action. MPCAC, ECF No. 335-1. The omission of GoodRx from the *Meta Healthcare* plaintiffs' extensive list demonstrates—contrary to Meta's contention—that the claims asserted in this action are not part of the *Meta Healthcare* case.

[4] These defendants are grouped together as the "Advertising and Analytics Defendants." GoodRx Complaint ¶ 17.

***Third***, prior to class certification, there is no basis to consider the *Meta Healthcare* complaint's fantastical class definition—which purportedly encompasses every Facebook user whose undefined health data was ever "obtained by Meta" (regardless of means) from any "health care provider or covered entity" (which is defined as "any person or business entity for which Plaintiffs and Class members have a reasonable expectation of privacy that the 'covered entity' will not share patient health information with third parties" MPCAC ¶ 20). *See Connelly v. Ekimoto & Morris, LLC*, 2018 WL 3312957, at *1 n.2 (D. Haw. July 5, 2018) (explaining "until Plaintiffs move for and obtain class certification, this Court will only consider the claims that Plaintiffs bring as individuals against the named defendants."). Indeed, Judge Orrick rejected Meta's attempt to sever and relate claims asserted in the *Favor Action* based on the same "untested" class definition. *Favor Action*, ECF No. 75 at 1.

Even if the *Meta Healthcare* plaintiffs' class definition were considered in isolation, it still would not support severance. Unlike this action, the *Meta Healthcare* class is limited to *Facebook users*. *See* MPCAC ¶ 353.This necessarily excludes a substantial part of ***this*** class, which contains no such restriction and extends to all GoodRx users regardless of whether they maintain a Facebook account. Plaintiffs are aware of no decision that granted this kind of partial class severance. This is not surprising: extracting claims of some class members, while leaving others to litigate this action is contrary to the efficiency promoting purpose of a motion to sever. And severing non-Facebook users' claims and sending them to the *Meta Healthcare* case, which is not pursuing them, would impermissibly extinguish class members' substantive rights through procedural means. *Martin v. Pierce Cnty.*, 34 F.4th 1125, 1128 (9th Cir. 2022) (rejecting application of a procedural rule that would change the "substantive right[s]" provided in federal court).

***Fourth***, the legal claims in this action are significantly different from the claims in *Meta Healthcare*. Plaintiffs in this action bring claims against Meta, as well as three other Defendants, for violations of the CMIA and various state consumer protection laws (*see* GoodRx Complaint, ¶¶ 271-307; 345-360; 361-367; 368-373) that are not asserted in the *Meta Healthcare* Action. Meta does not explain how these causes of action could be incorporated into the *Meta Healthcare* Action other than falsely claiming they are "minor differences" that "do not materially bear on this motion."

Motion at 7. The substantive rights to class members are not a "minor difference" because severing the claims against Meta here and consolidating them into the *Meta Healthcare* Action would impermissibly foreclose Plaintiffs' and Class members from seeking relief against Meta for many of these claims. *See Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015) (reversing and remanding decision that did not consider prejudice to plaintiff who would "los[e] . . . otherwise timely claims" by dismissing certain defendants from the action) (internal quotations omitted); *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) (denying "dispositive motion" that was "disguised" as a motion in limine that would "'effectively bar' [Plaintiffs] from raising [any] cause of action at trial.") (alterations in original).

This is further illustrated by the table below, which demonstrates the multiple, non-overlapping claims against Meta in both actions.

| *GoodRx* | *Meta Healthcare* |
|---|---|
| Aiding and Abetting Violation of CMIA, Civil Code Section 56.06, 56.101, 56.10 | Breach of Contract |
| Violation of CMIA, Civil Code Section 56.36 | Breach of the Duty of Good Faith and Fair Dealing |
| Violations of Cal. Bus. & Prof. Code §§ 17200 *et. seq.* | Violation of Electronic Communications Privacy Act, 18 U.S.C. §2510 *et seq.* |
| Violation Of New York General Business Law § 349 | California Constitutional Invasion of Privacy |
| Violation Of The Illinois Consumer Fraud And Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. § 505/1, et seq. | Trespass to Chattel |
| | Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 |

Each of these claims will present issues requiring discovery not covered in the other action that strongly supports denying Meta's motion.

None of the cases Meta relies on support a different conclusion as they either involve distinct scenarios (*see Netlist, Inc. v. Smart Modular, Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013) (granting severance because patent infringement, contract, and trade secret claims would require proving different "underlying facts" and "different types of witnesses and documentary proof"); *Ali v. Intel Corp.*, 2018 WL 2412111, at *2 (N.D. Cal. May 29, 2018) (granting consolidation of already related actions pursuant to the PSLRA because the facts "overlap almost

completely" as they are based on the "same types of misstatements" made to the same group of "persons who purchased Intel stocks"); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) (consolidating cases alleging the same securities claims based on the same public statements impacting the same stock); *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022) (severing counterclaim that involved a different product, different parties, and different time period from primary claim), or, when read correctly, actually support the denial of Meta's motion. *See SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010) (denying motion to sever because "the significant number of common witnesses and documents, severance would not result in judicial economy, and Defendants have not demonstrated that they will be unfairly prejudiced unless severance is granted."). Here, on the other hand, Plaintiffs' claims against all Defendants arise from the same transactions and occurrences on GoodRx's platform, precluding severance. *See Schertzer v. Bank of Am., N.A.*, 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021) (denying motion to sever because proceeding with "two separate cases will not result in judicial economy - it will produce the opposite and result in inefficiency, overlap of witnesses, issues of fact and law and defenses and will produce a significant amount of extra work.").

**ii. The Claims Against Meta in This Action are Part of the Same Transactions and Occurrences as Those Against the Other Defendants, Which Are Distinct from Those Alleged in the *Meta Healthcare* Action**

Each of the Plaintiffs' claims asserted in this action against each of the four Defendants, arise out of the same transactions and occurrences: Plaintiffs' use of the GoodRx website or app. *See* GoodRx Complaint ¶¶ 23, 29, 36, 41, 47, 55. Meta contends that because Plaintiffs "have not alleged any relationship between the different technologies or the different claims" asserted against each Advertising and Analytics Defendant, there are "factual questions distinct from the allegations concerning other defendants," requiring Plaintiffs to pursue separate evidence to support their claims. Motion at 9. Despite failing to identify these "distinct" questions that warrant the extreme relief of severance of related claims, Meta goes so far as to claim that it would "ease the burdens of discovery" for Plaintiffs if it were removed from this case. *Id.* Talk about the fox guarding the hen house.

As alleged in the GoodRx Complaint, all of the Advertising and Analytics Defendants intercepted Plaintiffs' personal and private information simultaneously as they interacted with the GoodRx website or app using the tools that GoodRx included in its website and app code. *See*, *e.g.*, GoodRx Complaint ¶¶ 18, 26, 33, 38, 44, 52, 58, 139-140, 154-156, 160-161. Plaintiffs do not allege any separate transactions or occurrences where information was relayed *only* to Meta that could be severed, because the code for *all* of Defendants' technology was embedded in GoodRx's platforms at the times Plaintiffs used the GoodRx platform. *See Opperman v. Path, Inc.*, 2013 WL 1899688, at *4, *6 (N.D. Cal. May 6, 2013) (declining to sever claims against app developers when they "assisted, collaborated, and conspired" with Apple in the same "transaction or occurrence"); *Horowitz v. Chen*, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020) (declining to sever claims that "arise from the exact same set of facts" because it would make "little practical sense"). GoodRx's disclosure to and coordinated use of Plaintiffs' and other Class members' data across each of the Advertising and Analytics Defendants' platforms raises issues that cannot be disentangled in the way Meta claims.

**B. Severing the Claims Against Meta Will Not Promote Judicial Economy or Avoid Prejudice**

Courts recognize that the clearest way to promote judicial economy is to hear similar or overlapping claims arising out of the same transaction or occurrence in the same action. *See E.C. v. Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734, at *7 (S.D. Cal. Sept. 13, 2022) ("[k]eeping the claims together will streamline the proceedings, reduce litigation costs for all Parties, and eliminate the need for duplicative discovery and motions."). Keeping the claims together in this action achieves that goal, and there is no prejudice to Meta simply by participating in a multi-party case. *See Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2013 WL 2631333, at *6 (S.D. Cal. June 11, 2013) (explaining claim of potential jury confusion from trying claims together with other defendants is "speculative"); *Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734, at *6 (declining to sever cases against multiple defendants because any prejudice from hearing the claims together was outweighed by "factual similarities between the claims").

Indeed, there are several actions in this district where Meta is a party that arise from the collection of health data from an app and website by multiple defendants. *See Frasco v. Flo Health*, Case No. 3:21-CV-00757-JD (N.D. Cal.) (action against five defendants, including Meta, whose technology was incorporated in the same app and caused the disclosure of health data); *Doe v. Hey Favor, Inc*., 3:23-cv-00059-WHO (N.D. Cal.) (action against four defendants, including Meta, whose technology was incorporated in the same app). The parties in *Flo Health*—which was filed well before *Meta Healthcare* have—have fully briefed Class Certification and at least one motion for summary judgment. There is no reason the parties in this action should not do the same and separately address the claims and unique issues arising from the GoodRx platform here.

Furthermore, severing the claims against Meta and relating them to *Meta Healthcare* would only hinder judicial economy, as it would bring the claims against Meta into an action involving different users, who used separate services (i.e., portals and websites offered by their healthcare providers), and had different health data intercepted. This would not only require expanding the discovery taking place in *Meta Healthcare*, which already includes 1,800+ hospitals providers, but would require duplicative discovery about Meta's collection of prescription and other health data from GoodRx users. *See* III.C., above.

Meta's contention that Plaintiffs would not be prejudiced if its motion is granted is nonsense. If Meta is no longer a party to this case, Plaintiffs would still need to pursue discovery from Meta about the use of its technology in GoodRx's website and mobile app as part of the liability case against GoodRx. However, Plaintiffs would be forced to seek this discovery from Meta as a third-party, which not only presents a higher burden but may be inconsistent with the party-discovery ordered in the *Meta Healthcare* Action. Nor does Meta address how to handle other inconsistent rulings, where Meta may be found liable for intercepting GoodRx users' data, whereas GoodRx may not, given they would be proceeding before different judges. And worse—if severance were granted—in all likelihood Plaintiffs' claims against Meta would be overlooked or extinguished as *Meta Healthcare* proceeds, given it lacks any similarity to the primary factual allegations being pursued in that case and many of the Plaintiffs' claims are not being pursued in that action.

Meta's failure to propose any practical solution for how such prejudice would be avoided, as well as how to avoid the possibility for inconsistent rulings when motions covering the same subject matter or claims are filed twice, only emphasizes why its motion should not be granted. *See Pit River Tribe v. Bureau of Land Mgmt.*, 2019 WL 6341566, at *5-6 (N.D. Cal. Nov. 27, 2019) ("Courts recognize that the interest of justice is advanced where the risk of inconsistent judgments are avoided."); *W. Watersheds Project v. Zinke*, 2018 WL 4210774, at *6 (D. Idaho Sept. 4, 2018) ("[A] decision that keeps the case intact . . . largely avoids the risk of inconsistent court rulings, rather than creating such a risk as [] Defendants contend.").

The case relied on by Meta is distinguishable because it severed the case based on immigration plaintiffs who were unrelated, with different immigration statuses, alleging different violations, and seeking different relief being improperly joined in the action. *See Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018).

**C. Severing the Claims Will Cause Unnecessary Duplication**

The risk of duplication is readily apparent here, where proceeding with two separate actions—one against GoodRx, Google, and Criteo, and another against Meta that both concern the same plaintiffs, the same website and mobile app, the same technology, and the same data—would necessarily result in discovery and litigation on the same issues multiple times. *See Lincoln Mil. Prop. Mgmt.*, 2022 WL 4241734, at *7 ("Keeping the claims together will streamline the proceedings, reduce litigation costs for all Parties, and eliminate the need for duplicative discovery and motions."); S*chertzer v. Bank of Am., N.A.*, 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021) (denying motion to sever because proceeding with "two separate cases will not result in judicial economy - it will produce the opposite and result in inefficiency, overlap of witnesses, issues of fact and law and defenses and will produce a significant amount of extra work."); *see also In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 2021 WL 9181832, at *10 (C.D. Cal. Aug. 20, 2021) (denying severance where "there will be overlapping proof and duplication in testimony" with respect to certain issues); *Horowitz v. Chen*, 2020 WL 4805466, at *2 (C.D. Cal. May 20, 2020) (declining to sever claims that "arise from the exact same set of facts" because it would make "little practical sense"; *3 (finding "severance would produce inefficiency and duplication of judicial

resources" because the claims involve the same facts and would "require testimony from the same witnesses and discovery of the same documents"). The Court should not impose those burdens on Plaintiffs or unnecessary waste judicial resources on duplicative discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the motion to sever.

Dated: January 5, 2024

*/s/ L. Timothy Fisher*

L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
E-mail: ndeckant@bursor.com
E-mail: jgavenman@bursor.com

*Interim Co-Lead Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161

rschubert@sjk.law
wjonckheer@sjk.law
ascubert@sjk.law

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
**JAVITCH LAW OFFICE**
3 East 3rd Ave., Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice)*
tom@attorneyzim.com
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Israel David (*pro hac vice)*
israel.david@davidllc.com
Blake Hunter Yagman (*pro hac vice)*
blake.yagman@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone: (212) 739-0622
Facsimile: (212) 739-0628

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB LAW FIRM LLC**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com