GIBSON, DUNN & CRUTCHER LLP
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

ANDREW M. KASABIAN, SBN 313210
akasabian@gibsondunn.com
3161 Michelson Drive
Irvine, CA 92612
Telephone: (949) 451-3800
Facsimile: (949) 451-4220

COOLEY LLP
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone: (415) 693-2000
Facsimile: (415) 693-2222

*Attorneys for Defendant Meta Platforms, Inc.
(formerly known as Facebook, Inc.)*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC,<br><br>Defendants. | Case No. 3:23-cv-00501-AMO<br><br>**DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER CLAIMS AGAINST DEFENDANT META PLATFORMS, INC.**<br><br>Action Filed: February 2, 2023<br><br>Honorable Araceli Martinez-Olguin<br><br>Date: March 28, 2024<br>Time: 2:00 PM<br>Courtroom: 10 |

**INTRODUCTION**

Plaintiffs' opposition of severance of the allegations against Meta in this case, so that they may be consolidated and litigated together with strikingly similar allegations in *In re Meta Pixel Healthcare Litigation*, Case No. 3:22-cv-03580-WHO (N.D. Cal. June 17, 2022) ("Consolidated Healthcare Action"), rests primarily on an outdated, false premise. They argue that severance and consolidation should be denied here because the claims in this case differ from those in an earlier complaint in the Consolidated Healthcare Action. But the plaintiffs in that case have since filed a new (the now-operative) complaint in the Consolidated Healthcare Action (the "Healthcare CAC"), which makes clear that the Consolidated Healthcare Action fully subsumes allegations like those here. Meta's Mot. to Sever (Mot.), Dkt. 175 at 5–10; Consolidated Healthcare Action, Dkt. 335. The Healthcare CAC clearly encompasses allegations involving Meta's alleged interception of sensitive user information from HIPAA- and CMIA-covered entities (including healthcare providers and pharmacies like GoodRx) through the Meta analytics tools at issue here (Pixel and SDK on websites and apps). Mot. 5–10. There is now no doubt that, as courts around the country have recognized in severing claims against Meta in other cases, the Consolidated Healthcare Action would provide the best context for litigating plaintiffs' substantially similar allegations against Meta here.

Plaintiffs never engage with the key developments in the Consolidated Healthcare Action, which warrant severance. They rely on the now-obsolete allegations in the *prior* complaint in the Consolidated Healthcare Action and do not grapple with key parallels between the allegations in the operative complaint in that action and those in this case. Conversely, plaintiffs gloss over important differences between the allegations against Meta and those against other defendants here. As a result, plaintiffs significantly understate the judicial-economy gains consolidation will yield and the unfair prejudice to Meta and risk of inconsistency it will avoid. And plaintiffs fail to show that litigating their claims alongside others in the Consolidated Healthcare Action will cause them any cognizable harm.

There is thus no merit to plaintiffs' unsupported speculation that Meta seeks through severance to "dispose of" their allegations "through procedural means." Pl.'s Opp'n to Mot. to Sever (Opp.), Dkt. 188 at 2. To the contrary, Meta's objective is not to sidestep those allegations but simply to litigate

them in the most logical, efficient manner.  The Court should grant Meta's motion and clear the path for consolidation.

## ARGUMENT

The allegations against Meta should be severed because, as Meta demonstrated, they are subsumed by those in the Healthcare CAC, and consolidating plaintiffs' allegations with those in the Consolidated Healthcare Action will best advance judicial efficiency and avoid unfair prejudice and inconsistency.  Mot. 5–10.  Plaintiffs fail to refute all of those points.

**A.      Severing the Claims Against Meta Would Promote Judicial Economy.**

**1.      Plaintiffs' Allegations Against Meta Duplicate The Allegations In The Consolidated Healthcare Action.**

As Meta's motion explained, the allegations against Meta here closely parallel those in the Consolidated Healthcare Action:  Both cases allege the same conduct involving the same technologies against the same defendant.  Mot. 5–7.  Plaintiffs offer four responses, but none has merit.

*First*, plaintiffs dispute that the Consolidated Healthcare Action encompasses their allegations here, relying on Judge Orrick's summary of the prior, now-obsolete pleading in that case when he initially denied Meta's motion to sever in a telehealth case, *Doe v. Hey Favor*, 3:23-cv-00059-WHO, Dkt. 75 (May 24, 2023).  Opp. 6.  Describing the earlier, superseded complaint in that action, plaintiffs assert that it concerns only "hospitals' websites and patient portals" and does not "involve the type of health data allegedly collected from the GoodRx Platform," whereas this case involves a "singe mobile application" and the "interception of prescription and other health-related data." *Id.*  But the *amended* complaint in the Consolidated Healthcare Action (the Healthcare CAC) encompasses claims brought by "a patient [who] use[d] their healthcare provider or covered entities' website *or application*," specifically including "pharmac[ies]," and seeks to certify a nationwide putative class of "Facebook users whose health information was obtained by Meta from their health care provider or covered entity's website *or application*."  Consolidated Healthcare Action, Dkt. 335 ¶¶ 6, 132, 335 (emphases added); *id.* ¶ 124 (alleging that "transmissions were sent to Meta when [a plaintiff] used the Sutter website and application"); *id.* ¶ 132 ("Plaintiffs' class allegations are not limited to websites.").  Both cases allege that Meta received sensitive health information as a result of a covered entity's

configuration of Meta's analytics tools, including the Meta Pixel and SDK, on their websites and mobile applications. *Compare* Compl., Dkt. 102 ¶¶ 133, 232 (alleging interception of "sensitive data, including PII, health information, prescription requests and other interactions on the GoodRx Platform" via the "Pixel or SDK"), *with* Consolidated Healthcare Action, Dkt. 335 ¶¶ 1, 94, 101, 132 (alleging interception of communications with a patient's health provider, "sensitive health information," and "patient status information").

Although Judge Orrick denied Meta's renewed motion to sever the claims against Meta in *Hey Favor*, *see Doe v. Hey Favor, Inc*., Dkt. 117, *Hey Favor* presents unique circumstances that are inapplicable in this case. The Healthcare CAC expressly excludes information allegedly transmitted by Hey Favor (an online telehealth company) from the proposed class. Consolidated Healthcare Action, Dkt. 335 ¶ 357. In contrast, the Healthcare CAC clearly encompasses allegations involving healthcare providers and pharmacies like GoodRx and does not expressly exclude GoodRx users from the proposed class. *Id.* ¶¶ 132, 355.

*Second*, plaintiffs argue that the Consolidated Healthcare Action "is limited to a specific set of hospitals and thus excludes the present case" because "GoodRx is not listed in the 'Appendix' to the Healthcare CAC." Opp. 6. But plaintiffs' reliance on the Appendix, which is incorporated by reference into the Healthcare CAC, Consolidated Healthcare Action, Dkt. 335 ¶ 129, is of no moment. The Appendix simply "identifies" healthcare entities from which plaintiffs in that case allege Meta collects information; moreover, it includes pharmacies and online prescription drugstores such as CVS and Rite Aid, and is clearly not limited to hospitals. *Id.*, Dkt. 335-1. In any event, the plain language of the Healthcare CAC expressly encompasses covered entities, which includes pharmacies like GoodRx. *Id.*, Dkt. 335 ¶ 355.

*Third*, plaintiffs argue that the proposed class definition in the Consolidated Healthcare Action—which they suggest is overbroad—is irrelevant to the severance-and-consolidation inquiry "prior to class certification." Opp. 7. That is incorrect. "Consolidation is appropriate when multiple cases allege the same misrepresentations and omissions by defendants and have similar class definitions." *Farhar v. Ontrak, Inc.*, 2021 WL 2980589, at *2 (C.D. Cal. July 13, 2021) (quotation marks omitted). Plaintiffs cite no case to the contrary. Their only authority, *Connelly v. Ekimoto &*

*Morris, LLC*, 2018 WL 3312957, at *1 n.2 (D. Haw. July 5, 2018), involved a motion to dismiss a putative class action and did not address consolidation. Plaintiffs' position is also illogical. Regardless of whether the proposed classes in the Consolidated Healthcare Action are ultimately certified, the nearly identical allegations asserted in that case and those here—on behalf of "similar" proposed classes, *Farhar*, 2021 WL 2980589, at *2—should be litigated together, not separately.

Plaintiffs' fallback contention that the proposed classes are dissimilar lacks merit. Opp. 7. The Consolidated Healthcare Action plaintiffs seek to represent a nationwide class of "Facebook users whose health information was obtained by Meta from their health care provider or covered entity's website or application," Consolidated Healthcare Action, Dkt. 335 ¶ 132, while plaintiffs here similarly seek to represent a "class of persons who used the GoodRx Platform and whose communications and/or data were shared with third parties, including" Meta, Dkt. 102 ¶ 219. That the class definition in this case "extends to all GoodRx users regardless of whether they maintain a Facebook account," Opp. 7, does not defeat consolidation. Perfect symmetry is not the standard. Even where "the class definitions and claims somewhat differ" between two cases, the presence of "numerous common legal questions presented warrant consolidation." *Amador v. Logistics Express, Inc.*, 2010 WL 3489038, at *1 (C.D. Cal. Aug. 27, 2010) (quotation marks omitted). After all, "issues which will be presented in any motions for class certification . . . will be substantially duplicative," *id.*, and "discovery will likely overlap to a large degree," *Lopez v. Liberty Mut. Ins. Co.*, 2014 WL 12853283, at *5–6 (C.D. Cal. Oct. 24, 2014) (consolidating cases for purposes of pre-certification discovery despite "concern regarding the scope of the putative classes in each case"). Accordingly, where (as here) the allegations and claims overlap, courts have granted consolidation notwithstanding "slightly different claims, parties, and classes." *Diaz v. Univ. of S. Cal.*, 2020 WL 5044419, at *2 (C.D. Cal. July 17, 2020) (consolidating cases despite varying class definitions); *Garcia v. Gordon Trucking, Inc.*, 2011 WL 2746305, at *7 (E.D. Cal. July 14, 2011) (same); *Sayce v. Forescout Techs.*, 2020 WL 4207444, at *4 (N.D. Cal. July 22, 2020) (same where allegations slightly varied). Indeed, some plaintiffs in prior cases that have *already* been consolidated into the Consolidated Healthcare Action did not allege they had Facebook accounts. *See, e.g.*, *C.C. v. Nova Health*, Case No. 3:22-cv-9199 (N.D. Cal. Nov. 10, 2022) (proceeding on behalf of all North Carolina citizens who were patients of defendants); *Krackenberger v.*

*Northwestern Memorial Hosp.*, Case No. 22-cv-06020 (N.D. Cal. Aug. 10, 2022) (proceeding on behalf of all Northwestern patients who used the hospital's website).

Plaintiffs' assertion that the slight differences in proposed class definition would "impermissibly extinguish" their claims, Opp. 7, is equally incorrect. Severance and consolidation does not foreordain *how* plaintiffs' claims will be litigated, much less "foreclose" their claims. *Id.* at 8. That procedure merely channels their claims to the case and Court that best promotes judicial economy, fairness, and consistency. Plaintiffs cite no authority to the contrary. *Id.* at 7. They invoke *Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022), which is inapposite. That case analyzed the application of state procedural law in light of the federal rules of civil procedure under the *Erie* doctrine; it says nothing about consolidation. And the other cases plaintiffs cite involved motions to dismiss, not a mere request for severance and consolidation. *Compare Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 975 (9th Cir. 2015) (concluding that the district court abused its discretion "by dismissing rather than severing [the] complaint against [the other defendants] without evaluating the prejudice"); *Elliott v. Versa CIC, L.P.*, 349 F. Supp. 3d 1000, 1002 (S.D. Cal. 2018) (explaining that a motion in limine was "disguised" as a motion to dismiss because it raised arguments invoking the motion to dismiss standard).

*Fourth*, plaintiffs argue that "the legal claims in this action are significantly different from the claims in" the Consolidated Health Action. Opp. 7. But that too is beside the point. As other courts have explained, "consolidation is appropriate even where two cases turn on separate legal claims" or "the causes of actions in the two cases are undoubtedly distinct." *Liberty Mut. Ins. Grp. v. Panelized Structures, Inc.*, 2012 WL 13048972, at *3 (D. Nev. June 22, 2012); *accord, e.g.*, *Amador*, 2010 WL 3489038, at *1; *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007). Where, as here, the *allegations* against Meta "overlap almost completely" between the two cases, plaintiffs' invocation of varying legal theories is no obstacle. *Ali v. Intel Corp.*, 2018 WL 2412111, at *2 (N.D. Cal. May 29, 2018). Moreover, the claims do overlap significantly—both allege violations of CIPA, intrusion upon seclusion, and unjust enrichment—and more importantly the underlying allegations are the same across all claims. *Compare* Compl. ¶¶ 230–63, *with* Consolidated Healthcare Action, Dkt. 335 ¶¶ 368–547. That this action also alleges violations of the California Confidentiality of Medical Information Act

("CMIA") and state consumer protection laws that are not asserted in the Consolidated Healthcare Action does not defeat consolidation.[1] "Where, as here, the legal claims require analyzing the same sets of [documents] in the context of the same sets of events, judicial resources are more efficiently deployed by considering all relevant legal claims at once." *Liberty Mut. Ins. Grp.*, 2012 WL 13048972, at *3; *see, e.g.*, *Diaz*, 2020 WL 5044419, at *2 (granting consolidation where two cases included distinct claims); *Crowl v. Cupertino Elec., Inc.*, 2023 WL 8461175, at *1 (N.D. Cal. Dec. 6, 2023) (same); *Garcia*, 2011 WL 2746305, at *6 (same); *Amador*, 2010 WL 3489038, at *1 (same). As with class definitions, the claims need not be "completely identical"; consolidation is warranted so long as "the claims arise from the same single incident and there is sufficient commonality among [them]." *Russell v. Werner Enters. Inc.*, 2016 WL 3912910, at *4 (D. Ariz. July 20, 2016). That is the case here.

### 2. Severance And Consolidation Will Promote Judicial Economy.

Because plaintiffs' allegations against Meta are encompassed by those in the Consolidated Healthcare Action, severing those claims and consolidating them with that case will promote judicial economy. Mot. 7–8. Plaintiffs' contention that consolidation will "hinder" efficiency, Opp. 11, rests primarily on their assertion that the allegations and claims in the two cases differ. It accordingly fails for the reasons explained above. They contend that consolidation "would bring the claims against Meta into an action involving different users, who used separate services (*i.e.*, portals and websites offered by their healthcare providers), and had different health data intercepted." *Id.* But the Healthcare CAC already covers the internet tools, websites, and applications that are the subject of this case; GoodRx falls within the Healthcare CAC's definition of a covered entity; plaintiffs' allegations about interception of prescription and healthcare data fall within the scope of the allegations asserted in the Healthcare CAC; and most, if not all, plaintiffs fall within the proposed class in the Healthcare CAC. Mot. 5–8. Likewise, plaintiffs' assertion that severance would expand discovery in the Consolidated

---

[1] The only claims against Meta that have not been asserted in the Healthcare CAC are claims pursuant to the UCL, CMIA, New York's General Business Law, and the Illinois Consumer Fraud and Deceptive Business Practices Act. Judge Orrick dismissed the UCL claim that was initially brought in the Consolidated Healthcare Action, and the claim was not raised in the subsequent Healthcare CAC. Consolidated Healthcare Action, Dkt. 316 at 25. And plaintiffs here abandoned their CMIA claims because their opposition to Meta's motion to dismiss failed to dispute the inadequacy of their CMIA claims against Meta. Dkt. 130 at 26–28.

1  Healthcare Action into "Meta's collection of prescription and other health data from GoodRx users,"
2  Opp. 11, ignores the breadth of the claims there.  Whatever discovery is warranted in the Consolidated
3  Healthcare Action, plaintiffs offer no basis to believe that consolidation would require expanding it.

### B. Severance Will Avoid Unfair Prejudice to Meta and Will Not Prejudice Plaintiffs.

As Meta showed, severance and consolidation would also avoid unfair prejudice—namely, to Meta, from being forced to defend substantially the same allegations in two separate actions—and will not harm plaintiffs.  Mot. 8.  Plaintiffs' responses are unavailing.  Opp. 10–13.

*First*, plaintiffs argue that Meta will not be prejudiced because it is already a defendant in other actions in this District that involve substantially the same allegations.  Opp. 11 (citing *Frasco v. Flo Health*, Case No. 3:21-CV-00757-JD (N.D. Cal.), and *Doe v. Hey Favor, Inc.*, 3:23-cv-00059-WHO (N.D. Cal.)).  But both actions plaintiffs cite differ in important respects.  As explained above, the Healthcare CAC "expressly exclude[s] from the Class [] health information that was obtained by Meta from Hey Favor, Inc," Consolidated Healthcare Action, Dkt. 335 ¶ 357; it does not exclude, and plainly encompasses, allegations involving healthcare providers and pharmacies like GoodRx, *id.* ¶¶ 132, 355.  And as plaintiffs acknowledge, *Flo Health* "was filed well before" the Consolidated Healthcare Action and is much further along procedurally than either the Consolidated Healthcare Action or this case.  Opp. 11.  This action and the Consolidated Healthcare Action are in the early phases of litigation, and neither has moved beyond the pleading stage.  Severance and consolidation would be consistent with rulings by courts across the country that have severed and transferred similar claims against Meta from cases involving other healthcare providers for consolidation with the Consolidated Healthcare Action, even as claims against third parties proceed separately.  Consolidated Healthcare Action, Dkt. 376 at 1–2.

*Second*, plaintiffs argue that they would be prejudiced by severance because they require discovery from Meta to prove their claims against GoodRx.  Opp. 11.  But any overlap in discovery on those issues is dwarfed by the duplicative discovery from Meta that litigating this case separately from the Consolidated Healthcare Action would invite.

*Third*, plaintiffs argue that severance may result in inconsistent rulings as to Meta and GoodRx.  Opp. 11.  But even if different liability determinations for Meta and GoodRx were deemed inconsistent,

that arguable incongruity pales in contrast to the direct conflict that could arise between determinations in this case and the Consolidated Healthcare Action as to Meta's *own* liability. *See Netlist, Inc. v. Smart Modular Inc.*, 2013 WL 12128691, at *7 (C.D. Cal. Nov. 26, 2013); *XpandOrtho Inc. v. Zimmer Biomet Holdings, Inc.*, 2022 WL 18110171, at *5 (S.D. Cal. Nov. 22, 2022). Every issue in the cases—from discovery disputes to dispositive motions to jury verdicts—could potentially produce conflicting determinations. Severance and consolidation would eliminate this unfair asymmetry. Plaintiffs' own case, *Pit River Tribe v. Bureau of Land Mgmt.*, 2019 WL 6341566, at *5–6 (N.D. Cal. Nov. 27, 2019), confirms that severance and consolidation are warranted given "the need to avoid inconsistent judgments"—especially given Judge Orrick's "familiarity with the scope of" the allegations at issue. *Id.*

*Fourth*, plaintiffs argue that severance would result in their claims against Meta being "overlooked or extinguished" because the actions "lack[] any similarity to the primary factual allegations being pursued in that case and many of the Plaintiffs' claims are not being pursued in that action." Opp. 11. But again, plaintiffs' allegations and primary claims are already encompassed within the Consolidated Healthcare Action, and courts "consolidate two actions even if there is not a strict identity of claims or parties." *Amador*, 2010 WL 3489038, at *1; *Crowl*, 2023 WL 8461175, at *1; *Diaz*, 2020 WL 5044419, at *2; *Garcia*, 2011 WL 2746305, at *6; *Kong Meng Xiong v. City of Merced*, 2013 WL 5493388, at *11 (E.D. Cal. Oct. 1, 2013). The proper disposition of plaintiffs' claims by Meta here can be addressed in due course in the Consolidated Healthcare Action. Nor is there any danger that severance and consolidation will result in "piecemeal" resolution of plaintiffs' claims against Meta, as in *Western Watersheds Project v. Zinke*, 2018 WL 4210774, at *6 (D. Idaho Sept. 4, 2018), on which plaintiffs rely. Meta does not request a bifurcated "transfer of portions of th[e] action" against Meta "to at least two *other* district courts." *Id.* It seeks consolidation of all of plaintiffs' claims against Meta in this case to the Consolidated Healthcare Action, to be resolved alongside others like them.

**C.   The Claims Against Meta in This Case Present Distinct Factual Questions and Require Different Witnesses and Documentary Proof From Those Against the Other Defendants.**

The overlap between the allegations against Meta in this case and the Consolidated Healthcare Action contrasts starkly with the distinct allegations against Meta and the Advertising and Analytics Defendants in this case. Mot. 10–12. Plaintiffs' assertion that the claims here all arise out of the same transactions and occurrences lacks merit.

*First*, plaintiffs' argument that the claims here all concern the same "plaintiffs," "website and mobile app," "technology," and "data," Opp. 12, disregards that each defendant is alleged to have received information through its own separate tools and technology. To prove their claims against each defendant, plaintiffs would have to adduce separate evidence for each separate technology alleged to have facilitated the transmission of their data. Mot. 8–10. Plaintiffs' claims against Meta involve Meta's SDK and Pixel technologies, Compl. ¶¶ 68–76, whereas their claims against the other Advertising and Analytics Defendants (Google and Criteo) concern Google's SDK and Pixel, *id.* ¶¶ 79–84, and Criteo's SDK and Pixel technologies, *id.* ¶¶ 87–89, respectively, all of which are distinct. Conversely, discovery related to plaintiffs' claims against Meta here would duplicate the discovery sought in the Consolidated Healthcare Action: they both concern a similar putative class and involve the alleged interception of health-related data from the website and mobile applications of covered entities that installed the Meta Pixel or SDK.

*Second*, plaintiffs assert that severance is inappropriate because the Advertising and Analytics Defendants' separate tools were embedded on GoodRx's platforms at the same time. Opp. 10. But the factual allegations surrounding each of these tools are wholly distinct from each other, and plaintiffs do not allege any collaboration between the Advertising and Analytics Defendants or any interaction among their separate technologies. Dkt. 102 ¶¶ 18, 68–89; *see also Opperman v. Path, Inc.*, 2013 WL 1899688, at *5 (N.D. Cal. May 6, 2013) (explaining that "absent an allegation that any of the downloading defendants downloaded from one another, there cannot be a common transaction or occurrence"). The mere presence of defendants' respective codes on GoodRx's platforms at the same time does not transform plaintiffs' distinct allegations into a single transaction. As a result, as in *Colors of India v. Nielsen*, 2018 WL 6430118, at *5 (C.D. Cal. Oct. 19, 2018), each defendant here "will

- 9 -

undoubtedly make different arguments in support of their claims, submit different evidence, and call different witnesses to testify." *Id.*; *cf. E.C. v. Lincoln Mil. Prop. Mgmt. LP*, 2022 WL 4241734, at *7 (S.D. Cal. Sept. 13, 2022) (denying a motion to sever and concluding that a consolidated trial was appropriate because the underlying allegations were "all issues that presumably can be testified to and documented by the same witnesses and evidence").

*Third*, plaintiffs cite inapposite cases where severance would have "forced [the court] to manage two separate cases and eventually empanel two separate juries" to evaluate allegations of the same transaction or occurrence. *Horowitz v. Chen*, 2020 WL 4805466, at *3 (C.D. Cal. May 20, 2020) (distribution of the same infringement notices); *Schertzer v. Bank of Am.*, 2021 WL 1383164, at *3 (S.D. Cal. Apr. 13, 2021) (payment of fees stemming from the same financial transactions and agreements); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 2021 WL 9181832, at *10 (C.D. Cal. Aug. 20, 2021) (installation of the same defective airbag control units and conspiracy to conceal same); *Opperman*, 2013 WL 1899688, at *5 (underlying allegations about "Apple's role in marketing, testing, reviewing, and distributing the subject apps"). Here, by contrast, no court will be required to manage two separate cases; the Consolidated Healthcare Action already encompasses plaintiffs' allegations, and consolidation will simply streamline the pending litigation.

## CONCLUSION

Meta respectfully requests that this Court sever the claims against it in this action so that they may be related to and consolidated with the Consolidated Healthcare Action.

Dated: January 19, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
    Lauren R. Goldman

**COOLEY LLP**

By: */s/ Michael G. Rhodes*
    Michael G. Rhodes

*Attorneys for Meta Platforms, Inc. (formerly known as Facebook, Inc.)*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

Dated: January 19, 2024              **GIBSON, DUNN & CRUTCHER LLP**

By:  */s/ Lauren R. Goldman*
         Lauren R. Goldman

- 11 -

DEFENDANT META PLATFORMS, INC.'S REPLY IN SUPPORT OF MOTION TO SEVER CLAIMS AGAINST DEFENDANT META PLATFORMS, INC. – CASE NO. 3:23-CV-00501-AMO