**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone:    (212) 351-4000
Facsimile:    (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone:    (415) 393-8200
Facsimile:    (415) 393-8306


*Attorneys for Defendant Meta Platforms, Inc.*
*(additional counsel listed on signature page)*

**COOLEY LLP**
MICHAEL G. RHODES, SBN 116127
rhodesmg@cooley.com
KYLE C. WONG, SBN 224021
kwong@cooley.com
CAROLINE A. LEBEL, SBN 340067
clebel@cooley.com
Three Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GOODRX HOLDINGS, INC.; CRITEO CORP.; META PLATFORMS, INC.; and GOOGLE LLC,<br><br>                    Defendants. | Case No. 3:23-cv-00501-AMO<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT BY DEFENDANTS META PLATFORMS, INC., GOOGLE LLC, AND CRITEO CORP.**<br><br>Date:   March 13, 2025<br>Time:   2:00 p.m.<br>Dept.:  Courtroom 10 – 19th Flr.<br><br>Action Filed:  February 2, 2023<br>Honorable Araceli Martínez-Olguín |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on March 13, 2025, at 2:00 p.m., before the Honorable Araceli Martínez-Olguín of the United States District Court for the Northern District of California, Courtroom 10, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Meta Platforms, Inc., Google LLC, and Criteo Corp. will, and hereby do, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the complaint with prejudice.

This motion is based upon this notice of motion; the memorandum of points and authorities in support thereof that follows; the proposed order filed concurrently herewith; the Request for Judicial Notice and accompanying declarations and exhibits; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF ISSUES TO BE DECIDED

Should the Consolidated Class Action Complaint, Dkt. 102, be dismissed under Rule 12(b)(6) for failure to state a claim?

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    A.    GoodRx ............................................................................................... 2

    B.    Plaintiffs' Claims ................................................................................ 3

    C.    Meta and Google ................................................................................ 4

        1.    Meta and Google provide neutral tools for developers to improve their websites and apps. ................................................................................. 4

        2.    Meta's and Google's policies disclose their tools and require that developers use them responsibly. ............................................................ 4

        3.    Google-specific allegations. ............................................................. 6

    D.    Criteo ................................................................................................. 7

LEGAL STANDARD ..................................................................................................... 8

ARGUMENT .................................................................................................................. 8

I.    Plaintiffs' vague allegations fail to show what, if any, protected health information GoodRx sent to Meta, Google, or Criteo about them ............................................... 8

    A.    Plaintiffs fail to allege how GoodRx used Meta's, Google's, or Criteo's tools. ......... 8

    B.    Plaintiffs' allegations as to Criteo are so devoid of facts they cannot state any claim. ................................................................................................................. 11

II.    Plaintiffs fail to allege that Meta, Google, or Criteo intended to intercept protected health information. .................................................................................................. 12

    A.    Plaintiffs' conclusory allegations fail to allege intent. ............................. 12

    B.    Plaintiffs additionally fail to allege intent because Meta and Google instruct developers *not* to send protected health information. ............................. 13

III.    Plaintiffs consented to Meta's, Google's, and Criteo's receipt of their data. ...................... 15

    A.    GoodRx's terms establish consent. ...................................................... 16

    B.    Meta's terms establish consent. ........................................................... 17

IV.    Plaintiffs' claims also fail for numerous other reasons. ............................................... 19

    A.    Plaintiffs fail to state a CMIA claim (claims 7 and 8). .............................. 19

        1.    Plaintiffs fail to state a claim under section 56.36 (claim 8). ............... 19

        2.    Plaintiffs fail to state an aiding-and-abetting claim under sections 56.06, 56.101, and 56.10 (claim 7) ........................................................ 20

    B.    Plaintiffs fail to state any consumer-fraud claim (claims 12, 13, and 14) .................. 20

        1.    The California UCL claim (claim 12) fails. ......................................... 20

        2.    The New York GBL claim (claim 13) fails. ......................................... 22

        3.    The ICFA claim (claim 14) fails. ...................................................... 23

    C.    Plaintiffs fail to state a claim under CIPA (claims 9 and 10) .............................. 24

    D.    Plaintiffs fail to state a privacy tort (claims 1 and 2). ........................................ 26

ii

    E.    Plaintiffs fail to state an unjust enrichment claim (claim 3). ....................................27

V.    The statutes of limitations foreclose or severely limit plaintiffs' claims. .............................28

CONCLUSION ....................................................................................................................................30

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.,*
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)..........................................................................20

*Alatortev v. JetBlue Airways Corp.,*
2018 WL 2735355 (N.D. Cal. June 7, 2018) ..........................................................................27

*Allstate Ins. Co. v. Hague,*
449 U.S. 302 (1981)................................................................................................................25

*Am. Hosp. Ass'n v. Becerra,*
2024 WL 3075865 (N.D. Tex. June 20, 2024)..................................................................10, 20

*Anderson v. Brouwer,*
99 Cal. App. 3d 176 (1979).....................................................................................................29

*In re Apple Processor Litig.,*
2023 WL 5950622 (9th Cir. Sept. 13, 2023)...........................................................................22

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)..............................................................................................................8, 11

*Austin B. v. Escondido Union Sch. Dist.,*
149 Cal. App. 4th 860 (2007)..................................................................................................12

*B.K. v. Desert Care Network,*
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ..........................................................................14

*Barker v. Am. Mobil Power Corp.,*
64 F.3d 1397 (9th Cir. 1995)...................................................................................................30

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................................................8

*Belluomini v. Citigroup Inc.,*
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ........................................................................26

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024)................................................................................................17

*Calhoun v. Google LLC,*
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................................................................................28

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
761 F.3d 732 (7th Cir. 2014)...................................................................................................23

*Clarke v. Horany,*
212 Cal. App. 2d 307 (1963)...................................................................................................20

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ...................................................................24

*Cody v. Ring*,
  2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........................................................25, 26

*De Bouse v. Bayer AG*,
  922 N.E.2d 309 (Ill. 2009) ......................................................................................23

*Dinosaur Dev., Inc. v. White*,
  216 Cal. App. 3d 1310 (1989) ..................................................................................27

*Doe I v. Google LLC*,
  2024 WL 3490744 (N.D. Cal. July 22, 2024) ...............................1, 2, 9, 10, 12, 13, 14, 15, 21, 27

*Doe v. Cedars-Sinai Health Sys.*,
  2024 WL 3303516 (Cal. Super. Ct. June 5, 2024) ....................................................24

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..............................................................15, 21

*Eisenberg v. Citibank, NA*,
  787 F. App'x 929 (9th Cir. 2019) .............................................................................29

*Erhart v. BofI Holding, Inc.*,
  269 F. Supp. 3d 1059 (S.D. Cal. 2017) ....................................................................19

*F.B.T. Prods., LLC v. Aftermath Records*,
  621 F.3d 958 (9th Cir. 2010) ...................................................................................18

*Fiol v. Doellstedt*,
  50 Cal. App. 4th 1318 (1996) ..................................................................................12

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) .......................................................................................24, 26

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) .............................................................................................29

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
  771 F.3d 1119 (9th Cir. 2014) .................................................................................21

*G.H.I.I. v. MTS, Inc.*,
  147 Cal. App. 3d 256 (1983) ....................................................................................28

*Gamache v. Airbnb, Inc.*,
  2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017) ....................................................20

*Garrett v. RentGrow, Inc.*,
  2005 WL 1563162 (N.D. Ill. July 1, 2005) ..............................................................12

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) .....................................................................25

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

*Guajardo v. Skechers USA, Inc.*,
 503 F. Supp. 3d 746 (C.D. Ill. 2020).................................................................23

*Hammerling v. Google LLC*,
 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................................................25

*Hammerling v. Google LLC*,
 2024 WL 937247 (9th Cir. Mar. 5, 2024) ..........................................................18

*Hammerling v. Google LLC*,
 615 F. Supp. 3d 1069 (N.D. Cal. 2022) .........................................................26, 27

*Haskins v. Symantec Corp.*,
 654 F. App'x 338 (9th Cir. 2016) ......................................................................22

*Hernandez v. Hillsides, Inc.*,
 47 Cal. 4th 272 (2009) .......................................................................................26

*Herskowitz v. Apple Inc.*,
 940 F. Supp. 2d 1131 (N.D. Cal. 2013) .............................................................22

*Hubbard v. Google LLC*,
 2024 WL 3302066 (N.D. Cal. July 1, 2024) ..................................................26, 27

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
 451 F. Supp. 2d 982 (N.D. Ill. 2006) .................................................................21

*In re iPhone Application Litig.*,
 844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................27

*Javier v. Assurance IQ, LLC*,
 649 F. Supp. 3d 891 (N.D. Cal. 2023) ...............................................................29

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 497 F. Supp. 3d 552 (N.D. Cal. 2020) ...............................................................23

*Katz-Lacabe v. Oracle Am., Inc.*,
 668 F. Supp. 3d 928 (N.D. Cal. 2023) ...............................................................21

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009).............................................................................14

*Kellman v. Spokeo, Inc.*,
 599 F. Supp. 3d 877 (N.D. Cal. 2022) ...............................................................22

*Kis v. Cognism Inc.*,
 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024)....................................................26

*Kurowski v. Rush Sys. for Health*,
 659 F. Supp. 3d 931 (N.D. Ill. 2023) .................................................................23

*Lebrun v. CBS Television Studios, Inc.*,
 68 Cal. App. 5th 199 (2021)...............................................................................27

vi

*Lloyd v. Facebook, Inc.*,
  2023 WL 1802415 (N.D. Cal. Feb. 7, 2023) ...................................................6, 17

*Lloyd v. Facebook, Inc.*,
  2024 WL 3325389 (9th Cir. July 8, 2024) ....................................................15, 18

*Lopez v. Apple, Inc.*,
  519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................12

*Lozano v. City of Los Angeles*,
  73 Cal. App. 5th 711 (2022)..................................................................................13

*M.G. v. Therapymatch, Inc.*,
  2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)................................................20, 24

*In re Meta Healthcare Pixel Litig.*,
  713 F. Supp. 3d 650 (N.D. Cal. 2024) .................................................................10

*In re Meta Pixel Healthcare Litig.*,
  647 F. Supp. 3d 778 (N.D. Cal. 2022) ...........................................................18, 24

*In re Meta Pixel Tax Filing Cases*,
  2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) ........................................15, 18, 21, 23

*In re Meta Pixel Tax Filing Cases*,
  2024 WL 3664037 (N.D. Cal. Aug. 6, 2024) .......................................................23

*Meta Platforms, Inc. v. Nguyen*,
  2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) .....................................................17

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023) ..................................................................12

*Moore v. Centrelake Med. Grp., Inc.*,
  83 Cal. App. 5th 515 (2022)..................................................................................21

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) ..............................................................................................17

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................11

*Nienaber v. Overlake Hosp. Med. Ctr.*,
  2024 WL 2133709 (W.D. Wash. May 13, 2024) ..................................................10

*Oddei v. Optum, Inc.*,
  2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) .......................................................20

*Omnicare, Inc. v. Laborers Dist. Council. Const. Ind. Pension Fund*,
  575 U.S. 175 (2015)...............................................................................................17

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ...............................................................15

vii

*People v. Buchanan*,
    26 Cal. App. 3d 274 (1972)................................................................................13

*People v. Nakai*,
    183 Cal. App. 4th 499 (2010)............................................................................24

*People v. Superior Ct. of Los Angeles Cnty.*,
    70 Cal. 2d 123 (1969).......................................................................................13

*Perkins v. LinkedIn Corp.*,
    53 F. Supp. 3d 1190 (N.D. Cal. 2014) .........................................................15, 22

*Plumlee v. Pfizer, Inc.*,
    2014 WL 695024 (N.D. Cal. Feb. 21, 2014).....................................................29

*Pruchnicki v. Envision Healthcare Corp.*,
    845 F. App'x 613 (9th Cir. 2021) .....................................................................21

*Regents of Univ. of Cal. v. Sup. Ct.*,
    220 Cal. App. 4th 549 (2013)............................................................................19

*Revitch v. New Moosejaw, LLC*,
    2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)...................................................24

*Richard B. LeVine, Inc. v. Higashi*,
    131 Cal. App. 4th 566 (2005)............................................................................20

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .............................................14, 24

*Rojas v. HSBC Card Servs. Inc.*,
    20 Cal. App. 5th 427 (2018)..............................................................................13

*Rutherford Holdings, LLC v. Plaza Del Rey*,
    223 Cal. App. 4th 221 (2014)............................................................................27

*Ryan v. Microsoft Corp.*,
    147 F. Supp. 3d 868 (N.D. Cal. 2015) ..............................................................30

*Seismic Reservoir 2020, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015)...............................................................................8

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ...................................................15

*Smith v. Facebook, Inc.*,
    745 F. App'x 8 (9th Cir. 2018) .......................................................1, 9, 15, 18, 19

*Smith v. Google, LLC*,
    2024 WL 2808270 (N.D. Cal. June 3, 2024) .....................................................14

*SpeedFit LLC v. LifeCore Fitness, Inc.*,
    2023 WL 199595 (S.D.N.Y. Jan. 17, 2023).......................................................28

*Taus v. Loftus*,
    40 Cal. 4th 683 (2007) ...................................................................................................12

*Thorman v. Am. Seafoods Co.*,
    421 F.3d 1090 (9th Cir. 2005) .......................................................................................30

*Toy v. TriWire Eng'g Sols., Inc.*,
    2010 WL 3448535 (N.D. Cal. Sept. 1, 2010) ................................................................20

*Tromble v. W. Digital Corp.*,
    2021 WL 2165796 (N.D. Cal. May 27, 2021) ...............................................................23

*Tyler v. Bank of N.Y. Mellon*,
    2020 WL 2735367 (N.D. Ill. May 26, 2020) ................................................................28

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) ...................................................................1, 12, 13, 15

*Vartanian v. VW Credit, Inc.*,
    2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .............................................................12

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .......................................................................................14

*Weiner v. Snapple Beverage Corp.*,
    2010 WL 3119452 (S.D.N.Y. Aug. 5, 2010) ................................................................23

*Williams v. Facebook, Inc.*,
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) .........................................................................23

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .............................................................25

*Wolfe v. City of Fremont*,
    144 Cal. App. 4th 533 (2006) ........................................................................................20

*Wu v. Sunrider Corp.*,
    793 F. App'x 507 (9th Cir. 2019) ..................................................................................28

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) .......................................................................................26

**Statutes**

Cal. Bus. & Prof. Code § 17200 .............................................................................................12

Cal. Bus. & Prof. Code § 17204 .............................................................................................21

Cal. Civ. Code § 56.05(j) ...............................................................................................19, 20

Cal. Civ. Code § 56.06 ...........................................................................................................19

Cal. Civ. Code § 56.36(c)(3)(A) ......................................................................................12, 19

Cal. Civ. Code § 56.36(c)(5) ..................................................................................................19

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

Cal. Civ. Code § 56.36(f)(1) ................................................................................................19

Cal. Civ. Code § 340(a) .......................................................................................................28

Cal. Civ. Code § 3515 .........................................................................................................15

Cal. Penal Code § 631(a) ................................................................................12, 15, 25, 26

Cal. Penal Code § 632(a) .......................................................................................12, 15, 24

N.Y. Gen. Bus. Law § 349 ..................................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs allege that GoodRx, an online provider of coupons for prescription medications, improperly used common internet tools—computer code known as "pixels" and software development kits ("SDKs")—to send purported protected health information to Meta, Google, and Criteo when GoodRx's users visited its website or used its mobile app. This attempt to hold Meta, Google, and Criteo liable for GoodRx's alleged misuse of their internet tools is fundamentally flawed, and plaintiffs' claims all fail for multiple independent reasons.

*First*, plaintiffs fail to adequately allege that Meta, Google, or Criteo actually received any protected health information. Pixels can be used on many webpages without sending any sensitive or protected information at all, and mere browsing data from a healthcare-related website is not protected health information. *Doe I v. Google LLC*, 2024 WL 3490744, at *2 (N.D. Cal. July 22, 2024) ("*Google Pixel*") (dismissing similar complaint); *see also, e.g.*, *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018) (holding "browsing data from various healthcare-related websites" is not protected health information and affirming dismissal). Thus, it is not enough to allege broadly that pixel technology is present on GoodRx's "web property" (*i.e.*, an entire website) and assume that "automatically results in [Meta, Google, or Criteo] intercepting any interaction the plaintiffs have had with that website." *Google Pixel*, 2024 WL 3490744, at *2. That is especially true in this case, because GoodRx is a medication coupon platform where visitors can obtain coupons for themselves or others (without establishing any patient-provider relationship), search for pharmacies, read the latest health news, or learn how GoodRx works. The complaint lacks specific allegations showing that GoodRx configured Meta's, Google's, or Criteo's tools to send any protected health information.

*Second*, even if plaintiffs had plausibly alleged that GoodRx sent protected health information, they have not alleged that Meta, Google, or Criteo *intended* GoodRx to do so. To adequately plead intent, plaintiffs must allege that Meta, Google, and Criteo "purposefully and deliberately" intercepted their protected health information—not merely that they were *aware* of GoodRx's actions and failed to prevent them. *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015). Plaintiffs plead no such facts (nor do they allege that Meta, Google, and Criteo were even aware of GoodRx's purported

1   disclosures).  Moreover, plaintiffs cannot plausibly allege intent given that Meta's and Google's bind-

2   ing agreements *specifically forbade* web developers (like GoodRx) from sending any sensitive or pro-

3   tected health information.  *Google Pixel*, 2024 WL 3490744, at *3–5.

4           Those problems are enough to dismiss the complaint in full.  But other problems abound.  Plain-

5   tiffs consented to share their information by agreeing to GoodRx's and Meta's policies.  GoodRx, for

6   example, expressly disclosed that it uses "pixels" and "SDKs" on its platform to share information with

7   third parties like "Facebook," "Google," "and others."  Meta's terms similarly disclose that websites

8   and apps can send data to Meta about users' activities on their platforms, including through pixels and

9   SDKs.  Consent defeats every one of plaintiffs' claims as to all defendants.  Moreover, while plaintiffs

10  allege that *GoodRx* made various misrepresentations, they do not allege that Meta, Google, or Criteo

11  did so—a failure that dooms their consumer-protection claims and tolling arguments.  And each of

12  plaintiffs' claims also fails for still other, independent reasons—indeed, in prior motion-to-dismiss

13  briefing, plaintiffs did not even defend several of those claims.

14          Even beyond that, the complaint fails entirely as to Criteo because it is devoid of relevant facts

15  as to Criteo.  The eleven paragraphs discussing Criteo (¶¶ 86–90, 157–62) make only vague and factu-

16  ally unsupported allegations about Criteo's business generally.  No facts plausibly allege how GoodRx

17  used Criteo's services, how Criteo's technology worked, that it could send, or was ever configured by

18  GoodRx to send, any particular data to Criteo, or any sensitive data, or any data identifying plaintiffs.

19  Plaintiffs cannot possibly state any claim as to Criteo.

20          For all of the reasons set forth below, this Court should dismiss the complaint in full.

21                                        **BACKGROUND**

22          **A.      GoodRx**

23          GoodRx is an online "prescription coupon company" that "allows consumers to save money on

24  prescription drugs by gathering current prices and discounts, as well as by offering prescription cou-

25  pons."  Dkt. 102 ("Compl.") ¶¶ 3, 96.  Users can visit the GoodRx website (www.goodrx.com) or use

26  its mobile application for free.  "To access prescription discounts," a user simply "enters the medication

27  name and then selects a local pharmacy."  *Id.* ¶¶ 3, 98.  GoodRx then provides the user a coupon, which

28  the user can "present at the pharmacy when picking up their prescription."  *Id.*  Although users "can

sign up for an account with GoodRx," *id.* ¶ 4, they need not do so in order to access GoodRx's free online coupons (nor do they need to provide any personal or identifying information), *see id.* ¶ 3. GoodRx also offers several paid services. Through "GoodRx Care," GoodRx connects users with "telehealth services" and healthcare providers, *id.* ¶¶ 5, 99, and, through "GoodRx Gold," users can sign up for a monthly subscription for additional discounts on prescriptions and doctor visits. *Id.* ¶¶ 6, 101. As detailed below, GoodRx's services are governed by its Privacy Policy, which explicitly discloses GoodRx's use of "pixels" and "SDKs" to share information about users' activity with Meta, Google, and others:

> We may use other companies' analytics, tracking and provided tools that receive information when you use our Services, ***including technology from Google, Facebook and others***, to help us track, segment, and analyze usage of the Services, and to help us or those companies serve more targeted advertising on the Services and across the Internet. These tools may use technology such as cookies, tags, ***pixels, SDKs***, and similar technologies to track online activity.

Request for Judicial Notice ("RJN") Ex. 24.

### B.     Plaintiffs' Claims

Plaintiffs are six individuals from Florida, New Jersey, Illinois, New York, and California who claim they used GoodRx's website or mobile app in various periods between 2015 and 2023. Compl. ¶¶ 22–59. The complaint is vague about which specific webpages or parts of the mobile app each plaintiff visited and which of GoodRx's services they used, *see id.*, but it appears that one plaintiff (Jane Doe) used GoodRx Care to obtain telehealth services and five plaintiffs used GoodRx's website or mobile app to obtain coupons or locate pharmacies. Plaintiffs allege that when they used GoodRx's website or mobile app, GoodRx used pixels and SDKs to send data to Meta, Google, and Criteo. They assert claims for invasion of privacy and intrusion upon seclusion, *id.* ¶¶ 230–46, 247–61; unjust enrichment, *id.* ¶¶ 262–70; aiding and abetting GoodRx's alleged violations of the California Confidentiality of Medical Information Act ("CMIA"), *id.* ¶¶ 293–98; direct violation of CMIA, *id.* ¶¶ 299–307; two claims for violation of sections 631 and 632 of the California Invasion of Privacy Act ("CIPA"), *id.* ¶¶ 308–20, 321–31; violation of the California Unfair Competition Law ("UCL"), *id.* ¶¶ 345–60; violation of the New York General Business Law ("GBL"), *id.* ¶¶ 361–67; and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), *id.* ¶¶ 368–73.

The parties previously briefed motions to dismiss this complaint, and plaintiffs failed to oppose dismissal of their CMIA or ICFA claims against Meta, Google, or Criteo.  *See generally* Dkt. 130.  This Court denied those motions without prejudice and instructed the parties to engage in mediation; GoodRx reached an agreement in principle with plaintiffs, but Meta, Google, and Criteo did not.  *See* Dkts. 193, 209.  This Court set a schedule for a renewed, consolidated motion to dismiss.  Dkt. 212.

### C.    Meta and Google

#### 1.    Meta and Google provide neutral tools for developers to improve their web-sites and apps.

Meta and Google offer pixels (used on websites) and SDKs (used on apps), free of charge, to web and app developers to measure and improve their websites and apps.  Developers choose whether and how to install these publicly available tools on their own platforms, and they can use these tools for various functions.  Developers may create custom events to measure certain actions their users take and use that information to grow their businesses and improve users' online experience.  *See* Compl. ¶¶ 122–25, 131–34, 144–45, 149–52.  When a user engages in an activity a developer has chosen to measure—like viewing a particular webpage, or clicking a particular button—data is sent to the tool's provider (Meta or Google), which then returns a report about how users interact with the website or app.  *Id.*  The developer, not Meta or Google, chooses whether, where, and how to use pixel or SDK technology, including what information the developer wants to send.  *Id.*; *see also id.* ¶¶ 139, 154.

There are many different types of pixels and SDKs, offered by numerous companies to countless developers spanning many industries.  With various forms and functions, this technology is ubiquitous across the modern internet.  *See, e.g.*, *id.* ¶¶ 121, 148, 163–64.  Plaintiffs acknowledge that "millions of companies" use these "popular" tools, and estimate that GoodRx incorporated similar technology from twenty other third parties.  *Id.*

#### 2.    Meta's and Google's policies disclose their tools and require that developers use them responsibly.

Meta and Google publish policies for users (like plaintiffs) and for developers (like GoodRx) that provide important disclosures and limitations on the use of their products.  Those policies forbid developers from using those tools to send any sensitive or protected health information, and they tell

1  users that developers can share information about their activity on the developer's websites and apps.

2    ***Developer-facing policies.***  Any web or app developer who chooses to use Meta's Business

3  Tools, including the Meta Pixel and the Meta SDK, must agree to Meta's Business Tools Terms.  RJN

4  Ex. 3; *see* Compl. ¶ 295.  These Terms require web developers to "represent and warrant that you (and

5  any data provider that you may use) have all of the necessary rights and permissions and a lawful basis

6  (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use

7  of Business Tool Data."  *Id.*  They further forbid developers from sharing any "health" or "sensitive

8  information (including any information defined as sensitive under applicable laws, regulations and ap-

9  plicable industry guidelines)."  *Id.*  The Business Tools Terms also require web developers to provide

10  "robust and sufficiently prominent notice" to users about the developers' collection of users' data

11  through the Pixel and SDK.  *Id.*

12    Similarly, to use Google Analytics, developers must consent to and abide by the Google Ana-

13  lytics Terms of Service.  RJN Ex. A.  These Terms expressly prohibit developers from sending Google

14  any data that contains personally identifiable information, and require developers to disclose the use of

15  Google Analytics to their users.  *Id.* at 5.  Google instructs developers:  "You will not and will not assist

16  or permit any third party to, pass information, hashed or otherwise, to Google that Google could use or

17  recognize as personally identifiable information."  *Id.*; *see also* RJN Ex. B at 4 (archived version

18  providing substantively the same).  The Google Analytics help pages similarly instruct:  "Google An-

19  alytics policies and terms mandate that no data be passed to Google that Google could recognize as

20  personally identifiable information (PII), and no data you collect using Google Analytics may reveal

21  any sensitive information about a user, or identify them."  RJN Ex. C at 1 (HIPAA and Google Ana-

22  lytics Help Page); *see also, e.g.*, RJN Ex. D at 1 (Best Practices to avoid sending Personally Identifiable

23  Information Help Page) ("Google policies mandate that no data be passed to Google that Google could

24  use or recognize as personally identifiable information (PII)"); RJN Ex. E at 2 (archived version with

25  substantively similar language); RJN Ex. F at 2–3 (same).  Further, Google prohibits all developers

26  from personalized advertising based on sensitive information or prohibited categories, including per-

27  sonal health conditions, medication, and related health information.  RJN Ex. G at 3–4 (Personalized

28  Advertising); *see also* RJN Ex. H at 4 (archived version).

***User-facing policies.***  When users sign up for a Facebook account—as all plaintiffs here allege they did, Compl. ¶ 130—they agree to Meta's Terms of Service (the "Terms"), which govern the relationship between Meta and its users.  RJN Ex. 1; *see, e.g.*, *Lloyd v. Facebook, Inc.*, 2023 WL 1802415, at *1 (N.D. Cal. Feb. 7, 2023), *aff'd in relevant part*, 2024 WL 3325389 (9th Cir. July 8, 2024).  The Terms explain that Meta "use[s] your personal data to help determine which personalized ads to show you," and they link to the Privacy Policy to "explain[] how we collect and use your personal data to determine some of the ads you see."  RJN Ex. 1.  The Privacy Policy provides more details about "what information [Meta] collect[s]."  RJN Ex. 2.  It tells users that third parties can use the tools and other products Meta offers, including the Meta Pixel and SDK, to "advertise or support their products and services" and to "understand and measure how people are using their products and services and how well their ads are working."  *Id.*  It also specifically discloses that Meta "collect[s] and receive[s] information" from those third parties "about a variety of your information and activities on and off [Meta's] Products"—including "device information," "[p]urchases and transactions you make," "[h]ow you use [third parties'] products and services, online or in person," and "[w]ebsites you visit and cookie data, like through . . . the Meta Pixel."  *Id.*  It explains that Meta receives "information like your email address, cookies and advertising device ID" that "helps [Meta] match your activities with your account, if you have one."  *Id.*  The Privacy Policy discloses that third parties "collect your information when you visit their site or app or use their services," and notes that Meta requires those third parties "to have the right to collect, use and share your information before giving it to us."  *Id.*[1]

### 3.    Google-specific allegations.

Plaintiffs' complaint makes only a handful of allegations about Google's conduct.  *See* Compl. ¶¶ 142–56.  Plaintiffs allege that GoodRx designed "Custom Events" and URLs that purportedly disclosed "the name of the medication, drug type, the health condition relating to that medication, the medication quantity and dosage, and pharmacy ID," which GoodRx then sent to Google.  *Id.* ¶ 154.  Plaintiffs also allege that GoodRx's use of Google Analytics resulted in the transmission of "PII,

---

[1] Google's own privacy policies similarly disclose that, depending on account settings and products in use, a Google accountholder's activities on third-party apps and websites using Google Analytics may be shared.  RJN Ex. I at 4, 37.

1    including phone number, email address, zip code, IP address, as well as unique advertising IDs and

2    device IDs that uniquely identify the user and their device." *Id.*

3         Plaintiffs do not allege that the data GoodRx provided to Google Analytics tied any purported

4    health information to any user's PII. Nor do Plaintiffs allege that any such data was used for advertising

5    or for any other purpose by Google. They do not allege that GoodRx used any of the "Custom Events"

6    or URLs to create advertising audiences or to target advertising on Google's network, they do not allege

7    that they saw any Google-served targeted advertising, and they do not allege whether and how GoodRx

8    used any of Google's marketing products at all. *See id.* ¶¶ 180–91. Plaintiffs also do not allege that

9    Google specifically used GoodRx's data to "improve its ad targeting capabilities and data points on

10   users." *Id.* ¶ 153. Indeed, there is no factual allegation in the complaint to suggest that Google Ana-

11   lytics did anything other than what it contracted with GoodRx to do: analyze GoodRx's own data about

12   its own users. *Id.* ¶ 145.

13        **D.    Criteo**

14        Criteo is a company that offers a variety of services to help online businesses with their adver-

15   tising. Despite being over 62 pages long and spanning almost 400 paragraphs, the complaint contains

16   only 11 paragraphs specific to Criteo. *See* Compl. ¶¶ 86–90, 157–62. These contain only factually

17   unsupported allegations about Criteo's business generally. Thus, while plaintiffs allege Criteo offered

18   a product called the "Criteo One Tag," they do not allege that GoodRx used that product; instead, they

19   allege GoodRx used unspecified Criteo technology "such as an SDK or pixel." *Id.* ¶¶ 158–60. But

20   plaintiffs also explain that advertisers like GoodRx can use Criteo's advertising services to reach audi-

21   ences *without using any Criteo One Tag, pixel, or SDK products* (by using other audience data Criteo

22   offers or by uploading unspecified data "separately"). *Id.* ¶ 159. No facts allege any specific infor-

23   mation about which Criteo technology or services GoodRx used, how any of Criteo's technology

24   works, or whether it could transmit—or was configured by GoodRx to transmit—any particular types

25   of information, information about specific actions or GoodRx webpages, health information, or identi-

26   fying information. Nor do plaintiffs allege Criteo used any data from the GoodRx website for any

27   purpose, or that Criteo did anything other than purportedly fail to prevent GoodRx from using unspec-

28   ified technology. *Id.* ¶ 89.

**LEGAL STANDARD**

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations.  *Id.* at 678–79.  The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Claims also may be dismissed based on a dispositive issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

**ARGUMENT**

Plaintiffs seek to hold Meta, Google, and Criteo liable for *GoodRx's* alleged misuse of common internet tools.  That approach is fundamentally flawed for two overarching reasons.  First, plaintiffs' description of how GoodRx actually configured pixel and SDK technology on its website and app is hopelessly vague (and, as to Criteo, nonexistent), making it impossible to tell whether GoodRx sent protected health information at all (and, if so, what).  Second, to the extent GoodRx *did* configure this technology improperly to send protected health information, plaintiffs have not plausibly alleged that Meta, Google, or Criteo *intended* that misuse, which would violate Meta's and Google's policies.

The complaint also faces multiple other problems that compel dismissal, including plaintiffs' consent and numerous claim-specific defects—indeed, plaintiffs did not even defend several of their claims in the first round of briefing.  For numerous independent reasons, the complaint should be dismissed in full.[2]

**I.     Plaintiffs' vague allegations fail to show what, if any, protected health information GoodRx sent to Meta, Google, or Criteo about them.**

**A.     Plaintiffs fail to allege how GoodRx used Meta's, Google's, or Criteo's tools.**

There is "nothing inherently unlawful" about the pixel and SDK tools at issue in this case, or

---

[2] Because plaintiffs abandoned several claims in the first round of motion-to-dismiss briefing, Meta, Google, and Criteo asked them to confirm that they no longer intend to pursue those claims.  Plaintiffs refused, requiring re-briefing of those claims here.

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

Gibson, Dunn &
Crutcher LLP

1    with Meta, Google, and Criteo "offering [their] source code to health care providers." *Google Pixel*,

2    2024 WL 3490744, at *4. Nor is there anything inherently unlawful about GoodRx making use of

3    these tools. Even healthcare entities like hospitals may use pixels on "many" webpages without

4    "lead[ing] to protected health information being revealed." *Id.* at *2; *see also, e.g.*, *Smith*, 745 F. App'x

5    at 8–9 ("browsing data from various healthcare-related websites" is not protected health information).

6    Moreover, pixel or SDK "source code can exist on one page of a website but not another," or in only

7    certain parts of a developer's app—and what information is sent depends on specifically where and

8    how the technology is configured. *Google Pixel*, 2024 WL 3490744, at *2–3. In short, the mere use

9    of a pixel or SDK, like the use of any other neutral tool, could be lawful or unlawful, depending on

10   various additional factors. Indeed, guidance from the U.S. Department of Health and Human Services

11   on this very subject "does not prohibit the use of 'tracking technologies'" even "on health care provider

12   websites," but "simply cautions providers to be careful how they use such technology." *Id.* at *4.

13        As a result, plaintiffs "cannot simply allege that a 'web property'"—*i.e.*, an entire website—

14   "contains source code and then assume this means every single page on that property contains source

15   code." *Id.* at *2. Instead, to plausibly "support an inference" that a healthcare provider has configured

16   these tools improperly to send "the plaintiffs' personal health information," plaintiffs must allege facts

17   showing "where on the web property the source code exists" and what "features of [the source code]

18   are being enabled on those pages" to send allegedly protected health information. *Id.* at *1–3.

19        The complaint here fails on both fronts. Just as the *Google Pixel* plaintiffs alleged that Google's

20   source code appeared on various healthcare providers' "web properties," plaintiffs here generically

21   allege that Meta's, Google's, and Criteo's technology appears on "the GoodRx Platform"—a term

22   plaintiffs broadly define as GoodRx's *entire* website and mobile app. *E.g.*, Compl. ¶¶ 2, 61, 63, 65,

23   67, 76, 80, 83–84, 88–89, 139, 154, 160, 202; *see also id.* ¶¶ 23, 29, 36, 41, 47, 55 (similarly vague

24   allegations that each plaintiff "used the GoodRx Platform"). They do not specify where on the GoodRx

25   website or app the code appears or how GoodRx configured the code—for example, whether the code

26   is configured to send communications made to a healthcare provider in the context of a patient-provider

27   relationship, or whether it merely sends non-actionable data reflecting users' web browsing on

28   GoodRx's publicly accessible website. *See Smith*, 745 F. App'x at 8 (affirming dismissal of claims

based on "browsing data from various healthcare-related websites"); *see also, e.g.*, *Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865, at *13–14 (N.D. Tex. June 20, 2024) (tracking technologies on unauthenticated webpages do not transmit protected health information); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2024 WL 2133709, at *3–6 (W.D. Wash. May 13, 2024) (dismissing claims where plaintiff failed to allege what information was "entered on Defendant's Public Website containing information-sharing browser plugins"). Their allegations are "too vague to support an inference that [GoodRx] ha[s], contrary to [Meta's and Google's policies], caused [Meta, Google, or Criteo] to receive the plaintiffs' personal health information." *Google Pixel*, 2024 WL 3490744, at *1.

In short, plaintiffs' failure to allege "where on [GoodRx's website or app] the source code exists" and what "features of [the source code] are being enabled on those pages" requires dismissal of the entire complaint, because such allegations are key factual predicates to show that GoodRx unlawfully transmitted "plaintiffs' personal health information." *Id.* at *1–3. In fact, the complaint here is significantly *weaker* than the complaint that Judge Chhabria dismissed in *Google Pixel*. There, the complaint focused on "health care providers" like hospitals and doctors' offices, whose websites included "user-authenticated pages" (like password-protected patient portals) where "using tracking technology . . . w[ould] likely result in the transmission of protected health information." 2024 WL 3490744, at *2. The plaintiffs who visited those providers' websites had a patient-provider relationship with them. *See* No. 23-cv-2431, Dkt. 86 ¶¶ 2, 20–31 (complaint in *Google Pixel*); *see also In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024) (privacy claims survived motion to dismiss "given that plaintiffs were communicating with their healthcare providers about their healthcare needs"). Here, GoodRx is primarily "a prescription *coupon* company"; anyone can access its coupons—for themselves or others—without establishing a patient-provider relationship. Compl. ¶ 96 (emphasis added). Indeed, that appears to be all that five out of the six named plaintiffs here did. *See supra* 3. Moreover, visitors to GoodRx can interact with the platform in ways that have nothing to do with personal health, like locating a pharmacy, reading the latest health news, or learning how GoodRx works. Plaintiffs' claim that GoodRx transmitted protected health information is thus even more attenuated here.

Although plaintiffs allege that GoodRx also provides certain telehealth services (connecting a

1    user with a medical provider), *see supra* 2–3, that does nothing to rescue their claims.  To the contrary,

2    it only underscores the need for allegations showing where and how GoodRx configured any pixel or

3    SDK source code on its website or app to transmit protected health information unlawfully—something

4    plaintiffs here have not done.  And, notably, only one of the six plaintiffs (Jane Doe) even alleges that

5    she used those services.

6         **B.    Plaintiffs' allegations as to Criteo are so devoid of facts they cannot state any claim.**

7         As explained above, plaintiffs allege no facts about Criteo's technology or services, how these

8    purportedly worked or were implemented by GoodRx, or that Criteo's technology was capable of, or

9    actually configured to, transmit data about specific webpages, actions, "health data," contents of any

10   communication, or any data that identified plaintiffs.  *See supra* 7.  Plaintiffs' bare and conclusory

11   allegation that Criteo received "PII, health information, and other sensitive data" and "coupon" infor-

12   mation is not sufficient *because there are no facts at all that make this allegation plausible* as to Criteo.

13   Devoid of specific facts regarding Criteo's technology, that it was in fact used or how it was configured

14   on GoodRx's website, plaintiffs' allegations are mere conclusions that are disregarded.  *Iqbal*, 556 U.S.

15   at 678 ("'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient).  Plaintiffs can-

16   not rely on conclusory allegations or allegations as to other defendants.  *In re Nexus 6P Prods. Liab.*

17   *Litig.*, 293 F. Supp. 3d 888, 908 (N.D. Cal. 2018) ("Plaintiffs must identify what action each Defendant

18   took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a

19   whole." (quotation marks omitted)).  This is particularly true here since each defendant is a separate

20   company, with different services and different technology.  Plaintiffs also do not allege that Criteo did

21   anything with any GoodRx data.  For example, they allege no facts to indicate Criteo used data from

22   GoodRx for advertising, or for its own purposes, or that it could do so.

23        As detailed herein, for numerous reasons, plaintiffs fail to state any claim against any defendant.

24   As to Criteo, the exceptional lack of factual allegations is particularly glaring, and plaintiffs state no

25   privacy violations (claims 1, 2, 7–10) because, among other things, no facts plausibly allege intent, that

26   GoodRx sent Criteo sensitive, health, or identifying information, or that Criteo used any such infor-

27   mation.  They allege no unjust enrichment (claim 3) as, among other things, no facts allege that Criteo

28   committed    an    actionable    misrepresentation    or    omission    constituting    mistake,    fraud,    coercion,    or

1  request.  They allege no consumer protection claims (claims 12–14) as, among other things, they allege

2  no action by Criteo at all, let alone any unfair, fraudulent, or illegal actions *by Criteo*.  In fact, plaintiffs

3  do not allege Criteo *did* anything other than (at most) fail to stop GoodRx from using unspecified

4  technology.  This cannot state a claim because "[a]s a general rule, one owes no duty to control the

5  conduct of another."  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007).[3]

6  **II.      Plaintiffs fail to allege that Meta, Google, or Criteo intended to intercept protected health**

7  **information.**

8          Plaintiffs also do not plausibly allege that Meta, Google, or Criteo "*intend[ed]* to receive this

9  information."  *Google Pixel*, 2024 WL 3490744, at *1 (emphasis added).  Intent, or willfulness, is an

10 express element of most of plaintiffs' claims, and this failure independently compels dismissal.[4]

11         **A.      Plaintiffs' conclusory allegations fail to allege intent.**

12         To plead intent, plaintiffs must allege facts plausibly showing that Meta, Google, and Criteo

13 "purposefully and deliberately" acquired the communications at issue, *Christensen*, 828 F.3d at 790—

14 not merely that they were aware that third parties were sending information and failed to prevent it.  In

15 other words, plaintiffs must "set forth specific factual circumstances that make plausible [Meta's,

16 Google's, and Criteo's] intent to record a confidential communication."  *Vartanian v. VW Credit, Inc.*,

17 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012).  That requires "more than mere awareness that

18 an interception might occur due to the failure of the [developer] to follow instructions."  *Google Pixel*,

---

[3] Because of the lack of facts, including no facts that Criteo's technology was capable of or did transmit specific, private information, or any information identifying them, plaintiffs also fail to show Article III standing to sue Criteo.  *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 682 (N.D. Cal. 2021).

[4] Intent or willfulness is an express element of intrusion upon seclusion, *see Taus v. Loftus*, 40 Cal. 4th 683, 724–25 (2007) ("intrusion upon another's privacy" must be "intentional") (emphasis omitted); wiretapping and eavesdropping under sections 631 and 632 of CIPA, *see* Cal. Penal Code §§ 631(a) ("willfully"), 632(a) ("intentionally"); violation of CMIA, *see* Cal. Civ. Code § 56.36(c)(3)(A) ("knowingly or willfully . . . for the purpose of financial gain"), (c)(5) ("knowingly and willfully"); aiding and abetting GoodRx's alleged violation of CMIA, *see Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326 (1996) ("Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting."); and violation of the ICFA, *see Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *2 (N.D. Ill. July 1, 2005) (plaintiff must allege "the defendant intended that the plaintiff rely on [a deceptive act or unfair practice], or intent by the defendant to deceive, defraud, or be unfair to the plaintiff").  Although intent is not an express element of plaintiffs' California UCL or New York GBL claims, lack of intent means that plaintiffs are unable to identify any unlawful, unfair, or fraudulent practice to state a claim under these laws.  *See* Cal. Bus. & Prof. Code § 17200; N.Y. Gen. Bus. Law § 349.  And plaintiffs' unjust enrichment claim falls with the others.  *See Google Pixel*, 2024 WL 3490744, at *10.

2024 WL 3490744, at *4.  Nor is it enough for a plaintiff to allege that a defendant "is capable of preventing the inadvertent transmission of private information . . . and that its failure to do so is reflective of an intent to obtain the information."  *Id.*  Plaintiffs must instead allege facts showing that "the defendant[s] acted consciously and deliberately with the *goal* of intercepting" their protected health information.  *Christensen*, 828 F.3d at 791 (emphasis added).[5]

The complaint fails to adequately allege intent.  It recites conclusory allegations that Meta, Google, and Criteo "intentionally intercepted" plaintiffs' protected health information.  Compl. ¶ 18; *see also, e.g.*, *id.* ¶¶ 77, 85, 90.  But plaintiffs do not include any well-pleaded *facts* to support that conclusion.  Instead, they merely assert that Meta, Google, and Criteo did not do enough "to *prevent* [their] interception" of purported health information.  *Id.* ¶ 76 (emphasis added); *see also id.* ¶¶ 84–85, 89.  That is insufficient to show intent under binding Ninth Circuit and California precedent.  *See Google Pixel*, 2024 WL 3490744, at *4 (applying *Christensen*, 828 F.3d at 790); *Lozano*, 73 Cal. App. 5th at 728; *Rojas*, 20 Cal. App. 5th at 434; *Buchanan*, 26 Cal. App. 3d at 289.  Indeed, plaintiffs do not even plausibly allege that Meta, Google, or Criteo were aware of how GoodRx configured tools on its own platform.

**B.    Plaintiffs additionally fail to allege intent because Meta and Google instruct developers *not* to send protected health information.**

In *Google Pixel*, Judge Chhabria held that the plaintiffs failed to plausibly allege that Google intended to receive protected health information from hospitals where "Google warned [healthcare providers] that they must not use its source code in ways that would result in HIPAA-covered information being sent to Google."  2024 WL 3490744, at *4.  By doing so, "Google purposefully acted so as *not* to receive any personal health information."  *Id.*  And "[i]f a plaintiff alleges that the clients of a source code provider use the code contrary to the provider's instructions," Judge Chhabria concluded,

---

[5] *See also, e.g.*, *People v. Superior Ct. of Los Angeles Cnty.*, 70 Cal. 2d 123, 133 (1969) ("[I]t is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication."); *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022) (no intent under CIPA where allegations showed only that defendant "understood it was deploying recording devices that *might* happen to record a confidential communication—not that the [defendant] intended to record those communications"); *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 434 (2018) (the "mere intent to activate a tape recorder which subsequently by chance records a confidential communication is insufficient to constitute an offense" (quotation marks omitted)); *People v. Buchanan*, 26 Cal. App. 3d 274, 289 (1972) (no intent where defendant overheard conversation inadvertently).

"the plaintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions."  *Id.* at *5; *see also, e.g.*, *id.* at *4 (rejecting argument that "Google's instructions are just a ruse to mask the company's true objective"). Similarly, another court concluded based on Meta's instructions to healthcare providers that there was no "predicate CIPA violation by Meta" because the plaintiffs' allegations "indicate[d] that Meta either had no intention of receiving the data at issue or had some alternative *mens rea* not rising to the level of intentionality."  *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024).

So too here.  As in *Google Pixel*, Google "repeatedly told developers not to send personally identifiable information through use of its source code," and "for health care providers specifically, Google warned that they must not use its source code in ways that would result in HIPAA-covered information being sent to Google."  2024 WL 3490744, at *4.  Meta, like Google, also instructs developers not to send this information.  Meta's Business Tools Terms, to which every third-party developer who uses Meta's Pixel or SDK must agree, require web developers to "represent and warrant that you (and any data provider that you may use) have all of the necessary rights and permissions and a lawful basis (in compliance with all applicable laws, regulations and industry guidelines) for the disclosure and use of Business Tool Data."  RJN Ex. 3.  Further, Meta's Business Tools Terms expressly forbid web developers from sending "health" or any other "sensitive information (including any information defined as sensitive under applicable laws, regulations and applicable industry guidelines)."  *Id.*  Those policies are the antithesis of intent to receive protected health information.

To the extent Plaintiffs are attempting to allege that Meta and Google secretly intended for web and app developers to violate their policies, their factual allegations do not come close to making out such a conspiracy.  Such a theory sounds in fraud and is subject to Rule 9(b)'s higher pleading standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also Google Pixel*, 2024 WL 3490744, at *5 (similar theory "may well . . . subject[] [plaintiffs'] intent-related allegations to the heightened pleading standard of Federal Rule of Civil Procedure 9(b)"); *but see Smith v. Google, LLC*, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024).  Plaintiffs have not alleged with particularity "the who, what, when, where, and how of the misconduct charged."  *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal.

May 21, 2021) (quotation marks omitted).  Indeed, as in *Google Pixel*, plaintiffs' allegations of intent "do not even satisfy the basic Rule 8 standard" for the reasons explained above.  2024 WL 3490744, at *5.  That is fatal to plaintiffs' complaint.

Judge Chhabria recognized in his order that Judge Orrick previously adopted a lower standard for alleging intent in another case involving third parties' alleged transmission of health information to Meta.  *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023); *see also, e.g.*, *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *4 (N.D. Cal. Mar. 25, 2024) ("*Meta Tax*") (adopting Judge Orrick's analysis in case involving tax information).  Judge Orrick relied on lower court case law suggesting that an "interception may be considered intentional where a defendant is aware of the defect causing the interception but takes no remedial action."  *Doe*, 690 F. Supp. 3d at 1076 (quotation marks omitted).  But as Judge Chhabria pointed out when he acknowledged but respectfully "disagree[d]" with that analysis, it is contrary to "binding" Ninth Circuit case law holding that "intentionally" means "'purposefully and deliberately.'"  *Google Pixel*, 2024 WL 3490744, at *4–5 (quoting *Christensen*, 828 F.3d at 790).  And, in any event, plaintiffs here do not even plausibly allege awareness of GoodRx's actions.

### III.   Plaintiffs consented to Meta's, Google's, and Criteo's receipt of their data.

Plaintiffs' claims also fail for another cross-cutting reason: consent.  Consent defeats all of plaintiffs' claims.[6]  Courts, including the Ninth Circuit and this Court, routinely dismiss online-tracking claims where a website's privacy policy discloses the tracking at issue.  *See, e.g.*, *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (affirming dismissal of claims because "Facebook's data policy gives clear notice that third party partners may share data with Facebook"); *Smith*, 745 F. App'x at 8–9 (same, for "browsing data from various healthcare-related websites"); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4–5 (N.D. Cal. July 28, 2021) (dismissing claims where "terms plainly disclose that partners . . . may install tracking software to collect data concerning users' activities across websites"); *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1211–14 (N.D. Cal. 2014) (Koh, J.) (similar).  Here, plaintiffs consented to GoodRx's transmission of information about their activity

---

[6] *See, e.g.*, Cal. Penal Code §§ 631(a), 632(a) (imposing liability for wiretapping and eavesdropping "without the consent of all parties"); Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it."); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) ("[C]onsent negates an intrusion upon seclusion claim.").

Gibson, Dunn &
Crutcher LLP

on GoodRx's platform both through GoodRx's terms, which defeats plaintiffs' claims against all defendants, and through Meta's terms, which defeats their claims against Meta.

### A.    GoodRx's terms establish consent.

By "accessing or using [GoodRx's] Services," including its website and mobile app, users, including plaintiffs, agreed to GoodRx's Terms of Use and Privacy Policy.  RJN Ex. 26.  Indeed, plaintiffs rely on and incorporate GoodRx's Privacy Policy into the complaint as the basis of their claims.  *E.g.*, Compl. ¶¶ 12, 104–05, 170, 216, 335, 351; *see* RJN at 6–7.  GoodRx's Privacy Policy explicitly discloses that GoodRx may use "pixels" and "SDKs," including from "Facebook" and "Google," to share information about users' activity on GoodRx's website and app.  RJN Ex. 24.  This disclosure is repeated and explained throughout the policy.  The policy discloses, for example, that "information regarding your interactions with the Services or GoodRx advertising may be collected by us or other companies we work with," and identifies specific kinds of information that GoodRx may collect.  *Id.*  It further explains that GoodRx's "URLs, pages, screens, and content may include drug names and information and condition names and information," and discloses that "[GoodRx] and other companies may use this information to, among other things, . . . analyze trends, *track users' web page, email, and mobile application movements/activities*, help identify or gather demographic information, *and target and retarget online and mobile advertisements to you* across computers or devices you may use."  *Id.* (emphases added).  And, driving the point home, GoodRx explicitly tells users about the exact practices plaintiffs complain of here:

> We may use other companies' analytics, tracking and provided tools that receive information when you use our Services, ***including technology from Google, Facebook and others***, to help us track, segment, and analyze usage of the Services, and to help us or those companies serve more targeted advertising on the Services and across the Internet.  These tools may use technology such as cookies, tags, ***pixels, SDKs***, and similar technologies to track online activity.

*Id.* (emphases added); *see also, e.g.*, *id.* (disclosing that GoodRx "may share your information" with third parties through "advertising software tools").  These clear, explicit disclosures plainly establish users' consent for GoodRx to share their "online activity" through third-party pixels and SDKs.  *Id.*

In an attempt to avoid this unequivocal disclosure, plaintiffs point to a statement that appeared in GoodRx's Privacy Policy "[b]etween October 2017 and March 2019," which said that GoodRx

"never provide[d] advertisers or any other third parties any information that reveals a personal health condition or personal health information."  Compl. ¶ 12 (emphasis omitted); *see also id.* ¶¶ 104–05, 170.  That statement does not vitiate plaintiffs' consent.  For one thing, as explained above, plaintiffs' vague allegations that pixels and SDKs were "incorporated on the GoodRx Platform," Compl. ¶ 18, do not plausibly support an inference that GoodRx configured those tools to send any protected health information.  *See supra* 8–12.  And in any event, this statement could not vitiate consent because a "reasonable person" would not read it in isolation, but rather "fairly and in context."  *Omnicare, Inc. v. Laborers Dist. Council. Const. Ind. Pension Fund*, 575 U.S. 175, 194 (2015); *see also, e.g.*, *Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024) (assessing how a "reasonable person" would understand a term "in the context of all of Google's representations in its privacy policies").  Read fairly and in context, a reasonable person would interpret this statement against the backdrop of GoodRx's clear, explicit, and specific disclosure that it *does* use "pixels" and "SDKs" from third parties like "Facebook" and "Google" to "track online activity" and that such information could include "URLs, pages, screens, and content [that] may include drug names and information and condition names and information."  RJN Ex. 24.  Suppose, for example, that a hotel's policies provided "we do not allow pets to enter the premises," but also stated that "service animals are allowed."  There would be no question that a seeing-eye dog could enter.  So too here: a general prohibition does not erase an explicit exception.  *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("the specific governs the general").

> **B.      Meta's terms establish consent.**

Plaintiffs' claims against Meta are also barred because plaintiffs—all Facebook users—separately consented through Meta's terms.

Plaintiffs allege that, "[a]t the time [they] used the GoodRx Platform, they each maintained active social media accounts on Facebook and/or Instagram."  Compl. ¶ 130.  Meta's "relationship with [its] users . . . is governed by its Terms of Service," "to which all users must agree to create a Facebook account" and which incorporate Meta's Privacy Policy.  *Lloyd*, 2023 WL 1802415, at *1; *see also, e.g.*, *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21, 2023) ("All Facebook users must agree to its Terms of Service ('TOS') and other rules that govern access to, and use of

Facebook."). Meta's policies contain clear and broad disclosures stating that Meta may receive data reflecting users' activity on third-party websites and apps that use the Meta Business Tools. *See supra* 6. The Ninth Circuit has held, and recently reaffirmed, that "[a] reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes," and "[k]nowing authorization of the practice constitutes [p]laintiffs' consent." *Smith*, 745 F. App'x at 8–9; *see Lloyd*, 2024 WL 3325389, at *2 (similar). Because the data allegedly at issue here all reflects plaintiffs' activity on third-party platforms that use the Meta Business Tools (GoodRx's website and mobile app), it is squarely within the scope of consent.

Some courts have nevertheless declined to follow these consent principles where allegedly *sensitive* data was at issue. *See, e.g.*, *Meta Tax*, 2024 WL 1251350, at *5 (tax information); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (health information). Because plaintiffs have failed to plausibly allege that GoodRx sent protected health information, *see supra* 8–12, that supposed exception does not apply here. And, in any event, it is inconsistent with Ninth Circuit precedent. Those courts reasoned that "generalized notice" about data collection reflecting activity on third-party websites is not enough, and Meta's policies must "specifically indicate" that it will receive the precise type of data at issue in order to establish consent. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 793; *see Meta Tax*, 2024 WL 1251350, at *5. But Meta's policies explain at length that Meta "collect[s] and receive[s] information" from third parties "about a variety of [users'] information and activities on and off [Meta's] Products," including "[w]ebsites [users] visit and cookie data." *Supra* 6. And the Ninth Circuit has admonished that "[a] contractual term is not ambiguous just because it is broad." *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010); *see also Hammerling v. Google LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024). Meta broadly and expressly discloses that it receives data reflecting users' activity on third-party websites and apps; there is no requirement to list every website or app that uses those tools or list out the data those websites or apps might convey, particularly because the developers—not Meta—place and configure the tools. Indeed, when the Ninth Circuit affirmed dismissal of claims regarding Meta's receipt of "browsing data from various healthcare-related websites," *Smith*, 745 F. App'x at 8, it did not ask whether Meta's policies

"specifically indicated" that it would receive "healthcare-related" data. Instead, the Ninth Circuit pointed out that "many other kinds of [web-browsing] information are equally sensitive" and nevertheless held that "the practice complained of falls within the scope of [p]laintiffs' consent to Facebook's Terms and Policies." *Id.* at 9. So too here.

## IV.    Plaintiffs' claims also fail for numerous other reasons.

### A.    Plaintiffs fail to state a CMIA claim (claims 7 and 8).

Plaintiffs abandoned their CMIA claims against Meta, Google, and Criteo in the first round of motion-to-dismiss briefing, conceding their inadequacy, yet improperly force defendants to re-brief why these claims fail. *See supra* 4, 8 & n.2.

### 1.    Plaintiffs fail to state a claim under section 56.36 (claim 8).

Plaintiffs allege that Meta, Google, and Criteo violated subsections 56.36(c)(3)(A) and (c)(5) of CMIA by "knowingly and willfully obtain[ing] medical information from the GoodRx Platform without authorization for their own financial gain." Compl. ¶ 303.[7] No private right of action exists for this claim: only specific, listed state and local government officials may initiate "a civil action brought in the name of the people of the State of California" for recovery of "civil penalt[ies] pursuant to subdivision (c)." Cal. Civ. Code § 56.36(f)(1); *see also Regents of Univ. of Cal. v. Sup. Ct.*, 220 Cal. App. 4th 549, 567 (2013). No case has held otherwise.

Even if there were a private cause of action, plaintiffs' claim would fail because they do not allege GoodRx sent "medical information" to Meta, Google, or Criteo, as defined under the statute. "[M]edical information" is limited to information "*from* a provider of health care, health care service plan, pharmaceutical company, or contractor," Cal. Civ. Code § 56.05(j) (emphasis added), but plaintiffs allege that GoodRx collects information *from plaintiffs themselves*, not from any of those entities. *See, e.g.*, *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (dismissing CMIA claim where information came from plaintiff himself); *see also* Cal. Civ. Code § 56.06. Further, plaintiffs' browsing data here is not "medical information" because the mere fact of browsing for online coupons or information does not reveal that *plaintiffs themselves* had any particular medical condition.

---

[7] Plaintiffs' complaint cites subsections "56.36(B)(3)(A)" and "56.36(B)(5)." Compl. ¶¶ 300–01, 303, 307. Those provisions do not exist. Plaintiffs presumably mean subsections 56.36**(c)**(3)(A) and 56.36**(c)**(5), whose language matches plaintiffs' allegations. *Compare* Compl. ¶¶ 300–01, *with* Cal. Civ. Code § 56.36(c)(3)(A), (c)(5).

Gibson, Dunn &
Crutcher LLP

*A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *8 (N.D. Ill. Sept. 9, 2024) (dismissing CMIA claim based on data sent through Meta Pixel because "[a] person could very well search treatments, medical conditions, and potential providers for a partner, parent, or child," or "could also search for treatment that they ultimately do not need or are not eligible to receive"); *accord Am. Hosp. Ass'n*, 2024 WL 3075865, at *13–14 & n.7; *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.) (dismissing CMIA claim based on browsing data).[8]

### 2. Plaintiffs fail to state an aiding-and-abetting claim under sections 56.06, 56.101, and 56.10 (claim 7).

There is no "aiding and abetting" liability under CMIA, and California courts "have declined to apply common law aiding and abetting liability to statutes absent a basis for such liability in the language of the statute itself." *Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *5 (Cal. Ct. App. Aug. 10, 2017); *see also Wolfe v. City of Fremont*, 144 Cal. App. 4th 533, 552 (2006) (refusing to "recognize a civil cause of action for aiding and abetting" in the "absence of statutory authority"); *Clarke v. Horany*, 212 Cal. App. 2d 307, 311 (1963) (similar); *see also, e.g.*, *Toy v. TriWire Eng'g Sols., Inc.*, 2010 WL 3448535, at *3 (N.D. Cal. Sept. 1, 2010) (no aiding-and-abetting liability for UCL violations because the statute itself does not create such liability).

Even if CMIA provided for aiding-and-abetting liability, there can be no aiding-and-abetting liability without a primary violation. *See, e.g.*, *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 575 (2005). Plaintiffs do not and cannot plausibly allege any primary violation of CMIA by GoodRx, because they cannot allege disclosure of any "medical information" (*see supra* 19–20) or that GoodRx is a "provider of health care." *See, e.g.*, *Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021), *aff'd sub nom. Oddei v. ScanSTAT Techs., LLC*, 2022 WL 17538747 (9th Cir. Dec. 8, 2022) (website not a "provider of health care" under CMIA).

### B. Plaintiffs fail to state any consumer-fraud claim (claims 12, 13, and 14).

### 1. The California UCL claim (claim 12) fails.

***No statutory standing.*** To bring a UCL claim, plaintiffs must have "lost money or property as

---

[8] Medical information also must be "individually identifiable," meaning it "includes or contains any element of personal identifying information sufficient to allow identification of the individual." Cal. Civ. Code § 56.05(j). No facts plausibly allege Criteo's technology could or did transmit identifiers.

1   a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. Plaintiffs assert they "have a

2   property interest in their sensitive personal data" and that this data "has value." Compl. ¶¶ 356–57.

3   But as a long line of cases has held, plaintiffs' allegations about "[t]he loss of personal data" do not

4   establish a money-or-property loss under California law. *Google Pixel*, 2024 WL 3490744, at \*7 (dis-

5   missing UCL claim based on alleged interception of "health information" and collecting cases); *see*

6   *also, e.g.*, *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021) ("Several

7   courts in this Circuit have found, and we agree, that the mere misappropriation of personal information

8   does not establish compensable damages." (quotation marks omitted)); *Katz-Lacabe v. Oracle Am.,*

9   *Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023) (collecting cases and concluding "the weight of the

10  authority in the district and the state" holds disclosure of personal information is insufficient for UCL

11  standing). California state courts, too, have confirmed that any external value of personal data does

12  not establish UCL standing where plaintiffs do "not allege they ever attempted or intended to partici-

13  pate in [a market for their data], or otherwise to derive economic value from their PII." *Moore v.*

14  *Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (rejecting "lost-value-of-PII theory").[9]

15      ***Plaintiffs are not entitled to restitution or injunctive relief.*** The "remedy for a UCL violation

16  is either injunctive relief or restitution." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d

17  1119, 1135 (9th Cir. 2014). Plaintiffs are not entitled to either. "The restitutionary relief is limited to

18  money or property lost by the plaintiff *and acquired by the defendant*," and this relief is unavailable

19  "without any corresponding gain by the defendant." *Id.* (emphasis added). Here, only Jane Doe and

20  Jane Doe II allege they paid anything, and those payments were *to GoodRx*; there is no restitution

21  available from Meta, Google, or Criteo. *See* Compl. ¶¶ 25, 30. Nor can plaintiffs satisfy the require-

22  ments for injunctive relief, because they are clearly now aware of GoodRx's data-sharing practices.

23  *See Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006)

24  _____

25  [9] In *Meta Tax*, the court adopted a broad theory of UCL standing under which personal data may qualify
    as "property" and "[a]ny time a user transacts with a business or other entity and their expectations

26  regarding their personal data are not met as a result of conduct alleged to violate the UCL"—including
    when a user obtains "free services"—"they can establish UCL standing." 2024 WL 1251350, at \*24–

27  25. As the cases cited above demonstrate, that position conflicts with the weight of authority, and this
    Court should reject it. *See also, e.g.*, *Google Pixel*, 2024 WL 3490744, at \*7–8 (acknowledging "there

28  are cases that support the plaintiffs' position," but finding those cases unpersuasive and the position
    "tenuously supported"); *Doe*, 690 F. Supp. 3d at 1089–91 (collecting cases and finding no UCL stand-
    ing in case concerning hospitals' use of the Meta Pixel).

(rejecting Illinois consumer-protection claim and noting that "[i]n consumer actions, proving the likelihood of future harm is difficult because once the consumer has knowledge about the defendant's actions, it can easily protect itself in the future by avoiding the harm").

***No unlawful, unfair, or fraudulent conduct.*** Plaintiffs also fail to allege any actionable conduct under any of the UCL's three prongs. The "unlawful" theory fails because it is predicated on the same theories underlying plaintiffs' other claims, which lack merit. *See Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 896 n.5 (N.D. Cal. 2022). The "unfair" theory requires plaintiffs to satisfy either a "balancing" test (which weighs "the utility of the defendant's conduct against the gravity of the harm to the alleged victim") or a "tethering" test (which requires tying a defendant's conduct "to specific constitutional, statutory, or regulatory provisions"). *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (quotation marks omitted). Plaintiffs do not plead facts in support of either test; their allegations on this front are wholly conclusory and do not enable the court to meaningfully evaluate their claims. *See* Compl. ¶¶ 347–49. Finally, the "fraudulent" theory is subject to Rule 9(b) and requires plaintiffs to plead with particularity that they "read and relied on a specific misrepresentation." *Haskins v. Symantec Corp.*, 654 F. App'x 338, 339 (9th Cir. 2016); *see also Perkins*, 53 F. Supp. 3d at 1219–20. Plaintiffs do not identify any alleged misstatements by Meta, Google, or Criteo— let alone plead with particularity that they read and relied on any such statements. Nor do they sufficiently allege, as required for omissions-based claims, that "had the omitted information been disclosed, [they] would have been aware of it." *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023) (quotation marks omitted). Additionally, because plaintiffs' "unlawful" and "unfair" theories are also predicated on alleged deception, this requirement applies—and is fatal—to those theories, too. *See Perkins*, 53 F. Supp. 3d at 1219–20 (noting "this Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations").

## 2. The New York GBL claim (claim 13) fails.

Alternatively to the UCL claim, plaintiff E.C. asserts a New York GBL claim. That claim requires particularized allegations under Rule 9(b) that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the

1  allegedly deceptive act or practice." *Tromble v. W. Digital Corp.*, 2021 WL 2165796, at *1 (N.D. Cal.

2  May 27, 2021) (quotation marks omitted); *see In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods.*

3  *Liab. Litig.*, 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020).  Like the UCL claim, this claim fails.

4      ***No statutory standing.***  To bring this claim, plaintiff E.C. must plead a "deprivation of income

5  or actual loss," and "courts have historically dismissed complaints averring an unquantifiable injury to

6  a privacy interest." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018).  Plaintiff

7  E.C. has not pleaded any such deprivation or loss here.  *See supra* 20–21 (similar analysis for UCL

8  claim).

9      ***No materially misleading act or practice.***  Plaintiff E.C. must also plead that "the defendant's

10  material deceptive act caused the injury." *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at

11  *5 (S.D.N.Y. Aug. 5, 2010) (quotation marks omitted).  But again, plaintiff fails to allege that Meta,

12  Google, or Criteo made *any* material "misrepresentations and omissions."  *See supra* 22 (similar anal-

13  ysis for UCL claim).

14      ***No causation.***  Even if plaintiff had identified any such misrepresentations or omissions by

15  Meta, Google, or Criteo, he does not plead that those acts *caused* any injury.  *See Meta Tax*, 2024 WL

16  1251350, at *16 (dismissing GBL claim on this basis); *In re Meta Pixel Tax Filing Cases*, 2024 WL

17  3664037, at *2 (N.D. Cal. Aug. 6, 2024) (same); *supra* 22 (similar analysis for UCL claim).

18          **3.      The ICFA claim (claim 14) fails.**

19      Plaintiff John Doe's claim under the ICFA is also subject to Rule 9(b)'s heightened pleading

20  requirements. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014).  Plaintiffs

21  previously abandoned this claim, *supra* 4, 8 & n.2, and it fails for all the reasons discussed above: lack

22  of statutory standing, lack of deceptive acts by Meta, Google, or Criteo, and lack of causation.  *See*

23  *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 942 (N.D. Ill. 2023) (dismissing claim based

24  on healthcare providers' alleged disclosure of patient data to Facebook and Google and noting "privacy

25  injury" is insufficient to plead "actual damages," as the statute requires); *Guajardo v. Skechers USA,*

26  *Inc.*, 503 F. Supp. 3d 746, 755 (C.D. Ill. 2020) (plaintiff must plead "a direct statement with a material

27  omission"); *De Bouse v. Bayer AG*, 922 N.E.2d 309, 315 (Ill. 2009) (plaintiff must plead he "actually

28  saw and was deceived by the statements in question") (quotation marks omitted); *supra* 20–23 (similar

analyses under UCL and GBL).

**C.    Plaintiffs fail to state a claim under CIPA (claims 9 and 10).**

*No "confidential" communications.*    Section 632 applies only to "confidential" communications.  Cal. Penal Code § 632(a).  Communications are "confidential" only if "a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."  *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002).  And, "in California, courts have developed a presumption that Internet communications"—specifically including "browsing activity"—"do not reasonably give rise" to an expectation of confidentiality.  *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (collecting cases and holding "browsing activity" is not confidential); *see also, e.g.*, *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018) (emails not "confidential"); *People v. Nakai*, 183 Cal. App. 4th 499, 517–18 (2010) (instant messages, including photos, not confidential); *Doe v. Cedars-Sinai Health Sys.*, 2024 WL 3303516, at *4 (Cal. Super. Ct. June 5, 2024) (sustaining demurrer of CIPA claims because "IP addresses, webpages, and doctors' names are not confidential communications").  Here, there is "[n]othing about these particular internet communications" that "warrants a deviation from th[e] general rule."  *Revitch*, 2019 WL 5485330, at *3; *see also Rodriguez*, 2021 WL 2026726, at *7 (plaintiffs "must plead unique, definite circumstances" to rebut "California's presumption against online confidentiality").

Some courts have concluded the presumption is rebutted for "[c]ommunications made in the context of a patient-medical provider relationship."  *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 799; *see also Therapymatch*, 2024 WL 4219992, at *5.  As explained above, however, browsing on GoodRx's website and procuring coupons does not establish any such "patient-medical provider relationship."  *Id.*; *see supra* 9–11.  Only one of the six plaintiffs alleges she sought medical care through GoodRx's platform, and even for her, there are insufficient allegations to determine whether Meta's, Google's, or Criteo's tools were configured on webpages to send any communications made in the context of a patient-provider relationship.  *See supra* 3, 8–12.  Additionally, GoodRx's and Meta's disclosures further undercut any argument that plaintiffs' activity on GoodRx's platform was "confidential."  *See, e.g.*, *Nakai*, 183 Cal. App. 4th at 518 (pointing to disclosures in Yahoo!'s privacy policy as one reason instant messages were not "confidential").

***Out-of-state plaintiffs' communications not "sent from" or "received at" California.*** Section 631 applies only to communications that are "sent from, or received at any place within this state." Cal. Penal Code § 631(a). But four of the six plaintiffs—Jane Doe, Jane Doe II, John Doe, and E.C.— do not reside in California, and do not allege that their communications were "sent from" or "received at" California. Compl. ¶¶ 22, 28, 35, 40. Criteo "is a Delaware corporation with its principal place of business located in New York." *Id.* ¶ 86. Plaintiffs allege that Meta and Google "maintain their principal places of business in California," and assert in conclusory fashion that they "designed, contrived, agreed, conspired, effectuated, and/or received the interception and use" of plaintiffs' communications there. *Id.* ¶ 312. But that is not enough. *See, e.g.*, *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (insufficient to allege that "events and conduct giving rise to Plaintiffs' claims occurred in California," "California is the state from which Google's alleged misconduct emanated," and Google's "principal place of business is in California" (quotation marks omitted)).

In fact, all of the non-California plaintiffs' claims against Criteo under California law (the CIPA, CMIA, and UCL claims) must be dismissed to avoid violating due process. Because neither Criteo nor the non-California plaintiffs are located in California, their arguments for invoking California law (Compl. ¶ 228) cannot apply to Criteo. And the Due Process Clause prohibits application of a state law unless that state has a "significant contact or significant aggregation of contacts" with "the parties and with the occurrence or transaction giving rise to the litigation." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981). There are no such contacts for non-California plaintiffs as to Criteo.

***The "party exception" applies to Criteo.*** A *party* to a communication cannot be liable under Section 631. Where a vendor (like Criteo) is merely a tool, agent, or extension of a website (like GoodRx), the vendor is a *party* to the communications, not a third party, and there is no claim. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) (party exception applied where vendor "provide[d] a tool . . . that allow[ed] [website] to record and analyze its own data in aid of [its] business"); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3–4 (N.D. Cal. Dec. 22, 2022) (same where no facts indicated vendor used data itself). Even under a narrower view of the party exception, the plaintiff must still allege facts showing the vendor's "'capability to use its record of the interaction for [another] purpose'" than the website's. *Cody v. Ring*, 2024 WL 735667, at *6 (N.D.

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

Gibson, Dunn &
Crutcher LLP

Cal. Feb. 22, 2024).  Here, *no facts* at all allege that *Criteo* was capable of, or did, use any data for another purpose than GoodRx's (*id.*), or that it read or learned the contents of any communication (Cal. Penal Code § 631(a) (requiring that defendant intentionally read or learn contents of communication in transit)).  Compl. ¶¶ 86–90, 157–62.  Claim 9 fails as to Criteo for this reason.

>    ***Plaintiffs do not allege Criteo received any "contents."***  Under CIPA, "contents" means "the intended message conveyed by the communication" as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).  No facts plausibly allege that Criteo's technology was capable of, or configured to transmit, any specific data, or that Criteo received any *contents* rather than non-content data.  *E.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) (plaintiffs failed to adequately allege contents, as opposed to general webpage address and basic identification information); *Kis v. Cognism Inc.*, 2024 WL 3924553, at *6 (N.D. Cal. Aug. 23, 2024) (CIPA claim failed to adequately allege interception of contents).  For this reason as well, plaintiffs state no CIPA claim against Criteo.

>    **D.      Plaintiffs fail to state a privacy tort (claims 1 and 2).**

>    These claims fail because plaintiffs have not alleged "a reasonable expectation of privacy" or any "highly offensive" intrusion.  *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009).

>    ***No reasonable expectation of privacy.***  This inquiry largely parallels the "confidential" analysis under section 632 of CIPA, which asks whether an individual had "an objectively reasonable expectation" of privacy.  *Flanagan*, 27 Cal. 4th at 777.  This claim thus fails for the reasons explained above. *See supra* 24.  "Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis omitted).

>    ***No highly offensive intrusion.***  At a minimum, any intrusion into a protected privacy interest here was not "highly offensive."  That element "set[s] a high bar for an invasion of privacy claim," *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) (quotation marks omitted), and confines the tort to the sort of conduct that sparks outrage in a reasonable person.  "Courts in this district have held that data collection and disclosure to third parties that is 'routine commercial

behavior' is not a 'highly offensive' intrusion of privacy," including "[e]ven disclosure of highly per-sonal information." *Hammerling*, 615 F. Supp. 3d at 1090; *see also, e.g.*, *Hubbard*, 2024 WL 3302066, at *7–8 (concluding online tracking is "ubiquitous, commercial behavior" that is not "highly offen-sive"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("Even assuming this information was transmitted without [p]laintiffs' knowledge and consent, a fact disputed by [d]efendants, such disclosure does not constitute an egregious breach of social norms."). Plaintiffs do not allege sufficient "plus factors" here to establish highly offensive conduct, especially given that browsing for coupons does not necessarily reveal anything about a person's *own* health status. *Hub-bard*, 2024 WL 3302066, at *7 (quotation marks omitted).

**E.     Plaintiffs fail to state an unjust enrichment claim (claim 3).**

***No actionable wrong.*** Addressing the same theory in *Google Pixel*, Judge Chhabria concluded that, "because the plaintiffs have not stated a claim against Google for any unlawful conduct, they have also failed to state an unjust enrichment claim." 2024 WL 3490744, at *10. This Court should reach the same result. Moreover, even if any of plaintiffs' other claims were viable, plaintiffs have not ade-quately pleaded that Meta, Google, or Criteo acted unjustly merely by *receiving* data that GoodRx chose to send; they have not alleged any misstatements or omissions by Meta, Google, or Criteo (let alone reliance on them); and they have not adequately alleged a money-or-property interest in their data that could render any receipt "inequitable." *See Lebrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021) (unjust enrichment requires "circumstances which make it inequitable for the defendant to retain the benefit without paying for its value") (quotation marks omitted); *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1316 (1989) (no unjust enrichment unless "benefits were con-ferred by *mistake, fraud, coercion or request*" (quotation marks omitted)); *supra* 20–22.

***Barred by contract.*** Plaintiffs also cannot assert an unjust enrichment claim against Meta given their agreement to Meta's Terms of Service. Unjust enrichment claims "cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014); *see also, e.g.*, *Alatortev v. JetBlue Airways Corp.*, 2018 WL 2735355, at *6 (N.D. Cal. June 7, 2018). To the extent plaintiffs (incorrectly) claim that Meta's receipt of their data exceeded the scope of consent established by Meta's agreements, that

1    claim sounds in contract, not unjust enrichment.

2    **V.      The statutes of limitations foreclose or severely limit plaintiffs' claims.**

3              The statute of limitations are: one year for CMIA (claims 7 and 8), to the extent plaintiffs seek

4    statutory damages (which they do), and for CIPA (claims 9 and 10), barring claims prior to February

5    2, 2022; two years for intrusion upon seclusion (claims 1 and 2) and unjust enrichment (claim 3), bar-

6    ring claims prior to February 2, 2021; three years for the New York GBL (claim 13) and the ICFA

7    (claim 14), barring claims prior to February 2, 2020; and four years for the California UCL (claim 12),

8    barring claims prior to February 2, 2019.[10]  The earliest complaint was filed on February 2, 2023.  Dkt.

9    1.

10             As an initial matter, Wilson's last use of GoodRx was in 2019.  Compl. ¶ 55.  All her claims

11   but the UCL claim are barred.  And Marquez's last use was in August 2021, *id.* ¶ 47, so his CIPA and

12   CMIA claims are barred.  Moreover, the complaint does not appear to allege interception after February

13   2020.  *See id.* ¶ 64.  Plaintiffs disputed this reading of their complaint in the first round of briefing, *see*

14   Dkt. 130 at 3 n.3, but the paragraphs of the complaint they cited (¶¶ 196–99) do not allege continued

15   use of pixel or SDK tools after February 2020.  Finally, and importantly, plaintiffs' argument that

16   GoodRx's Privacy Policy does not establish consent (a key issue for every claim) leans heavily on a

17   statement that plaintiffs allege appeared in the policy "[b]etween October 2017 and March 2019."

18   Compl. ¶ 12; *see supra* 15–17.  That statement does not vitiate consent, as explained above, but even

19   if it did, it would only rescue a single claim (under the UCL) for a brief period (February and March

20   2019).

21             Seeking to avoid these limits, plaintiffs make conclusory assertions of tolling, but their boiler-

22   plate allegations are insufficient.

23             ***Discovery rule.***  To invoke the discovery rule, plaintiffs "must specifically plead facts to show

24   (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite

---

25   [10] *See Wu v. Sunrider Corp.*, 793 F. App'x 507, 510 (9th Cir. 2019) (unjust enrichment); *SpeedFit LLC*

26   *v. LifeCore Fitness, Inc.*, 2023 WL 199595, at *4 (S.D.N.Y. Jan. 17, 2023) (New York's consumer-
     protection statute); *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 624 (N.D. Cal. 2021) (intrusion upon

27   seclusion, CIPA, and UCL); *Tyler v. Bank of N.Y. Mellon*, 2020 WL 2735367, at *5 (N.D. Ill. May 26,
     2020) (Illinois's consumer-protection statute).  For CMIA, the one-year statute of limitations under

28   California Civil Code § 340(a) applies to claims for statutory damages.  *See* Cal. Civ. Code § 340(a)
     (one year for "[a]n action upon a statute for a penalty or forfeiture"); *G.H.I.I. v. MTS, Inc.*, 147 Cal.
     App. 3d 256, 277 (1983).

Gibson, Dunn &
Crutcher LLP

reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (quotation marks omitted); *Plumlee v. Pfizer, Inc.*, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014) ("burden is on the plaintiff"). Plaintiffs do not come close on either element.

As to the time and manner of discovery, plaintiffs merely allege that "[t]he earliest [they] could have known about Defendants' conduct was upon the filing of the FTC Complaint" on February 1, 2023. Compl. ¶ 205. Such "general conclusions" "that [the] plaintiff could not reasonably have made an earlier discovery[] are useless." *Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182 (1979). And plaintiffs do not identify their *actual* time or manner of discovery at all.

As to inability to discover and diligence, plaintiffs repeatedly allege they relied on statements in GoodRx's Privacy Policy dating from 2017 to 2019. *E.g.*, Compl. ¶¶ 12–14. The disclosures in GoodRx's (and Meta's) policy clearly put plaintiffs on inquiry notice by telling them about GoodRx's use of "pixels" and "SDKs" from third parties like "Facebook" and "Google." *See supra* 15–19; RJN Exs. 2, 9–16, 21–25; *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023) (CIPA claims time-barred where privacy policy stated defendant "'may use third party vendors to assist' it with the collection of visitors' personal information"). Even if plaintiffs could show those disclosures were somehow ambiguous, they were *at least* enough for inquiry notice. *See Eisenberg v. Citibank, NA*, 787 F. App'x 929, 930–31 (9th Cir. 2019). The complaint also alleges public statements dating back to 2019 that purportedly revealed Meta's and Google's "collection of sensitive health information using its tracking technology from certain mobile applications" and "granular ad targeting based on sensitive information," as well as statements by Meta in 2021 purportedly showing that "data intercepted through Meta Pixel or SDK" could be used to "target users based on 'sensitive' topics, including 'health.'" *See, e.g.*, Compl. ¶¶ 69–75, 81–84. Plaintiffs did not need to learn "the full scope of Defendants' conduct," *id.* ¶ 204, for the clock to start; the clock starts when a plaintiff "suspects or should suspect" wrongdoing, *Javier*, 649 F. Supp. 3d at 901 (quotation marks omitted). Additionally, plaintiffs allege *no facts at all* to show they acted with diligence to discover their claims.

***Fraudulent concealment.*** To plead fraudulent concealment, a plaintiff must allege under Rule 9(b)'s heightened standard that: "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the

plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (quotation marks omitted). This is a defendant-by-defendant analysis: "fraudulent concealment by one defendant" does not "toll the statute of limitations against other defendants." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995). Plaintiffs assert that *GoodRx* "misled" them and made misrepresentations, Compl. ¶¶ 207–08, but make no allegation that Meta, Google, or Criteo took any *affirmative acts* to mislead them. Plaintiffs assert that Meta, Google, and Criteo "failed to disclose" GoodRx's use of their tools. Compl. ¶ 203. That is wrong, but even if it were right, "[m]erely keeping someone in the dark is not the same as affirmatively misleading him." *Thorman v. Am. Seafoods Co.*, 421 F.3d 1090, 1095 (9th Cir. 2005). Additionally, for the same reasons that plaintiffs were on inquiry notice and failed to allege diligence under the discovery rule, *see supra* 28–29, they have not satisfied the second or third elements necessary to establish fraudulent concealment.

## CONCLUSION

The complaint should be dismissed with prejudice.

Gibson, Dunn & Crutcher LLP

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

1   DATED:  October 18, 2024         **GIBSON, DUNN & CRUTCHER LLP**

2

3                                    By: */s/ Lauren R. Goldman*
                                          Lauren R. Goldman

4

5                                    **COOLEY LLP**

6

7                                    By: */s/ Michael G. Rhodes*
                                          Michael G. Rhodes

8                                    *Attorneys for Defendant Meta Platforms, Inc.*

9

10                                   **WILLKIE FARR & GALLAGHER LLP**

11                                   By: */s/ Benedict Y. Hur*
                                          Benedict Y. Hur (SBN 224018)

12                                        Simona A. Agnolucci (SBN 246943)
                                          Eduardo E. Santacana (SBN 281668)

13                                        Tiffany Lin (SBN 321472)
                                          Yuhan Alice Chi (SBN 324072)

14

15                                   333 Bush Street, 34th Floor
                                     San Francisco, CA  94104

16                                   bhur@willkie.com
                                     sagnolucci@willkie.com

17                                   esantacana@willkie.com

18                                   tlin@willkie.com
                                     ychi@willkie.com

19                                   Telephone:  (415) 858-7400

20                                   *Attorneys for Defendant Google LLC*

21

22                                   **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

23                                   By: */s/ Tenaya Rodewald*
                                          Tenaya Rodewald, Cal. Bar No. 248563

24                                   1540 El Camino Real Suite 120
                                     Menlo Park, California 94025-4111

25                                   Telephone:      650.815.2600

26                                   Facsimile:      650.815.2601
                                     Email:          trodewald@sheppardmullin.com

27

28                                        Thomas Dillickrath (admitted *pro hac vice*)
                                     2099 Pennsylvania Avenue NW, Suite 100

Gibson, Dunn &
Crutcher LLP
                                          31

Washington, DC 20006-6801
Telephone:     (202) 747-1900
Facsimile:     (202) 747-1901
Email:         tdillickrath@sheppardmullin.com

Sarah A. K. Blitz
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:     213.620.1780
Facsimile:     213.620.1398
Email:         sblitz@sheppardmullin.com

*Attorneys for Defendant Criteo Corp.*

MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT
CASE NO. 3:23-CV-00501-AMO

Gibson, Dunn &
Crutcher LLP

1

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

2

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of

3

perjury that concurrence in the filing of this document has been obtained from all signatories.

4

5

DATED:  October 18, 2024                          **GIBSON, DUNN & CRUTCHER LLP**

6

By:  */s/ Lauren R. Goldman*

7

Lauren R. Goldman

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28