Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Additional Counsel for Plaintiffs on Signature Page*

L. Timothy Fisher (SBN 191626)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
jgavenman@bursor.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., and GOOGLE LLC.

Defendants.

Lead Case No.: 3:23-cv-00501-AMO

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Date: March 13, 2025
Time: 2:00 p.m.
Dept.: Courtroom 10 – 19th Flr.

Action Filed: February 2, 2023
Honorable Araceli Martínez-Olguín

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION ... 1

II. BACKGROUND ... 1

III. LEGAL STANDARD ... 4

IV. ARGUMENT ... 4

A. The Complaint Provides Defendants with Fair Notice ... 4

B. Defendants' Attempt to Disprove Plausible Allegations of Intent Fails ... 8

C. Plaintiffs' CIPA § 631 Claim Should Be Sustained ... 12

i. Defendants Intercepted Communications Sent From or Received in California ... 12

ii. The Party Exception Does Not Apply to Criteo ... 13

iii. Plaintiffs Have Sufficiently Alleged Criteo Intercepted "Content" ... 14

D. Plaintiffs' CIPA § 632 Claim Should Be Sustained ... 15

E. Plaintiffs' Privacy Claims Should Be Sustained ... 16

F. Plaintiffs' UCL Claim Should Be Sustained ... 17

G. Plaintiffs' GBL Claim Is Plausible ... 19

H. Plaintiffs' CMIA Claims Should Be Sustained ... 21

I. Plaintiffs' Unjust Enrichment & Restitution Claims Should Be Sustained ... 22

J. Plaintiffs' Injunctive Relief Claims Should Be Sustained ... 24

K. Defendants' Consent Defense Fails ... 24

L. Plaintiffs' Claims Are Timely ... 27

M. Criteo's Due Process Arguments Fails ... 29

CONCLUSION ... 29

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*A.B. by & Through Turner v. Google LLC*, 2024 WL 3052969 (N.D. Cal. June 18, 2024) ... 19

*A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ... 22

*Alatortev v. JetBlue Airways Corp.*, 2018 WL 2735355 (N.D. Cal. June 7, 2018) ... 24

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ... 29, 30

*Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ... 7, 22

*Anderson v. Brouwer*, 99 Cal. App. 3d 176 (Cal. Ct. App. 1979) ... 28

*Anonymous v. CVS Corporation*, 188 Misc. 2d 616 (N.Y. Sup. Ct. 2001) ... 20, 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 8

*Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ... 13

*Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860 (2007) ... 8

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ... 10, 11

*Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014) ... 25

*Belluomini v. Citigroup Inc*, 2013 WL 5645168 (N.D. Cal. Oct. 16, 2013) ... 18

*Boateng v. BMW AG*, 2024 WL 4471151 (E.D.N.Y. Oct. 11, 2024) ... 21

*Bose v. Interclick, Inc.*, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ... 20

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 25, 29

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 19, 24, 25

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 19, 23

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ........ 17, 19, 23, 25

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 25

*Castillo v. City of Watsonville*,
2020 WL 5798237 (N.D. Cal. Sept. 29, 2020) ........ 27

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ........ passim

*Castillo v. Seagate Technology, LLC*,
2016 WL 9280242 n.3 (N.D. Cal. Sept. 14, 2016) ........ 18

*Chen v. Bank of Am., N.A.*,
2019 WL 9633650 (C.D. Cal. Oct. 29, 2019) ........ 18

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018) ........ 16

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 13

*Commodity Futures Trading Comm'n v. Savage*,
611 F.2d 270 (9th Cir. 1979) ........ 10

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) ........ 20

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ........ 14, 22

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d. 956 (9th Cir. 2018) ........ 24

*Davis v. Meta Platforms, Inc.*,
2024 WL 3293644 (D. Nev. July 3, 2024) ........ 26

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (1989) ........ 23

*Doe 1 v. AOL LLC,*
719 F. Supp. 2d 1102 (N.D. Cal. 2010) .......... 4

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .......... passim

*Doe v. Cedars-Sinai Health System*,
2024 WL 3303516 (Cal. Super. June 05, 2024) .......... 16

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... passim

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... passim

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... passim

*Eisenberg v. Citibank*,
787 F. App'x 929 (9th Cir. 2019) .......... 28

*Erhart v. BofI Holding, Inc.*,
269 F. Supp. 3d 1059 (S.D. Cal. 2017) .......... 22

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 4

*ESG Cap. Partners, LP v. Stratos*,
828 F.3d 1023 (9th Cir. 2016) .......... 23

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 14

*F.B.T. Prods., LLC v. Aftermath Records*,
621 F.3d 958 (9th Cir. 2010) .......... 27

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (Cal. 2005) .......... 27

*Frasco v. Flo Health, Inc.*,
2022 WL 21794391 (N.D. Cal. June 6, 2022) .......... 5

*Frasco v. Flo Health, Inc.*,
2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) .......... 5, 10

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014) .......... 24

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... 9, 14, 26

*Glenon v. Abbott Lab'ys*,
2023 WL 6120612 (S.D. Cal. Sept. 18, 2023) .......... 23

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 14

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 15

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 12, 13, 18

*Hammerling v. Google LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 27

*Harrison v. Great HealthWorks, Inc.*,
2017 WL 2554448 (S.D. Cal. June 13, 2017) .......... 28

*Hartford Cas. Ins. Co. v. Corcino & Assocs.*,
2013 WL 5687527 (C.D. Cal. Oct. 7, 2013) .......... 21

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 17

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) .......... 17

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 17

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .......... 20

*In re Facebook, Inc.*,
2012 FTC LEXIS 135 (F.T.C. July 27, 2012) .......... 12

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......... 25, 26

*In re Facebook, Inc. Internet Tracking Litig*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re First All. Mortg. Co.*,
471 F. 3d 977 (9th Cir. 2006) .......... 22

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 26

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 18

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
497 F. Supp. 3d 552 (N.D. Cal. 2020) .......... 20

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 19

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 7

*In re Meta Pixel Healthcare Litig*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 16, 25, 26

*In re Meta Pixel Tax Filing Cases*,
2024 WL 1251350 (N.D. Cal. Mar. 25, 2024) .......... passim

*In re Meta Pixel Tax Filing Cases*,
2024 WL 3664037 (N.D. Cal. Aug. 6, 2024) .......... 21

*In re Nexus 6P Prods. Liab. Litig.*,
293 F. Supp. 3d 888 (N.D. Cal. 2018) .......... 8

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) .......... 15

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
525 F. Supp. 3d 1017 (N.D. Cal. 2021) .......... 18

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 15

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
451 F. Supp. 2d 982 (N.D. Ill. 2006) .......... 24

*Javier v. Assurance IQ, LLC,*
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 13, 14, 28

*Javier v. Assurance IQ, LLC,*
2022 WL 1744107 (9th Cir. May 31, 2022) .......... 26, 28

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 19

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 11

*Kis v. Cognism Inc.*,
2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) .......... 15, 19

*LeBrun v. CBS Television Studios, Inc.*,
68 Cal. App. 5th 199 (2021) .......... 23

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024) .......... 27

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 8

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) .......... 10

*Lugones v. Pete & Gerry's Organic, LLC*,
440 F. Supp. 3d 226 (S.D.N.Y. 2020) .......... 20

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 15, 16, 22

*Martinez v. Knight Transportation, Inc.*,
2018 WL 6308110 (E.D. Cal. Dec. 3, 2018) .......... 29

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......... 5, 17, 20

*McNair v. City and County of San Francisco*,
5 Cal. App. 5th 1154 (2016) .......... 21

*Meta Platforms, Inc. v. Nguyen*,
2023 WL 8686924 (N.D. Cal. Nov. 21, 2023) .......... 27

*Meyerson v. Prime Realty Services, LLC*,
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) .......... 20

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022) .......... 19

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) .......... 25

*Neilson v. Union Bank of California*,
290 F. Supp. 2d 1101 (C.D. Cal. 2003) .......... 22

*Nick v. Target Corp.*,
2017 WL 10442061 (E.D.N.Y. Sept. 13, 2017) .......... 20

*Nienaber v. Overlake Hosp. Med. Ctr.*,
2024 WL 2133709 (W.D. Wash. May 13, 2024) .......... 6

*Northstar Fin. Advisors Inc. v. Schwab Invs.*,
779 F.3d 1036 (9th Cir. 2015) ..... 10

*Oddei v. Optum, Inc.*,
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) ..... 22

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ..... 26

*Ovando v. Cty. of Los Angeles*,
159 Cal. App. 4th 42 (2008) ..... 27

*Pelman ex rel. Pelman v. McDonald's Corp.*,
396 F. Supp. 2d 439 (S.D.N.Y. 2005) ..... 20

*People v. Buchanan*,
26 Cal. App. 3d 274 (Ct. App. 1972) ..... 10

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) ..... 16

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ..... 18

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App'x 613 (9th Cir. 2021) ..... 19

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) ..... 4, 6, 16

*Rafton v. Rydex Series Funds*,
2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ..... 28

*Ray v. BlueHippo Funding, LLC*,
2008 WL 1995113 (N.D. Cal. May 6, 2008) ..... 22

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..... 16, 17

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 11, 16

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ..... 9

*Rutherford Holdings LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (6th Dist. 2014) ..... 24

*Shein v. Canon U.S.A., Inc.*,
2009 WL 3109721 (C.D. Cal. Sept. 22, 2009) ..... 29

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 4

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 6, 27

*Smith v. Google, LLC*,
2024 WL 2808270 (N.D. Cal. June 3, 2024) .......... passim

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .......... 14, 15, 26

*Stutman v. Chem. Bank*,
95 N.Y.2d 24 (N. Y. 2000) .......... 21

*Suarez v. California Nat. Living, Inc.*,
2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) .......... 20

*Svenson v. Google Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) .......... 18

*Thorman v. Am. Seafoods Co.*,
421 F.3d 1090 (9th Cir. 2005) .......... 29

*Tivoli LLC v. Sankey*,
2015 WL 12683801 (C.D. Cal. Feb. 3, 2015) .......... 8

*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) .......... 13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) .......... 9

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .......... 9

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .......... 11

*Vincent v. PNC Mortg., Inc.*,
2014 WL 2766116 (E.D. Cal. June 18, 2014) .......... 18

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954 (9th Cir. 2010) .......... 27

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 21

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 14

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........................................ 13

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ........................................ 18

Cal. Civ. Code § 56.05(j) ........................................ 22

Cal. Civ. Code § 56.06(b) ........................................ 7

Cal. Pen. Code § 631 ........................................ 7, 9

**OTHER AUTHORITIES**

*In re Google Inc.*,
FTC File No. 102 3136 ........................................ 11

Restatement (Second) of Torts § 876 (1979) ........................................ 21

## I. INTRODUCTION

This case follows one of the first Federal Trade Commission ("FTC") enforcement actions of its kind, in which the FTC imposed monetary penalties on GoodRx Holdings, Inc. ("GoodRx") for sharing private health data with third parties. That action confirms each of the facts alleged in this case, including the central allegation that Meta Platforms, Inc., Google, LLC, and Criteo Corp. (collectively "Defendants") intercepted private health data about GoodRx users.

The Defendants' Motion to Dismiss ("Motion" or "MTD") (ECF No. 213) relies on a series of fact-based arguments that seek to disprove what the FTC already found as a matter of fact at the pleading stage. Not only are these counterfactual contentions inconsistent with the FTC's own independent investigation, but they are improper on a Rule 12 motion. Whether Defendants acted with intent, had consent to intercept health data, and whether this health data is identifiable are all jury questions under controlling law. They are not issues that can be resolved at this juncture.

Defendants also conveniently seek to side-step liability by blaming GoodRx for the claims against them. But Defendants' self-serving victim narrative ignores that GoodRx did not and could not act alone. In fact, it would have been *impossible* for GoodRx users to have had their health data intercepted *without* the remaining Defendants. There is no denying that it was Defendants who created their own tracking technology, that it was Defendants who permitted this technology on a platform that undoubtedly involves the exchange of private health data, that it was Defendants who actually intercepted this private data, and that it was Defendants who went on to use the data for profit repeatedly. Defendants are not helpless bystanders here and cannot negate their own misconduct by pointing to GoodRx's equally bad actions.

Defendants' other arguments fare no better. For instance, their consent and statute of limitations defenses fail because their conduct was never disclosed. Plaintiffs cannot have consented to, or have had notice of claims, that Defendants successfully hid for years on end. For these reasons, and those described herein, Defendants' Motion should be denied in its entirety.

## II. BACKGROUND

The GoodRx Platform,[1] which began as a way to help consumers save on prescriptions, has always

[1] Capitalized terms have the same meaning set forth in the Consolidated Class Action Complaint. *See* ECF No. 102 ("Complaint" or "¶").

been a medical services platform. Complaint ¶¶ 1, 3. GoodRx users enter their prescription medication and select their local pharmacy on the GoodRx Platform and, in return, GoodRx provides the user with a prescription coupon for their medication. *Id.* ¶ 98. In recent years, GoodRx has expanded to also offer a direct-to-consumer telehealth service, where GoodRx users can receive medical treatment and prescriptions though GoodRx. *Id.* ¶ 99. Tens of millions of consumers use GoodRx's services. *Id.* ¶ 2.

On February 1, 2023, GoodRx entered a settlement with the Federal Trade Commission ("FTC") to resolve claims that it unlawfully shared GoodRx users' health data with third parties, including Defendants. *See* RJN, Ex. A. The FTC's investigation uncovered that Defendants' tracking technology was incorporated on the GoodRx Platform on webpages where GoodRx users input or share health information. *Id.* ¶¶ 39-40. Specifically, this technology was present when GoodRx users (1) searched for their medications to obtain prescription coupons, and (2) received telehealth services. *Id.* ¶¶ 40, 44-45. When GoodRx users used these services, Defendants intercepted GoodRx users' prescription medications and personal health conditions, as well as personal contact information and/or persistent identifiers to uniquely identify these individuals. *Id.* ¶¶ 39, 41, 44-47. For instance, with respect to Meta and Google, they not only received unique identifiers but also additional personally identifying information, such as users' name, email address, phone number, and IP address. Complaint ¶¶ 139, 154.

Plaintiffs were among the GoodRx individuals whose health information was intercepted by Defendants. Plaintiffs Jane Doe II, John Doe, E.C. Marquez, and Wilson all used the GoodRx Platform to obtain prescription coupons and each entered, at least, their private prescription information on the GoodRx Platform. *Id.* ¶¶ 29, 32 (Jane Doe II); *id.* ¶¶ 36-37 (John Doe); *id.* ¶¶ 41, 43 (E.C.); *id.* ¶¶ 47, 51 (Marquez); *id.* ¶¶ 55, 57 (Wilson). Plaintiff Jane Doe used GoodRx's telehealth service, and input her symptoms and medication history, to obtain a prescription from GoodRx for an antibiotic. *Id.* ¶¶ 23, 25. Because Defendants' tracking technology was lurking in the background when Plaintiffs used these services, Defendants intercepted this private health information. *Id.* ¶¶ 26, 33, 38, 44, 52, 58.

Unfortunately, there was no way for Plaintiffs to uncover this conduct prior to the publication of the FTC's complaint because Defendants' tracking technology is designed to be undetectable to ordinary consumers. *Id.* ¶ 168. Nor would they have any reason to suspect their health data would be shared with any third party, because they were repeatedly promised by GoodRx that this private information would

never leave its hands. *Id.* ¶¶ 104, 108-09.

The Defendants, on the other hand, were well aware that they were intercepting GoodRx users' private health data from the GoodRx Platform. Defendants are each exclusively responsible for all aspects of their own tracking technology, from its design and implementation, up through who is authorized to use it. *See id.* ¶¶ 67-77 (Meta); *id.* ¶¶ 79-85 (Google); *id.* ¶¶ 87-90 (Criteo). They each allowed GoodRx to install their technology—which was purposely built to intercept web and app activity—on the GoodRx Platform and use it to convey health information. *Id.* ¶¶ 76, 84, 89. Worse, the Complaint makes clear that all Defendants were on notice that tracking technologies intercept health data when incorporated on health-based websites and apps since *at least* February 2019. *Id.* ¶ 70 (*Wall Street Journal* article revealing Meta's tracking technology intercepted health data when incorporated in certain health-based mobile apps); *id.* ¶ 82 (*Financial Times* article revealing Google's tracking technology intercepted prescription drug names when incorporated on drugs.com, GoodRx's direct competitor). With respect to Google, recently unsealed evidence shows that *since 2017* Google's "objective" was to expand its technology's use on "Healthcare" apps and websites precisely so it could obtain this valuable data. RJN Ex. B at 263-64 (Google's "2017 Charter" stating that Google's "objective" in targeting its analytics business at "[h]ealthcare" industry was to "grow . . . overall media measurement of these customers" and to "drive new . . . revenue for Google"); *see also id*. at 267-68 (explaining the "mission" is to "provide a comprehensive understanding of the customer's entire journey and make it insightful and actionable").

This did not deter the Defendants, who continued to intercept health data from GoodRx users because it benefited them to do so. The FTC found that each Defendant either was permitted to, or did, make use of this personal health information for their "own internal business purposes" including "research and development or ad optimization purposes." RJN, Ex. A ¶ 92; *see also* Complaint, ¶ 72 (Meta acknowledging in 2021 that it allowed ad targeting based on "health" but continuing to do so); *id.* ¶¶ 134-37 (explaining Meta uses the intercepted data for personalized content delivery, advertising, and machine learning and has no way to "control . . . how [its] systems use data"); *id.* ¶¶ 184-90 (listing the ads Meta ran for GoodRx based on the intercepted health data); *id.* ¶ 82 (Google acknowledging it used prescription drug data from drugs.com for, at least, "contextual ads" despite knowing it was health data); *id.* ¶ 153 (explaining Google uses the intercepted data for ad targeting and improving its data points on users); *id.*

¶ 159 (explaining Criteo uses the intercepted data to provide targeted advertising). This conduct invades GoodRx users' privacy and violates each of the laws described herein.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint may only be dismissed if the plaintiff fails to plead sufficient facts to "state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

## IV. ARGUMENT

### A. The Complaint Provides Defendants with Fair Notice

The complaint servers a single purpose under the Federal Rules: to provide the defendant with fair notice of the claims against them. *R.C. v. Walgreen Co.*, 2024 WL 2263395, at *4 (C.D. Cal. May 9, 2024) (explaining the purpose of the complaint is to provide "fair notice"). This is true for claims evaluated under Rule 8(a), like each of those Plaintiffs assert here, or fraud claims subject to Rule 9(b). *R.C.*, 2024 WL 2263395, at *4 (explaining Rule 8(a) is to provide "notice"); *Doe 1 v. AOL LLC,* 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010) (explaining Rule 9(b) is to provide "the who, what, when, where, and how").

Plaintiffs clear this threshold with factual allegations, including those reflecting the results of the FTC investigation, that provide each Defendant with sufficient information to defend against Plaintiffs' claims. There is no mystery about what Plaintiffs allege occurred here. Consistent with the FTC's investigation, Plaintiffs allege each Defendant used their tracking technology to intercept identifiable health data, including Plaintiffs' prescribed medication, when they searched for their prescriptions or received telehealth services on the GoodRx Platform. Complaint ¶¶ 139, 154, 160. Once intercepted, each Defendant used Plaintiffs' health information for their own commercial purposes. RJN, Ex. A ¶¶ 4, 52, 92.[2] For Meta and Google, this data was incorporated into the algorithms, data sets, and used to deliver targeted ads. Complaint ¶¶ 133-35; *id.* ¶¶ 152-53. While Criteo, at a minimum, used the data to serve targeted advertisements for which it derives profit. *Id.* ¶ 159.

This common set of well-pled facts underlies each of Plaintiffs' claims and thus plausibly alleges

[2] These allegations defeat Google and Criteo's arguments that Plaintiffs do not allege health information or PII was intercepted or how the data was used. MTD at 6-7.

those causes of action. *See* Sections IV.C-J; *see also McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019) (rejecting similar argument that "downplay[ed] plaintiffs' complaint[]" because a "common-sense" reading showed the claims were "adequately allege[d]" including the "user-specific" allegations). Indeed, in another action that followed an FTC investigation identifying Meta and Google as recipients of health information intercepted by the same tracking technology at issue here, Judge Donato denied Meta and Google's motions to dismiss based on similar allegations. *Frasco v. Flo Health, Inc.*, 2022 WL 21794391, at *2 (N.D. Cal. June 6, 2022) (sustaining similar claims based on "well-pleaded factual allegations" that "sensitive health information" was shared with Meta and Google through "SDKs" and that they "used the information for research, development, marketing, and advertising purposes").

Defendants ignore these allegations, arguing that Plaintiffs' claims cannot proceed unless they can provide proof of specific details, such as the innerworkings and "features" of each Defendant's technologies, the exact pages wiretapped, or granular details about the data they intercepted. MTD at 8-10. While these are facts Plaintiffs may seek to uncover in discovery, they far exceed what is required at the pleading stage where the threshold issue is whether Plaintiffs' claims are *plausible*. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1258 (N.D. Cal. 2024) (rejecting similar argument because plaintiffs alleged they entered information on the platform "in connection with obtaining prescriptions" and that this information was intercepted through defendants' tracking technology); *id.* (rejecting argument that plaintiffs must, "in the absence of discovery" allege "how the . . . Pixels actually work" to state privacy claims, and finding allegations the plaintiff entered information "about her prescriptions" and that this was intercepted sufficient); *Smith v. Google, LLC*, 2024 WL 2808270, at *5 (N.D. Cal. June 3, 2024) (rejecting argument that a plaintiff needs to "specify exactly what information was actually transmitted"); *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 819-20 (N.D. Cal. 2023) (same). Highlighting the impropriety of Defendants' fact-based arguments here, each of these challenges mirrors an issue Google raised at ***summary judgment*** in the *Flo Health* matter. As with its motion to dismiss, Judge Donato rejected these arguments even after completing fact discovery as indisputable "question[s] of fact" for the jury. *Frasco v. Flo Health, Inc.*, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024) (explaining the parties "hotly disagree" on whether the "information" Google obtained through its SDK is "private health information" and denying summary judgment because it is a "question[] of fact [for the] jury"). If these

issues cannot be resolved at summary judgment based on a full record, they cannot be resolved on the *pleadings* as Defendants contend.

Defendants try to confuse the issues by focusing on potential "lawful" uses of their tracking technologies, *e.g.*, to collect non-health information from individuals who, for instance, may be "reading the latest health news." MTD at 9, 10. Even if such "lawful" uses exist, they are irrelevant here because Plaintiffs claims are limited to the unlawful interception and use of health data—such as prescription information needed to obtain GoodRx coupons (*see* ¶¶ 17, 32-33, 37-38, 43-44, 51-52, 57-58), or information about symptoms and medical conditions entered into GoodRx's telehealth service (¶¶ 25-26). *See R.C.*, 2024 WL 2263395, at *9 (rejecting claim that information involved "public browsing activities" because the information collected implicated "personal medical information."); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024); (rejecting argument that intercepted data was merely "browsing history of publicly available webpages" because it involved "Plaintiffs search[es] for specific prescriptions").

Defendants' attempt to equate Plaintiffs' well-pled allegations to those in *Google Pixel* or *Smith* are equally misguided. MTD at 9. These cases are facially distinguishable because neither involved a government investigation that found the defendants intercepted health data. *See* Section II, above. This is dispositive. For instance, *Google Pixel* dismissed the plaintiffs' claims because it found their allegations that Google's tracking technology "*could*" collect health information insufficient to plead that Google "*actually*" obtained any health data. *Doe I v. Google LLC,* 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024). That concern is not present here because the Complaint plausibly alleges, based on the FTC's findings, that each Defendant actually intercepted health data. *See* Section II. This case is equally unlike *Smith*, or the other authorities Defendants rely on, where claims failed because the plaintiffs did not plausibly allege that the information the defendant intercepted was "sensitive." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018); *Nienaber v. Overlake Hosp. Med. Ctr.*, 2024 WL 2133709, at *3–6 (W.D. Wash. May 13, 2024) (no allegations regarding "what information" was ever entered by plaintiffs).[3]

[3] Defendants' reliance on *Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865, at *13–14 (N.D. Tex. June 20, 2024) is even more misplaced because that decision merely concerned HHS's authority to amend HIPAA. So too is their reliance on *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 655 (N.D. Cal. 2024),

Here, by contrast, the claims relate to information about Plaintiffs' medical conditions, symptoms, and prescriptions, all of which are unquestionably sensitive health data. *Regents of Univ. of Cal.*, 672 F. Supp. 3d 813 (explaining "[p]ersonal medical information" is "among the most sensitive information . . . collected about a person.").

Defendants' related argument that the information they intercepted is only actionable if Plaintiffs can show that they entered it "in the context of a patient-provider relationship" attempts to invent a new legal requirement that must be rejected. MTD at 9. None of Plaintiffs' claims apply only in the context of a doctor-patient relationship.[4] ¶¶ 231, 248, 269, 300-01, 310, 322, 346-350, 364, 369-70. CIPA does not only protect "patient-provider" communications from wiretapping. Cal. Pen. Code § 631 (protecting "content" of "communication[s]"); *id.* (protecting "confidential communications"); *see also Castillo,* 2024 WL 4785136, at *14 (explaining "[w]hether HIPAA protects Plaintiffs data" does "not" have any bearing on "whether Plaintiffs' data constitute 'contents' of a communication.").[5] Nor does intrusion upon seclusion apply only in this context. *See Facebook Tracking*, 956 F.3d at 601 (explaining invasion of privacy protects information "expect[ed]" to remain private, including full string URLs). Even the CMIA, which applies to "providers of healthcare," defines them to include "mobile application[s]" like GoodRx that are designed to "maintain medical information in order to make the information available to an individual", not just doctors. Cal. Civ. Code § 56.06(b). There is no support for this argument.

Criteo's attempt to distinguish itself by claiming the allegations against it are "conclusory" is meritless. MTD at 11. The same facts and same FTC investigation—which *specifically names Criteo* (RJN Ex. A ¶¶ 4, 47, 52, 84; Complaint ¶¶ 157-62)—underly Plaintiffs' claims against all Defendants. *See*

---

as that decision expressly recognized that the fact that a webpage is "publicly available" could not defeat the plaintiffs invasion of privacy claims based on the interception of their health information communicated through those pages. *Id.* That plaintiffs there were "communicating with their healthcare providers" (MTD at 10) was just one factor the court considered, it did not hold *only* healthcare provider communications are private. *In re Meta Healthcare Pixel Litig*, 713 F. Supp. 3d at 655.

[4] Defendants' reliance on *Google Pixel* to support this proposition is misplaced as none of plaintiff's claims were dismissed for failure to allege the communications were in the context of a "patient-provider relationship." *See* 2024 WL 3490744, at *1.

[5] While *Castillo* dismissed the plaintiffs' invasion of privacy claims, those claims were brought under Washington law which, unlike California, requires "publication" of the alleged private data to state a claim. *Id.* at *14.

Section II, above. The fact that each Defendant is independently alleged to have intercepted Plaintiffs health data from GoodRx distinguishes this from "group pleading" cases like *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 907-08 (N.D. Cal. 2018), where plaintiff made general, group allegations against two defendants who took different actions from one another. *Id.* (explaining group pleading was improper because one defendant was the manufacturer, whereas the other was the software developer).[6] Likewise, the facts above distinguish this case from the threadbare pleadings in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), where plaintiffs merely recited of the elements of a claim without any substance.[7]

Lastly, Criteo cannot escape liability by arguing that Plaintiffs are simply blaming it for GoodRx's misconduct (MTD at 11) when the claims alleged clearly turn on its *own* actions. ¶¶ 114-16 (alleging "Criteo" intercepted "persistent identifiers" and data that "conveyed health information" including drug names); ¶ 160 (alleging Criteo intercepted "health information, including what GoodRx Coupons they accessed or used"); RJN Ex. A ¶ 38 (explaining "Criteo" received "prescription medications or personal health conditions . . . along with user's personal contact information and/or persistent identifiers" since "at least 2017). This case is nothing like *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (2007), where the plaintiff brought a claim against bystanders for aiding and abetting a battery they played no part in. Criteo is not a bystander; it is the actual entity who intercepted GoodRx users' health data without consent and used that data to improve its bottom line. Its separate claim-specific arguments fail for the reasons described in Sections C-J.

**B. Defendants' Attempt to Disprove Plausible Allegations of Intent Fails**

Under controlling Ninth Circuit law, Plaintiffs plausibly allege intent by pleading that each Defendant "consciously and deliberately" intercepted their information from the GoodRx Platform, as opposed to obtaining it by "accident or mistake." *United States v. Christensen*, 828 F.3d 763, 790 (9th

[6] The use of "Defendants" as a defined term is proper. *Tivoli LLC v. Sankey*, 2015 WL 12683801, at *3 (C.D. Cal. Feb. 3, 2015) (rejecting argument that use of "Defendants" as a "defined term" rendered the pleading implausible because it still provided "fair notice").

[7] Criteo's argument that Plaintiffs lack standing ignores Plaintiffs allegations that it intercepted their private, identifiable health data. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599 (9th Cir. 2020). The cases it cites lacked these types of specific allegations. MTD at 12 n.3 (citing *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (no specification of what information was collected); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 682 (N.D. Cal. 2021) (same)).

Cir. 2015).[8] As in *Christensen*, the Defendants each created, designed, and permitted GoodRx to deploy their respective tracking technologies to intercept private communications from the GoodRx Platform and users, like Plaintiffs. ¶¶ 68, 79, 87. Not surprisingly, once deployed on the GoodRx Platform, the FTC found that each Defendant did in fact intercept Plaintiffs' and Class members' health information. RJN, Ex. A ¶¶ 38-39. Because this was neither an accident nor a mistake and, rather, the intended result of their tracking technology, intent is plausibly alleged. *See Gershzon*, 2023 WL 5420234, at *11 (accepting similar allegations as "non-conclusory" and finding whether Meta "in fact" acted with "intent" is a "question of fact to be resolved on a factual record").

Defendants' mischaracterization of the Complaint does not change the plausibility of these allegations. Contrary to their assertion, Plaintiffs do not merely allege Defendants did not "do enough" to "prevent" unknown interceptions of private communications. MTD at 13. Plaintiffs allege Defendants ***were the entities*** who provided the software, performed the interception, and refused to stop ***even after*** they became aware that the types of data they were intercepting included health information. ¶¶ 68, 71-74, 79-82, 87. This is more than sufficient under *Christensen* and its progeny, including at least one of the cases Defendants rely on. *See* 828 F.3d at 790 (rejecting argument that intent requires "evil purpose" or knowledge that the interception was "unlawful"); *Rojas v. HSBC Card Servs. Inc.*, 20 Cal. App. 5th 427, 434 (2018) (finding "intent" satisfied because defendant "knew that it was recording . . . calls" regardless of whether the defendant knew what was intercepted was "personal"). If the law required more, as Defendants suggest, every defendant could simply escape liability by claiming (as the *Christiansen* defendant tried) that while they may have designed technology to wiretap people, they never intended for it to be misused. 828 F.3d at 790.[9] The Ninth Circuit's rejection of this argument in *Christensen* forecloses

---

[8] Intent is not a requirement for CIPA § 631 claims premised on the "read[ing]" or "use" of intercepted data. *See Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11 (N.D. Cal. Aug. 22, 2023) (explaining intent only applies to the first "wiretapping" prong of section 631(a) and no other prongs). And it is not a requirement for Plaintiffs' unjust enrichment, UCL, and GBL claims.

[9] The other cases they rely on involve different context not applicable here. MTD at 12-13 (citing *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (intent inadequately pled because only "specific facts" alleged were the "dates of the phone calls" made to defendant); *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022) (no evidence of *who* did the recording and thus no evidence of whether they had acted with intent); *People v. Buchanan*, 26 Cal. App. 3d 274, 289 (Ct.

Defendants' variation of the same theme here.

Google and Meta's attempt to disprove intent by pointing to their own self-serving policies must also be rejected. MTD at 14. Intent presents a quintessential fact question that cannot be resolved on a Rule 12 motion. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1065 (9th Cir. 2015) (confirming questions of "intent" are "factual" and "often not appropriate for resolution via motion to dismiss"); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 283 (9th Cir. 1979) (same)). It is for this reason that nearly all courts asked to rule on intent at the pleading stage based on statements made in public policies or developer agreements—like Meta and Google offer here—have rejected this argument. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (rejecting same argument because it turns "on disputed questions of fact that need development on a full evidentiary record"); *In re Meta Pixel Tax Filing Cases*, 2024 WL 1251350, at *4 (N.D. Cal. Mar. 25, 2024) (same); *Smith*, 2024 WL 2808270, at *5 (same); *see also Frasco*, 2024 WL 4280933, at *1 (holding on summary judgment that whether Google "adhered to its own . . . policies" is a "question[] of fact a jury will need to decide."). Defendants' argument here is even weaker, as they misleadingly rely on recent policies from 2023 and 2024—years after they began intercepting health data—which cannot under any circumstances constitute evidence of Defendants' intent at that time. *See* MTD at 5 (citing Def. RJN, Ex. 3 (2023), Ex. A (2023), Ex. C (2024), Ex. D (2024), Ex. F (2024), Ex. G (2024). The two documents Meta and Google cite from 2016 and 2019 are irrelevant as they say nothing about health data at all. *See* MTD at 5 (citing Def. RJN, Ex. B (2019) & E (2016)).

Ignoring the weight of these authorities, Google and Meta rely heavily on two outlier decisions that, respectfully, incorrectly resolve factual disputes regarding intent on the pleadings. *See* MTD at 13-14 (citing *Google Pixel*, 2024 WL 3490744, at *4 and *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024)). These cases—which credited Google and Meta's self-serving policy statements—are contrary to the controlling law in this Circuit, above. They are also factually distinguishable because, in both cases, plaintiffs' allegations were internally inconsistent: claiming on the one hand that Meta and/or Google intended to intercept health data while simultaneously alleging, on the

---

App. 1972) (affirming denial of suppression motion because actual evidence established conduct was inadvertent)).

other, that they actively told developers they did not want it. *Google Pixel*, 2024 WL 3490744, at *4 (explaining the complaint "stand[s] for the proposition" that Google did not "want" private health information); *B.K.*, 2024 WL 1343305, at *7 (explaining the complaint "repeatedly mention[ed]" that Meta did not want health data). There is no such inconsistency here. Separately, Plaintiffs in this action allege facts showing that Defendants *had actual knowledge* their technology intercepted health data but that they continued to do so anyway. *See* Section II, above. Neither case Defendants rely on did the same.

Lastly, Meta and Google argue that the suggestion they do not act in accordance with their own policies transforms this case into a "conspiracy" or "fraud" case subject to Rule 9(b). MTD at 14. Wrong. None of Plaintiffs' allegations or claims implicate Rule 9(b). *See Smith*, 2024 WL 2808270, at *5 (explaining plaintiffs' claims do not sound in fraud simply because they allege Google "misrepresented its true intent" because "[t]hat is not how Rule 9(b) works" and plaintiff's actual claims do not "sound in fraud."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (reversing decision applying Rule 9(b) where fraud was "not an essential element" of any claim).[10] And there is nothing conspiratorial about alleging that Google and Meta do not act consistent with their stated practices when that has been proven time and time again by multiple government regulators. *See United States v. Facebook Inc.*, No. 1:19-cv-2184 (D.D.C. July 24, 2019), ECF No. 1 ¶ 12 (DOJ alleging "Facebook's enforcement of its policies, terms, and conditions, however, was inadequate and was influenced by the financial benefit that violator third-party app developers provided to Facebook."); *id.* ¶ 4 (alleging Meta promised to honor users' privacy choices but did not do so); *United States v. Google Inc.*, No. 3:12-cv-04177 (N.D. Cal. Aug. 8, 2012), ECF No. 1 (FTC alleging Google represented it would not place cookies on browsers but did so anyway); *In re Google Inc.*, FTC File No. 102 3136, No. C-4336 (F.T.C. Oct. 13, 2011) (FTC alleging Google stated it would not use data for certain purposes but did so anyway); *In re Facebook, Inc.*, No. C-4365, 2012 FTC LEXIS 135 (F.T.C. July 27, 2012) (FTC alleging Meta gave

[10] None of the cases cited by Meta or Google support the notion that Rule 9(b) applies here. MTD at 14-15 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009) (explaining Rule 9(b) applies to consumer fraud claims); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (applying Rule 9(b) because liability relied on fraud theory); *Google Pixel*, 2024 WL 3490744, at *5 (suggesting Rule 9(b) may apply to plaintiffs' argument to the extent they argue consent was procured through fraud).

unrestricted access to profile information after stating it would not do so). This is precisely why Meta and Google's attempt to resolve intent by having this Court draw factual inferences in their favor at this stage of the litigation must be rejected.

### C. Plaintiffs' CIPA § 631 Claim Should Be Sustained

CIPA § 631(a) is violated when any person (1) commits a wiretap; (2) "willfully . . . attempts to read, or to learn the contents or meaning of any . . . communication" or (3) "uses, or attempts to use . . . any information so obtained", or (4) "aids, agrees with, employs, or conspires" to do any of the above. CIPA § 631(a). Apart from Defendants' consent and intent arguments, addressed in Sections IV.B, K, Defendants only challenges concern whether (1) communications were "sent from" or "received" in California (MTD at 25); (2) Criteo received "content[]" (*id.* at 26); and (3) Criteo can rely on a "party-exception" to CIPA. *Id.* at 25-26. Each of these arguments fail.[11]

#### i. Defendants Intercepted Communications Sent From or Received in California

Plaintiffs plausibly allege the communications at issue are "sent from" and "received" within California because they allege (1) Meta and Google are headquartered in California, which is where they receive and use the intercepted communications (¶ 312) and (2) Defendants designed and agreed to incorporate their tracking technology on the GoodRx Platform with GoodRx, who is also based in California. ¶¶ 60, 312. Nothing more is required. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1080 (N.D. Cal. 2023) (finding allegations that defendants are "headquartered in California" and they "designed and effectuated [their] scheme to track the patient communications at issue here from California" sufficient to meet this requirement); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1260 (N.D. Cal. 2024) (similar). At a minimum Plaintiffs Marquez and Wilson, as California residents, have plausibly alleged Defendants intercepted their communications within the state. ¶¶ 46, 54.

This case is unlike *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022). *See* MTD at 25. There, the complaint contained only boilerplate allegations stating that Google's "principal place of business" was in California and that a "substantial part of the events" occurred in that state. *Id.* These are not comparable to Plaintiffs' specific factual allegation here. Even *Hammerling* recognized this by acknowledging allegations that the data is "collected, stored, and used" in California

[11] Accordingly, Defendants concede any other basis for dismissal.

may be sufficient to plead interception in California, but distinguished the case before it on the grounds that these "allegations [were] nowhere" in that "complaint." *Id.*

### ii. The Party Exception Does Not Apply to Criteo

Criteo's argument that it is immune from § 631 liability because it is a party to the communication is factually and legally incorrect. MTD at 25. Although there is no such exception in the CIPA statute, the majority of courts within this Circuit that do recognize one have held it does not apply where the intercepting party has the "*capability* to use" the intercepted communication "for any other purpose" *See Javier v. Assurance IQ, LLC,* 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023) (emphasis added); *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024) (following *Javier* and recognizing "a growing number of district courts [] have reached the same conclusion"); *Augustine v. Great Wolf Resorts, Inc.*, 2024 WL 3450967, at *8 (S.D. Cal. July 18, 2024) (same).

Here, Plaintiffs allege that Criteo had the ability to use the data it intercepted for its own purposes. *See* ¶¶ 193-95 (alleging Defendants, including Criteo, "use and profit from the information [they intercepted] for their own business purposes"); ¶ 316 (alleging Criteo "used or attempted to use" the information it intercepted including to "supply analytics and advertising services"); ¶ 331 (alleging Criteo "collected, viewed, accessed, [and] stored" Plaintiffs' sensitive data). The FTC confirmed the same. RJN, Ex. A ¶ 92 (stating "Criteo . . [was] permitted to, or did. . . use [the] information for [its] own internal business purposes"). These factual allegations, as confirmed by the FTC, defeat the party exception. *See Javier*, 649 F. Supp. 3d at 900; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) (rejecting party-exception defense because the "captur[ing], stor[age], and intercept[tion]" of data in "real-time" extends "beyond the ordinary function of a tape recorder.").[12]

The same is true even if this Court were to follow the minority approach articulated in *Noom* and *Williams*, which require allegations that the defendant used the intercepted data. MTD at 25 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3–4 (N.D. Cal. Dec. 22, 2022)). While the reasoning in these cases are

[12] Criteo's reliance on *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024) is misplaced because plaintiffs there did not allege the defendant had the "capability" to use the chat data but alleged vaguely that its parent company could.

inconsistent with CIPA's plain language (*Javier*, 649 F. Supp. 3d 891 (rejecting *Noom* for this reason), Criteo is not a "party" under *Noom* because Plaintiffs allege Criteo did, in fact, use the data for its own benefit. ¶ 159; *see also Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *5 (S.D. Cal. Feb. 12, 2024) (holding that plaintiffs' allegations that the defendant "exploits and monetizes" the data sufficient to overcome exception).

**iii. Plaintiffs Have Sufficiently Alleged Criteo Intercepted "Content"**

Criteo's assertion that Plaintiffs do not allege the data shared or intercepted was "content" under § 631 (MTD at 26) directly contradicts the Ninth Circuit's decision in *Facebook Tracking*, which expressly held that "content" includes users "search[es]" and "input[s]" because they "could divulge a user's . . . queries[] and habits on third-party websites." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020). Plaintiffs sufficiently plead the "content" requirement by alleging that Criteo intercepted users' "health information," including "what GoodRx Coupons they accessed or used." ¶¶ 160-61; *see also Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1261 (N.D. Cal. 2024) (finding information "submitted" on an app "in connection with securing prescriptions" are "contents"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 976 (S.D. Cal. 2023) (finding "personal search queries—such as specialty healthcare providers and treatments for medical conditions" are content); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077 (N.D. Cal. 2023) (finding detailed URLS that include the user "query" are "contents"); *Gershzon*, 2023 WL 5420234, at *13 (same); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *4 (N.D. Cal. Oct. 1, 2024) (same) (citing similar cases). In fact, just yesterday another court expressly held that the interception of "search[es] for specific prescriptions" through pixel technology—like here—constitutes "contents" of a "communication." *See Castillo*, 2024 WL 4785136, at *5. This Court should do the same.

Criteo's reliance on *In re Zynga Priv. Litig.* is a red herring because the data there was non-descript record information consisting of only the user's "Facebook ID" and the address of the webpage they previously viewed.[13] MTD at 26 (citing *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).

[13] Criteo's other cases suffer from the same flaw. *See* MTD at 26 (citing *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) (data revealing time and frequency of app usage); *Kis v. Cognism Inc.*, No. 22-CV-05322-AMO, 2024 WL 3924553, at *6 (N.D. Cal. Aug. 23, 2024) (finding "email signature blocks" are not "contents").

The *Zynga* court expressly distinguished the facts of that case from those at issue in *In re Pharmatrak*, where the intercepted communications revealed "medical information" and therefore constituted "contents." *In re Zynga Priv. Litig.*, 750 F.3d at 1107 (citing *In re Pharmatrak, Inc.*, 329 F.3d 9, 18–19 (1st Cir. 2003) (explaining the "First Circuit correctly concluded" the information in *Pharmatrak* was "contents"). Here, like in *Pharmatrak*, the information intercepted by Criteo reveals medical information and therefore constitutes content. *Id.*

**D. Plaintiffs' CIPA § 632 Claim Should Be Sustained**

CIPA § 632 prohibits any person from "intentionally" and "without the consent of all parties" to use a "recording device" to "eavesdrop" or "record [a] confidential communication." CIPA § 632(a). Defendants only challenge that they did not intercept "confidential" communications and therefore have conceded all other grounds of objection. MTD at 24.

A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto[.]" CIPA § 632(c). Personal medical information "is understood to be among the most sensitive information that could be collected about a person." *Doe v. Regents of Univ. of Cal.*, 2023 WL 3316766, *6 (N.D. Cal. May 8, 2023). Consistent with this understanding, courts have unequivocally held that medical information, like the data alleged here, satisfies the "confidential[ity]" requirement of CIPA § 632. *See, e.g., Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1261 (N.D. Cal. 2024) (finding data on telehealth platform relating to "securing prescriptions and birth control products" is "confidential"); *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (finding "information about [plaintiff's] mental health concerns and therapist preferences" entered on a telehealth platform as "confidential"); *St. Aubin*, 2024 WL 4369675, at *12 (citing cases) (explaining "medical information" is "confidential").

Defendants cannot subvert the application of CIPA by claiming there is a "presumption" that "browsing activity" is not confidential. MTD at 24. At the outset, there is no such presumption. *Smith*, 2024 WL 2808270, at *5 (explaining the "scattering of state and federal cases" evaluate confidentiality on a "case-by-case basis" and that there is no "presum[ption] under "California law" that "online communication[s]" are not confidential."). But even if there was, it would be rebutted here because the

data at issue is private health information. *See R.C.*, 2024 WL 2263395, at *9 (distinguishing cases concerning "public browsing activities" because data that "reveal[s] personal medical information . . . differ[s] in kind and severity."). It is unsurprising that almost every case Defendants cite for this supposed presumption all involve more innocuous types of data. *See* MTD at 24 (citing *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (data concerned "items of clothing on a retail website"); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (involving "email communications" that "can easily be shared by . . . the recipient(s) of the communications"); *People v. Nakai*, 183 Cal. App. 4th 499, 517–18 (2010) (involving instant messages); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *3 (N.D. Cal. May 21, 2021) (involving general "interactions with apps")).And *Doe v. Cedars-Sinai Health System*, 2024 WL 3303516, at *4 (Cal. Super. June 05, 2024), the only one which arguably involved health information, is distinguishable because, there, plaintiff accused a website *owner* of violating CIPA by recording their interactions with that website. *Id.* This is unlike Defendants interception of Plaintiffs' medical information from the GoodRx Platform here. *Id* (explaining that, unlike Defendants, the "website owner" would be expected to know users' interactions with its own website).

Defendants' separate claim that this "presumption" is only rebutted by evidence of a "patient-medical provider relationship" is equally unsupported. *See* MTD at 24. As explained in Section IV.A above, this is not a requirement for any of Plaintiffs' claims. And neither *Meta Pixel* nor *Therapymatch* support this broad proposition. *See M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (collecting cases confirming in "recent years, courts in this district . . . recognize" an "expectation of privacy" for "certain internet communications" outside patient-provider context); *Meta Pixel*, 647 F. Supp. 3d at 799 (merely stating "patient-medical provider" communications are "distinguishable" from communications in *Revitch* concerning "clothing").[14]

**E. Plaintiffs' Privacy Claims Should Be Sustained**

In analyzing whether a plaintiff has sufficiently pled a common intrusion upon seclusion, courts evaluate whether: "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *Facebook Tracking*, 956 F.3d at 601 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 287

[14] To the extent that Meta argues GoodRx's and its own disclosures render the communications not confidential, this is addressed in Section IV.K.

(2009)). Both issues present "mixed questions of law and fact." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994). Both requirements are satisfied here.

***Expectation of Privacy.*** There can be no doubt that individuals have a reasonable expectation of privacy in their own health data. *See* Section II; *see also Regents of Univ. of Cal.*, 672 F. Supp. 3d 813 ("[p]ersonal medical information is understood to be among the most sensitive information that could be collected about a person."). *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) is irrelevant to this analysis. There, plaintiffs attempted to assert an expectation of privacy in *all* browsing data, regardless of the type of data collected or website visited. *Id*. This is nothing like the surreptitious interception of *health* data from the GoodRx Platform by Defendants in this case. *Id.* (explaining case did not involve any "secret" data collection).

***Highly Offensive.*** Nor is there any question that the interception of medical information without consent is highly offensive. *See Regents of Univ. of Cal.*, 672 F. Supp. 3d 813 (finding transmittal of medical data though Meta Pixel is highly offensive because "medical information" is "the most sensitive information . . . about a person"); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1257 (N.D. Cal. 2024) (finding "capturing of healthcare information" sufficient for this element). This is especially true as Defendants engaged in this conduct surreptitiously, in a manner users could not detect, and in violation of GoodRx's own promises.[15] *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021) (surreptitious collection of data in contravention of representations to users is highly offensive). The cases Defendants rely on do not involve the collection of health data and have no relevance to whether this type of conduct is offensive. MTD at 26-27 (citing *Hammerling*, 2022 WL 17365255, at *8-9 (data revealing the length of time and frequency on mobile apps); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (geolocation data); *Belluomini v. Citigroup Inc*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013) (contact information).

**F. Plaintiffs' UCL Claim Should Be Sustained**

The UCL imposes liability for unlawful, unfair, or fraudulent business practices. Cal. Bus. & Prof.

[15] Defendants' claim that Plaintiffs must allege "plus factors" (MTD at 27) lacks legal support. *See McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1036 (N.D. Cal. 2019) (explaining "plus" factors are not a "requirement"). But in any event, they meet this requirement because GoodRx's data sharing practices were misrepresented. *Id.*

Code § 17200. Here, Defendants' conduct is "unlawful" because it violates each of the statutes and laws alleged in the Complaint. *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1047 (N.D. Cal. 2021) (sustaining UCL unlawful claim based on violations of HIPAA and other laws). Separately, their conduct is "unfair" under the "tethering" test because it violates California's public policy of protecting fundamental privacy rights, including protecting against the unlawful collection and misuse of data without consent, and is otherwise unethical and injurious to consumers. *See Svenson v. Google Inc.*, 2015 WL 1503429, at *9 (N.D. Cal. Apr. 1, 2015) (holding the misuse of plaintiffs' data violates the UCL unfair prong); *Meta Pixel Tax Filing*, 2024 WL 1251350, at *25 (same). It is also unfair under the "balancing test" because the gravity of this harm outweighs any utility because there is no corresponding benefit to consumers whatsoever. *See Chen v. Bank of Am., N.A.*, 2019 WL 9633650, at *5 (C.D. Cal. Oct. 29, 2019) (balancing test satisfied where benefits are "de minimis or nonexistent"); *Vincent v. PNC Mortg., Inc.*, 2014 WL 2766116, at *8-9 (E.D. Cal. June 18, 2014) (same). None of Defendants' arguments, below, support dismissal of these claims.

***Rule 9(b).*** Defendants' argument that all three prongs of Plaintiffs' UCL claims are subject to Rule 9(b) is wrong because Plaintiffs' unfair or unlawful claims do not sound in fraud. *See Castillo v. Seagate Technology, LLC*, 2016 WL 9280242, at *6 n.3 (N.D. Cal. Sept. 14, 2016) (explaining unlawful and unfair claims trigger "the ordinary pleading requirements of Rule 8"). Defendants' own authority recognizes that it is only when the unlawful and unfair claims are premised on a "misrepresentation" that they trigger rule 9(b). MTD at 22 (citing *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219-20 (N.D. Cal. 2014)). Because that is not true here, Rule 9(b) does not apply. Regardless, this would be satisfied because the Complaint's allegation describe the who, what, where, when and, why of the alleged violations of each Defendant. *See* Section II, above.

***Statutory Standing.*** Plaintiffs have UCL standing because the "loss of their personal information" constitutes economic injury. *See Calhoun*, 526 F. Supp. 3d at 636 ([T]he Ninth Circuit and a number of district courts. . . have concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and had standing."); *Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (same); *Meta Pixel Tax Filing*, 2024 WL 1251350, at *24 (same); *Kis v. Cognism Inc.*, 2024 WL 3924553, at *7 (N.D. Cal. Aug. 23, 2024) (same) (citing cases)); *In re Marriott Int'l, Inc., Cust. Data*

*Sec. Breach Litig.*, 440 F. Supp. 3d 447, 461 (D. Md. 2020) ("[T]he growing trend across courts that have considered this issue is to recognize the lost property value of this information.").[16] While Defendants cite three cases purportedly rejecting this proposition (MTD at 21 (citing *Google Pixel*, 2024 WL 3490744, at *7, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1089–91, and *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023)), they provide no convincing reason why this Court should do so at this early stage when the FTC has already found the data was used to turn a "profit from the information" by using it for "business purposes" including "target[ting] users with health-related advertisements." (RJN Ex. A ¶¶ 4, 84; *see also* ¶¶ 134, 153, 159, 178-91). Discovery will only further confirm this data has objective value sufficient to constitute money or property.[17] *See A.B. by & Through Turner v. Google LLC*, 2024 WL 3052969, at *6 (N.D. Cal. June 18, 2024) (recognizing "split of authority" and lack of "binding Ninth Circuit precedent" and following "rationale" of *Calhoun*); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 942 (N.D. Cal. 2023) (denying summary judgment on UCL claim based on record evidence establishing value of the data).

### G. Plaintiffs' GBL Claim Is Plausible

To establish a claim under GBL § 349, a plaintiff must plausibly allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. California Nat. Living, Inc.*, 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019). Here, there is no doubt that the secret disclosure and interception of Plaintiff E.C.'s health data from a consumer-facing platform is "directed at consumers" (e.g., its used by millions of individuals) or that the secret collection and use of private heath data without authorization is "deceptive" and harmful. *See Anonymous v. CVS Corporation*, 188 Misc. 2d 616, 624-25 (N.Y. Sup. Ct. 2001) (surreptitious resale of "prescription information" without providing "notice" is deceptive conduct); *Nick v. Target Corp.*, 2017 WL 10442061, at *4 (E.D.N.Y. Sept. 13, 2017) (finding use of data for an

[16] Jane Doe and Jane Doe II separately have statutory standing because they paid money to use the GoodRx Platform and would not have had they been aware of Defendants' conduct. ¶¶ 25, 30.

[17] The two other cases Defendants cite are distinguishable as they were *data breach* cases, not cases where Defendants actively seek out and monetize the collected data. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021) (alleging "diminution in value" of personal information because of a data breach); *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 525 (2022) (same and distinguishing cases where data is "voluntarily disclosed" or "misused").

undisclosed purpose deceptive under GBL).

***Rule 9(b).*** Defendants' contention (MTD at 22-23) that Plaintiff E.C.'s § 349 claim is subject to Rule 9(b) is wrong. *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 996 (N.D. Cal. 2016) (explaining § 349 claim is subject to "bare-bones notice-pleading" of Rule 8(a)); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 239-40 (S.D.N.Y. 2020) (same); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 444-46 (S.D.N.Y. 2005) (same). While Defendants have identified one outlier decision applying Rule 9(b) to GBL claims (*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020)), that decision is clearly a minority position that this Court should not adopt. But in any event, even if Rule 9(b) applies, Plaintiff E.C. pleads his claim in conformity with Rule 9(b). *See* Section II.

***Statutory Standing.*** Plaintiff E.C. has statutory standing because the surreptitious collection of his medical information is a privacy violation and, therefore, a compensable harm under GBL § 349. *See Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005) ("[I]t cannot be doubted that a privacy invasion claim … may be stated under GBL § 349); *Bose v. Interclick, Inc.*,2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) ("[C]ourts have recognized … privacy violations as injuries for purposes of Section 349"); *see also Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *10 (S.D.N.Y. July 30, 2024) (same); *Anonymous*, 188 Misc. 2d at 624 (S.D.N.Y. Mar. 1, 2001) (same); *Anthem*, 162 F. Supp. 3d at 995 (same); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1038 (N.D. Cal. 2019) (same). In contrast to this weight of authority, Defendants rely exclusively on a single case involving non-medical data—which is distinguishable for that reason—and is otherwise inconsistent with the current state of the law recognizing the misappropriation and use of private data is a cognizable harm. *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1047 (N.D. Cal. 2018) (involving "call and text" data).

***Deceptive Practice.*** Under the GBL, the wrongful misappropriation of health data without notice is itself a deceptive act or practice. *See Anonymous*, 188 Misc. 2d at 624; *see also Castillo*, 2024 WL 4785136, at *12 (finding defendant engaged in an "unfair or deceptive act" by "us[ing] and disclos[ing] customers' personal health data without their consent."). It does not, as Defendants contend without support, require a material misrepresentation or omission. MTD at 23.

***Causation.*** Under New York law, a plaintiff satisfies the causation element of a GBL § 349 claim

by alleging that they "would not have" entered into the transaction with the defendants "if not for [defendants'] deceptive acts." *Boateng v. BMW AG*, 2024 WL 4471151, at *17 (E.D.N.Y. Oct. 11, 2024). The GBL does not contain a separate reliance requirement. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N. Y. 2000). Here, Plaintiff E.C. alleges he would not otherwise have used the GoodRx Platform if he were aware of Defendants conduct, such that the causation requirement is satisfied. ¶¶ 44–45. Respectfully, the *Meta Tax* cases improperly held—in contrary to controlling New York law—not only that there must be a misrepresentation or omission but that plaintiffs actually saw or would have seen the misrepresented or omitted information. MTD at 23 (citing *Meta Pixel Tax Filing*, 2024 WL 1251350, at *16; *In re Meta Pixel Tax Filing Cases*, 2024 WL 3664037, at *2 (N.D. Cal. Aug. 6, 2024)). Because these cases read requirements into the GBL that do not otherwise exist, they should be disregarded by this Court.

### H. Plaintiffs' CMIA Claims Should Be Sustained

The CMIA's "legislative history" confirms it was "intended to . . . codify existing rights" to "medical privacy." *Hartford Cas. Ins. Co. v. Corcino & Assocs.*, 2013 WL 5687527, at *5 (C.D. Cal. Oct. 7, 2013). Because the right to privacy, and the CMIA, sounds in tort (*McNair v. City and County of San Francisco*, 5 Cal. App. 5th 1154 (2016) (explaining CMIA is a "tort cause of action")) the Restatement (Second) permits claims for aiding and abetting such violations. *See* Restatement (Second) of Torts § 876 (1979). To state an aiding and abetting claim, a plaintiff need plead only that the defendant (1) had knowledge that another's conduct constitutes a breach of duty, and (2) substantially assisted or encouraged it. *See Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003). Both requirements are satisfied here because Defendants knew they obtained health information in breach of GoodRx's duty to GoodRx users and assisted and encouraged GoodRx to adopt its wiretapping technology to accomplish this violation. *See* Section II; *see also In re First All. Mortg. Co.*, 471 F. 3d 977, 995 (9th Cir. 2006) (affirming jury verdict of aiding and abetting liability where company knew of misconduct and continued to "satisfy[]" their business needs); *Ray v. BlueHippo Funding, LLC*, 2008 WL 1995113, at *4 (N.D. Cal. May 6, 2008) (sustaining claim where company "sought to profit from what it allegedly knew were unlawful practices").

***Medical Information.*** Defendants' argument that the data is not medical information is

inconsistent with the CMIA's language, which includes any individually identifiable information regarding a patient's "medical history" "condition" or "treatment." Cal. Civ. Code § 56.05(j). This is the exact type of information Defendants obtained. *See* Section II; *see also Regents of Univ. of Cal.*, 672 F. Supp. 3d 813 (finding similar data intercepted through Meta Pixel to be "medical information"); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) (same). This does not change simply because plaintiffs enter the information themselves, just as it would not make information told to a doctor less medical in nature. *Id.* (both cases involving user-entered information). The cases Defendants cobble together are plainly distinguishable because they do not involve communications that contained medical information at all. MTD at 19 (citing *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1078 (S.D. Cal. 2017) (employee stating he generally "called off sick" was not medical information); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *8 (N.D. Ill. Sept. 9, 2024) (plaintiffs "fail[ed] to allege" that the information "reveal[ed] . .. physical condition or treatment"); *Am. Hosp. Ass'n*, 2024 WL 3075865, at *13–14 & n.7 (discussing HHS authority to modify HIPAA); *M.G.*, 2024 WL 4219992, at *3 (dismissing claim for lack of plaintiff-specific allegations)).

***Primary Violation.*** Defendants' argument that there is no violation of the CMIA fails for the reasons stated in Plaintiffs' first opposition brief. *See* ECF No. 130 at 26-28 (explaining GoodRx is a "provider of healthcare" that "disclosed" or failed to "preserve" the confidentiality of Plaintiffs' medical information in violation of the CMIA). The sole case Defendants cite is off point because it involved non-consumer facing software, which the CMIA does not cover. *See* MTD at 20 (citing *Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021). Unlike *Oddei*, the CMIA applies to the GoodRx Platform because it is used by consumers to convey and maintain health information. *See Glenon v. Abbott Lab'ys*, 2023 WL 6120612, at *2-3 (S.D. Cal. Sept. 18, 2023) (finding company that "held" patient "contact information" and provides "health care products" is a "provider of health care").

### I. Plaintiffs' Unjust Enrichment & Restitution Claims Should Be Sustained

"To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners, LP v.*

*Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016).[18] Here, Plaintiffs allege Defendants were unjustly enriched because they collected and misused Plaintiffs' private health data for their own financial gain without Plaintiffs' authorization or compensation. ¶¶ 264-65. This is all the law requires. *See Meta Pixel Tax Filing*, 2024 WL 1251350, at *10 (sustaining unjust enrichment claim premised on "acquisition of [plaintiffs] data"); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d at 1086 (same); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1159 (N.D. Cal. 2021) (same).

Defendants' claim that Plaintiffs have not adequately "alleged a money-or-property interest" (MTD at 27)—presumably under the false assumption that data has no value—is incompatible with this case law (above), the numerous, other decisions recognizing that data has intrinsic economic value (*Calhoun*, 526 F. Supp. 3d at 636; *Brown*, 2021 WL 6064009, at *17)), and the fact that Defendants themselves monetized this data. ¶¶ 180–191, 195, 306. The two cases they cite are inapposite because there was either payment made, such that there was no "unjust" enrichment (*LeBrun v. CBS Television Studios, Inc.*, 68 Cal. App. 5th 199, 209 (2021)) or no unlawful conduct to begin with. *See Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1319 (1989) (no unjust enrichment because the "cold hard fact" was the government was acting within its legal authority)).

Meta's separate attempt to claim there is a "valid express contract" covering the "same subject matter" is just wrong. MTD at 27 There is no agreement between GoodRx users and Meta, and Meta cannot fabricate one by claiming it has a general Terms of Service applicable to the *Facebook* platform and *Facebook* users. Moreover, these terms say nothing about Meta's interception of health data from the GoodRx Platform, which is a different platform operated by an entirely separate entity, such that it cannot—under any interpretation—be deemed to cover the "same subject matter." *See Meta Pixel Tax Filing*, 2024 WL 1251350, at *10 (rejecting same argument); *see also* Section IV.K.[19]

Finally, Defendants' claim that Plaintiffs are not entitled to restitution unless Plaintiffs made direct payments to Defendants (MTD at 21) is inconsistent with Ninth Circuit precedent. *See In re Facebook,*

---

[18] Defendants argue there is no actionable wrong because every other claim should be dismissed. MTD at 27. This argument fails because each claim addressed herein should be sustained.

[19] Unlike here, in the cases Meta relies on plaintiffs were asserting direct breach of contract claims. MTD at 27 (citing *Alatortev v. JetBlue Airways Corp.*, 2018 WL 2735355, at *6 (N.D. Cal. June 7, 2018); *Rutherford Holdings LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (6th Dist. 2014)).

*Inc. Internet Tracking Litig.*, 956 F.3d at 599-600 (explaining restitution is available under "California law" even if there is no "corresponding loss" to plaintiffs). Their own authority, which concerns restitution only under the UCL, does not support their broader proposition. MTD at 21 (citing *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) (merely citing the UCL's loss of "money or property" requirement).

### J. Plaintiffs' Injunctive Relief Claims Should Be Sustained

Plaintiffs seek injunctive relief to require Defendants to immediately discontinue their use of GoodRx users' data and permanently delete this data from their servers. ¶ 215. Defendants argue dismissal is proper because Plaintiffs are "now aware of GoodRx's data-sharing practices[.]" MTD at 21. This is wrong, because the injunctive relief sought is not to prevent Defendants' future *collection* of GoodRx user data on the GoodRx Platform, but further harm from their continued use and storage of the data they already have. *See Brown*, 685 F. Supp. 3d at 926 (sustaining unjust enrichment at summary judgment because "Google's conduct has not stopped"); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d. 956, 969 (9th Cir. 2018) (explaining even if consumers "now know[]" of wrongdoing that does not preclude injunctive relief). In the sole case Defendants rely on, the only future harm alleged was tied to additional purchases, which consumers would not make now that they knew of the defendant's wrongdoing. *See Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006). The ongoing and future harm here is plainly different and will occur regardless of what Plaintiffs know now.

### K. Defendants' Consent Defense Fails

The party seeking to invoke a consent defense bears the burden of establishing that consent exists. *See Calhoun*, 526 F. Supp. 3d at 620. For the consent to be "actual," the "disclosures must 'explicitly notify' users of the practice at issue." *In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *9 (N.D. Cal. Dec. 22, 2022). Consent is evaluated under a "reasonable user" standard (*Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1046 (N.D. Cal. 2014)), and if there is more than one plausible interpretation, "the Court cannot decide the consent issue in [Defendants'] favor." *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019). Here, Defendants' consent defense fails because GoodRx's privacy policies between 2017 and 2019 expressly stated "advertisers or any other third parties" would "never" receive "any information that reveals a personal health condition or personal health

information." ¶¶ 104-109[20]; *see also Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1066 (N.D. Cal. 2021) (finding no consent to data collection where "statements suggest" the defendant did not engage in the challenged conduct); *Calhoun*, 526 F. Supp. at 621 (finding no consent because the privacy notice "makes specific representations that could suggest to a reasonable user that [defendant] would not engage in the alleged data collection"). GoodRx's deletion of this language after 2019 likewise does not establish consent because consent requires affirmative disclosures and cannot be established by silence or omission. *See Brown*, 685 F. Supp. 3d at 928 (finding privacy policy that is "silent as to any data collection specific to" the misconduct at issue does not establish consent).

Defendants' assertion that general statements about the use of "pixels" and "SDKs" (present in the post-2023 policy) supersede the more specific, earlier promise not to share health data with companies like Defendants is inconsistent with the law.[21] MTD at 17. The cases they cite confirm this. *Id*. at 17 (citing *Calhoun v. Google, LLC*, 113 F.4th 1141, 1148 (9th Cir. 2024) (explaining when there are "broad[]" disclosures about "general" data collection, coupled with "more detail[ed]" promises that a defendant will not receive a specific type of data, summary judgment on consent is improper); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (confirming a "general . . . clause" cannot "supersede" the more "specific . . . provision")).

Defendants' separate argument that GoodRx's January 1, 2023 Privacy Policy establishes consent is a red herring. MTD at 16. This is because consent ***does not apply retroactively***, and all Plaintiffs used the GoodRx Platform ***before*** this policy was enacted (mere weeks prior to the FTC's settlement with GoodRx). See *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (explaining there is no retroactive consent under CIPA); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1076 n.8 (N.D. Cal. 2016) (same for invasion of privacy). Nor would this policy establish consent going forward (i.e., after January 2023) because each of the statements Defendants point to refer to vague "tracking" of non-descript "usage" data or "online activity," which does not come close to disclosing to users that Defendants will intercept their private health data. *See* MTD at 16; *see also In re Google Assistant Priv.*

[20] GoodRx's CEO doubled down on these promises by publicly proclaiming it protected GoodRx user "information" following the same standards as "any health entity." ¶¶ 110-11.

[21] Defendants' seeing-eye dog analogy falls flat. MTD at 17. Unlike a hotel policy with an exception for service animals, there were no exceptions to GoodRx's promise not to share health data.

*Litig.*, 457 F. Supp. 3d 797, 823 (N.D. Cal. 2020) (statement that Google may share "personal information" was too broad to establish consent for interception of voice recordings as it "says nothing about the types of information that Defendants might send"); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 792 (finding general disclosure that Meta shares "information" insufficient to create consent for sharing sensitive user interactions with app developers). In fact, the only statements in GoodRx's entire January 2023 policy that actually refer to "drug names" and "condition names" do ***not*** say that this information will be shared with Defendants, it only states this is information GoodRx itself collects. Def. RJN, Ex. 24 at 2.

Meta's reliance on its own Terms of Service from July 2022 and Privacy Policy from January 2023 also fails. MTD at 17-19. As an initial matter, these policies relate to Meta's services (like Facebook), not the GoodRx Platform, so they do not apply to GoodRx users. But in any event, consent does not apply retroactively and nothing in these policies disclose to a reasonable person that Meta intercepts private health data from GoodRx users. MTD at 6 (arguing these policies, at best, state Meta collects information from unspecified "third parties"). Given this, it is unsurprising that every court to consider this exact argument has rejected it. *See Meta Pixel Tax Filing*, 2024 WL 1251350, at *5 (rejecting argument that "Facebook's policies" established consent to collect sensitive data through Meta's tracking technology); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793–94 (N.D. Cal. 2022) (same); *Gershzon*, 2023 WL 5420234, at *9 (same); *St. Aubin*, 2024 WL 4369675, at *9 (same); *Castillo*, 2024 WL 4785136, at *12 (same); *Davis v. Meta Platforms, Inc.*, No. 2:23-CV-01352-APG-BNW, 2024 WL 3293644, at *6 (D. Nev. July 3, 2024) (similar).

The two cases on consent that Meta cites do not compel a different outcome because neither of those cases evaluated consent to collect inherently private types of data like identifiable health information. MTD at 17-18 (citing *Smith*, 745 F. App'x at 8–9 (finding consent because information was not "sensitive" and did not "reveal details of an individual's health status or medical history"); *Hammerling v. Google LLC*, 2024 WL 937247, at *2 (9th Cir. Mar. 5, 2024) (concerning collection of generic app usage data by software operator)). The remaining cases it cites have nothing to do with consent at all. *Id.* (citing *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (evaluating fraud claims not consent); *Meta Platforms, Inc. v. Nguyen*, 2023 WL 8686924, at *2 (N.D. Cal. Nov. 21,

2023) (request for default judgment); *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 964 (9th Cir. 2010) (review of decision concerning contractual dispute).

### L. Plaintiffs' Claims Are Timely

The statute of limitations is a defense pursuant to which a claim may be dismissed as time-barred only if it "appears beyond doubt that the plaintiff can prove no set of facts that would establish . . . timeliness." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Defendants' statute of limitations defense fails because all claims are tolled.[22]

***Discovery Rule.*** The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Castillo v. City of Watsonville*, 2020 WL 5798237, at *7 (N.D. Cal. Sept. 29, 2020) (citing *Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 807 (Cal. 2005)). Whether the discovery rule applies is generally a "question of fact unless the evidence can support only one reasonable conclusion." *Ovando v. Cty. of Los Angeles*, 159 Cal. App. 4th 42, 61 (2008). To trigger the discovery rule, a plaintiff need only plead "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. Here, Plaintiffs allege they could not have discovered Defendants' conduct because it happened surreptitiously, was never disclosed, and could not otherwise be discovered. *See* Sections II, IV.K. They plead the earliest date of discovery was the filing of the FTC complaint because this was the first time Defendants' conduct was revealed, which was just one day before this action was filed. ¶¶ 192-200, 205. Nothing more is required. *See FullStory*, 712 F. Supp. 3d at 1255 (explaining "clear statement that 'the earliest'" date of discovery "was shortly before filing" and allegations that "no disclosures" revealed the "secret[]" data interception trigger discovery rule); *Harrison v. Great HealthWorks, Inc.*, 2017 WL 2554448, at *2–3 (S.D. Cal. June 13, 2017) (explaining "surreptitious" recording that cannot be "reasonably [] discovered" triggers discovery rule); *Franklin v. Ocwen Loan Servicing, LLC*, WL 5923450, at *3 (N.D. Cal. Nov. 13, 2018) (same).

Defendants' claim that Plaintiffs do not "identify" the "time or manner of discovery" ignores these allegations. *See* MTD at 29. The sole case they rely on is inapposite because there were *no* allegations like

[22] Defendants' argument that GoodRx's promises to users only "rescue" a "single claim" under the UCL for a "brief period" does not make sense. MTD at 28. All statutes of limitations are tolled.

this. MTD at 29 (*Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182 (Cal. Ct. App. 1979) (no tolling because, unlike here, "time and manner of discovery" was not alleged).

Defendants' claim that Plaintiffs discovered or could have discovered their secret conduct is unbelievable. MTD at 29. Plaintiffs could not have discovered Defendants' conduct through GoodRx and Meta's policies because they either affirmatively represented health data would ***not*** be shared or were silent on this type of data collection. *See* Section IV.K. Nor would Plaintiffs have had "inquiry notice" through articles about Defendants' collection of sensitive data from *other* apps because these articles have nothing to do with the GoodRx Platform. *See FullStory*, 712 F. Supp. 3d at 1255 (holding that articles do not "undermine plaintiff's allegations of delayed discovery as a matter of law" when they say nothing "central to the conduct" concerning the app in question); *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *10 (N.D. Cal. Jan. 5, 2011) (refusing to find publications that did not discuss the "specific . . . issue" to constitute inquiry notice). For similar reasons, Plaintiffs were not on notice of their claims through Meta's statements in 2021 that it uses data to "target users based on 'sensitive' topics, including 'health'" (MTD at 29) because these statements made no mention of where Meta was getting this data from. *See Rafton*, 2011 WL 31114, at *10.

*Javier v. Assurance IQ, LLC* does not support Defendants' position (MTD at 29) because, there, inquiry notice was established "by [plaintiff's] own admission" that he was aware his data was collected. 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023) There are no admissions here. *Eisenberg v. Citibank* equally does not support Defendants' claim because that case merely held that "not read[ing]" a contract does not mean you are not bound by its terms or the disclosures made therein. 787 F. App'x 929, 930–31 (9th Cir. 2019). As described above, there were no disclosures that would provide notice or inquiry notice of Defendants' conduct.

***Fraudulent Concealment.*** Fraudulent concealment is similar to the discovery rule but requires additional allegations that the defendant took "affirmative acts" to mislead the plaintiff. *Brown*, 525 F. Supp. 3d at 1070. Here, each Defendant took "affirmative acts" because they intentionally intercepted Plaintiffs' health data through undetectable, secret technology to deceive users and avoid discovery, while GoodRx represented that such interception would never occur. *See* Section II, above. This case is plainly unlike *Thorman v. Am. Seafoods Co.*, cited by Defendants (MTD at 30), because they did not merely keep

GoodRx users "in the dark" but took steps to ensure their conduct would stay hidden. 421 F.3d 1090, 1095 (9th Cir. 2005). Indeed, Defendants were so successful it took an entire government investigation before this conduct came to light. ¶¶ 192-200, 205. This doctrine separately tolls Plaintiffs' claims.[23]

***Recurring Violations.*** Lastly, courts in the Ninth Circuit have "long settled that separate, recurring invasions of the same right can each trigger their own statute of limitations." *See Brown*, 525 F. Supp. 3d at 1069-70. Each Plaintiff (except Marquez and Wilson) alleges their health data was continuously intercepted and shared without their consent through 2022 and 2023, respectively (¶¶ 23, 29, 36, 41), and each Plaintiff alleges that Defendants' use of this data continued through at least February 22, 2023. ¶¶ 196-199. At a minimum, the statute of limitations would not bar these claims.

### M. Criteo's Due Process Arguments Fails

Criteo's argument that non-California Plaintiffs cannot assert California claims against it is without violating due process is inappropriate at this stage. *See Shein v. Canon U.S.A., Inc.*, 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009) (rejecting same argument as premature). Even if the Court were to address this argument, Plaintiffs have pled enough contacts with California by Criteo (Section IV.C.i) that warrant application of California law here. *See Martinez v. Knight Transportation, Inc.*, 2018 WL 6308110, at *7–8 (E.D. Cal. Dec. 3, 2018) (finding contacts with California "sufficient to allay any due process concerns"). Criteo's reliance on *Allstate Ins. Co. v. Hague* does not salvage its position. 449 U.S. 302, 306 (1981). There, choice of law was resolved at *summary judgment* where, after discovery, the court found that Minnesota law applied despite the fact that the plaintiff was not a resident at the time of the incident, because there was a "significant aggregation" of other "contacts" that supported the application of Minnesota law. *Id*. at 319-20. Nothing even close to this exists here.

## CONCLUSION

Defendants' Motion to Dismiss should be denied for each of the reasons described herein.

---

[23] Meta and Google also maintain their own policies and terms, which they cite at length. MTD at 4-6. Publishing these policies constitute an "affirmative act" and they were deceptive because they make no mention of their collection of health data from GoodRx users. *See* Section IV.K.

Dated: November 15, 2024

/s/ L. Timothy Fisher

L. Timothy Fisher (SBN 191626)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
E-mail: jgavenman@bursor.com

*Interim Co-Lead Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
ascubert@sjk.law

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
**JAVITCH LAW OFFICE**
3 East 3rd Ave., Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice)*
tom@attorneyzim.com

**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Israel David (*pro hac vice)*
israel.david@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone: (212) 739-0622
Facsimile: (212) 739-0628

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB LAW FIRM LLC**
134 Kings Highway E
Haddonfield, NJ 08033
Telephone: (856) 772-7200
Facsimile: (856) 210-9088
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Attorneys for Plaintiffs*