Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Additional Counsel for Plaintiffs on
Signature Page*

L. Timothy Fisher (SBN 191626)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
jgavenman@bursor.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., and GOOGLE LLC.<br><br>          Defendants. | Lead Case No.: 3:23-cv-00501-AMO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANT GOODRX; SUPPORTING MEMORANDUM OF LAW**<br><br>CONSOLIDATED CLASS ACTION<br><br>COMPLAINT FILED: February 2, 2023<br><br>Judge:     Hon. Araceli Martínez-Olguín<br><br>Date:      January 9, 2025<br>Time:     2:00 PM<br>Courtroom: 10 – 19th Floor<br>          San Francisco Courthouse |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on January 9, 2025, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 10 on the 19th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Araceli Martínez-Olguín presiding, Plaintiffs Jane Doe, Jane Doe II, John Doe, E.C., Jose Marquez, and Hollis Wilson ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement") submitted herewith; (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiffs as the Class Representatives, and appoint the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing (the "Motion").

This Motion is made on the grounds that terms of the proposed Settlement Agreement are fair, reasonable, and adequate, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "[Proposed] Preliminary Approval Order").

The Motion is based on the Declaration of L. Timothy Fisher (the "Fisher Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Law filed herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated: November 29, 2024          */s/ L. Timothy Fisher*
                                   L. Timothy Fisher (SBN 191626)
                                   Neal J. Deckant (SBN 322946)
                                   Jenna L. Gavenman (SBN 348510)

1

**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:   (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
jgavenman@bursor.com

*Interim Co-Lead Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:  (914) 997-0500
Facsimile:   (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

*All Plaintiffs' Counsel Listed on Final Signature Page*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................................................iii

MEMORANDUM OF LAW........................................................................................................ 1

I.      INTRODUCTION ........................................................................................................... 1

II.     PROCEDURAL BACKGROUND ................................................................................. 2

III.    INFORMATION ABOUT THE PROPOSED SETTLEMENT ...................................... 3

   A.   PG 1(a): Class Definition............................................................................................ 3

   B.   PG 1(b): The Claims to be Released........................................................................... 3

   C.   PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Fund ............ 4

      1.   The Settlement Fund ............................................................................................ 4

      2.   Service Awards .................................................................................................... 5

      3.   Attorneys' Fees and Expense Award ................................................................... 5

   D.   PG 1(f) & PG 2: Settlement Administration .............................................................. 5

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.................. 7

   A.   The *Hanlon* Factors..................................................................................................... 8

      1.   Strength of Plaintiffs' Case .................................................................................. 8

      2.   Risk of Continuing Litigation ............................................................................ 10

      3.   Risk of Maintaining Class Action Status .......................................................... 11

      4.   PG 1(c): The Amount Offered in Settlement..................................................... 11

      5.   The Extent of Discovery..................................................................................... 12

      6.   Experience and Views of Counsel...................................................................... 13

   B.   Rule 23(e)(2) Factors................................................................................................ 13

      1.   The Class Is Adequately Represented................................................................ 13

      2.   The Settlement Was Negotiated at Arm's Length ............................................. 13

      3.   The Settlement Provides Adequate Relief to the Settlement Class .................... 14

      4.   The Settlement Treats All Settlement Class Members Equally .......................... 17

V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ................. 17

   A.   The Class Satisfies Rule 23(a) ................................................................................. 19

      1.   The Class Is Sufficiently Numerous................................................................... 19

      2.   Common Questions of Law and Fact Exist........................................................ 19

      3.   The Plaintiffs' Claims Are Typical.................................................................... 20

      4.   Plaintiffs and Their Counsel Adequately Represent the Class........................... 20

   B.   The Class Satisfies Rule 23(b)(3)............................................................................. 21

      1.   Common Questions Predominate ....................................................................... 22

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

2.      Superiority ............................................................................................. 23

VI.      B&F AND LOWEY SHOULD BE APPOINTED AS CLASS COUNSEL............................. 23

VII.     THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED..................................... 24

A.   The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern
     District's Procedural Guidelines........................................................................... 24

B.   Distribution of the Class Notice Will Comply with Rule 23(c)(2)............................................ 25

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Sirius XM Radio Inc.*,

    No. 18-cv-8605 (JVS) (SSx), 2020 WL 7314793 (C.D. Cal. July 15, 2020) ..................................... 15

*Amchem Prods. v. Windsor*,

    521 U.S. 591 (1997)..................................................................................................... 18, 22

*Arnott v. U.S. Citizenship & Immigr. Servs.*,

    290 F.R.D. 579 (C.D. Cal. 2012) .................................................................................... 18

*Atkinson v. Minted*,

    No. 3:20-cv-0369 (N.D. Cal.)………………………………………………………………..6

*Barbosa v. Cargill Meat Sols. Corp.*,

    297 F.R.D. 431 (E.D. Cal. 2013) .................................................................................... 22

*Carlotti v. ASUS Computer Int'l*,

    2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ................................................................... 7

*Carter v. XPO Logistics, Inc.*,

    2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) .................................................................... 8

*Cavin v. Home Loan Ctr., Inc.*,

    236 F.R.D. 387 (N.D. Ill. 2006)...................................................................................... 18

*Churchill Vill., L.L.C. v. Gen. Elec.*,

    361 F. 3d 566 (9th Cir. 2004) .......................................................................................... 7

*Cottle v. Plaid Inc.*,

    340 F.R.D. 356 (N.D. Cal. 2021)..................................................................................... 18

*Dexter's LLC v. Gruma Corp.*,

    No. 23-cv-212 (MMA) (AHG), 2023 WL 8790268 (S.D. Cal. Dec. 19, 2023)................................. 9

*Doe v. FullStory, Inc.*,

    No. 3:23-cv-00059 (N.D. Cal.)………………………………………………………………9

*Elder v. Hilton Worldwide Holdings, Inc.*,

    No. 16-cv-00278 (JST), 2020 WL 11762284 (N.D. Cal. Apr. 29, 2020)............................................ 7

*Evans v. Linden Rsch., Inc.*,

  No. 11-cv-01078 (DMR), 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ........................................ 24

*Fiorentino v. FloSports, Inc.*,

  No. 1:22-cv-11502 (D. Mass.).…………………………………………………………………………6

*Frasco v. FloHealth, Inc.*,

  No. 3:21-cv-00757 (N.D. Cal.).…………………………………………………………………………9

*Garner v. State Farm. Mut. Auto. Ins. Co.*,

  2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................................................................................ 8

*Guzman v. Oxnard Lemon Assocs., Ltd.*,

  No. 91-cv-6957 (KN) (EX), 1992 WL 510094 (C.D. Cal. Aug. 28, 1992) ...................................... 19

*Hanlon v. Chrysler Corp.*,

  150 F.3d 1011 (9th Cir. 1998) .....................................................................................................passim

*Hester v. Vision Airlines, Inc.*,

  No. 2:09-cv-00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009) .................................................... 21

*Hodges v. GoodRx Holdings, Inc.*,

  No. 1:23-cv-24127 (S.D. Fla.).…………………………………………………………………passim

*In re Advocate Aurora Health Pixel Litig.*,

  No. 22-cv-1253 (E.D. Wis.).…………………………………………………………………………..12

*In re Anthem, Inc. Data Breach Litig.*,

  No. 15-md-02617 (LHK), 2017 WL 9614789 (N.D. Cal. Aug. 25, 2017) ...................................... 14

*In re Classmates.com Consol. Litig.*,

  No. 09-cv-45 (RAJ), 2010 WL 11684544 (W.D. Wash. Apr. 19, 2010) ........................................ 24

*In re Extreme Networks, Inc. Sec. Litig.*,

  No. 15-cv-04883 (BLF), 2019 WL 3290770 (N.D. Cal. July 22, 2019) .......................................... 17

*In re Google Location History Litig.*,

  2024 WL 1975462 (N.D. Cal. May 3, 2024) ................................................................................ 13

*In re Mego Fin. Corp. Sec. Litig.*,

  213 F.3d 454 (9th Cir. 2000) ................................................................................................ 12, 16

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

*In re Meta Pixel Healthcare Litig.*,

   No. 3:22-cv-03580 (N.D. Cal.)……………………………………………………………...9

*In re Netflix Privacy Litig.*,

   2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................................................. 11

*In re Novant Health, Inc.*,

   No. 22-cv-697 (M.D.N.C.)………………………………………………………………...6

*In re Pac. Enters. Sec. Litig.*,

   47 F.3d 373 (9th Cir. 1995) ...................................................................................... 7, 16

*In re Tableware Antitrust Litig.*,

   484 F. Supp. 2d 1078 (N.D. Cal. 2007).......................................................................... 7

*In re Vizio, Inc., Consumer Priv. Litig.*,

   No. 8:16-ml-02693 (JLS) (KES), 2019 WL 12966638 (C.D. Cal. July 31, 2019)........................ 6, 18

*Johnson v. Triple Leaf Tea Inc.*,

   2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) ................................................................. 11

*Just Film, Inc. v. Buono*,

   847 F.3d 1108 (9th Cir. 2017) ...................................................................................... 20

*Knapp v. Art.com, Inc.*,

   283 F. Supp. 3d 823 (N.D. Cal. 2017)........................................................................... 11

*Krommenhock v. Post Foods, LLC*,

   334 F.R.D. 552 (N.D. Cal. 2020)................................................................................... 19

*Lane v. Facebook, Inc.*,

   696 F.3d 811 (9th Cir. 2012)......................................................................................... 17

*Larsen v. Trader Joe's Co.*,

   2014 WL 3404531 (N.D. Cal. July 11, 2014).................................................................. 10

*Linney v. Cellular Alaska P'ship*,

   No. 96-cv-3008 (DLJ),  1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir.

   1998)............................................................................................................................. 16

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,

   244 F.3d 1152 (9th Cir. 2001) .................................................................................... 22

*Mandalevy v. BofI Holding, Inc.*,

   No. 3:17-cv-667 (GPC) (MSB), 2022 WL 4474263 (S.D. Cal. Sept. 26, 2022)................................ 14

*Meyer v. Portfolio Recovery Assocs., LLC*,

   707 F.3d 1036 (9th Cir. 2012) .................................................................................... 19

*Miramontes v. U.S. Healthworks, Inc.*,

   No. 15-cv-05689 (SJO) (AFMx), 2017 WL 11633665 (C.D. Cal. Sept. 5, 2017) ........................... 13

*Moss v. USF Reddaway, Inc.*,

   No. ED 15-cv-01541 (JAK) (FFMx), 2018 WL 5099291 (C.D. Cal. Feb. 15, 2018) ........................ 10

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,

   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 10, 11, 13

*Officers for Justice v. Civil Serv. Comm'n*,

   688 F.2d 615 (9th Cir. 1982) ................................................................................... 8, 11

*Opperman v. Kong Techs., Inc.*,

   No. 13-cv-00453 (JST), 2017 WL 11676126 (N.D. Cal. July 6, 2017) ...................................... 6, 24

*Pena v. Taylor Farms Pac., Inc.*,

   2021 WL 916257 (E.D. Cal. Mar. 10, 2021) .......................................................................... 8

*Perks v. Activehours, Inc.*,

   No. 5:19-cv-05543 (BLF), 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ................................. 13, 16

*Pipich v. O'Reilly Auto Enterprises, LLC*,

   No. 3:21-cv-01120 (AHG), 2024 WL 2885342 (S.D. Cal. June 7, 2024)........................................ 7

*Ramirez v. TransUnion LLC*,

   951 F.3d 1008 (9th Cir. 2020) .................................................................................... 20

*Rodriguez v. West Publ'g Corp.*,

   563 F.3d 948 (9th Cir. 2009) ............................................................................... 8, 10, 11

*Santoro v. Aargon Agency, Inc.*,

   252 F.R.D. 675 (D. Nev. 2008)................................................................................... 20

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

*Schneider v. Champignon Brands Inc.*,
    No. SACV 21-3120 (JVS) (KESx), 2022 WL 22879587 (C.D. Cal. Nov. 1, 2022) ......................... 14

*Sciortino v. Pepsico, Inc.*,
    No. 14-cv-00478, 2016 WL 3519179 (N.D. Cal. June 28, 2016) ...................................................... 8

*Shahar v. Hotwire, Inc.*,
    No. 12-cv-06027 (JSW), 2014 WL 12647737 (N.D. Cal. July 25, 2014) ........................................ 24

*Smith v. Kaiser Found. Hosps.*,
    No. 18-cv-00780 (KSC), 2021 WL 2433955 (S.D. Cal. June 15, 2021) .......................................... 10

*State of California v. eBay, Inc.*,
    No. 5:12-cv-05874 (EJD), 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ...................................... 17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................................... 20

*Stewart v. Apple Inc.*,
    No. 19-cv-04700 (LB), 2022 WL 3013122 (N.D. Cal. Feb. 17, 2022) ............................................ 24

*Thomas v. Magnachip Semiconductor Corp.*,
    No. 14-cv-01160 (JST), 2016 WL 3879193 (N.D. Cal. July 18, 2016) ........................................... 15

*Torres v. Pet Extreme*,
    No. 1:13-cv-01778 (LJO), 2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ........................................... 9

*Vandervort v. Balboa Cap. Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) .......................................................................................... 9

*Vela v. AMC Networks, Inc.*,
    No. 1:23-cv-02524-ALC (S.D.N.Y.) .............................................................................. 6, 12

*Villegas v. J.P. Morgan Chase & Co.*,
    No. 09-cv-00261 (SBA) (EMC), 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............................. 14

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................................. 15, 16

*Wellens v. Sankyo*,
    2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ............................................................................ 16

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

*White v. Imperial Adjustment Corp.*,

No. 99-cv-3804, 2002 WL 1809084 (E.D. La. Aug. 6, 2002).........................................................18

*Wolin v. Jaguar Land Rover N. Am. LLC*,

617 F.3d 1168 (9th Cir. 2010) ...............................................................................22

**Statutes**

Cal. Penal Code § 637.2(a)(1).......................................................................9

Cal. Civ. Code § 56.36(b)(1)........................................................................9

N.Y. Gen. Bus. Law § 349(h).......................................................................9

**Rules**

Fed. R. Civ. P. 23 ............................................................................passim

Northern District of California's Procedural Guidelines for Class Action Settlements, 1 ......... 3, 4, 5, 12

Northern District of California's Procedural Guidelines for Class Action Settlements, 6 ................. 4, 16

Northern District of California's Procedural Guidelines for Class Action Settlements, 7 ...................... 4

Northern District of California's Procedural Guidelines for Class Action Settlements, 8 ................. 4, 18

Northern District of California's Procedural Guidelines for Class Action Settlements, 3 .................... 25

Northern District of California's Procedural Guidelines for Class Action Settlements, 2 ...................... 5

**Treatises**

3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS, § 7:19 (6th ed.) ..................................................19

Manual For Complex Litigation, §§ 21.632, 21.633 .........................................................19

Manual for Complex Litigation, Second, § 30.44 (1985).........................................................7

1

## MEMORANDUM OF LAW

2

## I.    INTRODUCTION

3       Plaintiffs and proposed Class Representatives Jane Doe, Jane Doe II, John Doe, E.C., Jose

4   Marquez, and Hollis Wilson (collectively, "Plaintiffs") respectfully submit for the Court's preliminary

5   approval a **$25 million** nationwide class settlement (the "Settlement") with Defendant GoodRx Holdings,

6   Inc. ("GoodRx" or "Defendant").[1] This Settlement is an extraordinary result, reached after months of hard-

7   fought negotiations (*see* Section II, below), and recovers *approximately 17 times* what the Federal Trade

8   Commission ("FTC") obtained from GoodRx for the same unauthorized disclosure of prescription

9   information and other health data through SDKs and Pixels (collectively, "Tracking Software") alleged

10  here. *See* Fisher Decl. Ex. 2 at 22 ("FTC Order") (ordering GoodRx to pay a $1.5 million penalty).

11      If approved, Settlement Class Members will receive immediate monetary relief from the

12  Settlement Fund while still retaining the potential for additional recoveries from the remaining Co-

13  Defendants—i.e., Meta Platforms, Inc. (f/k/a/ Facebook, Inc.), Google, LLC, and Criteo Corp.—claims

14  against whom are currently subject to a pending Motion to Dismiss. *See* ECF No. 213. The Settlement

15  Class will also benefit from documents and information GoodRx has agreed to provide as part of the

16  Settlement, that Plaintiffs can use in their pursuit of their claims against the Co-Defendants. Settlement

17  Agreement § F.1.

18      Accordingly, Plaintiffs respectfully request that the Court: (i) grant preliminary approval of the

19  proposed Settlement Agreement, (ii) provisionally certify the Class for the purposes of preliminary

20  approval, designate Plaintiffs as the Class Representatives, and appoint Bursor & Fisher, P.A. ("B&F")

21  and Lowey Dannenberg, P.C. ("Lowey") as Class Counsel; (iii) establish procedures for providing notice

22  to members of the Settlement Class; (iv) approve forms of Class Notice to Settlement Class Members; (v)

23  mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and

24  place for a Final Approval Hearing.

25

26

27

---

28

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1, to the Declaration of L. Timothy Fisher (the "Fisher Decl.").

## II.    PROCEDURAL BACKGROUND

On February 1, 2023, the FTC filed an action against Defendant GoodRx, alleging it violated the FTC Act and the FTC's Health Breach Notification Rule by disclosing its users' personally identifiable information ("PII"), as well as details about their medications and sensitive health conditions, to Co-Defendants, as well as other third parties. *See* FTC Action, ECF No. 1; Fisher Decl. ¶ 6.

The FTC Order resolving this complaint required GoodRx to pay civil penalties of $1.5 million and take certain corrective actions to prevent the disclosure of additional users' PII and health information, including ceasing the use of health information for advertising purposes and misrepresentation of its disclosure of health information. Fisher Decl. ¶ 7. Following this settlement, GoodRx admitted to users via email and through a notice posted on its website that it shared identifiable information about its users, including "details about drug and health conditions people searched and their prescription medications." *Id*. GoodRx further stated it "shared this information with third parties, including Facebook" and "[i]n some cases . . . used the information to target people with health-related ads." *Id*.

Plaintiff Jane Doe filed this action on February 2, 2023. *Id*. ¶ 8. Four later-filed actions were consolidated with the present action on May 3, 2023. *Id*. The Court appointed B&F and Lowey as Interim Co-Lead Class Counsel shortly after. *Id*.

Defendants moved to compel arbitration and/or stay the case, as well as to dismiss the action on June 9, 2023, and July 7, 2023, respectively. Fisher Decl. ¶ 9. While the Parties were waiting for the hearing on these motions, Interim Co-Lead Class Counsel learned that GoodRx attempted to settle the Settlement Class's claims for $13,000,000, with a separate group of individuals who had not participated in this Litigation, through an action in Florida, *Hodges v GoodRx Holdings, Inc.*, No. 1:23-cv-24127 (S.D. Fla.) ("*Hodges*"). Fisher Decl. ¶ 11; *see also* ECF No. 151-1 ¶¶ 3-5; ECF No. 151-2. B&F and Lowey promptly notified this Court and moved to intervene in the *Hodges* action to block the unauthorized settlement. Fisher Decl. ¶ 11. After learning that GoodRx was seeking to settle the claims alleged here in a later-filed action, this Court dismissed all outstanding motions in this case and ordered the Parties to mediate. *Id*. ¶ 12. The Court separately issued an order to show cause as to why GoodRx should not be sanctioned. *See* ECF No. 152; Fisher Decl. ¶ 11.

Plaintiffs and GoodRx duly participated in two mediations following the Court's order: (1) on

January 10, 2024 with the Hon. Ellen Sickles James (Ret.) and (2) on March 7, 2024 with the Hon. Wayne Andersen (Ret.). Fisher Decl. ¶¶ 13-14. Following this second mediation, the Parties spent several months both with and without Judge Andersen's assistance negotiating the Settlement Agreement. *Id.* ¶ 14; Settlement Agreement § A.6. The Parties finally executed the Settlement Agreement on November 25, 2024.

## III.  **INFORMATION ABOUT THE PROPOSED SETTLEMENT**

The key terms of the settlement are summarized below, in accordance with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Procedural Guidelines" or "PG").

### A.  **PG 1(a): Class Definition**

The proposed Settlement Class consists of "all natural persons in the United States who used any website, app, or service made available by or through GoodRx at any point prior to the issuance by the Court of the Preliminary Approval Order." Settlement Agreement § B.45. Excluded from the Settlement Class are (a) Defendant and its affiliates, parents, subsidiaries, officers, and directors; (b) the Opt-Outs; (c) Co-Defendants; as well as (d) the judges presiding over this matter and the clerks of said judges. *Id.* This modifies the Class definition in the Consolidated Amended Complaint, ECF No. 102 ("Complaint"),[2] consistent with the evidence to-date regarding GoodRx's conduct, so that it is easier for Settlement Class Members to understand and obtain relief.

### B.  **PG 1(b): The Claims to be Released**

Consistent with the allegations in the Complaint, the Settlement Agreement releases:

> [A]ny and all manner of claims . . . that arise out of, or are based upon or connected to, or relate in any way to the Data Disclosure or Defendant's use of Pixels, SDKs, cookies, APIs, or any similar technologies, or that were or could have been asserted in the Litigation.

Settlement Agreement § B.38.

This includes at least Plaintiffs' claims for California Confidentiality of Medical Information Act ("CMIA"), the California Invasion of Privacy Act ("CIPA"), the California Consumers Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), the New York General Business Law

---

[2] *See* Complaint ¶ 219 ("All natural persons in the United States who used the GoodRx Platform and whose communications and/or data were shared with third parties, including the Advertising and Analytics Defendants.").

("GBL"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ILFDBPA"), negligence per se, common law negligence, common law invasion of privacy, and unjust enrichment. Although Plaintiffs also sought a public injunction in the Complaint (Complaint ¶¶ 212-18), the FTC Order required GoodRx to cease the challenged practices at issue as of February 17, 2023. FTC Order, at 7-10. Accordingly, an injunction against GoodRx is no longer necessary.[3]

Plaintiffs' counsel is not aware of any other cases that will be affected by the settlement.[4] Fisher Decl. ¶ 22.

### C.    PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Fund

#### 1.    The Settlement Fund

GoodRx will pay $25,000,000 into a non-reversionary Settlement Fund that will be used to pay all approved claims by Settlement Class Members, Notice and Settlement Administration Costs, taxes owed by the Settlement Fund, any Court-approved service award to Plaintiffs, and any Court-approved Attorneys' Fees and Expense Award. Settlement Agreement §§ D.1, D.6. The Settlement Amount reverts to GoodRx only if the Settlement Agreement is voided, cancelled, or terminated. Settlement Agreement § D.6.

The Net Settlement Fund will be distributed *pro rata*. Settlement Agreement § H.7.a. The amount to be distributed to each Authorized Claimant will be calculated by dividing the Net Settlement Fund by the number of valid Claims. *Id.* Any funds remaining after the 60-day deadline for negotiating Claim Payment checks will be redistributed *pro rata* to Authorized Claimants that cashed their initial distribution check or received an electronic payment, so long as the reallocated *pro rata* share to each eligible Authorized Claimant is at least $5.00. *Id.* § H.7.f. Any funds still remaining after 180 days from distribution will be distributed *cy pres* to the Center for Internet and Society ("CIS") at Stanford Law School. *Id.* § H.7.g. CIS bears a close relationship to the subject matter of this lawsuit, as it is focused on law and policy relating to the internet and emerging technologies. Neither Plaintiffs nor their counsel have

---

[3] The same is not true as to the remaining Co-Defendants. *See* ECF No. 217, at 24 (seeking to sustain claims for injunctive relief requiring Co-Defendants to discontinue use of and permanently delete GoodRx users' data.).

[4] The only related litigation Plaintiffs' counsel is aware of is *Hodges v GoodRx Holdings, Inc.*, 1:23-cv-24127 (S.D. Fla.), which was administratively closed. Fisher Decl. ¶ 22.

a relationship with CIS. Fisher Decl. ¶ 20.

### 2. Service Awards

In recognition of their efforts on behalf of the Settlement Class, subject to Court approval, Plaintiffs will apply for service awards of $ 2,000 per Plaintiff, as appropriate compensation for their time and effort serving as Plaintiffs and putative Class Representatives. Plaintiffs have spent substantial time on this action, assisted with the investigation of this action and the drafting of the Complaint, been in contact with counsel frequently, and stayed informed of the status of the action. Fisher Decl. ¶ 32.

### 3. Attorneys' Fees and Expense Award

The Settlement Agreement provides that the Settlement Fund may also be used to pay Plaintiffs' Counsel reasonable attorneys' fees and to reimburse expenses in this action, in an amount to be approved by the Court. *See* Settlement Agreement § I.1. Plaintiffs will petition the Court for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund ($8,333,333.33) plus reasonable Litigation Expenses. Fisher Decl., ¶ 31. At this time, Interim Co-Lead Class Counsel anticipate seeking no more than $100,000.00 as reimbursement for any Litigation Expenses incurred by Plaintiffs' Counsel. *Id.* The unaudited lodestar invested in this case by Plaintiffs' Counsel as of October 2024 is approximately $3.2 million.[5] *Id.* If this lodestar remains unchanged (which is unlikely), the proposed attorneys' fee would reflect a multiplier of 2.59. *Id.*

### D.    PG 1(f) & PG 2: Settlement Administration

The proposed Settlement Administrator is A.B. Data, Ltd. ("A.B. Data"). *Id.* ¶ 33. Interim Co-Lead Class Counsel selected the Settlement Administrator after soliciting competing bids from four potential claims administrators, all of whom submitted responses. *Id.* Email notice and supplemental notice methods (*e.g.*, mail notice and paid digital/social media plans) were proposed by each potential administrator. *Id.* Over the past two years, Lowey has utilized A.B. Data as a settlement administrator for new engagements four times. *Id.* ¶ 35. This is in addition to A.B. Data's ongoing work administering settlements and notice programs for twelve pre-existing engagements during the same time period. *Id.* This is B&F's first engagement with A.B. Data. *Id.* ¶ 36.

---

[5] In moving for final approval, Plaintiffs will provide the total amount of Litigation Expenses and lodestar for all Plaintiffs' Counsel.

Interim Co-Lead Class Counsel is satisfied that A.B. Data employs numerous control systems and procedures that it believes meet or exceed relevant industry standards for securely handling class member data, including technical controls, administrative policies, and physical access controls for handling such data and appropriate data collection and retention, data destruction, audit, and crisis and risk management policies. *See* Declaration of Justin Parks of A.B. Data Regarding the Proposed Notice Plan and In Support of Plaintiffs' Motion for Preliminary Approval ("Parks Decl.") ¶ 33; *Id.*, Ex. B. A.B. Data accepts responsibility for the security of Class Member's information and data and has affirmed that it will not use, disseminate, or disclose such information to any other person or for any other purpose except effecting notice and claims administration. *Id.* ¶ 34. A.B. Data maintains insurance in case of errors, including coverage for professional liability errors and omissions in its administration, as well as a fidelity bond for employee dishonesty losses, additional computer fraud and wire transfer communications fraud coverage, and network and information security liability coverage. *Id.* ¶ 36.

A.B. Data estimates a claim rate range of 3-10% based on its experience administrating consumer data breach and data privacy settlements, as well as a 2019 FTC Study analyzing consumer class actions. *Id.* ¶¶ 29-31.[6] This is consistent with claims rates in comparable settlements, which range between 3-11%.[7] These settlements were selected for comparison given that they are consumer privacy class action cases arising from the disclosure of consumers' private information without consent, some of which concern similar technology to that involved in this action.[8]

A.B. Data anticipates a total of $995,000 in administrative costs. Parks Decl. ¶ 37. This amount is reasonable given that it accounts for only 4% of the total settlement value. The costs are to be paid out from the Settlement Fund. Settlement Agreement § H.5.b.

---

[6] *Id.* ¶ 30 (citing *In re: Vizio Consumer Privacy Litigation*, No. 8:16-ml-02693 (C.D. Cal.); *Barr v. Drizly, LLC f/k/a Drizly, Inc.*, 1:20-cv-11492 (D. Mass.); *Atkinson v. Minted*, 3:20-cv-03869 (N.D. Cal.)).

[7] *See In re Novant Health, Inc.*, No. 22-CV-697 (M.D. N.C.) (claims rate of 11.7%); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass.) (claims rate of 3.3%); *In re Vizio, Inc., Consumer Priv. Litig.*, No. 816ML02693JLSKES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (claims rate of 4.1%); *Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524-ALC (S.D.N.Y) (claims rate of 7.6%); *Opperman v. Kong Techs., Inc.*, No. 13-CV-00453-JST, 2018 WL 11417568, at *2-3 n.6-7 (N.D. Cal. Mar. 27, 2018) (claims rate of 4.3%).

[8] A chart of comparable cases can be found in Exhibit 3 to the Fisher Declaration.

1

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The purpose of a preliminary approval hearing is for the Court to ascertain whether to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (internal quotation marks omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)); *see also Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2020 WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) (a court must preliminarily find "that it will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal.") (quoting Fed. R. Civ. P. 23(e)(1)(B)) (internal quotations omitted).  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  When a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted).  Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. *Carlotti*, 2019 WL 6134910, at *3.

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings"; and (6) "the

experience and views of counsel."[9] *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004) (same); *Sciortino v. Pepsico, Inc.*, No. 14-cv-00478, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (same); *Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019). In addition to these factors, courts also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), and any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2); *accord Pena*, 2021 WL 916257, at *2-3. There is a significant overlap between the *Hanlon* factors and the Rule 23(e)(2) factors.

### A.    The *Hanlon* Factors

#### 1.    Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The court may "presume that through negotiation, the [p]arties, counsel, and mediator arrived at a reasonable range of settlement by considering [p]laintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

The FTC settlement and GoodRx's implicit admissions provide a strong factual basis for Plaintiffs' claims and a potential recovery. Plaintiffs have always believed, and still believe, that GoodRx would be held liable on the merits if the case proceeded to trial, because GoodRx, while not conceding liability in the stipulated settlement with the FTC, was essentially required as part of the FTC settlement to concede that it had engaged in the practices alleged in the Complaint here. Fisher Decl. ¶ 24. Plaintiffs would expect discovery to confirm GoodRx's use of Pixels and SDKs. *Id.* If Plaintiffs were to succeed at trial on behalf of a nationwide class, and maximum statutory penalties were awarded under CIPA and the CMIA,

---

[9] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time. *See Pipich v. O'Reilly Auto Enterprises, LLC*, No. 3:21-CV-01120-AHG, 2024 WL 2885342, at *10 (S.D. Cal. June 7, 2024) (explaining a full assessment of the fairness factors is not necessary at the preliminary approval stage and is "reserved" for final approval).

GoodRx would have been liable for $300 billion.[10] Fisher Decl. ¶ 25.

Nevertheless, Plaintiffs and their counsel recognize that a favorable outcome was not assured and that their claims against GoodRx would face risks at the motion to dismiss, class certification, summary judgment, and trial phases of the Litigation. Fisher Decl. ¶ 24. For instance, GoodRx's terms of service created a risk for Settlement Class Members that used the GoodRx Platform after January 2020, because after that date, these terms incorporated an arbitration provision and class action wavier. *See* Fisher Decl. ¶ 26. Whether and to what extent GoodRx could enforce those terms against these Settlement Class Members and compel them to arbitrate their claims against it was hotly contested early in the Litigation and remains an open question. *Id.*

The Settlement Class also faced risks at class certification given the new and evolving landscape of laws governing data collected through Defendants' Tracking Software. *See Dexter's LLC v. Gruma Corp.*, No. 23-CV-212-MMA-AHG, 2023 WL 8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of settlement given "the evolving legal landscape" of the law at issue in the case); *Torres v. Pet Extreme*, No. 1:13-CV-01778-LJO, 2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015) (finding that the "risk that an opinion could issue changing the legal landscape in this relatively new area of [law]" favors approval of settlement), *adopted* 2015 WL 13653878 (Feb. 25, 2015); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014) (finding "novel legal issues" raised in the case "favor approving [the] settlement); Fisher Decl. ¶ 27. Although there are many cases pending in this District against the Co-Defendants for similar misconduct, none have advanced through the class certification stage.[11] Fisher Decl. ¶ 27. This developing body of law presents inherent risks regarding the scope and nature of the Class. *Id.*

Similar risks also exist at the merits stage of the Litigation. Plaintiffs are aware of only one case involving Co-Defendants' Tracking Software to reach the summary judgment stage: *Frasco v. Flo Health,*

---

[10] The CMIA and CIPA provide $1,000 and $5,000 in statutory penalties, respectively. *See* CMIA § 56.36(b)(1); CIPA § 637.2(a)(1). The GBL also awards $50.00 in statutory penalties (*see* GBL § 349(h)), which would have totaled $2,500,000,000 in damages for the Class. Plaintiffs remaining claims (e.g., claims pursuant to the CLRA, ILFDBPA, negligence per se, common law negligence, common law invasion of privacy) would provide actual damages, and unjust enrichment would provide disgorgement.
[11] *See, e.g.*, *Frasco v. Flo Health*, No. 3:21-cv-00757 (N.D. Cal.) (Donato, J.); *Doe v. FullStory, Inc.*, No. 3:23-cv-00059 (N.D. Cal.) (Orrick, J.); *In re Meta Pixel Healthcare Litig.*, No. 3:22-cv-03580 (N.D. Cal.) (Orrick, J.).

*Inc.*, 3:21-cv-00757 (N.D. Cal.), ECF No. 485; Fisher Decl. ¶ 28. While the court there denied Google's motion for summary judgment on many of the same issues presented in this case, the record here is still undeveloped, leaving residual uncertainty as to at least some of Defendants' fact-based defenses. Fisher Decl. ¶ 28; *see Moss v. USF Reddaway, Inc.*, No. EDCV15-01541-JAK-FFMx, 2018 WL 5099291, at *7 (C.D. Cal. Feb. 15, 2018) (finding the risk of "proceed[ing] on the merits" weighs in favor of settlement where defendants raised "many substantive defenses" in their unresolved summary judgment motion); *Smith v. Kaiser Found. Hosps.*, No. 18-CV-00780-KSC, 2021 WL 2433955, at *7 (S.D. Cal. June 15, 2021) (finding that risk of "continued litigation" at later stages such as summary judgment weighs in favor of approval where some "factual disputes" remain).

The Settlement eliminates these and other risks of non-recovery to Plaintiffs and the Class and replaces them with certain relief and a positive recovery for each Settlement Class Member. Fisher Decl. ¶ 28; *see Rodriguez*, 563 F.3d at 956-66 ("[O]ne factor that may bear on review of a settlement is the advantages of the proposed settlement versus the probably outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]") (citation and internal quotations omitted).

## 2. Risk of Continuing Litigation

Given the risks associated with continued litigation, approval of the proposed settlement is appropriate. Generally, acceptance and approval of settlement is preferable to litigation, unless the settlement is "clearly inadequate," *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004), and settlements are "favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citing *Rodriguez*, 563 F.3d at 966). By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and better assure recovery for the Class.

Barring settlement approval, the case would require resolution of GoodRx's motions to dismiss and to compel arbitration, then prolonged bilateral discovery, including depositions and substantial written discovery, expert discovery, and summary judgment on Plaintiffs' claims against GoodRx and its defenses. Even if Plaintiffs' claims—and the Settlement Class as defined—survived all of these challenges, they would face risks in a jury trial. Despite every jury selection tool that is available today, it

10

is virtually impossible to predict with any certainty how a jury will evaluate liability and damages, making the ultimate outcome at trial highly uncertain for both Parties. Looking beyond trial, GoodRx or Plaintiffs would also likely appeal the merits of at least some adverse decision, adding several years to disposition, as well as prolonging the life of the risks described herein.

The Settlement, by contrast, accounts for these risks and permits a prompt resolution of this Litigation on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.  Risk of Maintaining Class Action Status

Plaintiffs also face risks in maintaining class status through trial. Assuming that the Court were to grant a motion for class certification, GoodRx could seek an interlocutory appeal or attempt to decertify the Class based on subsequent developments. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time . . . is one that weighs in favor of settlement.") (internal citations omitted). Risk, expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective relief to Plaintiff[s] and the Class" eliminates these risks by ensuring Settlement Class Members receive a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, 2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

### 4.  PG 1(c): The Amount Offered in Settlement

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (quoting *Rodriguez*, 563 F.3d at 965). In assessing the consideration available to Settlement Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citation omitted).

Here, the cash value of the proposed Settlement is $25,000,000 represents an extraordinary result that is: (1) approximately 17 times what the FTC recovered from GoodRx (*see* Section II); and (2) almost double the settlement initially approved in *Hodges* that Interim Co-Lead Class Counsel successfully intervened to block. *See id*.

This amount is reasonable given GoodRx's current financial condition. While, at their maximum, the statutory penalties available under CIPA and CMIA could amount to $300 billion assuming they apply to the nationwide class (*see* Fisher Decl. ¶ 25), GoodRx, which has a total market capitalization of $2 billion (*see* Fisher Decl. ¶ 29; *Hodges*, ECF No. 14 at n.15), could not withstand a judgment of that size. Fisher Decl. ¶ 29. Rather than insist on an illusory, maximum recovery that GoodRx would be unable to pay, the Settlement resolves Plaintiffs' and Settlement Class Members' claims for an estimated $3.31-$11.03 per person.[12] This is in line with other actions involving similarly claims with statutory damages. *See Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524-ALC (S.D.N.Y) (claims rate of 7.6% providing $9.00 per class member in an action alleging violations of the Video Privacy Protections Act); *In re Advocate Aurora Health Pixel Litig*., No. 22-CV-1253 (E.D. Wis.) (claims rate of 22.6% providing $11.64 per class member in an action alleging wiretapping claims). Moreover, the Settlement aids Plaintiffs in pursuing recoveries from the remaining Co-Defendants. *See* Settlement Agreement, § F.1.

Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

### 5.    The Extent of Discovery

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs have received a considerable amount of documents and information from GoodRx in evaluating their claims. Fisher Decl. ¶ 13. This information was then supplemented through the mediation process, and the Parties subsequent discussions. *Id*. Furthermore, the Settlement Agreement requires GoodRx to provide additional discovery, including a Rule 30(b)(6) deposition, and certain class data, that

---

[12] This is calculated assuming a *pro rata* distribution of the Settlement, based on the Settlement Administrator's projections for claims, and subtracting the proposed attorneys' fees and costs, service awards to Plaintiffs, and Litigation Expenses. *See* Section III.C.1, above.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

will assist Plaintiffs in their continued prosecution of the Litigation. Settlement Agreement, § F.1. In short, the proposed Settlement is the result of fully informed negotiations.

### 6.    Experience and Views of Counsel

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Miramontes v. U.S. Healthworks, Inc.*, No. CV15-05689-SJO-AFMx, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the Class") (citing *DIRECTV, Inc.*, 221 F.R.D. at 528). "[T]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Google Location History Litig.*, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024). Interim Co-Lead Class Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Fisher Decl. ¶ 30. They have conducted extensive investigation in this case, and demanded and obtained documents and information in advance of mediation and in discussions with GoodRx's counsel. *Id.* That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of the Settlement.

### B.    Rule 23(e)(2) Factors

#### 1.    The Class Is Adequately Represented

As discussed further below, Plaintiffs' interests here are aligned with other Settlement Class Members' interests because they suffered the same injuries when GoodRx disclosed their personally identifiable and confidential medical information to third parties, including the Co-Defendants, without their consent. *See* Sections V.A.3-4. Because Plaintiffs and the Class suffered these alleged injuries as a result of Defendants' common course of conduct, Plaintiffs have an interest in vigorously pursuing the claims of the Class. *Id.* Further, as elaborated upon below, Plaintiffs' attorneys have extensive experience (Fisher Decl. ¶ 30), and have more than adequately met the obligations and responsibilities of Class Counsel. *See* Section V.A.4. This factor thus favors preliminary approval.

#### 2.    The Settlement Was Negotiated at Arm's Length

This proposed Settlement is the result of extensive negotiations, including two formal mediations. Fisher Decl., ¶¶ 13-14. Not only was the settlement not collusive, but Plaintiffs substantially improved on both the FTC and *Hodges* plaintiffs' results. *See* Section IV.A.4.

Under such circumstances, the proposed Settlement is entitled to a finding of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to make an informed decision about the Settlement and about the legal and factual risks of the case"); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding use of mediators "tends to support the conclusion that the settlement process was not collusive").

### 3.  The Settlement Provides Adequate Relief to the Settlement Class

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the risk, expense, complexity, and likely duration of further litigation," "the risk of maintaining class action status throughout the trial," and "the amount offered in settlement." *Hanlon,* 150 F.3d at 1026. As noted above, the Settlement satisfies all *Hanlon* factors. *See* Section IV.A.1–6, *supra*.

As to "any agreement required to be identified by Rule 23(e)(3)," Plaintiffs report that there is an agreement providing GoodRx with a limited right to terminate the agreement if a certain percentage of the Settlement Class opts out of the Settlement. This kind of agreement is common in class settlements, and does not affect the fairness, reasonableness, or adequacy of the proposed Settlement. *See Mandalevy v. BofI Holding, Inc.*, No. 3:17-CV-667-GPC-MSB, 2022 WL 4474263, at *9 (S.D. Cal. Sept. 26, 2022) (recognizing such "blow-up" provisions are "common," which "guard against the possibility that . . . [d]efendant's potential future liability is not reduced in a way that renders the settlement worthwhile"); *Schneider v. Champignon Brands Inc.*, No. SACV 21-3120 JVS (KESX), 2022 WL 22879587, at *15 (C.D. Cal. Nov. 1, 2022) (finding that such a provision is "common" and "does not weigh against preliminary approval"). Plaintiffs have, in connection with this filing, included a copy of this agreement under seal for the Court's review, as is necessary to protect the Settlement by preventing third parties from

learning the opt out threshold and then enacting a mass opt out campaign to gain undue leverage over Plaintiffs or GoodRx. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) (granting motion to seal a similar provision to "prevent third parties from utilizing [this provision] for the improper purpose of obstructing the settlement and obtaining higher payouts"); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 3879193, at *7 (N.D. Cal. July 18, 2016) (same).

Regarding "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605 JVS (SSX), 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.* Under the terms of the proposed Settlement, Settlement Class Members who make valid claims will be issued, by check or electronic payment, *pro rata* payments from the Settlement Fund. Settlement Agreement § H.7.a. These payments will be made no later than 45 days after the Settlement's Effective Date. *Id.* The claims process "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6; Parks Decl. ¶ 24. The Court should thus find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6. Furthermore, unclaimed funds (*e.g.*, from uncashed checks) will be re-distributed to Settlement Class Members who have made claims so long as each claimant will received at least $5.00. Settlement Agreement § H.7.f.

With respect to "the terms of any proposed award of attorney's fees,"[13] Interim Co-Lead Class Counsel will apply for attorneys' fees and will not exceed 33.33% of the Settlement Fund ($8,333,333.33). Settlement Agreement § L.1. The Ninth Circuit has identified five factors that are relevant in determining requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund, (d) market rates as reflected

---

[13] *See also* PG 6.

15

by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiff and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Although Interim Co-Lead Class Counsel will address each factor in detail in any subsequent fee application, these requirements are easily satisfied now.

First, Interim Co-Lead Class Counsel has secured a $25,000,000 cash settlement. This is an excellent result for the reasons stated above. *See* Section IV.A.4.

Second, Plaintiffs have established that there are significant risks in entering protracted litigation. *See* Sections IV.A.1-3.

Third, the requested fee is consistent with market rates as reflected by awards made in similar cases in this district. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-60 (9th Cir. 2000) (affirming award of 33.5% of $1,725,000 settlement fund in fees); *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming award of 33.3% of $6,000,000 settlement fund in fees); *id.* ("The $2,000,000 requested by class counsel amounts to one-third of this common fund . . . Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class."); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming award of 33.3% of $33,000,000 settlement fund in fees); *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 35% of $8,200,000 settlement fund in fees).

Fourth, in addition to the Settlement Fund, the Settlement requires GoodRx to provide cooperation that will be used to prosecute claims against the Co-Defendants.

Finally, the requested fees are also fair given the significant time Interim Co-Lead Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all, absent successful resolution. Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiffs and the Class, Plaintiffs' Counsel's fee award request of one-third of the total Settlement Value is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement thus provides adequate relief to the Class pursuant to Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4.     The Settlement Treats All Settlement Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). As explained above, there is no preferential treatment here because any Settlement Class Member may make a claim and be paid a *pro rata* portion of the Settlement. *See* Settlement Agreement § H.7.a. Courts in this district have found that allocating settlement benefits among class members in this manner is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *State of California v. eBay, Inc.*, No. 5:12-CV-05874-EJD, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (explaining a proposed settlement is appropriate where it "does not improperly grant preferential treatment to class representatives or segments of the class").[14] Unclaimed funds will be redistributed to Settlement Class Members who have made claims. *See* Settlement Agreement § H.7.f.

Finally, any undistributed funds will go as a *cy pres* distribution to CIS, a "public interest technology law and policy program at Stanford Law School [that] brings together scholars, academics, legislators, students, programmers, security researchers, and scientists to study the interaction of new technologies and the law and to examine how the synergy between the two can either promote or harm public goods like . . . privacy . . . ."[15] Settlement Agreement § H.7.g. Accordingly, the *cy pres* funds will be used to promote internet privacy, among other things, as a public good, thus indirectly benefiting Settlement Class Members. This satisfies the requirements for a *cy pres* award in the Ninth Circuit. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819-22 (9th Cir. 2012); Settlement Agreement § H.7.g. Thus, this factor weighs in favor of granting approval.

### V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

Plaintiffs request that the Court provisionally certify the following nationwide Settlement Class:

All natural persons in the United States who used any website, app, or service made available by or through GoodRx at any point prior to the issuance by the Court of the

---

[14] The service awards requested for Plaintiffs are presumptively reasonable and therefore do "not constitute inequitable treatment of class members." *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (explaining [s]ervice awards as high as $5,000 are presumptively reasonable in this judicial district.").

[15] Center for Internet and Society, *About Us*, https://cyberlaw.stanford.edu/about-us/.

1

2

Preliminary Approval Order.  Excluded from the Settlement Class are (a) Defendant and its affiliates, parents, subsidiaries, officers, and directors; (b) the Opt-Outs; (c) Co-Defendants; as well as (d) the judges presiding over this matter and the clerks of said judges.

3

4

5

6

*See* Settlement Agreement § B.45. Provisional certification permits notice of the proposed Settlement to the Class to inform Settlement Class Members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the formal fairness hearing. *See* Manual for Complex Litig., §§ 21.632, 21.633.

7

8

9

10

The decision whether to certify these actions as class actions is committed to the sound discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23. *See*, *e.g.*, 3 Newberg and Rubenstein on Class Actions § 7:19 (6th ed.); *Hanlon*, 150 F.3d at 1023; *Arnott v. U.S. Citizenship & Immigr. Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012).

11

12

13

14

15

16

17

18

19

20

21

Courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White v. Imperial Adjustment Corp.*, No. CIV.A. 99-3804, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding these consumer claims any differently. In fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1019-23, specifically approved the class certification of a similar nationwide class for settlement purposes. *See also In re Vizio, Inc., Consumer Priv. Litig.*, No. 8:16-ML-02693-JLS-KES, 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019) (conditionally certifying class for settlement of consumer privacy claims); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 363 (N.D. Cal. 2021) (certifying class for settlement purposes in case involving interception of plaintiffs' financial information).

22

23

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires that:

24

(1) the class is so numerous that joinder of all members is impracticable;

25

(2) there are questions of law or fact common to the class;

26

27

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

28

(4) the representative parties will fairly and adequately protect the interests

18

1    of the class.

2    Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact

3    common to the members of the class predominate over any questions affecting only individual members,

4    and that a class action is superior to other available methods for the fair and efficient adjudication of the

5    controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met,

6    and GoodRx consents to provisional certification for settlement purposes. Thus, provisional certification

7    should be granted.

8          **A.**    **The Class Satisfies Rule 23(a)**

9                **1.**    **The Class Is Sufficiently Numerous**

10    Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.

11    Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019. There is "[n]o exact numerical formula" that

12    determines numerosity. *Guzman v. Oxnard Lemon Assocs., Ltd.*, No. CV 91-6957 KN (EX), 1992 WL

13    510094, at *2 (C.D. Cal. Aug. 28, 1992). But numerosity can be presumed with 40 members. *See*

14    *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find

15    numerosity satisfied if the class includes forty or more members.") (citations omitted). Here, the proposed

16    Settlement Class includes approximately 50 million users of the GoodRx Platform. Fisher Decl. ¶ 19.

17    Numerosity is thus satisfied.

18                **2.**    **Common Questions of Law and Fact Exist**

19    Rule 23(a)(2) requires the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2).

20    Commonality means that the "determination of its truth or falsity will resolve an issue that is central to

21    the validity of each one of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d

22    1036, 1042 (9th Cir. 2012)). Commonality is liberally construed, and not all questions of fact and law

23    "need [] be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues

24    with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate

25    legal remedies within the class." *Id.* at 1019-20.

26    The commonality and predominance hurdles are satisfied here. Common questions of law and fact

27    exist as to all Settlement Class Members and predominate over questions affecting only individual

28    Settlement Class Members. These questions include, for example:

- •    Whether GoodRx violated Settlement Class Members' privacy rights;

- •    Whether GoodRx's conduct constituted an invasion of privacy at common law;

- •    Whether GoodRx violated CIPA by aiding, agreeing, employing, and conspiring with Co-Defendants to intercept and use Settlement Class Members' communications;

- •    Whether GoodRx violated the CMIA by disclosing health information to Co-Defendants through their Tracking Software;

Further, virtually all legal theories asserted by Plaintiffs against GoodRx are common to the Class as a whole, which alone is sufficient to establish commonality. *See* Complaint (Counts 1, 3-6, 9, 11-12, 15); *see Hanlon*, 150 F.3d at 1019-20. The three claims against GoodRx that are not asserted on behalf of the whole class are pled in the alternative as to subclasses consisting of residents of the states whose law is invoked in these causes of action. *See* Complaint (Counts 13, 14, 16). Commonality is satisfied.

### 3.    <u>The Plaintiffs' Claims Are Typical</u>

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. To meet this requirement, Plaintiffs need only demonstrate that they "endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Plaintiffs' claims are typical of the claims of the Settlement Class Members in that GoodRx disclosed the identifiable medical information of each Settlement Class Member entered into the GoodRx Platform to third parties, including the Co-Defendants. *See* Complaint ¶¶ 22-59. Thus, because Plaintiffs' claims arise "from the same event or practice or course of conduct that [gave] rise to the claims of other class members and [their claims were] based on the same legal theory," Plaintiffs' claims are typical. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020).

### 4.    <u>Plaintiffs and Their Counsel Adequately Represent the Class</u>

The final threshold is that the named plaintiffs be able fairly and adequately to protect the interests of the class. This determination turns on just two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs

and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008).

Both components of the "adequacy" test are met here. Plaintiffs have actively pursued this Litigation on behalf of the Settlement Class Members. Both Plaintiffs and Settlement Class Members were harmed by GoodRx's alleged misconduct; they also share an identical interest in establishing GoodRx's liability and obtaining a suitable remedy for its violations of law. The proposed Class Representatives have actively participated in and kept abreast of the Litigation while it developed. Fisher Decl., ¶ 32. Plaintiffs will adequately represent the Class and have no conflicts or positions antagonistic to the Class.

B&F and Lowey similarly satisfy the adequacy requirement and should be appointed counsel for Settlement Class. Indeed, the Court has already appointed B&F and Lowey as Interim Co-Lead Class Counsel, and appointed the remaining Plaintiffs' Counsel as liaison counsel and members of an executive committee, based on its finding that the three criteria set forth in Fed. R. Civ. P. 23(g)(1)(A)[16] are met. Order Granting Plaintiffs' Motion for Interim Co-Lead Counsel, ECF No. 112. B&F and Lowey have demonstrated their commitment to the case by, among other things, intervening in *Hodges* to protect the Settlement Class's interests, and obtaining a significant improvement in Settlement as a result. Fisher Decl., ¶ 11.

In retaining these firms, Plaintiffs and proposed Class Representatives have employed counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009). With a wealth of experience in class action and other complex litigation that proposed Interim Co-Lead Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here. *See* Fisher Decl. ¶ 30.

### B.    The Class Satisfies Rule 23(b)(3)

This action is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Settlement Class Members predominate over questions

---

[16] "(i) [T]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

affecting only individual Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of the Class's claims. GoodRx does not oppose provisional class certification for the purpose of effectuating the proposed Settlement. When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem*, 521 U.S. at 593; *Hanlon*, 150 F.3d at 1021-23.

## 1.    Common Questions Predominate

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 621). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013).

As explained in Section V.A.2, common issues predominate here because the Settlement Class's claims against GoodRx can be proven using common evidence. Further, the proposed Settlement does not introduce individual legal or factual issues that would predominate over common issues. Certain manageability concerns are eliminated as there will no longer be a trial. Thus, the predominance requirement is satisfied.

### 2.   Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All of these factors are present here.  There can be no doubt that managing these disputes in a single class action before a single judge is preferable and more manageable than requiring thousands of users to each bring individual actions. The filing fees in such individual actions alone would likely exceed the value of any potential recovery; there would be no incentive for an individual to seek relief on an individual basis and, consequently, no adequate remedy would be reasonably achievable by Settlement Class Members.

## VI.   B&F AND LOWEY SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4).  In making this determination, the Court considers proposed counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer privacy cases and consumer class actions in general.  *See* Section V.A.4.  As a result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief for the Settlement Class Members.  Thus, the Court should appoint B&F and Lowey as Class Counsel, Schubert Jonckheer & Kolbe LLP as Liaison Counsel, and Zimmerman Law Offices, P.C., and Israel David LLC, and the Shub Law Firm LLC as Executive Committee members for the Settlement Class.

1    **VII.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED**

2        The Parties' Proposed Notice Program comports with the Federal Rule and with due process and

3    should be approved.[17]

4        **A.    The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the
             Northern District's Procedural Guidelines[18]**

5        Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide "the

6    best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, No. C-11-01078

7    DMR, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). Utilizing contact information GoodRx's

8    possession, the Settlement Administrator will disseminate Email Notice directly to Settlement Class

9    Members. *See* Settlement Agreement § I.1. The Email Notice will include text describing the key terms

10   of the settlements in addition to providing a link the Settlement Website, which will host additional

11   documents and information, such as the Long-Form Notice, Settlement Agreement, and any updates

12   relating to the final fairness hearing or deadlines in the case. *See id.*; Parks Decl. ¶¶ 10-11.

13       Several courts have approved similar email notice plans, recognizing that email is the most reliable

14   means of notification for Settlement Class Members where, as here, they were required to provide a valid

15   email address when registering to use the GoodRx Platform. *See In re Classmates.com Consol. Litig.*, No.

16   C09-45RAJ, 2010 WL 11684544, at *3 (W.D. Wash. Apr. 19, 2010) (granting preliminary approval and

17   finding email notice "an excellent option here" where "every class member provided an e-mail address to

18   [the defendant] in the process of registering as a user"); *Opperman v. Kong Techs., Inc.*, No. 13-CV-

19   00453-JST, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017) (approving the notice plan which will

20   provide "email notice to every user who downloaded and registered for the app during the relevant time

21   period"); *Shahar v. Hotwire, Inc.*, No. 12-CV-06027-JSW, 2014 WL 12647737, at *2 (N.D. Cal. July 25,

22   2014) (recognizing the "direct e-mail notice" plan was "the best notice practicable under the

23   circumstances"); *Stewart v. Apple Inc.*, No. 19-CV-04700-LB, 2022 WL 3013122, at *5 (N.D. Cal. Feb.

24   17, 2022) (same).

25

26

27   ───────────────
     [17] Plaintiffs understand that GoodRx will be responsible for Class Action Fairness Act (CAFA) notice.
     *See* Settlement Agreement § I.2.

28   [18] PG 3.

                                                    24

**B.    Distribution of the Class Notice Will Comply with Rule 23(c)(2)**

The Settlement Website will be published prior to or contemporaneously with Class Notice. Settlement Agreement § I.1.d; Parks Decl. ¶ 18. The following documents will be posted on the Settlement Website: the Complaint, the Settlement Agreement, the Claim Form, the Long-Form Notice, and any other relevant settlement document as agreed by the Parties. Settlement Agreement § I.1.d; *see also* Settlement Agreement, Exs. A, B (Claim Form and Long-Form Notice).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion.

Dated: November 29, 2024         */s/ L. Timothy Fisher*

L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:    (925) 300-4455
Facsimile:    (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
jgavenman@bursor.com

*Interim Co-Lead Counsel*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone:    (914) 997-0500
Facsimile:    (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**

2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
ascubert@sjk.law

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
**JAVITCH LAW OFFICE**
3 East 3rd Ave., Suite 200
San Mateo, CA  94401
Telephone:    (650) 781-8000
Facsimile:    (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice*)
tom@attorneyzim.com
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone:    (312) 440-0020
Facsimile:    (312) 440-4180

Israel David (*pro hac vice*)
israel.david@davidllc.com
Blake Hunter Yagman (*pro hac vice*)
blake.yagman@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone:    (212) 739-0622
Facsimile:    (212) 739-0628

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone:    (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB & JOHNS LLC**
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone:    (610) 585-1195
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO