**GIBSON, DUNN & CRUTCHER LLP**
LAUREN R. GOLDMAN (*pro hac vice*)
lgoldman@gibsondunn.com
DARCY C. HARRIS (*pro hac vice*)
dharris@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

ELIZABETH K. MCCLOSKEY, SBN 268184
emccloskey@gibsondunn.com
ABIGAIL A. BARRERA, SBN 301746
abarrera@gibsondunn.com
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Attorneys for Defendant Meta Platforms, Inc.*
*(additional counsel listed on signature page)*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

GOODRX HOLDINGS, INC.; CRITEO CORP.; META PLATFORMS, INC.; and GOOGLE LLC,

Defendants.

Case No. 3:23-cv-00501-AMO

**REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT BY DEFENDANTS META PLATFORMS, INC., GOOGLE LLC, AND CRITEO CORP.**

Date: March 13, 2025
Time: 2:00 p.m.
Dept.: Courtroom 10 – 19th Flr.

Action Filed: February 2, 2023
Honorable Araceli Martínez-Olguín

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1
ARGUMENT ..... 2
I. Plaintiffs have not plausibly alleged GoodRx sent their protected health information. ..... 2
II. Plaintiffs have not plausibly alleged intent to intercept protected health information. ..... 4
III. Plaintiffs consented to Meta's, Google's, and Criteo's receipt of their data. ..... 6
IV. Plaintiffs' allegations fail to state any claim as to Criteo. ..... 8
V. Plaintiffs' claims also fail for numerous other reasons. ..... 8
 A. Plaintiffs fail to state a CMIA claim (claims 7 and 8). ..... 8
 B. Plaintiffs fail to state any consumer-fraud claim (claims 12, 13, and 14) ..... 9
  1. The California UCL claim (claim 12) fails. ..... 9
  2. The New York GBL claim (claim 13) fails. ..... 10
  3. The ICFA claim (claim 14) fails. ..... 11
 C. Plaintiffs fail to state a claim under CIPA (claims 9 and 10). ..... 12
 D. Plaintiffs fail to state a privacy tort (claims 1 and 2). ..... 14
 E. Plaintiffs fail to state an unjust enrichment claim (claim 3). ..... 14
VI. The statutes of limitations foreclose or severely limit plaintiffs' claims. ..... 15
CONCLUSION ..... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)....2

*Am. Hosp. Ass'n v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024)....2, 3, 4

*Anonymous v. CVS Corp.*,
728 N.Y.S.2d 333 (Sup. Ct. 2001)....11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2, 8, 10

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024)....5, 6

*Belluomini v. Citigroup Inc.*,
2013 WL 5645168 (N.D. Cal. Oct. 16, 2013)....14

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....12

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)....3, 11

*Cline v. Reetz-Laiolo*,
329 F. Supp. 3d 1000 (N.D. Cal. 2018)....12

*Cody v. Ring*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....13

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018)....11

*Cooper v. Mount Sinai Health Sys., Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024)....11

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023)....8

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024)....1, 2, 3, 4, 5, 6, 8, 9, 10, 14, 15

*Doe v. Regents of Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023)....8

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....10

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ....................15

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*,
771 F.3d 1119 (9th Cir. 2014)....................10

*Gamache v. Airbnb, Inc.*,
2017 WL 3431651 (Cal. Ct. App. Aug. 10, 2017) ....................9

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023)....................6

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................12

*Griffith v. TikTok, Inc.*,
2024 WL 4308813 (C.D. Cal. Sep. 9, 2024) ....................8

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................14

*Heiting v. Taro Pharms. U.S., Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)....................13

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................12, 14

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................14

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................9

*Kis v. Cognism Inc.*,
2024 WL 3924553 (N.D. Cal. Aug. 23, 2024)....................8, 9, 13

*Koehler v. Litehouse*,
2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ....................13

*Lewand v. Mazda Motor of Am.*,
2017 WL 7080291 (C.D. Cal. Aug. 8, 2017) ....................13

*Lloyd v. Facebook, Inc.*,
2024 WL 3325389 (9th Cir. July 8, 2024)....................7

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024)....................12

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ....................11

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ....................12

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................11, 15

*Moore v. Centrelake Med. Grp., Inc.*,
83 Cal. App. 5th 515 (2022)....................9, 15

*Oddei v. Optum, Inc.*,
2021 WL 6333467 (C.D. Cal. Dec. 3, 2021) ....................9

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ....................10

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024)....................3

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....................12

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....................12

*Russell v. Walmart, Inc.*,
680 F. Supp. 3d 1130 (N.D. Cal. 2023) ....................14

*Rutherford Holdings, LLC v. Plaza Del Rey*,
223 Cal. App. 4th 221 (2014)....................15

*Ryan v. Microsoft Corp.*,
147 F. Supp. 3d 868 (N.D. Cal. 2015) ....................16

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................2, 7

*Solarcity Corp. v. Sunpower Corp.*,
2017 WL 1739169 (N.D. Cal. May 4, 2017) ....................8, 12

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ....................12

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015)....................4, 5

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979)....................13

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................11

**Statutes**

Cal. Civ. Code § 56.05(j) ........................................................................................................8

Cal. Penal Code § 631(a) ........................................................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs maintain that Meta, Google, and Criteo are responsible for *GoodRx's* alleged misuse of their standard internet tools because the analytics companies "created their own tracking technology" and "permitted" its use "on a platform"—GoodRx's website and mobile app—that "involves the exchange of private health data." Opp. 1. That confirms the fatal flaw and staggering breadth of plaintiffs' legal theory, which seeks to impose liability on service providers for making available a standard internet tool that a third party purportedly misuses. Plaintiffs' theory, if adopted, would radically reshape how the modern internet functions. And it is wrong: as Judge Chhabria explained in dismissing "another pixel case," there is "nothing inherently unlawful" in creating these commonplace tools, offering them to the public, or allowing third-party websites—even "health care providers"—to use them. *Doe I v. Google LLC*, 2024 WL 3490744, at *1, *4 (N.D. Cal. July 22, 2024) ("*Google Pixel*").

Indeed, plaintiffs' complaint is on even *weaker* footing than the one in *Google Pixel*. The *Google Pixel* complaint at least involved healthcare *providers* who had a patient-provider relationship with their users. Here, GoodRx is merely a platform that allows users to browse for *coupons* to obtain discounted prescriptions (for users themselves or other individuals) from other providers—or even simply read the latest health news—without any patient-provider relationship. Plaintiffs' vague allegations about their use of GoodRx, and about GoodRx's use of Meta's, Google's, and Criteo's tools, fail to plausibly demonstrate that GoodRx sent any protected health information at all. To the extent GoodRx did so, plaintiffs cannot allege Meta, Google, or Criteo *intended* that result merely because they allowed GoodRx (along with millions of other apps and websites) to use their internet tools.

Plaintiffs' efforts to plug these gaps with repeated invocations of the FTC's enforcement action *against GoodRx* backfire. That action against GoodRx alone simply proves the point: GoodRx, not Meta, Google, or Criteo, is responsible for any misuse of standard internet tools on its own platform. Indeed, the FTC's complaint affirmatively noted that Meta's policies "prohibit the sharing of health information with Facebook." And that complaint also alleges that public reporting brought to light *in February 2020* "that GoodRx was sharing health information with Facebook, Google, and other third parties"—a fatal blow to plaintiffs' tolling arguments.

Plaintiffs' claims also fail for a host of other reasons, including the fact that GoodRx expressly disclosed to users that it would use "pixels" and "SDKs" from parties like "Google, Facebook and others" to "track" how users navigated its platform, and the total lack of any relevant facts alleged against Criteo. For these cross-cutting reasons and the numerous other claim-specific defects with plaintiffs' theories, this Court should dismiss the complaint in full.

## ARGUMENT

### I. Plaintiffs have not plausibly alleged GoodRx sent their protected health information.

Plaintiffs have no serious justification for their failure to allege any concrete facts plausibly showing that GoodRx actually sent their *protected health information* to Meta, Google, or Criteo. *See* Mot. 9–10; *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018); *Google Pixel*, 2024 WL 3490744, at *2–3. Their primary response is that the complaint provides "fair notice," Opp. 4, ignoring that they must plead "factual content" showing "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Evidently aware that they have failed to satisfy that burden, plaintiffs try to outsource it by pointing to the FTC's complaint against GoodRx. But that complaint cannot cure the deficiencies in plaintiffs' allegations against Meta, Google, and Criteo. The FTC alleged that GoodRx shared data reflecting the coupons users accessed. *See* Plaintiffs' Request for Judicial Notice ("Plaintiffs' RJN") Ex. A ¶¶ 41–47. But after the FTC filed its complaint against GoodRx, a court invalidated the government's overbroad definition of "individually identifiable health information" as "go[ing] too far" because a user's search for medical resources that are publicly available online (like GoodRx's coupons) does not mean that the user *herself* has any medical condition. *Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865, at *11, *13–14 (N.D. Tex. June 20, 2024) ("Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)."). (The government did not appeal that decision.) Plaintiffs here make the same exact mistake, alleging that five of the six named plaintiffs "used the GoodRx Platform to obtain prescription *coupons*." Opp. 2 (emphasis added).[1] Those allegations show at most only that GoodRx transmitted web-browsing activity, which is not actionable. *See Smith*, 745 F. App'x at 8–9; *accord, e.g.*, *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *8 (N.D. Ill. Sept. 9,

[1] It appears that one plaintiff (E.C.) did not even do that much—according to the complaint, all he did was use GoodRx "to locate prescribing pharmacies" for certain prescription medications. Compl. ¶ 41.

2024) (dismissing claim based on data sent through Meta Pixel because "[a] person could very well search treatments, medical conditions, and potential providers for a partner, parent, or child," or "could also search for treatment that they ultimately do not need or are not eligible to receive"); *Am. Hosp. Ass'n*, 2024 WL 3075865, at *13–14 & n.7.[2]

The cases plaintiffs cite (at 6–7) do not show that searching for publicly available prescription coupons qualifies as protected health information. In *Castillo v. Costco Wholesale Corp.*, the court assumed that data reflecting "search[es] for specific prescriptions" was "*not* protected under the Health Insurance Portability and Accountability Act (HIPAA)"; the court held only that the data may still qualify as "contents" under the federal Wiretap Act—a completely different issue. 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024) (emphasis added). In a separate part of the opinion, the court noted that the plaintiffs "used Costco's website *not only* to search for the availability and pricing of drugs"—*i.e.*, the only thing alleged here—"*but also* to buy and refill prescriptions, to transfer prescription medications from another pharmacy to Costco's pharmacy, and to review co-pay information." *Id.* at *6 (emphases added) (noting this activity revealed details like patient status, immunization information, and health insurance coverage). It was those *additional* activities that *Castillo* contemplated could be protected under HIPAA. Similarly, in *R.C. v. Walgreen Co.*, the data at issue included specific medical purchases, which the court held supported a stronger "inference about the purchaser's [own] health condition" than mere health-related web browsing. 2024 WL 2263395, at *7–9 (C.D. Cal. May 9, 2024). Plaintiffs make no such allegations here, and courts have expressly rejected their attempted expansion of the scope of "protected health information." *See supra* 2–3.

Plaintiffs are left to rely on a single plaintiff, Jane Doe, who (unlike the other plaintiffs) allegedly "used GoodRx's telehealth service, and input[ted] her symptoms and medication history." Opp. 2. But plaintiffs do not allege any of the defendants' internet tools were installed on the pages of the website where Ms. Doe filled out her form. *See Google Pixel*, 2024 WL 3490744, at *2–3 (noting "the

[2] Further, as to Criteo, the FTC's complaint contains only the bare, conclusory allegation that GoodRx purportedly shared "user health information, including information about GoodRx Coupons." Plaintiffs' RJN Ex. A ¶ 47. But the FTC's complaint, like plaintiffs', contains no facts about Criteo, and no plausible support for this allegation (or any others about Criteo). Just like plaintiffs, the FTC *does not allege* any facts concerning any Criteo technology or services GoodRx used, that Criteo's technology could or did transmit medications, prescriptions, conditions, search terms, detailed URLs containing any of this information, or information that could identify individuals. Since the FTC's complaint is devoid of facts as to Criteo, it does not help plaintiffs state any of their claims.

source code can exist on one page of a website but not another" and can be "configure[d]" in different ways to send different information). Plaintiffs complain (at 5) that defendants are demanding allegations about the "innerworkings" of the technology at issue and "granular details" about the data, but that is a strawman. Plaintiffs may not have to allege granular details, but the law requires them to allege facts showing the technology was actually configured to send protected information, not just information about coupons (which requires nothing more than a search on GoodRx.com) or other web browsing. *See Google Pixel*, 2024 WL 3490744, at *2; *Am. Hosp. Ass'n*, 2024 WL 3075865, at *13–14. For the same reason, plaintiffs' finger-pointing (at 5) at various other cases involving allegations about how *other* platforms used pixel tools is irrelevant.

## II. Plaintiffs have not plausibly alleged intent to intercept protected health information.

Even if plaintiffs plausibly alleged that GoodRx configured Meta's, Google's, or Criteo's tools improperly to send protected health information (which they have not), they have not plausibly alleged—as they must—that Meta, Google, or Criteo *intended* that misuse. Mot. 12–15.

Plaintiffs respond that the complaint "allege[s] Defendants were the entities who provided the software, performed the interception, and refused to stop even after they became aware that the types of data they were intercepting included health information." Opp. 9 (emphasis omitted); *see also id.* at 3, 11 (arguing defendants "were on notice"). That argument fails both as a factual matter and as a matter of law. As to the facts: the complaint lacks plausible allegations that Meta, Google, or Criteo was aware of how GoodRx, among countless other third-party web developers, had configured publicly available tools on its own platform. As to the law: the Ninth Circuit's controlling decision in *United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015), requires that a defendant's "conscious objective" be to intercept the communications at issue, such that "the operative question" is "whether the defendant acted consciously and deliberately with the goal" of doing so. *Id.* at 775. Plaintiffs' allegations that the defendants "provided the software," "permitted GoodRx to deploy it," and "refused to stop," Opp. 9, are not enough. As Judge Chhabria explained in *Google Pixel*, there "is nothing inherently unlawful" about offering this technology to the public at large for use on third-party websites, or even with allowing "health care providers" to use it—and "no inference can be drawn that [Meta's, Google's, or Criteo's] failure to prevent providers from using [their] source code entirely somehow reveals an

intent to receive private health information." *Google Pixel*, 2024 WL 3490744, at *4. Nor is it enough to argue that Meta, Google, or Criteo are "capable of preventing the inadvertent transmission of private information from health care provider websites, and that [their] failure to do so is reflective of an intent to obtain the information." *Id.*[3]

Here again, the FTC complaint cuts *against* plaintiffs' argument: the FTC brought suit against GoodRx only; it did not seek to hold Meta, Google, or Criteo liable for GoodRx's alleged actions. Indeed, the FTC acknowledged that Meta's terms "prohibit the sharing of health information." Plaintiffs' RJN Ex. A ¶ 62; *see also* Mot. 5, 13–15 (describing Meta's and Google's terms). Courts have similarly found intent lacking where a plaintiff's claims are based on third-party web developers' allegedly improper conduct. *See Google Pixel*, 2024 WL 3490744, at *3–5; *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024). Plaintiffs deem those decisions "outlier[s]," Opp. 10, but they expressly and correctly resolved the precise issue here, in cases involving Meta and Google. And while plaintiffs point (at 9–10) to cases where intent allegations survived the pleadings, those cases improperly applied a lower, "awareness"-based standard for intent. *See* Mot. 15. Judge Chhabria acknowledged but expressly "disagree[d]" with that lower standard in *Google Pixel*, and for the reasons he explained, it is foreclosed by Ninth Circuit precedent. 2024 WL 3490744, at *5.

Plaintiffs also take issue with Meta's and Google's terms *expressly forbidding* third parties like GoodRx from sending any protected health information. To be clear, even without the terms, plaintiffs have not plausibly alleged that Meta's or Google's "conscious objective" was to intercept protected health information. *Christensen*, 828 F.3d at 775; *see* Mot. 12–13. But plaintiffs' attempts to explain away those terms also do not hold up. Plaintiffs say they are irrelevant because they are "from 2023 and 2024." Opp. 10. But Meta and Google attached prior versions of their terms back to 2018 (for Meta) and 2019 (for Google); plaintiffs do not contend any of the relevant language changed over time. RJN Exs. 3, 17–20, A–B. Plus, the FTC's complaint—which plaintiffs say should be deemed incorporated by reference—states that Meta's terms "prohibit the sharing of health information." Plaintiffs'

[3] Plaintiffs say that *Christensen* rejected a defendant's argument that he "never intended for [his technology] to be misused." Opp. 9. Not so: that portion of *Christensen* rejected the different argument that a defendant must "know that his conduct is unlawful." 828 F.3d at 791. An intent to intercept protected health information (which plaintiffs must allege) is different than knowledge that such conduct is unlawful (which plaintiffs need not allege).

RJN Ex. A ¶ 62. And, as plaintiffs admit (at 10), other courts have relied on these policies in assessing intent. *See Google Pixel*, 2024 WL 3490744, at *3–5; *Desert Care Network*, 2024 WL 1343305, at *7. Here, as there, Meta's and Google's terms underscore that they "purposefully acted so as *not* to receive any personal health information." *Google Pixel*, 2024 WL 3490744, at *4.[4]

While plaintiffs disclaim (at 11–12) the need to satisfy Rule 9(b), their theory that Meta and Google secretly intended for developers like GoodRx to violate their terms clearly sounds in fraud, *see* Mot. 14–15—and, regardless, is implausible under any standard without well-pleaded *facts* to support it. *See Google Pixel*, 2024 WL 3490744, at *5 ("If a plaintiff alleges that the clients of a source code provider use the code contrary to the provider's instructions, the plaintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions."); *see also, e.g.*, Compl. ¶¶ 207, 210–11, 350, 370 (alleging fraud).[5]

**III. Plaintiffs consented to Meta's, Google's, and Criteo's receipt of their data.**

GoodRx's privacy policy expressly disclosed that GoodRx used "technology from Google, Facebook and others, to help us track, segment, and analyze usage of the Services, and to help us or those companies serve more targeted advertising," specifically including "cookies, tags, pixels, SDKs, and similar technologies to track online activity." RJN Ex. 24. That is *exactly* the conduct plaintiffs complain of here, and GoodRx's disclosure of it establishes consent. Mot. 16–17.

Plaintiffs' main response is to reiterate that "GoodRx's privacy policies *between 2017 and 2019*" stated GoodRx would not send third parties data "that reveals a personal health condition or personal health information." Opp. 24–25 (emphasis added; quotation marks omitted). But that language does nothing to vitiate plaintiffs' consent, for two reasons: first, it is qualified by GoodRx's

[4] Plaintiffs also briefly refer (at 3) to a 2017 Google document that they claim shows Google's "'objective' was to expand its technology's use on 'Healthcare' apps and websites precisely so it could obtain this valuable data." This document neither cures plaintiffs' deficient pleadings nor creates factual questions on intent. The document nowhere shows that Google considers a coupon platform like GoodRx to be a "Healthcare" app or website. Nor does Google mention any intent to receive health information, or an intent that the healthcare industry violate Google's terms or federal law.

[5] Plaintiffs' footnoted argument that "[i]ntent is not a requirement for CIPA § 631 claims premised on the 'read[ing]' or 'use' of intercepted data," Opp. 9 n.8, is wrong: as the very case plaintiffs cite confirms, CIPA's prohibition on "read[ing]" is limited to "willful[]" violations, and its prohibition on "use" is limited to "information so obtained" (*i.e.*, by a willful violation). Cal. Penal Code § 631(a); *see Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *11–12 (N.D. Cal. Aug. 22, 2023). Plaintiffs also say intent is not an element of their unjust enrichment, UCL, or GBL claims, but lack of intent means plaintiffs are unable to allege the wrongful conduct necessary to state those claims. Mot. 12 n.4.

express disclosures about the information it shares through "pixels" and "SDKs"; and second, plaintiffs have not alleged GoodRx sent any protected health information (as opposed to browsing data) to begin with. *See* Mot. 16–17. Further, plaintiffs admit that language was removed from GoodRx's policies *in March 2019*. Compl. ¶¶ 12, 104–05, 170. It could not possibly negate plaintiffs' consent after that date, and any claims from before March 2019 would be untimely (with the sole exception of the UCL claim, where the limitations period reaches back to February 2, 2019). *See* Mot. 28–30; *infra* 15–16.

Plaintiffs next argue that "GoodRx's deletion of this language after 2019 likewise does not establish consent because consent requires affirmative disclosures." Opp. 25. But GoodRx's privacy policy *did* "affirmative[ly] disclose[]" its use of "pixels" and "SDKs" from "Google, Facebook and others" to "track online activity." RJN Ex. 24; *see also id.* Exs. 21–24 (similar disclosure in all versions of GoodRx's policy between 2017 and 2023). It is *that* disclosure that establishes consent—so even if the separate language plaintiffs quote affected consent at all, it would not do so after March 2019.[6]

Meta's policies also independently establish consent for Meta to receive data reflecting Facebook users' activity on third-party websites. *See* Mot. 17–19. Plaintiffs say Meta's policy "relate[s] to Meta's services" and "do[es] not apply to GoodRx users." Opp. 26. But Meta's policies bind *Facebook* users—including each plaintiff here, *see* Compl. ¶ 130—and apply to Meta's receipt of "a variety of [users'] information and activities on and off [Meta's] Products." RJN Ex. 2. The Ninth Circuit has held those policies apply to (and establish consent for) data reflecting Facebook users' activity on third-party websites. *Smith*, 745 F. App'x at 8 (affirming dismissal of claims alleging Meta "collect[ed] and us[ed] [the plaintiffs'] browsing data from various healthcare-related websites"); *see also, e.g.*, *Lloyd v. Facebook, Inc.*, 2024 WL 3325389, at *2 (9th Cir. July 8, 2024) (policies "give[] clear notice that third party partners may share data with Facebook"). Retreating, plaintiffs cite cases (at 26) concluding Meta's policies do not establish consent at the pleading stage for certain "sensitive" data—but plaintiffs do not allege GoodRx shared any such data here, *see supra* 2–4, and regardless the motion to dismiss explained why those cases are inconsistent with Ninth Circuit precedent, *see* Mot. 18–19.[7]

[6] Plaintiffs also assert that "GoodRx's January 1, 2023 Privacy Policy . . . is a red herring" because "consent does not apply retroactively." Opp. 25 (emphasis omitted). But the same, or materially similar, language appeared in GoodRx's policies dating back to 2017. *See* RJN Exs. 21–24.

[7] Plaintiffs' argument that "consent does not apply retroactively," Opp. 26, again ignores that Meta made the same or materially similar disclosures since 2018. *See* RJN Exs. 1–2, 4–16; *supra* n.6.

## IV. Plaintiffs' allegations fail to state any claim as to Criteo.

Plaintiffs claim they can use allegations against other defendants to state a cause of action against Criteo. *E.g.*, Opp. 7–8. Not so. *Iqbal*, and the caselaw cited by all parties, make clear that to state any plausible claims, plaintiffs must allege facts regarding how each defendant's technology works, where it was deployed, what information it transmitted, and how each defendant could use the information received.[8] Criteo, Meta, and Google are separate companies with different technologies, business models, and relations to GoodRx. Facts about other defendants are not facts about Criteo. Thus, plaintiffs must allege sufficient facts showing how *Criteo and its technology* cause liability here. There are no such facts in plaintiffs' complaint or in the FTC's complaint. Mot. 7, 11–12; *supra* n.2.

## V. Plaintiffs' claims also fail for numerous other reasons.

### A. Plaintiffs fail to state a CMIA claim (claims 7 and 8).

***Section 56.36 (claim 8).*** Plaintiffs simply ignore the argument that there is no private right of action for this claim. Mot. 19. That alone calls for dismissal with prejudice. *See, e.g.*, *Solarcity Corp. v. Sunpower Corp.*, 2017 WL 1739169, at *5 (N.D. Cal. May 4, 2017).

The claim also fails because CMIA specifically defines "medical information" as information "in possession of or derived from" a healthcare provider (or other specified entities), not from plaintiffs themselves. Mot. 19–20; *see* Cal. Civ. Code § 56.05(j). Plaintiffs' argument (at 22) simply omits that statutory requirement. The cases *against healthcare providers* that plaintiffs cite do not help them—there, unlike here, the information *did* come from a healthcare provider. *See Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 974–75 (S.D. Cal. 2023); *Doe v. Regents of Univ. of Cal.*, 672 F. Supp. 3d 813, 818 (N.D. Cal. 2023) (noting it was "undisputed that [the defendant was] a provider of healthcare" subject to CMIA). And, in any event, browsing for free online coupons does not reveal that plaintiffs themselves had any particular medical condition. Mot. 19–20; *see also supra* 2–4.

***Aiding-and-abetting (claim 7).*** There is no aiding-and-abetting liability under CMIA. Mot. 20. Plaintiffs insist (at 21) there must be such liability because "the right to privacy, and the CMIA,

---

[8] *Iqbal*, 556 U.S. at 664; *see also, e.g.*, *Google Pixel*, 2024 WL 3490744, at *3; *Kis v. Cognism Inc.*, 2024 WL 3924553, at *6 (N.D. Cal. Aug. 23, 2024) ("Courts employ a 'case-specific' inquiry into whether information is content or record information."); *Griffith v. TikTok, Inc.*, 2024 WL 4308813, at *7–8 (C.D. Cal. Sep. 9, 2024) ("determining whether a URL constitutes 'contents' turns on the specific information Defendants obtain from each website"); Mot. 25–26.

sound[] in tort." But California courts consistently "decline[] to apply common law aiding and abetting liability to statutes absent a basis for such liability in the language of the statute itself." *Gamache v. Airbnb, Inc.*, 2017 WL 3431651, at *5 (Cal. Ct. App. Aug. 10, 2017). Plaintiffs do not even attempt to identify any such language or any case imposing aiding-and-abetting liability under CMIA.

Plaintiffs also fail to allege any primary violation by GoodRx, a necessary predicate for any possible aiding-and-abetting liability. Plaintiffs say this argument "fails for the reasons stated in [their] first opposition brief." Opp. 22. That style of argumentation violates this Court's Standing Order and should be disregarded. *See* Standing Order § H.3. In any event, it is also wrong: GoodRx does not maintain "medical information" as that term is defined under CMIA, *supra* 8, and it is not a "provider of health care" because it does not "offer[] hardware or software to consumers for one of the statute's enumerated purposes," *Oddei v. Optum, Inc.*, 2021 WL 6333467, at *2 (C.D. Cal. Dec. 3, 2021).

### B. Plaintiffs fail to state any consumer-fraud claim (claims 12, 13, and 14).

#### 1. The California UCL claim (claim 12) fails.

***No statutory standing.*** Plaintiffs confirm their statutory-standing theory rests on the alleged "loss of their personal information." Opp. 18 (quotation marks omitted). But numerous courts have held that is insufficient. *See* Mot. 20–21. That consensus is not just "three cases," as plaintiffs insinuate. Opp. 19. Rather, multiple recent decisions have canvassed the caselaw and embraced "the weight of the authority in the district and the state" holding that allegations of data misappropriation are not enough. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 943 (N.D. Cal. 2023); *see also, e.g.*, *Google Pixel*, 2024 WL 3490744, at *8 (deeming plaintiffs' position "tenuously supported"). Plaintiffs' position is also contrary to a recent California appellate decision expressly addressing this question in the context of medical data, which rejected the "lost-value-of-PII theory" and held a plaintiff must allege they "attempted or intended to participate in [a market for their data], or otherwise to derive economic value from their PII." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022). Plaintiffs do not allege that here; they dismiss that case (and a similar Ninth Circuit case) in a footnote as "*data breach* cases," Opp. 19 n.17, but that distinction makes no difference.[9]

[9] Plaintiffs cite (at 18) this Court's decision in *Kis*, 2024 WL 3924553, at *7, but *Kis* concerned misappropriation of name and likeness, a form of intellectual property distinct from the data at issue here. Plaintiffs also argue in a footnote that "Jane Doe and Jane Doe II separately have statutory standing because they paid money to use the GoodRx Platform." Opp. 19 n.16. But that could establish statutory

***Plaintiffs are not entitled to restitution or injunctive relief.*** Plaintiffs' UCL claim also fails because they are not entitled to either remedy the UCL offers: restitution or injunctive relief. Mot. 21–22. Plaintiffs say (at 23–24) they can obtain restitution even without having made any payments to Meta, Google, or Criteo. They cite *In re Facebook, Inc. Internet Tracking Litigation*, but that case did not address a UCL claim; it merely held that the "disgorgement" remedy under California law can confer *Article III standing* without a "corresponding loss" by the plaintiff. 956 F.3d 589, 599 (9th Cir. 2020); *see also Google Pixel*, 2024 WL 3490744, at *7 (rejecting similar argument). Plaintiffs accept (at 24) that they cannot obtain injunctive relief against future data sharing now that they are clearly aware of it, and say only that they can still obtain an injunction against "continued use and storage of the data" already shared. But they identify no allegations suggesting this data, allegedly shared years ago, even still exists, much less that Meta, Google, or Criteo are supposedly continuing to use it.

***No unlawful, unfair, or fraudulent conduct.*** In any event, plaintiffs plead no actionable conduct. Mot. 22. Plaintiffs admit (at 18) their "unlawful" theory hinges on their other claims, which fail. They reassert an "unfair" theory, but their argument merely recites the legal test, and "offer[ing] labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation marks omitted). Plaintiffs also run away from Rule 9(b) and the actual-reliance requirement, *see* Opp. 18, even though the (incorrect) basis of their complaint is that "GoodRx's data sharing practices were misrepresented." Opp. 17 n.15; *see also, e.g.*, Opp. 5 ("GoodRx never corrected these misrepresentations"); Compl. ¶¶ 207, 210–11, 350, 370. But "this Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1219–20 (N.D. Cal. 2014); *see also* Mot. 22.

**2. The New York GBL claim (claim 13) fails.**

***No statutory standing.*** Plaintiff E.C. asserts he has statutory standing "because the surreptitious collection of his medical information is a privacy violation." Opp. 20. But similar to the UCL, GBL § 349 requires a "deprivation of income or actual loss," and "courts have historically dismissed

---

standing only *against GoodRx*, not against Meta, Google, or Criteo. *See, e.g.*, *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1135 (9th Cir. 2014) (the "restitutionary relief is limited to money or property lost by the plaintiff *and acquired by the defendant*") (emphasis added).

complaints averring an unquantifiable injury to a privacy interest." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). Plaintiffs object (at 20) that *Williams* "involv[ed] non-medical data," but its analysis was not data-type-dependent. They also assert the "current state of the law" is otherwise, Opp. 20, but in fact *Williams* acknowledged some earlier disagreement and concluded that "[m]ore recent case law . . . has gone a different direction and requires actual harm," 384 F. Supp. 3d at 1050; *see also, e.g.*, *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *8 (S.D.N.Y. July 12, 2018) (collecting cases). Plaintiffs identify two post-*Williams* cases allowing privacy-based claims to go forward, but both are distinguishable. *See Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *10 (S.D.N.Y. July 30, 2024) (asserting claim directly against entity that disclosed information, not entity that received it); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1038 (N.D. Cal. 2019) (defendant argued only that the "*types* of privacy invasions alleged" were not actionable (emphasis added)). This Court should follow *Williams*, which is consistent with the UCL majority view. *See supra* 9.

***No materially misleading act or practice.*** A GBL § 349 claim requires *deceptive conduct*. Mot. 22–23. Receiving data from a third party is not inherently deceptive, and plaintiffs do not point to any deceptive disclosures or omissions by Meta, Google, or Criteo. That requires dismissal. The cases plaintiffs cite—which involved deceit by parties who wrongfully *disclosed* information—do not say otherwise. *See Castillo*, 2024 WL 4785136, at *12 (addressing Washington statute and relying on omissions in defendant's privacy policy); *Anonymous v. CVS Corp.*, 728 N.Y.S.2d 333, 339 (Sup. Ct. 2001) (relying on "defendants' willful nondisclosure" of intent to sell prescription information).

***No causation.*** Plaintiffs acknowledge that *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024) ("*Meta Tax*"), held "not only that there must be a misrepresentation or omission but that plaintiffs actually saw or would have seen the misrepresented or omitted information" to plead causation. Opp. 21. Plaintiffs do not contend they can satisfy that requirement. Instead, they say *Meta Tax* improperly read a reliance requirement into GBL § 349. Not so: *Meta Tax* acknowledged GBL § 349 "does not require actual reliance" while noting it "does require causation," and its analysis was based on the causation element, not a reliance requirement. 724 F. Supp. 3d at 1015.

**3. The ICFA claim (claim 14) fails.**

As in the initial motion-to-dismiss briefing, plaintiffs offer no defense of their ICFA claim, and

that silence calls for dismissal with prejudice. *See Solarcity*, 2017 WL 1739169, at *5.

**C. Plaintiffs fail to state a claim under CIPA (claims 9 and 10).**

***No "confidential" communications.*** The "presumption" under California law is that "Internet communications," specifically including "browsing activity," do not give rise to a reasonable expectation of confidentiality. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *see also* Mot. 24. Plaintiffs assert "there is no such presumption" and cite one case in support. Opp. 15. But a mountain of other cases expressly says the opposite.[10]

In any event, the parties agree "certain internet communications" may be confidential. *M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (Martínez-Olguín, J.). But plaintiffs *at least* must identify something more than browsing data, because "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis omitted). They do not. Instead, plaintiffs' argument relies on mischaracterizing the data here as "[p]ersonal medical information." Opp. 15–16. But they allege only that GoodRx shared data reflecting web browsing on GoodRx.com's public pages, and only one plaintiff even alleges she sought medical care through the GoodRx platform. *See supra* 2–4.[11] That is not "medical information." *Compare, e.g., M.G.*, 2024 WL 4219992, at *5 (plaintiff "entered information about his mental health concerns and therapist preferences on a website that is a mental healthcare conduit"); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022) ("Communications made in the context of a patient-medical provider relationship are readily distinguishable from online communications in general.").

***Out-of-state plaintiffs' communications not "sent from" or "received at" California.*** Four of the six plaintiffs—those not residing in California—fail to allege under CIPA § 631 that their communications were "sent from" or "received at" California. Mot. 25. Plaintiffs rely (at 12) on boilerplate

[10] *See, e.g., Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1052 (S.D. Cal. 2023); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051–52 (N.D. Cal. 2018); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *In re Google Inc.*, 2013 WL 5423918, at *22 (N.D. Cal. Sept. 26, 2013).

[11] And as to Criteo, plaintiffs do not even allege Criteo received browsing data. Mot. 7.

allegations that Meta and Google "maintain their principal places of business in California, where they designed, contrived, agreed, conspired, effectuated, and/or received the interception and use of the contents of [plaintiffs'] communications." Compl. ¶ 312. That "and/or" allegation does not even assert receipt in California on its own terms, much less allege any facts to support that bald conclusion. That GoodRx "is also based in California," Opp. 12, does not allege where the communications were sent from or received at, either.[12] The court in *Hammerling v. Google LLC* rejected near-identical allegations, and this Court should do the same. *See* 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022).

And there is nothing (not even boilerplate) permitting out-of-state plaintiffs to assert California claims against Criteo. Mot. 25. Plaintiffs' response (at 29) relies on section IV.C.i of their brief, which solely cites complaint paragraphs having nothing to do with Criteo (¶¶ 60, 312). And contrary to plaintiffs' argument, courts regularly dismiss California claims at this stage, including to avoid the serious due process problems they pose. *Koehler v. Litehouse*, 2012 WL 6217635, at *7 (N.D. Cal. Dec. 13, 2012); *Lewand v. Mazda Motor of Am.*, 2017 WL 7080291, at *3 (C.D. Cal. Aug. 8, 2017).

***The "party exception" applies to Criteo.*** Section 631 "appl[ies] only to eavesdropping by a third party and not to recording by a participant." *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979). Even under the narrowest view of the party exception, "plaintiff[s] still must have at least pled some non-conclusory factual allegations," *Heiting v. Taro Pharms. U.S., Inc.*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023), to support the third party's capability to use the information for "*another purpose*" than that of the website (GoodRx). *Cody v. Ring*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (emphasis added). Plaintiffs fail to do this. The cited complaint paragraphs (at 13) do not relate to Criteo, are wholly conclusory, or both, and allege *no facts* supporting use by Criteo for a purpose other than GoodRx's.

***Plaintiffs do not allege Criteo received any "contents."*** In all the cases plaintiffs cite (at 14), the complaints contained *non-conclusory facts* plausibly alleging interception of information that qualifies as "contents" of a communication under CIPA. By contrast, CIPA claims fail where the complaint lacks sufficient facts. *Kis*, 2024 WL 3924553, at *6; Mot. 26. Here, the complaint has only a bare, conclusory characterization of unspecified data as "medical data," but contains no facts supporting this.

[12] Plaintiffs' cited paragraphs do not relate at all to Criteo, a Delaware company based in New York.

No facts plausibly allege that Criteo's technology could or did transmit search terms, medicine names, conditions, detailed URLs containing such information, or any other information that was the intended message of plaintiffs' communications.

**D. Plaintiffs fail to state a privacy tort (claims 1 and 2).**

Plaintiffs' attempt (at 16–17) to make out a reasonable expectation of privacy and a highly offensive intrusion fails. Plaintiffs again mischaracterize the data here as "[p]ersonal medical information." Opp. 17 (quotation marks omitted). That relabeling effort fails for the reasons above. *See supra* 12. Plaintiffs also mischaracterize *Hubbard*, which held that "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." 2024 WL 3302066, at *7 (emphasis omitted). Plaintiffs say the *Hubbard* plaintiffs had "attempted to assert an expectation of privacy in *all* browsing data, regardless of the type of data collected or website visited." Opp. 17. Not so: that case concerned the collection of specific data (YouTube video-viewing) from children, allegedly in violation of the Children's Online Privacy Protection Act. *See Hubbard*, 2024 WL 3302066, at *2, *7–8. Plaintiffs retort that the data collection here was "surreptitious." Opp. 17. That is wrong, *see supra* 6–7, and regardless it would not clear the "high bar for an invasion of privacy claim." *Belluomini v. Citigroup Inc.*, 2013 WL 5645168, at *3 (N.D. Cal. Oct. 16, 2013). Courts have rejected such claims even when they involve "highly personal information" and even when the information "was transmitted without [p]laintiffs' knowledge and consent." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 190 (N.D. Cal. 2022) (first quote); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (second quote).[13]

**E. Plaintiffs fail to state an unjust enrichment claim (claim 3).**

***No actionable wrong.*** Under California law, "[i]t must ordinarily appear that the benefits were conferred by mistake, fraud, coercion or request; otherwise, though there is enrichment, it is not unjust." *Russell v. Walmart, Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (quotation marks and citation omitted). Plaintiffs say (at 23) Meta, Google, and Criteo "collected and misused [their] private health data for their own financial gain without [their] authorization or compensation." Judge Chhabria

[13] Plaintiffs cite no cases holding that Google Analytics' collection of information is highly offensive. *See* Opp. 17; *see also Google Pixel*, 2024 WL 3490744, at *4 ("[t]here is nothing inherently unlawful about Google offering its source code to health care providers").

rejected the same argument. *See Google Pixel*, 2024 WL 3490744, at *10. And plaintiffs' theory is particularly deficient given that (1) Meta, Google, and Criteo did not act unjustly merely by allegedly receiving information GoodRx chose to send, and (2) plaintiffs have given no account of how any of their data is now "less valuable to them." *Moore*, 83 Cal. App. 5th at 538–41.

***Barred by contract.*** Plaintiffs' unjust enrichment claim against Meta also fails because Meta's policies expressly cover "the same subject matter" as plaintiffs' claims—*i.e.*, receipt of data from third-party websites that use Meta's Business Tools. *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014); Mot. 17–19. Plaintiffs say (at 23) those policies are limited to "the *Facebook* platform." But again, those policies bind *Facebook users*, and they apply broadly to users' data collected by Meta's Business Tools on third-party platforms. *See supra* 7. Even if plaintiffs were correct that the data at issue here exceeded the scope of consent secured through Meta's policies (and they are not), the policies still cover this subject matter. *See* Mot. 27 (citing cases). Plaintiffs' reliance (at 23) on *Meta Tax* is also unavailing. The basis for the court's decision in that case was that "Meta ha[d] not established that the parties had a contract." 724 F. Supp. 3d at 1008. Plaintiffs do not contest that they have a contract with Meta as Facebook users; they simply dispute the scope of that contract.

## VI. The statutes of limitations foreclose or severely limit plaintiffs' claims.

The applicable statutes of limitations bar many of plaintiffs' claims—and, importantly, bar all claims but one (the UCL claim, for a short two-month period) that arose before March 2019, when GoodRx removed from its policy the language plaintiffs rely on to argue they did not consent. *See supra* 6–7; Mot. 28–30. Plaintiffs' boilerplate responses (at 27–29) do not show otherwise.

***Discovery rule.*** The discovery rule "only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action," and "plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807–08 (2005) (quotation marks, emphasis, and alterations omitted). Here, sources dating back to 2019 put plaintiffs on notice of their claims. Mot. 29.

Plaintiffs respond that "the earliest date of discovery was the filing of the FTC complaint [in February 2023] because this was the first time Defendant's conduct was revealed." Opp. 27. Their

allegations to that effect are conclusory, *see* Mot. 27, but plaintiffs now have a much bigger problem: In their opposition brief, plaintiffs *affirmatively request* incorporation by reference of the FTC complaint, and that complaint alleges that "GoodRx's privacy violations first came to light in February 2020" when "*Consumer Reports* published an article . . . reporting that GoodRx was sharing health information with Facebook, Google, and other third parties." Plaintiffs' RJN Ex. A ¶¶ 7, 55–62 (capitalization omitted). Those allegations, which plaintiffs themselves now adopt as their own, establish (at least) inquiry notice—and even assuming the clock did not start until that article's publication in February 2020, that bars all but the UCL, GBL, and (abandoned) ICFA claims. *See* Mot. 28.

Plaintiffs also invoke (at 29) the recurring violations doctrine, asserting violations continued "through at least February 22, 2023." Opp. 29. But the allegations plaintiffs cite do not say that; they discuss (1) when each plaintiff used GoodRx and (2) when the FTC resolved its allegations against GoodRx. *See* Compl. ¶¶ 23, 29, 36, 41, 196–99. Indeed, plaintiffs' complaint and the FTC complaint both suggest that GoodRx stopped using the pixel and SDK technology at issue in 2020. *See* Mot. 28; Plaintiffs' RJN Ex. A ¶¶ 63–66. And again, there cannot be any violations after March 2019, when GoodRx removed the policy language plaintiffs rely on to say they did not consent. *See supra* 6–7.

***Fraudulent concealment.*** Plaintiffs' fraudulent concealment theory fails because plaintiffs identify no affirmative misleading acts by Meta, Google, or Criteo. Mot. 29–30. Plaintiffs' response proves the point: they say Meta, Google, and Criteo "intercepted" their data "*while GoodRx* represented that such interception would never occur." Opp. 28 (emphasis added). Plaintiffs' theory that interception itself is an "affirmative act" fails because fraudulent concealment requires "affirmative acts *to mislead*." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 885 (N.D. Cal. 2015) (emphasis added). Additionally, the fraudulent concealment rule does not apply where a plaintiff had "actual or constructive knowledge of the facts giving rise to its claim" or failed to act with "diligen[ce]." *Id.* This theory also fails because, as explained above, plaintiffs were on inquiry notice. *See supra* 15–16.

## CONCLUSION

The complaint should be dismissed with prejudice.

DATED: December 13, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman

*Attorneys for Defendant Meta Platforms, Inc.*

**WILLKIE FARR & GALLAGHER LLP**

By: */s/ Benedict Y. Hur*
Benedict Y. Hur (SBN 224018)
Simona A. Agnolucci (SBN 246943)
Eduardo E. Santacana (SBN 281668)
Tiffany Lin (SBN 321472)
Yuhan Alice Chi (SBN 324072)

333 Bush Street, 34th Floor
San Francisco, CA 94104
bhur@willkie.com
sagnolucci@willkie.com
esantacana@willkie.com
tlin@willkie.com
ychi@willkie.com
Telephone: (415) 858-7400

*Attorneys for Defendant Google LLC*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**

By: */s/ Tenaya Rodewald*
Tenaya Rodewald, Cal. Bar No. 248563
1540 El Camino Real Suite 120
Menlo Park, California 94025-4111
Telephone: 650.815.2600
Facsimile: 650.815.2601
Email: trodewald@sheppardmullin.com

Thomas Dillickrath (admitted *pro hac vice*)
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006-6801
Telephone: (202) 747-1900
Facsimile: (202) 747-1901
Email: tdillickrath@sheppardmullin.com

Sarah A. K. Blitz
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398
Email: sblitz@sheppardmullin.com

*Attorneys for Defendant Criteo Corp.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Lauren R. Goldman, hereby attest under penalty of perjury that concurrence in the filing of this document has been obtained from all signatories.

DATED: December 13, 2024

**GIBSON, DUNN & CRUTCHER LLP**

By: */s/ Lauren R. Goldman*
Lauren R. Goldman