Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Additional Counsel for Plaintiffs on
Signature Page*

L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
jgavenman@bursor.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JANE DOE, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., et al.,<br><br>Defendants. | Lead Case No.: 3:23-cv-00501-AMO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS GOODRX HOLDINGS, INC. AND CRITEO CORP.; SUPPORTING MEMORANDUM OF LAW**<br><br>CONSOLIDATED CLASS ACTION<br><br>COMPLAINT FILED: February 2, 2023<br><br>Judge:    Hon. Araceli Martínez-Olguín<br><br>Date:    January 8, 2026<br>Time:    2:00 PM<br>Courtroom:  10 – 19th Floor<br>          San Francisco Courthouse |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on January 8, 2026, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 10 on the 19th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable Araceli Martínez-Olguín presiding, Plaintiffs Jane Doe, Jane Doe II, John Doe, E.C., Jose Marquez, and Hollis Wilson ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) preliminarily approve the proposed Amended Class Action Settlement Agreement and Release (the "Settlement Agreement") with GoodRx Holdings, Inc. ("GoodRx") and Criteo Corp. ("Criteo") submitted herewith; (ii) provisionally certify the Settlement Class for the purposes of settlement, designate Plaintiffs as the Class Representatives, and appoint the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing (the "Motion").

This Motion is made on the grounds that the terms of the proposed Settlement Agreement are fair, reasonable, and adequate and because each requirement of Rule 23(e) has been met. Preliminary approval of the Settlement is therefore proper. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "[Proposed] Preliminary Approval Order").

The Motion is based on the Declaration of L. Timothy Fisher dated November 26, 2025 (the "Fisher Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Law filed herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated: November 26, 2025

*/s/ Christian Levis*
Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)

**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile:  (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
jgavenman@bursor.com

*Interim Co-Lead Counsel*

*All Plaintiffs' Counsel Listed on Final Signature Page*

1
2

# TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES ................................................................................................. iii

MEMORANDUM OF LAW ................................................................................................. 1

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND ....................................................................... 4

III.   INFORMATION ABOUT THE PROPOSED SETTLEMENT ............................ 6

   A.   PG (1)1: Class Definition ............................................................................ 6

   B.   PG (1)2: The Claims to be Released ........................................................... 8

   C.   PG (1)4: Other Cases Affected by the Settlement ...................................... 9

   D.   PG (1)5, (1)7, (6), (7), (8): Allocations and Payments from the Settlement Fund ......................... 9

     1.   The Settlement Fund .......................................................................... 9

     2.   Service Awards ................................................................................ 11

     3.   Attorneys' Fees and Expense Award ............................................... 11

   E.   PG (1)6 & PG (2): Settlement Administration ........................................... 11

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................. 13

   A.   The *Hanlon* Factors ..................................................................................... 14

     1.   Strength of Plaintiffs' Case .............................................................. 14

     2.   Risk of Continuing Litigation .......................................................... 18

     3.   Risk of Maintaining Class Action Status ......................................... 19

     4.   PG (1)3: The Amount Offered in Settlement ................................... 19

     5.   The Extent of Discovery .................................................................. 23

     6.   Experience and Views of Counsel ................................................... 23

   B.   Rule 23(e)(2) Factors .................................................................................. 23

     1.   The Class Is Adequately Represented .............................................. 23

     2.   The Settlement Was Negotiated at Arm's Length ............................ 24

     3.   The Settlement Provides Adequate Relief to the Settlement Class ......... 24

     4.   The Settlement Treats All Settlement Class Members Equally .......... 27

V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ................. 28

   A.   The Class Satisfies Rule 23(a) .................................................................... 29

     1.   The Class Is Sufficiently Numerous. ............................................... 29

     2.   Common Questions of Law and Fact Exist. ..................................... 30

3. The Plaintiffs' Claims are Typical. ............................................................. 31

4. Plaintiffs and Their Counsel Adequately Represent the Class. ............................... 31

B. The Class Satisfies Rule 23(b)(3) ................................................................. 32

1. Common Questions Predominate. ............................................................. 33

2. Superiority. ............................................................................................ 33

VI. B&F AND LOWEY SHOULD BE APPOINTED AS CLASS COUNSEL ............................... 34

VII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ................................................ 34

A. The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern District's Procedural Guidance ................................................................. 35

CONCLUSION ................................................................................................................. 35

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarez v. Sirius XM Radio Inc.*,
   No. CV 18-8605, 2020 WL 7314793 (C.D. Cal. July 15, 2020) .................................................. 25, 26

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................................................... 28, 32, 33

*Arnott v. U.S. Citizenship & Immigr. Servs.*,
   5290 F.R.D. 579 (C.D. Cal. 2012) ............................................................................................. 28

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ............................... 33

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................................. 33

*Carlotti v. ASUS Computer Int'l*,
   No. 18-cv-03369, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ............................................... 13

*Carter v. XPO Logistics, Inc.*,
   No. 16-cv-01231, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ................................................ 14

*Cavin v. Home Loan Ctr., Inc.*,
   236 F.R.D. 387 (N.D. Ill. 2006) ................................................................................................. 28

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F. 3d 566 (9th Cir. 2004) .................................................................................................... 14

*Cole et al. v. Quest Diagnostics, Inc.*,
   No. 25-1449, 2025 WL 3172640 (3d Cir. Nov. 13, 2025) ....................................................... 17

*Cottle v. Plaid Inc.*,
   340 F.R.D. 356 (N.D. Cal. 2021) .............................................................................................. 29

*DellaSala v. Samba TV, Inc.*,
   No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ................................... 3, 20

*Dexter's LLC v. Gruma Corp.*,
   No. 23-cv-212, 2023 WL 8790268 (S.D. Cal. Dec. 19, 2023) .............................................. 16

*Doe v. Eating Recovery Center, LLC*,
   No. 23-CV-05561, 2025 WL 2983143 (N.D. Cal. Oct. 17, 2025) ........................................... 17

*Elder v. Hilton Worldwide Holdings, Inc.*,
   No. 16-cv-00278, 2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) .......................................... 13

iii

*Evans v. Linden Rsch., Inc.*,
  No. C-11-01078, 2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ........................................ 35

*Foster v. Adams & Assocs., Inc.*,
  No. 18-cv-02723, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ...................................... 30

*Frasco v. Flo Health, Inc.*,
  349 F.R.D. 557 (N.D. Cal. 2025) ................................................................................. 16, 21

*Frasco v. Flo Health, Inc.*,
  No. 21-cv-00757, 2025 WL 1476905 (N.D. Cal. May 22, 2025) ............................... 17, 20, 21

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
  No. CV 08 1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................... 14

*Guzman v. Oxnard Lemon Assocs., Ltd.*,
  No. CV 91-6957, 1992 WL 510094 (C.D. Cal. Aug. 28, 1992) ....................................... 29

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. passim

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ........................................................................................ 8

*Hester v. Vision Airlines, Inc.*,
  No. 2:09–cv–00117, 2009 WL 4893185 (D. Nev. Dec. 16, 2009) ..................................... 32

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018) .............................................................................. 8, 11

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617, 2017 WL 9614789 (N.D. Cal. Aug. 25, 2017) ................................... 25

*In re Extreme Networks, Inc. Sec. Litig.*,
  No. 15-cv-04883, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ...................................... 27

*In re Google Location History Litig.*,
  No. 5:18-cv-05062, 2024 WL 1975462 (N.D. Cal. May 3, 2024) ..................................... 23

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .......................................................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................................. 23, 26

*In re Netflix Privacy Litig.*,
  No. 5:11–CV–00379, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................. 19

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................ 13 , 26

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................... 13

*In re Vizio, Inc., Consumer Priv. Litig.*,
    2019 WL 12966638 (C.D. Cal. July 31, 2019) ................................................. 12

*In re Vizio, Inc., Consumer Priv. Litig.*,
    No. 8:16-ml-02693, 2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) .................... 29

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No.,
    C-07-5944, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ............................... 22

*Johnson v. Triple Leaf Tea Inc.*,
    No. 3:14-cv-01570, 2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) .................... 19

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) ......................................................................... 31

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ............................................................. 19

*Krommenhock v. Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020) ..................................................................... 29

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ........................................................................... 28

*Larsen v. Trader Joe's Co.*,
    2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................................... 18

*Linney v. Cellular Alaska P'ship*,
    No. C–96–3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) .................... 26

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152 (9th Cir. 2001) ......................................................................... 33

*Mandalevy v. BofI Holding, Inc.*,
    No. 3:17-CV-667, 2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) ..................... 25

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ........................................................................... 20

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ......................................................................... 30

*Miramontes v. U.S. Healthworks, Inc.*,
    No. CV 15-05689, 2017 WL 11633665 (C.D. Cal. Sept. 5, 2017) ..................... 23

*Moss v. USF Reddaway, Inc.*,
    No. ED CV15-01541, 2018 WL 5099291 (C.D. Cal. Feb. 15, 2018) .................. 17

v

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 18, 19, 23

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ................................................................ 14, 19

*Opperman v. Kong Techs., Inc.*,
    No. 13-CV-00453, 2017 WL 11676126 (N.D. Cal. July 6, 2017) ..................... 35

*Pena v. Taylor Farms Pac., Inc.*,
    No. 2:13-cv-01282, 2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ...................... 14

*Perks v. Activehours, Inc.*,
    No. 5:19-cv-05543, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ............... 24, 27

*Pipich v. O'Reilly Auto Enterprises, LLC*,
    No. 3:21-cv-01120, 2024 WL 2885342 (S.D. Cal. June 7, 2024) ...................... 14

*Ramirez v. TransUnion LLC*,
    951 F.3d 1008 (9th Cir. 2020) .................................................................. 31

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ........................................................ 14, 18, 19

*Schneider v. Champignon Brands Inc.*,
    No. SACV 21-3120, 2022 WL 22879587 (C.D. Cal. Nov. 1, 2022) .................... 25

*Sciortino v. Pepsico, Inc.*,
    No. 14-cv-00478, 2016 WL 3519179 (N.D. Cal. June 28, 2016) ...................... 14

*Shahar v. Hotwire, Inc.*,
    No.12-cv-060272014, WL 12647737 (N.D. Cal. July 25, 2014) ....................... 35

*Smith v. Kaiser Found. Hosps.*,
    No. 18-cv-00780, 2021 WL 2433955 (S.D. Cal. June 15, 2021) ...................... 17

*State of California v. eBay, Inc.*,
    No. 5:12–CV–05874, 2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ................... 27

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................... 31

*Thomas v. Magnachip Semiconductor Corp.*,
    No. 14-cv-01160, 2016 WL 3879193 (N.D. Cal. July 18, 2016) ...................... 25

*Torres v. Pet Extreme*,
    No. 1:13–cv–01778, 2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ..................... 16

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................. 33

vi

*Vandervort v. Balboa Cap. Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................................ 16

*Vigil v. Muir Medical Group IPA, Inc.*,
   84 Cal. App. 5th 197 (2022) .................................................................................... 16

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09–00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ....................... 24

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................................... 26, 27

*Wellens v. Sankyo*,
   No. C 13-00581, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) .......................... 27

*White v. Imperial Adjustment Corp.*,
   No. Civ.A. 99–3804, 2002 WL 1809084 (E.D. La. Aug. 6, 2002) ....................... 28

*Wolin v. Jaguar Land Rover N. Am. LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................................ 34

**RULES**

Fed. R. Civ. P. 23 ......................................................................................... i, 28, 29, 34

Fed. R. Civ. P. 23(a) ............................................................................................ i, 29

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 29

Fed. R. Civ. P.  23(a)(2) ........................................................................................... 30

Fed. R. Civ. P.  23(a)(3) ........................................................................................... 31

Fed. R. Civ. P. 23(b) ................................................................................................ 29

Fed. R. Civ. P. 23(b)(3).................................................................................... passim

Fed. R. Civ. P.23(c)(2) ...................................................................................... ii, 35

Fed. R. Civ. P.  23(c)(2)(B) ..................................................................................... 35

Fed. R. Civ. P. 23(e) ............................................................................................ 2, 25

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................... 13

Fed. R. Civ. P.23(e)(2)............................................................................. i, 13, 14, 27

Fed. R. Civ. P. 23(e)(2)(C)(i-iv) ............................................................................. 24

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................... 27

Fed. R. Civ. P. 23(e)(2)(D) ..................................................................................... 27

Fed. R. Civ. P.23(e)(3) ...................................................................................... 14, 24

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................... 32

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ........................................................................ 34

Fed. R. Civ. P. 23(g)(1), (4) ................................................................................. 34

**OTHER AUTHORITIES**

3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:19 (6th ed.) ....................... 28

MANUAL FOR COMPLEX LITIGATION, Second § 30.44 (1985) ............................... 13

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

# MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiffs and proposed Class Representatives Jane Doe, Jane Doe II, John Doe, E.C., Jose Marquez, and Hollis Wilson (collectively, "Plaintiffs") respectfully request the Court's preliminary approval of an amended **$32 million** nationwide class settlement with two of the four defendants in this case—GoodRx Holdings, Inc. and Criteo Corp. (collectively, "Defendants").[1] This Settlement reflects an excellent resolution with these two Defendants, reached after months of hard-fought negotiations (*see* Section II, below). If approved, Settlement Class Members will receive immediate monetary relief from the Settlement Fund while Plaintiffs continue to pursue additional recoveries from the two Remaining Defendants. This Settlement now recovers ***approximately 21 times*** what the Federal Trade Commission ("FTC") obtained from GoodRx for the same alleged unauthorized disclosure of prescription information and other health data through SDKs and Pixels (collectively, "Tracking Software") alleged here. *See* Fisher Decl. Ex. 2 at 22 ("FTC Order") (ordering GoodRx to pay a $1.5 million penalty). Taking into consideration this Court's initial questions concerning the original settlement between Plaintiffs and GoodRx (the "GoodRx Settlement") (June 12, 2025 Hearing Tr. at 11:12-19:7, ECF No. 237), and as further discussed herein, Plaintiffs believe that the current Settlement is a fair, reasonable, and adequate outcome for the Class, particularly in light of the enhanced settlement value and inclusion of Criteo.

The Settlement Class as defined in the Settlement Agreement tracks the Class defined in Plaintiffs' complaint, with some minor adjustments to the language to address the concerns raised by the Court at the June 12, 2025 hearing and to ensure Settlement Class Members can easily identify themselves based on their interactions with GoodRx. *See* Section III.A, *infra*. The proposed Released Claims definition similarly covers the scope of claims in the Litigation and is tailored to ensure the Settlement achieves a global resolution with respect to any claims that could arise from the same facts and circumstances of the Litigation. *See* III.B, *infra*.

In the original motion in support of preliminary approval of the GoodRx Settlement, Plaintiffs estimated that the Settlement Class at the time would be 50 million individuals. *See* ECF No. 220 at 30.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1, to the Declaration of L. Timothy Fisher (the "Fisher Decl.").

This estimate was based on information provided by GoodRx in late 2023 when the parties began negotiating the GoodRx Settlement. *See* Fisher Decl. ¶ 13; ECF 191. While the Settlement Class had been defined to include "all natural persons who used any website, app, or service made available by or through GoodRx at any point prior to the issuance by the Court of the Preliminary Approval Order," *see* ECF No. 220-4 ¶ B.45 (Settlement Class definition in the GoodRx Settlement), the Parties have now agreed (again in light of comments made by the Court at the June 12, 2025 hearing) to amend the Settlement Class definition such that it includes only "natural persons in the United States who used any website, app, or service made available by or through GoodRx *at any time prior to April 20, 2024*," the date certain on which the Plaintiffs and GoodRx reached an agreement in principle to settle (as opposed to going until the to-be-determined date of preliminary approval). Settlement Agreement ¶ B.48 (emphasis added). Based on new additional information supplied by GoodRx since the June 2025 hearing, as of April 2024 the Settlement Class is estimated to be approximately 54.8 million individuals. Fisher Decl. ¶ 17. This amendment of the Settlement Class definition provides clarity and certainty regarding the scope of the class. It also ensures that users can readily determine whether they fall within the Settlement Class based on the timing of when they allegedly used the service.

While the Class objectively includes a large number of individuals, a settlement at this juncture and at the proposed amount makes sense for several reasons. First, and most importantly, the Settlement resolves significant risks. If the case proceeded in litigation, GoodRx would have argued that up to 28 million individuals who registered for its services after 2020 agreed to arbitrate their claims in GoodRx's terms of use and should be excluded from the litigation class. *See* ECF No. 107 at 17; *see also* Fisher Decl. ¶ 17. GoodRx also argued that this same provision applied to many *pre-2020* users as well, if they continued using GoodRx services once its mandatory arbitration provision went into effect. *See* ECF No. 107 at 12 (arguing Plaintiff Jane Doe II, who alleged she began using GoodRx in 2016, should be compelled to arbitration by using GoodRx Gold in March 2020). While Plaintiffs dispute the validity and application of GoodRx's arbitration provision (*see* ECF No. 126), had GoodRx prevailed on any of these arguments in its pending motion, the Class size may have been reduced considerably. Moreover, if GoodRx were successful, these arbitration-related issues could have presented significant challenges in obtaining class certification, as they would require separating out GoodRx users who could be compelled

to arbitration versus those who could not.

Second, data provided by GoodRx since the filing of the action shows that a limited number of Class members likely had viable claims under the CMIA and/or CIPA. These California statutes are among the most relevant for valuing potential classwide recovery because they are the only claims that carry statutory damages. While this provides value for the Class, some courts have found that these claims can only be brought by California residents unless the presumption against extraterritoriality is rebutted. *See DellaSala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (finding non-California residents' attempts to bring CIPA claims would violate the presumption against extraterritoriality). Based on GoodRx's data, it appears that ***less than 10% of all website visitors reside in California***. Fisher Decl. ¶ 17. If the Parties had continued litigating this case, GoodRx would likely have argued that only these individuals could recover under CIPA and the CMIA, potentially limiting the scope of these claims and any potential recovery solely to California residents.

Third, because the CMIA and CIPA claims carry a one-year statute of limitations, Defendants have argued that the statute of limitations also prevents a large number of Class members (approximately 62%) from asserting these claims. *See* ECF No. 113 at 23-24; ECF No. 213 at 39; *see also* Fisher Decl. ¶ 17. Had Defendants prevailed on this argument, the class size could have been reduced significantly, limiting the recoverable damages available in this litigation.

Discounting the value of the Class's claims to account for the potential limits on relief for those outside California, the statute of limitations, and the potential exclusion of a majority of users from the Settlement Class on the basis of an arbitration agreement, the proposed recovery here is in line with other similar class-action settlements, especially considering the potential for significant additional recoveries from the Remaining Defendants based on the same nucleus of facts addressed in this Settlement. *See* Section IV.A.4, *infra*.

The proposed settlement provides immediate relief to the Class though a Distribution Process that is designed to facilitate a quick and efficient allocation of this recovery to Settlement Class Members. *See* Section III.D.1, *infra*. In particular, as provided in the Settlement Agreement, Settlement Class Members will have an option of receiving payment by check or through an electronic payment platform. *See id.* § H.7. To the extent check payments are undeliverable, the Settlement Administrator will make reasonable

efforts to find a valid address and resend the payment within 30 days of its return. *See* Settlement Agreement §H.7.c; Declaration of Justin Parks of A.B. Data Regarding the Proposed Notice Plan and In Support of Plaintiffs' Motion for Preliminary Approval ("Parks Decl.") ¶ 33. If the second attempt does not succeed, only then is the payment voided, and the funds returned to the Net Settlement Fund. Use of the electronic payment platforms, in addition to being less expensive than mailing checks, has greater success in deliverability, as the platform uses the Settlement Class Member's email address or mobile phone number (as provided on the Claim Form) to immediately deliver the funds to the person's desired digital payment application (PayPal, Venmo, Zelle, as applicable) or email a virtual prepaid card. To the extent feasible, any unclaimed funds will be redistributed to Settlement Class Members who did redeem their payment, subject to a $5 distribution threshold; below that amount, the administrative costs associated with performing an additional distribution substantially outweigh the benefits of issuing the payments. *See* Settlement Agreement § H.7.f. Should any funds remain that cannot be redistributed to Settlement Class Members, only then would Class Counsel seek leave of the Court to allow a *cy pres* distribution which, pursuant to the Settlement Agreement, would go to the Center for Internet and Society at Stanford Law School. *See id.* § H.7.g.

Accordingly, Plaintiffs respectfully request that the Court: (i) preliminarily approve the proposed Settlement Agreement; (ii) provisionally certify the Settlement Class for settlement purposes, designate Plaintiffs as the Class Representatives, and appoint Bursor & Fisher, P.A. ("B&F") and Lowey Dannenberg, P.C. ("Lowey") as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of Class Notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing.

## II.    PROCEDURAL BACKGROUND

On February 1, 2023, the FTC filed an action against Defendant GoodRx, alleging it violated the FTC Act and the FTC's Health Breach Notification Rule by disclosing its users' personally identifiable information ("PII"), as well as details about their medications and sensitive health conditions, to Co-Defendants, as well as other third parties. *See United States v. GoodRx Holdings, Inc.*, No. 23-cv-00460, ECF No. 1 (N.D. Cal.); Fisher Decl. ¶ 6.

The FTC Order resolving this complaint required GoodRx to pay civil penalties of $1.5 million and take certain corrective actions to prevent the disclosure of additional users' PII and health information, including ceasing the use of health information for advertising purposes and misrepresentation of its disclosure of health information. Fisher Decl. ¶ 7. Following this settlement, GoodRx emailed users and posted a notice on its website that it shared identifiable information about its users, including "details about drug and health conditions people searched and their prescription medications." *Id*. GoodRx further stated it "shared this information with third parties, including Facebook" and "[i]n some cases . . . used the information to target people with health-related ads." *Id*.

Plaintiff Jane Doe filed this action on February 2, 2023. *Id.* ¶ 8. Four later-filed actions were consolidated with the present action on May 3, 2023. *Id*. The Court appointed B&F and Lowey as Interim Co-Lead Class Counsel shortly after. *Id*.

GoodRx moved to compel arbitration and/or stay the case on June 9, 2023, Criteo filed a similar motion on June 16, 2023, and both Defendants separately moved to dismiss the action on July 9, 2023. Fisher Decl. ¶ 9. While the Parties were waiting for the hearing on these motions, Interim Co-Lead Class Counsel learned that other counsel (with a separate group of individuals who had not participated in this Litigation through an action in Florida) had attempted to settle with GoodRx the Settlement Class's claims for $13,000,000. *Hodges v. GoodRx Holdings, Inc.*, No. 1:23-cv-24127 (S.D. Fla.) ("*Hodges*"). Fisher Decl. ¶ 11; *see also* ECF No. 151-1 ¶¶ 3-5; ECF No. 151-2. B&F and Lowey promptly notified this Court and moved to intervene in the *Hodges* action to block the attempted settlement. Fisher Decl. ¶ 11. After learning that the other counsel were seeking to settle the claims alleged here in a later-filed action, this Court dismissed all outstanding motions in this case and ordered the Parties to mediate. *Id.* ¶ 12. The Court also issued an order to show cause as to why GoodRx should not be sanctioned. *See* ECF No. 152; Fisher Decl. ¶ 11.

Plaintiffs and GoodRx duly participated in two mediations following the Court's order: (1) on January 10, 2024 with the Hon. Ellen Sickles James (Ret.) (this mediation also included Criteo) and (2) on March 7, 2024 with the Hon. Wayne Andersen (Ret.). Fisher Decl. ¶¶ 13-14. Following this second mediation, Plaintiffs and GoodRx spent several months both with and without Judge Andersen's assistance negotiating the Settlement Agreement. *Id.* ¶ 14; Settlement Agreement § A.6. Prior to

5

mediation, Plaintiffs received substantial information and user data from GoodRx so that Plaintiffs could adequately assess the estimated class size and claims at issue for purposes of settlement. *See* Fisher Decl. ¶ 13. This included the documents GoodRx exchanged with the FTC, aggregated statistics from GoodRx's analytics dashboards reflecting the number GoodRx users that used its platforms, documents reflecting internal audits GoodRx conducted regarding their data sharing practices, GoodRx's user facing terms and privacy policies, correspondence between GoodRx employees and reporters regarding its data sharing, and GoodRx's data use and sharing policies. *Id*. GoodRx also responded to Plaintiffs' written inquiries to further assist in calculating class size. The Parties agreed in principle to a settlement on April 20, 2024 and executed the GoodRx Settlement Agreement on November 25, 2024 after several months negotiating specific settlement terms. *Id*. ¶ 14. In parallel, Plaintiffs and Criteo held a mediation with the Hon. Wayne Andersen (Ret.) on August 6, 2024, and continued negotiating after that, both with and without Judge Andersen's assistance. *Id*. ¶ 15.

The Court held a hearing on June 12, 2025 regarding the GoodRx Settlement and directed Plaintiffs to supply additional information. Following that hearing, Plaintiffs began diligently working on a renewed motion for preliminary approval of the GoodRx Settlement that would address the Court's additional inquiries. *See id*. ¶¶ 16-17. At the same time, Plaintiffs and Criteo reengaged in settlement negotiations, and, after several months of vigorous negotiations, were able to reach an agreement in principle in October 2025. *Id.* ¶ 18. Plaintiffs, GoodRx, and Criteo agreed to amend the GoodRx Settlement to, among other things, include Criteo as a Party, adjust the Settlement Class definition, and increase the total recovery obtained by the Settlement Class. *See id*. ¶ 19. The Settlement Agreement was fully executed on November 19, 2025. *See id*.

## III.    INFORMATION ABOUT THE PROPOSED SETTLEMENT

The key terms of the Settlement are summarized below, in accordance with the Northern District of California's Procedural Guidance for Class Action Settlements ("Procedural Guidance" or "PG") (last viewed November 25, 2025).

### A.    PG (1)1: Class Definition

The proposed Settlement Class consists of "all natural persons in the United States who used any website, app, or service made available by or through GoodRx at any time prior to April 20, 2024."

Settlement Agreement § B.48. Excluded from the Settlement Class are (a) Defendants and their affiliates, parents, subsidiaries, officers, and directors; (b) the Opt-Outs; (c) Meta and Google; as well as (d) the judges presiding over this matter and the clerks of said judges. *Id.* This modifies the class definition in the Consolidated Class Action Complaint, ECF No. 102 ("Complaint"),[2] in form but not in substance. The Settlement Class definition remains consistent with the evidence to-date regarding Defendants' conduct and was intended solely to make it easier for Settlement Class Members to understand whether they are a member of the Settlement Class. For example, during the case and throughout discovery, Plaintiffs found that GoodRx provided various services to Settlement Class Members under various trade names (*i.e.*, "HeyDoctor," "GoodRx Care," "GoodRx Gold," etc.). Although these services fall within the "GoodRx Platform," as defined in the Complaint, Plaintiffs were concerned that using this term in the Settlement Class definition would cause confusion among Settlement Class Members to the extent the service they used did not have the term "GoodRx" in its name (i.e., making it unclear if the service being used was a part of the "Platform"). Now, each of the specific websites, apps, and services made available by or through GoodRx are contained in the notice documents.

As noted above, the Settlement Class definition now also establishes an end date of April 20, 2024. This adds certainty to the Class Definition and allows the Parties to accurately estimate a definite class size, which as noted, is approximately 54.8 million individuals. *See id.* ¶ 17. It further ensures that users can readily determine whether they fall within the Settlement Class based on the *timing* of when they allegedly used the service. By contrast, the initial class definition in the Complaint would require the Settlement Class Member to understand (or at least inquire) whether their "communications and/or data were shared with third parties" before filing a claim or opting out. Complaint ¶ 219. This would, practically, be very difficult for individual class members and would unnecessarily complicate the analysis. Because Plaintiffs contend that GoodRx shared the Settlement Class Members' communications and data **whenever** they used the GoodRx website, app, or services, there is no need for Settlement Class Members to undertake this additional analysis. The simplified revised Settlement Class definition makes

---

[2] *See* Complaint ¶ 219 ("All natural persons in the United States who used the GoodRx Platform and whose communications and/or data were shared with third parties, including the Advertising and Analytics Defendants.").

1  that clear and is more consistent with the alleged misconduct.

2  **B.    PG (1)2: The Claims to be Released**

3  If the Settlement is approved, Plaintiffs and the Settlement Class will release: "[A]ny and all

4  manner of claims . . . that arise out of, or are based upon or connected to, or relate in any way to the Data

5  Disclosure or Defendants' use of Pixels, SDKs, cookies, APIs, or any similar technologies, or that were

6  or could have been asserted in the Litigation." Settlement Agreement § B.40. As a general principle, the

7  Ninth Circuit (as well as other Circuits) "allows federal courts to release not only those claims alleged in

8  the complaint, but also claims 'based on the identical factual predicate [ ] that underl[ies] the claims in the

9  settled class action.'" *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018)

10  (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). This principle allows the Parties to

11  achieve global peace, resolving any and all claims that were raised or could have been raised relating to

12  the underlying facts and circumstances of the case, and preventing any future litigation over the issues

13  resolved by the Settlement. Courts have approved releases for "any claim, liability, right, demand, suit,

14  obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees

15  and costs, actions or causes of action, of every kind or description . . . related to or arising from any of the

16  facts alleged in any of the Actions." *Id.* (internal citation omitted).

17  In this case, the release was drafted to specifically identify the technologies at issue that allegedly

18  permitted Settlement Class Members' communications and/or data to be shared with third parties when

19  using the GoodRx Platform. To the extent the release can be read to be broader than the claims pled in the

20  Complaint, the release is framed to ensure any claims that could have been brought based on the identical

21  factual predicate of this Litigation are also properly released to allow the Parties to achieve global peace.

22  Plaintiffs believe that the release in the Settlement Agreement is consistent with the causes of action

23  pleaded or that could have been pled in the Complaint and not broader. *See* Complaint ¶¶ 230-396 (Claims

24  for Relief). To the extent that the Court was concerned with "websites, applications and services" being

25  an undefined term (June 12, 2025 Hearing Tr. at 12:13-14, ECF No. 237), Plaintiffs point to §§ B.12 and

26  B.13 of the Settlement Agreement, providing definitions for "Data" and "Data Disclosure." These

27  definitions make clear that "websites, applications, or services" refer to the GoodRx Platform, which is

28  both defined and explained at length in the Complaint. *See* Complaint ¶¶ 2-7.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

Consequently, the release will include Plaintiffs' claims for California Confidentiality of Medical Information Act ("CMIA"), the California Invasion of Privacy Act ("CIPA"), the California Consumers Legal Remedies Act ("CLRA"), the California Unfair Competition Law ("UCL"), the New York General Business Law ("GBL"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("ILFDBPA"), negligence per se, common law negligence, common law invasion of privacy, and unjust enrichment, which are all based on the alleged disclosure of Settlement Class Members' data to third parties through the use of the GoodRx Platform. Although Plaintiffs also sought a public injunction in the Complaint (Complaint ¶¶ 212-218), the FTC Order required GoodRx to cease the challenged practices at issue as of February 17, 2023. FTC Order, at 7-10. Further, GoodRx has ceased using Criteo's service. Accordingly, an injunction against GoodRx or Criteo is no longer necessary.[3]

### C.    PG (1)4: Other Cases Affected by the Settlement

Plaintiffs' Counsel is not aware of any other cases that will be affected by the settlement.[4] Fisher Decl. ¶ 27.

### D.    PG (1)5, (1)7, (6), (7), (8): Allocations and Payments from the Settlement Fund[5]

#### 1.    The Settlement Fund

Defendants will now pay $32,000,000 into a non-reversionary Settlement Fund that will be used to pay all approved claims by Settlement Class Members, Notice and Settlement Administration Costs, taxes owed by the Settlement Fund, any Court-approved Service Award to Plaintiffs, and any Court-approved Attorneys' Fees and Expense Award. Settlement Agreement §§ D.1, D.6. The Settlement Amount reverts to Defendants only if the Settlement Agreement is voided, cancelled, or terminated. Settlement Agreement § D.6.

The Net Settlement Fund will be distributed *pro rata* through a process designed to distribute as much money to Settlement Class Members as possible. Settlement Agreement § H.7.a. The amount to be distributed to each Authorized Claimant will be calculated by dividing the Net Settlement Fund by the

---

[3] The same is not true as to the Remaining Defendants. *See* ECF No. 217 at 35.

[4] The only related litigation Plaintiffs' counsel is aware of was the *Hodges* Action, which was administratively closed on December 4, 2024. Fisher Decl. ¶ 27.

[5] Criteria (1)3 under the Procedural Guidance is addressed in Section IV.A.4, *infra* in connection with the analysis of the *Hanlon* factors.

number of valid Claims. *Id.* Authorized Claimants will have an option to receive their Claim Payment by check or via an electronic payment platform. *Id*. For people requesting check payments, they will have 60 days to deposit the check. *Id.* § H.7.b. If check payments are returned to the Settlement Administrator as undeliverable, the Settlement Administrator will take reasonable efforts to locate a valid address for the Authorized Claimant and resend the check within 30 days after receipt. *Id.* § H.7.c. Reissued checks must be cashed within 60 days after issuance. *Id.* For Authorized Claimants receiving payment by the electronic payment platform, they will provide the relevant email address or mobile phone number through which the payment will be processed via the Claim Form. *See id.*, Ex. A (Claim Form). Through the electronic payment platform, Authorized Claimants will have the option to receive their Claim Payment via services like PayPal, Venmo, and Zelle, or a virtual prepaid card, like a prepaid Mastercard or an electronic retailer gift card. If the Authorized Claimant provides insufficient information to permit payment through the electronic payment platform, a check will be sent instead. *Id.* § H.7.e. Payments made through the electronic payment platform that are successfully processed are immediately transferred to the Authorized Claimants, and no reissuance of payment may be requested. *Id.* Accordingly, if an Authorized Claimant does not use, loses, or is unable to access the virtual prepaid card after the transfer is completed, that payment cannot be replaced, and the Claim Payment cannot be returned to the Net Settlement Fund.

If there are any funds remaining after the 60-day deadline for negotiating Claim Payment made by check, additional payments will be redistributed *pro rata* to Authorized Claimants that cashed their initial distribution check or received an electronic payment, so long as the reallocated *pro rata* share to each eligible Authorized Claimant is at least $5.00. *Id.* § H.7.f. In consultation with the Settlement Administrator, it was determined that if there were insufficient funds to reallocate at least $5.00 per Authorized Claimant, the costs of the subsequent distribution would likely outweigh the benefits. Parks Decl. ¶ 34. A second distribution could be expensive, particularly if there are a significant number of checks to be printed and mailed. *Id.* Further, the cashing rate drops significantly with checks issued for less than $5.00. *Id.* Following any subsequent distribution(s), or if a subsequent distribution is not feasible, any funds still remaining after 180 days from distribution will be distributed *cy pres* to the Center for Internet and Society ("CIS") at Stanford Law School. Settlement Agreement § H.7.g. CIS bears a close relationship to the subject matter of this lawsuit, as it is focused on law and policy relating to the internet

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

and emerging technologies. Neither Plaintiffs nor their counsel have a relationship with CIS. Fisher Decl. ¶ 25.

### 2.    Service Awards

In recognition of their efforts on behalf of the Settlement Class, subject to Court approval, Plaintiffs will apply for service awards of $2,000 per Plaintiff, as appropriate compensation for their time and effort serving as Plaintiffs and putative Class Representatives. Plaintiffs have spent substantial time on this action, assisted with the investigation of this action and the drafting of the Complaint, been in contact with counsel frequently, and stayed informed of the status of the action. *Id*. ¶ 36.

### 3.    Attorneys' Fees and Expense Award

The Settlement Agreement provides that the Settlement Fund may also be used to pay Plaintiffs' Counsel reasonable attorneys' fees and to reimburse expenses in this action, in an amount to be approved by the Court. *See* Settlement Agreement § L.1. Plaintiffs will petition the Court for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund ($10,666,666.67) plus reasonable Litigation Expenses. Fisher Decl. ¶ 35. At this time, Interim Co-Lead Class Counsel anticipate seeking no more than $125,000.00 as reimbursement for any Litigation Expenses incurred by Plaintiffs' Counsel. *Id.* The unaudited lodestar invested in this case by Plaintiffs' Counsel as of October 2025 is approximately $3,438,883.93.[6] *Id.* If this lodestar remains unchanged (which is unlikely), the proposed attorneys' fee would reflect a multiplier of 0.32. *Id.*

### E.    PG (1)6 & PG (2): Settlement Administration

The proposed Settlement Administrator is A.B. Data, Ltd. ("A.B. Data"). *Id.* ¶ 37. Interim Co-Lead Class Counsel selected the Settlement Administrator after soliciting competing bids from four potential claims administrators, all of whom submitted responses. *Id.* Email notice and supplemental notice methods (e.g., mail notice and paid digital/social media plans) were proposed by each potential administrator. *Id.* Over the past two years, Lowey has utilized A.B. Data as a settlement administrator for new engagements seven times. *Id.* ¶ 39. This is in addition to A.B. Data's ongoing work administering settlements and notice programs for pre-existing engagements during the same time period. *Id.* This is

---

[6] In moving for final approval, Plaintiffs will provide the total amount of Litigation Expenses and lodestar for all Plaintiffs' Counsel.

B&F's first engagement with A.B. Data. *Id.* ¶ 38.

Interim Co-Lead Class Counsel is satisfied that A.B. Data employs numerous control systems and procedures that it believes meet or exceed relevant industry standards for securely handling class member data, including technical controls, administrative policies, and physical access controls for handling such data and appropriate data collection and retention, data destruction, audit, and crisis and risk management policies. *See* Parks Decl. ¶ 39; Ex. C. A.B. Data accepts responsibility for the security of Class Members' information and data and has affirmed that it will not use, disseminate, or disclose such information to any other person or for any other purpose except effecting notice and claims administration. *Id.* ¶ 40. A.B. Data maintains insurance in case of errors, including coverage for professional liability errors and omissions in its administration, as well as a fidelity bond for employee dishonesty losses, additional computer fraud and wire transfer communications fraud coverage, and network and information security liability coverage. *Id.* ¶ 42.

A.B. Data **estimates a claims rate range of 3-10%** based on its experience administrating consumer data breach and data privacy settlements, as well as a 2019 FTC Study analyzing consumer class actions. *Id.* ¶¶ 35-38.[7] This is consistent with claims rates in comparable settlements, which range between 3-12%.[8] These settlements were selected for comparison given that they are consumer privacy class action cases arising from the disclosure of consumers' private information without consent, some of which concern similar technology to that involved in this action.[9]

A.B. Data anticipates a total of $995,000 in administrative costs. *Id.* ¶ 43. This amount is reasonable given that it accounts for only 3.1% of the total settlement value. The costs are to be paid out

---

[7] Parks Decl. ¶ 36 (citing *In re: Vizio Consumer Privacy Litigation*, No. 8:16-ml-02693 (C.D. Cal.); *Barr v. Drizly, LLC f/k/a Drizly, Inc.*, 1:20-cv-11492 (D. Mass.); *Atkinson v. Minted*, 3:20-cv-03869 (N.D. Cal.)).

[8] *See In re Novant Health, Inc.*, No. 22-CV-697, ECF No. 63-1 ¶ 17 (M.D.N.C.) (claims rate of 11.7%); *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502, ECF No. 72 at 3 (D. Mass. Feb. 16, 2024) (claims rate of 3.3%); *In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (claims rate of 4.65%); *Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524, ECF No. 59 ¶ 2 (S.D.N.Y May 2, 2024) (claims rate of 7.6%).

[9] A chart of comparable cases can be found in Exhibit 3 to the Fisher Declaration. At the Court's request, the chart has since been updated to include other settlements involving the disclosure of more sensitive private information and cases which closely align with the relief obtained for the facts at issue in the present case.

from the Settlement Fund. Settlement Agreement § H.5.b.

## IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The purpose of a preliminary approval hearing is for the Court to ascertain whether to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (internal quotations omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)); *see also Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278, 2020 WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) (a court must preliminarily find "that [it] will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal.") (quoting Fed. R. Civ. P. 23(e)(1)(B)) (internal quotations omitted).

While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). When a settlement is negotiated at arm's-length by experienced counsel, and here also with the assistance of an experienced third-party mediator, there is a presumption that it is fair and reasonable. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. *Carlotti*, 2019 WL 6134910, at *3.

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings"; and (6) "the

experience and views of counsel."[10] *Hanlon*, 150 F.3d at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004) (same); *Sciortino v. Pepsico, Inc.*, No. 14-cv-00478, 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (same); *Pena v. Taylor Farms Pac., Inc.*, No. 2:13-cv-01282, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO Logistics, Inc.*, No. 16-cv-01231, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019) (same). In addition to these factors, courts also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2), and any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2); *accord Pena*, 2021 WL 916257, at *2-3. There is a significant overlap between the *Hanlon* factors and the Rule 23(e)(2) factors.

### A.    The *Hanlon* Factors

#### 1.    Strength of Plaintiffs' Case

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The Court may "presume that through negotiation, the [p]arties, counsel, and mediator arrived at a reasonable range of settlement by considering [p]laintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, No. CV 08 1365, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

The FTC settlement provides a strong factual basis for Plaintiffs' claims and potential recovery. Plaintiffs have always believed, and still believe, that Defendants would be held liable on the merits if the case proceeded to trial because GoodRx, while not conceding liability in the stipulated settlement with the FTC, was required as part of the FTC settlement to notify consumers of the FTC's allegations. Fisher Decl. ¶ 29. Discovery provided by GoodRx has indeed confirmed GoodRx's use of Pixels and SDKs. *Id.*[11]

---

[10] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval and will be addressed at that time. *See Pipich v. O'Reilly Auto Enterprises, LLC*, No.: 3:21-cv-01120, 2024 WL 2885342, at *10 (S.D. Cal. June 7, 2024) (explaining a full assessment of the fairness factors is not necessary at the preliminary approval stage and is "reserved" for final approval).

[11] During mediation, Criteo argued that it did not receive the same types of data as other third parties, creating potential risks Plaintiffs would need to overcome should they continue to litigate their claims against Criteo.

1    Despite these strengths, valuing Defendants' maximum exposure at trial is more difficult. The

2    number of potential class members eligible to recover under the legal theories at play is likely much lower

3    than the estimated potential class size.[12] *See id.* ¶ 17. For instance, GoodRx's terms of service created a

4    risk that Settlement Class Members that used the GoodRx Platform after January 2020 (including those

5    that used the services both before and after 2020) would be excluded from the Class by an arbitration

6    provision and class action wavier provision in its terms of service. *See* ECF No. 107 at 12, 17. Indeed, the

7    statistics provided by GoodRx suggests that ***at least*** 51% of the proposed Settlement Class could have

8    been subject to the terms of service that incorporated an arbitration provision and a class action waiver.[13]

9    Fisher Decl. ¶ 17. Whether and to what extent GoodRx could enforce those terms to compel Settlement

10    Class Members to arbitrate their claims was hotly contested early in the Litigation and remains an open

11    question. *See* ECF Nos. 107, 109, 125, 126, 128, 134, 136, 140. However, given the large number of users

12    potentially subject to these terms, a significant discount from the theoretical maximum exposure is

13    justified.[14]

14    Further, the Settlement Class potentially faced substantial risk due to statute of limitations defenses

15    that Defendants could have asserted for each cause of action in the event Plaintiffs' discovery rule

16    argument failed. Plaintiffs' CIPA claim carries a one-year statute of limitations; the negligence per se,

17    common law negligence, and common law invasion of privacy claims each carry two-year statute of

18    limitations; the CMIA, CLRA, GBL, ILFDBPA, and unjust enrichment claims carry a three-year statute

19    of limitations; and the UCL claim carries a four-year statute of limitations. Had Defendants prevailed on

20    any statute of limitations defense, ***the class size could have been cut by up to 62%***, reducing the

21    recoverable damages available in the litigation. Fisher Decl. ¶ 17. In addition, due to the changes GoodRx

22

_____

23    [12] The CMIA and CIPA provide $1,000 and $5,000 in statutory penalties, respectively. *See* CMIA §
56.36(b)(1); CIPA § 637.2(a)(1). Moreover, Defendants dispute whether non-California residents are

24    entitled to recover damages under CMIA and CIPA. The GBL also awards $50.00 in statutory penalties
(*see* GBL § 349(h)), which would only be awarded to New York residents.

25    [13] These statistics reflect the number of email addresses used to sign up for GoodRx by year.

26    [14] Pursuant to the Northern District of California's Guidelines, and presuming Plaintiffs succeeded on
behalf of a nationwide class for all claims, GoodRx's liability would be $54.8 billion for violations of the

27    CMIA and both Defendants faced $274 billion in exposure for violations of CIPA. The remaining claims
do not have statutory damages, aside from Plaintiffs' GBL claim brought on behalf of a New York

28    subclass.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

implemented in conjunction with the FTC investigation and settlement and the fact that it ceased all use of Criteo's services, it is possible that Defendants would have defenses to liability if the class was limited to more recent users of GoodRx.

Finally, it is possible that GoodRx's data overestimates the number of registered users. For example, while GoodRx has email addresses associated with individuals who used its services, once duplicative or invalid email addresses are excluded, the actual number of Settlement Class Members may be reduced. *Id.* The impact of these questions in determining the actual applicable class size was an important factor in the risk calculus driving this settlement.

The Settlement Class also faced risks at class certification given the new and evolving landscape of laws governing data collected through Defendants' Tracking Software. *See Dexter's LLC v. Gruma Corp.*, No. 23-cv-212, 2023 WL 8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of settlement given "the evolving legal landscape" of the law at issue in the case); *Torres v. Pet Extreme*, No. 1:13–cv–01778, 2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015), *adopted* 2015 WL 13653878 (Feb. 25, 2015) (finding that the "risk that an opinion could issue changing the legal landscape in this relatively new area of [law]" favors approval of settlement); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014) (finding "novel legal issues" raised in the case "favor approving [the] settlement); *see also* Fisher Decl. ¶ 31. For example, whether a court would certify a nationwide class under CIPA and the CMIA is unclear, creating additional risk. In *Frasco v. Flo Health, Inc.*,[15] the Court certified only a CIPA class of California users and a nationwide CMIA class. 349 F.R.D. 557, 587 (N.D. Cal. 2025). If claims here were limited to solely California GoodRx users, ***it would reduce the maximum potential class size by almost 90%***. Fisher Decl. ¶ 17. This developing body of law presents inherent risks regarding the scope and nature of the Class. *Id.*

Further, Plaintiffs may face other potential challenges at class certification based on the CMIA. While Plaintiffs disagree with the reasoning in *Vigil v. Muir Medical Group IPA, Inc.*, 84 Cal. App. 5th 197, 219, 221 (2022), *review denied* (Jan. 25, 2023), that court denied certification of a CMIA class for failure to show that each class member had their medical information "viewed" by an unauthorized third

---

[15] While there are several other similar cases involving Tracking Software pending in this district, as far as Plaintiffs are aware, only *Frasco* has made it through the class certification stage.

party. If the Court here required a similar showing, this would have presented additional difficulties in certifying a class.

Similar risks also exist at the merits stage of the Litigation. As an initial matter, **no plaintiff has ever recovered under the CMIA**. Fisher Decl. ¶ 32. While the *Frasco* court denied the defendants' motions for summary judgment on many of the same issues presented in this case, and plaintiffs obtained a verdict against Meta on their CIPA claim, the court raised serious questions about the viability of CMIA claims against a non-hospital or direct provider of health care. *See Frasco v. Flo Health, Inc.*, No. 21-cv-00757, 2025 WL 1476905, at *2 (N.D. Cal. May 22, 2025) (denying summary judgment); *Frasco*, No. 3:21-cv-00757, ECF No. 751-1 at 1097:6-1099:23 (discussing how an app developer likely does not fit the definition of "provider of healthcare services" under the CMIA); *see also Moss v. USF Reddaway, Inc.*, No. ED CV15-01541, 2018 WL 5099291, at *7 (C.D. Cal. Feb. 15, 2018) (finding the risk of "proceed[ing] on the merits" weighs in favor of settlement where defendants raised "many substantive defenses" in their unresolved summary judgment motion); *Smith v. Kaiser Found. Hosps.*, No. 18-cv-00780, 2021 WL 2433955, at *7 (S.D. Cal. June 15, 2021) (finding that risk of "continued litigation" at later stages such as summary judgment weighs in favor of approval where some "factual disputes" remain). This risk is especially relevant given the continued uncertainty in this area of the law. For example, Judge Chhabria's recent decision in *Doe v. Eating Recovery Center, LLC*, No. 23-CV-05561, 2025 WL 2983143, at *1 (N.D. Cal. Oct. 17, 2025), dismissed CMIA claims brought by individuals who used an eating disorder treatment website because the court found they were not yet "patients" of the defendant at the time of these communications. Most recently, on November 13, 2025, in a case involving Quest Diagnostics, the Third Circuit affirmed the dismissal of CMIA and CIPA claims when the plaintiffs alleged only that Quest shared the fact that plaintiffs had been Quest patients through the Facebook pixel. *See Cole et al. v. Quest Diagnostics, Inc*., No. 25-1449, 2025 WL 3172640, at *3 (3d Cir. Nov. 13, 2025). The circuit court held that while the "nature of treatment" is medical information, the mere fact that plaintiffs were patients was not itself actionable under the CMIA. As for the CIPA claim, the court held that "[a]s the recipient of a direct communication from plaintiffs' browsers, Facebook was a participant in plaintiffs' transmissions such that Quest did not aid or assist Facebook in eavesdropping on or intercepting such communications, even if done without the users' knowledge." *Id.*

17

The Settlement eliminates these and other risks of non-recovery to Plaintiffs and the Class and replaces them with certain relief and a positive recovery for each Settlement Class Member. *See* Fisher Decl. ¶ 32; *see also Rodriguez*, 563 F.3d at 956-66 ("[O]ne factor that may bear on review of a settlement is the advantages of the proposed settlement versus the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]") (citation and internal quotations omitted).

### 2.    Risk of Continuing Litigation

Given the risks associated with continued litigation, approval of the proposed settlement is appropriate. Generally, acceptance and approval of settlement is preferable to litigation, unless the settlement is "clearly inadequate," *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004), and settlements are "favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citing *Rodriguez*, 563 F.3d at 966). By reaching a favorable settlement now, Plaintiffs obtain recovery for the Settlement Class and, at the same time, bolster their prospects of achieving additional recoveries from Remaining Defendants for the Settlement Class—through possible additional settlements or verdicts at trial—due to the settlement cooperation obtained from Defendants.

Barring settlement approval, the case would require resolution of GoodRx's motions to dismiss and to compel arbitration, then prolonged discovery, including depositions and substantial written discovery, expert discovery, and summary judgment on Plaintiffs' claims against Defendants and their defenses. Even if Plaintiffs' and the Settlement Class's claims survived all of these challenges, they would face risks in a jury trial. Despite every jury selection tool that is available today, it is virtually impossible to predict with any certainty how a jury will evaluate liability and damages, making the ultimate outcome at trial highly uncertain for both Parties, especially in this undeveloped area of law. Looking beyond trial, Defendants or Plaintiffs would also likely appeal the merits of at least some adverse decision, adding several years to the final disposition of the case, as well as prolonging the risks described herein.

The Settlement, by contrast, accounts for these risks and permits a prompt resolution of this Litigation as to Defendants on terms that are fair, reasonable, and adequate to the Class and includes cooperation Plaintiffs can use to enhance their claims against the Remaining Defendants. This result will

1    be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and

2    provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor

3    of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

### 3.     Risk of Maintaining Class Action Status

5    Plaintiffs also face risks in maintaining class status through trial. Assuming that the Court were to

6    grant a motion for class certification, Defendants could seek an interlocutory appeal or attempt to decertify

7    the Class based on subsequent developments. *See In re Netflix Privacy Litig.*, No. 5:11–CV–00379, 2013

8    WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at

9    any time . . . is one that weighs in favor of settlement.") (internal citations omitted). Risk, expense, and

10   delay permeate such a process. "[C]onsummating this Settlement promptly in order to provide effective

11   relief to Plaintiff[s] and the Class" eliminates these risks by ensuring Settlement Class Members receive

12   a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*, No. 3:14-cv-01570, 2015 WL

13   8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks, expenses, and delay.

### 4.     PG (1)3: The Amount Offered in Settlement

15   The determination of "the fairness, adequacy, and reasonableness of the amount offered in

16   settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823,

17   832 (N.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 965). In assessing the consideration available to

18   Settlement Class Members in a proposed Settlement, "[i]t is the complete package taken as a whole, rather

19   than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221

20   F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[I]t is well-settled law that a proposed

21   settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might

22   be available to the class members at trial." *Id.* (citation omitted).

23   Here, the cash value of the proposed Settlement is $32,000,000 and represents an extraordinary

24   result that is: (1) approximately 21 times what the FTC recovered from GoodRx (*see* Section II); and (2)

25   almost 2.5 times the settlement initially approved in *Hodges* that Interim Co-Lead Class Counsel

26   successfully intervened to block. *See id*.

27   This amount is reasonable given the attendant risks to continuing the litigation against Defendants,

28   the potential that a majority of the class would be compelled to arbitration, and Defendants' financial

condition. As explained above, although the Class theoretically could recover large statutory damages under the CMIA and CIPA, this assumes that all estimated 54.8 million individuals nationwide would be eligible to recover for these claims. But GoodRx asserts that a high percentage of users—at least half of all users—may have signed arbitration provisions that could exclude them from a liability class. *See* Section I. Likewise, Defendants suggest that claims for over 62% of the Settlement Class could be excluded based on their statute of limitations defense.[16] *See* Section I. The issue of statute of limitations might not have been resolved until trial, creating increased uncertainty throughout the litigation on who within the Class would be able to recover. *See Frasco*, 2025 WL 1476905, at *1 (denying motion for summary judgment on statute of limitations grounds because "a jury will need to decide" that issue). And as noted above, if the statute of limitations applies, Defendants will be able to assert their liability defenses based on their changed conduct for the remaining portion of the Settlement Class, creating material risk on liability.

Finally, recoverable damages under the CMIA and CIPA could be reduced even further should the Court only certify a class of California residents for those claims, which GoodRx contends constitutes less than 9% of all GoodRx website users. *See* Section I; s*ee also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012) (vacating class certification order and holding court cannot apply California law to a nationwide class given interests of other states in having their laws apply to their residents).[17] The certainty of recovering now for all nationwide class members justifies a reasonable discount from the theoretical maximum value of their claims.

Plaintiffs' non-statutory causes of action (i.e., negligence per se, common law negligence, common law invasion of privacy, and unjust enrichment) do not have the same potential for recovery and would have provided for actual damages and/or disgorgement. While these claims have merit, they are nowhere near the theoretical recovery available under CIPA or the CMIA.

---

[16]  Indeed, because GoodRx stopped using Criteo's services prior to the start of this litigation, should Criteo succeed on its statute of limitations defense, Plaintiffs may not be able to maintain their CIPA claims (the only claims with the potential for large statutory damages) against Criteo.

[17]  Criteo would also likely argue that its status as a non-California entity prevented certification of a nationwide class, further supporting the reasonableness of this Settlement. *E.g.*, *Dellasala*, 2025 WL 3034069, at *3 (CIPA does not apply extraterritorially to claims of non-California plaintiffs).

20

Plaintiffs also had to contend with the reality that even if they succeeded on all issues at trial, they would be unlikely to recover the full amount allowed by statute. GoodRx's total market capitalization as of November 26, 2025 is $972.8 million, far less than the maximum recoverable damages, and Criteo's total market capitalization is $1.04 billion. *See* Fisher Decl. ¶ 33; *Hodges*, ECF No. 14 at n.15. Defendants likely could not withstand a judgment of that size, making bankruptcy likely, and the potential of a complete recovery low. Fisher Decl. ¶ 33. Rather than insist on an illusory, maximum recovery that Defendants would be unable to pay, the Settlement resolves Plaintiffs' and Settlement Class Members' claims for an estimated $4-$12 per person.[18]

Other settlements involving statutory damages provide comparable recoveries on a per-user basis. Most recently, on September 16, 2025, Flo Health, Inc., the creator of a menstrual tracking app, settled a class action lawsuit involving claims that its app unlawfully shared sensitive health data with third parties in the middle of trial. *Frasco v. Flo Health, Inc. et a.*, No. 3:21-cv-00757 (N.D. Cal.) (Dkt. 780-1). The court had previously certified a nationwide class for the plaintiffs' breach of contract, intrusion upon seclusion, and CMIA claims. *Flo Health, Inc.*, 349 F.R.D. at 587. Pursuant to the settlement, Flo will pay $8 million to resolve these claims on behalf of a class size of approximately 13 million users.[19] *Flo Health, Inc.*, ECF No. 784-3 at 13. At a 6% claims rate, the Flo settlement will result in an average recovery of $10.26 per participating class member.[20] *See id.*, ECF No. 784-12 ¶ 42. This is in line with the recovery afforded to Settlement Class Members in this action, who at a 6% claims rate would recover ***$9.73 per person***.[21] Other privacy cases that have settled for similar per-person recoveries. *See Katz v. Oracle*, No. 3:22-cv-04792 (N.D. Cal.) (final approval granted November 11, 2024) (settlement of $115 million for a class of 220 million, providing for $8.71 for each claimant at an estimated 6% claims rate, excluding

---

[18] This is calculated assuming a *pro rata* distribution of the Settlement, based on the Settlement Administrator's projections for the number of claims, and subtracting the proposed attorneys' fees and costs, service awards to Plaintiffs, and Litigation Expenses. *See* Section III.D.1, above.

[19] Two other defendants in the *Flo* Action separately settled prior to trial, and preliminary approval of the Flo settlement is still pending.

[20] Attorneys' fees, service awards, and administration costs will be paid from gross recovery of all the settlements in the *Flo* Action together, and therefore have not been deducted from Flo Health, Inc.'s settlement amount.

[21] For consistency with the *Flo* settlement, this number was calculated prior to deducting estimated administration costs, attorneys' fees and expenses, and service awards.

deductions); *In Re: Zoom Video Communications, Inc. Privacy Litig.*, No. 3:20-cv-02155 (N.D. Cal.) (final approval granted April 21, 2022) (settlement of $85 million for a class of 158.4 million, providing for a $8.94 for each claimant at an estimated 6% claims rate, excluding deductions); *Facebook, Inc. Internet Tracking  Litig.*, No. 5:12-md-2314 (N.D. Cal.) (final approval granted November 10, 2022) (settlement of $90 million for a class of 124 million, providing $12.10 for each claimant at an estimated 6% claims rate, excluding deductions); *TikTok, Inc. Consumer Privacy Litig.*, No. 1:20-cv- 4699 (N.D. Ill.) (final approval granted August 22, 2022) (settlement of $92 million for a class of 89 million, providing for a distribution of $17.22 for each claimant assuming a 6% claims rate, excluding deductions); *see also* Fisher Decl., Exhibit 3. [22]

Moreover, Defendants' Settlement aids Plaintiffs in pursuing recoveries from the Remaining Defendants. *See* Settlement Agreement § F.1. Importantly, this Settlement serves as a potential ice-breaker settlement, providing Plaintiffs access to valuable cooperation in addition to a monetary recovery. *See*, *e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 697 (S.D.N.Y. 2019) (evaluating defendant's cooperation obligation and noting that the proposed class settlement had "'significant value' by being a settlement 'ice-breaker,' or first party to settle, potentially helping to spur other parties to settlement."); *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (considering "the value of [d]efendants' cooperation with [p]laintiffs in pursuit of claims against the remaining defendant" in approving a settlement because it will "save time, reduce the [plaintiffs'] costs, and provide information, witnesses, and documents that the [plaintiffs] may otherwise not be able to access."). With this Settlement, Plaintiffs are in a position to focus their efforts on the two Remaining Defendants. Aided by the information Defendants agreed to provide, the probability of the Class's recovery against Meta and Google significantly increases.

Weighing the benefits of the proposed Settlement against the risks associated with continued

---

[22] While there are pixel cases that have settled for more money on a per-person basis, each of these actions were single-defendant cases involving significantly smaller classes. *See In re Advocate Aurora Health Pixel Litig.*, No. 22-cv-1253 (E.D. Wis.) (settlement of $12.225 million for a class of 2.5 million individuals, providing for $81.5 for each claimant with a presumed claims rate of 6%); *John v. Froedtert Health Inc.*, No. 2023CV001935 (Cir. Ct., Milwaukee Cnty.) (settlement of pixel-related class action providing $2 million for 459,044 class members, or $72.61 per claimant based on a presumed 6% claims rate).

litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

### 5.    The Extent of Discovery

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs have received a considerable number of documents, data, and information from Defendants in evaluating their claims. Fisher Decl. ¶ 13.  This information was then supplemented through the mediation process (of which there were more than one), and the Parties' subsequent discussions. *Id*. Furthermore, the Settlement Agreement requires Defendants to provide additional discovery, including a Rule 30(b)(6) deposition, and certain class data (to the extent available), that will assist Plaintiffs in their continued prosecution of the Litigation. Settlement Agreement, § F.1. In short, the proposed Settlement is the result of fully informed and arms-length negotiations.

### 6.    Experience and Views of Counsel

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Miramontes v. U.S. Healthworks, Inc.*, No. CV 15-05689, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017) ("Significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the Class") (citing *DIRECTV, Inc.*, 221 F.R.D. at 528). "[T]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Google Location History Litig.*, No. 5:18-cv-05062, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024). Interim Co-Lead Class Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Fisher Decl. ¶ 34. They have conducted extensive investigation in this case, and demanded and obtained documents, data, and information in advance of mediations and in discussions with Defendants' counsel. *Id.* That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of the Settlement.

### B.    Rule 23(e)(2) Factors

### 1.    The Class Is Adequately Represented

As discussed further below, Plaintiffs' interests here are aligned with other Settlement Class Members' interests because they allege they suffered the same injuries when GoodRx disclosed their personally identifiable and confidential medical information to third parties, including the Co-Defendants,

23

1  without their consent. *See* Sections V.A.3-4. Because Plaintiffs and the Class suffered these alleged

2  injuries as a result of Defendants' common course of conduct, Plaintiffs have an interest in vigorously

3  pursuing the claims of the Class. *Id*. Further, as elaborated upon below, Plaintiffs' attorneys have extensive

4  experience (Fisher Decl. ¶ 34) and have more than adequately met the obligations and responsibilities of

5  Class Counsel. *See* Section V.A.4. This factor thus favors preliminary approval.

6  **2.**     <u>**The Settlement Was Negotiated at Arm's Length**</u>

7       This proposed Settlement is the result of extensive negotiations, including formal mediations with

8  GoodRx and Criteo with the assistance of experienced and well-regarded mediators. Fisher Decl. ¶¶ 13-

9  19. Not only was the settlement not collusive, but Plaintiffs substantially improved on both the FTC and

10  *Hodges* plaintiffs' results. *See* Section IV.A.4.

11       Under such circumstances, the proposed Settlement is entitled to a finding of reasonableness, and

12  the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, No.

13  5:19-cv-05543, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved

14  following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving

15  experienced class counsel that had performed sufficient investigation "to make an informed decision about

16  the Settlement and about the legal and factual risks of the case"); *Villegas v. J.P. Morgan Chase & Co.*,

17  No. CV 09–00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding use of mediators "tends

18  to support the conclusion that the settlement process was not collusive").

19  **3.**     <u>**The Settlement Provides Adequate Relief to the Settlement Class**</u>

20       Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal;

21  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

22  processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees,

23  including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed.

24  R. Civ. P. 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon* factors including: "the risk, expense,

25  complexity, and likely duration of further litigation," "the risk of maintaining class action status

26  throughout the trial," and "the amount offered in settlement." *Hanlon*, 150 F.3d at 1026. As noted above,

27  the Settlement satisfies all *Hanlon* factors. *See* Section IV.A.1–6, *supra*.

28       As to "any agreement required to be identified by Rule 23(e)(3)," Plaintiffs report that there is an

24

agreement providing Defendants with a limited right to terminate the agreement if a certain percentage of the Settlement Class opts out of the Settlement. This kind of agreement is common in class settlements, and does not affect the fairness, reasonableness, or adequacy of the proposed Settlement. *See Mandalevy v. BofI Holding, Inc.*, No. 3:17-CV-667, 2022 WL 4474263, at \*9 (S.D. Cal. Sept. 26, 2022) (recognizing such "blow-up" provisions are "common," which "guard against the possibility that . . . [d]efendant's potential future liability is not reduced in a way that renders the settlement worthwhile"); *Schneider v. Champignon Brands Inc.*, No. SACV 21-3120, 2022 WL 22879587, at \*15 (C.D. Cal. Nov. 1, 2022) (finding that such a provision is "common" and "does not weigh against preliminary approval"). Plaintiffs have, in connection with this filing, included a copy of this agreement under seal for the Court's review, and will concurrently file a copy with only the numerical threshold redacted, as is necessary to protect the Settlement by preventing third parties from learning the opt out threshold and then enacting a mass opt out campaign to gain undue leverage over Plaintiffs or Defendants. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617, 2017 WL 9614789, at \*2 (N.D. Cal. Aug. 25, 2017) (granting motion to seal a similar provision to "prevent third parties from utilizing [this provision] for the improper purpose of obstructing the settlement and obtaining higher payouts"); *Thomas v. Magnachip Semiconductor Corp.*, No. 14-cv-01160, 2016 WL 3879193, at \*7 (N.D. Cal. July 18, 2016) (same). The motion has been tailored specifically to seal only the necessary information.

Regarding "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, No. CV 18-8605, 2020 WL 7314793, at \*6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.* Settlement Class Members will be identified using data from GoodRx and other available sources. Parks Decl. ¶ 8. As described above in Section III.D, under the terms of the proposed Settlement, Settlement Class Members who make valid claims will be issued, by check or electronic payment, *pro rata* payments from the Settlement Fund. Settlement Agreement § H.7.a. These payments will be made no later than 45 days after the Settlement's Effective Date. *Id.* The claims process "requires logging on to the Settlement Website and submitting a Claim there, or a Settlement Class

Member may print the Claim form from that website and mail a filled-in hard-copy to the Settlement Administrator if they prefer." *Alvarez*, 2020 WL 7314793, at *6; Parks Decl. ¶ 24. The Court should thus find that "this process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6. Further, any such unclaimed funds will be re-distributed to Settlement Class Members who have made claims so long as each claimant will receive at least $5.00. Settlement Agreement § H.7.f.

With respect to "the terms of any proposed award of attorney's fees,"[23] Interim Co-Lead Class Counsel will apply for attorneys' fees and will not exceed 33.33% of the Settlement Fund ($10,666,666.67). Settlement Agreement § L.1. The Ninth Circuit has identified five factors that are relevant in determining whether requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund; (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the fee and the financial burden carried by Plaintiff and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Although Interim Co-Lead Class Counsel will address each factor in detail in any subsequent fee application, these requirements are easily satisfied now.

First, Interim Co-Lead Class Counsel has secured a $32,000,000 cash settlement. This is an excellent result for the reasons stated above. *See* Section IV.A.4.

Second, Plaintiffs have established that there are significant risks in entering protracted litigation. *See* Sections IV.A.1-3.

Third, the requested fee is consistent with market rates as reflected by awards made in similar cases in this district. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-60 (9th Cir. 2000) (affirming award of 33.5% of $1,725,000 settlement fund in fees); *Linney v. Cellular Alaska P'ship*, No. C–96–3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) (affirming award of 33.3% of $6,000,000 settlement fund in fees); *id.* ("The $2,000,000 requested by class counsel amounts to one-third of this common fund . . . Courts in this district have consistently approved attorneys' fees which amount to approximately one-third of the relief procured for the class."); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming award of 33.3% of $33,000,000 settlement fund in fees);

---

[23] *See also* PG 6.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

*Wellens v. Sankyo*, No. C 13-00581, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 35% of $8,200,000 settlement fund in fees).

Fourth, in addition to the Settlement Fund, the Settlement requires Defendants to provide cooperation that will be used to prosecute claims against the Remaining Defendants.

Finally, the requested fees are also fair given the significant time Interim Co-Lead Class Counsel has devoted to this case on a contingency fee basis, with the threat of no recovery at all, absent successful resolution. Thus, because of the contingent nature of the fee and the financial burden carried by Plaintiffs' Counsel on behalf of Plaintiffs and the Class, a fee award request of one-third of the total Settlement is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement thus provides adequate relief to the Class pursuant to Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

### 4. The Settlement Treats All Settlement Class Members Equally

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). As explained above, there is no preferential treatment here because any Settlement Class Member may make a claim and be paid a *pro rata* portion of the settlement. *See* Settlement Agreement § H.7.a. Courts in this district have found that allocating settlement benefits among class members in this manner is equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding *pro rata* distribution equitable); *State of California v. eBay, Inc.*, No.: 5:12–CV–05874, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014) (explaining a proposed settlement is appropriate where it "does not improperly grant preferential treatment to class representatives or segments of the class").[24] If administratively feasible, unclaimed funds will be redistributed to Settlement Class Members who have made claims. *See* Settlement Agreement § H.7.f.

Finally, to the extent any money cannot be reallocated to Authorized Claimants and remains in the Net Settlement Fund more than one hundred eighty (180) days after the distribution of Claim Payments

---

[24] The service awards requested for Plaintiffs are presumptively reasonable and therefore do "not constitute inequitable treatment of class members." *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (explaining [s]ervice awards as high as $5,000 are presumptively reasonable in this judicial district.").

27

to the Authorized Claimants, such funds will be distributed *cy pres* to the Center for Internet and Society, a "public interest technology law and policy program at Stanford Law School [that] brings together scholars, academics, legislators, students, programmers, security researchers, and scientists to study the interaction of new technologies and the law and to examine how the synergy between the two can either promote or harm public goods like . . . privacy . . . ."[25] Settlement Agreement § H.7.g. Accordingly, the *cy pres* funds will be used to promote internet privacy, among other things, as a public good, thus indirectly benefiting Settlement Class Members. This satisfies the requirements for a *cy pres* award in the Ninth Circuit. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819-22 (9th Cir. 2012); Settlement Agreement § H.7.g. Thus, this factor weighs in favor of granting approval.

## V.    <u>CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE</u>

Plaintiffs request that the Court provisionally certify the following nationwide Settlement Class:

> All natural persons in the United States who used any website, app, or service made available by or through GoodRx at any time prior to April 20, 2024. Excluded from the Settlement Class are (a) Defendants and their affiliates, parents, subsidiaries, officers, and directors; (b) the Opt-Outs; (c) Co-Defendants; as well as (d) the judges presiding over this matter and the clerks of said judges.

*See* Settlement Agreement § B.48. Provisional certification permits notice of the proposed Settlement to the Class to inform Settlement Class Members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the formal fairness hearing. *See* MANUAL for COMPLEX LITIG., §§ 21.632, 21.633.

The decision whether to certify these actions as class actions is committed to the sound discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23. *See, e.g.*, 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:19 (6th ed.); *Hanlon*, 150 F.3d at 1023; *Arnott v. U.S. Citizenship & Immigr. Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012).

Courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White v. Imperial Adjustment Corp.*, No. Civ.A. 99–3804, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding these consumer claims any differently. In

---

[25] Center for Internet and Society, *About Us*, https://cyberlaw.stanford.edu/about-us/.

1  fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1019-23, specifically approved the class certification of a

2  similar nationwide class for settlement purposes. *See also In re Vizio, Inc., Consumer Priv. Litig.*, No.

3  8:16-ml-02693, 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019) (conditionally certifying class for

4  settlement of consumer privacy claims); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 363 (N.D. Cal. 2021)

5  (certifying class for settlement purposes in case involving interception of plaintiffs' financial information).

6      Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as

7  well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

8      (1) the class is so numerous that joinder of all members is impracticable;

9      (2) there are questions of law or fact common to the class;

10     (3) the claims or defenses of the representative parties are typical of the

11         claims or defenses of the class; and

12     (4) the representative parties will fairly and adequately protect the interests

13         of the class.

14  Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact

15  common to the members of the class predominate over any questions affecting only individual members,

16  and that a class action is superior to other available methods for the fair and efficient adjudication of the

17  controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met,

18  and Defendants consent to provisional certification for settlement purposes. Thus, provisional certification

19  should be granted.

20     A.    **The Class Satisfies Rule 23(a)**

21         1.    <u>**The Class Is Sufficiently Numerous.**</u>

22     Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.

23  Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019. There is "[n]o exact numerical formula" that

24  determines numerosity. *Guzman v. Oxnard Lemon Assocs., Ltd.*, No. CV 91-6957, 1992 WL 510094, at

25  *2 (C.D. Cal. Aug. 28, 1992). But numerosity can be presumed with 40 members. *See Krommenhock v.

26  Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied

27  if the class includes forty or more members.") (citations omitted). Here, Plaintiffs estimate the class size

28  as approximately 54.8 million individuals based on data from GoodRx showing a breakdown of the

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO

number of email addresses GoodRx acquired by year. Fisher Decl. ¶ 17, 24. Thus, the proposed Settlement Class is sizeable. *Id.* Numerosity is satisfied. [26]

### 2. Common Questions of Law and Fact Exist.

Rule 23(a)(2) requires the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality means that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012)). Commonality is liberally construed, and not all questions of fact and law "need [] be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019; *see Foster v. Adams & Assocs., Inc.*, No. 18-cv-02723, 2019 WL 4305538, at *4 (N.D. Cal. Sept. 11, 2019) ("[T]he commonality requirement can be satisfied by even a single [common] question."). The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019-20.

The commonality and predominance hurdles are satisfied here. Common questions of law and fact exist as to all Settlement Class Members and predominate over questions affecting only individual Settlement Class Members. These questions include, for example:

- Whether Defendants violated Settlement Class Members' privacy rights;

- Whether Defendants' conduct constituted an invasion of privacy at common law;

- Whether Defendants violated CIPA by aiding, agreeing, employing, and conspiring to intercept and use Settlement Class Members' communications;

- Whether GoodRx violated the CMIA by disclosing health information to Co-Defendants through their Tracking Software;

Further, virtually all legal theories asserted by Plaintiffs against Defendants are common to the Class as a whole, which alone is sufficient to establish commonality. *See* Complaint (Counts 1, 3-6, 9, 11-12, 15); *see Hanlon*, 150 F.3d at 1019-20. The three claims against Defendants that are not asserted on

---

[26] As noted above, Plaintiffs do not yet know whether the number of email addresses acquired by GoodRx (used for the class size estimates above) translates one-for-one into Settlement Class Members. If the Settlement is preliminarily approved, the Settlement Administrator will analyze the email address data provided by GoodRx for duplicates, bad email address, etc. to determine the exact number of Settlement Class Members to whom notice will be sent.

behalf of the whole class are pled in the alternative as to subclasses consisting of residents of the states whose law is invoked in these causes of action. *See* Complaint (Counts 13, 14, 16). Commonality is satisfied.

### 3.    The Plaintiffs' Claims are Typical.

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. To meet this requirement, Plaintiffs need only demonstrate that they "endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Plaintiffs' claims are typical of the claims of the Settlement Class Members in that GoodRx disclosed the same categories of information from Plaintiffs as GoodRx disclosed for the Settlement Class Members. *See* Complaint ¶¶ 22-59. Thus, because Plaintiffs' claims arise "from the same event or practice or course of conduct that [gave] rise to the claims of other class members and [their claims were] based on the same legal theory," Plaintiffs' claims are typical. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020).

### 4.    Plaintiffs and Their Counsel Adequately Represent the Class.

The final threshold is that the named plaintiffs be able to fairly and adequately protect the interests of the class. This determination turns on two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Both components of the "adequacy" test are met here. Plaintiffs have actively pursued this litigation on behalf of the Settlement Class Members. Both Plaintiffs and Settlement Class Members were harmed by Defendants' alleged misconduct; they also share an identical interest in establishing Defendants' liability and obtaining a suitable remedy for Defendants' violations of law. The proposed Class Representatives have actively participated in and kept abreast of the Litigation while it developed. Fisher Decl. ¶ 36. Plaintiffs will adequately represent the Class and have no conflicts or positions antagonistic to the Class.

B&F and Lowey similarly satisfy the adequacy requirement and should be appointed counsel for Settlement Class. This is most apparent by the work B&F and Lowey as Interim Co-Lead Class Counsel, have conducted to date. Fed. R. Civ. P. 23(g)(1)(A).[27] In successfully opposing the motions to dismiss, B&F and Lowey demonstrated a deep understanding of the law and facts at issue in this case in their opposition papers. *See* Fisher Decl. ¶ 10; ECF No. 243. This is consistent with the firms' recent leadership in the data privacy field, including Lowey's recent victory in the first-ever trial on a CIPA claim against Meta in the *Flo Health* action. *See Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757, ECF No. 756. Prior to the motions to dismiss, B&F and Lowey demonstrated their commitment to the case by, among other things, intervening in *Hodges* to protect the Settlement Class's interests, and obtaining a significant improvement in Settlement as a result. *See* Fisher Decl. ¶ 11. These actions demonstrate that they are counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, No. 2:09–cv–00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009). With a wealth of experience in class action and other complex litigation that proposed Interim Co-Lead Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here. *See* Fisher Decl. ¶ 34.

### B.    The Class Satisfies Rule 23(b)(3)

This action is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members, and the class action device provides the best method for the fair and efficient resolution of the Class's claims. Defendants do not oppose provisional class certification for the purpose of effectuating the proposed Settlement. When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary as to these Defendants, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem*, 521 U.S. at 593; *Hanlon*, 150

---

[27] In appointing class counsel, the Court is to consider: "(i) [T]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

1    F.3d at 1021-23.

2          1.      **Common Questions Predominate.**

3          A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the

4    members of the class predominate over any questions affecting only individual members . . . ." Fed. R.

5    Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be

6    resolved for all members of the class in a single adjudication," there is clear justification for class

7    treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d

8    1152, 1162 (9th Cir. 2001).

9          "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive

10   to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 621).

11   If common questions "present a significant aspect of the case and they can be resolved for all members of

12   the class in a single adjudication," then "there is clear justification for handling the dispute on a

13   representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022. There

14   is no definitive test for determining whether common issues predominate, however, in general,

15   predominance is met when there exists generalized evidence which proves or disproves an issue or element

16   on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members'

17   individual position. The main concern is "the balance between individual and common issues." *Barbosa*

18   *v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013). So long as "one or more of the central

19   issues in the action are common to the class and can be said to predominate, the action may be considered

20   proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson*

21   *Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016).

22         As explained in Section V.A.2, common issues predominate here because the Settlement Class's

23   claims against Defendants can be proven using common evidence. Further, the proposed Settlement does

24   not introduce individual legal or factual issues that would predominate over common issues. Certain

25   manageability concerns are eliminated as there will no longer be a trial as to these Defendants. Thus, the

26   predominance requirement is satisfied.

27         2.      **Superiority.**

28         "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient

and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

All of these factors are present here. There can be no doubt that managing these disputes in a single class action before a single judge is preferable and more manageable than to require thousands of users to each bring individual actions. The filing fees in such individual actions alone would likely exceed the value of any potential recovery; there would be no incentive for an individual to seek relief on an individual basis and, consequently, no adequate remedy would be reasonably achievable by Settlement Class Members.

## VI.    B&F AND LOWEY SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4). In making this determination, the Court considers proposed counsel's: (1) work in identifying or investigating the potential claim; (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, proposed B&F and Lowey have extensive experience in prosecuting consumer privacy cases and consumer class actions in general. *See* Section V.A.4. As a result of their zealous efforts in this case, they have secured substantial monetary relief and litigation cooperation for the Settlement Class Members. Thus, the Court should appoint B&F and Lowey as Class Counsel, Schubert Jonckheer & Kolbe LLP as Liaison Counsel, and Zimmerman Law Offices, P.C, and Israel David LLC, and the Shub Johns & Hollbrook LLC as Executive Committee members for the Settlement Class.

## VII.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

The Parties' Proposed Notice Plan comports with the Federal Rule and with due process and should

be approved.[28]

### A. The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern District's Procedural Guidance

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice plan must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, No. C-11-01078, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). Utilizing contact information in GoodRx's possession, the Settlement Administrator will disseminate Email Notice directly to Settlement Class Members. *See* Settlement Agreement § I.1; Parks Decl. ¶ 10. As detailed in the Settlement Agreement, the Email Notice will include text describing the key terms of the Settlement in addition to providing a link the Settlement Website, which will host additional documents and information, such as the Long-Form Notice, Claim Form, Settlement Agreement, the Complaint, and any updates relating to the Final Approval Hearing or deadlines in the case. *See* Settlement Agreement § I.1; Parks Decl. ¶ 10. The Settlement Website will be published prior to or contemporaneously with Class Notice. Settlement Agreement § I.1.d; Parks Decl. ¶ 18. The following documents will be posted on the Settlement Website: the Complaint, the Settlement Agreement, the Claim Form, the Long-Form Notice, and any other relevant settlement document as agreed by the Parties. Settlement Agreement § I.1.d, Exs. A, B (Claim Form and Long-Form Notice); Parks Decl. ¶ 18.

Several courts have approved similar email notice plans, recognizing that email is the most reliable means of notification for Settlement Class Members in circumstances similar to here. *See Opperman v. Kong Techs., Inc.*, No. 13-CV-00453, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017) (approving the notice plan which will provide "email notice to every user who downloaded and registered for the app during the relevant time period"); *Shahar v. Hotwire, Inc.*, No.: 12-cv-06027, 2014 WL 12647737, at *2 (N.D. Cal. July 25, 2014) (recognizing the "direct e-mail notice" plan was "the best notice practicable under the circumstances").

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the Settlement Agreement with Defendants GoodRx and Criteo.

---

[28] Plaintiffs understand that Defendants will be responsible for Class Action Fairness Act (CAFA) notice. *See* Settlement Agreement § I.2.

1

2  Dated: November 26, 2025                    /s/ Christian Levis

3                                              Christian Levis (*pro hac vice*)
                                               Amanda Fiorilla (*pro hac vice*)
4                                              Rachel Kesten (*pro hac vice*)
                                               **LOWEY DANNENBERG, P.C.**
5                                              44 South Broadway, Suite 1100
                                               White Plains, NY 10601
6                                              Telephone: (914) 997-0500
                                               Facsimile:  (914) 997-0035
7                                              clevis@lowey.com
                                               afiorilla@lowey.com
8                                              rkesten@lowey.com

9                                              *Interim Co-Lead Counsel*

10                                             L. Timothy Fisher (SBN 191626)
                                               Neal J. Deckant (SBN 322946)
11                                             Jenna L. Gavenman (SBN 348510)
                                               **BURSOR & FISHER, P.A.**
12                                             1990 North California Blvd., 9th Floor
                                               Walnut Creek, CA 94596
13                                             Telephone: (925) 300-4455
                                               Facsimile:  (925) 407-2700
14                                             ltfisher@bursor.com
15                                             ndeckant@bursor.com
                                               jgavenman@bursor.com
16

17                                             *Interim Co-Lead Counsel*

18                                             Robert C. Schubert #62684
                                               Willem F. Jonckheer #178748
19                                             Amber L. Schubert #278696
                                               **SCHUBERT JONCKHEER & KOLBE LLP**
20                                             2001 Union Street, Suite 200
                                               San Francisco, CA 94123
21                                             Tel: (415) 788-4220
                                               Fax: (415) 788-0161
22                                             rschubert@sjk.law
23                                             wjonckheer@sjk.law
                                               ascubert@sjk.law
24

25                                             Mark L. Javitch (CA SBN 323729)
                                               mark@javitchlawoffice.com
26                                             **JAVITCH LAW OFFICE**
                                               3 East 3rd Ave., Suite 200
27                                             San Mateo, CA  94401
                                               Telephone: (650) 781-8000
28                                             Facsimile:  (650) 648-0705

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Thomas A. Zimmerman, Jr. (*pro hac vice*)
tom@attorneyzim.com
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile:  (312) 440-4180

Israel David (*pro hac vice*)
israel.david@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone: (212) 739-0622
Facsimile:  (212) 739-0628

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB JOHNS & HOLBROOK LLC**
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 585-1195
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT - CASE NO. 3:23-cv-00501-AMO