| | |
|---|---|
| **BURSOR & FISHER, P.A.**<br>L. Timothy Fisher (SBN 191626)<br>1990 North California Blvd., 9th Floor<br>Walnut Creek, CA 94596<br>Tel: (925) 300-4455<br>Email: ltfisher@bursor.com | **GIBSON, DUNN & CRUTCHER LLP**<br>Lauren R. Goldman (*pro hac vice*)<br>200 Park Ave.<br>New York, NY 10166<br>Tel: (212) 351-4000<br>Email: lgoldman@gibsondunn.com |
| **LOWEY DANNENBERG, P.C.**<br>Christian Levis (*pro hac vice*)<br>44 South Broadway, Suite 1100<br>White Plains, NY 10601<br>Tel: (914) 997-0500<br>Email: clevis@lowey.com | **COOLEY LLP**<br>Benedict Y. Hur (SBN 224018)<br>3 Embarcadero Center, 20th Floor<br>San Francisco, CA 94111<br>Tel: (415) 693-2000<br>Email: bhur@cooley.com |

*(Additional Counsel Listed on Signature Page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| JANE DOE, JANE DOE II, JOHN DOE, E.C., JOSE MARQUEZ, and HOLLIS WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOODRX HOLDINGS, INC., CRITEO CORP., META PLATFORMS, INC., AND GOOGLE LLC<br><br>Defendants. | Case No. 3:23-cv-00501-AMO<br><br>[PROPOSED] **STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**<br><br>Judge: Honorable Araceli Martínez-Olguín<br>Action Filed: May 26, 2023<br>Courtroom: 10, 19th Floor |

IT IS SO ORDERED
*Judge Araceli Martínez-Olguín*
January 16, 2026

## I. PURPOSE

1. This Stipulated Protocol for Producing Documents and ESI (the "ESI Protocol") governs the production of documents and electronically stored information ("ESI") by the Parties in the above-captioned litigation as a supplement to the Federal Rules of Civil Procedure, and the ESI Guidelines and ESI Checklist, as defined below. Where this ESI Protocol discusses "Parties," it is referring to plaintiffs Jane Doe, Jane Doe II, John Doe, E.C., Jose Marquez, and Hollis Wilson ("Plaintiffs") and defendants Meta Platforms, Inc. ("Meta"), and Google LLC ("Google") (collectively, the "Defendants").

2. The Parties agree that the Guidelines for the Discovery of Electronically Stored Information ("the ESI Guidelines") and the Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("the ESI Checklist") adopted by this Court apply as appropriate to the discovery of ESI ("eDiscovery"), including any meet and confer sessions regarding eDiscovery.

## II. COOPERATION AND PROPORTIONALITY

1. The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this action consistent with the Court's Guidelines for the Discovery of ESI.

2. The Parties acknowledge that the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) applies to the preservation, identification, and production of ESI in this action. This includes identifying appropriate limits to discovery, including limits on custodians, sources of information, identification of relevant subject matter, and time periods for discovery to limit and guide preservation and discovery issues.

## III. EDISCOVERY LIAISONS

Each Party will identify one or more eDiscovery Liaisons. Each eDiscovery Liaison will be, or have access to those who are, knowledgeable about the technical aspects of eDiscovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the eDiscovery Liaisons, as needed, to confer about ESI and to help resolve disputes without intervention by the Court.

## IV. PRESERVATION

1

The Parties and their counsel acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control consistent with the Federal Rules, the ESI Guidelines, ESI Checklist and any other applicable orders and rules. The Parties agree to meet and confer to discuss their preservation obligations and the preservation of potentially relevant ESI.

    A.    To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

        1.    Except as otherwise set forth herein or agreed to by the parties, only ESI created, or received between January 1, 2017 and February 2, 2023 will be preserved.

        2.    The parties will exchange a list of the types of ESI[1] they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved, e.g., "HR head," "scientist," and "marketing manager." The parties shall add or remove custodians as reasonably necessary;

        3.    The parties will agree on the number of custodians per party for whom ESI will be preserved.

        4.    These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced:

            a.    Backup systems and/or tapes used for disaster recovery;

            b.    Systems no longer in use that cannot be accessed by using systems currently in use by the Party.

            c.    Systems, server and network logs that do not contain user data

        5.    Among the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve the following:

            a.    Deleted, slack, fragmented data;

---

[1] ESI includes Google Docs, Google Drive, MS Teams/Sharepoint, or other similar proprietary systems.

      b.      On-line access data such as temporary internet files, history, cache, and the like, and that do not contain user data;

      c.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system

      d.      Dynamic fields of databases or log files that do not contain user data;

      e.      Data in metadata fields that are frequently updated automatically, such as last-opened dates and last modified dates;

      f.      Automatically saved versions of documents or emails; and

      g.      Voice messages

      h.      Information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of ESI available from other sources;

      i.      Any other sources of Documents ordered by the Court or agreed upon by the parties throughout the course of this litigation.

## V. ESI SEARCH AND COLLECTION

The Parties agree that they will meet and confer regarding sources of ESI and methods to search ESI in order to identify potentially responsive, non-privileged information that is subject to collection and production in discovery and filter out ESI that is not subject to discovery.

1. The parties will meet and confer relating to the process of searching for documents responsive to discovery, including, specifically, the identification of search terms and custodians to the extent they are necessary in responding to specific discovery requests. The parties will meet and confer on these issues as necessary to ensure that discoverable, responsive, non-privileged documents are identified and produced as efficiently as possible.

2. A Producing Party will disclose its use of technology assisted review ("TAR") when used to filter out or exclude documents from collection or production. If a Producing Party chooses to use TAR or similar advanced analytics to filter out or exclude documents from collection or production, it must disclose: (1) the custodians and data sources against which TAR or advanced analytics will be run; (2)

the TAR or advanced analytics tool being used; and (3) the measure(s) used to validate the results of the TAR methodology or similar advanced analytics.

3. **System Files**. The parties have/will agree to filter out ESI that is not subject to discovery. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional filtering of non-human readable files may include, but are not limited to, Bin files and P7S files.

4. **Inspections**. On-site inspections or inspections of computers or systems will not be permitted absent an order of the Court or by agreement of the Parties. No provision of this Order affects any inspection of Source Code that is responsive to a discovery request, which will be subject to a separate Source Code inspection order governing this case, if necessary.

5. **Responsiveness Review**. Nothing in this Order may be construed or interpreted as precluding a Producing Party from conducting responsiveness review and/or analysis to determine if documents captured by search terms or analytics are in fact responsive to the Receiving Party's discovery requests. Similarly, nothing may be construed or interpreted as precluding a Producing Party from conducting a privilege review and/or analysis of documents determined to be relevant. Additionally, nothing in this Order may be construed or interpreted as requiring the production of all documents captured by any search methodology if a document is in good faith and reasonably deemed not responsive to the Receiving Party's request and/or privileged.

**VI.    PRODUCTION FORMATS**

The Parties agree that attending to issues relating to form of production at the outset facilitates the efficient and cost-effective conduct of discovery. Appendix 1 sets forth technical specifications that the Parties agree will govern the form of production of ESI in this action. Among other things, the technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a Party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable

format for the production of such documents. The Parties agree not to materially degrade the searchability of documents as part of the document production process, to the extent practicable.

1. **Deduplication and Email Threading**. Each Party is required to produce only a single copy of a responsive document and each Party may deduplicate responsive ESI across Custodians, provided that metadata is produced in accordance with Appendix 1. A Party may also de-duplicate email threads and attachments as follows: Where multiple collected email messages are part of a single chain or email "thread," a thread is deemed responsive for the purposes of this ESI Protocol if any email or attachment within that thread is itself responsive, even though individual emails or attachments within the thread, standing alone, may not be responsive. The most inclusive responsive email collected should be produced ("Last In Time Email") and a Producing Party need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and identical senders and recipients, within the Last In Time Email. Where an earlier-in-time email has a responsive attachment or other unique content that is not contained within the Last In Time Email, the most inclusive, earlier-in-time email containing the attachment or unique content in question shall be produced along with such attachment or unique content. An email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy fields, even if all remaining content in the email is identical.

2. **Parent-Child Relationships**. The Parties shall undertake reasonable efforts to preserve parent-child relationships within a document family (the association between an attachment and its parent document). The child document(s) should be consecutively produced immediately after the parent-document. The Parties shall undertake reasonable efforts to produce each document with the production number for the first and last page of that document in the beginning production and end production fields of the data load file with fields listing the production number for the first and last page in the document family. The Parties agree to meet and confer to address situations in which a Party believes that parent-child relationships have not been adequately preserved. Non-substantive automatically-generated embedded files, such as logos, embedded, non- substantive formatting files such as .ole or .dll formats, or confidentiality legends need not be produced as separate attachments.

## VII. REDACTIONS AND DOCUMENTS PROTECTED FROM DISCOVERY

1. A Party may use redactions for the following purposes: (1) to redact privileged information; and (2) to redact highly sensitive personally identifiable information (e.g., Social Security Numbers and account credentials), and (3) to redact source code.

2. The Parties will submit a separate Order under Fed. R. Evid. 502(d) that governs the production of documents protected from discovery.

3. Disclosures between and/or among the defendants' attorneys of work product or other communications relating to issues of common interest do not waive any applicable privilege or protection from disclosure.

4. Privileged communications and documents that post-date the filing of the first-filed complaint, that involve outside counsel or in-house counsel, need not be placed on a privilege log.

5. The Parties agree to log only the Last in Time Emails in a thread and need not log earlier, less inclusive email messages or "thread members" that are fully contained within the Last In Time Email.

6. The Parties agree to furnish logs that comply with Fed. R. Civ. P. 26(b)(5) and any other legal requirements for all documents withheld or redacted on the basis of privilege, attorney work product, or similar doctrines. Privilege logs shall be produced in a searchable format in conformity with the provisions outlined in this stipulation.

7. Nothing in this Order requires disclosure information protected by the attorney-client privilege, the work-product doctrine, or similar doctrines.

8. **General**. Subject to the limitations specified in this Section, documents that a Party withholds, entirely or in part by redaction, on the basis of the attorney-client privilege, the work product doctrine, or similar doctrines shall be logged on a privilege log.

9. **Contents of Privilege Log Entries**. Consistent with Federal Rule of Civil Procedure 26(b)(5), the following information should be provided (as applicable) in the privilege log for each entry: (1) Bates-number range, or if no Bates-number range, a unique document identification number range; (2) document date; (3) all senders and recipients, including copies and blind copies, with attorneys and their staff denoted by an asterisk (*) on the log; (4) if the document is an email, the Subject Line of the email

(unless the Subject Line itself contains privileged information), or if the document is ESI other than email, the file name; (5) privilege(s) or protection(s) claimed; and (6) the custodian or location of the documents if the document is ESI other than email; and (7) description of the Document or electronically stored information that is sufficiently detailed and informative to justify the privilege or protection claimed.

10. **Email Strings**. If the Producing Party is withholding any part of an email thread based on a claim of privilege or other protection, that party must produce all parts of the thread that are not privileged with slip sheets or redactions for the withheld portions.

11. **Deadlines to Serve Privilege Logs**. The parties may serve privilege logs on a rolling basis in addition to those deadlines ordered by the Court. The Producing Party shall produce its first privilege log within 30 days of its first document production that includes one or more documents redacted on privilege grounds (or from which one or more documents have been withheld on privilege grounds). Supplemental privilege logs shall be periodically provided during the course of discovery within 30 days of each production containing one or more documents redacted or withheld on privilege grounds. Supplemental privilege logs need not include entries for any documents that have been included on any prior privilege log (so that each privilege log supplements all previously served privilege logs but need not include entries from any previously served log(s)). If a supplemental privilege log is provided less than 30 days before the close of fact discovery or after the close of fact discovery, the Receiving Party shall have 30 days from receipt of that supplemental privilege log to challenge the privilege assertions contained on that supplemental log.

## VIII. TIMING AND PHASING OF PRODUCTIONS

When a Party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to phase the production of ESI by producing documents on a rolling basis.

## IX. MODIFICATION

This Order may be modified by a stipulated order of the Parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

DATED:  January 5, 2026

Respectfully submitted,

*/s/ Christian Levis*

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

L. Timothy Fisher (SBN 191626)
Neal J. Deckant (SBN 322946)
Jenna L. Gavenman (SBN 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
jgavenman@bursor.com

*Interim Co-Lead Counsel*

Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law
wjonckheer@sjk.law
ascubert@sjk.law

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
**JAVITCH LAW OFFICE**
3 East 3rd Ave., Suite 200
San Mateo, CA  94401
Telephone: (650) 781-8000

Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice*)
tom@attorneyzim.com
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Israel David (*pro hac vice*)
israel.david@davidllc.com
**ISRAEL DAVID LLC**
17 State Street, Suite 4010
New York, New York 10004
Telephone: (212) 739-0622
Facsimile: (212) 739-0628

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice*)
Samantha E. Holbrook (*pro hac vice*)
**SHUB JOHNS & HOLBROOK LLP**
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 585-1195
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Counsel for Plaintiffs*

10

| | | |
|---|---|---|
| 1 | DATED: January 5, 2026 | /s/ Lauren R. Goldman |
| 2 | | Lauren R. Goldman (*pro hac vice*) |
| | | lgoldman@gibsondunn.com |
| 3 | | Darcy C. Harris (*pro hac vice*) |
| | | dharris@gibsondunn.com |
| 4 | | **GIBSON, DUNN & CRUTCHER LLP** |
| | | 200 Park Avenue |
| 5 | | New York, NY 10166 |
| | | Telephone:   (212) 351-4000 |
| 6 | | Facsimile:   (212) 351-4035 |
| 7 | | |
| | | Elizabeth K. McCloskey (268184) |
| 8 | | emccloskey@gibsondunn.com |
| | | Abigail A. Barrera (301746) |
| 9 | | abarrera@gibsondunn.com |
| 10 | | **GIBSON, DUNN & CRUTCHER LLP** |
| | | One Embarcadero Center, Suite 2600 |
| 11 | | San Francisco, CA 94111 |
| | | Telephone:   (415) 393-8200 |
| 12 | | Facsimile:   (415) 393-8306 |
| 13 | | *Attorneys for Defendant META PLATFORMS, INC.* |
| 14 | DATED: January 5, 2026 | /s/ Benedict Y. Hur |
| 15 | | Benedict Y. Hur (SBN: 224018) |
| 16 | | Simona Agnolucci (SBN: 246943) |
| | | Eduardo E. Santacana (SBN: 281668) |
| 17 | | Tiffany Lin (SBN: 321472) |
| | | Joshua Anderson (SBN: 312836) |
| 18 | | **COOLEY LLP** |
| | | 3 Embarcadero Center, 20th Floor |
| 19 | | San Francisco, CA 94111 |
| | | Telephone:   (415) 693-2000 |
| 20 | | Facsimile:   (415) 693-2222 |
| 21 | | bhur@cooley.com |
| | | sagnolucci@cooley.com |
| 22 | | esantacana@cooley.com |
| 23 | | tiffany.lin@cooley.com |
| | | joshua.anderson@cooley.com |
| 24 | | |
| | | *Attorneys for Defendant GOOGLE LLC* |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

# APPENDIX 1: PRODUCTION FORMAT

1. **Production Components**. Except as otherwise provided below, ESI shall be produced in accordance with the following specifications:

    (a) an ASCII delimited metadata file (.TXT, .DAT, or .CSV) using standard delimiters;

    (b) an image load file that can be loaded into commercially acceptable production software (*e.g.* Concordance or Relativity);

    (c) single-page TIFF images;

    (d) and Text Files.

    (e) If a particular document warrants a different production format, the Parties will cooperate in good faith to arrange for a mutually acceptable production format.

2. **Production Media and Access Controls**. Documents shall be encrypted and produced through electronic means at the sole selection of the Producing Party, such as secure file sharing methods (*e.g.* FTP), readily accessible computer(s), or on CD, DVD, flash drive or external hard drive ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.* "VOL001"). Each piece of Production Media shall also identify: (a) the Producing Party's name; (2) the production date; and (3) the Bates Number range of the materials contained on the Production Media. Nothing in this ESI Order will preclude or impair any and all protections provided the Parties by any Stipulated Protective Order(s) agreed and entered into by the Parties. Any data produced by the Producing Party must be protected in transit, in use, and at rest by all in receipt of such data.   Parties will use best efforts to avoid the unnecessary copying or transmittal of produced documents. Any copies made of produced data must be kept on media or hardware employing whole-disk or folder level encryption or otherwise secured on information systems and networks in a manner consistent with the best practices for data protection. If questions arise, Parties will meet and confer to ensure security concerns are addressed prior to the exchange of any documents.

3. **Data Load Files/Image Load Files**. Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data

load file should match the total number of designated document breaks in the image load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file. Image Load File must contain the following comma-delimited fields where available: BEGBATES, PRODVOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT. Load files shall not vary in format or structure within a production, or from one production to another.

4. **Metadata Fields**. Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The Parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH, and (e) ALLCUSTODIAN(S). The metadata file shall be delimited according to the following characters:

- Delimiter = ¶ (ASCII:020)
- Text-Qualifier = þ (ASCII:254)
- New Line = ® (ASCII:174)
- Multi-value delimiter - ; (ASCII Code 059)

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| PRODVOLUME | Production volume |
| ALLCUSTODIAN(S) | Individual(s) from whom the document was obtained and de-duplicated out during global de-duplication |
| FILEPATH | Original path to the individual source file. Includes path up to and including internal path of containers. |

| Field Name | Field Description |
|---|---|
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| EMAIL SUBJECT | Subject line of email (subject to privilege redaction) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |
| AUTHOR | Any value populated in the Authorfield of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| TITLE | Any value populated in the Title field of the document properties |
| DOCEXT | File extension of document pulled from the document properties |
| DATECREATED | Date the document was created (format:  MM/DD/YYYY) (Edoc or attachment only) |
| DATEMODIFIED | Date when document was last modified (format: MM/DD/YYYY) (Edoc or attachment only) |
| FROM | The name and email address of the sender of the email |
| TO | All recipients that were included on the "To" line of the email |
| CC | All recipients that were included on the "CC" line of the email |
| BCC | All recipients that were included on the "BCC" line of the email |
| DATETIMESENT | Date and time email was sent (format:  MM/DD/YYYY HH:MM SS) |
| DATETIMERECEIVED | Date and time email was received (format:  MM/DD/YYYY HH:MM SS) |
| HASHVALUE | MD5 hash value of document |
| PAGECOUNT | The number of pages of the Document, excluding the pages of documents in the same family |
| REDACTIONS | Indicate Yes/No if document is redacted |

1. 5. **Processing**. ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification. ESI items shall be produced with all of the metadata and coding fields set forth above.

    (a) **Time Zone**. ESI items shall be processed so as to preserve and display the date/time shown in the document. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

    (b) **Hidden Content**. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document.

6. **TIFFs**. Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Documents that exist as ESI shall be converted and produced as TIFFs, except as provided below. Unless excepted below, single page, black and white, Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs must show all text and images that would be visible to a user of the hard copy documents. Where the TIFF image is unreadable or has materially degraded the quality of the original, the Parties may request a higher quality TIFF image or agree upon an alternative format.

7. **Text Files**. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" must be used for all scanned, hard copy documents and for documents with redactions. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR

text files will be substituted for extracted text files for redacted documents. All documents must be produced with a link in the TextLink field.

8. **Native files**. Spreadsheets (*e.g.* MS Excel, Google Sheets) and delimited text files (e.g. comma-separated value (.csv) files and tab-separated value (.tsv) files) will be produced in native format or MS Excel unless redacted, in which instance, spreadsheets shall be produced in TIFF with OCR Text Files. To the extent that they are produced in this action, audio, video, and multi-media files will be produced in native format. A TIFF placeholder indicating that the document was provided in native format should accompany the database record. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

9. **Bates Numbering**. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets.

10. **Confidentiality Designation**. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order(s) entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

11. **Redaction of Information**. If documents are produced containing redacted information, an electronic copy of the original, unredacted data must be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein.

12. **Proprietary Files**. To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve such information. The parties shall meet and confer to finalize the appropriate production format.

13. **Databases and Other Structured Data**. Prior to production of data contained in databases or other structured data types, the Parties agree to meet and confer regarding the production of this ESI, to ensure that any information produced is reasonably usable by the Receiving Party and that its production does not impose an undue burden on the Producing Party. To the extent a Producing

Party is constrained from producing responsive ESI because of a third- party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to reach an agreement on alternative methods to enable the Receiving Party to view the ESI.

14. **Password Protected Files and Containers**. A Producing Party shall employ reasonable efforts to remove passwords or decrypt any encrypted or password protected containers (including Zip files or similar archives) so that they may be indexed prior to applying search terms, TAR, another search or filtering methodology. If a Receiving Party is unable to access a file or container because it is encrypted or password-protected, it may notify the Producing Party and the Parties will meet and confer regarding the nature of the encrypted or password- protected files and whether there are reasonable methods to enable the Receiving Party to review them.

15. **Embedded Documents**. For documents with substantive embedded ESI (e.g., a word processing document with an embedded spreadsheet), the embedded ESI will be extracted, produced as independent document records and related back to the respective top-level parent document (e.g., standalone file, email message, etc.) via the BEGATTACH Range and ENDATTACH Range fields referenced in Section 4 of this Appendix. Such related documents will be produced within a continuous Bates range.

16. **Linked Documents**. Linked documents are not considered attachments. Custodial documents stored in the cloud that allow for collaboration or sharing via a link to that file (*e.g.*, Google Docs, Google Drive, MS Teams/Sharepoint, or other proprietary systems), shall be preserved in accordance with the provisions outlined in Section IV, Preservation above. If the Receiving Party identifies produced documents that contain link(s) to document(s) in a cloud storage, collaboration platform or other internal system outside of the document containing the link, the Receiving Party may request the Producing Party investigate a reasonable number of such links by identifying the Bates number of the document and page within which the hyperlink is embedded. The Producing Party shall either identify by Bates number the hyperlinked document if already produced, or investigate if the document still exists on the Producing Party's systems, and collect the document if it still exists on the Producing Party's systems and produce it, provided it is responsive and non-

privileged. To the extent the Producing party contends the collection or production of any such linked document is disproportional or unduly burdensome (either individually or collectively), the Parties agree to meet and confer.  Additionally, if the Receiving Party identifies documents that it believes are linked documents as defined in Section VI.3 above (*e.g.*, by reference to an existing identifier), the Receiving Party may request the Producing Party identify and/or produce a reasonable number of non-privileged documents collected in this Action containing a link to that linked document. The Parties will meet and confer to discuss the feasibility, proportionality, and burden based on the Producing Party's existing technology of identifying and/or producing non-privileged responsive documents collected in this Action containing a link to that linked document.

17. **Chat Threads**.  The parties agree that to the extent that chat platforms are identified by a party as a potentially relevant source of ESI in connection with this action, the parties will confer regarding the technical means and specifications by which that party shall search for and produce responsive, non-privileged chats.