L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
Daniel S. Guerra (State Bar No. 267559)
Jenna L. Gavenman (State Bar No. 348510)
**BURSOR & FISHER, P.A.**
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
dguerra@bursor.com
jgavenman@bursor.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

*Additional Counsel for Plaintiffs on Signature Page*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| JANE DOE, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOODRX HOLDINGS, INC., et al.,<br><br>Defendants. | Lead Case No.: 4:23-cv-00501-AMO<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS GOODRX HOLDINGS, INC. AND CRITEO CORP.; SUPPORTING MEMORANDUM OF LAW**<br><br>CONSOLIDATED CLASS ACTION<br><br>COMPLAINT FILED: February 2, 2023<br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>Date: July 2, 2026<br>Time: 2:00 PM<br>Courtroom: Oakland Courthouse |

**REDACTED VERSION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on July 2, 2026, at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, CA 94612, the Honorable Araceli Martínez-Olguín presiding, Plaintiffs Jane Doe, Jane Doe II, John Doe, Jose Marquez, and Hollis Wilson ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) preliminarily approve the proposed Amended Class Action Settlement Agreement and Release (the "Agreement") with GoodRx Holdings, Inc. ("GoodRx") and Criteo Corp. ("Criteo") submitted herewith; (ii) provisionally certify the Settlement Class for the purposes of settlement, designate Plaintiffs as the Class Representatives, and appoint the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing (the "Motion").

Preliminary approval of the Settlement is proper because the terms of the proposed Agreement are fair, reasonable, and adequate and because each requirement of Rule 23(e) has been met. Accordingly, Plaintiffs request that the Court enter the accompanying [Proposed] Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "[Proposed] Preliminary Approval Order").

The Motion is based on the Declaration of L. Timothy Fisher dated June 1, 2026 (the "Fisher Decl.") and the exhibits attached thereto, including the Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Law filed herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated: June 1, 2026

**BURSOR & FISHER, P.A.**

By: */s/ L. Timothy Fisher*

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
Daniel S. Guerra (State Bar No. 267559)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., 9th Floor

Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
dguerra@bursor.com
jgavenman@bursor.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

## TABLE OF CONTENTS

**PAGE(S)**


I. INTRODUCTION ... 1
II. PROCEDURAL BACKGROUND ... 1
III. INFORMATION ABOUT THE PROPOSED SETTLEMENT ... 3
A. PG (1)1: Class Definition ... 3
B. PG (1)2: The Claims to be Released ... 4
C. PG (1)4: Other Cases Affected by the Settlement ... 5
D. PG (1)5, (1)7, (6), (7), (8): Allocations and Payments from the Settlement Fund ... 5
1. The Settlement Fund ... 5
2. Service Awards ... 6
3. Attorneys' Fees and Expense Award ... 6
E. PG (1)6 & PG (2): Settlement Administration ... 7
IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ... 8
A. The *Hanlon* Factors ... 8
1. Strength of Plaintiffs' Case ... 8
a. Discovery and Liability Scope ... 9
i. Arbitration-Related Discovery ... 9
ii. Federal Trade Commission ("FTC") Production ... 9
iii. Class Size and Tracking Technology Confirmation ... 10
iv. Criteo Discovery Limiting the Scope of Liability ... 11
v. Additional Discovery Cooperation ... 12
b. Claim-by-Claim Analysis & Justification for Settlement Amount ... 12
i. Common Defenses Justifying Settlement Discount ... 12
ii. Individualized Analysis ... 13
iii. Maximum Likely Recovery Analysis and Comparison to Settlement Consideration ... 23
2. Risk of Continuing Litigation ... 23
3. Risk of Maintaining Class Action Status ... 24
4. PG (1)3: The Amount Offered in Settlement ... 24
5. The Extent of Discovery ... 26
6. Experience and Views of Counsel ... 27
B. Rule 23(e)(2) Factors ... 27
1. The Class Is Adequately Represented ... 27

2. The Settlement Was Negotiated at Arm's Length ........ 27
3. The Settlement Provides Adequate Relief to the Settlement Class ........ 28
4. The Settlement Treats All Settlement Class Members Equally ........ 29

V. CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ........ 29

A. The Class Satisfies Rule 23(a) ........ 30
1. The Class Is Sufficiently Numerous. ........ 30
2. Common Questions of Law and Fact Exist. ........ 31
3. The Plaintiffs' Claims are Typical ........ 31
4. Plaintiffs and Their Counsel Adequately Represent the Class ........ 32

B. The Class Satisfies Rule 23(b)(3) ........ 33

VI. B&F AND LOWEY SHOULD BE APPOINTED AS CLASS COUNSEL ........ 34

VII. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........ 34

A. The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern District's Procedural Guidance ........ 34

CONCLUSION ........ 35

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Alvarez v. Sirius XM Radio Inc.*,
2020 WL 7314793 (C.D. Cal. July 15, 2020) ... 28

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ... 33

*B.K v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal 2024) ... 17

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024) ... 28

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ... 14

*Brown v. Google*,
2022 WL 17961497 (N.D. Cal. 2022) ... 20

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ... 15

*Cole v. Quest Diagnostics*,
2025 WL 3172640 (3d Cir. Nov. 13, 2025) ... 14, 16

*DellaSala v. Samba TV, Inc.*,
2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) ... 14, 25

*Doe v. Eating Recovery Ctr. LLC*,
2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ... 14, 16

*Elder v. Hilton Worldwide Holdings, Inc.*,
2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) ... 8

*Evans v. Linden Rsch., Inc.*,
2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ... 34

*Finney v. Ford Motor Co.*,
2019 WL 79033 (N.D. Cal. Jan. 2, 2019) ... 19

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) ... 26

*Frasco v. Flo Health, Inc.*,
2025 WL 1476905 (N.D. Cal. May 22, 2025) ... 25, 26

*G.H.I.I. v. MTS, Inc.*,
147 Cal. App. 3d 256 (1983) .......... 16

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .......... 9

*Gilbane Fed. v. United Infrastructure Projects FZCO*,
275 F. Supp. 3d 1180 (N.D. Cal. 2017) .......... 22

*Giuliano v. Sandisk Corp.*,
2015 WL 10890654 (N.D. Cal. May 14, 2015) .......... 33

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .......... 15

*Guzman v. Oxnard Lemon Assocs., Ltd.*,
1992 WL 510094 (C.D. Cal. Aug. 28, 1992) .......... 31

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... passim

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) .......... 16

*Hester v. Vision Airlines, Inc.*,
2009 WL 4893185 (D. Nev. Dec. 16, 2009) .......... 33

*In re Anthem, Inc. Data Breach Litig.*,
2017 WL 9614789 (N.D. Cal. Aug. 25, 2017) .......... 28

*In re Anthem, Inc. Data Breach Litigation*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 4, 5

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) .......... 29

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 20

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .......... 27

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 19, 20

*In re Netflix Privacy Litig.*,
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .......... 24

*In re Packaged Seafood Prods. Antitrust Litig.*,
2022 WL 228823 (S.D. Cal. Jan. 26, 2022) ... 12

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ... 8

*In re Vizio, Inc., Consumer Priv. Litig.*,
2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) ... 30

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) ... 26

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) ... 32

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ... 24

*Krommenhock v. Post Foods, LLC*,
334 F.R.D. 552 (N.D. Cal. 2020) ... 31

*Landon v. TSC Acquisition Corp.*,
2024 WL 5317240 (C.D. Cal. Nov. 1, 2024) ... 22

*Larsen v. Trader Joe's Co.*,
2014 WL 3404531 (N.D. Cal. July 11, 2014) ... 24

*Lewis v. Magnite, Inc.*,
2025 WL 3687546 (C.D. Cal. Dec. 4, 2025) ... 14

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ... 25

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) ... 31

*Miramontes v. U.S. Healthworks, Inc.*,
2017 WL 11633665 (C.D. Cal. Sept. 5, 2017) ... 27

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ... 24

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ... 8, 24, 25

*O'Phelan v. Loy*,
497 F. App'x 720 (9th Cir. 2012) ... 21

*Opperman v. Kong Techs., Inc.*,
2017 WL 11676126 (N.D. Cal. July 6, 2017) ... 35

*Opperman v. Path, Inc.*,
2016 WL 3844326 (N.D. Cal. July 15, 2016) ... 21

*Pattison v. HP Inc.*,
2024 WL 5011945 (N.D. Cal. Dec. 5, 2024) ... 19

*Pena v. Taylor Farms Pac., Inc.*,
2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ... 8

*Perks v. Activehours, Inc.*,
2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ... 27, 29

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ... 17

*Ramirez v. TransUnion LLC*,
951 F.3d 1008 (9th Cir. 2020) ... 32

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ... 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ... 24

*Romero v. Los Angeles Rams*,
91 Cal. App. 5th 562 (Cal. Ct. App. 2023) ... 22

*Samet v. Proctor & Gamble Co.*,
2019 WL 13167115 (N.D. Cal. Jan. 15, 2019) ... 19

*Santoro v. Aargon Agency, Inc.*,
252 F.R.D. 675 (D. Nev. 2008) ... 32

*Schneider v. Champignon Brands Inc.*,
2022 WL 22879587 (C.D. Cal. Nov. 1, 2022) ... 28

*Shahar v. Hotwire, Inc.*,
2014 WL 12647737 (N.D. Cal. July 25, 2014) ... 35

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ... 18

*State of California v. eBay, Inc.*,
2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ... 29

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ... 32

*Stewart v. Apple Inc.*,
2022 WL 3013122 (N.D. Cal. Feb. 17, 2022) ... 35

*Stewart v. JP Morgan Chase Bank, N.A.*, 2021 WL 3142042 (N.D. Ill. July 26, 2021) ... 20

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610 (N.D. Ill. 2009) ... 20

*Torres v. Prudential Fin., Inc.*, 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ... 15

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ... 33

*Viasat, Inc. v. Space Sys./Loral, Inc.*, 2014 WL 3896073 (S.D. Cal. Aug. 8, 2014) ... 19

*Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197 (2022) ... 17

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ... 29

*Wellens v. Sankyo*, 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ... 29

*White v. Imperial Adjustment Corp.*, 2002 WL 1809084 (E.D. La. Aug. 6, 2002) ... 30

*Williams v. DDR Media, LLC*, 757 F. Supp. 3d 989 (N.D. Cal. 2024) ... 15

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010) ... 33

*Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ... 15

**STATUTES**

815 Ill. Comp. Stat. Ann. 505/1 ... 12

815 Ill. Comp. Stat. Ann 505/10a(e) ... 20

Cal. Bus. & Prof. Code § 17200 ... 12

Cal. Civ. Code § 56.05(j) ... 16

Cal. Civ. Code § 56.06 ... 12

Cal. Civ. Code § 56.36(b) ... 15

Cal. Civ. Code § 1750 ... 12

Cal. Civ. Code § 1783 .......... 19

Cal. Penal Code § 631-32 .......... 12, 14, 15

Cal. Penal Code § 637.2 .......... 13

N.Y. Gen. Bus. Law § 349 .......... 12

**RULES**

Fed. R. Civ. P. 23 .......... passim

**OTHER AUTHORITIES**

3 Newberg and Rubenstein on Class Actions § 7:19 (6th ed.) .......... 30

Manual for Complex Litigation, Second § 30.44 (1985) .......... 8

# MEMORANDUM OF LAW

## I. INTRODUCTION

Plaintiffs and proposed Class Representatives Jane Doe, Jane Doe II, John Doe, Jose Marquez, and Hollis Wilson (collectively, "Plaintiffs") respectfully request the Court's preliminary approval of an **amended** $32 million class settlement with two of the four defendants in this case—GoodRx Holdings, Inc. and Criteo Corp. (collectively, "Defendants").[1]

Following the Court's January 16, 2026 Order, the Parties agreed to amendments that addressed certain of the Court's concerns while maintaining the excellent resolution reached on behalf of the Settlement Class. If approved, Settlement Class Members will receive immediate monetary relief from the Settlement Fund that is ***approximately 21 times*** the $1.5 million penalty the Federal Trade Commission ("FTC") obtained from GoodRx for the same alleged disclosure of data through SDKs and pixels. *See* Fisher Decl. Ex. 2 at 22 ("FTC Order"). Plaintiffs estimate this will result in a recovery of $4-$12 per Class Member. The Settlement will also support the continued prosecution of Meta and Google, which may result in additional recoveries for the Settlement Class.

Plaintiffs contend the current Settlement is a fair, reasonable, and adequate outcome for the Class. Accordingly, Plaintiffs respectfully request that the Court: (i) preliminarily approve the proposed Agreement, (ii) provisionally certify the Settlement Class for settlement purposes, designate Plaintiffs as Class Representatives, and appoint L. Timothy Fisher of Bursor & Fisher, P.A. ("B&F") and Christian Levis of Lowey Dannenberg, P.C. ("Lowey") as Class Counsel; (iii) establish procedures for providing notice to the Settlement Class; (iv) approve forms of Class Notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing.

## II. PROCEDURAL BACKGROUND

In February 2023, the FTC filed and settled an action against GoodRx for violations of the FTC Act and the FTC's Health Breach Notification Rule involving the alleged disclosure of users' personally identifiable information ("PII"), medication details, and sensitive health conditions, to Co-Defendants,

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Ex. 1, to the Declaration of L. Timothy Fisher (the "Fisher Decl.").

among others. *See United States v. GoodRx Holdings, Inc.*, No. 23-cv-460, ECF No. 1 (N.D. Cal.); Fisher Decl. ¶ 7. The regulatory settlement required GoodRx to pay civil penalties of $1.5 million and take certain corrective actions. Fisher Decl. ¶ 8. GoodRx emailed users and posted a notice on its website, acknowledging that it "shared [PII] with third parties, including Facebook" and "[i]n some cases . . . used the information to target people with health-related ads." *Id*. Plaintiff Jane Doe filed this action on February 2, 2023. *Id.* ¶ 9. Four later-filed actions were consolidated with the present action on May 3, 2023. *Id*. The Court appointed B&F and Lowey as Interim Co-Lead Class Counsel shortly after. *Id.*

GoodRx moved to compel arbitration and/or stay the case on June 9, 2023, with Criteo following suit on June 16, 2023. Both also moved to dismiss the action on July 9, 2023. Fisher Decl. ¶ 10. Before the Court set a hearing on these motions, Interim Co-Lead Class Counsel learned of a later-filed Florida action in which other counsel (with a separate group of plaintiffs who had not participated in this Litigation) had attempted to settle the same nationwide class claims with GoodRx for $13,000,000. *Hodges v. GoodRx Holdings, Inc.*, No. 1:23-cv-24127 (S.D. Fla.). Fisher Decl. ¶ 12; *see also* ECF No. 151-1 ¶¶ 3-5; ECF No. 151-2. B&F and Lowey promptly notified this Court and moved to intervene in *Hodges* to block the attempted settlement. Fisher Decl. ¶ 12. This Court then ordered the Parties to mediate. *Id.* ¶ 13.

Plaintiffs and GoodRx mediated: (1) on January 10, 2024 with the Hon. Ellen Sickles James (Ret.) (which included Criteo), and (2) on March 7, 2024 with the Hon. Wayne Andersen (Ret.). Fisher Decl. ¶¶ 14-16. Prior to mediation, Plaintiffs received substantial information and user data from GoodRx allowing them to adequately assess the estimated class size and claims at issue for settlement. *See* Fisher Decl. ¶ 14. This included GoodRx's production to the FTC; aggregated statistics from its analytics dashboards reflecting the number of users; internal audits concerning its data sharing practices; user-facing terms and privacy policies; data use and sharing policies; and correspondence between GoodRx employees and reporters regarding its data sharing. *Id*. GoodRx also assisted Plaintiffs in calculating class size. Following the second mediation, and further negotiations, the Parties agreed in principle to a settlement on April 20, 2024 and executed the Agreement on November 25, 2024. *Id.* ¶ 16; Agreement § A.6. In parallel, Plaintiffs and Criteo held an unsuccessful mediation with Judge Andersen on August 6, 2024. *Id*. ¶ 17.

On June 12, 2025, the Court denied Plaintiffs' motion for preliminary approval of the GoodRx

Settlement without prejudice. ECF 231. Plaintiffs thereafter reengaged with Criteo, reaching an agreement in principle in October 2025. Fisher Decl. ¶ 21. Plaintiffs, GoodRx, and Criteo then agreed to amend the GoodRx settlement to add Criteo as a Party, adjust the Settlement Class definition, and increase the total recovery obtained by the Settlement Class. *See id.* ¶ 22. The Agreement was fully executed on November 19, 2025. *See id.*

On November 26, 2025, Plaintiffs moved for preliminary approval of the combined $32 million class settlement with GoodRx and Criteo. *See* ECF No. 261. In its January 16, 2026 Order, the Court denied preliminary approval, holding that Plaintiffs had not provided: (1) a sufficient claim-by-claim enumeration of potential class recovery and justification of the discounts applied; (2) an adequate description of confirmatory discovery informing that valuation; and (3) a demonstration that the scope of the release was commensurate with the value of the proposed settlement. *See* ECF No. 267. This Motion, along with the Addendum to the Agreement executed on March 24, 2026, addresses those issues.

## III. INFORMATION ABOUT THE PROPOSED SETTLEMENT

The key terms of the Settlement are summarized below, in accordance with the Northern District of California's Procedural Guidance for Class Action Settlements ("Procedural Guidance" or "PG").

### A. PG (1)1: Class Definition

The proposed Settlement Class consists of "all natural persons in the United States who used any website, app, or service made available by or through GoodRx at any time prior to April 20, 2024." Agreement § B.48. The Settlement Class excludes (a) Defendants and their affiliates, parents, subsidiaries, officers, and directors; (b) the Opt-Outs; (c) Meta and Google; and (d) the judges presiding over this matter and the clerks of said judges. *Id.* This modifies the class definition in the Consolidated Class Action Complaint, ECF No. 102 ("Complaint"),[2] in form but not in substance. The Settlement Class definition remains consistent with the evidence to date regarding Defendants' conduct. The revised definition and notice documents also enumerate each relevant GoodRx website, app, and service to help consumers confirm their eligibility and avoid any confusion with regard to whether they used the "GoodRx Platform."

The Settlement Class definition also establishes an end date of April 20, 2024. This adds certainty

[2] *See* Complaint ¶ 219 ("All natural persons in the United States who used the GoodRx Platform and whose communications and/or data were shared with third parties, including the Advertising and Analytics Defendants.").

and allows the Parties to accurately estimate a class size, which, based on GoodRx's most recent data, is approximately 56.3 million individuals. *See* March 23, 2026 Declaration of Grayce Cheng ¶ 4 (attached as Ex. 7 to the Fisher Decl.) ("Second Cheng Decl.") (filed under seal). It further ensures users can readily determine whether they fall within the Settlement Class based on the *timing* of when they used the service.

**B. PG (1)2: The Claims to be Released**

In response to the Court's concern that the prior release possibly exceeded the operative Complaint's factual allegations (ECF No. 267 at 4), the Parties have modified the release (via the Addendum) to clarify that it is limited to the Complaint's factual predicate. The revised language (1) tracks the "identical factual predicate" language used in *In re Anthem, Inc. Data Breach Litigation*, 327 F.R.D. 299, 327 (N.D. Cal. 2018); (2) limits released claims to those arising from the specific facts alleged in the Complaint; and (3) expressly excludes claims against non-settling defendants and for unrelated conduct.

The definition of "Released Claims" has been narrowed to align with the Complaint's factual predicate accordingly, as well:

> [A]ny and all manner of claims, counterclaims, lawsuits, set-offs, costs, expenses, attorneys' fees and costs, losses, rights, demands, charges, complaints, actions, suits, causes of action, obligations, debts, contracts, penalties, damages, or liabilities of any nature whatsoever, known, unknown, or capable of being known, in law or equity, fixed or contingent, accrued or unaccrued, and matured or not matured that arise out of, or are based upon or connected to, or relate in any way to the Data Disclosure as defined in [Addendum Paragraph C] or that were or could have been asserted in the Litigation based upon the Complaint's factual allegations. Released Claims include the release of Unknown Claims. Released Claims do not include the right of any of the Releasing Parties or any of the Released Parties to enforce the terms of the Settlement contained in this Agreement.

Addendum to the Nov. 19, 2025 Amended Class Action Settlement and Release Between Plaintiffs, GoodRx, and Criteo (the "Addendum"), attached as Ex. 5 to the Fisher Decl.

The Addendum also revises and clarifies the definitions for "Data Disclosure" and "Unknown Claims". The revised definitions align directly with the factual allegations in the Complaint, which challenge GoodRx's alleged disclosure of user data through web- and app-based tracking technologies (including pixels and SDKs) to Meta, Google, Criteo, and other third parties. *See, e.g.*, ECF No. 102 ¶¶ 163, 308-20. The release is therefore limited to claims arising from the same alleged data disclosures that form the basis of this litigation. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 327 (the Ninth Circuit "allows federal courts to release not only those claims alleged in the complaint, but also claims

'based on the identical factual predicate [ ] that underl[ies] the claims in the settled class action.'"). This principle allows for global peace, resolving any and all claims that were or could have been raised relating to the underlying facts and circumstances of the case, and preventing any future litigation over the issues resolved by the Settlement. Consistent with the revised language, courts have approved releases for "any claim, liability, right, demand, suit, obligation, damage, including consequential damages, losses or costs, punitive damages, attorneys' fees and costs, actions or causes of action, of every kind or description . . . related to or arising from any of the facts alleged in any of the Actions." *Id.* (internal citation omitted).

Claims based on conduct other than the alleged disclosure of user data through web- and app-based tracking technologies prior to April 20, 2024 are not released. The release is therefore no broader than the facts alleged in the Complaint and is proportionate.

Although Plaintiffs also sought a public injunction in the Complaint (Complaint ¶¶ 212-218), the FTC Order already required GoodRx to cease the challenged practices at issue as of February 17, 2023. FTC Order, at 7-10. Further, GoodRx had already ceased using Criteo's services prior to this action. Accordingly, an injunction against GoodRx or Criteo is no longer necessary.

**PG (1)3** is addressed in Section IV.A.4, *infra* in connection with the analysis of the *Hanlon* factors.

### C. PG (1)4: Other Cases Affected by the Settlement

Plaintiffs' Counsel is not aware of any other cases that will be affected by the settlement. Fisher Decl. ¶ 45 (noting that the *Hodges* action was administratively closed).

### D. PG (1)5, (1)7, (6), (7), (8): Allocations and Payments from the Settlement Fund

#### 1. <u>The Settlement Fund</u>

Defendants will pay $32,000,000 into a non-reversionary Settlement Fund that will be used to pay all approved claims, Notice and Settlement Administration Costs, taxes owed by the Settlement Fund, any Court-approved Service Award to Plaintiffs, and any Court-approved Attorneys' Fees and Expense Award. Agreement §§ D.1, D.6. The Settlement Amount reverts to Defendants only if the Agreement is voided, cancelled, or terminated. Agreement § D.6.

The Net Settlement Fund will be distributed *pro rata* through a process designed to distribute as much money to Settlement Class Members as possible. Agreement § H.7.a. The amount distributed to each Authorized Claimant will be calculated by dividing the Net Settlement Fund by the number of valid

Claims. *Id.* Authorized Claimants are offered several Claim Payment methods, including check, PayPal, Venmo, and Zelle. *Id*. People requesting check payments will have 60 days to deposit the check. *Id.* § H.7.b. If checks are returned as undeliverable, the Settlement Administrator will take reasonable efforts to locate a valid address for the Authorized Claimant and resend the check within 30 days, which then must be cashed within 60 days of issuance. *Id.* § H.7.c. For payment by an electronic payment platform, if the Authorized Claimant provides insufficient information to permit payment, a check will be sent instead. *Id.* § H.7.e.

If there are any funds remaining after the 60-day deadline for negotiating Claim Payments made by check, additional payments will be redistributed *pro rata* to Authorized Claimants that received payment, so long as the reallocated *pro rata* share is at least $5.00. *Id.* § H.7.f. In consultation with the Settlement Administrator, it was determined that if there were insufficient funds to reallocate at least $5.00 per Authorized Claimant, the costs of the subsequent distribution would likely outweigh the benefits. Declaration of Justin Parks of A.B. Data Regarding the Proposed Notice Plan and In Support of Plaintiffs' Motion for Preliminary Approval ("Parks Decl.") ¶ 34. Any funds still remaining after 180 days from distribution will be distributed *cy pres* to the Center for Internet and Society ("CIS") at Stanford Law School. *Id.* § H.7.g. CIS bears a close relationship to the subject matter of this lawsuit as it is focused on law and policy relating to the internet and technology. Neither Plaintiffs nor their counsel have a relationship with CIS. Fisher Decl. ¶ 43.

**2. <u>Service Awards</u>**

In recognition of their efforts on behalf of the Settlement Class, subject to Court approval, Plaintiffs will apply for service awards of $2,000 each as compensation for their time and effort serving as putative Class Representatives. Plaintiffs spent substantial time prosecuting this action on behalf of the Settlement Class, assisting with the investigation and the drafting of the Complaint, participating in discovery, communicating with counsel, and staying informed of the status of the action. *Id.* ¶ 54.

**3. <u>Attorneys' Fees and Expense Award</u>**

The Agreement provides that the Settlement Fund may also be used to pay Plaintiffs' Counsel reasonable attorneys' fees and to reimburse expenses in this action, in an amount to be approved by the Court. *See* Agreement § L.1. There is no clear sailing provision in the Agreement. Plaintiffs will petition

the Court for an award of attorneys' fees not to exceed 33.33% of the Settlement Fund ($10,666,666.67) plus reasonable Litigation Expenses of no more than $125,000. Fisher Decl. ¶ 53. The unaudited lodestar invested in this case by Plaintiffs' Counsel through June 2026 is approximately $5,361,745.01. *Id.* If this lodestar remains unchanged, the proposed attorneys' fee would reflect a multiplier of 1.98. *Id.*

**E. PG (1)6 & PG (2): Settlement Administration**

The proposed Settlement Administrator is A.B. Data, Ltd. ("A.B."). *Id.* ¶ 55. Interim Co-Lead Class Counsel selected A.B. after soliciting and reviewing competing bids from four potential claims administrators. *Id.* Each potential administrator proposed email notice and supplemental notice methods (*e.g.*, mail notice and paid digital/social media plans). *Id.* Lowey has utilized A.B. as a settlement administrator for seven new engagements over the past two years, and this is B&F's second engagement with A.B. *Id.* ¶¶ 57-58.

A.B. employs numerous control systems and procedures that meet or exceed relevant industry standards for securely handling class member data, including technical controls, administrative policies, and physical access controls for handling such data and appropriate data collection and retention, data destruction, audit, and crisis and risk management policies. *See* Parks Decl. ¶¶ 39-42; Ex. C. A.B. accepts responsibility for the security of Class Members' information and data and has affirmed that it will not use, disseminate, or disclose such information to any other person or for any other purpose except effecting notice and claims administration. *Id.* ¶ 40. A.B. maintains insurance in case of errors, including coverage for professional liability errors and omissions in its administration, a fidelity bond for employee dishonesty losses, computer fraud and wire transfer communications fraud coverage, and network and information security liability coverage. *Id.* ¶ 42.

A.B. estimates a claim rate range of 3-10% based on its experience administrating consumer data breach and privacy settlements, as well as a 2019 FTC Study analyzing consumer class actions. *Id.* ¶¶ 35-38. This is consistent with comparable privacy cases (3-12%) that involve similar claims and/or technologies. *See* Exhibit 3 to Fisher Decl. (analysis of comparable cases).

A.B. anticipates a total of $1,195,000 in administrative costs. Parks Decl. ¶ 43. This amount is reasonable given that it accounts for only 3.7% of the total settlement value. The costs are to be paid out from the Settlement Fund. Agreement § H.5.b.

## IV. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The purpose of a preliminary approval hearing is for the Court to ascertain whether to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (internal quotations omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)); *see also Elder v. Hilton Worldwide Holdings, Inc.*, 2020 WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) (a court must preliminarily find "that [it] will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal.") (quoting Fed. R. Civ. P. 23(e)(1)(B)) (internal quotations omitted).

Ultimately, when deciding whether a class action settlement is "fair, reasonable, and adequate," the Ninth Circuit has instructed district courts to balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity, and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the stage of the proceedings;" and (6) "the experience and views of counsel." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). In addition to these factors, courts also consider the four enumerated factors in Federal Rule of Civil Procedure 23(e)(2), and any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2); *accord Pena v. Taylor Farms Pac., Inc.*, 2021 WL 916257, at *2-3 (E.D. Cal. Mar. 10, 2021). Under each set of factors, the Settlement may be approved.

### A. The *Hanlon* Factors

#### 1. Strength of Plaintiffs' Case

Determining the strength of a plaintiff's class action claims "is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). A court may "presume that through negotiation, the [p]arties, counsel, and mediator arrived at a reasonable range of settlement by considering

[p]laintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010).

**a. Discovery and Liability Scope**

GoodRx and Criteo produced confirmatory discovery from July 19, 2023 through June 26, 2025. The discovery substantiated the period during which the alleged data disclosures occurred, the geographic distribution of affected GoodRx users, the potential applicability of arbitration provisions, and the scope of the data transmitted through the challenged tracking technologies. *See* Fisher Decl. ¶¶ 14, 19-20, 27-32, 36-37. This discovery, described in more detail below, informs Plaintiffs' claim-by-claim analysis reflected in Exhibit 6 to the Fisher Decl., and serves as a basis for Plaintiffs' foundational understanding of Defendants' potential liability in the case.

**i. Arbitration-Related Discovery**

GoodRx produced documents confirming that it added an arbitration provision to its Terms of Use in January 2020. *See* Fisher Decl. ¶¶ 19-20. GoodRx also produced sworn declarations and user account data that it believes show that several of the named Plaintiffs and at least [redacted]% of the proposed class—those who registered for its services between 2020 and the proposed class end date—agreed to Terms of Use containing arbitration provisions, requiring them to pursue claims individually rather than in federal court. *Id.* ¶ 20; *see* Second Cheng Decl. ¶ 5. This is likely a significant underestimate, as users who registered before 2020 may have also assented to the arbitration provisions if they accessed their accounts post-2020. Second Cheng Decl. ¶ 6. As reflected in Exhibit 6 to the Fisher Decl., Plaintiffs incorporated these risks into the valuation of the classwide recovery for each claim.

**ii. Federal Trade Commission ("FTC") Production**

GoodRx produced over 2,900 documents it provided to the FTC in connection with an investigation into the same data practices challenged here. *See* Fisher Decl. ¶ 14. This included internal reports, policies, financial statements, board materials, and correspondence concerning GoodRx's uses of tracking technologies and interactions with Meta and Google regarding health-related data. *Id.*; *see also id.* ¶ 26. GoodRx also included an internal report on its use of tracking technology, organizational charts, audited and unaudited financial statements, board meeting minutes, internal policies, internal emails reflecting changes in how and whether GoodRx shares data with third parties, and emails between GoodRx

employees and Meta and Google. *Id.* ¶ 14. This discovery provided Plaintiffs with important insight into the scope, timing, and nature of GoodRx's alleged data disclosures and its potential liability.

The GoodRx internal report, written in April 2020, confirmed that [redacted] *See* GDRX-FTC-00002230. GoodRx believes the conclusions in the report support that (1) the Google Pixel did not transmit data identifying specific users to Google, and (2) drug name was never used to target users through Google's ad tools *id,* though Plaintiffs would contest this if the litigation continued.

[redacted] Plaintiffs considered this discovery information in negotiating the Agreement. *See* Fisher Decl. ¶ 33.

[redacted]; Second Cheng Decl. ¶¶ 7, 11. Based on this information, GoodRx would undoubtedly argue that [redacted] As a result, because this action was filed on February 2, 2023, if the Court accepted GoodRx's position, claims governed by one- or two-year limitations periods could be time-barred in their entirety, while three-year claims would be limited to a narrow recovery window and portion of the class. Plaintiffs incorporated this risk into the exposure reductions reflected in Exhibit 6 to the Fisher Decl..

Finally, the FTC production also included GoodRx's privacy policies in effect between October 2017 and April 2020, in which GoodRx believes it disclosed the use of tracking technologies in connection with advertising and other data-sharing practices. *See* GDRX-FTC-000001-GDRX-FTC-0000426. If the Court concluded that these disclosures placed users on notice of those data-sharing practices sufficient to trigger the one-year statute of limitations applicable to Plaintiffs' statutory privacy claims, this could potentially eliminate up to [redacted] of the class from recovery. *See* Second Cheng Decl. ¶ 4. Plaintiffs accounted for this risk in the exposure reductions reflected in Exhibit 6 to the Fisher Decl..

**iii. Class Size and Tracking Technology Confirmation**

GoodRx provided Plaintiffs with information on class size and tracking technology in advance of mediation in December 2023, and GoodRx has continued to provide information throughout the settlement

process. This includes data sufficient to confirm: (1) the total number of registered users during the relevant period; (2) the percentage of visitors to GoodRx's website from California, New York, and Illinois, from June 1, 2024 to June 1, 2025; (3) the percentage of users potentially subject to arbitration; and (4) the date range during which GoodRx used the Facebook Pixel alleged to have transmitted sensitive information. Fisher Decl. ¶ 28. [redacted] *Id.* ¶ 29.

**iv. Criteo Discovery Limiting the Scope of Liability**

Criteo produced documents and information between June 26, 2024 and June 26, 2025 that [redacted], and correspondence with GoodRx discussing, for example, the [redacted].[3]

Importantly, Criteo provided a sample and detailed summary of the specific "events" transmitted through its tracking technology. Fisher Decl. ¶ 30. This confirmatory discovery established that [redacted] *Id.* ¶ 31. [redacted] Criteo also provided samples of the ads it ran for GoodRx, [redacted] *Id.*

If the case continued, Criteo would likely argue that this discovery materially narrows or entirely eliminates its potential liability [redacted] These documents also potentially reduced the likelihood that Plaintiffs could establish the transmission of "contents" or "medical information" under CIPA and CMIA and thus would further diminish the value of

[3] *See* Criteo-DoeLit-0000022; Criteo-DoeLit-0000426.

claims asserted against Criteo. Thus, Exhibit 6 to the Fisher Decl. models Criteo's exposure as substantially discounted.

**v. Additional Discovery Cooperation**

Per the Agreement, GoodRx will also provide: (1) any data or information shared with the Remaining Defendants; and (2) declarations and/or affidavits of its directors, officers, and employees concerning the allegations in the Litigation. This cooperation has meaningful value as it will assist Plaintiffs in litigating against the Remaining Defendants. *See In re Packaged Seafood Prods. Antitrust Litig.*, 2022 WL 228823, at *5 (S.D. Cal. Jan. 26, 2022)) ("Courts typically approve settlements . . . that offer the first settling party a discount due to 'the significant value in and of itself as an icebreaker settlement,' particularly when, as here, the Settling Defendants have agreed to cooperate in the remaining litigation.").

**b. Claim-by-Claim Analysis & Justification for Settlement Amount**

Plaintiffs assert claims under CIPA, Cal. Penal Code §§ 631-32; the CMIA, Cal. Civ. Code § 56.06; California's UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; the CLRA, Cal. Civ. Code §§ 1750 *et seq.*; and Illinois' ICFA, 815 ILCS 505/1 *et seq.*[4] Plaintiffs assert claims for unjust enrichment, intrusion upon seclusion, negligence, and negligence per se. *See* ECF No. 102 ¶¶ 230-396.

The potential recovery for each of these claims, were Plaintiffs to obtain and maintain class certification and then prevail at trial, is described below and further reflected in Exhibit 6 to the Fisher Decl. For each claim, Plaintiffs set forth: (1) the theoretical maximum exposure for Defendants; (2) reductions to account for success on potential defenses; (3) maximum likely recovery after accounting for and assuming success on the defenses modeled by these reductions; and (4) potential summary judgment arguments and other legal barriers to each claim, including merits and class certification issues. Section III.A, below, explains the legal and evidentiary bases for those modeled reductions.

**i. Common Defenses Justifying Settlement Discount**

The exposure modeled in Exhibit 6 to the Fisher Decl. incorporates the following reductions:

---

[4] Plaintiffs are no longer pursuing the claims brought on behalf of the putative New York subclass, including the claim under New York General Business Law § 349 following the dismissal of Plaintiff E.C. on May 11, 2026. ECF 344.

**Geographic Limitation.** For claims with an express geographic limitation (*i.e.*, CIPA) or for which choice of law issues could impact nationwide class certification (*i.e.*, CMIA), Plaintiffs' modeling reduced potential recovery for those claims based on the potential significant narrowing of the class. For example, in GoodRx user data from June 1, 2024 to June 1, 2025, website visitors from California accounted for [redacted] of total visitors. Second Cheng Decl. ¶ 8. Thus, an estimated [redacted] of GoodRx users reside outside California and could be excluded from recovery on these claims. *See id*. ¶¶ 8-9.

**Statute of Limitations.** According to GoodRx's document production, [redacted] *See* Section II.C. Because this action was filed on February 2, 2023, GoodRx would have argued most, if not all claims, were barred in whole or in part by the applicable statute of limitations. Likewise, Criteo would have argued the statute of limitations bars all CIPA claims (the only remaining claims as to Criteo with statutory damages), given that the only potentially tortious transmissions were test transmissions in 2017, and [redacted] *See* Fisher Decl. ¶ 32.

Similarly, Defendants would have argued that all registered users assented to GoodRx's Terms of Use and Privacy Policy, which they contend provided notice of the data disclosures at issue in this case. Using confirmed user registration data, Plaintiffs' modeling accounts for the potential that the Court would adopt this defense and thereby would exclude a significant subset of GoodRx users' claims on statute of limitations grounds. *See* Second Cheng Decl. ¶ 4.

**Arbitration Enforcement.** Plaintiffs expect GoodRx to argue that at least [redacted] of users are subject to binding arbitration clauses, including ***all of the users within the purported statute of limitations***. *See* Section II.A. GoodRx would thus likely argue that any Class Member capable of bringing a claim is excluded from the Class. Plaintiffs account for this defense in their modeling by reducing the value of claims to reflect the impact if GoodRx was successful on this defense.

**ii. Individualized Analysis**

**(a) CIPA**

**Theoretical Statutory Exposure:** Under California Penal Code § 637.2, CIPA statutory damages are $5,000 per violation. If applied to approximately 56.3 million putative class members (*see* Fisher Decl. ¶ 33), the theoretical maximum damages would exceed $281 billion per defendant. But that figure

assumes a nationwide class is certified, no claims are subject to arbitration or are time-barred, and full merits success at trial. *See DellaSala v. Samba TV, Inc.*, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (explaining presumption against extraterritoriality may foreclose CIPA claims by non-California residents); *Brodsky v. Apple Inc.,* 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) ("Under the CIPA, the applicable statute of limitations is one year."). This is not a realistic estimate of exposure.

**Potential Exposure Reductions:** The CIPA exposure modeled in Exhibit 6 to the Fisher Decl. applies each defense described in Section III.A to adjust the theoretical maximum exposure as follows: (1) limiting the Class to the approximately [redacted] million users in California that GoodRx believes could realistically assert this claim, (2) excluding the approximately [redacted] of users who may be time-barred; and (3) excluding the [redacted] of users who may be subject to arbitration. While Plaintiffs maintain they would defeat these defenses, if successful, GoodRx's arguments would significantly reduce any recovery available to the proposed class, as reflected in Exhibit C.

**Summary Judgment and Proof Risks:** GoodRx and Criteo would further argue that users consented to the challenged technologies through acceptance of GoodRx's Terms of Use and privacy disclosures. *See* Section IV.A.1.a.ii, *supra*. And they would likely contend that Plaintiffs' Section 631 claim fails the "in transit" requirement, recently discussed by Judge Chhabria in *Doe v. Eating Recovery Ctr. LLC*, 2025 WL 2971090, at *6 (N.D. Cal. Oct. 17, 2025) ("*ERC*") (narrowly interpreting the "in-transit" requirement as requiring "something more" than just "intercept[ion]"). Plaintiffs disagree with the reasoning in *ERC*, but the decision highlights the ongoing risk of pursuing CIPA § 631 claims against GoodRx. At least one court has already followed Judge Chhabria's decision. *See Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *12 (C.D. Cal. Dec. 4, 2025).

Liability under Section 631's fourth clause also requires proof that GoodRx aided or conspired with a third party that independently committed an unlawful interception. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1113-14 (S.D. Cal. 2024). Courts have dismissed similar claims where (as GoodRx would argue here) the third party could be deemed a participant in the challenged communications. *See, e.g.*, *Cole v. Quest Diagnostics*, 2025 WL 3172640, at *1 (3d Cir. Nov. 13, 2025) (affirming dismissal of CIPA claim based on Facebook Pixel, because Facebook, "[a]s the recipient of a direct communication from Plaintiffs' browsers . . . was a participant in Plaintiffs' transmissions," such

that the website owner could not face aiding and abetting liability for pixel use). Plaintiffs disagree that any third party here was a participant in the relevant communications (*see Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1083 (C.D. Cal. 2021) (rejecting this argument)), but the risk must be factored into the valuation of these claims.

Moreover, courts have routinely granted summary judgment where plaintiffs failed to establish the real-time "reading" and interception of "contents." *See, e.g.*, *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) (granting summary judgment on CIPA § 631 claims where information is "sent" and later "aggregate[d]"); *Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *8 (C.D. Cal. July 12, 2024), *aff'd,* 2025 WL 1895315 (9th Cir. July 9, 2025) (granting summary judgment for failure to satisfy CIPA's "in transit" requirement); *Williams v. DDR Media, LLC,* 757 F. Supp. 3d 989, 995 (N.D. Cal. 2024) (granting summary judgment for failure to satisfy CIPA's "read" or "learn the contents" requirement). And here, Criteo would argue the discovery (Section IV.A.1.a.iv) indicates it did not read or intercept the "contents" of any communication under Cal. Pen Code § 631, and that those communications therefore would not qualify as "confidential" under Cal. Pen Code § 632.

**(b) CMIA**

**Theoretical Statutory Exposure:** Under the CMIA, statutory damages of $1,000 per violation are available without proof of actual damages. *See* Cal. Civ. Code § 56.36(b). As to Criteo, this claim was dismissed without leave to amend, so it has no exposure. ECF No. 243 at 19, 20. Regarding GoodRx, if the entire Class (approximately 56.3 million) succeeded on this claim, the theoretical maximum damages would exceed $56 billion. The theoretical maximum figures, however, assume complete success on the merits for a nationwide class at trial with no exclusions, so they are not a realistic estimate for settlement purposes of GoodRx' exposure. While Plaintiffs maintain the CMIA can be applied nationwide, GoodRx would credibly argue that California's choice-of-law analysis requires limiting this claim to a California subclass. *See Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *3 (W.D. Wash. Nov. 14, 2024) (conducting choice-of-law analysis under Washington law and finding California had the greater interest because "plaintiffs were . . . domiciled in California"). If limited to California residents (approximately [redacted] of all visitors from June 1, 2024 to June 1, 2025), the theoretical maximum damages would be reduced to approximately [redacted] billion. *See* Second Cheng Decl. ¶ 8.

**Potential Exposure Reductions:** GoodRx's CMIA exposure modeled in Exhibit C incorporates each of the defenses described in Section IV.A.1.b.i, resulting in reductions to the theoretical maximum that: (1) limits the Class to approximately [redacted] million California users GoodRx would argue could assert this claim, (2) excludes approximately [redacted] of users whose claims GoodRx would argue are barred by the statute of limitations; and (3) removes [redacted] of users that may be subject to binding arbitration. *See G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 277 (1983) ("statutes which provide for recovery of damages additional to actual losses incurred . . . are . . . governed by the one-year period of limitations."). While Plaintiffs maintain they would succeed against these arguments, if accepted by the Court, they would significantly reduce any recovery available to the proposed class, as reflected by this claim's maximum potential $0 recovery in Exhibit C.

**Summary Judgment and Proof Risks:** GoodRx would argue that its Data Classification Policy and Procedure precludes a CMIA claim because coupon-related website browsing data was not protected "PHI" given that GoodRx is not a HIPAA covered entity. GDRX-FTC-0001459. Although Plaintiffs disagree and would have argued the CMIA applies, the Court may have found otherwise. For instance, Judge Donato recently noted that the CMIA is intended to protect "patients" of "healthcare providers" like "UCSF," not entities who provide health-related services via a mobile app. *See Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757, ECF No. 767 at 1098:14-1100:23 (N.D. Cal. July 30, 2025). Judge Chhabria reached a similar conclusion in *ERC*. *See ERC*, 2025 WL 2971090, at *1 (rejecting CMIA claims because the defendant is not "performing any type of professional service" at the time individuals browsed pages on its website); *see also Cole* 2025 WL 3172640, at *3 n.5 ("some courts have held that public websites providing generic healthcare information do not meet CMIA's definition of 'provider of health care.'").

Moreover, CMIA requires the disclosure of "individually identifiable" medical information. Cal. Civ. Code § 56.05(j). GoodRx would argue that website browsing data does not meet this definition. *See, e.g.*, *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *8 (E.D. Cal. June 9, 2025) (dismissing CMIA claim where plaintiff "searched for information concerning health conditions and symptoms on the Website" but did "not plead facts sufficient to show that her searches revealed her personal 'medical history, diagnosis, or care.'"). Plaintiffs contest this argument, but factor in the resulting merits risk in the claim-by-claim analysis.

Additionally, GoodRx may argue that certification of a CMIA class is improper because whether a class member's medical information was "viewed" by an unauthorized third party is an individualized issue. *See Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 219, 221 (2022); *B.K v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal 2024) (Under CMIA § 56.101, "[a] plaintiff must allege that a defendant's 'negligence result[ed] in unauthorized or wrongful access to the information,' *i.e.* that the information was 'improperly viewed or otherwise accessed.'"). Plaintiffs dispute that this is even an element of a CMIA claim, but the risk that the Court may have disagreed remains.

Finally, although the arguments for users of HeyDoctor, GoodRx's telehealth platform, may be comparatively stronger, that service operated for only a brief period before the removal of the Facebook Pixel [redacted] and implementation of arbitration provisions [redacted] and confirmatory discovery indicates that only a limited subset of [redacted] California residents used HeyDoctor during this time. Second Cheng Decl. ¶ 11. Thus, if the Court found the CMIA applied only to Plaintiffs' HeyDoctor claims, the recovery would be confined to a small fraction of the overall class.

**(c) UCL**

**Theoretical Statutory Exposure:** The UCL provides for restitution ("the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received") rather than statutory damages. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015). Because GoodRx's core service is free, restitution would likely be limited to (1) the small number of paid subscribers to GoodRx Gold or HeyDoctor or (2) the economic value of any allegedly disclosed data.

Restitution can be measured by the economic value of the data that GoodRx allegedly disclosed. *See Pulaski & Middleman, LLC*, 802 F.3d at 988 (explaining one "measure of recovery for the benefit received" is the "value of the property at the time of its improper acquisition") (internal citation omitted). The going rate for health information sold by data brokers or purchased by healthcare-related entities arguably serves as a reasonable proxy for the value of the disclosed data. While much of this information is not publicly available—and Plaintiffs have not prepared expert analyses to support a claim for restitution at this time as discovery is ongoing—a study at Duke University's Sanford School of Public Policy (the "Duke Study") revealed that a dataset consisting of 15,000 armed services members and identifying whether they had fifteen types of health ailments, sold for $3,250 or approximately $0.22 per individual

record.[5] Applying this value to the approximately 56.3 million putative class members, assuming one record per person, yields maximum damages of approximately $12.38 million. This maximum, however, assumes nationwide applicability and no arbitration enforcement.

**Potential Exposure Reductions:** Plaintiffs reduced the value of this claim to account for the defenses described in Section IV.A.1.b.i by: (1) limiting the claims to the approximately [redacted] million California users GoodRx would argue can assert this claim, (2) excluding the approximately [redacted] of users GoodRx would argue were barred by the statute of limitations; and (3) the [redacted] of users who may be subject to binding arbitration. Assuming the Court accepted GoodRx's arbitration, statute of limitations, and geographic limitations arguments, only an estimated [redacted] users would be able to assert claims.[6] Second Cheng Decl. ¶ 10. This reduces the theoretical $12.38 million restitution ceiling and results in an adjusted exposure of approximately [redacted] *See* Exhibit C.

**Summary Judgment and Proof Risks:** Establishing restitution would require proof of measurable economic harm attributable to the alleged data disclosures. Plaintiffs have yet to develop a conjoint or price premium model, given the early stage of litigation. And quantifying data value (as above) or benefit-of-the-bargain damages would require expert testimony that would be subject to *Daubert* challenges. Defendants would also argue that restitution, an equitable remedy, is unavailable where an adequate remedy at law exists, further increasing litigation risk. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020).

Criteo could argue that it did not receive contents of any communication or any sensitive, health or medical information; if true, the value of the data may be $0. *See* Section IV.A.1.a.iv. This poses an additional litigation risk in that Plaintiffs may be unable to establish that Criteo engaged in any unfair, fraudulent or unlawful practices.

**(d) CLRA**

**Theoretical Statutory Exposure:** Plaintiffs allege CLRA claims against only GoodRx. The CLRA permits recovery of actual damages upon a showing of injury caused by deceptive conduct. *See In*

---

[5] Justin Sherman, et. al., *Data Brokers and the Sale of Data on U.S. Military Personnel* at 5, TECH POLICY AT DUKE UNIVERSITY, https://techpolicy.sanford.duke.edu/data-brokers-and-the-sale-of-data-on-us-military-personnel/ (November 2023).

[6] Because the arbitration provision went into effect January 2, 2020, these users from February 2, 2019 (the four-year statute of limitations) to January 2, 2020 would not necessarily be subject to arbitration.

*re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1021 (N.D. Cal. 2024). As with the UCL claim, actual damages could theoretically be measured by the economic value of the allegedly disclosed data. *See id*. at 1013. Using the Duke Study as a proxy, the theoretical nationwide value of a CLRA claim under this theory is approximately $12.38 million. Alternatively, nominal damages of $1 per violation could produce theoretical maximum damages of approximately $56.3 million. *See Samet v. Proctor & Gamble Co.*, 2019 WL 13167115, at *10 (N.D. Cal. Jan. 15, 2019) (nominal damages available under CLRA when plaintiff can show defendant's "breach of duty" but no "appreciable detriment" to plaintiff). These figures, however, assume nationwide application of the statute, no arbitration enforcement, no statute of limitations bar, and full merits success.

Several courts have held the CLRA cannot apply outside California. *See Pattison v. HP Inc.*, 2024 WL 5011945, at *2 (N.D. Cal. Dec. 5, 2024). And "CLRA claims are subject to a three-year statute of limitations[.]" *Finney v. Ford Motor Co.*, 2019 WL 79033, at *2 (N.D. Cal. Jan. 2, 2019) (citing Cal. Civ. Code § 1783). This was factored into Plaintiffs' analysis and exposure reductions.

**Potential Exposure Reductions:** Applying the defenses in Section IV.A.1.b.i to the CLRA, Plaintiffs: (1) limited the class size to the approximately [redacted] million users in California that GoodRx would contend could assert this claim, (2) excluded the approximately [redacted] of users GoodRx would argue are barred by the statute of limitations; and (3) excluded the [redacted] of users who may be subject to binding arbitration. *See* Exhibit C.

**Proof and Duplication Constraints:** As with the UCL claim, attempting to quantify data value or benefit-of-the-bargain damages would require expert modeling subject to *Daubert* that would be vigorously contested at later stages of the case. In addition, CLRA recovery cannot duplicate the damages awarded under other privacy-based claims, which limits the potential independent recovery for this claim. *See Viasat, Inc. v. Space Sys./Loral, Inc.*, No. 3:12-CV-00260-H WVG, 2014 WL 3896073, at *5 (S.D. Cal. Aug. 8, 2014) (double recovery of damages is impermissible where the damages issue arose from the same set of operative facts).

**(e) ICFA**

**Theoretical Statutory Exposure:** The ICFA permits recovery of actual damages. (*see In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1011) and has a three-year statute of limitations. *Stewart v. JP*

*Morgan Chase Bank, N.A.*, No. 18-CV-7584, 2021 WL 3142042, at *3 (N.D. Ill. July 26, 2021) (citing 815 ILCS 505/10a(e)). Applying the Duke Study as a proxy to the estimated [redacted] million Illinois users yields estimated maximum damages of [redacted] *See* Second Cheng Decl. ¶¶ 8-9. Nominal damages are generally unavailable under the ICFA. *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 617 (N.D. Ill. 2009). With respect to Criteo, this claim was dismissed without leave to amend, such that its theoretical exposure is $0. *See* ECF No. 243 at 8, n. 8.

**Potential Exposure Reductions:** As reflected in Exhibit 6 to the Fisher Decl., GoodRx's ICFA exposure is constrained by (1) a geographical limitation narrowing this claim to only Illinois residents, comprising an estimated [redacted] of the total class; (2) a three-year statute of limitations that would potentially bar [redacted] of Illinois claimants; (3) and GoodRx's arbitration provision, which could potentially exclude [redacted] of these individuals. *See Exhibit C.*

**Proof and Certification Risks:** Proving classwide actual damages under the ICFA would require expert modeling subject to *Daubert* and class certification challenges. These proof risks further justify the Agreement at lower than the maximum value.

**(f) Unjust Enrichment**

**Theoretical Net-Benefit Exposure:** Under California law, unjust enrichment permits recovery of net profits obtained through wrongful conduct. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). The measure of recovery is the defendant's net (not gross) benefit, with the burden on defendant to show any offsets that it contends reduce revenue earned. *See Brown v. Google*, 2022 WL 17961497, at *6 (N.D. Cal. 2022).

Under this theory, Plaintiffs must prove that GoodRx realized a net profit from the challenged data disclosures. GoodRx would likely argue, however, that any benefit was limited to sales resulting from health-related ads, which could be very limited. For example, GoodRx provided discovery that indicates that [redacted]. *See* Second Cheng Decl. ¶ 12. As a result, a jury could find that GoodRx did not obtain a net benefit attributable to the alleged disclosures.

GoodRx also did not deploy Criteo campaigns based on drug-specific data during the relevant

period, and the vast majority of campaigns were targeted based only on general website engagement or audience criteria. This increases the risk of pursuing unjust enrichment claims under a net-profit theory against Criteo. Accordingly, Exhibit 6 to the Fisher Decl. models unjust enrichment exposure at or near zero.

**Potential Exposure Reductions:** In addition to the absence of demonstrable net profit, unjust enrichment exposure is further potentially constrained by a three-year statute of limitations (affecting potentially [redacted] of the Class) and GoodRx's arbitration provision (affecting potentially [redacted] of Class Members). These factors support reductions to the maximum damages for settlement purposes.

**Proof and Certification Risk:** Assuming net profit could be established, unjust enrichment in the data privacy context remains a developing and contested theory. Some courts have expressed skepticism that the theory is viable, which is a risk that remains here and warrants the discount Plaintiffs applied to this claim. *See Opperman v. Path, Inc.*, 2016 WL 3844326, at *15 (N.D. Cal. July 15, 2016).

**(g) Intrusion Upon Seclusion**

**Theoretical Damages Exposure:** A claim for intrusion upon seclusion permits recovery of actual damages or nominal damages. *Opperman*, 2016 WL 3844326, at *15; *O'Phelan v. Loy*, 497 F. App'x 720, 722 (9th Cir. 2012). Actual damages could theoretically be measured by the economic value of the disputed data or by the allegedly unjust benefit received by Defendants. Using the Duke Study as a proxy, damages are approximately $12.38 million. Alternatively, if nominal damages of $1 per violation were awarded, total theoretical exposure would be approximately $56.3 million. These ceilings assume no limitations bar, no arbitration enforcement, and full merits success.

**Potential Exposure Reductions:** As reflected in Exhibit 6 to the Fisher Decl., intrusion upon seclusion exposure is materially reduced by (1) a two-year statute of limitations, which Defendants would argue eliminates an estimated [redacted] of potential claimants; and (2) GoodRx's arbitration provision, which could affect potentially [redacted] of Class Members. *See* Exhibit C.

**Proof and Certification Risk:** To establish liability, Plaintiffs would need to prove that the alleged disclosures were "highly offensive" and constituted a substantial intrusion into a protected privacy interest. *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014). "This district 'set[s] a high bar' for the requisite 'intrusion [that is] highly offensive to a reasonable person.'" *Id.* at 988

(citation omitted). Further, Defendants would argue that the Duke Study dataset involved "identifiable records with health information and ailments" (*see* p. 39), which may be more valuable than the browsing data here. Plaintiffs are prepared to dispute this argument, but these merits and certification risks further justify the Agreement.

Assuming success on these elements, intrusion upon seclusion damages would likely overlap with other privacy-based harms, and Plaintiffs could not recover multiple times for the same alleged harm, which caps their potential maximum recovery. *See, e.g.*, *Gilbane Fed. v. United Infrastructure Projects FZCO*, 275 F. Supp. 3d 1180, 1196 (N.D. Cal. 2017), *aff'd*, 777 F. App'x 873 (9th Cir. 2019).

As to Criteo, Plaintiffs would face substantial risk proving Criteo's conduct was highly offensive because discovery indicates Criteo received very limited data, and what it received did not contain sensitive, health, or medical information or even the contents of any communication.

**(h) Negligence and Negligence Per Se**

**Theoretical Damages Exposure:** Plaintiffs allege negligence claims against GoodRx only. Negligence permits recovery of actual damages upon proof of duty, breach, causation, and injury. *See Romero v. Los Angeles Rams*, 91 Cal. App. 5th 562, 567 (Cal. Ct. App. 2023). Under California law, nominal damages are generally unavailable for negligence. *Landon v. TSC Acquisition Corp.*, 2024 WL 5317240, at *6 n.1 (C.D. Cal. Nov. 1, 2024). Using the Duke Study as a proxy, class members' theoretical maximum recovery is approximately $12.38 million in actual damages, assuming no limitations bar and no arbitration agreement enforcement.

**Potential Exposure Reductions:** As reflected in Exhibit C, GoodRx's negligence exposure is reduced by (1) a two-year statute of limitations, which GoodRx would argue eliminates an estimated [redacted] of potential claimants; and (2) GoodRx's arbitration provision, which could affect potentially [redacted] of Class Members. *See* Exhibit C.

**Proof and Certification Risk:** To prevail on negligence, Plaintiffs would need to establish the existence of a duty, breach, causation, and measurable economic injury. Demonstrating classwide causation and quantifying economic harm attributable to the alleged disclosures would likely require expert modeling subject to *Daubert*. These risks further justify the reduction in value applied at settlement.

**iii. Maximum Likely Recovery Analysis and Comparison to Settlement Consideration**

As indicated above and to supplement the foregoing claim-by-claim analysis, Exhibit C sets forth the following for each cause of action: (1) theoretical maximum exposure based on class size; (2) reductions resulting from geographic limitations, arbitration enforcement, and applicable statutes of limitation that Defendants would likely seek to apply; (3) maximum likely recovery accounting for these reductions if Defendants prevailed; and (4) other legal risks, including summary judgment on the merits and class certification risk. The Settlement eliminates the above-described risks and replaces them with certain relief and a positive recovery for each Settlement Class Member. Fisher Decl. ¶ 50.

Although certain claims carry large theoretical maximum damages, discovery suggests those figures do not accurately represent the likely available recovery. The $32 million settlement represents a significant recovery that accounts for Defendants' statute of limitations, geographical, and arbitration arguments, with further qualitative discounting for class certification and merits risks.

Importantly, the modeling reflects that certain claims (*e.g.*, unjust enrichment, negligence, and ICFA) contribute little to overall exposure after discovery and legal reductions, while others (*e.g.*, CIPA and CMIA) are subject to significant risk based on threshold arguments that could dramatically reduce their value. The negotiated settlement amount was evaluated against this exposure, rather than against the overinflated speculative theoretical maximum statutory figures.

In light of the claim-by-claim analysis of estimated maximum likely recovery, the discovery described above, and the revised release limiting the scope of released claims to the factual predicate alleged in the Complaint, Plaintiffs respectfully submit that the Agreement falls within the range of fairness, reasonableness, and adequacy required by Rule 23(e).

**2. <u>Risk of Continuing Litigation</u>**

Given the risks associated with continued litigation, approval of the proposed settlement is appropriate. Generally, approval of settlement is preferrable to litigation, unless the settlement is "clearly inadequate." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Settlements are also favored where "significant procedural hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014). By reaching a favorable settlement now, Plaintiffs obtain recovery for the Settlement Class and

bolster their prospects of achieving additional recoveries from Remaining Defendants. Absent settlement, the case would require resolution of pending dispositive motions, prolonged discovery, summary judgment, and trial—with the risk of appeal extending final disposition by several years.

The Settlement accounts for these risks and permits a prompt resolution on terms that are fair, reasonable, and adequate to the Class, providing class members with monetary recovery now, not in years. "Accordingly, the high risk, expense, and complex nature of the case weigh in favor of approving the settlement." *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009)).

**3. Risk of Maintaining Class Action Status**

Plaintiffs also face risks in maintaining class status through trial. Assuming the Court were to certify a class, Defendants could seek an interlocutory appeal or attempt to decertify the Class based on subsequent developments. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time . . . is one that weighs in favor of settlement.") (internal citations omitted). Risk, expense, and delay permeate such a process.

**4. PG (1)3: The Amount Offered in Settlement**

The determination of "the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 965). To assess the consideration of a proposed settlement, "the complete package taken as a whole, rather than the individual component parts, [] must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[A] proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citation omitted).

Here, the cash value of the proposed Settlement is $32,000,000 and represents an extraordinary result that is: (1) approximately 21 times what the FTC recovered from GoodRx (*see* Section II); and (2) almost 2.5 times the nationwide settlement initially approved in *Hodges* that Interim Co-Lead Class Counsel successfully intervened to block. *See id*. This amount is reasonable given the attendant risks to continuing the litigation, the potential that a majority of the class would be compelled to arbitration, and Defendants' financial condition. Although the Class theoretically could recover large statutory damages under the CMIA and CIPA, GoodRx asserts that a majority of users signed arbitration provisions

excluding them from a liability class. *See* Section I. Likewise, Defendants suggest that claims for over [redacted]% of the Settlement Class are time-barred—an issue that might not have been resolved until trial. *See Frasco v. Flo Health, Inc.*, 2025 WL 1476905, at *1 (N.D. Cal. May 22, 2025) (holding "a jury will need to decide" statute of limitations issue).

Finally, recoverable damages under the CMIA and CIPA could be reduced further if the Court certified only a class of California residents for those claims, which GoodRx contends constitutes less than [redacted]% of website users. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012) (vacating class certification order and holding court cannot apply California law to a nationwide class).[7] The certainty of recovering now for all nationwide class members justifies a reasonable discount.

Plaintiffs' non-statutory causes of action (*i.e.*, negligence per se, common law negligence, common law invasion of privacy, and unjust enrichment) do not have the same potential for recovery, providing only for difficult to prove actual damages and/or disgorgement.

Plaintiffs also had to contend with the reality that even if they succeeded on all issues at trial, they would be unlikely to recover the full amount allowed by statute. Defendants likely could not withstand a judgment of that size, making bankruptcy likely, and the potential of a complete recovery low. Fisher Decl. ¶ 51. GoodRx's total market capitalization as of May 21, 2026 is $867 million, far less than the maximum recoverable damages, and Criteo's total market capitalization is $863 million. *See Id.*; *Hodges*, ECF No. 14 at n.15. Rather than insist on an illusory, maximum recovery that Defendants would be unable to pay, the Settlement resolves Plaintiffs' and Settlement Class Members' claims for an estimated $4-$12 per person. This figure assumes a *pro rata* distribution of the Settlement, considers the Settlement Administrator's projections for the number of claims, and subtracts proposed attorneys' fees and costs, service awards to Plaintiffs, and Litigation Expenses. *See* Section III.D.1, *supra*.

Other settlements involving statutory damages provide comparable recoveries on a per-user basis. On September 16, 2025, Flo Health, Inc. settled a class action lawsuit involving claims that its app unlawfully shared sensitive health data with third parties. *Frasco v. Flo Health, Inc. et al.*, No. 3:21-cv-00757 (N.D. Cal.) (ECF No. 780-1). The court had certified a nationwide class for the plaintiffs' breach

[7] Criteo would also likely argue that its status as a non-California entity prevents certification of a nationwide class. *E.g.*, *DellaSala*, 2025 WL 3034069, at *3 (CIPA does not apply extraterritorially to claims of non-California plaintiffs).

of contract, intrusion upon seclusion, and CMIA claims. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 587 (N.D. Cal. 2025). The Flo settlement will result in an average recovery of $10.26 per participating class member (at an estimated 6% claims rate) before subtracting attorney's fees, service awards, and administration costs. *See id.*, ECF No. 784-12 ¶ 42. This is in line with the recovery afforded in this action, which at a 6% claims rate would provide for $9.73 per person before subtracting attorney's fees, service awards, and administration costs.

Other privacy cases have settled for similar per-person recoveries. *See Katz v. Oracle*, 3:22-cv-04792 (N.D. Cal.) (final approval granted November 11, 2024) (settlement providing for $8.71 for each claimant at an estimated 6% claims rate, excluding deductions); *In Re: Zoom Video Communications, Inc. Privacy Litigation*, 3:20-cv-02155 (N.D. Cal.) (final approval granted April 21, 2022) (settlement providing for $8.94 for each claimant at an estimated 6% claims rate, excluding deductions); *Facebook, Inc. Internet Tracking Litig.,* 5:12-md-2314 (N.D. Cal.) (final approval granted November 10, 2022) (settlement providing $12.10 for each claimant at an estimated 6% claims rate, excluding deductions); *see also* Fisher Decl., Exhibit 3 (detailed chart of comparable case outcomes).

Defendants' Settlement also supports Plaintiffs in pursuing recoveries from the Remaining Defendants. *See* Agreement, § F.1. It serves as a potential ice-breaker settlement, providing access to valuable cooperation in addition to monetary recovery. *See, e.g.*, *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (considering "the value of [d]efendants' cooperation with [p]laintiffs in pursuit of claims against the remaining defendant" in approving a settlement because it will "save time, reduce the [plaintiffs'] costs, and provide information, witnesses, and documents that the [plaintiffs] may otherwise not be able to access.").

Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

**5. The Extent of Discovery**

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiffs reviewed a considerable amount of documents, data, and information from Defendants that substantially informed their view of the case and the Proposed Settlement. Fisher Decl. ¶ 33. The

proposed Settlement is the result of fully informed and arm's-length negotiations.

**6. <u>Experience and Views of Counsel</u>**

The judgment of "experienced counsel" regarding the Settlement is entitled to "[s]ignificant weight." *Miramontes v. U.S. Healthworks, Inc.*, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017). Interim Co-Lead Class Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Fisher Decl. ¶ 52. They have investigated this case in detail and have obtained documents, data, and information in advance of mediations and in discussions with Defendants' counsel. *Id.* That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate weighs heavily in favor of this Court's approval of the Settlement.

**B. Rule 23(e)(2) Factors**

**1. <u>The Class Is Adequately Represented</u>**

Plaintiffs' interests are aligned with other Settlement Class Members' interests because they allege the same injuries from GoodRx's alleged disclosure of personally identifiable and confidential medical information to third parties. *See* Sections V.A.3-4. Plaintiffs' attorneys have extensive experience and have adequately met the obligations of Class Counsel. *See* Section V.A.4; Fisher Decl. ¶ 52. This factor favors preliminary approval.

**2. <u>The Settlement Was Negotiated at Arm's Length</u>**

This proposed Settlement is the result of extensive negotiations, including formal mediations with GoodRx and Criteo with the assistance of experienced and well-regarded mediators. Fisher Decl., ¶¶ 14-16. Not only was the settlement not collusive, but Plaintiffs substantially improved on both the FTC and *Hodges* plaintiffs' results. *See* Section IV.A.4. Under such circumstances, the proposed Settlement is entitled to a finding of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to make an informed decision about the Settlement and about the legal and factual risks of the case"); *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *6 (C.D. Cal. July 19, 2024) (similar).

### 3. The Settlement Provides Adequate Relief to the Settlement Class

Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). With regard to (i), as demonstrated above, the Settlement satisfies the overlapping *Hanlon* factors. *See* Section IV.A.1–6, *supra*.

As to "any agreement required to be identified by Rule 23(e)(3)," there is an agreement providing Defendants with a limited right to terminate the agreement if a certain percentage of the Settlement Class opts out of the Settlement. This kind of agreement is common, and does not affect the fairness, reasonableness, or adequacy of the proposed Settlement. *See Schneider v. Champignon Brands Inc.*, 2022 WL 22879587, at *15 (C.D. Cal. Nov. 1, 2022). Plaintiffs have, in connection with this filing, included a copy of this agreement under seal for the Court's review, and will concurrently file a copy with only the numerical threshold redacted. *See In re Anthem, Inc. Data Breach Litig.*, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017) (granting motion to seal similar provision to "prevent third parties from utilizing [this provision] for the improper purpose of obstructing the settlement and obtaining higher payouts").

Regarding "the effectiveness of any proposed method of distributing relief to the class," it is "important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal. July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.* Plaintiffs respectfully refer the Court to Section III.D, which details the claims process and demonstrates that the "process is not unduly demanding, and that the proposed method of distributing relief to the Class is effective." *Alvarez*, 2020 WL 7314793, at *6. *See also* Parks Decl. ¶ 8

With respect to "the terms of any proposed award of attorney's fees,"[8] Interim Co-Lead Class Counsel will apply for attorneys' fees not to exceed 33.33% of the Settlement Fund ($10,666,666.67). Agreement § L.1. The Ninth Circuit has identified five factors relevant to determining whether attorneys'

[8] *See also* PG 6.

fees are reasonable: (1) the results achieved; (2) the risk of litigation; (3) whether Class Counsel's work generated benefits beyond the Class settlement fund, (4) market rates as reflected by awards made in similar cases; and (5) the contingent nature of the fee and the financial burden carried by Plaintiff and the Class. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). Although Interim Co-Lead Class Counsel will address each factor in their fee application, these factors have been satisfied.

*First*, Interim Co-Lead Class Counsel has secured a $32,000,000 cash settlement, which is an excellent result for the reasons stated above. *See* Section IV.A.4. *Second*, there are significant risks in protracted litigation. *See* Sections IV.A.1-3. *Third*, the Settlement requires Defendants to cooperate with claims against the Remaining Defendants. *Fourth*, the requested fee is consistent with market rates. *See, e.g.*, *Wellens v. Sankyo*, 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 35% of $8,200,000 settlement fund). *Finally*, given the contingent nature of the fee, the time Counsel has devoted to this case, and financial burden carried by Counsel, a fee award of no more than 33.33% is reasonable. *See Vizcaino*, 290 F.3d at 1048-50.

The Settlement thus provides adequate relief to the Class pursuant to Rule 23(e)(2)(C), and the requested attorneys' fees are reasonable in relation to such relief.

#### 4. <u>The Settlement Treats All Settlement Class Members Equally</u>

"The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). Here, any Settlement Class Member may make a claim and be paid a *pro rata* portion of the settlement. *See* Agreement § H.7.a. Courts have found this allocation method equitable. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019); *State of California v. eBay, Inc.*, 2014 WL 4273888, at *5 (N.D. Cal. Aug. 29, 2014).

## V. <u>CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE</u>

Plaintiffs request that the Court provisionally certify the following nationwide Settlement Class:

> All natural persons in the United States who used any website, app, or service made available by or through GoodRx at any time prior to April 20, 2024. Excluded from the Settlement Class are (a) Defendants and their affiliates, parents, subsidiaries, officers, and directors; (b) the Opt-Outs; (c) Co-Defendants; as well as (d) the judges presiding over this matter and the clerks of said judges.

*See* Agreement § B.48. Provisional certification permits notice to the Class to inform Settlement Class

Members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the formal fairness hearing. *See* MANUAL for COMPLEX LITIG., §§ 21.632, 21.633.

The decision whether to certify the proposed Settlement Class is committed to the sound discretion of this Court within the guidelines of Fed. R. Civ. P. 23. *See* 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:19 (6th ed.); *Hanlon*, 150 F.3d at 1023. Courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White v. Imperial Adjustment Corp.*, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002). The Ninth Circuit in *Hanlon*, 150 F.3d at 1019-23, specifically approved certification of a similar nationwide class for settlement purposes. *See also In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019).

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Additionally, as applies to this case, Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Here, all applicable Rule 23 requirements are met, and Defendants consent to provisional certification for settlement purposes.

**A. The Class Satisfies Rule 23(a)**

**1. <u>The Class Is Sufficiently Numerous.</u>**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019. There is "[n]o exact numerical formula" that determines numerosity. *Guzman v. Oxnard Lemon Assocs., Ltd.*, 1992 WL 510094, at *2 (C.D. Cal. Aug. 28, 1992). But "Courts generally find numerosity satisfied if the class includes forty or more members." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) (citations omitted). Here, Plaintiffs estimate the class size as approximately 56.3 million individuals based on data from GoodRx.

Numerosity is satisfied.[9]

**2. Common Questions of Law and Fact Exist.**

Rule 23(a)(2) requires the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2). Commonality means that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012)). Commonality is liberally construed, and not all questions of fact and law "need[] be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019-20.

Here, common questions of law and fact exist as to all Settlement Class Members and further predominate over questions affecting only individual Settlement Class Members. These questions include:

- Whether Defendants violated Settlement Class Members' privacy rights;
- Whether Defendants' conduct constituted an invasion of privacy at common law;
- Whether Defendants violated CIPA by aiding, agreeing, employing, and conspiring to intercept and use Settlement Class Members' communications; and
- Whether GoodRx violated the CMIA by disclosing health information to Co-Defendants through their SDKs and pixels.

Further, virtually all legal theories asserted by Plaintiffs against Defendants are common to the Class as a whole, which alone is sufficient to establish commonality. *See* Complaint (Counts 1, 3-6, 9, 11-12, 15); *Hanlon*, 150 F.3d at 1019-20.[10]

**3. The Plaintiffs' Claims are Typical**

Rule 23(a)(3) requires that the class representatives' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150

[9] Plaintiffs do not yet know whether the number of email addresses acquired by GoodRx (used for class size estimates above) translates one-for-one into Settlement Class Members. If the Settlement is preliminarily approved, the Settlement Administrator will further analyze the email address data provided by GoodRx for duplicates, bad email address, etc.

[10] The three claims against Defendants that are not asserted on behalf of the whole class are pled in the alternative as to subclasses consisting of residents of the states whose law is invoked in these causes of action. *See* Complaint (Counts 13, 14, 16).

F.3d at 1020. Plaintiffs need only demonstrate that they "endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Plaintiffs' claims are typical of the claims of the Settlement Class Members because they arise "from the same event or practice or course of conduct that [gave] rise to the claims of other class members and [their claims were] based on the same legal theory." *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020). Plaintiffs allege that GoodRx disclosed the same categories of information for both Plaintiffs and Settlement Class Members. *See* Complaint ¶¶ 22-59.

**4. <u>Plaintiffs and Their Counsel Adequately Represent the Class</u>**

The final threshold is that the named plaintiffs be able to fairly and adequately protect the interests of the class. This determination turns on two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008).

Both questions are met here. Plaintiffs have actively pursued this litigation on behalf of the Settlement Class Members. Plaintiffs and Settlement Class Members were harmed by the alleged misconduct and they share an identical interest in establishing liability and obtaining a suitable remedy. The proposed Class Representatives have actively participated in and kept abreast of the Litigation while it developed. Fisher Decl., ¶ 54. Plaintiffs have no conflicts or positions antagonistic to the Class.

B&F and Lowey similarly satisfy the adequacy requirement and should be appointed counsel for Settlement Class. This is most apparent by the work B&F and Lowey, as Interim Co-Lead Class Counsel, have conducted to date. *See* Fed. R. Civ. P. 23(g)(1)(A). In successfully opposing the motions to dismiss, B&F and Lowey demonstrated a deep understanding of the law and facts at issue in this case. This is consistent with the firms' recent leadership in the data privacy field, including Lowey's recent victory in the first-ever trial on a CIPA claim against Meta in the *Flo Health* action. *See Frasco v. Flo Health, Inc.*, No. 3:21-cv-00757, ECF No. 756. In addition, B&F and Lowey intervened in *Hodges* to protect the Settlement Class's interests and obtained a significant improvement in Settlement as a result. Fisher Decl., ¶ 12. These actions demonstrate that Counsel are "qualified, experienced, and generally able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009).

**B. The Class Satisfies Rule 23(b)(3)**

This action is well-suited for certification under Rule 23(b)(3) because common questions predominate over individual questions, and the class action device provides the best method for fair and efficient resolution of the Class's claims. Because trial will be unnecessary as to Defendants, the manageability of the Class for trial/damages purposes is not relevant to the Court's inquiry. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997); *Hanlon*, 150 F.3d at 1021-23.

**Common Questions Predominate:** A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). In general, "predominance is met when there exists generalized evidence which proves or disproves an issue or element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *See Giuliano v. Sandisk Corp.*, 2015 WL 10890654, at *16 (N.D. Cal. May 14, 2015). So long as "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453-54 (2016).

As alluded in Section V.A.2, common issues predominate here because the Settlement Class's claims against Defendants can be proven using common evidence. Further, the proposed Settlement does not introduce individual legal or factual issues that would predominate over common issues.

**Superiority**: "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Superiority considers among other things: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

All of these factors are present here. Managing these disputes in a single class action is preferable to requiring thousands of users to bring individual actions, where filing fees alone would likely exceed the value of any potential recovery.

## VI. B&F AND LOWEY SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4). In making this determination, the Court considers proposed counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed, B&F and Lowey, and the attorneys working on this case specifically, have extensive success in prosecuting consumer privacy class actions. *See* Section V.A.4. The Court should appoint L. Timothy Fisher of B&F and Christian Levis of Lowey as Class Counsel. Interim Co-Lead Counsel have been supported in this Litigation by Schubert Jonckheer & Kolbe LLP, Zimmerman Law Offices, P.C, Israel David LLC, and Shub Johns & Holbrook LLC, which should be appointed as Executive Committee members for the Settlement Class.

## VII. THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The Parties' Proposed Notice Program comports with the Federal Rule and with due process and should be approved.[11]

### A. The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern District's Procedural Guidance[12]

As discussed in Section III.E, Plaintiffs propose A.B. as the Settlement Administrator. Pursuant to Rule 23(c)(2)(B), the notice program must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). The Settlement Administrator will disseminate Email Notice directly to Settlement Class Members using contact information in GoodRx's possession. *See* Agreement § I.1; Parks Decl. ¶¶ 10, 18. The Email Notice will describe key settlement terms and link to a Settlement Website, that will be published prior to or contemporaneously with Class Notices, hosting the Complaint, Agreement, Claim Form, Long-Form Notice, and this Motion. Parks Decl. ¶ 18. Agreement § I.1.d, Exs. A, B.

Several courts have approved similar email notice plans. *See Opperman v. Kong Techs., Inc.*, 2017 WL 11676126, at *5 (N.D. Cal. July 6, 2017); *Shahar v. Hotwire, Inc.*, 2014 WL 12647737, at *2 (N.D.

[11] Plaintiffs understand that Defendants will be responsible for Class Action Fairness Act (CAFA) notice. *See* Settlement Agreement § I.2.
[12] PG 3.

Cal. July 25, 2014); *Stewart v. Apple Inc.*, 2022 WL 3013122, at *5 (N.D. Cal. Feb. 17, 2022).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for preliminary approval of the Agreement with Defendants GoodRx and Criteo.

Dated: June 1, 2026

**BURSOR & FISHER, P.A.**

By: /s/ L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
Daniel S. Guerra (State Bar No. 267559)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
ltfisher@bursor.com
ndeckant@bursor.com
dguerra@bursor.com
jgavenman@bursor.com

Christian Levis (*pro hac vice*)
Amanda Fiorilla (*pro hac vice*)
Rachel Kesten (*pro hac vice*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com
rkesten@lowey.com

*Interim Co-Lead Counsel*

Robert C. Schubert #62684
Willem F. Jonckheer #178748
Amber L. Schubert #278696
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law

wjonckheer@sjk.law
aschubert@sjk.law

Mark L. Javitch (CA SBN 323729)
mark@javitchlawoffice.com
**JAVITCH LAW OFFICE**
3 East 3rd Ave., Suite 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705

Thomas A. Zimmerman, Jr. (*pro hac vice)*
tom@attorneyzim.com
**ZIMMERMAN LAW OFFICES, P.C.**
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

Israel David (*pro hac vice)*
israel.david@davidllc.com
**ISRAEL DAVID LLC**
60 Broad Street, Suite 2900
New York, New York 10004
Telephone: (212) 350-8850
Facsimile: (212) 350-8860

Rebecca M. Hoberg
rhoberg@moyalawfirm.com
**MOYA LAW FIRM**
1300 Clay Street, Suite 600
Oakland, California 94612
Telephone: (510) 926-6521

Jonathan Shub #237708
Benjamin F. Johns (*pro hac vice* forthcoming)
Samantha E. Holbrook (*pro hac vice* forthcoming)
**SHUB JOHNS & HOLBROOK LLC**
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 585-1195
jshub@shublawyers.com
bjohns@shublawyers.com
sholbrook@shublawyers.com

*Attorneys for Plaintiffs*